# LTD CLAIM PROFILE

**Date:** 5/6/2026 **LFG** **Claim #:** 1230082409

| | | | | | |
|---|---|---|---|---|---|
| **Insurer:** | The Lincoln National Life Insurance Company | **Posted:** | 10/16/2023 | **Location:** | HOME |
| **Policy:** | 00001017736300000 - | **Status:** | EXTENDED | **User ID:** | LAW |
| | Nye County Human Resources | **Business:** | TRUE LTD | | |

## Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | DAVID E BORUCHOWITZ | **Phone:** | | **DOB:** | |
| **SSN:** | | **Sex:** | M | **Hire:** | 2/21/2006 |
| **Address:** | | **Ins Eff:** | 7/1/2013 | **Class:** | 2 |
| | USA | **Occ:** | POLICE CAPTAIN, PRECINCT | **DOT** | vernme 375167034 rnate titles: cap |
| | | **Salary:** | $12,324.00 | **Period:** | Monthly |

## Claim Information

**Special Provisions:** **Min Ben:** $600.00

**Ben:** 60% / 0% **A/S:** 0% **Age:** 43 **Elim Per:** 90 day

**DLW:** 7/7/2023 **DOD:** 7/10/2023 **S/A:** S **W/R:** N **M/N:** N **D/A:** N **ADL:** **Ben Amt:** $6,000.00

**Max Duration:** RBDSS **Res ID:** NONE

**Diagnosis Pri:** M54.5 Low back pain **Limits:**

**Sec:** M47.816Spondylosis without myelopathy or radicu **Prognosis:**

**Recovery Date:** 6/21/2047

## Benefit Information

| | | | | | |
|---|---|---|---|---|---|
| **Date Ben Begin:** | 10/8/2023 | **Months Paid:** | 24 | **Actual Age:** | 43 |
| **Modal:** | $600.00 | **Reins:** | $0.00 | **Reserve:** | $0.00 |

## Policy Information

**M/N Limits:** Y **Drug Limits:** Y **Pension Sup:** N **Own Occ:** 24 Mos

**SS Offset:** Primary & Family **Prex:** 12/12/24

**COLA:** NONE

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| RET EMP | PROCESSED | 10/12/2023 | | $6,754.10 | $5,400.00 |
| PIB | PENDING | 10/8/2023 | | $1,232.40 | |
| Fam Care | PENDING | 10/8/2023 | 10/8/2024 | $250.00 | |
| SS EMP | NOT QUALIFY | | | | |

## Dependent Information

| Type | DOB | Name |
|---|---|---|
| Spouse | 12/19/1983 | STEPHAINE BORUCHOWITZ |
| Child | 4/23/2007 | MADELYNN BORUCHOWITZ |
| Child | 5/26/2009 | NOAH BORUCHOWITZ |

## Alert Information

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|



EXHIBIT

3

**LTD CLAIM PROFILE**

**Date:** 5/6/2026 **LFG** **Claim #:** 1230082409

| | | | | |
|---|---|---|---|---|
| T | W | REHAB PROFILE | 10/17/2023 | 12/15/2023 |

**Action Plan**

## Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | DAVID BORUCHOWITZ | | | **Occupation:** | POLICE CAPTAIN, PRECINCT (government ser.) alternate titles: cap | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 10/16/2023 | **Months Dis:** | 33 |
| **Claim #:** | 1230082409 | **DOD:** | 7/10/2023 | **Ben:** | $6,000.00 | **Months Pd:** | 24 |
| **Coverage:** | LTD | **Status:** | EXTENDED | | | **Assignee:** | LAW |
| **Policy Holder:** | Nye County Human Resources | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | | | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 10/17/2023 | Documents/Mail | 1 | Fax | Completed | SAAED9 |
| | 2023-10-16-11.02.58.366560O01 | | | | |
| 10/17/2023 | Documents/Mail | 2 | Claim Form - EE, ER, APS | Completed | SAAED9 |
| | 2023-10-16-11.02.58.436560O01 | | | | |
| 10/17/2023 | Documents/Mail | 3 | Medical Records | Completed | SAAED9 |
| | 2023-10-16-11.02.58.507560O01 | | | | |
| 10/17/2023 | Documents/Mail | 4 | Incoming Correspondence | Completed | SAAED9 |
| | 2023-10-16-11.02.58.557560O01 | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 2 | Missing Info | Requested | SAAED9 |
| | The follow ing fields contained no data w hen the claim form w as submitted: CLASS_OF_COV<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:54 pm | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 4 | DLW Before Effective Date | Requested | SAAED9 |
| | The Date Last Worked Is Prior To The Effective Date<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:12 pm | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 5 | Verify Class | Requested | SAAED9 |
| | Verify Class<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:13 pm | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 1 | Verify Occupation | Requested | SAAED9 |
| | DOT/Occupation w as Unknow n<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:15 pm | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 6 | Data mismatch-claim intake/Ardis | Requested | SAAED9 |
| | Data mismatch betw een claim intake facility and ARDIS on the follow ing field(s): CLASS_NUM<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:21 pm | | | | |
| 10/17/2023 12:45:23 PM | Claim Tasks | 3 | Verify Offsets | Requested | SAAED9 |
| | Verify Offsets<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:22 pm | | | | |
| 10/17/2023 8:14:41 PM | Claim Tasks | 7 | Unable to process correspondence | Requested | SAAED9 |
| | "Disability Acknow ledgement" letter not sent due to issues w ith contact list. There w as no entry for CLMLOC<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:55 pm | | | | |
| 10/17/2023 8:14:44 PM | Claim Tasks | 8 | Unable to process correspondence | Requested | SAAED9 |
| | Letter "Disability Acknow ledgement" w as not sent: No Claim location contact exists for this claim.<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:57 pm | | | | |
| 10/18/2023 | Claim Tasks | 7 | Unable to process correspondence | Completed | SAAED9 |
| | "Disability Acknow ledgement" letter not sent due to issues w ith contact list. There w as no entry for CLMLOC<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:55 pm | | | | |
| 10/18/2023 | Claim Tasks | 8 | Unable to process correspondence | Completed | SAAED9 |
| | Letter "Disability Acknow ledgement" w as not sent: No Claim location contact exists for this claim. | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:57 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/18/2023 10:24:36 AM | Documents/Mail | 5 | Email | Received | SAAED9 |

2023-10-13-17.58.09.546480O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:35 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/20/2023 | Documents/Mail | 5 | Email | Completed | SAAED9 |

2023-10-13-17.58.09.546480O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:35 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Telephone (OUT) | 1 | Nye County | Completed | SAAED9 |

Hello,

I am w orking on the LTD claim for Mr. David Boruchow itz and I need some further information.

Can you please provide the best contact number for him?
Provide tw o complete months w roth of paycheck stubs prior to day last w orked
Job description
Lastly, please provide a copy of the LTD enrollment form show ing the effective date.

Thank you
- SAAED9 - Oct 23, 2023 02:04:48 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 2 | Missing Info | Completed | SAAED9 |

The follow ing fields contained no data w hen the claim form w as submitted: CLASS_OF_COV

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:54 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 4 | DLW Before Effective Date | Completed | SAAED9 |

The Date Last Worked Is Prior To The Effective Date

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:12 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 5 | Verify Class | Completed | SAAED9 |

Verify Class

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:13 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 1 | Verify Occupation | Completed | SAAED9 |

DOT/Occupation w as Unknow n

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:15 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 6 | Data mismatch-claim intake/Ardis | Completed | SAAED9 |

Data mismatch betw een claim intake facility and ARDIS on the follow ing field(s): CLASS_NUM

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:21 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Claim Tasks | 3 | Verify Offsets | Completed | SAAED9 |

Verify Offsets

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:22 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Documents/Mail | 6 | Pend Ltr to Employee | Completed | SAAED9 |

Pend Ltr to EmployeeAttachments:LTD APS

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 | Documents/Mail | 7 | Pend Ltr to Employer | Completed | SAAED9 |

Pend Ltr to Employer

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 12:45:04 PM | Summary/Assessment/Pa | 1h | PENDING SAP - SAAED9 - Oct 23, 2023 12:45:29 pm | Requested | SAAED9 |

Summary Notes
PENDING SAP - SAAED9 - Oct 23, 2023 12:45:29 pm
Assessment Notes

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.
It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm

EE Earns salary of $5,688.00 biw eekly
$5,688.00 * 26 = $147,888.00 / 12 = $12,324
- SAAED9 - Dec 22, 2023 01:30:01 pm
Path Notes
Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/20/2023, DOD: Will need to verify, DX: Will need to verify no APS how ever OVN indicate lumbar complaints due to MVA.

Per Policy:
20 hr/w k min, 24 month OO, 12/12/24 pre-ex (ER Form indicates 07/01/20213 since it is 0% er paid w ill request copy of enrollment how ever pre-ex w ill not apply ) 90 day elim, 60% benefit, $6,000 max, $100 or 10% min, MBP is RBDSS.

Eligibility:
Claim is LB 0% ER paid. Per ER: Class 02, DOH: 02/21/2006, EE w orks 40 hr/w k, 10 hr/day, DLW: 07/20/2023, Other pension plan, EE does not contribute. Occupation: Captain

Assessment:
Claim form dated 04/09/203
EE w as searching for a missing person; off road vehicle they w ere in lost steering and rolled 3 times.

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

Path:
Claim is pending for payroll, jd and copy of LTD enrollment
Will need medical records for initial support.
- SAAED9 - Oct 23, 2023 12:45:29 pm

UPDATED PATH:
Rec'ed payroll and JD from er. No contact phone number for EE. Sent f/u and AUTH to EE - SAAED9 - Oct 31, 2023 11:36:00 am

UPDATED ASSESSMENT:
04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

**Chronological Activity List**

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

UPDATED PATH:
Rec'ed OVN how ever w e still need AUTH and APS/ The Auth provided w as signed online. APS w ill provide DOD, DX and R&L.

Once APS is rec'ed w ill send to CR for initial support. - SAAED9 - Nov 16, 2023 02:58:13 pm

UPDATED ASSESSMENT:
09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical
DX: M54.50 Low Back Pain
First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023
Hospital confined: 04/09/2022-04/10/2022

**Chronological Activity List**

Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times.
R&L: Not able to RTW in law enforcement.

UPDATED PATH:
Sending to CR for intial support- requesting peer review . - SAAED9 - Nov 21, 2023 09:29:27 am

UPDATED ASSESSMENT:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

UPDATED PATH:
Claim is ready to be approved how ever w e need retirment info prior to approval. - SAAED9 - Dec 15, 2023 02:57:51 pm

UPDATED PATH:
Retirment info has been rec'ed and offset for. Claim is approved to current. Sending for OA to verify OCC. Will f/u w ith EE 3-4 months to gather update. - SAAED9 - Dec 22, 2023 01:31:28 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/23/2023 2:06:55 PM | Claim Tasks | 9 | Call Claimant | Requested | SAAED9 |

No phone number on file for EE. questioned ER for phone number. - SAAED9 - Oct 23, 2023 02:07:28 pm

ER sent requested info- no contact number. sent f/u to gather number sent copy of auth to EE - SAAED9 - Oct 31, 2023 11:34:53 am

CALLED EE FOR INTIAL CALL NO ANSWER LVM. WILL F/U WITH EE - SAAED9 - Nov 08, 2023 03:41:23 pm

EE is going to send AUTH and APS w ith all the records he has - SAAED9 - Nov 09, 2023 02:44:00 pm

Have rec'ed OVN how ever the auth w as docusigned- need APS for DOD. Once APS is rec'ed w ill send the recrods w e do have for CR to determine if it is enough for inital support.

Will send 2nd pend 11/27 (due to hoilday w eekend) - SAAED9 - Nov 16, 2023 03:00:53 pm

Sent to CR for inital support and verify DOD - SAAED9 - Nov 21, 2023 09:38:41 am

REC'ED PEER REVIEW- VEIRFY DLW AND RTW PLANS THEN APPROVE - SAAED9 - Dec 12, 2023 07:06:02 pm
Called EE to address approval. he stated that he is getting retirment w hich w as 100% ER paid how ever he did pay a lump sum to it. sending me info regarding it w ill w ait for that before approval - SAAED9 - Dec 15, 2023 03:18:11 pm

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:50 am

rec'ed retirement info - SAAED9 - Dec 18, 2023 04:07:48 pm

rec'ed retirement info from ee- show s lump sum of EE and payment from ER. need to verify from the ER the EE and ER% if its 0% EE and EE just paid the lump sum then w ill subtract that and offset for the rest. - SAAED9 - Dec 20, 2023 12:13:27 pm

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Reviewed retirment with senior. Added offset which still pays min. Called EE for approval advised of offset. - SAAED9 - Dec 26, 2023 03:31:29 pm<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:00 pm | | | | |
| 10/23/2023 2:07:33 PM | Claim Tasks | 10 | Call Employer | Requested | SAAED9 |
| | F/U with ER for requested information. - SAAED9 - Oct 23, 2023 02:08:38 pm<br>Rec'ed payroll and JD and POC from ER - SAAED9 - Oct 27, 2023 02:49:12 pm<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:04 pm | | | | |
| 10/23/2023 2:15:54 PM | Referrals | 1 | Senior Review | Initial | SAAED9 |
| | Summary:<br>EE is 43 y/o, Occupation: Police Captain, DLW: 07/20/2023, DOD: Will need to verify, DX: Will need to verify no APS however OVN indicate lumbar complaints due to MVA.<br><br>Per Policy:<br>20 hr/wk min, 24 month OO, 12/12/24 pre-ex (ER Form indicates 07/01/20213 since it is 0% er paid will request copy of enrollment however pre-ex will not apply ) 90 day elim, 60% benefit, $6,000 max, $100 or 10% min, MBP is RBDSS.<br><br>Eligibility:<br>Claim is LB 0% ER paid. Per ER: Class 02, DOH: 02/21/2006, EE works 40 hr/wk, 10 hr/day, DLW: 07/20/2023, Other pension plan, EE does not contribute. Occupation: Captain<br><br>Assessment:<br>Claim form dated 04/09/203<br>EE was searching for a missing person; off road vehicle they were in lost steering and rolled 3 times.<br><br>09/18/2023<br>Seen for initial consult-lumbar<br><br>09/26/2023<br>Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.<br><br>Path:<br>Claim is pending for payroll, jd and copy of LTD enrollment<br>Will need medical records for initial support. - Senior Review - SAAED9 - Oct 23, 2023 02:16:09 pm<br><br>10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt who has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there was an MVA and it is W/C related. Pending letter asks for APS, however, not EE/AUTH. Are these located somewhere else? If not, recommend requesting these as well. Thank you! - Senior Review - KXKENYO - Oct 25, 2023 01:30:44 pm<br><br>Item Closed with Claim by System - Senior Review - KRTEDFO - Nov 04, 2025 02:47:10 pm | | | | |
| 10/23/2023 8:23:50 PM | Investigation | 1 | Determine Disability | Requested | SAAED9 |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:25 pm | | | | |
| 10/25/2023 11:22:25 AM | Documents/Mail | 8 | Email | Received | SAAED9 |
| | 2023-10-24-13.00.44.506680O01<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:36 pm | | | | |
| 10/25/2023 11:22:26 AM | Documents/Mail | 9 | Incoming Correspondence | Received | SAAED9 |
| | 2023-10-24-13.00.44.559680O01<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:57 pm | | | | |

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/25/2023 11:22:26 AM | Documents/Mail | 10 | Incoming Correspondence | Received | SAAED9 |

2023-10-24-13.00.44.588680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:58 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/25/2023 11:22:27 AM | Documents/Mail | 11 | Incoming Correspondence | Received | SAAED9 |

2023-10-24-13.00.44.616680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:59 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/25/2023 1:30:47 PM | Claim Tasks | 11 | Audit | Requested | KXKENYO |

10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt w ho has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there w as an MVA and it is W/C related. Pending letter asks for APS, how ever, not EE/AUTH. Are these located somew here else? If not, recommend requesting these as w ell. Thank you! - KXKENYO - Oct 25, 2023 01:31:00 pm

11/27/2023: clm is now pending for CR. - KXKENYO - Nov 27, 2023 11:59:08 am

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:42 am

Set audit to refer to VOC for OA - KXKENYO - Dec 21, 2023 02:29:46 pm

CLOSING AS CLAIM HAS BEEN APRPOVED. - SAAED9 - Dec 22, 2023 01:23:50 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:09 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/26/2023 | Documents/Mail | 8 | Email | Completed | SAAED9 |

2023-10-24-13.00.44.506680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:36 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2023 | Claim Tasks | 10 | Call Employer | Completed | SAAED9 |

F/U w ith ER for requested information. - SAAED9 - Oct 23, 2023 02:08:38 pm
Rec'ed payroll and JD and POC from ER - SAAED9 - Oct 27, 2023 02:49:12 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:04 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2023 | Documents/Mail | 9 | Incoming Correspondence | Completed | SAAED9 |

2023-10-24-13.00.44.559680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:57 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2023 | Documents/Mail | 10 | Incoming Correspondence | Completed | SAAED9 |

2023-10-24-13.00.44.588680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:58 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2023 | Documents/Mail | 11 | Incoming Correspondence | Completed | SAAED9 |

2023-10-24-13.00.44.616680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:59 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/31/2023 | Documents/Mail | 12 | Request Sign Authorization | Completed | SAAED9 |

Request Sign AuthorizationAttachments:Auth Medical

| | | | | | |
|---|---|---|---|---|---|
| 10/31/2023 | Referrals | 1 | Senior Review | Completed | SAAED9 |

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/20/2023, DOD: Will need to verify, DX: Will need to verify no APS how ever OVN indicate lumbar complaints due to MVA.

Per Policy:
20 hr/w k min, 24 month OO, 12/12/24 pre-ex (ER Form indicates 07/01/20213 since it is 0% er paid w ill request copy of enrollment how ever pre-ex w ill not apply ) 90 day elim, 60% benefit, $6,000 max, $100 or 10% min, MBP is RBDSS.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Eligibility:
Claim is LB 0% ER paid. Per ER: Class 02, DOH: 02/21/2006, EE w orks 40 hr/w k, 10 hr/day, DLW: 07/20/2023, Other pension plan, EE does not contribute. Occupation: Captain

Assessment:
Claim form dated 04/09/203
EE w as searching for a missing person; off road vehicle they w ere in lost steering and rolled 3 times.

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

Path:
Claim is pending for payroll, jd and copy of LTD enrollment
Will need medical records for initial support. - Senior Review - SAAED9 - Oct 23, 2023 02:16:09 pm

10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt w ho has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there w as an MVA and it is W/C related. Pending letter asks for APS, how ever, not EE/AUTH. Are these located somew here else? If not, recommend requesting these as w ell. Thank you! - Senior Review - KXKENYO - Oct 25, 2023 01:30:44 pm

Item Closed w ith Claim by System - Senior Review - KRTEDFO - Nov 04, 2025 02:47:10 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/31/2023 12:52:35 PM | Documents/Mail | 13 | Email | Received | SAAED9 |

Good afternoon,

Thank you for the information. We have forw arded your email to the Claims Examiner assigned to claim 1230082409 for assistance. Please allow 1 to 2 business days for them to review and respond accordingly.

Please let us know if w e can be of further assistance.

Thank you,

Precious Dortch
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

National Corporation and its affiliates.

On 10/30/2023 10:06 AM, From: dboruchow itz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831> CTI_CALL, dboruchow itz@ottcmail.com w rote:
I have an appointment in 2 w eeks, is that sufficient for getting the doctor?s statement or do you need me to try to get an earlier appointment?

From: claims@lfg.com <claims@lfg.com>
Sent: Friday, October 13, 2023 2:58 PM
To: dboruchow itz@ottcmail.com
Cc: disabilityclaims@lfg.com
Subject: Re: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

This message w as sent securely using Zix?

Hello David,

Thank you for your email. I have forw arded the attached claim information for David Boruchow itz to our Disability Department for processing. We w ill still require the Attending Physician's Statement, and Authorization form before w e can begin the initial review . Once this information is received, please allow 5 to 7 business days for the initial review . In that time a determination w ill be made, or additional information w ill be requested.

Please let us know if w e can be of further assistance.

Thank you,

Michelle Adams
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 10/12/2023 4:45 PM, From: dboruchow itz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 CTI_CALL, dboruchow itz@ottcmail.com w rote:
***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning,

I have attached the claim form to open the claim.

With it I have attached the doctor?s certification that he had to submit to PERS for my disability retirement outlining my injury and disability as w ell as accompanying medical records.

**Chronological Activity List**

In addition, I have attached the PERS letter of acceptance of my total and permanent disability.

Can you advise if this suffices or do I need to go back to the doctor and have him complete the Lincoln form specifically.

Please let me know .

Thanks.

David Boruchow itz

From: Claims <Claims@lfg.com>
Sent: Thursday, October 12, 2023 2:01 PM
To: dboruchow itz@fltg.net
Subject: POLICY NUMBER - 000010177364-00000

Per request document attached.

Please be sure to include claim number in subject line for faster processing.

You can send or upload documents via on

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:00 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/31/2023 3:16:39 PM | Documents/Mail | 14 | Email | Received | SAAED9 |

2023-10-30-11.08.27.678720O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:37 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/2/2023 | Documents/Mail | 13 | Email | Completed | SAAED9 |

Good afternoon,

Thank you for the information. We have forw arded your email to the Claims Examiner assigned to claim 1230082409 for assistance. Please allow 1 to 2 business days for them to review and respond accordingly.

Please let us know if w e can be of further assistance.

Thank you,

Precious Dortch
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 10/30/2023 10:06 AM, From: dboruchow itz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831> CTI_CALL, dboruchow itz@ottcmail.com w rote:
I have an appointment in 2 w eeks, is that sufficient for getting the doctor?s statement or do you need me to try to get an earlier appointment?

From: claims@lfg.com <claims@lfg.com>
Sent: Friday, October 13, 2023 2:58 PM
To: dboruchow itz@ottcmail.com
Cc: disabilityclaims@lfg.com
Subject: Re: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

This message w as sent securely using Zix?

Hello David,

Thank you for your email. I have forw arded the attached claim information for David Boruchow itz to our Disability Department for processing. We w ill still require the Attending Physician's Statement, and Authorization form before w e can begin the initial review . Once this information is received, please allow 5 to 7 business days for the initial review . In that time a determination w ill be made, or additional information w ill be requested.

Please let us know if w e can be of further assistance.

Thank you,

Michelle Adams
Customer Care
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

Administration
Fax: 877-573-6177
Email: clientservices@lfg.com

Claims
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 10/12/2023 4:45 PM, From: dboruchow itz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 CTI_CALL, dboruchow itz@ottcmail.com w rote:
***This email is from an external source. Only open links and attachments from a Trusted Sender.***
Good morning,

**Chronological Activity List**

I have attached the claim form to open the claim.

With it I have attached the doctor?s certification that he had to submit to PERS for my disability retirement outlining my injury and disability as w ell as accompanying medical records.

In addition, I have attached the PERS letter of acceptance of my total and permanent disability.

Can you advise if this suffices or do I need to go back to the doctor and have him complete the Lincoln form specifically.

Please let me know .

Thanks.

David Boruchow itz

From: Claims <Claims@lfg.com>
Sent: Thursday, October 12, 2023 2:01 PM
To: dboruchow itz@fltg.net
Subject: POLICY NUMBER - 000010177364-00000

Per request document attached.

Please be sure to include claim number in subject line for faster processing.

You can send or upload documents via on

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:00 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/2/2023 | Documents/Mail | 14 | Email | Completed | SAAED9 |

2023-10-30-11.08.27.678720O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:37 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/2/2023 11:11:36 AM | Documents/Mail | 15 | Email | Received | SAAED9 |

2023-10-31-13.26.39.210720O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:01 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/6/2023 | Documents/Mail | 15 | Email | Completed | SAAED9 |

2023-10-31-13.26.39.210720O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:01 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/8/2023 | Telephone (IN) | 2 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

CALLED EE FOR INTIAL CALL NO ANSWER LVM - SAAED9 - Nov 08, 2023 03:40:18 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/9/2023 | Telephone (OUT) | 3 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Verified demos
Stephane Bourchow itz 12/19/1983

Madelynn 04/23/2007
Noah 05/26/2009

Has retirement- just got the check this w eek
No final amount how much he w ill receive this check w as $4700 est benefit going forw ard w ill be $8100 per month

Has not started to receive WC- the short answ er is he may not get it. One dr w rote that he w as "Retired released for full duty"

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

What is your occupation?
Now retired due to this disability

What is the disabling condition that took you out of w ork?
Was on duty got involved in a car accident and ended up w ith a back injury- has not had SX yet they are discussing this

TX: Doing injection- just got one on Tuesday.

Can you stand to prep/cook a meal? Yes, everything is timely but able to do light things
Can you push/pull to vacuum mop ot sw eep? Yes, does not do it but could do it
Can you drive? Yes, long durations become painful
EE show er independently? Yes
Yes can reach up and bend dow n

Typical day?
Does a lot of rotating positions, not able to sit or stand w ithout hurting. Will move around all day. Hangs around the house daily, has animals that he takes care of, does not do much yard w ork

Plan?
Has OV on 11/13 then 11/14 and 11/17
EE meets w ith 3 different drs

Original back dr- then sent to pain mgnt- then sent to a surgeon w ho sent him back to pain mgnt then has primary care

What w as your DLW: 10/12
Injury 04/2022
Starting 07/08 EE w as on paid leave- had no loss of income
His loss of income began 10/13
- SAAED9 - Nov 09, 2023 02:43:37 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:06 AM | Documents/Mail | 16 | Email | Received | SAAED9 |

2023-11-10-08.16.21.998680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:02 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:07 AM | Documents/Mail | 17 | Medical Records | Received | SAAED9 |

2023-11-10-08.16.22.022680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:38 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:08 AM | Documents/Mail | 18 | Medical Records | Received | SAAED9 |

2023-11-10-08.16.22.040680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:03 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:09 AM | Documents/Mail | 19 | Medical Records | Received | SAAED9 |

2023-11-10-08.16.22.077680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:04 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:10 AM | Documents/Mail | 20 | Medical Records | Received | SAAED9 |

2023-11-10-08.16.22.125680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:39 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2023 8:06:11 AM | Documents/Mail | 21 | Incoming Correspondence | Received | SAAED9 |

2023-11-10-08.16.22.150680O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:05 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/15/2023 8:54:40 AM | Documents/Mail<br>2023-11-12-16.42.45.791860O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:40 pm | 22 | Email | Received | SAAED9 |
| 11/15/2023 8:54:41 AM | Documents/Mail<br>2023-11-12-16.42.45.837860O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:06 pm | 23 | Email | Received | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.21.998680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:02 pm | 16 | Email | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.22.022680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:38 pm | 17 | Medical Records | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.22.040680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:03 pm | 18 | Medical Records | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.22.077680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:04 pm | 19 | Medical Records | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.22.125680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:39 pm | 20 | Medical Records | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-10-08.16.22.150680O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:05 pm | 21 | Incoming Correspondence | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-12-16.42.45.791860O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:40 pm | 22 | Email | Completed | SAAED9 |
| 11/16/2023 | Documents/Mail<br>2023-11-12-16.42.45.837860O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:06 pm | 23 | Email | Completed | SAAED9 |
| 11/17/2023 | Documents/Mail<br>2023-11-14-12.52.36.993800O01 | 24 | Email | Completed | SAAED9 |
| 11/17/2023 5:20:44 AM | Documents/Mail<br>2023-11-14-12.52.37.015800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:07 pm | 25 | Medical Records | Received | SAAED9 |
| 11/17/2023 5:20:46 AM | Documents/Mail<br>2023-11-14-12.52.37.056800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:08 pm | 26 | Claim Form - EE, ER, APS | Received | SAAED9 |
| 11/17/2023 5:25:50 AM | Documents/Mail<br>2023-11-14-12.52.36.993800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:41 pm | 27 | Email | Received | SAAED9 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/17/2023 5:25:51 AM | Documents/Mail | 28 | Medical Records | Received | SAAED9 |
| | 2023-11-14-12.52.37.015800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:43 pm | | | | |
| 11/17/2023 5:25:52 AM | Documents/Mail | 29 | Claim Form - EE, ER, APS | Received | SAAED9 |
| | 2023-11-14-12.52.37.056800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:09 pm | | | | |
| 11/21/2023 | Investigation | 1 | Determine Disability | Received | SAAED9 |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:25 pm | | | | |
| 11/21/2023 | Documents/Mail | 25 | Medical Records | Completed | SAAED9 |
| | 2023-11-14-12.52.37.015800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:07 pm | | | | |
| 11/21/2023 | Documents/Mail | 26 | Claim Form - EE, ER, APS | Completed | SAAED9 |
| | 2023-11-14-12.52.37.056800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:08 pm | | | | |
| 11/21/2023 | Documents/Mail | 27 | Email | Completed | SAAED9 |
| | 2023-11-14-12.52.36.993800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:41 pm | | | | |
| 11/21/2023 | Documents/Mail | 28 | Medical Records | Completed | SAAED9 |
| | 2023-11-14-12.52.37.015800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:43 pm | | | | |
| 11/21/2023 | Documents/Mail | 29 | Claim Form - EE, ER, APS | Completed | SAAED9 |
| | 2023-11-14-12.52.37.056800O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:09 pm | | | | |
| 11/21/2023 9:37:51 AM | Referrals | 2 | Initial Claim Review | Initial | SAAED9 |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:53 pm<br>Demographics<br>Claimant Name: David Boruchow itz<br>Claim Number: 1230082409<br>Occupation/level: Police captain<br>Diagnosis: DX: M54.50 Low Back Pain<br><br>DOD: Unknow n<br>DLW:07/20/2023<br><br>04/10/2022 CT Chest<br>No evidence of acute intrathoracic injury<br><br>04/10/2022 CT Abdomen/Pelvis<br>No acute inta-abdominal injury. Hepatic steatosis<br><br>04/10/2022 CT Cervical Spine<br>No acute abnormality of cervical spine<br><br>04/10/2022 CT Brain<br>No acute intracranial abnormality<br><br>04/18/2022 Ltr from WC<br><br>06/01/2022 XR Lumbar Spine<br>Multilevel degenerative disc disease | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain following a rollover accident at work 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild weakness.

11/18/2022
Underwent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes worst at L5-S1 where there is minimal right and mild left neuroforaminal narrowing mild lateral recess narrowing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underwent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

Claim form dated 04/09/203
EE was searching for a missing person; off road vehicle they were in lost steering and rolled 3 times.

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical
DX: M54.50 Low Back Pain
First appeared: 04/09/2022, Advised to stop work: 07/10/2023
Hospital confined: 04/09/2022-04/10/2022
Injury: During a search and rescue operation EE rolled off highway vehicle numerous times.

R&L: Not able to RTW in law enforcement.

Specific Medical Question:

***Please consider peer review - EE w as in w ork related injury/car accident w here he w as on a search and rescure and his car rolled off the highw ay multiple times. The accident happened in 04/2022- EE continued to w ork from 04/2022 throguh 07/2023.

CE w ould like to verify that the DOD of 07/10/2023 is supported. Then answ ering the follow ing questions:

1.Are there any physical conditions supported by the clinical evidence that are functionally impairing? If yes, please provide primary and secondary DX and clinical rationale to support.
2.If functional impairment is supported, does this translate into restrictions and limitations? If yes, please provide restrictions and limitations and duration. Please do not provide functional level (sedentary / light / etc.) but report restrictions / limitations and timetable for these.
3.What w ould be considered reasonable medical care and treatment for the clmt's conditions?
4.What is the prognosis for recovery and timeframe for clinical follow up?

Thank you kindly - SAAED9 - Nov 21, 2023 09:38:15 am
transferred to stbha1 - PRAWA5 - Nov 27, 2023 06:31:11 am
Date:November 27, 2023

Subject:Nursing Memorandum

Claim#: 1230082409
Claimant: David Boruchow itz
Clinical Assessment: EE is a 43 y/o police captain w ith DOD of 7/10/23 for low back pain. Past medical history of diabetes. EE's care team includes Peter S. Su, MD (Physical medicine and rehabilitation) and Andrew Cash, MD (orthopedic spine surgery) and Alexander S. Janda, DC (Chiropractor). The file contains multiple medical records that predate date of disability, from 4/9/22 to 8/9/23. CT of the cervical (neck) spine on 4/10/22 show ed normal findings. CT of the abdomen/pelvis on 4/10/22 show ed fatty liver and small hernia. On 6/1/22 lumbar x-ray show ed multilevel degenerative disc disease (age related spinal changes). 12/13/22 lumbar MRI show ed mild degenerative changes (age related spinal changes) and minimal disc bulge.

EE seen by Dr. Janda for ongoing chiropractic treatment form 4/9/22 to 8/9/23 for continued low back pain. EE underw ent manual therapy. He is scheduled for pain management consultation on 8/9/23.

The file contains a PT evaluation on 6/22/23 for low back pain and lumbar sprain. EE is seen one time w ith recommendation of home exercise program. He reports concern w hen transferring from sitting to standing and feels pain w ith prolonged sitting/standing.
EE presented to Dr. Case on 9/18/23 for initial consult, EE reports w ork related injury and back pain that radiates to his low er extremities, numbness, tingling, pain and w eakness. EE has had chiropractic treatment and injections. In the office w eight 250 lbs., height 5'11", BMI 34.86, imaging show ed abnormal findings (lumbar spine) and exam show ed pain w ith range of motion. The EE is a referral to pain management for spinal injections.

EE seen by Dr. Su for multiple office visits from 9/5/23 to 11/13/23. On 9/26/23 EE seen for low back pain; he continues to report low er back pain w hich developed after a w ork-related injury on 4/9/22. He w as seen by Dr. Cash w ith recommendation of spinal injections. EE received a lumbar injection on 8/28/23 and reports minimal relief, also reports medication (diclofenac and baclofen) w ere just approved but not picked up. Prior Lumbar MRI on 12/13/22 show ed mild degenerative changes and minimal disc bulge. Exam findings on 9/26/23 show ed full range of motion but painful, and tenderness. EE is diagnosed w ith degenerative changes and sprain of lumbar spine. Treatment plan includes continue home exercise and stretching, medications, injections, physical therapy, and follow -up in 3-4 w eeks. EE received an injection on 11/06/23. Follow -up w ith Dr. Su on 11/13/23, he reports 95% pain relief from injection on 11/6/23.

APS completed by Joshua, Weltha, PA-C (Physician Assistant-primary care provider) on 11/14/23, Spring Mountain Medical), R/Ls of no repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs. frequently or 20 lbs. occasionally. EE not to return to w ork in law enforcement.

Records are unclear regarding functional limitations and restrictions therefore sending for peer review .

**Chronological Activity List**

Stephanie Haire, RN
Nurse Disability Consultant, Lincoln Financial Group - STBHA1 - Nov 28, 2023 02:23:02 pm
Date:November 28, 2023

Subject:Nursing Memorandum

Claim#: 1230082409
Claimant: David Boruchow itz
Clinical Assessment: EE is a 43 y/o police captain w ith DOD of 7/10/23 for low back pain. Past medical history of diabetes. EE's care team includes Peter S. Su, MD (Physical medicine and rehabilitation) and Andrew Cash, MD (orthopedic spine surgery) and Alexander S. Janda, DC (Chiropractor). The file contains multiple medical records that predate date of disability, from 4/9/22 to 8/9/23. CT of the cervical (neck) spine on 4/10/22 show ed normal findings. CT of the abdomen/pelvis on 4/10/22 show ed fatty liver and small hernia. On 6/1/22 lumbar x-ray show ed multilevel degenerative disc disease (age related spinal changes). 12/13/22 lumbar MRI show ed mild degenerative changes (age related spinal changes) and minimal disc bulge.

EE seen by Dr. Janda for ongoing chiropractic treatment form 4/9/22 to 8/9/23 for continued low back pain. EE underw ent manual therapy. He is scheduled for pain management consultation on 8/9/23.

The file contains a PT evaluation on 6/22/23 for low back pain and lumbar sprain. EE is seen one time w ith recommendation of home exercise program. He reports concern w hen transferring from sitting to standing and feels pain w ith prolonged sitting/standing.
EE presented to Dr. Case on 9/18/23 for initial consult, EE reports w ork related injury and back pain that radiates to his low er extremities, numbness, tingling, pain and w eakness. EE has had chiropractic treatment and injections. In the office w eight 250 lbs., height 5'11", BMI 34.86, imaging show ed abnormal findings (lumbar spine) and exam show ed pain w ith range of motion. The EE is a referral to pain management for spinal injections.

EE seen by Dr. Su for multiple office visits from 9/5/23 to 11/13/23. On 9/26/23 EE seen for low back pain; he continues to report low er back pain w hich developed after a w ork-related injury on 4/9/22. He w as seen by Dr. Cash w ith recommendation of spinal injections. EE received a lumbar injection on 8/28/23 and reports minimal relief, also reports medication (diclofenac and baclofen) w ere just approved but not picked up. Prior Lumbar MRI on 12/13/22 show ed mild degenerative changes and minimal disc bulge. Exam findings on 9/26/23 show ed full range of motion but painful, and tenderness. EE is diagnosed w ith degenerative changes and sprain of lumbar spine. Treatment plan includes continue home exercise and stretching, medications, injections, physical therapy, and follow -up in 3-4 w eeks. EE received an injection on 11/06/23. Follow -up w ith Dr. Su on 11/13/23, he reports 95% pain relief from injection on 11/6/23.

APS completed by Joshua, Weltha, PA-C (Physician Assistant-primary care provider) on 11/14/23, Spring Mountain Medical), R/Ls of no repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs. frequently or 20 lbs. occasionally. EE not to return to w ork in law enforcement.

Records are unclear regarding functional limitations and restrictions therefore sending for peer review . Also records indicate w ork-related injury that occurred in April 2022 how ever it is noted that the Employee w as w orking after accident prior to separating from the w orkplace and disability date of 7/10/23, so it is unclear w hat had changed. Sending for Peer review to comment on functional limitations and restrictions.

Stephanie Haire, RN
Nurse Disability Consultant, Lincoln Financial Group - STBHA1 - Nov 28, 2023 02:50:12 pm
Referral Date: November 28, 2023
Claims Specialist Name: Savannah Eddy
Phone Number: 800-423-2765 ext. 6932
Email Address: savannah.eddy@lfg.com

Submitter's Name: Stephanie Haire
Phone Number: 678-295-3208
Email Address: stephanie.haire@lfg.com

Is this referral COVID related? No

Referral Type: Standard File Review
Claimant Name: David Boruchow itz
Claim Number: 1230082409

**Chronological Activity List**

"Include any additional claim #'s involved: n/a
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Pacific Specific Time
Customer/Group Name: Nye County
Job Title: Police Captain
Product Type: LTD

Diagnosis: Low back pain
Date of Disability: 7/10/2023
Last Day Worked: 7/08/2023
Benefit Begin Date: 10/08/2023
Specialty Requested: Physical medicine and rehabilitation

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: No

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 7/10/2023 through 11/28/2023, and comment on the expected duration.

4. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

5. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

6. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name: Dr. Peter Su (Physical medicine and rehabilitation) Phone Number: 702-779-3994
Fax Number: 888-464-0838
"Name: Joshua Weltha, PA-C (primary care provider) Phone Number: 702-703-3351
Fax Number: 775-727-9452

Other Questions:
1.What is the prognosis for recovery and timeframe for clinical follow up? - STBHA1 - Nov 28, 2023 02:56:36 pm
Case Submitted to CRT Case #196918 for peer review w ith an PMR Physician. - KAONE5 - Nov 29, 2023 11:16:51 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - KAONE5 - Dec 06, 2023 01:08:02 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/22/2023 8:15:07 PM | Claim Tasks | 12 | 45 Day.Need Decision/Extension | Requested | SAAED9 |

Claim continues to pend for PEER REVIEW. - SAAED9 - Nov 27, 2023 04:36:22 pm

Agree an extension w ould be needed to allow the peer to come back. Please send a new pend letter explaining the need for additional time. Thanks - NLGREGO - Nov 28, 2023 11:00:26 am

sent letter to EE - SAAED9 - Nov 28, 2023 06:11:02 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:16 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/28/2023 | Claim Tasks | 12 | 45 Day.Need Decision/Extension | Completed | SAAED9 |

Claim continues to pend for PEER REVIEW. - SAAED9 - Nov 27, 2023 04:36:22 pm

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Agree an extension w ould be needed to allow the peer to come back. Please send a new pend letter explaining the need for additional time. Thanks - NLGREGO - Nov 28, 2023 11:00:26 am

sent letter to EE - SAAED9 - Nov 28, 2023 06:11:02 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:16 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/28/2023 | Documents/Mail | 30 | STD_LTD 45 Day Extension Letter | Completed | SAAED9 |

STD_LTD 45 Day Extension Letter

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/1/2023 | Claim Tasks | 13 | Valuation Error | Completed | SAAED9 |

The follow ing information is missing, please update:
Gender.
Do not close this task until ALL missing information has been updated in the system.

gender has been updated. - SAAED9 - Dec 01, 2023 09:47:51 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/6/2023 | Referrals | 2 | Initial Claim Review | Completed | SAAED9 |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:53 pm
Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Occupation/level: Police captain
Diagnosis: DX: M54.50 Low Back Pain

DOD: Unknow n
DLW:07/20/2023

04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

Claim form dated 04/09/203
EE w as searching for a missing person; off road vehicle they w ere in lost steering and rolled 3 times.

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical
DX: M54.50 Low Back Pain
First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023
Hospital confined: 04/09/2022-04/10/2022
Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times.
R&L: Not able to RTW in law enforcement.

Specific Medical Question:

***Please consider peer review - EE w as in w ork related injury/car accident w here he w as on a search and rescue and his car rolled off the highw ay multiple times. The accident happened in 04/2022- EE continued to w ork from 04/2022 throguh 07/2023.

CE w ould like to verify that the DOD of 07/10/2023 is supported. Then answ ering the follow ing questions:

1.Are there any physical conditions supported by the clinical evidence that are functionally impairing? If yes, please provide primary and secondary DX and clinical rationale to support.
2.If functional impairment is supported, does this translate into restrictions and limitations? If yes, please provide restrictions and limitations and duration. Please do not provide functional level (sedentary / light / etc.) but report restrictions / limitations and timetable for these.

**Chronological Activity List**

3.What w ould be considered reasonable medical care and treatment for the clmt's conditions?
4.What is the prognosis for recovery and timeframe for clinical follow up?

Thank you kindly - SAAED9 - Nov 21, 2023 09:38:15 am
transferred to stbha1 - PRAWA5 - Nov 27, 2023 06:31:11 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - KAONE5 - Dec 06, 2023 01:08:02 pm
Date:November 27, 2023

Subject:Nursing Memorandum

Claim#: 1230082409
Claimant: David Boruchow itz
Clinical Assessment: EE is a 43 y/o police captain w ith DOD of 7/10/23 for low back pain. Past medical history of diabetes. EE's care team includes Peter S. Su, MD (Physical medicine and rehabilitation) and Andrew Cash, MD (orthopedic spine surgery) and Alexander S. Janda, DC (Chiropractor). The file contains multiple medical records that predate date of disability, from 4/9/22 to 8/9/23. CT of the cervical (neck) spine on 4/10/22 show ed normal findings. CT of the abdomen/pelvis on 4/10/22 show ed fatty liver and small hernia. On 6/1/22 lumbar x-ray show ed multilevel degenerative disc disease (age related spinal changes). 12/13/22 lumbar MRI show ed mild degenerative changes (age related spinal changes) and minimal disc bulge.

EE seen by Dr. Janda for ongoing chiropractic treatment form 4/9/22 to 8/9/23 for continued low back pain. EE underw ent manual therapy. He is scheduled for pain management consultation on 8/9/23.

The file contains a PT evaluation on 6/22/23 for low back pain and lumbar sprain. EE is seen one time w ith recommendation of home exercise program. He reports concern w hen transferring from sitting to standing and feels pain w ith prolonged sitting/standing.
EE presented to Dr. Case on 9/18/23 for initial consult, EE reports w ork related injury and back pain that radiates to his low er extremities, numbness, tingling, pain and w eakness. EE has had chiropractic treatment and injections. In the office w eight 250 lbs., height 5'11", BMI 34.86, imaging show ed abnormal findings (lumbar spine) and exam show ed pain w ith range of motion. The EE is a referral to pain management for spinal injections.

EE seen by Dr. Su for multiple office visits from 9/5/23 to 11/13/23. On 9/26/23 EE seen for low back pain; he continues to report low er back pain w hich developed after a w ork-related injury on 4/9/22. He w as seen by Dr. Cash w ith recommendation of spinal injections. EE received a lumbar injection on 8/28/23 and reports minimal relief, also reports medication (diclofenac and baclofen) w ere just approved but not picked up. Prior Lumbar MRI on 12/13/22 show ed mild degenerative changes and minimal disc bulge. Exam findings on 9/26/23 show ed full range of motion but painful, and tenderness. EE is diagnosed w ith degenerative changes and sprain of lumbar spine. Treatment plan includes continue home exercise and stretching, medications, injections, physical therapy, and follow -up in 3-4 w eeks. EE received an injection on 11/06/23. Follow -up w ith Dr. Su on 11/13/23, he reports 95% pain relief from injection on 11/6/23.

APS completed by Joshua, Weltha, PA-C (Physician Assistant-primary care provider) on 11/14/23, Spring Mountain Medical), R/Ls of no repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs. frequently or 20 lbs. occasionally. EE not to return to w ork in law enforcement.

Records are unclear regarding functional limitations and restrictions therefore sending for peer review .

Stephanie Haire, RN
Nurse Disability Consultant, Lincoln Financial Group - STBHA1 - Nov 28, 2023 02:23:02 pm
Date:November 28, 2023

Subject:Nursing Memorandum

Claim#: 1230082409
Claimant: David Boruchow itz
Clinical Assessment: EE is a 43 y/o police captain w ith DOD of 7/10/23 for low back pain. Past medical history of diabetes. EE's care team includes Peter S. Su, MD (Physical medicine and rehabilitation) and Andrew Cash, MD (orthopedic spine surgery) and Alexander S. Janda, DC (Chiropractor). The file contains multiple medical records that predate date of disability, from 4/9/22 to 8/9/23. CT of the cervical (neck) spine on 4/10/22 show ed normal findings. CT of the abdomen/pelvis on 4/10/22 show ed fatty liver and small hernia. On 6/1/22 lumbar x-ray show ed multilevel degenerative disc disease (age related spinal changes). 12/13/22 lumbar MRI show ed mild degenerative

changes (age related spinal changes) and minimal disc bulge.

EE seen by Dr. Janda for ongoing chiropractic treatment form 4/9/22 to 8/9/23 for continued low back pain. EE underw ent manual therapy. He is scheduled for pain management consultation on 8/9/23.

The file contains a PT evaluation on 6/22/23 for low back pain and lumbar sprain. EE is seen one time w ith recommendation of home exercise program. He reports concern w hen transferring from sitting to standing and feels pain w ith prolonged sitting/standing.
EE presented to Dr. Case on 9/18/23 for initial consult, EE reports w ork related injury and back pain that radiates to his low er extremities, numbness, tingling, pain and w eakness. EE has had chiropractic treatment and injections. In the office w eight 250 lbs., height 5'11", BMI 34.86, imaging show ed abnormal findings (lumbar spine) and exam show ed pain w ith range of motion. The EE is a referral to pain management for spinal injections.

EE seen by Dr. Su for multiple office visits from 9/5/23 to 11/13/23. On 9/26/23 EE seen for low back pain; he continues to report low er back pain w hich developed after a w ork-related injury on 4/9/22. He w as seen by Dr. Cash w ith recommendation of spinal injections. EE received a lumbar injection on 8/28/23 and reports minimal relief, also reports medication (diclofenac and baclofen) w ere just approved but not picked up. Prior Lumbar MRI on 12/13/22 show ed mild degenerative changes and minimal disc bulge. Exam findings on 9/26/23 show ed full range of motion but painful, and tenderness. EE is diagnosed w ith degenerative changes and sprain of lumbar spine. Treatment plan includes continue home exercise and stretching, medications, injections, physical therapy, and follow -up in 3-4 w eeks. EE received an injection on 11/06/23. Follow -up w ith Dr. Su on 11/13/23, he reports 95% pain relief from injection on 11/6/23.

APS completed by Joshua, Weltha, PA-C (Physician Assistant-primary care provider) on 11/14/23, Spring Mountain Medical), R/Ls of no repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs. frequently or 20 lbs. occasionally. EE not to return to w ork in law enforcement.

Records are unclear regarding functional limitations and restrictions therefore sending for peer review . Also records indicate w ork-related injury that occurred in April 2022 how ever it is noted that the Employee w as w orking after accident prior to separating from the w orkplace and disability date of 7/10/23, so it is unclear w hat had changed. Sending for Peer review to comment on functional limitations and restrictions.

Stephanie Haire, RN
Nurse Disability Consultant, Lincoln Financial Group - STBHA1 - Nov 28, 2023 02:50:12 pm
Referral Date: November 28, 2023
Claims Specialist Name: Savannah Eddy
Phone Number: 800-423-2765 ext. 6932
Email Address: savannah.eddy@lfg.com

Submitter's Name: Stephanie Haire
Phone Number: 678-295-3208
Email Address: stephanie.haire@lfg.com

Is this referral COVID related? No

Referral Type: Standard File Review
Claimant Name: David Boruchow itz
Claim Number: 1230082409
"Include any additional claim #'s involved: n/a
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Pacific Specific Time
Customer/Group Name: Nye County
Job Title: Police Captain
Product Type: LTD

Diagnosis: Low back pain
Date of Disability: 7/10/2023
Last Day Worked: 7/08/2023
Benefit Begin Date: 10/08/2023
Specialty Requested: Physical medicine and rehabilitation

**Chronological Activity List**

Name and Specialty of prior external vendor review ers/ examiners: N/A

Attorney Involvement: No

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 7/10/2023 through 11/28/2023, and comment on the expected duration.

4. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

5. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

6. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name: Dr. Peter Su (Physical medicine and rehabilitation) Phone Number: 702-779-3994
Fax Number: 888-464-0838
"Name: Joshua Weltha, PA-C (primary care provider) Phone Number: 702-703-3351
Fax Number: 775-727-9452

Other Questions:
1.What is the prognosis for recovery and timeframe for clinical follow up? - STBHA1 - Nov 28, 2023 02:56:36 pm
Case Submitted to CRT Case #196918 for peer review w ith an PMR Physician. - KAONE5 - Nov 29, 2023 11:16:51 am

| | | | | | |
|---|---|---|---|---|---|
| 12/8/2023 7:10:17 PM | Documents/Mail | 31 | Email | Received | SAAED9 |
| | 2023-12-06-14.09.35.563180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:44 pm | | | | |
| 12/8/2023 7:10:19 PM | Documents/Mail | 32 | Medical Records | Received | SAAED9 |
| | 2023-12-06-14.09.35.594180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:45 pm | | | | |
| 12/12/2023 | Documents/Mail | 31 | Email | Completed | SAAED9 |
| | 2023-12-06-14.09.35.563180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:44 pm | | | | |
| 12/12/2023 | Documents/Mail | 32 | Medical Records | Completed | SAAED9 |
| | 2023-12-06-14.09.35.594180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:45 pm | | | | |
| 12/15/2023 | Telephone (OUT) | 4 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |
| | Called EE to address approval. he stated that he is getting retirment w hich w as 100% ER paid how ever he did pay a lump sum to it. sending me info regarding it w ill w ait for that before approval - SAAED9 - Dec 15, 2023 03:17:48 pm | | | | |
| 12/18/2023 8:51:20 PM | Documents/Mail | 33 | Email | Received | SAAED9 |
| | 2023-12-18-09.36.10.745220O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:46 pm | | | | |
| 12/18/2023 8:51:21 PM | Documents/Mail | 34 | Incoming Correspondence | Received | SAAED9 |
| | 2023-12-18-09.36.10.798220O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:11 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/20/2023 | Documents/Mail | 33 | Email | Completed | SAAED9 |

2023-12-18-09.36.10.745220O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:46 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/20/2023 | Documents/Mail | 34 | Incoming Correspondence | Completed | SAAED9 |

2023-12-18-09.36.10.798220O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:11 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/21/2023 2:28:02 PM | Claim Tasks | 14 | Audit | Requested | SAAED9 |

10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt w ho has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there w as an MVA and it is W/C related. Pending letter asks for APS, how ever, not EE/AUTH. Are these located somew here else? If not, recommend requesting these as w ell. Thank you! - KXKENYO - Oct 25, 2023 01:31:00 pm

11/27/2023: clm is now pending for CR. - KXKENYO - Nov 27, 2023 11:59:08 am

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:42 am

Will you please refer to VOC for OA w hile the retirement info is sorted out? Thank you! - KXKENYO - Dec 21, 2023 02:28:44 pm

CLOSING AS CLAIM HAS BEEN APRPOVED. - SAAED9 - Dec 22, 2023 01:24:03 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:07 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/21/2023 3:26:29 PM | Documents/Mail | 35 | Email | Received | SAAED9 |

2023-12-20-14.52.03.550300O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:11 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Claim Tasks | 14 | Audit | Completed | SAAED9 |

10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt w ho has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there w as an MVA and it is W/C related. Pending letter asks for APS, how ever, not EE/AUTH. Are these located somew here else? If not, recommend requesting these as w ell. Thank you! - KXKENYO - Oct 25, 2023 01:31:00 pm

11/27/2023: clm is now pending for CR. - KXKENYO - Nov 27, 2023 11:59:08 am

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:42 am

Will you please refer to VOC for OA w hile the retirement info is sorted out? Thank you! - KXKENYO - Dec 21, 2023 02:28:44 pm

CLOSING AS CLAIM HAS BEEN APRPOVED. - SAAED9 - Dec 22, 2023 01:24:03 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:07 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Claim Tasks | 11 | Audit | Completed | KXKENYO |

10/25/2023: INCOMPLETE REVIEW: clmt is a 43 y/o Police Capt w ho has been oow sinceDLW 7/20/2023 due to unk dx. LTD eff date is 7/1/2013, therefore, pre-x is not a factor. Clm is incomplete due to missing EE/AUTH/APS. Though information on file indicates there w as an MVA and it is W/C related. Pending letter asks for APS, how ever, not EE/AUTH. Are these located somew here else? If not, recommend requesting these as w ell. Thank you! - KXKENYO - Oct 25, 2023 01:31:00 pm

11/27/2023: clm is now pending for CR. - KXKENYO - Nov 27, 2023 11:59:08 am

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:42 am

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Set audit to refer to VOC for OA - KXKENYO - Dec 21, 2023 02:29:46 pm

CLOSING AS CLAIM HAS BEEN APRPOVED. - SAAED9 - Dec 22, 2023 01:23:50 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:09 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Documents/Mail | 35 | Email | Completed | SAAED9 |

2023-12-20-14.52.03.550300O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:11 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Documents/Mail | 36 | Approval Letter LTD | Completed | SAAED9 |

Approval Letter LTDAttachments:Translation servicesRehab Survey

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Documents/Mail | 37 | Employer Approval Letter | Completed | SAAED9 |

Employer Approval Letter

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 | Summary/Assessment/Pa | 1h | PENDING SAP - SAAED9 - Oct 23, 2023 12:45:29 pm | Completed | SAAED9 |

Summary Notes
PENDING SAP - SAAED9 - Oct 23, 2023 12:45:29 pm
Assessment Notes
BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.
It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm

EE Earns salary of $5,688.00 biw eekly
$5,688.00 * 26 = $147,888.00 / 12 = $12,324
- SAAED9 - Dec 22, 2023 01:30:01 pm
Path Notes
Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/20/2023, DOD: Will need to verify, DX: Will need to verify no APS how ever OVN indicate lumbar complaints due to MVA.

Per Policy:
20 hr/w k min, 24 month OO, 12/12/24 pre-ex (ER Form indicates 07/01/20213 since it is 0% er paid w ill request copy of enrollment how ever pre-ex w ill not apply ) 90 day elim, 60% benefit, $6,000 max, $100 or 10% min, MBP is RBDSS.

Eligibility:
Claim is LB 0% ER paid. Per ER: Class 02, DOH: 02/21/2006, EE w orks 40 hr/w k, 10 hr/day, DLW: 07/20/2023, Other pension plan, EE does not contribute. Occupation: Captain

Assessment:
Claim form dated 04/09/203
EE w as searching for a missing person; off road vehicle they w ere in lost steering and rolled 3 times.

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Path:
Claim is pending for payroll, jd and copy of LTD enrollment
Will need medical records for initial support.
- SAAED9 - Oct 23, 2023 12:45:29 pm

UPDATED PATH:
Rec'ed payroll and JD from er. No contact phone number for EE. Sent f/u and AUTH to EE - SAAED9 - Oct 31, 2023 11:36:00 am

UPDATED ASSESSMENT:
04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

UPDATED PATH:
Rec'ed OVN how ever w e still need AUTH and APS/ The Auth provided w as signed online. APS w ill provide DOD, DX and R&L.

Once APS is rec'ed w ill send to CR for initial support. - SAAED9 - Nov 16, 2023 02:58:13 pm

UPDATED ASSESSMENT:
09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical
DX: M54.50 Low Back Pain
First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023
Hospital confined: 04/09/2022-04/10/2022
Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times.
R&L: Not able to RTW in law enforcement.

UPDATED PATH:
Sending to CR for intial support- requesting peer review . - SAAED9 - Nov 21, 2023 09:29:27 am

UPDATED ASSESSMENT:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

UPDATED PATH:
Claim is ready to be approved how ever w e need retirment info prior to approval. - SAAED9 - Dec 15, 2023 02:57:51 pm

UPDATED PATH:
Retirment info has been rec'ed and offset for. Claim is approved to current. Sending for OA to verify OCC. Will f/u w ith EE 3-4 months to gather update. - SAAED9 - Dec 22, 2023 01:31:28 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/22/2023 1:22:16 PM | Referrals | 3 | Occ Analysis | Initial | SAAED9 |

Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Gainful Amount (only if defined in the policy):
Vocational Information:

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Job Title from ER: Operations Captain<br>Previous OA/TSA/TSR/Voc Rehab review completed?<br>Job Description on file? AWD 10/24/2023<br>Specific Question(s) for Reviewer<br>Provide CE input and synopsis about nature of referral. Provide your specific questions: Please provide OA<br>- SAAED9 - Dec 22, 2023 01:22:33 pm<br><br>********************************<br>Vocational Response<br><br>SUMMARY:<br>The occupation is performed at the light physical demand level. Resources utilized included: (DOT: 375.167-034; O*NET: 33-1012.00; ERI: 375.167-034)<br><br>I have not met with the Insured for the purpose of this review. All opinions are based on a review of resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.<br><br>Respectfully submitted,<br><br>Electronically Signed,<br>Candra Bell, MS, LPC, CRC<br>License Professional Counselor<br>Certified Rehabilitation Counselor<br>Vocational Rehabilitation Consultant<br>Group Protection<br>Lincoln Financial Group<br><br>- CAFTH9 - Dec 27, 2023 03:37:50 pm<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:59 pm | | | | |
| 12/22/2023 1:22:39 PM | Other Income | 1 | Ind. Disability | UNKNOWN | SAAED9 |
| | NV PEERS 100% ER paid. however EE did contribute a lump sum. Rec'ed letter with cont. outlined. - SAAED9 - Dec 22, 2023 01:23:13 pm<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:34 pm | | | | |
| 12/22/2023 1:31:31 PM | Summary/Assessment/Pa | 2h | OPEN SAP - SAAED9 - Dec 22, 2023 01:31:59 pm | Requested | SAAED9 |
| | Summary Notes<br>OPEN SAP - SAAED9 - Dec 22, 2023 01:31:59 pm<br>Assessment Notes<br>BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.<br>It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm<br><br>EE Earns salary of $5,688.00 biweekly<br>$5,688.00 * 26 = $147,888.00 / 12 = $12,324<br>- SAAED9 - Dec 22, 2023 01:31:59 pm<br>Path Notes | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

Path:
Claim is APPROVED. Sending JD to VOC for OA. Will f/u w ith EE 03/2024 to gather update. Will order OVN based on OV.
 - SAAED9 - Dec 22, 2023 01:31:59 pm

UPDATED PATH:
Records have been requested from TMP. Once rec'ed w ill send to CR for ongoing support - SAAED9 - Apr 25, 2024 12:08:18 pm

UPDATED ASSESSMENT:
Per APS Joshua Weltha, 04/24/2024
DX: M54.50 Low back pain
LOV: 04/24/2024, NOV: 07/24/2024
Occasionally able to lift/carry 1-100+ lbs
Occasionally: Stand, w alk, balance, stoop, kneel, finger, crouch, craw ling, grasping, climbing, pushing, pulling, bending
Frequently: Sitting
Not able to RTW in law enforcement capacity
Per Dr. Su at Spine and spines stated EE is at MMI recommended cessation of care.

UPDATED PATH:
Rec'ed APS how ever w aiting on OVN. Once rec'ed w ill send to CR for ongoing support.
LTP: Likely NTDOO - SAAED9 - Apr 29, 2024 12:52:30 pm

UPDATED ASSESSMENT:

 01/18/2024 Dr. Su
Seen for low back pain. s/p bilateral ablation on 12/11/2023 still reporting limited relief. Continue injection therapy does not w ant to pursue surgical options at this time. F/U 3-4 w eeks

03/01/2024 Optimal Therapy
Medical and Therapy History: 1-2 personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems w as completed using standardized tests and measures addressing 3 or
more elements from any of the follow ing: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: Evolving clinical presentation w ith changing characteristics.
Clinical Decision Making: Moderate complexity using standardized patient assessment instrument and/or measurable

assessment of functional outcome.

04/17/2024 Dr. Su
Low back pain. Per FCE done on 03/01/2024 at optimal therapy results w ere valid, consistent and placed on sedentary physical demand category and does not meet the job requirement.

UPDATED PATH:
Rec'ed records from EE- w aiting for the TMP to send records to include full report.
LTP: NTDAO - SAAED9 - May 09, 2024 11:10:52 am

UPDATED ASSESSMENT:
Dr. Weltha
01/22/2024
Seen for 2 month f/u and lab results.

01/31/2024
Seen for xray

02/13/2024
Seen for XR results.

04/24/2024
Seen for lab results and f/u on back.

UPDATED PATH:
all records have been rec'ed. sending to CR for ongoing support.
LTP: Likely NTDAO - SAAED9 - May 31, 2024 11:07:28 am

UPDATED ASSESSMENT:
PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

UPDATED PATH;
WILL REVIEW CLAIM PATH AND CLAIM MGNT WITH ER - SAAED9 - Jul 16, 2024 04:44:23 pm

UPDATED PATH:
Given the distance from COD w ill hold off on TSA. Will begin VOC RTW w ith EE. Will gather full update and plan and TX to recover.
- SAAED9 - Aug 06, 2024 09:23:10 am

UPDATED PATH:
S/W EE. Advised w e know EE is TDOO throguh the OO peiord based on records rec'ed. How ever, it is likely the EE w ill have transferable skills and benefits may not be payable beyond 10/08/2025. Advised EE i am going to set a VOC RTW consult and use these next 12 months to find gainful employment so w hen COD comes EE has further income if found NTDAO. - SAAED9 - Oct 03, 2024 12:01:37 pm

12/22/2023 1:32:06 PM | Referrals | 4 | Over Dollar Review | Initial | SAAED9

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

Path:
Claim is APPROVED. Sending JD to VOC for OA. Will f/u w ith EE 03/2024 to gather update. Will order OVN based on OV.

BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.
It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm

EE Earns salary of $5,688.00 biw eekly
$5,688.00 * 26 = $147,888.00 / 12 = $12,324

- Over Dollar Review - SAAED9 - Dec 22, 2023 01:32:34 pm

12/27/2023: LTD REVIEW: Clmt is a43 y/o M Police Captain w ho has been oow since 7/10/2023 due to dx of Low Back Pain. LTD eff date is 7/1/2013, therefore, pre-x is not necessary. Peer adv the follow ing R/Ls are supported:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

File referred for OA, w here the clmt w as found to have light occ. The only R/Ls keeping this clmt oow is the standing and w alking occ. Once clmt can w alk more, they are RTWOO. Agree w ith recommendation to flup w ithin 2-3 months. Agree w ith approval and BME. Thank you!
- Over Dollar Review - KXKENYO - Dec 27, 2023 04:58:21 pm

Item Closed w ith Claim by System - Over Dollar Review - KRTEDFO - Nov 04, 2025 02:47:14 pm

| 12/22/2023 8:19:37 PM | Claim Tasks | 15 | 75 Day.Need Decision/Extension | Requested | SAAED9 |
|---|---|---|---|---|---|

Closing as claim has been approved- pending over dollar review w ith senior - SAAED9 - Dec 26, 2023 03:32:45 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:18 pm

| 12/26/2023 | Claim Tasks | 9 | Call Claimant | Completed | SAAED9 |
|---|---|---|---|---|---|

No phone number on file for EE. questioned ER for phone number. - SAAED9 - Oct 23, 2023 02:07:28 pm

ER sent requested info- no contact number. sent f/u to gather number sent copy of auth to EE - SAAED9 - Oct 31, 2023 11:34:53 am

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

CALLED EE FOR INTIAL CALL NO ANSWER LVM. WILL F/U WITH EE - SAAED9 - Nov 08, 2023 03:41:23 pm

EE is going to send AUTH and APS w ith all the records he has - SAAED9 - Nov 09, 2023 02:44:00 pm

Have rec'ed OVN how ever the auth w as docusigned- need APS for DOD. Once APS is rec'ed w ill send the recrods w e do have for CR to determine if it is enough for inital support.

Will send 2nd pend 11/27 (due to hoilday w eekend) - SAAED9 - Nov 16, 2023 03:00:53 pm

Sent to CR for inital support and verify DOD - SAAED9 - Nov 21, 2023 09:38:41 am

REC'ED PEER REVIEW- VEIRFY DLW AND RTW PLANS THEN APPROVE - SAAED9 - Dec 12, 2023 07:06:02 pm
Called EE to address approval. he stated that he is getting retirment w hich w as 100% ER paid how ever he did pay a lump sum to it. sending me info regarding it w ill w ait for that before approval - SAAED9 - Dec 15, 2023 03:18:11 pm

12/18/2023: Peer results are close to that of a light occ. Recommend running OA w hile w e obtain retirement info to be sure R/Ls are not consistent w ith the claimant's OO. Thank you! - KXKENYO - Dec 18, 2023 10:37:50 am

rec'ed retirement info - SAAED9 - Dec 18, 2023 04:07:48 pm

rec'ed retirment info from ee- show s lump sum of EE and payment from ER. need to verify from the ER the EE and ER% if its 0% EE and EE just paid the lump sum then w ill subtract that and offset for the rest. - SAAED9 - Dec 20, 2023 12:13:27 pm

Review ed retirment w ith senior. Added offset w hich still pays min. Called EE for approval advised of offset. - SAAED9 - Dec 26, 2023 03:31:29 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:00 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/26/2023 | Claim Tasks | 15 | 75 Day.Need Decision/Extension | Completed | SAAED9 |

Closing as claim has been approved- pending over dollar review w ith senior - SAAED9 - Dec 26, 2023 03:32:45 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:18 pm

| | | | | | |
|---|---|---|---|---|---|
| 12/26/2023 3:32:50 PM | Claim Tasks | 16 | Call Claimant | Requested | SAAED9 |

Will f/u w ith EE 03/2024 to gather update. Will order OVN based on OV. - SAAED9 - Dec 26, 2023 03:33:14 pm

Sending updated AUTH, TMP, ABF. Once all rec'ed w ill order updated records.
- SAAED9 - Apr 19, 2024 11:45:47 am

Records have been requested from TMP. Once rec'ed w ill send to CR for ongoing support. - SAAED9 - Apr 25, 2024 12:07:06 pm

Rec'ed records from Dr. Weltha. Waiting on records from Dr. Su and Optimal Therapy. Once rec'ed w ill send to CR for ongoing support - SAAED9 - May 17, 2024 12:33:19 pm

All records rec'ed and sent to CR for ongoing support. - SAAED9 - May 31, 2024 11:08:01 am

**EE has OV w ith WC provider thursday. Will obtain copy of that records and send to us. Will refer back to CR once rec'ed. - SAAED9 - Jun 11, 2024 04:59:10 pm

Called EE to gather update on OV. No answ er sent back to CR as w e need to attempt to gather support - SAAED9 - Jun 20, 2024 02:24:16 pm

w ill discuss claim mgnt w ith ER - SAAED9 - Jul 16, 2024 04:45:09 pm

Given the distance from COD w ill hold off on TSA. Will begin VOC RTW w ith EE. Will gather full update and plan and TX to recover. - SAAED9 - Aug 06, 2024 09:20:55 am

Called EE to gather update and address VOC RTW. No answ er LVM - SAAED9 - Sep 19, 2024 02:30:53 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

VOC RTW Referral has been placed.
Will monitor RTW. If none w ill run TSA 02/2025 - SAAED9 - Oct 03, 2024 12:06:37 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:58 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/27/2023 8:11:37 PM | Referrals | 5 | Vendor Results | Initial | LLJONES |

- SS VENDOR Claimify - REFERRAL T-4
Social Security Vendor Claimify has review ed this claim and indicated the claimant is not a good candidate for ssdi at this time Possible RTW ow n occupation.
Sending T4/Defer letter to clmt now .
Vendor w ill re-review claim: 6/7/24 - JEMFL3 - Dec 28, 2023 09:24:54 am
- SS VENDOR Claimify - REFERRAL T-2 **...
Social Security Vendor Claimify has review ed this claim and indicated the claimant should be aw arded at the appeal Level. Follow -up set to make intro call to clmt w ithin 3 business days. - MAVCO9 - Jun 07, 2024 08:48:03 am

LEFT DETAILED VM TO PURSUE SSDI. POF is due in 30 days, OFFSET IF AWARDED for clmt and any elig depts, any overpayment needs paid back Left my ph # For any questions. mailed ETA letter. 30 DAY TASK FOR POF FROM CLMT OR VENDOR - LLJONES - Jun 12, 2024 01:45:10 pm

claimify closed file since clmt does not have enough w ork quarters to quaify. updated offset grid to show ssdi NQ. closed ss referral and related claim tasks. - LLJONES - Jul 17, 2024 02:51:39 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:58 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/27/2023 9:58:23 PM | Payments | | CHECK 10/8/2023 - 12/8/2023 | INITIAL | KXKENYO |
| 12/28/2023 | Documents/Mail | 38 | SS Deferred Claims for SS Applicati | Completed | LLJONES |

SS Deferred Claims for SS Application

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/28/2023 | Documents/Mail | 39 | Email | Completed | SAAED9 |

2023-12-27-16.37.04.516520O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/28/2023 | Referrals | 4 | Over Dollar Review | Completed | SAAED9 |

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

Path:
Claim is APPROVED. Sending JD to VOC for OA. Will f/u w ith EE 03/2024 to gather update. Will order OVN based on OV.

BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm

EE Earns salary of $5,688.00 biweekly
$5,688.00 * 26 = $147,888.00 / 12 = $12,324

- Over Dollar Review - SAAED9 - Dec 22, 2023 01:32:34 pm

12/27/2023: LTD REVIEW: Clmt is a43 y/o M Police Captain who has been oow since 7/10/2023 due to dx of Low Back Pain. LTD eff date is 7/1/2013, therefore, pre-x is not necessary. Peer adv the following R/Ls are supported:
o sitting frequently with intermittent brief change in position for comfort
o standing/walking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below waist occasionally

File referred for OA, where the clmt was found to have light occ. The only R/Ls keeping this clmt oow is the standing and walking occ. Once clmt can walk more, they are RTWOO. Agree with recommendation to flup within 2-3 months. Agree with approval and BME. Thank you!
- Over Dollar Review - KXKENYO - Dec 27, 2023 04:58:21 pm

Item Closed with Claim by System - Over Dollar Review - KRTEDFO - Nov 04, 2025 02:47:14 pm

| 12/28/2023 10:01:12 AM | Claim Tasks | 17 | Verify Eligibility | Requested | LLJONES |
|---|---|---|---|---|---|

Task set to monitor T4/5 re-review
- LLJONES - Dec 28, 2023 10:01:38 am

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:10 pm

| 12/28/2023 10:01:43 AM | Claim Tasks | 18 | Review SS Offset Amount | Requested | LLJONES |
|---|---|---|---|---|---|

This SS Task #7169 is to remain Open until an SSDI Award is recvd.
Used for ongoing communication between the LTD CE and the SS CE
When not communicating, please reset in SS CE initials to the COD date.
- LLJONES - Dec 28, 2023 10:02:06 am

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:19 pm

| 12/28/2023 10:44:32 AM | Documents/Mail | 40 | Incoming Correspondence | Received | SAAED9 |
|---|---|---|---|---|---|

2023-12-27-16.37.04.561520O01

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:13 pm

| 12/29/2023 | Documents/Mail | 40 | Incoming Correspondence | Completed | SAAED9 |
|---|---|---|---|---|---|

2023-12-27-16.37.04.561520O01

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:13 pm

| 12/29/2023 | Referrals | 3 | Occ Analysis | Completed | SAAED9 |
|---|---|---|---|---|---|

Demographics
Claimant Name: David Boruchowitz
Claim Number: 1230082409
Gainful Amount (only if defined in the policy):
Vocational Information:
Job Title from ER: Operations Captain
Previous OA/TSA/TSR/Voc Rehab review completed?
Job Description on file? AWD 10/24/2023
Specific Question(s) for Reviewer

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Provide CE input and synopsis about nature of referral. Provide your specific questions: Please provide OA
- SAAED9 - Dec 22, 2023 01:22:33 pm

********************************
Vocational Response

SUMMARY:
The occupation is performed at the light physical demand level. Resources utilized included: (DOT: 375.167-034; O*NET: 33-1012.00; ERI: 375.167-034)

I have not met w ith the Insured for the purpose of this review . All opinions are based on a review of resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance w ith this file.

Respectfully submitted,

Electronically Signed,
Candra Bell, MS, LPC, CRC
License Professional Counselor
Certified Rehabilitation Counselor
Vocational Rehabilitation Consultant
Group Protection
Lincoln Financial Group

- CAFTH9 - Dec 27, 2023 03:37:50 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:59 pm

| 1/8/2024 | Claim Tasks | 19 | Bank Notification - Reject | Completed | SAAED9 |
|---|---|---|---|---|---|

PAYMENT REJECTED. Accounting received notice from bank that account structure is valid but doesn't match individual or open account. CE to correct information before releasing the next benefit. - CHMCA4 - Jan 08, 2024 08:23:09 am

it appears routing number w as listed 2 times. corrected - SAAED9 - Jan 08, 2024 12:51:55 pm

| 1/17/2024 | Claim Tasks | 20 | Prim Dx Change in Related Claim | Completed | SAAED9 |
|---|---|---|---|---|---|

Primary Diagnosis w as changed in LIFE claim 1240003278 - DAXBE4 - Jan 17, 2024 02:24:28 pm

| 2/6/2024 10:36:54 AM | Referrals | 6 | Database Search | Initial | SAAED9 |
|---|---|---|---|---|---|

Referred by:Savannah Rajca
Phone # and Ext:800-423-2765 X 6932
Referral Date: 2/6/2024

Claim#:1230082409
Claimant Name:David Boruchow itz
SSN#:
DOB:
Address:
Claimant Email:
Claimant Phone:

Customer Name:Nye County
Job Description:Police Captian
Date of Disability: 7/10/2023

Database selections (drop dow n list):Social Security # Searches - Provides persons current physical address, previous addresses, and gives w arnings on invalid numbers.
Reason for referral: additional database selection items can be included here, along w ith other details to assist w ith searchPlease provide a full desk top search.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | - SAAED9 - Feb 06, 2024 10:38:25 am<br><br>Referred to vendoe claims B for desktop review . SWD - SWDICK - Feb 09, 2024 07:53:04 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:17 pm | | | | |
| 2/6/2024 11:23:20 AM | Lien | 1 | Subrogation | Requested | SAAED9 |
| | Please review for possible subrogation:<br><br>LTD Claim # 1230082409<br><br>CLAIMANT NAME: David Boruchow itz<br><br>Group Name / ARDIS or COVERGE ID: NYECOUNTY<br><br>LTD Benefit -<br>Start Date 10/08/2023<br>Paid To current<br>Other Offsets retirement monthly offset $6,754.10 ($5,400 due to minimum)<br>Monthly Amount $600<br><br>Alternate contact (Attorney, TPA, POA, etc) Name, address, phone, email n/a<br><br>STD Claim # (if applicable)<br><br>OTHER INFO (Police report, judgments or other documents relevant to claim w ith AWD locations): Attached to email-WC form and accident report, employer form<br>AWD- 2023-10-16-11.02.58.436560O01<br><br>Brief history of claim details and issue that needs review by Subro Team: Please review due to possible other income from auto and or w orkers comp.<br><br>- SAAED9 - Feb 06, 2024 11:23:40 am | | | | |
| 2/6/2024 11:23:51 AM | Claim Tasks | 21 | Call Employer | Requested | SAAED9 |
| | Sent email to ER to verify if EE w as on Approved LOA and JD of occupation at DLW. - SAAED9 - Feb 06, 2024 11:25:00 am<br><br>EE w as on FT duty and w as placed on paid admin leave - SAAED9 - Feb 13, 2024 10:28:39 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:03 pm | | | | |
| 2/9/2024 | Referrals | 6 | Database Search | Completed | SAAED9 |
| | Referred by:Savannah Rajca<br>Phone # and Ext:800-423-2765 X 6932<br>Referral Date: 2/6/2024<br><br>Claim#:1230082409<br>Claimant Name:David Boruchow itz<br>SSN#:<br>DOB:<br>Address:<br>Claimant Email:<br>Claimant Phone:<br><br>Customer Name:Nye County<br>Job Description:Police Captian<br>Date of Disability: 7/10/2023<br><br>Database selections (drop dow n list):Social Security # Searches - Provides persons current physical address, previous addresses, and gives w arnings on invalid numbers. | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Reason for referral: additional database selection items can be included here, along w ith other details to assist w ith searchPlease provide a full desk top search.<br>- SAAED9 - Feb 06, 2024 10:38:25 am<br><br>Referred to vendoe claims B for desktop review . SWD - SWDICK - Feb 09, 2024 07:53:04 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:17 pm | | | | |
| 2/9/2024 8:48:31 AM | Documents/Mail | 41 | Email | Received | SAAED9 |
| | 2024-02-09-08.53.28.557780O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:47 pm | | | | |
| 2/13/2024 | Claim Tasks | 21 | Call Employer | Completed | SAAED9 |
| | Sent email to ER to verify if EE w as on Approved LOA and JD of occupation at DLW. - SAAED9 - Feb 06, 2024 11:25:00 am<br><br>EE w as on FT duty and w as placed on paid admin leave - SAAED9 - Feb 13, 2024 10:28:39 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:03 pm | | | | |
| 2/13/2024 | Documents/Mail | 41 | Email | Completed | SAAED9 |
| | 2024-02-09-08.53.28.557780O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:47 pm | | | | |
| 2/15/2024 | Documents/Mail | 42 | Email | Completed | SAAED9 |
| | 2024-02-15-16.23.02.696920O01 | | | | |
| 2/15/2024 4:04:15 PM | Documents/Mail | 43 | Incoming Correspondence | Received | SAAED9 |
| | 2024-02-15-16.23.02.740920O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:13 pm | | | | |
| 2/20/2024 | Documents/Mail | 43 | Incoming Correspondence | Completed | SAAED9 |
| | 2024-02-15-16.23.02.740920O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:13 pm | | | | |
| 4/19/2024 | Telephone (IN) | 5 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |
| | How is everything going?<br>Not much has changed.<br><br>Did ablation on his back- it did not help anything and made the pain 10x w orse.<br><br>Waiting for WC to review and take the next step- they are in litigation dealing w ith appeals.<br><br>On Wednesday he met w ith the WC provider<br><br>EE got a functional report completed by a WC physical therapy.<br>- SAAED9 - Apr 19, 2024 11:42:49 am | | | | |
| 4/19/2024 | Documents/Mail | 44 | Request Forms from Claimant | Completed | SAAED9 |
| | Request Forms from ClaimantAttachments:AbilitiesAuth MedicalTMP | | | | |
| 4/19/2024 8:23:52 PM | Investigation | 2 | Determine Disability | Requested | SAAED9 |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:26 pm | | | | |
| 4/23/2024 3:00:14 PM | Dependents | 1 | STEPHAINE BORUCHOWITZ | Spouse | SAAED9 |
| 4/23/2024 3:01:01 PM | Dependents | 2 | MADELYNN BORUCHOWITZ | Child | SAAED9 |
| 4/23/2024 3:01:46 PM | Dependents | 3 | NOAH BORUCHOWITZ | Child | SAAED9 |
| 4/23/2024 4:47:25 PM | Documents/Mail | 45 | Email | Received | SAAED9 |
| | 2024-04-23-09.28.19.253020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:14 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2024 4:47:26 PM | Documents/Mail | 46 | Claim Form - Authorization | Received | SAAED9 |
| | 2024-04-23-09.28.19.284020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:15 pm | | | | |
| 4/23/2024 4:47:27 PM | Documents/Mail | 47 | Medical Records | Received | SAAED9 |
| | 2024-04-23-09.28.19.316020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:16 pm | | | | |
| 4/25/2024 | Documents/Mail | 45 | Email | Completed | SAAED9 |
| | 2024-04-23-09.28.19.253020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:14 pm | | | | |
| 4/25/2024 | Documents/Mail | 46 | Claim Form - Authorization | Completed | SAAED9 |
| | 2024-04-23-09.28.19.284020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:15 pm | | | | |
| 4/25/2024 | Documents/Mail | 47 | Medical Records | Completed | SAAED9 |
| | 2024-04-23-09.28.19.316020O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:16 pm | | | | |
| 4/25/2024 | Documents/Mail | 48 | Med Rec Request Follow Up | Completed | SAAED9 |
| | Med Rec Request Follow Up | | | | |
| 4/25/2024 | Documents/Mail | 49 | Email | Completed | SAAED9 |
| | 2024-04-25-12.58.48.935940O01 | | | | |
| 4/25/2024 11:55:19 AM | Medical | 1 | | Initial | SAAED9 |
| | STAT CALL 775-727-8900 - spoke to Veronica and she does not have the request and stated w e have the w rong fax# - sending now as 2nd refax to (775) 727-9452- w ill f/u. - CAMBY2 - May 01, 2024 01:32:28 pm<br><br>STAT CALL 775-727-8900 - f/u to 2nd refax on 5/1 - spoke to Angela and she still does not have the request and asked me to refax again to (775) 727-9452 - sending now as 3rd refax - w ill f/u. - CAMBY2 - May 06, 2024 10:44:46 am<br><br>STAT CALL 775-727-8900 - f/u to 3rd refax on 5/6 - spoke to Angela she checked w ith medical records and they do not have the request and she does not have access to the faxes so she asked me to email the request to info@springmtnmed.com - emailing now - w ill f/u. - CAMBY2 - May 09, 2024 10:46:08 am<br><br>STAT CALL 775-727-8900 - f/u to email sent on 5/9 - spoke to Cathy and she stated that the request w as received and the medical records w ere faxed back on 5/13 to fax# (877) 843-3950 - giving back to the cs. - CAMBY2 - May 15, 2024 10:18:17 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:27 pm | | | | |
| 4/25/2024 12:00:19 PM | Medical | 2 | | Initial | SAAED9 |
| | STAT CALL 702-779-3994 - spoke to Rahman and he does not have the request and asked me to email it to info@suspineandsports.com - sending now - w ill f/u. - CAMBY2 - May 01, 2024 01:25:45 pm<br><br>Medical records w ere emailed to me directly - sent them ADYOUNG. - CAMBY2 - May 06, 2024 10:31:42 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:28 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/25/2024 12:03:48 PM | Medical | 3 | | Initial | SAAED9 |
| | STAT CALL 702-209-0069 - spoke to Aliyah and she stated that requests need to be emailed to recordsrequest@optimalptlv.com - sending now - w ill f/u. - CAMBY2 - May 01, 2024 01:19:37 pm<br>med recs have been received and sent to intake to be uploaded into AWD and DN - ADYOUNG - May 06, 2024 09:17:56 am<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:30 pm | | | | |
| 4/25/2024 3:44:04 PM | Documents/Mail | 50 | Claim Form - EE, ER, APS | Received | SAAED9 |
| | 2024-04-25-12.58.48.961940O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:18 pm | | | | |
| 4/29/2024 | Documents/Mail | 50 | Claim Form - EE, ER, APS | Completed | SAAED9 |
| | 2024-04-25-12.58.48.961940O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:18 pm | | | | |
| 4/29/2024 | Documents/Mail | 51 | Med Rec Request | Completed | DAJIMER |
| | Med Rec RequestAttachments:D BORUCHOWITZ.pdf | | | | |
| 4/29/2024 | Documents/Mail | 52 | Med Rec Request | Completed | DAJIMER |
| | Attachments:AbilitiesMed Rec RequestD BORUCHOWITZ.pdf | | | | |
| 4/29/2024 | Documents/Mail | 53 | Med Rec Request | Completed | DAJIMER |
| | Med Rec RequestAttachments:D BORUCHOWITZ.pdf | | | | |
| 5/6/2024 2:57:55 PM | Documents/Mail | 54 | Email | Received | SAAED9 |
| | 2024-05-06-10.18.40.557220O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:19 pm | | | | |
| 5/6/2024 2:57:56 PM | Documents/Mail | 55 | Medical Records | Received | SAAED9 |
| | 2024-05-06-10.18.40.601220O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:20 pm | | | | |
| 5/7/2024 | Documents/Mail | 54 | Email | Completed | SAAED9 |
| | 2024-05-06-10.18.40.557220O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:19 pm | | | | |
| 5/7/2024 | Documents/Mail | 56 | Email | Completed | SAAED9 |
| | 2024-05-06-11.37.21.615220O01 | | | | |
| 5/7/2024 | Documents/Mail | 58 | Email | Completed | SAAED9 |
| | 2024-05-06-11.39.01.901160O01 | | | | |
| 5/7/2024 9:13:33 AM | Documents/Mail | 57 | Medical Records | Received | SAAED9 |
| | 2024-05-06-11.37.21.675220O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:22 pm | | | | |
| 5/7/2024 9:20:01 AM | Documents/Mail | 59 | Medical Records | Received | SAAED9 |
| | 2024-05-06-11.39.01.948160O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:21 pm | | | | |
| 5/8/2024 | Documents/Mail | 55 | Medical Records | Completed | SAAED9 |
| | 2024-05-06-10.18.40.601220O01<br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:20 pm | | | | |
| 5/9/2024 | Documents/Mail | 57 | Medical Records | Completed | SAAED9 |
| | 2024-05-06-11.37.21.675220O01 | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:22 pm | | | | |
| 5/9/2024 | Documents/Mail | 59 | Medical Records | Completed | SAAED9 |
| | 2024-05-06-11.39.01.948160O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:21 pm | | | | |
| 5/15/2024 | Documents/Mail | 62 | Medical Record Invoice | Completed | KEIKU2 |
| | 2024-05-14-11.47.59.699340O01 | | | | |
| | THIS IS A INVOICE FROM DR JOSE WELTHA FOR 0.00 - KEIKU2 - May 15, 2024 12:38:36 pm | | | | |
| 5/15/2024 10:28:30 AM | Documents/Mail | 60 | Fax | Received | SAAED9 |
| | 2024-05-14-11.47.59.547340O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:23 pm | | | | |
| 5/15/2024 10:28:31 AM | Documents/Mail | 61 | Medical Records | Received | SAAED9 |
| | 2024-05-14-11.47.59.629340O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:24 pm | | | | |
| 5/17/2024 | Investigation | 2 | Determine Disability | Received | SAAED9 |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:26 pm | | | | |
| 5/17/2024 | Medical | 1 | | Closed | SAAED9 |

STAT CALL 775-727-8900 - spoke to Veronica and she does not have the request and stated w e have the w rong fax# - sending now as 2nd refax to (775) 727-9452- w ill f/u. - CAMBY2 - May 01, 2024 01:32:28 pm

STAT CALL 775-727-8900 - f/u to 2nd refax on 5/1 - spoke to Angela and she still does not have the request and asked me to refax again to (775) 727-9452 - sending now as 3rd refax - w ill f/u. - CAMBY2 - May 06, 2024 10:44:46 am

STAT CALL 775-727-8900 - f/u to 3rd refax on 5/6 - spoke to Angela she checked w ith medical records and they do not have the request and she does not have access to the faxes so she asked me to email the request to info@springmtnmed.com - emailing now - w ill f/u. - CAMBY2 - May 09, 2024 10:46:08 am

STAT CALL 775-727-8900 - f/u to email sent on 5/9 - spoke to Cathy and she stated that the request w as received and the medical records w ere faxed back on 5/13 to fax# (877) 843-3950 - giving back to the cs. - CAMBY2 - May 15, 2024 10:18:17 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:27 pm | | | | |
| 5/17/2024 | Documents/Mail | 60 | Fax | Completed | SAAED9 |
| | 2024-05-14-11.47.59.547340O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:23 pm | | | | |
| 5/17/2024 | Documents/Mail | 61 | Medical Records | Completed | SAAED9 |
| | 2024-05-14-11.47.59.629340O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:24 pm | | | | |
| 5/31/2024 | Medical | 2 | | Closed | SAAED9 |

STAT CALL 702-779-3994 - spoke to Rahman and he does not have the request and asked me to email it to info@suspineandsports.com - sending now - w ill f/u. - CAMBY2 - May 01, 2024 01:25:45 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Medical records w ere emailed to me directly - sent them ADYOUNG. - CAMBY2 - May 06, 2024 10:31:42 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/31/2024 | Medical | 3 | | Closed | SAAED9 |

STAT CALL 702-209-0069 - spoke to Aliyah and she stated that requests need to be emailed to recordsrequest@optimalptlv.com - sending now - w ill f/u. - CAMBY2 - May 01, 2024 01:19:37 pm

med recs have been received and sent to intake to be uploaded into AWD and DN - ADYOUNG - May 06, 2024 09:17:56 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:30 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/31/2024 11:06:14 AM | Referrals | 7 | Ongoing Claim Review | Initial | SAAED9 |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:54 pm
Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Occupation/level: Police captain
Diagnosis: DX: M54.50 Low Back Pain

Per APS Joshua Weltha, 04/24/2024
DX: M54.50 Low back pain
LOV: 04/24/2024, NOV: 07/24/2024
Occasionally able to lift/carry 1-100+ lbs
Occasionally: Stand, w alk, balance, stoop, kneel, finger, crouch, craw ling, grasping, climbing, pushing, pulling, bending
Frequently: Sitting
Not able to RTW in law enforcement capacity
Per Dr. Su at Spine and spines stated EE is at MMI recommended cessation of care.

01/18/2024 Dr. Su
Seen for low back pain. s/p bilateral ablation on 12/11/2023 still reporting limited relief. Continue injection therapy does not w ant to pursue surgical options at this time. F/U 3-4 w eeks

03/01/2024 Optimal Therapy
Medical and Therapy History: 1-2 personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems w as completed using standardized tests and measures addressing 3 or
more elements from any of the follow ing: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: Evolving clinical presentation w ith changing characteristics.
Clinical Decision Making: Moderate complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.

04/17/2024 Dr. Su
Low back pain. Per FCE done on 03/01/2024 at optimal therapy results w ere valid, consistent and placed on sedentary physical demand category and does not meet the job requirement.

Dr. Weltha
01/22/2024
Seen for 2 month f/u and lab results.

01/31/2024
Seen for xray

02/13/2024
Seen for XR results.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

04/24/2024
Seen for lab results and f/u on back.
Specific Medical Question:
1.Are there any physical conditions supported by the clinical evidence that are functionally impairing? If yes, please provide primary and secondary DX and clinical rationale to support.
2.If functional impairment is supported, does this translate into restrictions and limitations? If yes, please provide restrictions and limitations and duration. Please do not provide functional level (sedentary / light / etc.) but report restrictions / limitations and timetable for these.
3.What w ould be considered reasonable medical care and treatment for the clmt's conditions?
4.What is the prognosis for recovery and timeframe for clinical follow up? - SAAED9 - May 31, 2024 11:06:37 am
transferred to elmsi8 - PRAWA5 - Jun 05, 2024 06:10:48 am
6-5-24: NDC had an extensive conversation w ith the CS (SAAED9) and Manager - Nicholas Gregor via phone call to determine ongoing claim management. Due to condition stability noted throughout and unknow n prognosis/complexity of file, w ill refer claim for occupational medicine peer review to comment on current R&Ls, current impairments, and comment on permanency of condition. CS w ill obtain a detailed functional update from the EE via T/C; NDC w ill then refer file for ICP level review once complete. - ELMSI8 - Jun 05, 2024 02:32:03 pm
Spoke to CS SAAED9 on 6/6/24, she has attempted multiple calls to the EE w ith no response received. Prior to sending for ICP level review w ith Occ Med, phone call w arranted (per management).

Therefore, claim w ill be returned and once all information is obtained, please refer file back to NDC for peer referral. - ELMSI8 - Jun 06, 2024 12:51:54 pm
PC w ith EE:
Where are w e in regards to TX, OV, imaging or anything else.

Has not had any images recently. Had appt w ith dr the 28th and then meets w ith WC this Thursday

Where are w ith functionality? What can you or cant you do?
Anything w ith physical exertion requires contact change is position. If he is sitting he w ill have to stand then if standing w ill have to sit.

Can you stand long enough to prep/cook a meal? Yes
Can you chop? Yes
Can you bend to load the dishw asher? Depending on the day, w ith pain he can alw ays do it. Somedays are w orse but alw ays capable

Can you push/pull to vacuum mop or sw eep? Does not do that- w ould assume he could

Can you carry a laundry basket? Yes
Can you sw itch the load? Yes

Can you show er independently? Yes
Reach up to w ash head? Yes
Bend to w ash toes? Yes

Can you dress yourself? Yes can put on socks and shoes

Can you drive? Yes

Typical day? Every day is different- he has teenage kids and does a lot of shuttling for them. Sits out back at the patio or on the computer. Will go out for a light w alk to change positions often.

What is preventing you from RTW?
The physical requirements of the job. He has to have sense of tactics requirements- fighting, w restling, quick moving.

Would your ER be able to accommodate the R&L w ith a desk position?
No because the law states he has to be able to still do these functions as

SX: Does not really w ant to do this. The dr says they do not recommend 'now ' as there is risk of being more

substantial.

What are w e doing to try and get better?
Exercise and moving it right now is about all. Waiting for the WC to be done and make recommendations of their ow n.

Are you rec'ing income from WC? No currently going to court for it.

Anything else?
Nope, just the need for constant change in positions is needed frequently

**EE has OV w ith WC provider thursday. Will obtain copy of that records and send to us. Will refer back to CR once rec'ed. - SAAED9 - Jun 11, 2024 04:58:13 pm
UPDATED HAS BEEN GATHERED NOTED IN PHONE NOTES. PLEASE CONTINUE WITH PEER AND REQUEST PEER TO PEER TO GATHER OUTCOME OF RECENT OV.

THANK YOU - SAAED9 - Jun 20, 2024 02:23:34 pm
Referral Date: 6/20/24

Claims Specialist Name: Savannah Eddy
Phone Number: 800-423-2765 X 6932
Email Address: savannah.eddy@lfg.com

Submitter's Name: Elisa Silva
Phone Number: 480-806-6099
Email Address: Elisa.Silva@lfg.com

Referral Type: Standard File Review
Other Considerations (optional): none
Claimant Name (First/Last): David Boruchow itz
Claim Number: LTD 1230082409
Include any additional claim #'s involved: GR LIFE 1240001544
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: MDT
Claimant State of Residence: NV
Customer/Group Name: Nye County
Job Title: Police captain
Product Type: LTD

Diagnosis: low back pain, lumbar strain, degeneration of lumbar intervertebral disc
Date of Disability: 7/10/23
Last Day Worked: 7/7/23
Benefit Begin Date: 10/8/23
Specialty Requested: occupational medicine

Name and Specialty of prior external vendor review ers/ examiners: 12/5/23 by ICP Martin D. Hoffman, MD (PM&R)

Attorney Involvement: Yes or No: No
Attorney Contact Information (If applicable): None

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 3/1/24 to current and beyond , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
Name: Dr. Peter Su
Phone Number: 702-779-3994
Fax Number: 888-464-0838

Name: Joshua Weltha, PA-C
Phone Number: 702-703-3351
Fax Number: 775-727-9452

Other Questions:

1.If functional impairment is present, w hat are the reasonable expectations for improvement and w hen w ould those be expected?

2.Do the available records document any clinical evaluation abnormalities to support the medical necessity for restrictions and limitations?

3.Would an IME be recommended as appropriate follow -up for ongoing claim management? - ELMSI8 - Jun 20, 2024 02:46:15 pm
Case submitted to CRT case #223508 for a peer review w ith an Occupational Medicine physician. - STEGU1 - Jun 21, 2024 08:50:31 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - STEGU1 - Jul 09, 2024 07:15:48 am

| | | | | | |
|---|---|---|---|---|---|
| 6/6/2024 | Telephone (OUT) | 6 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE to gather detailed update. No answ er LVM - SAAED9 - Jun 06, 2024 12:48:08 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/11/2024 | Telephone (OUT) | 7 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Where are w e in regards to TX, OV, imaging or anything else.

Has not had any images recently. Had appt w ith dr the 28th and then meets w ith WC this Thursday

Where are w ith functionality? What can you or cant you do?
Anything w ith physical exertion requires contact change is position. If he is sitting he w ill have to stand then if standing w ill have to sit.

Can you stand long enough to prep/cook a meal? Yes
Can you chop? Yes
Can you bend to load the dishw asher? Depending on the day, w ith pain he can alw ays do it. Somedays are w orse but alw ays capable

Can you push/pull to vacuum mop or sw eep? Does not do that- w ould assume he could

Can you carry a laundry basket? Yes
Can you sw itch the load? Yes

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Can you show er independently? Yes
Reach up to w ash head? Yes
Bend to w ash toes? Yes

Can you dress yourself? Yes can put on socks and shoes

Can you drive? Yes

Typical day? Every day is different- he has teenage kids and does a lot of shuttling for them. Sits out back at the patio or on the computer. Will go out for a light w alk to change positions often.

What is preventing you from RTW?
The physical requirements of the job. He has to have sense of tactics requirements- fighting, w restling, quick moving.

Would your ER be able to accommodate the R&L w ith a desk position?
No because the law states he has to be able to still do these functions as

SX: Does not really w ant to do this. The dr says they do not recommend 'now ' as there is risk of being more substantial.

What are w e doing to try and get better?
Exercise and moving it right now is about all. Waiting for the WC to be done and make recommendations of their ow n.

Are you rec'ing income from WC? No currently going to court for it.

Anything else?
Nope, just the need for constant change in positions is needed frequently
- SAAED9 - Jun 11, 2024 04:57:15 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2024 | Claim Tasks | 22 | Initial Call | Completed | LLJONES |
| 6/12/2024 | Claim Tasks | 17 | Verify Eligibility | Completed | LLJONES |

Task set to monitor T4/5 re-review
- LLJONES - Dec 28, 2023 10:01:38 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:10 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2024 | Documents/Mail | 63 | SS Encouraged to Apply for SSDB - V | Completed | LLJONES |

SS Encouraged to Apply for SSDB - VendorAttachments:Disability Payment Option FormClaimify SSDI FAQSocial Security Advantage Form

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2024 1:45:16 PM | Claim Tasks | 23 | Obtain Missing Info | Requested | LLJONES |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:52 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/20/2024 | Telephone (IN) | 8 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE to gather update from LOV. No answ er LVM - SAAED9 - Jun 20, 2024 02:22:19 pm

| | | | | | |
|---|---|---|---|---|---|
| 7/9/2024 | Referrals | 7 | Ongoing Claim Review | Completed | SAAED9 |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:54 pm
Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Occupation/level: Police captain
Diagnosis: DX: M54.50 Low Back Pain

Per APS Joshua Weltha, 04/24/2024
DX: M54.50 Low back pain

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

LOV: 04/24/2024, NOV: 07/24/2024
Occasionally able to lift/carry 1-100+ lbs
Occasionally: Stand, w alk, balance, stoop, kneel, finger, crouch, craw ling, grasping, climbing, pushing, pulling, bending
Frequently: Sitting
Not able to RTW in law enforcement capacity
Per Dr. Su at Spine and spines stated EE is at MMI recommended cessation of care.

01/18/2024 Dr. Su
Seen for low back pain. s/p bilateral ablation on 12/11/2023 still reporting limited relief. Continue injection therapy does not w ant to pursue surgical options at this time. F/U 3-4 w eeks

03/01/2024 Optimal Therapy
Medical and Therapy History: 1-2 personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems w as completed using standardized tests and measures addressing 3 or
more elements from any of the follow ing: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: Evolving clinical presentation w ith changing characteristics.
Clinical Decision Making: Moderate complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.

04/17/2024 Dr. Su
Low back pain. Per FCE done on 03/01/2024 at optimal therapy results w ere valid, consistent and placed on sedentary physical demand category and does not meet the job requirement.

Dr. Weltha
01/22/2024
Seen for 2 month f/u and lab results.

01/31/2024
Seen for xray

02/13/2024
Seen for XR results.

04/24/2024
Seen for lab results and f/u on back.
Specific Medical Question:
1.Are there any physical conditions supported by the clinical evidence that are functionally impairing? If yes, please provide primary and secondary DX and clinical rationale to support.
2.If functional impairment is supported, does this translate into restrictions and limitations? If yes, please provide restrictions and limitations and duration. Please do not provide functional level (sedentary / light / etc.) but report restrictions / limitations and timetable for these.
3.What w ould be considered reasonable medical care and treatment for the clmt's conditions?
4.What is the prognosis for recovery and timeframe for clinical follow up? - SAAED9 - May 31, 2024 11:06:37 am
transferred to elmsi8 - PRAWA5 - Jun 05, 2024 06:10:48 am
Final report received back from CRT - sent to Disability Claims to be uploaded into AWD - STEGU1 - Jul 09, 2024 07:15:48 am
6-5-24: NDC had an extensive conversation w ith the CS (SAAED9) and Manager - Nicholas Gregor via phone call to determine ongoing claim management. Due to condition stability noted throughout and unknow n prognosis/complexity of file, w ill refer claim for occupational medicine peer review to comment on current R&Ls, current impairments, and comment on permanency of condition. CS w ill obtain a detailed functional update from the EE via T/C; NDC w ill then refer file for ICP level review once complete. - ELMSI8 - Jun 05, 2024 02:32:03 pm
Spoke to CS SAAED9 on 6/6/24, she has attempted multiple calls to the EE w ith no response received. Prior to sending for ICP level review w ith Occ Med, phone call w arranted (per management).

Therefore, claim w ill be returned and once all information is obtained, please refer file back to NDC for peer referral. - ELMSI8 - Jun 06, 2024 12:51:54 pm
PC w ith EE:

Where are w e in regards to TX, OV, imaging or anything else.

Has not had any images recently. Had appt w ith dr the 28th and then meets w ith WC this Thursday

Where are w ith functionality? What can you or cant you do?
Anything w ith physical exertion requires contact change is position. If he is sitting he w ill have to stand then if standing w ill have to sit.

Can you stand long enough to prep/cook a meal? Yes
Can you chop? Yes
Can you bend to load the dishw asher? Depending on the day, w ith pain he can alw ays do it. Somedays are w orse but alw ays capable

Can you push/pull to vacuum mop or sw eep? Does not do that- w ould assume he could

Can you carry a laundry basket? Yes
Can you sw itch the load? Yes

Can you show er independently? Yes
Reach up to w ash head? Yes
Bend to w ash toes? Yes

Can you dress yourself? Yes can put on socks and shoes

Can you drive? Yes

Typical day? Every day is different- he has teenage kids and does a lot of shuttling for them. Sits out back at the patio or on the computer. Will go out for a light w alk to change positions often.

What is preventing you from RTW?
The physical requirements of the job. He has to have sense of tactics requirements- fighting, w restling, quick moving.

Would your ER be able to accommodate the R&L w ith a desk position?
No because the law states he has to be able to still do these functions as

SX: Does not really w ant to do this. The dr says they do not recommend 'now ' as there is risk of being more substantial.

What are w e doing to try and get better?
Exercise and moving it right now is about all. Waiting for the WC to be done and make recommendations of their ow n.

Are you rec'ing income from WC? No currently going to court for it.

Anything else?
Nope, just the need for constant change in positions is needed frequently

**EE has OV w ith WC provider thursday. Will obtain copy of that records and send to us. Will refer back to CR once rec'ed. - SAAED9 - Jun 11, 2024 04:58:13 pm
UPDATED HAS BEEN GATHERED NOTED IN PHONE NOTES. PLEASE CONTINUE WITH PEER AND REQUEST PEER TO PEER TO GATHER OUTCOME OF RECENT OV.

THANK YOU - SAAED9 - Jun 20, 2024 02:23:34 pm
Referral Date: 6/20/24

Claims Specialist Name: Savannah Eddy
Phone Number: 800-423-2765 X 6932
Email Address: savannah.eddy@lfg.com

Submitter's Name: Elisa Silva
Phone Number: 480-806-6099
Email Address: Elisa.Silva@lfg.com

Referral Type: Standard File Review
Other Considerations (optional): none
Claimant Name (First/Last): David Boruchow itz
Claim Number: LTD 1230082409
Include any additional claim #'s involved: GR LIFE 1240001544
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: MDT
Claimant State of Residence: NV
Customer/Group Name: Nye County
Job Title: Police captain
Product Type: LTD

Diagnosis: low back pain, lumbar strain, degeneration of lumbar intervertebral disc
Date of Disability: 7/10/23
Last Day Worked: 7/7/23
Benefit Begin Date: 10/8/23
Specialty Requested: occupational medicine

Name and Specialty of prior external vendor review ers/ examiners: 12/5/23 by ICP Martin D. Hoffman, MD (PM&R)

Attorney Involvement: Yes or No: No
Attorney Contact Information (If applicable): None

Core Questions:

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 3/1/24 to current and beyond , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
Name: Dr. Peter Su
Phone Number: 702-779-3994
Fax Number: 888-464-0838

Name: Joshua Weltha, PA-C
Phone Number: 702-703-3351
Fax Number: 775-727-9452

Other Questions:

1.If functional impairment is present, w hat are the reasonable expectations for improvement and w hen w ould those be expected?

2.Do the available records document any clinical evaluation abnormalities to support the medical necessity for restrictions and limitations?

3.Would an IME be recommended as appropriate follow -up for ongoing claim management? - ELMSI8 - Jun 20, 2024 02:46:15 pm
Case submitted to CRT case #223508 for a peer review w ith an Occupational Medicine physician. - STEGU1 - Jun 21, 2024 08:50:31 am

| | | | | | |
|---|---|---|---|---|---|
| 7/11/2024 12:02:15 PM | Documents/Mail | 64 | Email | Received | SAAED9 |
| | 2024-07-09-08.17.46.074120O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:48 pm | | | | |
| 7/11/2024 12:02:16 PM | Documents/Mail | 65 | Medical Records | Received | SAAED9 |
| | 2024-07-09-08.17.46.116120O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:49 pm | | | | |
| 7/15/2024 | Documents/Mail | 64 | Email | Completed | SAAED9 |
| | 2024-07-09-08.17.46.074120O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:48 pm | | | | |
| 7/16/2024 | Documents/Mail | 65 | Medical Records | Completed | SAAED9 |
| | 2024-07-09-08.17.46.116120O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:49 pm | | | | |
| 7/17/2024 | Claim Tasks | 23 | Obtain Missing Info | Completed | LLJONES |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:52 pm | | | | |
| 7/17/2024 | Claim Tasks | 18 | Review SS Offset Amount | Completed | LLJONES |
| | This SS Task #7169 is to remain Open until an SSDI Aw ard is recvd.<br>Used for ongoing communication betw een the LTD CE and the SS CE<br>When not communicating, please reset in SS CE initials to the COD date.<br>- LLJONES - Dec 28, 2023 10:02:06 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:19 pm | | | | |
| 7/17/2024 | Referrals | 5 | Vendor Results | Completed | LLJONES |
| | - SS VENDOR Claimify - REFERRAL T-4<br>Social Security Vendor Claimify has review ed this claim and indicated the claimant is not a good candidate for ssdi at this time Possible RTW ow n occupation.<br>Sending T4/Defer letter to clmt now .<br>Vendor w ill re-review claim: 6/7/24 - JEMFL3 - Dec 28, 2023 09:24:54 am<br>- SS VENDOR Claimify - REFERRAL T-2 **...<br>Social Security Vendor Claimify has review ed this claim and indicated the claimant should be aw arded at the appeal Level. Follow -up set to make intro call to clmt w ithin 3 business days. - MAVCO9 - Jun 07, 2024 08:48:03 am<br><br>LEFT DETAILED VM TO PURSUE SSDI. POF is due in 30 days, OFFSET IF AWARDED for clmt and any elig depts, any overpayment needs paid back Left my ph # For any questions. mailed ETA letter. 30 DAY TASK FOR POF FROM CLMT OR VENDOR - LLJONES - Jun 12, 2024 01:45:10 pm<br><br>claimify closed file since clmt does not have enough w ork quarters to quaify. updated offset grid to show ssdi NQ. closed ss referral and related claim tasks. - LLJONES - Jul 17, 2024 02:51:39 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:58 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/19/2024 | Telephone (OUT) | 9 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE to gather update and address VOC RTW. No answ er LVM - SAAED9 - Sep 19, 2024 02:31:05 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/3/2024 | Telephone (OUT) | 10 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE for update- no changes

Has a f/u w ith PCP next w eek. Based on last conversation they are going to w ork on medication change.

Where are w e regarding RTW?
Not sure he is going to RTW from w hat he is being told from the provider.

S/W EE. Advised w e know EE is TDOO throguh the OO peiord based on records rec'ed. How ever, it is likely the EE w ill have transferable skills and benefits may not be payable beyond 10/08/2025. Advised EE i am going to set a VOC RTW consult and use these next 12 months to find gainful employment so w hen COD comes EE has further income if found NTDAO.
- SAAED9 - Oct 03, 2024 12:05:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/3/2024 12:04:40 PM | Referrals | 8 | Voc Rehab | Initial | SAAED9 |

Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Gainful Amount (if defined in the policy):
Benefit Amount: $6,000

Medical Information
Current Functional Capacity and R&Ls supported by physician:

PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023
Job Description on file? AWD 10/24/2023
Job Analysis on file?
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed)

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please reach out to EE for RTW services. We know EE is TDOO but it is likely w hen COD comes EE w ill have gainful based on w ork history and skills. To assist EE placing VOC referral now
- SAAED9 - Oct 03, 2024 12:04:53 pm

10/03/24-RTW REFERRAL CONSULTATION-
VRC consulted w ith CS regarding the recent referral. It w as reported that the claimant is unable to return to w ork in the law enforcement field but is interested in discussing other employment options. The plan is to do a vocational file review and set a f/up to contact the claimant to initiate the RTW planning dialogue.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 03, 2024 03:59:09 pm

VOCATIONAL FILE REVIEW-

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Age: 44 years old
DOD: 7/10/23
COD: 10/08/25
Own Occupation: Police Captain
Own Employer: Nye County
Claims Specialist: Savannah Eddy
MEDICAL-
Medical documentation outlines lumbar pain caused by MVA, WC injury case opened on 4/09/23, doctor recommended bilateral L4-5 and L5-S1 facet joint injections, reports of impaired posture, decreased range of motion, reduced core stability and mild weakness, pain in rib cage persists, pain is caused when flexing and extending body. Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical DX: M54.50 Low Back Pain, First appeared: 04/09/2022, Advised to stop work: 07/10/2023, Hospital confined: 04/09/2022-04/10/2022-Injury: During a search and rescue operation EE rolled off highway vehicle numerous times. R&L: Not able to RTW in law enforcement.
Diagnosed Disability: Lower Back Pain, Multilevel Degenerative Disc Disease
Restrictions and Limitations: No repetitive bending, twisting, stooping, crawling, climbing, squatting, or lifting more than 10 lbs. frequently or 20 lbs. occasionally.
VOCATIONAL-
Employment History: 2006-2023-Police Captain with Nye Co.
Education: HS diploma, Postsecondary Criminal Justice degree, Police Academy training.
Labor Market: Pahrump, Nevada 89048 (62 miles west of Las Vegas, lies on the Nevada-California border, population of 44,738).
Transferable Employment Skills: knowledge/experience in supervising patrol officers, detectives, and office staff, conducting performance evaluations, providing feedback/guidance/mentoring, planning daily operations, creating/maintaining reports, budgets, representing department in community events/functions, ensuring community safety, strong communication skills and extensive public and community interaction.
Alternate Employment Options: Unable to work in law enforcement per documentation outlined in claim. Will discuss alternate work settings that may include the following:
Private Investigation, Fraud Investigator, Code Enforcement, Security/Surveillance Consulting, Loss Prevention Manager, Probation/Parole, Forensics, Instruction/Teaching, Victim Advocate, Intelligence Analyst,
Employment Barriers: degeneration of lumbar spine that precludes involvement in law enforcement activities.
RTW CONSIDERATIONS/NEXT STEPS: The plan is to set a f/up and contact the claimant to initiate the RTW planning process. It is anticipated that the following services will be provided.
(1) Labor market research/identification of employment options/resources in his area.
(2) Resume development or support updating/reformatting an existing resume.
(3) Job seeking activities/job interview preparation.
(4) Consideration of ergonomic accommodations for lumbar support.
(5) Referrals to local employment assistance programs for direct/hands-on support with job placement activities.
The CS will be apprised of all RTW developments and outcomes.
Cathy McDonald, MA, CRC
- CSMCDON - Oct 04, 2024 02:57:04 pm

10/04/24-RTW REFERRAL UPDATE-
VRC sent an email to David with an update on the RTW referral. This email outlines the types of services typically provided, my work schedule, contact information and a request to coordinate a date/time to discuss RTW services. A f/up will be set to forward this email for uploading and discuss RTW services with the claimant.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II

- CSMCDON - Oct 04, 2024 03:09:37 pm

10/08/24-RTW MEETING COORDINATION-
Email received from David regarding scheduling a RTW meeting for Monday, 11/04. VRC responded back via email with confirmation that this date will work and a request to identify a time. VRC provided their work schedule and agreed to call him at a time that best fits his schedule. A f/up will be set to revisit this w/David and forward email correspondence for uploading into the claim.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 08, 2024 09:43:20 am

**Chronological Activity List**

10/15/24-RTW MEETING COORDINATION-
VRC emailed David w ith a request to coordinate a date/time to discuss RTW services. VRC provided their w ork schedule and offered to meet at a time that best fits his schedule. A f/up w ill be set in anticipation of a response from him. If no response is received, w ill try contacting him again.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 15, 2024 08:26:49 am

10/22/24-VOCATIONAL FILE UPDATE-
VRC has not received an email update from the claimant yet. A f/up w ill be set to email him again w /a request to schedule a date/time to discuss RTW services.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 22, 2024 03:41:56 pm

10/24/24-VOCATIONAL REFERRAL UPDATE-
VRC w ill contact claims manager for clarification of the claimant's restrictions/limitations and w ork readiness status. A f/up w ill be set to schedule a date/time for a consultation.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 24, 2024 11:28:59 am

10/29/24-VOCATIONAL FILE CONSULTATION-
VRC consulted w ith the LTD Claims Manager regarding the vocational referral. VRC reported that the employee w as not responsive to the email requests to schedule a time to discuss services. Both parties are in agreement that a consult w ill be scheduled w ith the CS and the vocational file w ill be prepared for closure.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 29, 2024 02:44:18 pm

11/04/24-VOCATIONAL FILE UPDATE-
VRC updated the CS on not receiving a response from EE regarding scheduling a meeting to review vocational services. Contacts w ere made on 10/08 and 10/15 w ithout any response. Based on this, the vocational file w ill be prepared for closure.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II

- CSMCDON - Nov 04, 2024 09:11:47 am

VOCATIONAL FILE CLOSURE-
Referral Date: 10/03/24
Referral Reason: Please reach out to EE for RTW services. We know EE is TDOO but it is likely w hen COD comes EE w ill have gainful based on w ork history and skills. To assist EE placing VOC referral now
- SAAED9 - Oct 03, 2024 12:04:53 pm
Age: 44 years old
DOD: 7/10/23
COD: 10/08/25
Ow n Occupation: Police Captain
Ow n Employer: Nye County
Diagnosed Disability: Low er Back Pain, Multilevel Degenerative Disc Disease
Restrictions and Limitations: No repetitive bending, tw isting, stooping, craw ling, climbing, squatting, or lifting more than 10 lbs. frequently or 20 lbs. occasionally.
Vocational Services:
VRC contacted the claimant w ith request to schedule a date/time to discuss RTW services. The claimant w as not responsive to the email attempts. Based on this, the vocational file w ill be closed.
Closure Reason: Consulted w ith claims management and CS and it w as determined that a vocational closure is appropriate.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Nov 05, 2024 08:15:05 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:00 pm

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/15/2024 1:51:34 PM | Documents/Mail | 66 | Email | Received | SAAED9 |
| | 2024-10-15-14.43.05.099180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:50 pm | | | | |
| 10/15/2024 1:51:35 PM | Documents/Mail | 67 | Incoming Correspondence | Received | SAAED9 |
| | 2024-10-15-14.43.05.124180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:25 pm | | | | |
| 10/15/2024 1:51:35 PM | Documents/Mail | 68 | Incoming Correspondence | Received | SAAED9 |
| | 2024-10-15-14.43.05.136180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:26 pm | | | | |
| 10/15/2024 1:51:36 PM | Documents/Mail | 69 | Incoming Correspondence | Received | SAAED9 |
| | 2024-10-15-14.43.05.148180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:27 pm | | | | |
| 10/17/2024 | Documents/Mail | 66 | Email | Completed | SAAED9 |
| | 2024-10-15-14.43.05.099180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:50 pm | | | | |
| 10/17/2024 | Documents/Mail | 67 | Incoming Correspondence | Completed | SAAED9 |
| | 2024-10-15-14.43.05.124180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:25 pm | | | | |
| 10/17/2024 | Documents/Mail | 68 | Incoming Correspondence | Completed | SAAED9 |
| | 2024-10-15-14.43.05.136180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:26 pm | | | | |
| 10/17/2024 | Documents/Mail | 69 | Incoming Correspondence | Completed | SAAED9 |
| | 2024-10-15-14.43.05.148180O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:27 pm | | | | |
| 11/5/2024 | Referrals | 8 | Voc Rehab | Completed | SAAED9 |

Demographics
Claimant Name: David Boruchow itz
Claim Number: 1230082409
Gainful Amount (if defined in the policy):
Benefit Amount: $6,000

Medical Information
Current Functional Capacity and R&Ls supported by physician:

PER PEER REV IEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023
Job Description on file? AWD 10/24/2023
Job Analysis on file?

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed)

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please reach out to EE for RTW services. We know EE is TDOO but it is likely w hen COD comes EE w ill have gainful based on w ork history and skills. To assist EE placing VOC referral now
- SAAED9 - Oct 03, 2024 12:04:53 pm

10/03/24-RTW REFERRAL CONSULTATION-
VRC consulted w ith CS regarding the recent referral. It w as reported that the claimant is unable to return to w ork in the law enforcement field but is interested in discussing other employment options. The plan is to do a vocational file review and set a f/up to contact the claimant to initiate the RTW planning dialogue.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 03, 2024 03:59:09 pm

VOCATIONAL FILE REVIEW-
Age: 44 years old
DOD: 7/10/23
COD: 10/08/25
Ow n Occupation: Police Captain
Ow n Employer: Nye County
Claims Specialist: Savannah Eddy
MEDICAL-
Medical documentation outlines lumbar pain caused by MVA, WC injury case opened on 4/09/23, doctor recommended bilateral L4-5 and L5-S1 facet joint injections, reports of impaired posture, decreased range of motion, reduced core stability and mild w eakness, pain in rib cage persists, pain is caused w hen flexing and extending body. Per APS 11/14/2023 Joshua Weltha, Spring Mountain Medical DX: M54.50 Low Back Pain, First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023, Hospital confined: 04/09/2022-04/10/2022-Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times. R&L: Not able to RTW in law enforcement.
Diagnosed Disability: Low er Back Pain, Multilevel Degenerative Disc Disease
Restrictions and Limitations: No repetitive bending, tw isting, stooping, craw ling, climbing, squatting, or lifting more than 10 lbs. frequently or 20 lbs. occasionally.
VOCATIONAL-
Employment History: 2006-2023-Police Captain w ith Nye Co.
Education: HS diploma, Postsecondary Criminal Justice degree, Police Academy training.
Labor Market: Pahrump, Nevada 89048 (62 miles w est of Las Vegas, lies on the Nevada-California border, population of 44,738).
Transferable Employment Skills: know ledge/experience in supervising patrol officers, detectives, and office staff, conducting performance evaluations, providing feedback/guidance/mentoring, planning daily operations, creating/maintaining reports, budgets, representing department in community events/functions, ensuring community safety, strong communication skills and extensive public and community interaction.
Alternate Employment Options: Unable to w ork in law enforcement per documentation outlined in claim. Will discuss alternate w ork settings that may include the follow ing:
Private Investigation, Fraud Investigator, Code Enforcement, Security/Surveillance Consulting, Loss Prevention Manager, Probation/Parole, Forensics, Instruction/Teaching, Victim Advocate, Intelligence Analyst,
Employment Barriers: degeneration of lumbar spine that precludes involvement in law enforcement activities.
RTW CONSIDERATIONS/NEXT STEPS: The plan is to set a f/up and contact the claimant to initiate the RTW planning process. It is anticipated that the follow ing services w ill be provided.
(1) Labor market research/identification of employment options/resources in his area.
(2) Resume development or support updating/reformatting an existing resume.
(3) Job seeking activities/job interview preparation.
(4) Consideration of ergonomic accommodations for lumbar support.
(5) Referrals to local employment assistance programs for direct/hands-on support w ith job placement activities.
The CS w ill be apprised of all RTW developments and outcomes.
Cathy McDonald, MA, CRC
- CSMCDON - Oct 04, 2024 02:57:04 pm

10/04/24-RTW REFERRAL UPDATE-
VRC sent an email to David w ith an update on the RTW referral. This email outlines the types of services typically provided, my w ork schedule, contact information and a request to coordinate a date/time to discuss RTW services. A f/up w ill be set to forw ard this email for uploading and discuss RTW services w ith the claimant.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II

- CSMCDON - Oct 04, 2024 03:09:37 pm

10/08/24-RTW MEETING COORDINATION-
Email received from David regarding scheduling a RTW meeting for Monday, 11/04. VRC responded back via email w ith confirmation that this date w ill w ork and a request to identify a time. VRC provided their w ork schedule and agreed to call him at a time that best fits his schedule. A f/up w ill be set to revisit this w /David and forw ard email correspondence for uploading into the claim.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 08, 2024 09:43:20 am

10/15/24-RTW MEETING COORDINATION-
VRC emailed David w ith a request to coordinate a date/time to discuss RTW services. VRC provided their w ork schedule and offered to meet at a time that best fits his schedule. A f/up w ill be set in anticipation of a response from him. If no response is received, w ill try contacting him again.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 15, 2024 08:26:49 am

10/22/24-VOCATIONAL FILE UPDATE-
VRC has not received an email update from the claimant yet. A f/up w ill be set to email him again w /a request to schedule a date/time to discuss RTW services.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 22, 2024 03:41:56 pm

10/24/24-VOCATIONAL REFERRAL UPDATE-
VRC w ill contact claims manager for clarification of the claimant's restrictions/limitations and w ork readiness status. A f/up w ill be set to schedule a date/time for a consultation.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 24, 2024 11:28:59 am

10/29/24-VOCATIONAL FILE CONSULTATION-
VRC consulted w ith the LTD Claims Manager regarding the vocational referral. VRC reported that the employee w as not responsive to the email requests to schedule a time to discuss services. Both parties are in agreement that a consult w ill be scheduled w ith the CS and the vocational file w ill be prepared for closure.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Oct 29, 2024 02:44:18 pm

11/04/24-VOCATIONAL FILE UPDATE-
VRC updated the CS on not receiving a response from EE regarding scheduling a meeting to review vocational services. Contacts w ere made on 10/08 and 10/15 w ithout any response. Based on this, the vocational file w ill be prepared for closure.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II

- CSMCDON - Nov 04, 2024 09:11:47 am

VOCATIONAL FILE CLOSURE-
Referral Date: 10/03/24
Referral Reason: Please reach out to EE for RTW services. We know EE is TDOO but it is likely w hen COD comes EE w ill have gainful based on w ork history and skills. To assist EE placing VOC referral now

- SAAED9 - Oct 03, 2024 12:04:53 pm
Age: 44 years old
DOD: 7/10/23
COD: 10/08/25
Own Occupation: Police Captain
Own Employer: Nye County
Diagnosed Disability: Lower Back Pain, Multilevel Degenerative Disc Disease
Restrictions and Limitations: No repetitive bending, twisting, stooping, crawling, climbing, squatting, or lifting more than 10 lbs. frequently or 20 lbs. occasionally.
Vocational Services:
VRC contacted the claimant with request to schedule a date/time to discuss RTW services. The claimant was not responsive to the email attempts. Based on this, the vocational file will be closed.
Closure Reason: Consulted with claims management and CS and it was determined that a vocational closure is appropriate.
Cathy McDonald, MA, CRC
Vocational Rehabilitation Consultant II
- CSMCDON - Nov 05, 2024 08:15:05 am

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:47:00 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/10/2025 8:02:50 PM | Claim Tasks | 24 | Begin AO Investigation | Requested | SAAED9 |

Day 30 of AO forms 03/10/2025 - SAAED9 - Feb 06, 2025 12:40:05 pm

EE Sent email to ask for extension for AO forms to 04/2025. ADvised he needs to send his forms. Send AO f/u letter - SAAED9 - Mar 10, 2025 01:21:56 pm

AO FORMS REC'ED - SAAED9 - Mar 24, 2025 10:49:15 am

Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:44:51 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/6/2025 | Telephone (OUT) | 11 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE to address COD- no answer LVM
LVM advising of forms and 30 day timeline. - SAAED9 - Feb 06, 2025 12:33:29 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/6/2025 | Claim Tasks | 16 | Call Claimant | Completed | SAAED9 |

Will f/u with EE 03/2024 to gather update. Will order OVN based on OV. - SAAED9 - Dec 26, 2023 03:33:14 pm

Sending updated AUTH, TMP, ABF. Once all rec'ed will order updated records.
- SAAED9 - Apr 19, 2024 11:45:47 am

Records have been requested from TMP. Once rec'ed will send to CR for ongoing support. - SAAED9 - Apr 25, 2024 12:07:06 pm

Rec'ed records from Dr. Weltha. Waiting on records from Dr. Su and Optimal Therapy. Once rec'ed will send to CR for ongoing support - SAAED9 - May 17, 2024 12:33:19 pm

All records rec'ed and sent to CR for ongoing support. - SAAED9 - May 31, 2024 11:08:01 am

**EE has OV with WC provider thursday. Will obtain copy of that records and send to us. Will refer back to CR once rec'ed. - SAAED9 - Jun 11, 2024 04:59:10 pm

Called EE to gather update on OV. No answer sent back to CR as we need to attempt to gather support - SAAED9 - Jun 20, 2024 02:24:16 pm

will discuss claim mgnt with ER - SAAED9 - Jul 16, 2024 04:45:09 pm

Given the distance from COD will hold off on TSA. Will begin VOC RTW with EE. Will gather full update and plan and TX to recover. - SAAED9 - Aug 06, 2024 09:20:55 am

Called EE to gather update and address VOC RTW. No answer LVM - SAAED9 - Sep 19, 2024 02:30:53 pm

VOC RTW Referral has been placed.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Will monitor RTW. If none w ill run TSA 02/2025 - SAAED9 - Oct 03, 2024 12:06:37 pm | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:58 pm | | | | |
| 2/6/2025 | Documents/Mail | 70 | Begin Any Occ Investigation | Completed | SAAED9 |
| | Begin Any Occ InvestigationAttachments:AbilitiesISSTMPAuth MedicalTraining-Education-Experience | | | | |
| 2/6/2025 | Summary/Assessment/Pa | 2h | OPEN SAP - SAAED9 - Dec 22, 2023 01:31:59 pm | Completed | SAAED9 |

Summary Notes
OPEN SAP - SAAED9 - Dec 22, 2023 01:31:59 pm
Assessment Notes
BASIC MONTHLY EARNINGS or PREDISABILITY INCOME means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day w orked just prior to the date the Disability begins.
It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It w ill not exceed the amount show n in the Employer's financial records, the amount for w hich premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; w hichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage show n in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings w ill not exceed the amount show n in the Employer's financial records. - SAAED9 - Oct 23, 2023 12:46:48 pm

EE Earns salary of $5,688.00 biw eekly
$5,688.00 * 26 = $147,888.00 / 12 = $12,324
- SAAED9 - Dec 22, 2023 01:31:59 pm
Path Notes
Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
Rec'ed peer review

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:
o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.

Path:
Claim is APPROVED. Sending JD to VOC for OA. Will f/u w ith EE 03/2024 to gather update. Will order OVN based on OV.
- SAAED9 - Dec 22, 2023 01:31:59 pm

UPDATED PATH:
Records have been requested from TMP. Once rec'ed w ill send to CR for ongoing support - SAAED9 - Apr 25, 2024 12:08:18 pm

UPDATED ASSESSMENT:
Per APS Joshua Weltha, 04/24/2024

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

DX: M54.50 Low back pain
LOV: 04/24/2024, NOV: 07/24/2024
Occasionally able to lift/carry 1-100+ lbs
Occasionally: Stand, w alk, balance, stoop, kneel, finger, crouch, craw ling, grasping, climbing, pushing, pulling, bending
Frequently: Sitting
Not able to RTW in law enforcement capacity
Per Dr. Su at Spine and spines stated EE is at MMI recommended cessation of care.

UPDATED PATH:
Rec'ed APS how ever w aiting on OVN. Once rec'ed w ill send to CR for ongoing support.
LTP: Likely NTDOO - SAAED9 - Apr 29, 2024 12:52:30 pm

UPDATED ASSESSMENT:

01/18/2024 Dr. Su
Seen for low back pain. s/p bilateral ablation on 12/11/2023 still reporting limited relief. Continue injection therapy does not w ant to pursue surgical options at this time. F/U 3-4 w eeks

03/01/2024 Optimal Therapy
Medical and Therapy History: 1-2 personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems w as completed using standardized tests and measures addressing 3 or
more elements from any of the follow ing: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: Evolving clinical presentation w ith changing characteristics.
Clinical Decision Making: Moderate complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.

04/17/2024 Dr. Su
Low back pain. Per FCE done on 03/01/2024 at optimal therapy results w ere valid, consistent and placed on sedentary physical demand category and does not meet the job requirement.

UPDATED PATH:
Rec'ed records from EE- w aiting for the TMP to send records to include full report.
LTP: NTDAO - SAAED9 - May 09, 2024 11:10:52 am

UPDATED ASSESSMENT:
Dr. Weltha
01/22/2024
Seen for 2 month f/u and lab results.

01/31/2024
Seen for xray

02/13/2024
Seen for XR results.

04/24/2024
Seen for lab results and f/u on back.

UPDATED PATH:
all records have been rec'ed. sending to CR for ongoing support.
LTP: Likely NTDAO - SAAED9 - May 31, 2024 11:07:28 am

UPDATED ASSESSMENT:
PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of

**Chronological Activity List**

force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

UPDATED PATH;
WILL REVIEW CLAIM PATH AND CLAIM MGNT WITH ER - SAAED9 - Jul 16, 2024 04:44:23 pm

UPDATED PATH:
Given the distance from COD w ill hold off on TSA. Will begin VOC RTW w ith EE. Will gather full update and plan and TX to recover.
- SAAED9 - Aug 06, 2024 09:23:10 am

UPDATED PATH:
S/W EE. Advised w e know EE is TDOO throguh the OO peiord based on records rec'ed. How ever, it is likely the EE w ill have transferable skills and benefits may not be payable beyond 10/08/2025. Advised EE i am going to set a VOC RTW consult and use these next 12 months to find gainful employment so w hen COD comes EE has further income if found NTDAO. - SAAED9 - Oct 03, 2024 12:01:37 pm

| | | | | |
|---|---|---|---|---|
| 2/6/2025 12:34:52 PM | Summary/Assessment/Path | COD SAP - SAAED9 - Feb 06, 2025 12:35:09 pm | Requested | SAAED9 |

Summary Notes
COD SAP - SAAED9 - Feb 06, 2025 12:35:09 pm
Assessment Notes

Path Notes
Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Path:
AO forms have been sent to EE. Once rec'ed w ill send to CR for COD review .
LTP: NTDAO
- SAAED9 - Feb 06, 2025 12:35:09 pm

UPDATED PATH:
Once AO forms are rec'ed w ill determine if further records are needed for COD review or if the PEER review remains the same. - SAAED9 - Feb 06, 2025 12:40:58 pm

UPDATED ASSESSMENT:
Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing: Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below w aist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted
Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Craw ling: Never Ladder climbing: Never Low er extremities for foot controls:

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Occasional Driving: Occasional
These R/Ls are permanent.

UPDATED PATH:
Sent PEER back to VOC for TSA - SAAED9 - Apr 17, 2025 08:41:04 am

Per VOC: The Transferable Skills Analysis identified occupations that are w ithin the physical abilities and identified skills level.

UPDATED PATH:
Claimant is NTDAO. Will send me management for AO denial. - JXKACHA - Apr 23, 2025 01:05:50 pm

Agree w ith determination rationale. Peer review identified medically reasonal restrictions, and TSA w as able to identify gainful occupations the claimant could perform w ithin those restrictions and their identified transferrable skills. Claim is in final pay status - proceed w ith letter and determination call. - SAAED9 - Apr 24, 2025 01:50:18 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/6/2025 12:38:48 PM | Claim Tasks | 25 | Call Claimant | Requested | SAAED9 |

Day 45 of AO forms 03/24/2025 - SAAED9 - Feb 06, 2025 12:39:15 pm

AO forms have been rec'ed and sent to VOC for TSA - SAAED9 - Mar 24, 2025 11:15:36 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:01 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/10/2025 | Documents/Mail | 71 | Any Occ Follow Up | Completed | SAAED9 |

Any Occ Follow UpAttachments:ISSTMPAuth MedicalTraining-Education-Experience

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/20/2025 1:52:24 PM | Documents/Mail | 72 | Email | Received | SAAED9 |

2025-03-20-10.42.44.452120O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/20/2025 1:52:25 PM | Documents/Mail | 73 | Claim Form - EE, ER, APS | Received | SAAED9 |

2025-03-20-10.42.44.463120O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:29 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/21/2025 | Documents/Mail | 72 | Email | Completed | SAAED9 |

2025-03-20-10.42.44.452120O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/24/2025 | Claim Tasks | 24 | Begin AO Investigation | Completed | SAAED9 |

Day 30 of AO forms 03/10/2025 - SAAED9 - Feb 06, 2025 12:40:05 pm

EE Sent email to ask for extension for AO forms to 04/2025. ADvised he needs to send his forms. Send AO f/u letter - SAAED9 - Mar 10, 2025 01:21:56 pm

AO FORMS REC'ED - SAAED9 - Mar 24, 2025 10:49:15 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:51 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/24/2025 | Documents/Mail | 73 | Claim Form - EE, ER, APS | Completed | SAAED9 |

2025-03-20-10.42.44.463120O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:29 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/24/2025 11:14:21 AM | Referrals | 9 | TSA | Initial | SAAED9 |

Demographics
Claimant Name: David Boruchow itz
Claim Number:1230082409
Gainful Amount (if defined in the policy):
Benefit Amount: $6,000
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? AWD 03/20/2025
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions?

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

If Local Economy, please identify EE's location at time of disability:

Medical Information
Current Functional Capacity and R&Ls supported by physician:

exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023 light
Job Description on file?
Job Analysis on file?
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) AWD 03/20/2025

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please provide TSA

Thank you!
- SAAED9 - Mar 24, 2025 11:14:38 am

Vocational Response:

With the restrictions and limitations, the w ay they are w ritten, the Insured has to be aw ay from their w orkstation to w alk one third of the w orkday. Is there any reason the Insured cannot remain in their w orkstation the entire w orkday, provided they are afforded the opportunity to change positions betw een sitting and standing at w ill?

Please advise if you w ould like to get mdical clarification or moveforw ard w ith TSA w ithout clarification.

Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC
Vocational Rehabilitation Counselor
- CAFTH9 - Mar 25, 2025 07:39:44 pm

Hi Chandra, There is a new ABF on file dated 03/26/2025
Can you used these R&L for TSA
Occasionally lift/carry 0-100 lbs
Frequently sit and drive
Occasionally: stand, w alk, climb, bend, kneel, finger, hanlde, operate foot controls
Needs to adjust betw een sitting standing and laying dow n to adjust for paind and discomfort as needed. - SAAED9 - Mar 28, 2025 10:40:09 am

Vocational Response:

Clarify if the clamant can alternate betw een sitting and standing rather than laying dow n to adjust for pain. Also please clarify for reaching at desk level and below w aist. TSA w ill be canceled at this time. Please refer back to CAFTH9 once clarifacation is complete.

Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC

**Chronological Activity List**

| | | | | | |
|---|---|---|---|---|---|
| | Vocational Rehabilitation Counselor<br>- CAFTH9 - Mar 31, 2025 01:55:12 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:01 pm | | | | |
| 3/27/2025 | Documents/Mail<br>2025-03-27-11.31.26.356220O01 | 74 | Email | Completed | SAAED9 |
| 3/27/2025 4:39:56 PM | Documents/Mail<br>2025-03-27-11.31.26.367220O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:30 pm | 75 | Incoming Correspondence | Received | SAAED9 |
| 3/28/2025 | Documents/Mail<br>2025-03-27-11.31.26.367220O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:30 pm | 75 | Incoming Correspondence | Completed | SAAED9 |
| 3/31/2025 1:44:50 PM | Referrals | 10 | Change of Definition | Initial | SAAED9 |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:07 pm
Referral Date: 03/31/2025
CS Name: savannah rajca
CS Email: savannah.eddy@lfg.com
Referral Type: Standard File Review Request Addendum Review Request
Other considerations:
Claimant Name: David Boruchow itz
Claim #: 1230082409
Additional claim #'s involved:
Claimant's DOB:
Is linked provider in S1?: No - DOCSNET claim
Claimant's Time Zone: Pacific
Claimant's State of Residence: NV
Customer/Group Name: Nye County
Claimant's Job Title: Police captian
Product Type: LTD
Was claim review ed by HCM nurse first?: No
Diagnosis: low back pain
Last Day Worked: 07/07/2023
Date of Disability: 07/10/2023
Benefit Begin Date: 10/08/2023
Physician Specialty Requested: Orthopedics - General

1. Please identify the primary impairing diagnosis(es) w ith ICD 10 Code(s):
2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses:
3. Taking into consideration the entire clinical picture, including standards of care, evidence-based medicine, any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations and comment on the expected duration for the follow ing date range: 07/2024 to current and beyond
4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?
5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported conditions?

Additional Questions:

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Custom Questions:
Question 1: A peer review completed 07/05/2024 opined EE w as at MMI and outlined R&L. Please review the previous peer to determine if the R&L have changed. Please expand on R&L related to reaching at all levels and w hen it comes to the frequency/time of change. Example (Needs to sit, stand, lay every 15 min) - SAAED9 - Mar 31, 2025 01:45:17 pm
Case submitted to CRT case #255092 for a peer review w ith Orthopedic Physician - KAONE5 - Apr 01, 2025 11:17:01 am
CRT / ICP is unable to process - asked that w e Vend this out on 4-2- File w as submitted to ECN #294082-1 for peer review w ith Orthopedic physician - KAONE5 - Apr 02, 2025 03:14:53 pm
Final report Received back from ECN- sent to Disability Claims to be uploaded into AWD - KAONE5 - Apr 14, 2025 02:55:17 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/2/2025 | Referrals | 9 | TSA | Completed | SAAED9 |

Demographics
Claimant Name: David Boruchow itz
Claim Number:1230082409
Gainful Amount (if defined in the policy):
Benefit Amount: $6,000
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? AWD 03/20/2025
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions?
If Local Economy, please identify EE's location at time of disability:

Medical Information
Current Functional Capacity and R&Ls supported by physician:

exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023 light
Job Description on file?
Job Analysis on file?
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) AWD 03/20/2025

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please provide TSA

Thank you!
- SAAED9 - Mar 24, 2025 11:14:38 am

Vocational Response:

With the restrictions and limitations, the w ay they are w ritten, the Insured has to be aw ay from their w orkstation to w alk one third of the w orkday. Is there any reason the Insured cannot remain in their w orkstation the entire w orkday, provided they are afforded the opportunity to change positions betw een sitting and standing at w ill?

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Please advise if you w ould like to get mdical clarification or moveforw ard w ith TSA w ithout clarification.

Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC
Vocational Rehabilitation Counselor
- CAFTH9 - Mar 25, 2025 07:39:44 pm

Hi Chandra, There is a new ABF on file dated 03/26/2025
Can you used these R&L for TSA
Occasionally lift/carry 0-100 lbs
Frequently sit and drive
Occasionally: stand, w alk, climb, bend, kneel, finger, hanlde, operate foot controls
Needs to adjust betw een sitting standing and laying dow n to adjust for paind and discomfort as needed. - SAAED9 - Mar 28, 2025 10:40:09 am

Vocational Response:

Clarify if the clamant can alternate betw een sitting and standing rather than laying dow n to adjust for pain. Also please clarify for reaching at desk level and below w aist. TSA w ill be canceled at this time. Please refer back to CAFTH9 once clarifacation is complete.

Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC
Vocational Rehabilitation Counselor
- CAFTH9 - Mar 31, 2025 01:55:12 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:01 pm

| 4/15/2025 | Referrals | 10 | Change of Definition | Completed | SAAED9 |
|---|---|---|---|---|---|

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:07 pm
Referral Date: 03/31/2025
CS Name: savannah rajca
CS Email: savannah.eddy@lfg.com
Referral Type: Standard File Review Request Addendum Review Request
Other considerations:
Claimant Name: David Boruchow itz
Claim #: 1230082409
Additional claim #'s involved:
Claimant's DOB:
Is linked provider in S1?: No - DOCSNET claim
Claimant's Time Zone: Pacific
Claimant's State of Residence: NV
Customer/Group Name: Nye County
Claimant's Job Title: Police captian
Product Type: LTD
Was claim review ed by HCM nurse first?: No
Diagnosis: low back pain
Last Day Worked: 07/07/2023
Date of Disability: 07/10/2023
Benefit Begin Date: 10/08/2023
Physician Specialty Requested: Orthopedics - General

1. Please identify the primary impairing diagnosis(es) w ith ICD 10 Code(s):
2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses:
3. Taking into consideration the entire clinical picture, including standards of care, evidence-based medicine, any medication or other treatment side effects, please describe how any supported level of impairment translates into

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | restrictions and limitations and comment on the expected duration for the follow ing date range: 07/2024 to current and beyond<br>4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?<br>5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported conditions?<br><br>Additional Questions:<br><br>Custom Questions:<br>Question 1: A peer review completed 07/05/2024 opined EE w as at MMI and outlined R&L. Please review the previous peer to determine if the R&L have changed. Please expand on R&L related to reaching at all levels and w hen it comes to the frequency/time of change. Example (Needs to sit, stand, lay every 15 min) - SAAED9 - Mar 31, 2025 01:45:17 pm<br>Case submitted to CRT case #255092 for a peer review w ith Orthopedic Physician - KAONE5 - Apr 01, 2025 11:17:01 am<br>Final report Received back from ECN- sent to Disability Claims to be uploaded into AWD - KAONE5 - Apr 14, 2025 02:55:17 pm<br>CRT / ICP is unable to process - asked that w e Vend this out on 4-2- File w as submitted to ECN #294082-1 for peer review w ith Orthopedic physician - KAONE5 - Apr 02, 2025 03:14:53 pm | | | | |
| 4/15/2025 5:47:09 PM | Documents/Mail | 76 | Email | Received | SAAED9 |
| | 2025-04-14-15.57.06.536240O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:31 pm | | | | |
| 4/15/2025 5:47:11 PM | Documents/Mail | 77 | Medical Records | Received | SAAED9 |
| | 2025-04-14-15.57.06.545240O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:51 pm | | | | |
| 4/17/2025 | Documents/Mail | 76 | Email | Completed | SAAED9 |
| | 2025-04-14-15.57.06.536240O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:31 pm | | | | |
| 4/17/2025 | Documents/Mail | 77 | Medical Records | Completed | SAAED9 |
| | 2025-04-14-15.57.06.545240O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:51 pm | | | | |
| 4/17/2025 8:39:08 AM | Referrals | 11 | TSA | Initial | SAAED9 |
| | NEW R&L<br><br>Demographics<br>Claimant Name: David Boruchow itz<br>Claim Number:1230082409<br>Gainful Amount (if defined in the policy):<br>Benefit Amount: $6,000<br>Authorization to discuss w ork capacity/R&Ls w ith Physician on file? AWD 03/20/2025<br>Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions?<br>If Local Economy, please identify EE's location at time of disability: | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Medical Information
Current Functional Capacity and R&Ls supported by physician:

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing: Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below w aist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted
Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Craw ling: Never Ladder climbing: Never Low er extremities for foot controls: Occasional Driving: Occasional
These R/Ls are permanent.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023 light
Job Description on file?
Job Analysis on file?
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) AWD 03/20/2025

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please provide TSA
- SAAED9 - Apr 17, 2025 08:39:52 am

Vocational Response

Summary:
The Transferable Skills Analysis identified occupations that are w ithin the physical abilities and identified skills level.

Examples of Occupations identified based on national economy labor market and claimant's ability profile analysis:
DOT CodeOccupationStrengthMonthly Wage
375.137-014Desk OfficerSedentary$8,479
375.167-026Harbor MasterSedentary$17,224
189.167-034Security OfficerSedentary$11,129
*Wage Information is based on median 2023 Bureau of Labor Statistical Data

I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.
________________________________________
Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC
Vocational Rehabilitation Counselor
- CAFTH9 - Apr 20, 2025 12:08:49 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:03 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/22/2025 11:31:01 AM | Documents/Mail | 78 | Email | Received | SAAED9 |

2025-04-21-06.57.48.608460O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:52 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/22/2025 11:31:02 AM | Documents/Mail | 79 | Incoming Correspondence | Received | SAAED9 |

2025-04-21-06.57.48.618460O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:32 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 | Claim Tasks | 25 | Call Claimant | Completed | SAAED9 |

Day 45 of AO forms 03/24/2025 - SAAED9 - Feb 06, 2025 12:39:15 pm

AO forms have been rec'ed and sent to VOC for TSA - SAAED9 - Mar 24, 2025 11:15:36 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:01 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 | Documents/Mail | 78 | Email | Completed | SAAED9 |

2025-04-21-06.57.48.608460O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:52 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 | Documents/Mail | 79 | Incoming Correspondence | Completed | SAAED9 |

2025-04-21-06.57.48.618460O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:32 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 | Referrals | 11 | TSA | Completed | SAAED9 |

NEW R&L

Demographics
Claimant Name: David Boruchow itz
Claim Number:1230082409
Gainful Amount (if defined in the policy):
Benefit Amount: $6,000
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? AWD 03/20/2025
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions?
If Local Economy, please identify EE's location at time of disability:

Medical Information
Current Functional Capacity and R&Ls supported by physician:

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing: Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below w aist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted
Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Craw ling: Never Ladder climbing: Never Low er extremities for foot controls: Occasional Driving: Occasional
These R/Ls are permanent.

Hand Dominance:

Vocational Information:
Job Title from ER: Police Captain
Previous OA/TSA/TSR/Voc Rehab review completed? OA 12/29/2023 light

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Job Description on file?
Job Analysis on file?
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) AWD 03/20/2025

Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please provide TSA
- SAAED9 - Apr 17, 2025 08:39:52 am

Vocational Response

Summary:
The Transferable Skills Analysis identified occupations that are w ithin the physical abilities and identified skills level.

Examples of Occupations identified based on national economy labor market and claimant's ability profile analysis:
DOT CodeOccupationStrengthMonthly Wage
375.137-014Desk OfficerSedentary$8,479
375.167-026Harbor MasterSedentary$17,224
189.167-034Security OfficerSedentary$11,129
*Wage Information is based on median 2023 Bureau of Labor Statistical Data

I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.

______________________________________
Respectfully submitted,
Electronically Signed
Candra B., MS, LPC, CRC
Vocational Rehabilitation Counselor
- CAFTH9 - Apr 20, 2025 12:08:49 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:03 pm

| | | | | | |
|---|---|---|---|---|---|
| 4/23/2025 1:06:03 PM | Referrals | 12 | Management Review | Initial | SAAED9 |

Please review for AO denial. Thanks!

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
PER PEER REV IEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing: Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below w aist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Craw ling: Never Ladder climbing: Never Low er extremities for foot controls: Occasional Driving: Occasional
These R/Ls are permanent.

Per VOC: The Transferable Skills Analysis identified occupations that are w ithin the physical abilities and identified skills level.

PATH:
Claimant is NTDAO. Will send me management for AO denial. - Management Review - JXKACHA - Apr 23, 2025 01:06:48 pm

Agree w ith determination rationale. Peer review identified medically reasonal restrictions, and TSA w as able to identify gainful occupations the claimant could perform w ithin those restrictions and their identified transferrable skills. Claim is in final pay status - proceed w ith letter and determination call. - Management Review - NLGREGO - Apr 23, 2025 02:33:46 pm

Item Closed w ith Claim by System - Management Review - KRTEDFO - Nov 04, 2025 02:47:16 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 1:09:18 PM | Documents/Mail | 80 | Denial Any Occupation | Work In Progress | SAAED9 |

Denial Any Occupation

Attachments:
Translation services

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:33 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2025 9:33:26 PM | Payments | | DEPOSIT 4/8/2025 - 10/8/2025 | CURRENT | NLGREGO |
| 4/23/2025 9:33:27 PM | Status | | Not TD Any Occ | CLOSED | BRMCLSDIRY |
| 4/24/2025 | Telephone (OUT) | 12 | DAVID E. BORUCHOWITZ | Completed | SAAED9 |

Called EE to advise of denail no answ er LVM - SAAED9 - Apr 24, 2025 01:50:02 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/24/2025 | Documents/Mail | 80 | Denial Any Occupation | Completed | SAAED9 |

Denial Any Occupation

Attachments:
Translation services

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:33 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/24/2025 | Summary/Assessment/Pa | 3h | COD SAP - SAAED9 - Feb 06, 2025 12:35:09 pm | Completed | SAAED9 |

Summary Notes
COD SAP - SAAED9 - Feb 06, 2025 12:35:09 pm
Assessment Notes

Path Notes
Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Path:
AO forms have been sent to EE. Once rec'ed w ill send to CR for COD review .
LTP: NTDAO
- SAAED9 - Feb 06, 2025 12:35:09 pm

UPDATED PATH:
Once AO forms are rec'ed w ill determine if further records are needed for COD review or if the PEER review remains the same. - SAAED9 - Feb 06, 2025 12:40:58 pm

UPDATED ASSESSMENT:
Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing: Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below w aist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted
Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Craw ling: Never Ladder climbing: Never Low er extremities for foot controls: Occasional Driving: Occasional
These R/Ls are permanent.

UPDATED PATH:
Sent PEER back to VOC for TSA - SAAED9 - Apr 17, 2025 08:41:04 am

Per VOC: The Transferable Skills Analysis identified occupations that are w ithin the physical abilities and identified skills level.

UPDATED PATH:
Claimant is NTDAO. Will send me management for AO denial. - JXKACHA - Apr 23, 2025 01:05:50 pm

Agree w ith determination rationale. Peer review identified medically reasonal restrictions, and TSA w as able to identify gainful occupations the claimant could perform w ithin those restrictions and their identified transferrable skills. Claim is in final pay status - proceed w ith letter and determination call. - SAAED9 - Apr 24, 2025 01:50:18 pm

| 4/24/2025 | Referrals | 12 | Management Review | Completed | SAAED9 |
|---|---|---|---|---|---|

Please review for AO denial. Thanks!

Summary:
EE is 43 y/o, Occupation: Police Captain, DLW: 07/07/2023 (The date last w orked before loss of income began), DOD:07/10/2023, DX: M54.50 Low Back Pain, LTD BCD: 10/08/2023

Assessment:
PER PEER REVIEW
Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records review ed reasonably support the follow ing R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherw ise move objects; reaching above the shoulder and below the w aist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and w alking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and w orking from unprotected heights.

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:
Sitting, Standing, Walking- Sitting: Constant Standing: Occasional Walking: Occasional
Lifting, Pushing, Pulling, Carrying- Lifting: Occasional, up to 10 lbs., utilizing both extremities together Pushing:

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Occasional, up to 10 lbs., utilizing both extremities together Pulling: Occasional, up to 10 lbs., utilizing both extremities together Carrying: Occasional, up to 10 lbs., utilizing both extremities together
Bilateral Upper Extremities- Over shoulder level: Frequent To desk level: Unrestricted Below waist level: Frequent Fine manipulation: Unrestricted Simple grasping: Unrestricted Firm grasping: Frequent Finger: Unrestricted Handle: Unrestricted Feel: Unrestricted
Other- Climbing stairs: Occasional Balancing: Occasional Stooping: Occasional Bending: Occasional Kneeling: Occasional Crouching: Occasional Crawling: Never Ladder climbing: Never Lower extremities for foot controls: Occasional Driving: Occasional
These R/Ls are permanent.

Per VOC: The Transferable Skills Analysis identified occupations that are within the physical abilities and identified skills level.

PATH:
Claimant is NTDAO. Will send me management for AO denial. - Management Review - JXKACHA - Apr 23, 2025 01:06:48 pm

Agree with determination rationale. Peer review identified medically reasonal restrictions, and TSA was able to identify gainful occupations the claimant could perform within those restrictions and their identified transferrable skills. Claim is in final pay status - proceed with letter and determination call. - Management Review - NLGREGO - Apr 23, 2025 02:33:46 pm

Item Closed with Claim by System - Management Review - KRTEDFO - Nov 04, 2025 02:47:16 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/22/2025 5:16:35 PM | Status | | | REOPENED | ATBKE5 |
| 5/22/2025 5:16:45 PM | Appeal | 1 | Level 1 | New | JXBOOTH |
| 5/22/2025 5:17:05 PM | Claim Tasks | 26 | Appeal - Review Any OCC | Requested | JXBOOTH |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:44:42 pm | | | | |
| 5/22/2025 5:17:34 PM | Documents/Mail | 81 | Fax | Received | SAAED9 |
| | 2025-05-21-14.46.48.395940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:53 pm | | | | |
| 5/22/2025 5:17:38 PM | Documents/Mail | 82 | Appeal Notice | Received | SAAED9 |
| | 2025-05-21-14.46.48.414940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:54 pm | | | | |
| 5/22/2025 5:17:39 PM | Documents/Mail | 83 | Incoming Correspondence | Received | SAAED9 |
| | 2025-05-21-14.46.48.436940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:34 pm | | | | |
| 5/22/2025 5:21:08 PM | Documents/Mail | 84 | Fax | Received | SAAED9 |
| | 2025-05-21-14.56.18.023940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:55 pm | | | | |
| 5/22/2025 5:21:08 PM | Documents/Mail | 85 | Incoming Correspondence | Received | JXBOOTH |
| | 2025-05-21-14.56.18.038940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:35 pm | | | | |
| 5/22/2025 5:21:09 PM | Documents/Mail | 86 | Incoming Correspondence | Received | JXBOOTH |
| | 2025-05-21-14.56.18.051940O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:45:56 pm | | | | |
| 5/22/2025 5:21:10 PM | Documents/Mail | 87 | Appeal Notice | Received | SAAED9 |
| | 2025-05-22-18.20.19.795900O01 | | | | |
| | Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:46:36 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/23/2025 | Telephone (OUT) | 13 | DAVID E. BORUCHOWITZ | Completed | JXBOOTH |
| | Called clmt about appeal reciept, left vmail - JXBOOTH - May 23, 2025 03:07:07 pm | | | | |
| 5/23/2025 | Documents/Mail | 81 | Fax | Completed | SAAED9 |
| | 2025-05-21-14.46.48.395940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:53 pm | | | | |
| 5/23/2025 | Documents/Mail | 82 | Appeal Notice | Completed | SAAED9 |
| | 2025-05-21-14.46.48.414940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:54 pm | | | | |
| 5/23/2025 | Documents/Mail | 83 | Incoming Correspondence | Completed | SAAED9 |
| | 2025-05-21-14.46.48.436940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:34 pm | | | | |
| 5/23/2025 | Documents/Mail | 84 | Fax | Completed | SAAED9 |
| | 2025-05-21-14.56.18.023940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:55 pm | | | | |
| 5/23/2025 | Documents/Mail | 85 | Incoming Correspondence | Completed | JXBOOTH |
| | 2025-05-21-14.56.18.038940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:35 pm | | | | |
| 5/23/2025 | Documents/Mail | 86 | Incoming Correspondence | Completed | JXBOOTH |
| | 2025-05-21-14.56.18.051940O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:56 pm | | | | |
| 5/23/2025 | Documents/Mail | 87 | Appeal Notice | Completed | SAAED9 |
| | 2025-05-22-18.20.19.795900O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:36 pm | | | | |
| 5/23/2025 2:38:01 PM | Claim Tasks | 27 | Appeal 90 Day Extension | Requested | JXBOOTH |
| | 90th day 8/17/25 - JXBOOTH - May 23, 2025 02:38:29 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:45 pm | | | | |
| 5/23/2025 2:38:33 PM | Claim Tasks | 28 | Appeal - 45 Day Reminder | Requested | JXBOOTH |
| | 30th day 6/18/25 45th day 7/3/25 - JXBOOTH - May 23, 2025 02:39:03 pm<br>sent rtr - JXBOOTH - Jun 12, 2025 02:34:55 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:48 pm | | | | |
| 5/23/2025 3:07:31 PM | Summary/Assessment/Pa | 4h | Level 1 Appeal Pending Rationale - JXBOOTH - May 23, 2025 | Requested | JXBOOTH |

Summary Notes
Level 1 Appeal Pending Rationale - JXBOOTH - May 23, 2025 03:07:59 pm
Assessment Notes

Path Notes

1st or 2nd Level Appeal: Level 1
Date Appeal Received:05/19/2025
30th day06/18/2025
45th Day:07/03/2025
90th Day:08/17/2025

Claimant Name: David Boruchow itz
Claim Number: 1230082409
Group ID & active/termed: NYECOUNTY - Nye County

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claim Demographics
Current Age: 44
Situs State:NV State Language applicable (y/n)
State of Residence:NV State Language applicable (y/n)
Estimated Net benefit amount(s):$600 after offset
Date of Disability: 07/10/2023
EP: 90
Benefit Commencement Date: 10/08/2023
Benefit Paid/Approved To Date:10/08/2025
Change in Definition (COD) Date: 24 mo 10/08/2025
Max Duration Date: 06/21/2047
Occupation / Location in AWD: Police Captain, Precinct JD 10/24/23
Physical Demand Level of Occ:light OA 12/29/23
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: other specific arthropathies
ERISA or NON-ERISA: Gov't non-ERISA
Attorney: n/a
Riders:PIB, fam care
STD claim status:n/a
LW claim status:1240001544, 1240003278 - closed
LTD claim status:appealed

Pre Ex investigation required (y/n)n
AO investigation required (y/n)TSA 4/23/25, TEE - gainful not defined
SSDI Aw ard information needed/requested - if not - w hy - not qualified

Notes: Contractual Limits
Legal Action - 3 years
Proof of claim - 90 days after elim

Initial Claim Decision:
Reason/Date of denial: not TDAO - 4/23/25 (SAAED9 - Savannah E)
Type of Medical Review , Name, & Specialty: 4/15/25 - ECN orthopedic peer - Chintan Sampat

Prior peers: 12/6/23 - PMR ICP peer - Matin Hoffman; 7/9/24 - Occ Med ICP peer - Raj Ahsan;

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Josh Weltha PA-C - pcp - 702-703-3351 f 775-727-9452
Last Date of Service: 4/24/24
Restrictions and Limitations/Duration: 3/26/25 ABF

AP Name/Specialty/Phone Number: Peter SU - PMR/Pain - 702-779-3994 f 888-464-0838
Last Date of Service: 4/17/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Davin Christensen - PT
Last Date of Service: 3/1/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"Requests an appeal/review of denial as he believes the decision does not accurately reflect the medical

evidence and circumstances surrounding his condition.
"There is no full-time employment that allow s adjusting betw een laying dow n and sitting.
"States occupations listed as no longer and have been replaced by O net system.
"His doctors maintain he cannot return to any law enforcement duties. Not capale of perfoeming listed occupations.

Information Submitted w ith appeal and not previously review ed:
" Copy of denial; EOB; DOT occ title for Desk Officer, Harbor Master, Security Officer & JD's for those jobs; O'NET for security Guard
"3/1/24 FCE

PATH: Set up tasks, left vmail for clmt, need to send EE and ER ack letters.
- JXBOOTH - May 23, 2025 03:07:59 pm

Rqtd PMR peer and sent EE and ER letters. - JXBOOTH - May 27, 2025 10:03:30 am

Rcvd peer w ith updated R&L's. Rqtg TSA. - JXBOOTH - Jun 10, 2025 08:42:58 am

Rcvd TSA, gainful found. Sent RTR and began tolling. - JXBOOTH - Jun 12, 2025 02:28:43 pm

Rcvd rtr response letter, recommended send updated medical records. - JXBOOTH - Jun 30, 2025 03:03:29 pm

Rcvd duplicate letter and 4/18/25 MRI results. - JXBOOTH - Jul 01, 2025 11:19:27 am

Rqtd addendum
tolling stopped 6/30 - JXBOOTH - Jul 03, 2025 12:39:51 pm

Rcvd addendum: No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrow ing, Schmorl's nodes, and multilevel disc bulges w ith neural foraminal narrow ing, including greater right L4 nerve root contact at L4-L5. These findings are consistent w ith the claimant's prior 12/13/2022 MRI, w hich already demonstrated mild multilevel degenerative changes, foraminal narrow ing, and disc pathology w ith suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Sent rtr letter and resumed tolling. - JXBOOTH - Jul 16, 2025 11:16:04 am

| | | | | | |
|---|---|---|---|---|---|
| 5/27/2025 | Claim Tasks | 26 | Appeal - Review Any OCC | Completed | JXBOOTH |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:42 pm | | | | |
| 5/27/2025 | Documents/Mail | 88 | Appeal Dis Delay Letter to Group | Completed | JXBOOTH |
| | Appeal Dis Delay Letter to Group | | | | |
| 5/27/2025 | Documents/Mail | 89 | Appeal Dis EE Ackappeal | Completed | JXBOOTH |
| | Appeal Dis EE Ackappeal | | | | |
| 5/27/2025 10:03:33 AM | Referrals | 13 | Ongoing Claim Review | Initial | JXBOOTH |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:08 pm
Please create file copy of 1230082409 for a PM&R peer.

Referral Date: 05/27/2025
Submitter's Name (First/Last): Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Referral Type (Addendum, Appeal, Standard File Review , Clarification):
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional) (Language Request - Spanish or French, War Exclusion):
Claimant Name (First/Last): David Boruchow itz
Claim Number: 1230082409
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim Claimant Time Zone: NV
Customer/Group Name: Nye County

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Job Title: Police Captain, Precinct
Product Type 1ST Appeal LTD

Diagnosis: low back pain, other specific arthropathies
Date of Disability: 07/10/2023
Last Day Worked: 07/07/2023
Benefit Begin Date: 10/08/2023
Specialty Requested: Physical Medicine & Rehabilitation peer

Name and Specialty of prior external vendor review ers/ examiners: ECN orthopedic peer - Chintan Sampat, PMR ICP peer - Matin Hoffman, Occ Med ICP peer - Raj Ahsan

Core Questions: (delete any questions that you do not need)

1.Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)
2.If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s)

3.Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 10/08/2025 and forw ard.

a.If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s) provide a detailed explanation.

4.Treatment opportunities: Is the treatment provided consistent w ith the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant w ith treatment that meets the standard of care?
5.Are there any non-medical circumstances identified in the medical records that may interfere w ith w ork-related activities (e.g. w orkplace conflicts-child or elder care issues, or legal issues)?

6.If AP contact may clarify any significant area such as diagnosis, R&L treatment opportunities, prognosis, or reason for w ork absence, the AP contact information is:
"Name: Peter SU
"Phone Number: 702-779-3994
"Fax Number: 888-464-0838

If AP contact is not successful, please send a letter to the treating provider outlining a summary of your assessment/findings and your questions for the treating provider.
7.Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - May 27, 2025 10:04:35 am
Case submitted to CRT case #259863 for a peer review w ith an PMR physician. - JOOMO5 - May 28, 2025 11:12:46 am
CRT / ICP is unable to process - asked that w e Vend this out File w as submitted to ECN #299659 for peer review w ith PMR physician - JOOMO5 - May 29, 2025 06:50:23 am
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - JOOMO5 - Jun 09, 2025 12:29:02 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/5/2025 | Documents/Mail | 90 | Email | Completed | JXBOOTH |
| | 2025-06-04-09.21.09.856900O01 | | | | |
| 6/5/2025 | Documents/Mail | 91 | Medical Records | Completed | JXBOOTH |
| | 2025-06-05-12.45.38.427940O01 | | | | |
| 6/10/2025 | Documents/Mail | 92 | Email | Completed | JXBOOTH |
| | 2025-06-09-13.29.40.116960O01 | | | | |
| 6/10/2025 | Documents/Mail | 93 | Medical Records | Completed | JXBOOTH |
| | 2025-06-09-13.29.40.126960O01 | | | | |
| 6/10/2025 | Referrals | 13 | Ongoing Claim Review | Completed | JXBOOTH |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:08 pm
Please create file copy of 1230082409 for a PM&R peer.

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Referral Date: 05/27/2025
Submitter's Name (First/Last): Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Referral Type (Addendum, Appeal, Standard File Review , Clarification):
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional) (Language Request - Spanish or French, War Exclusion):
Claimant Name (First/Last): David Boruchow itz
Claim Number: 1230082409
"Include any additional claim #'s involved:
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim Claimant Time Zone: NV
Customer/Group Name: Nye County
Job Title: Police Captain, Precinct
Product Type 1ST Appeal LTD

Diagnosis: low back pain, other specific arthropathies
Date of Disability: 07/10/2023
Last Day Worked: 07/07/2023
Benefit Begin Date: 10/08/2023
Specialty Requested: Physical Medicine & Rehabilitation peer

Name and Specialty of prior external vendor review ers/ examiners: ECN orthopedic peer - Chintan Sampat, PMR ICP peer - Matin Hoffman, Occ Med ICP peer - Raj Ahsan

Core Questions: (delete any questions that you do not need)

1.Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)
2.If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s)

3.Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 10/08/2025 and forw ard.

a.If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s) provide a detailed explanation.

4.Treatment opportunities: Is the treatment provided consistent w ith the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant w ith treatment that meets the standard of care?
5.Are there any non-medical circumstances identified in the medical records that may interfere w ith w ork-related activities (e.g. w orkplace conflicts-child or elder care issues, or legal issues)?

6.If AP contact may clarify any significant area such as diagnosis, R&L treatment opportunities, prognosis, or reason for w ork absence, the AP contact information is:
"Name: Peter SU
"Phone Number: 702-779-3994
"Fax Number: 888-464-0838

If AP contact is not successful, please send a letter to the treating provider outlining a summary of your assessment/findings and your questions for the treating provider.
7.Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - May 27, 2025 10:04:35 am
Case submitted to CRT case #259863 for a peer review w ith an PMR physician. - JOOMO5 - May 28, 2025 11:12:46 am
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - JOOMO5 - Jun 09, 2025 12:29:02 pm
CRT / ICP is unable to process - asked that w e Vend this out File w as submitted to ECN #299659 for peer review

## Chronological Activity List

w ith PMR physician - JOOMO5 - May 29, 2025 06:50:23 am

6/10/2025 8:43:06 AM Referrals 14 TSA Initial JXBOOTH

Claimant Name: David Boruchow itz
Claim Number: 1230082409
Medical: PM&R peer received 06/09/2025
Job Description: AWD 10/24/2023
TEE: 3/20/2025
Other Job Information: Prior TSA 4/23/25, OA 12/29/23
Policy Requirements: n/a
Gross Benefit Amount and Percentage: $6,000 & 60%
- JXBOOTH - Jun 10, 2025 08:43:34 am
************************************************************************************************************

Appeal Transferable Skills Analysis -- This file w as referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained.

[see report for full details of updated analysis]

Summary:
An updated OASYS analysis w as performed taking into consideration the outlined updated restrictions. Upon review of the available information, this VRC has found that the previously identified occupational alternatives continue to remain viable at this time. Additionally, the insured's ow n occupation w as identified through the updated analysis as it falls w ithin the outlined restrictions. Updated w ages are included below :

Examples of Occupations identified based on National labor market and the insured's ability profile analysis:

DOT CodeOccupationStrengthNational Monthly Wage
375.137-014Desk OfficerS$8,831
375.167-026Harbor MasterS$17,202
189.167-034Security OfficerS$11,379
375.167-034[*] Police CaptainL$12,324
*Wage Information is based on median 2024 Bureau of Labor Statistical Data
[*] Ow n Occupation- Based on further review of the insured's w ork history and skills acquired, it is reasonable that they w ould have the ability to earn their pre-disability w ages in their ow n occupation.

Note: the occupations listed above have been verified through a review of physical demands from the ERI, and/or a review of material and substantial functions w here data does not exist in the DOT or is considered out-of-date due to advancements in the occupation, technology, etc. All outlined occupations w ould not require more than occasional standing/w alking or occasional reaching over shoulder or below w aist level.

The occupation(s) above have been included based on consideration of the insured's training, education, experience, and review ed for current existence in the national economy.

This memorandum w ill serve in lieu of a formal report. No further vocational services rendered. I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.

________________________________________

Respectfully submitted,

Electronically Signed by
Nicole H., MS, CRC
Vocational Rehabilitation Consultant II
Group Protection
- NIUHA2 - Jun 12, 2025 12:35:16 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:05 pm

6/12/2025 Documents/Mail 94 Appeal Dis EE 21 Day Letter Completed JXBOOTH

Appeal Dis EE 21 Day LetterAttachments:D BORUCHOWITZ 1230082409 PMR FINAL REPORT.pdfDN Appeal TSA Memorandum Boruchow itz-Nye County-Police Captain.pdf

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/12/2025 | Referrals | 14 | TSA | Completed | JXBOOTH |

Claimant Name: David Boruchow itz
Claim Number: 1230082409
Medical: PM&R peer received 06/09/2025
Job Description: AWD 10/24/2023
TEE: 3/20/2025
Other Job Information: Prior TSA 4/23/25, OA 12/29/23
Policy Requirements: n/a
Gross Benefit Amount and Percentage: $6,000 & 60%
 - JXBOOTH - Jun 10, 2025 08:43:34 am
**************************************************************************************************************

Appeal Transferable Skills Analysis -- This file w as referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained.

[see report for full details of updated analysis]

Summary:
An updated OASYS analysis w as performed taking into consideration the outlined updated restrictions. Upon review of the available information, this VRC has found that the previously identified occupational alternatives continue to remain viable at this time. Additionally, the insured's ow n occupation w as identified through the updated analysis as it falls w ithin the outlined restrictions. Updated w ages are included below :

Examples of Occupations identified based on National labor market and the insured's ability profile analysis:

DOT CodeOccupationStrengthNational Monthly Wage
375.137-014Desk OfficerS$8,831
375.167-026Harbor MasterS$17,202
189.167-034Security OfficerS$11,379
375.167-034[*] Police CaptainL$12,324
*Wage Information is based on median 2024 Bureau of Labor Statistical Data
[*] Ow n Occupation- Based on further review of the insured's w ork history and skills acquired, it is reasonable that they w ould have the ability to earn their pre-disability w ages in their ow n occupation.

Note: the occupations listed above have been verified through a review of physical demands from the ERI, and/or a review of material and substantial functions w here data does not exist in the DOT or is considered out-of-date due to advancements in the occupation, technology, etc. All outlined occupations w ould not require more than occasional standing/w alking or occasional reaching over shoulder or below w aist level.

The occupation(s) above have been included based on consideration of the insured's training, education, experience, and review ed for current existence in the national economy.

This memorandum w ill serve in lieu of a formal report. No further vocational services rendered. I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.
________________________________________

Respectfully submitted,

Electronically Signed by
Nicole H., MS, CRC
Vocational Rehabilitation Consultant II
Group Protection
 - NIUHA2 - Jun 12, 2025 12:35:16 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:05 pm

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2025 2:28:47 PM | Referrals | 15 | Tolling Review | In Active Review | JXBOOTH |

Today's Date6/12/2025
Appeal Rcvd Date5/19/2025
Days Since Received25
Extension Sent Date6/12/2025

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Tolling Start DateTolling end DateTolling Days<br>6/12/202530<br>0<br>0<br>0<br>0<br>0<br>0<br>Tolling Days30<br>90th Day of Active Review 9/16/2025<br>Active Review Days Remaining to 90th Day95<br>- JXBOOTH - Jun 12, 2025 02:29:07 pm<br><br>Today's Date6/12/2025<br>Appeal Rcvd Date5/19/2025<br>Days Since Received25<br>Extension Sent Date6/12/2025<br>Tolling Start DateTolling end DateTolling Days<br>6/12/20256/30/202519<br>7/16/202530<br>0<br>0<br>0<br>0<br>0<br>Tolling Days49<br>90th Day of Active Review 10/5/2025<br>Active Review Days Remaining to 90th Day114<br>- JXBOOTH - Jul 16, 2025 11:11:43 am<br><br>Item Closed with Claim by System - KRTEDFO - Nov 04, 2025 02:47:18 pm | | | | |
| 6/13/2025 | Documents/Mail<br>2025-06-12-13.37.35.539960O01 | 95 | Email | Completed | JXBOOTH |
| 6/13/2025 | Documents/Mail<br>2025-06-12-13.37.35.548960O01 | 96 | Voc Rehab Forms | Completed | JXBOOTH |
| 6/30/2025 | Documents/Mail<br>2025-06-30-11.57.35.600320O01 | 97 | Email | Completed | JXBOOTH |
| 6/30/2025 | Documents/Mail<br>2025-06-30-11.57.35.612320O01 | 98 | Incoming Correspondence | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-06-30-16.05.15.579320O01 | 99 | Email | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-06-30-17.11.46.461320O01 | 100 | Email | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-06-30-17.11.46.470320O01 | 101 | Medical Records | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-06-30-17.11.46.479320O01 | 102 | Appeal Notice | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-07-01-08.43.22.428320O01 | 103 | Email | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-07-01-13.54.05.738340O01 | 104 | Incoming Correspondence | Completed | JXBOOTH |
| 7/1/2025 | Documents/Mail<br>2025-07-01-13.55.15.277340O01 | 105 | Medical Records | Completed | JXBOOTH |
| 7/3/2025 12:47:24 PM | Referrals<br>Diagnosis is Nye County - please verify if this is the claimants medical or mental diagnosis. - VIYSH8 - Jul 07, 2025 | 16 | External Review | Initial | JXBOOTH |



Lincoln/Boruchowitz 0178

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

08:48:37 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:55 pm
Addendum, records sent via email.

Referral Date: 07/03/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) yes

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN Charisma O Pinna
Specialty of Prior Review er / Examiner: PM&R
Claimant Name: David Boruchow itz
Date of Birth:
Claimant Time Zone: Mountain
Customer/Group Name:
Is Linked Provider in S1.NXT? No

Claim Number: 1230082409
1rst Appeal LTD
Diagnosis: Nye County
Date of Disability: 07/10/2023
Benefit Begin Date: 10/08/2023
Job Title: Police Captain, Precinct
Last Day Worked: 07/07/2023

Thank you for your report regarding the LTD claim for David Boruchow itz. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Jul 03, 2025 12:54:13 pm
Diagnosis states Nye County - Please verify if this is the claimants medical or mental diagnosis. - VIYSH8 - Jul 07, 2025 08:48:37 am
The diagnosis should state Lumbar spondylosis w ithout myelopathy or radiculopathy, lumbar region. - JXBOOTH - Jul 07, 2025 01:45:32 pm
Case submitted to ECN case #303722 for a peer review w ith Charisma O Pinna - PM&R - VIYSH8 - Jul 08, 2025 09:17:17 am
Addendum Report received from ECN and sent to LFG Appeals to be uploaded - SLTHOMP - Jul 15, 2025 09:50:45 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/14/2025 | Claim Tasks | 28 | Appeal - 45 Day Reminder | Completed | JXBOOTH |

30th day 6/18/25 45th day 7/3/25 - JXBOOTH - May 23, 2025 02:39:03 pm
sent rtr - JXBOOTH - Jun 12, 2025 02:34:55 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:48 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/16/2025 | Documents/Mail | 106 | Email | Completed | JXBOOTH |

2025-07-15-10.52.38.291460O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/16/2025 | Documents/Mail | 107 | Medical Records | Completed | JXBOOTH |

2025-07-15-10.52.38.303460O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/16/2025 | Documents/Mail | 108 | Appeal Dis EE 21 Day Letter | Completed | JXBOOTH |

Appeal Dis EE 21 Day LetterAttachments:Addendum.pdf

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/16/2025 | Referrals | 16 | External Review | Completed | JXBOOTH |

Diagnosis is Nye County - please verify if this is the claimants medical or mental diagnosis. - VIYSH8 - Jul 07, 2025 08:48:37 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:55 pm
Addendum, records sent via email.

Referral Date: 07/03/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) yes

Referral Type: Addendum/Clarification
Select / Previous Physician: ECN Charisma O Pinna
Specialty of Prior Review er / Examiner: PM&R
Claimant Name: David Boruchow itz
Date of Birth:
Claimant Time Zone: Mountain
Customer/Group Name:
Is Linked Provider in S1.NXT? No

Claim Number: 1230082409
1rst Appeal LTD
Diagnosis: Nye County
Date of Disability: 07/10/2023
Benefit Begin Date: 10/08/2023
Job Title: Police Captain, Precinct
Last Day Worked: 07/07/2023

Thank you for your report regarding the LTD claim for David Boruchow itz. After review ing your report, w e are requesting an addendum due to the receipt of additional medical information.

1.Does the new information at all impact and/or change the findings expressed in your prior peer review ? Please explain and provide clinical rationale.

Thank you for your assistance. - JXBOOTH - Jul 03, 2025 12:54:13 pm
Diagnosis states Nye County - Please verify if this is the claimants medical or mental diagnosis. - VIYSH8 - Jul 07, 2025 08:48:37 am
Addendum Report received from ECN and sent to LFG Appeals to be uploaded - SLTHOMP - Jul 15, 2025 09:50:45 am
The diagnosis should state Lumbar spondylosis w ithout myelopathy or radiculopathy, lumbar region. - JXBOOTH - Jul 07, 2025 01:45:32 pm
Case submitted to ECN case #303722 for a peer review w ith Charisma O Pinna - PM&R - VIYSH8 - Jul 08, 2025 09:17:17 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2025 | Claim Tasks | 27 | Appeal 90 Day Extension | Completed | JXBOOTH |

90th day 8/17/25 - JXBOOTH - May 23, 2025 02:38:29 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:45 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2025 | Documents/Mail | 109 | Appeal Any Occ Level 1 Uphold EE | Completed | JXBOOTH |

Appeal Any Occ Level 1 Uphold EEAttachments:Translation services

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2025 | Documents/Mail | 110 | Appeal Dis Uphold to Group | Completed | JXBOOTH |

Appeal Dis Uphold to Group

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2025 | Appeal | 1 | Level 1 | Closed | JXBOOTH |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2025 | Summary/Assessment/Pa | 4h | Level 1 Appeal Pending Rationale - JXBOOTH - May 23, 2025 | Completed | JXBOOTH |

Summary Notes
Level 1 Appeal Pending Rationale - JXBOOTH - May 23, 2025 03:07:59 pm
Assessment Notes

Path Notes

1st or 2nd Level Appeal: Level 1
Date Appeal Received:05/19/2025
30th day06/18/2025
45th Day:07/03/2025
90th Day:08/17/2025

Claimant Name: David Boruchow itz
Claim Number: 1230082409
Group ID & active/termed: NYECOUNTY - Nye County

Claim Demographics
Current Age: 44
Situs State:NVState Language applicable (y/n)
State of Residence:NVState Language applicable (y/n)
Estimated Net benefit amount(s):$600 after offset
Date of Disability: 07/10/2023
EP: 90
Benefit Commencement Date: 10/08/2023
Benefit Paid/Approved To Date:10/08/2025
Change in Definition (COD) Date: 24 mo 10/08/2025
Max Duration Date: 06/21/2047
Occupation / Location in AWD: Police Captain, Precinct JD 10/24/23
Physical Demand Level of Occ:light OA 12/29/23
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: other specific arthropathies
ERISA or NON-ERISA: Gov't non-ERISA
Attorney: n/a
Riders:PIB, fam care
STD claim status:n/a
LW claim status:1240001544, 1240003278 - closed
LTD claim status:appealed

Pre Ex investigation required (y/n)n
AO investigation required (y/n)TSA 4/23/25, TEE - gainful not defined
SSDI Aw ard information needed/requested - if not - w hy - not qualified

Notes: Contractual Limits
Legal Action - 3 years
Proof of claim - 90 days after elim

Initial Claim Decision:
Reason/Date of denial: not TDAO - 4/23/25 (SAAED9 - Savannah E)
Type of Medical Review , Name, & Specialty: 4/15/25 - ECN orthopedic peer - Chintan Sampat

Prior peers: 12/6/23 - PMR ICP peer - Matin Hoffman; 7/9/24 - Occ Med ICP peer - Raj Ahsan;

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Josh Weltha PA-C - pcp - 702-703-3351 f 775-727-9452
Last Date of Service: 4/24/24
Restrictions and Limitations/Duration: 3/26/25 ABF

AP Name/Specialty/Phone Number: Peter SU - PMR/Pain - 702-779-3994 f 888-464-0838
Last Date of Service: 4/17/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Davin Christensen - PT
Last Date of Service: 3/1/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"Requests an appeal/review of denial as he believes the decision does not accurately reflect the medical evidence and circumstances surrounding his condition.
"There is no full-time employment that allow s adjusting betw een laying dow n and sitting.
"States occupations listed as no longer and have been replaced by O net system.
"His doctors maintain he cannot return to any law enforcement duties. Not capale of perfoeming listed occupations.

Information Submitted w ith appeal and not previously review ed:
" Copy of denial; EOB; DOT occ title for Desk Officer, Harbor Master, Security Officer & JD's for those jobs; O'NET for security Guard
"3/1/24 FCE

PATH: Set up tasks, left vmail for clmt, need to send EE and ER ack letters.
- JXBOOTH - May 23, 2025 03:07:59 pm

Rqtd PMR peer and sent EE and ER letters. - JXBOOTH - May 27, 2025 10:03:30 am

Rcvd peer w ith updated R&L's. Rqtg TSA. - JXBOOTH - Jun 10, 2025 08:42:58 am

Rcvd TSA, gainful found. Sent RTR and began tolling. - JXBOOTH - Jun 12, 2025 02:28:43 pm

Rcvd rtr response letter, recommended send updated medical records. - JXBOOTH - Jun 30, 2025 03:03:29 pm

Rcvd duplicate letter and 4/18/25 MRI results. - JXBOOTH - Jul 01, 2025 11:19:27 am

Rqtd addendum
tolling stopped 6/30 - JXBOOTH - Jul 03, 2025 12:39:51 pm

Rcvd addendum: No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrow ing, Schmorl's nodes, and multilevel disc bulges w ith neural foraminal narrow ing, including greater right L4 nerve root contact at L4-L5. These findings are consistent w ith the claimant's prior 12/13/2022 MRI, w hich already demonstrated mild multilevel degenerative changes, foraminal narrow ing, and disc pathology w ith suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Sent rtr letter and resumed tolling. - JXBOOTH - Jul 16, 2025 11:16:04 am

8/7/2025 Summary/Assessment/Path Level 1 Appeal Decision Rationale - JXBOOTH - Aug 07, 2025 Completed JXBOOTH

Summary Notes
Level 1 Appeal Decision Rationale - JXBOOTH - Aug 07, 2025 10:11:30 am
Assessment Notes

Path Notes
Claimant is a 44 year old police captain that stopped sorking due to low back pain. At claims level a orthoedic peer w as completed and file closed as not TDAO.

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | On appeal additional information received and PMR peer completed and R&L's identified sedentary/light capacities. Nes TSA indentified gainful.<br><br>PATH: Close appeal handling, sent EE and ER letters. - JXBOOTH - Aug 07, 2025 10:11:30 am | | | | |
| 8/7/2025 | Referrals | 15 | Tolling Review | Completed | JXBOOTH |
| | Today's Date6/12/2025<br>Appeal Rcvd Date5/19/2025<br>Days Since Received25<br>Extension Sent Date6/12/2025<br>Tolling Start DateTolling end DateTolling Days<br>6/12/202530<br>0<br>0<br>0<br>0<br>0<br>0<br>Tolling Days30<br>90th Day of Active Review 9/16/2025<br>Active Review Days Remaining to 90th Day95<br>- JXBOOTH - Jun 12, 2025 02:29:07 pm<br><br>Today's Date6/12/2025<br>Appeal Rcvd Date5/19/2025<br>Days Since Received25<br>Extension Sent Date6/12/2025<br>Tolling Start DateTolling end DateTolling Days<br>6/12/20256/30/202519<br>7/16/202530<br>0<br>0<br>0<br>0<br>0<br>Tolling Days49<br>90th Day of Active Review 10/5/2025<br>Active Review Days Remaining to 90th Day114<br>- JXBOOTH - Jul 16, 2025 11:11:43 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:18 pm | | | | |
| 8/7/2025 10:19:39 AM | Status | | Not TD Any Occ | CLOSED | JXBOOTH |
| 8/28/2025 8:27:14 AM | Status | | | REOPENED | RENSI2 |
| 8/28/2025 8:27:19 AM | Appeal | 2 | Level 2 | New | KRTEDFO |
| | changed appeal rec'd date to 8/26/25 as that is w hen EE faxed appeal to LFG - KRTEDFO - Aug 29, 2025 10:33:51 am | | | | |
| 8/28/2025 8:30:28 AM | Documents/Mail | 111 | Fax | Received | KRTEDFO |
| | 2025-08-27-13.28.06.682060O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:42 pm | | | | |
| 8/28/2025 8:30:29 AM | Documents/Mail | 112 | Appeal Notice | Received | KRTEDFO |
| | 2025-08-27-13.28.06.704060O01<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:37 pm | | | | |
| 8/28/2025 8:30:29 AM | Documents/Mail | 113 | Incoming Correspondence | Received | KRTEDFO |
| | 2025-08-27-13.28.06.721060O01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:44 pm | | | | |
| 8/28/2025 9:28:49 AM | Documents/Mail | 114 | Fax | Received | KRTEDFO |
| | 2025-08-27-16.14.42.827060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:38 pm | | | | |
| 8/28/2025 9:28:50 AM | Documents/Mail | 115 | Appeal Notice | Received | KRTEDFO |
| | 2025-08-27-16.14.42.843060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:45 pm | | | | |
| 8/28/2025 9:28:51 AM | Documents/Mail | 116 | Incoming Correspondence | Received | KRTEDFO |
| | 2025-08-27-16.14.42.857060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:39 pm | | | | |
| 8/28/2025 9:43:41 AM | Documents/Mail | 117 | Email | Received | KRTEDFO |
| | 2025-08-27-17.04.08.477060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:46 pm | | | | |
| 8/28/2025 9:43:41 AM | Documents/Mail | 118 | Incoming Correspondence | Received | KRTEDFO |
| | 2025-08-27-17.04.08.487060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:47 pm | | | | |
| 8/29/2025 | Documents/Mail | 111 | Fax | Completed | KRTEDFO |
| | 2025-08-27-13.28.06.682060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:42 pm | | | | |
| 8/29/2025 | Documents/Mail | 112 | Appeal Notice | Completed | KRTEDFO |
| | 2025-08-27-13.28.06.704060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:37 pm | | | | |
| 8/29/2025 | Documents/Mail | 113 | Incoming Correspondence | Completed | KRTEDFO |
| | 2025-08-27-13.28.06.721060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:44 pm | | | | |
| 8/29/2025 | Documents/Mail | 114 | Fax | Completed | KRTEDFO |
| | 2025-08-27-16.14.42.827060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:38 pm | | | | |
| 8/29/2025 | Documents/Mail | 115 | Appeal Notice | Completed | KRTEDFO |
| | 2025-08-27-16.14.42.843060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:45 pm | | | | |
| 8/29/2025 | Documents/Mail | 116 | Incoming Correspondence | Completed | KRTEDFO |
| | 2025-08-27-16.14.42.857060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:39 pm | | | | |
| 9/2/2025 | Documents/Mail | 117 | Email | Completed | KRTEDFO |
| | 2025-08-27-17.04.08.477060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:46 pm | | | | |
| 9/2/2025 | Documents/Mail | 118 | Incoming Correspondence | Completed | KRTEDFO |
| | 2025-08-27-17.04.08.487060O01 | | | | |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:47 pm | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/2/2025 8:01:07 PM | Claim Tasks | 29 | Appeal - 4 day notice | Requested | KRTEDFO |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:49 pm | | | | |
| 9/3/2025 | Claim Tasks | 29 | Appeal - 4 day notice | Completed | KRTEDFO |
| | Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:49 pm | | | | |
| 9/5/2025 | Documents/Mail | 119 | Appeal Dis EE Ackappeal | Completed | KRTEDFO |
| | Appeal Dis EE Ackappeal | | | | |
| 9/5/2025 9:56:01 AM | Claim Tasks | 30 | Update Claim Information | Requested | KRTEDFO |
| | next status update due 10/5/25 - KRTEDFO - Sep 05, 2025 09:56:31 am<br><br>next status update due 11/5/25 - KRTEDFO - Oct 06, 2025 10:30:35 am<br><br>next status update due 11/19/25 - KRTEDFO - Oct 20, 2025 12:56:41 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:06 pm | | | | |
| 9/5/2025 9:56:37 AM | Claim Tasks | 31 | Appeal 90 Day Extension | Requested | KRTEDFO |
| | 90th day is 11/24/25<br><br>begin tolling 9/5/25 - KRTEDFO - Sep 05, 2025 09:57:05 am<br><br>tolling ended 10/6/25 - new 90th day is 12/24/25 - KRTEDFO - Oct 06, 2025 10:30:09 am<br><br>begin tolling again 10/20/25 - KRTEDFO - Oct 20, 2025 12:57:02 pm<br><br>tolling ended 11/1/25 - new 90th day is 1/5/26 - KRTEDFO - Nov 03, 2025 08:15:15 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:43 pm | | | | |
| 9/5/2025 9:57:11 AM | Summary/Assessment/Pa6h | | 2nd LEVEL APPEAL PENDING RATIONALE: - KRTEDFO - Sep | Requested | KRTEDFO |

Summary Notes
2nd LEVEL APPEAL PENDING RATIONALE: - KRTEDFO - Sep 05, 2025 09:58:01 am
Assessment Notes
see path - KRTEDFO - Sep 05, 2025 09:58:01 am
Path Notes
2nd LEVEL APPEAL PENDING RATIONALE:

LTD or WOP or combo: LTD
1st or 2nd Level Appeal: 2nd
Date Appeal Received: 8/26/25
30th day: 9/25/25
45th Day: 10/10/25
90th Day: 11/24/25

Attorney info: n/a
Attorney email: n/a

Claim Demographics

Claimant Name: David Boruchow itz
DOB:
Age at DOD: 43
Current age: 45
Claim Number: 1230082409
ER name: Nye County
Group ID (active/termed): NYECOUNTY (active)
Class: 2
ERISA or NON-ERISA: (How w as information verified?): non-ERISA (county govt)
Nat'l Acct (y/n): no
Situs State: NVState Language applicable (y/n): no

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

State of Residence:NVState Language applicable (y/n): no

Occupation / Location in AWD: Operations Captain (JD in AWD 10/24/23; no JA)
Physical Demand Level of Occ (OA): light (OA Police Captain, Precinct 375.167-034 12/27/23)
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: lumbar spondylosis w /o myelopathy or radiculopathy, sprain of ligaments of lumbar spine, lumbar facet syndrome, thoracic sprain/strain

DOH: 2/21/06
Eff Date: 7/1/13
Pre-Ex investigation required (y/n): no
Pre-Ex per policy: 12/12/24
Look-back period: n/a

Date of Disability: 7/10/23
DLW: 7/7/23
EP: 90 days
Benefit Commencement Date: 10/8/23
Benefit Paid/Approved To Date: 10/8/25 (in advance)
Change in Definition (COD) Date: 24 mo. 10/8/25
AO investigation required (y/n): yes
Gainful amount: $7394.40
Gainful %: 60
Is gainful defined in policy (y/n): no
Note: If w ithin 6 months of COD, check for rehab survey or TEE: TEE in AWD 3/20/25
Prior TSA (y/n): yes 4/20/25 & 6/12/25 (sed/light - EE's ow n occ included)
Dominant hand (needed only if UE may be limited): unk

Estimated Net benefit Mthly Coverage amount(s): $600 min after pension offset
Max Duration Date: 6/21/2047 (policy does have 24 mo. spec limit)
SSDI Aw ard information needed/requested - if not - w hy: not qualify (not enough qtrs)

STD claim number/status: n/a
LW claim number/status: 1240001544 & 1240003278 closed
LTD claim number/status: appealed

Date of most recent auth in AWD & exp date (12/24 months): 3/18/25 - 24 mo.
Riders: PIB, fam care
Offsets other than SSD (state, WC, pension, etc.): pension $6754.10/mo.
Ovp amount (if applicable): none

Contractual Limits
Legal Actions: 3 years
Proof of claim: w ithin 90 days after the end of the elim period

Initial Claim Decision:
Reason/Date of denial: no TDAO 4/23/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (ortho sx) Chintan Sampat, MD 4/14/25

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:

Sitting, Standing, Walking-
Sitting: Constant
Standing: Occasional
Walking: Occasional

Lifting, Pushing, Pulling, Carrying-
Lifting: Occasional, up to 10 lbs., utilizing both extremities together

Pushing: Occasional, up to 10 lbs., utilizing both extremities together
Pulling: Occasional, up to 10 lbs., utilizing both extremities together
Carrying: Occasional, up to 10 lbs., utilizing both extremities together

Bilateral Upper Extremities-
Over shoulder level: Frequent
To desk level: Unrestricted
Below w aist level: Frequent
Fine manipulation: Unrestricted
Simple grasping: Unrestricted
Firm grasping: Frequent
Finger: Unrestricted
Handle: Unrestricted
Feel: Unrestricted

Other-
Climbing stairs: Occasional
Balancing: Occasional
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never
Ladder climbing: Never
Low er extremities for foot controls: Occasional
Driving: Occasional

These R/Ls are permanent.

1st Level Appeal Decision:
Reason/Date of denial: no TDAO 8/7/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (PM&R) Charisma Pinna, MD 6/6/25 + addendum 7/14/25

Orig peer:

The follow ing restrictions and limitations are recommended from 10/08/2024 and forw ard:

8 hours/day - 5 days/w eek (40 hours per w eek)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- w ith use of bilateral upper extremities -
Lifting: Occasional, up to 20 pounds BUE -
Pushing: Occasional, up to 20 pounds BUE -
Pulling: Occasional, up to 20 pounds BUE -
Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below w aist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral
-Keyboard/mousing: Frequent, bilateral

Use of low er extremities for foot controls: Occasional, bilateral

Climbing stairs: Occasional w ith the use of a handrail
Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

Addendum:

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrow ing, Schmorl's nodes, and multilevel disc bulges w ith neural foraminal narrow ing, including greater right L4 nerve root contact at L4-L5. These findings are consistent w ith the claimant's prior 12/13/2022 MRI, w hich already demonstrated mild multilevel degenerative changes, foraminal narrow ing, and disc pathology w ith suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that w ould necessitate a reassessment of the current functional capacity recommendations. Clinical notes throughout 2023 and 2024, including from the FCE and multiple follow -ups w ith Dr. Peter Su, consistently report primarily axial low back pain w ithout neurological deficits. Motor strength, sensation, and reflexes w ere repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forw ard remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that w ould undermine or require modification of the original report.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Peter Su, MD (PM&R) 702-779-3994 fax 888-464-0838
Last Date of Service: 1/18/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Joshua Weltha, PA-C (PCP) 702-703-3351 fax 775-727-9452
Last Date of Service: 3/26/25; AF 3/26/25
Restrictions and Limitations/Duration: frequently sit, drive; occasionally lift/carry 0-100 lbs. stand, w alk, climb, bend, kneel, finger, handle, operate foot controls; never reach above shoulder; patient needs to adjust betw een sitting, standing and lying dow n to adjust for pain and discomfort as needed; patient also needs to discontinue activities w hen they cause pain or discomfort.

AP Name/Specialty/Phone Number: Davin Christensen, DPT
Last Date of Service: FCE 3/1/24
Restrictions and Limitations/Duration: sedentary physical capacity

Date and Type of Recent Surgeries: none

Appeal being discussed
Reasons for disagreement as explained in appeal: I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations and vocational realities documented in my claim file…my doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not a good candidate to return to employment in general because of my injury and the need for frequent adjustment betw een sitting, standing and laying dow n…the jobs that they listed as jobs that I w ould be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations and all three include law enforcement duties.

Information Submitted w ith appeal and not previously review ed: none

Cc of 4/23/25 denial letter

Appeal Analysis: (summarize claim story/handling & Next Steps): EE w as involved in a roll-over MVA w hile on duty and sustained back injuries w hich have been treated conservatively w ith PT, chiro, ESI, facet joint injections, ablation and meds.

If SSDI approved or applied for w hen w e got appeal, ask if they w ant to send file
SSDI file mentioned in initial call (y/n, if not w hy): no - not elig
SSDI language added to ack appeal letter (y/n, if not w hy): no
SSDI notes added to SAP (y/n): yes

Notes: (tolling, other pertinent info, etc.)

Prior peers: ICP PM&R Martin Hoffman, MD; ICP Occ Med Raj Ahsan, MD
Prior VRCs: CAFTH9, NIUHA2
SIU report in AWD 2/15/24 (possible business affiliation)
MVA 4/9/22 (w ork-related)
45-day language added to ack letter
Begin tolling 9/5/25

Ack letter to EE; none to ER as DOD over 2 years ago

PATH: pend med records
 - KRTEDFO - Sep 05, 2025 09:58:01 am

no addl info rec'd - w ill move fw d w ith appeal review

end tolling

status email to EE - KRTEDFO - Oct 06, 2025 10:31:03 am

sent for NDC review - KRTEDFO - Oct 06, 2025 10:33:00 am

rec'd email/letter from EE: no new medical records are available - KRTEDFO - Oct 06, 2025 11:14:25 am

rec'd from EE:

Letter w ritten by EE
Letter J Weltha PA-C 10/2/25 - KRTEDFO - Oct 08, 2025 12:47:38 pm

NDC review complete

sent for updated TSA - KRTEDFO - Oct 15, 2025 11:59:35 am

TSA complete - gainful found

RTR letter to EE w /cc's of NDC and TSA reports

begin tolling again - KRTEDFO - Oct 20, 2025 12:56:07 pm

email from EE dated 11/1/25: "There is nothing further to respond to"

w ill move fw d w ith appeal review

end tolling - KRTEDFO - Nov 03, 2025 08:06:26 am

sched mgmt discussion - KRTEDFO - Nov 03, 2025 04:52:25 pm

see DECISION SAP for further details - KRTEDFO - Nov 04, 2025 01:29:36 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/5/2025 9:59:49 AM | Referrals | 17 | Tolling Review | In Active Review | KRTEDFO |

Today's Date9/5/2025
Appeal Rcvd Date8/26/2025
Days Since Received10
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/20250
0
0
0
0
0
0
Tolling Days0
45th Day of Active Review 10/9/2025
90th Day of Active Review 11/23/2025
Active Review Days Remaining to 90th Day78
- KRTEDFO - Sep 05, 2025 10:00:09 am

UPDATED TOLLING

Today's Date10/6/2025
Appeal Rcvd Date8/26/2025
Days Since Received41
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
0
0
0
0
0
0
Tolling Days31
45th Day of Active Review 10/9/2025
90th Day of Active Review 12/24/2025
Active Review Days Remaining to 90th Day78
- KRTEDFO - Oct 06, 2025 10:29:35 am

UPDATED TOLLING

Today's Date10/20/2025
Appeal Rcvd Date8/26/2025
Days Since Received55
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
10/20/20250
0
0
0
0
0
Tolling Days31
45th Day of Active Review 10/9/2025
90th Day of Active Review 12/24/2025
Active Review Days Remaining to 90th Day64
- KRTEDFO - Oct 20, 2025 01:00:48 pm

UPDATED TOLLING

**Chronological Activity List**

Today's Date11/3/2025
Appeal Rcvd Date8/26/2025
Days Since Received69
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
10/20/202511/1/202512
0
0
0
0
0
Tolling Days43
45th Day of Active Review 10/9/2025
90th Day of Active Review 1/5/2026
Active Review Days Remaining to 90th Day62
- KRTEDFO - Nov 03, 2025 08:14:28 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:06 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/3/2025 8:58:06 AM | Documents/Mail | 120 | Email | Received | KRTEDFO |

2025-10-02-13.16.08.124340O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:40 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/3/2025 8:58:07 AM | Documents/Mail | 121 | Incoming Correspondence | Received | KRTEDFO |

2025-10-02-13.16.08.139340O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:41 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/6/2025 | Documents/Mail | 120 | Email | Completed | KRTEDFO |

2025-10-02-13.16.08.124340O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:40 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/6/2025 | Documents/Mail | 121 | Incoming Correspondence | Completed | KRTEDFO |

2025-10-02-13.16.08.139340O01

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:41 pm

| | | | | | |
|---|---|---|---|---|---|
| 10/6/2025 10:35:10 AM | Referrals | 18 | Change of Definition | Initial | KRTEDFO |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:57 pm
Refer for medical review for 2nd level LTD appeal:

LTD or WOP or combo: LTD
1st or 2nd Level Appeal: 2nd
Date Appeal Received: 8/26/25
30th day: 9/25/25
45th Day: 10/10/25
90th Day: 11/24/25

Attorney info: n/a
Attorney email: n/a

Claim Demographics

Claimant Name: David Boruchow itz
DOB:
Age at DOD: 43
Current age: 45
Claim Number: 1230082409
ER name: Nye County
Group ID (active/termed): NYECOUNTY (active)
Class: 2

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

ERISA or NON-ERISA: (How was information verified?): non-ERISA (county govt)
Nat'l Acct (y/n): no
Situs State: NV State Language applicable (y/n): no
State of Residence:NV State Language applicable (y/n): no

Occupation / Location in AWD: Operations Captain (JD in AWD 10/24/23; no JA)
Physical Demand Level of Occ (OA): light (OA Police Captain, Precinct 375.167-034 12/27/23)
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: lumbar spondylosis w/o myelopathy or radiculopathy, sprain of ligaments of lumbar spine, lumbar facet syndrome, thoracic sprain/strain

DOH: 2/21/06
Eff Date: 7/1/13
Pre-Ex investigation required (y/n): no
Pre-Ex per policy: 12/12/24
Look-back period: n/a

Date of Disability: 7/10/23
DLW: 7/7/23
EP: 90 days
Benefit Commencement Date: 10/8/23
Benefit Paid/Approved To Date: 10/8/25 (in advance)
Change in Definition (COD) Date: 24 mo. 10/8/25
AO investigation required (y/n): yes
Gainful amount: $7394.40
Gainful %: 60
Is gainful defined in policy (y/n): no
Note: If within 6 months of COD, check for rehab survey or TEE: TEE in AWD 3/20/25
Prior TSA (y/n): yes 4/20/25 & 6/12/25 (sed/light - EE's own occ included)
Dominant hand (needed only if UE may be limited): unk

Estimated Net benefit Mthly Coverage amount(s): $600 min after pension offset
Max Duration Date: 6/21/2047 (policy does have 24 mo. spec limit)
SSDI Award information needed/requested - if not - why: not qualify (not enough qtrs)

STD claim number/status: n/a
LW claim number/status: 1240001544 & 1240003278 closed
LTD claim number/status: appealed

Date of most recent auth in AWD & exp date (12/24 months): 3/18/25 - 24 mo.
Riders: PIB, fam care
Offsets other than SSD (state, WC, pension, etc.): pension $6754.10/mo.
Ovp amount (if applicable): none

Contractual Limits
Legal Actions: 3 years
Proof of claim: within 90 days after the end of the elim period

Initial Claim Decision:
Reason/Date of denial: no TDAO 4/23/25
Type of Med Review, Vendor, Name, Specialty & Date: ECN (ortho sx) Chintan Sampat, MD 4/14/25

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:

Sitting, Standing, Walking-
Sitting: Constant
Standing: Occasional
Walking: Occasional

Lifting, Pushing, Pulling, Carrying-
Lifting: Occasional, up to 10 lbs., utilizing both extremities together
Pushing: Occasional, up to 10 lbs., utilizing both extremities together
Pulling: Occasional, up to 10 lbs., utilizing both extremities together
Carrying: Occasional, up to 10 lbs., utilizing both extremities together

Bilateral Upper Extremities-
Over shoulder level: Frequent
To desk level: Unrestricted
Below waist level: Frequent
Fine manipulation: Unrestricted
Simple grasping: Unrestricted
Firm grasping: Frequent
Finger: Unrestricted
Handle: Unrestricted
Feel: Unrestricted

Other-
Climbing stairs: Occasional
Balancing: Occasional
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Lower extremities for foot controls: Occasional
Driving: Occasional

These R/Ls are permanent.

1st Level Appeal Decision:
Reason/Date of denial: no TDAO 8/7/25
Type of Med Review, Vendor, Name, Specialty & Date: ECN (PM&R) Charisma Pinna, MD 6/6/25 + addendum 7/14/25

Orig peer:

The following restrictions and limitations are recommended from 10/08/2024 and forward:

8 hours/day - 5 days/week (40 hours per week)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- with use of bilateral upper extremities -
Lifting: Occasional, up to 20 pounds BUE -
Pushing: Occasional, up to 20 pounds BUE -
Pulling: Occasional, up to 20 pounds BUE -
Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below waist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral

-Keyboard/mousing: Frequent, bilateral

Use of low er extremities for foot controls: Occasional, bilateral
Climbing stairs: Occasional w ith the use of a handrail
Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

Addendum:

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrow ing, Schmorl's nodes, and multilevel disc bulges w ith neural foraminal narrow ing, including greater right L4 nerve root contact at L4-L5. These findings are consistent w ith the claimant's prior 12/13/2022 MRI, w hich already demonstrated mild multilevel degenerative changes, foraminal narrow ing, and disc pathology w ith suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that w ould necessitate a reassessment of the current functional capacity recommendations. Clinical notes throughout 2023 and 2024, including from the FCE and multiple follow -ups w ith Dr. Peter Su, consistently report primarily axial low back pain w ithout neurological deficits. Motor strength, sensation, and reflexes w ere repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forw ard remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that w ould undermine or require modification of the original report.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Peter Su, MD (PM&R) 702-779-3994 fax 888-464-0838
Last Date of Service: 1/18/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Joshua Weltha, PA-C (PCP) 702-703-3351 fax 775-727-9452
Last Date of Service: 3/26/25; AF 3/26/25
Restrictions and Limitations/Duration: frequently sit, drive; occasionally lift/carry 0-100 lbs. stand, w alk, climb, bend, kneel, finger, handle, operate foot controls; never reach above shoulder; patient needs to adjust betw een sitting, standing and lying dow n to adjust for pain and discomfort as needed; patient also needs to discontinue activities w hen they cause pain or discomfort.

AP Name/Specialty/Phone Number: Davin Christensen, DPT
Last Date of Service: FCE 3/1/24
Restrictions and Limitations/Duration: sedentary physical capacity

Date and Type of Recent Surgeries: none

Appeal being discussed
Reasons for disagreement as explained in appeal: I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations and vocational realities documented in my claim file…my doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not a good candidate to return to employment in general because of my injury and the need for frequent adjustment betw een sitting, standing and laying dow n…the jobs that they listed as jobs that I w ould be "capable of

performing" clearly do not meet the requirements listed in my medical file and limitations and all three include law enforcement duties.

Information Submitted w ith appeal and not previously review ed: none

Cc of 4/23/25 denial letter

Appeal Analysis: (summarize claim story/handling & Next Steps): EE w as involved in a roll-over MVA w hile on duty and sustained back injuries w hich have been treated conservatively w ith PT, chiro, ESI, facet joint injections, ablation and meds.

If SSDI approved or applied for w hen w e got appeal, ask if they w ant to send file
SSDI file mentioned in initial call (y/n, if not w hy): no - not elig
SSDI language added to ack appeal letter (y/n, if not w hy): no
SSDI notes added to SAP (y/n): yes

Notes: (tolling, other pertinent info, etc.)

Prior peers: ICP PM&R Martin Hoffman, MD; ICP Occ Med Raj Ahsan, MD
SIU report in AWD 2/15/24 (possible business affiliation)
MVA 4/9/22 (w ork-related)

1.Based on the medical findings, please provide a description of the claimant's impairments and describe how they w ould translate into physical/functional limitations and/or medically appropriate restrictions from 10/8/25 and forw ard. Please provide clinical rationale.

2.If appropriate, please provide recommendations w ith respect to appropriate peer or IME specialty(ies).

Thank you. - KRTEDFO - Oct 06, 2025 10:46:31 am
pro-indexing request sent - CADSP1 - Oct 07, 2025 01:12:18 pm
UPDATE:

New medical documentation in AWD 10/6/25 - please be sure to add that to scan

Thank you - KRTEDFO - Oct 08, 2025 12:47:29 pm
Transfer to prety2.

prety2 - PRETY2 - Oct 14, 2025 06:51:15 am
Date:October 14, 2025

Subject:Appeal Nursing Memorandum

Claim#: 1230082409
Employee: David Boruchow itz
Date of Birth:
Date of Disability: July 10, 2023

This file has been review ed on appeal. This appeal nurse review w as requested from the time period of October 8, 2025 and forw ard. All pertinent records have been review ed.

The employee is follow ed by Joshua Weltha / Primary Care Physician Assistant, Dr. Alexander Janda / Chiropractor, Dr. Andrew Cash / Orthopedic Surgery, Dr. Peter Su / Physical Medicine and Rehabilitation, and Dr. Amber Anderson / Primary Care.

The medical history includes overw eight, back pain, diabetes, and Gaucher disease.

The employee separated from w ork on July 10, 2023 w ith the diagnosis of low back pain. The employee is reported to be unable to return to w ork in a law enforcement capacity. The file w as previously determined to be supportive from July 10, 2023 to October 8, 2025.

The employee separated from w ork w ith low back pain that began in April 2022 follow ing a motor vehicle accident. The employee has undergone evaluation and w ork up w ith conservative treatment w ith chiropractor treatment,

spinal injections, physical therapy, and medications. Treating providers have included Primary Care, Physical Medicine and Rehabilitation, Chiropractor, and Orthopedic Surgery.

A functional Capacity Evaluation was completed on March 1, 2024 by Physical Therapy. The findings include sit/stand/walk occasionally, stoop/twist/squat occasionally, 2 hand carry/lift 10 pounds to chest occasionally, 2 hand push/pull occasionally, frequent upper extremity grasp/handle, and unable to perform bilateral upper extremity reaching.

Current medical records include a visit with Dr. Su dated April 17, 2024 for lower back pain. The provider reports findings of functional capacity evaluation and provider notes that the results were valid and consistent and employee was placed in the sedentary physical demand category. The employee has been recommended to continue with injection therapy and does not want to pursue surgical options at this point. The employee is treated with diclofenac and baclofen and denies side effects. The exam documents normal motor strength of bilateral lower extremities, full range of motion of low back with pain and tenderness and negative straight leg raise. The assessment is sprain of ligaments of lumbar spine, lumbar/lumbosacral intervertebral disc displacement and lumbar spondylosis. The provider documents that employee is at maximal medical improvement, stable and will follow up as needed.

An office visit with Physician Assistant Weltha is noted on April 24, 2024 for lab results and follow up regarding back. The employee reports changing diet, walking, losing weight and sleeping well. The exam documents body mass index of 33, lab work is reviewed, and no abnormal physical or psychiatric exam findings. The assessment is elevated alanine aminotransferase (ALT) and provider orders lab work with recommended follow up in 3 months.

A Provider Statement is completed by Dr. Weltha on April 24, 2024 with a diagnosis of low back pain. The employee is noted to have limited mobility due to lumbar injury and continued pain due to motor vehicle accident. An Abilities Form is also completed by provider on March 26, 2025 with restrictions and limitations documented as frequent sit/drive, occasionally lift/carry up to 100 pounds, occasionally walk/stand/climb/bend/kneel/finger/handle/operate foot controls and never reach above shoulder.

The records then skip to an MRI of the lumbar spine completed on April 18, 2025. The indication for the study is low back pain and right sided sciatica. The impression is mild acquired spinal stenosis at lumbar level 1 through sacral level 1, multilevel disc space narrowing/Schmorl's nodes, and neural foraminal narrowing.

Records then skip to a letter written by Dr. Weltha dated October 2, 2025. The provider states that employee is under medical care and is unable to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. The provider documents that employee was involved in a vehicular accident and diagnosed with thoracolumbar musculoligamentous injury and persistent low back pain. The provider outlines treatment, imaging studies, functional capacity evaluation, Abilities Form and reviews. The provider documents that employee has persistent symptoms that are disabling and incompatible with the demands of any occupation.

The employee separated from work with back pain on July 10, 2023 and has undergone conservative treatment for this. The employee underwent a Functional Capacity Evaluation on March 1, 2024 with findings that correlate with a sedentary activity level. Current office visits include a visit on April 17, 2024 with Dr. Su which documents exam findings of normal motor strength of bilateral lower extremities, full range of motion of low back with pain with tenderness, and negative straight leg raise. The employee is treated with diclofenac and baclofen and denies side effects. Per most recent office visit dated April 24, 2024 with Physician Assistant Weltha, there are no abnormal exam findings. Additional records from this visit to present include an MRI of the lumbar spine and a letter from Physician Assistant Weltha. Given the available medical records with no motor/sensory deficits, no need for assistive devices with mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently with position changes as needed for comfort, stand/walk occasionally, lift/carry/push/pull 10 pounds occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below waist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of lower extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forward.

Review of medical records on file completed.

Phyllis T. RN, MSN, CCM
Nurse Disability Appeals Consultant, Lincoln Financial Group - PRETY2 - Oct 14, 2025 07:13:37 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/8/2025 | Documents/Mail | 122 | Email | Completed | KRTEDFO |
| | 2025-10-06-11.36.00.144400O01 | | | | |
| 10/8/2025 | Documents/Mail | 123 | Fax | Completed | KRTEDFO |
| | 2025-10-06-14.43.41.876400O01 | | | | |
| 10/8/2025 | Documents/Mail | 124 | Incoming Correspondence | Completed | KRTEDFO |
| | 2025-10-06-14.43.41.893400O01 | | | | |
| 10/8/2025 | Documents/Mail | 125 | Medical Records | Completed | KRTEDFO |
| | 2025-10-06-14.43.41.904400O01 | | | | |
| 10/15/2025 | Referrals | 18 | Change of Definition | Completed | KRTEDFO |

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:46:57 pm
Refer for medical review for 2nd level LTD appeal:

LTD or WOP or combo: LTD
1st or 2nd Level Appeal: 2nd
Date Appeal Received: 8/26/25
30th day: 9/25/25
45th Day: 10/10/25
90th Day: 11/24/25

Attorney info: n/a
Attorney email: n/a

Claim Demographics

Claimant Name: David Boruchow itz
DOB:
Age at DOD: 43
Current age: 45
Claim Number: 1230082409
ER name: Nye County
Group ID (active/termed): NYECOUNTY (active)
Class: 2
ERISA or NON-ERISA: (How w as information verified?): non-ERISA (county govt)
Nat'l Acct (y/n): no
Situs State: NVState Language applicable (y/n): no
State of Residence:NVState Language applicable (y/n): no

Occupation / Location in AWD: Operations Captain (JD in AWD 10/24/23; no JA)
Physical Demand Level of Occ (OA): light (OA Police Captain, Precinct 375.167-034 12/27/23)
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: lumbar spondylosis w /o myelopathy or radiculopathy, sprain of ligaments of lumbar spine, lumbar facet syndrome, thoracic sprain/strain

DOH: 2/21/06
Eff Date: 7/1/13
Pre-Ex investigation required (y/n): no
Pre-Ex per policy: 12/12/24
Look-back period: n/a

Date of Disability: 7/10/23
DLW: 7/7/23
EP: 90 days
Benefit Commencement Date: 10/8/23
Benefit Paid/Approved To Date: 10/8/25 (in advance)
Change in Definition (COD) Date: 24 mo. 10/8/25
AO investigation required (y/n): yes
Gainful amount: $7394.40
Gainful %: 60

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Is gainful defined in policy (y/n): no
Note: If w ithin 6 months of COD, check for rehab survey or TEE: TEE in AWD 3/20/25
Prior TSA (y/n): yes 4/20/25 & 6/12/25 (sed/light - EE's ow n occ included)
Dominant hand (needed only if UE may be limited): unk

Estimated Net benefit Mthly Coverage amount(s): $600 min after pension offset
Max Duration Date: 6/21/2047 (policy does have 24 mo. spec limit)
SSDI Aw ard information needed/requested - if not - w hy: not qualify (not enough qtrs)

STD claim number/status: n/a
LW claim number/status: 1240001544 & 1240003278 closed
LTD claim number/status: appealed

Date of most recent auth in AWD & exp date (12/24 months): 3/18/25 - 24 mo.
Riders: PIB, fam care
Offsets other than SSD (state, WC, pension, etc.): pension $6754.10/mo.
Ovp amount (if applicable): none

Contractual Limits
Legal Actions: 3 years
Proof of claim: w ithin 90 days after the end of the elim period

Initial Claim Decision:
Reason/Date of denial: no TDAO 4/23/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (ortho sx) Chintan Sampat, MD 4/14/25

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:

Sitting, Standing, Walking-
Sitting: Constant
Standing: Occasional
Walking: Occasional

Lifting, Pushing, Pulling, Carrying-
Lifting: Occasional, up to 10 lbs., utilizing both extremities together
Pushing: Occasional, up to 10 lbs., utilizing both extremities together
Pulling: Occasional, up to 10 lbs., utilizing both extremities together
Carrying: Occasional, up to 10 lbs., utilizing both extremities together

Bilateral Upper Extremities-
Over shoulder level: Frequent
To desk level: Unrestricted
Below w aist level: Frequent
Fine manipulation: Unrestricted
Simple grasping: Unrestricted
Firm grasping: Frequent
Finger: Unrestricted
Handle: Unrestricted
Feel: Unrestricted

Other-
Climbing stairs: Occasional
Balancing: Occasional
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never

Ladder climbing: Never
Low er extremities for foot controls: Occasional
Driving: Occasional

These R/Ls are permanent.

1st Level Appeal Decision:
Reason/Date of denial: no TDAO 8/7/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (PM&R) Charisma Pinna, MD 6/6/25 + addendum 7/14/25

Orig peer:

The follow ing restrictions and limitations are recommended from 10/08/2024 and forw ard:

8 hours/day - 5 days/w eek (40 hours per w eek)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- w ith use of bilateral upper extremities -
Lifting: Occasional, up to 20 pounds BUE -
Pushing: Occasional, up to 20 pounds BUE -
Pulling: Occasional, up to 20 pounds BUE -
Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below w aist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral
-Keyboard/mousing: Frequent, bilateral

Use of low er extremities for foot controls: Occasional, bilateral
Climbing stairs: Occasional w ith the use of a handrail
Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

Addendum:

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrow ing, Schmorl's nodes, and multilevel disc bulges w ith neural foraminal narrow ing, including greater right L4 nerve root contact at L4-L5. These findings are consistent w ith the claimant's prior 12/13/2022 MRI, w hich already demonstrated mild multilevel degenerative changes, foraminal narrow ing, and disc pathology w ith suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that w ould necessitate a reassessment of the current functional capacity recommendations. Clinical notes throughout 2023 and 2024, including from the FCE and multiple follow -ups w ith Dr. Peter Su, consistently report primarily axial low back pain w ithout neurological deficits. Motor strength, sensation, and reflexes w ere repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forw ard remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that w ould undermine or require modification of the original report.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Peter Su, MD (PM&R) 702-779-3994 fax 888-464-0838
Last Date of Service: 1/18/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Joshua Weltha, PA-C (PCP) 702-703-3351 fax 775-727-9452
Last Date of Service: 3/26/25; AF 3/26/25
Restrictions and Limitations/Duration: frequently sit, drive; occasionally lift/carry 0-100 lbs. stand, w alk, climb, bend, kneel, finger, handle, operate foot controls; never reach above shoulder; patient needs to adjust betw een sitting, standing and lying dow n to adjust for pain and discomfort as needed; patient also needs to discontinue activities w hen they cause pain or discomfort.

AP Name/Specialty/Phone Number: Davin Christensen, DPT
Last Date of Service: FCE 3/1/24
Restrictions and Limitations/Duration: sedentary physical capacity

Date and Type of Recent Surgeries: none

Appeal being discussed
Reasons for disagreement as explained in appeal: I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations and vocational realities documented in my claim file…my doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not a good candidate to return to employment in general because of my injury and the need for frequent adjustment betw een sitting, standing and laying dow n…the jobs that they listed as jobs that I w ould be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations and all three include law enforcement duties.

Information Submitted w ith appeal and not previously review ed: none

Cc of 4/23/25 denial letter

Appeal Analysis: (summarize claim story/handling & Next Steps): EE w as involved in a roll-over MVA w hile on duty and sustained back injuries w hich have been treated conservatively w ith PT, chiro, ESI, facet joint injections, ablation and meds.

If SSDI approved or applied for w hen w e got appeal, ask if they w ant to send file
SSDI file mentioned in initial call (y/n, if not w hy): no - not elig
SSDI language added to ack appeal letter (y/n, if not w hy): no
SSDI notes added to SAP (y/n): yes

Notes: (tolling, other pertinent info, etc.)

Prior peers: ICP PM&R Martin Hoffman, MD; ICP Occ Med Raj Ahsan, MD
SIU report in AWD 2/15/24 (possible business affiliation)
MVA 4/9/22 (w ork-related)

1.Based on the medical findings, please provide a description of the claimant's impairments and describe how they w ould translate into physical/functional limitations and/or medically appropriate restrictions from 10/8/25 and forw ard. Please provide clinical rationale.

2.If appropriate, please provide recommendations w ith respect to appropriate peer or IME specialty(ies).

Thank you. - KRTEDFO - Oct 06, 2025 10:46:31 am
pro-indexing request sent - CADSP1 - Oct 07, 2025 01:12:18 pm
Date:October 14, 2025

Subject:Appeal Nursing Memorandum

Claim#: 1230082409
Employee: David Boruchow itz
Date of Birth:
Date of Disability: July 10, 2023

This file has been review ed on appeal. This appeal nurse review w as requested from the time period of October 8, 2025 and forw ard. All pertinent records have been review ed.

The employee is follow ed by Joshua Weltha / Primary Care Physician Assistant, Dr. Alexander Janda / Chiropractor, Dr. Andrew Cash / Orthopedic Surgery, Dr. Peter Su / Physical Medicine and Rehabilitation, and Dr. Amber Anderson / Primary Care.

The medical history includes overw eight, back pain, diabetes, and Gaucher disease.

The employee separated from w ork on July 10, 2023 w ith the diagnosis of low back pain. The employee is reported to be unable to return to w ork in a law enforcement capacity. The file w as previously determined to be supportive from July 10, 2023 to October 8, 2025.

The employee separated from w ork w ith low back pain that began in April 2022 follow ing a motor vehicle accident. The employee has undergone evaluation and w ork up w ith conservative treatment w ith chiropractor treatment, spinal injections, physical therapy, and medications. Treating providers have included Primary Care, Physical Medicine and Rehabilitation, Chiropractor, and Orthopedic Surgery.

A functional Capacity Evaluation w as completed on March 1, 2024 by Physical Therapy. The findings include sit/stand/w alk occasionally, stoop/tw ist/squat occasionally, 2 hand carry/lift 10 pounds to chest occasionally, 2 hand push/pull occasionally, frequent upper extremity grasp/handle, and unable to perform bilateral upper extremity reaching.

Current medical records include a visit w ith Dr. Su dated April 17, 2024 for low er back pain. The provider reports findings of functional capacity evaluation and provider notes that the results w ere valid and consistent and employee w as placed in the sedentary physical demand category. The employee has been recommended to continue w ith injection therapy and does not w ant to pursue surgical options at this point. The employee is treated w ith diclofenac and baclofen and denies side effects. The exam documents normal motor strength of bilateral low er extremities, full range of motion of low back w ith pain and tenderness and negative straight leg raise. The assessment is sprain of ligaments of lumbar spine, lumbar/lumbosacral intervertebral disc displacement and lumbar spondylosis. The provider documents that employee is at maximal medical improvement, stable and w ill follow up as needed.

An office visit w ith Physician Assistant Weltha is noted on April 24, 2024 for lab results and follow up regarding back. The employee reports changing diet, w alking, losing w eight and sleeping w ell. The exam documents body mass index of 33, lab w ork is review ed, and no abnormal physical or psychiatric exam findings. The assessment is elevated alanine aminotransferase (ALT) and provider orders lab w ork w ith recommended follow up in 3 months.

A Provider Statement is completed by Dr. Weltha on April 24, 2024 w ith a diagnosis of low back pain. The employee is noted to have limited mobility due to lumbar injury and continued pain due to motor vehicle accident. An Abilities Form is also completed by provider on March 26, 2025 w ith restrictions and limitations documented as frequent sit/drive, occasionally lift/carry up to 100 pounds, occasionally w alk/stand/climb/bend/kneel/finger/handle/operate foot controls and never reach above shoulder.

The records then skip to an MRI of the lumbar spine completed on April 18, 2025. The indication for the study is low back pain and right sided sciatica. The impression is mild acquired spinal stenosis at lumbar level 1 through sacral level 1, multilevel disc space narrow ing/Schmorl's nodes, and neural foraminal narrow ing.

Records then skip to a letter w ritten by Dr. Weltha dated October 2, 2025. The provider states that employee is

under medical care and is unable to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. The provider documents that employee w as involved in a vehicular accident and diagnosed w ith thoracolumbar musculoligamentous injury and persistent low back pain. The provider outlines treatment, imaging studies, functional capacity evaluation, Abilities Form and review s. The provider documents that employee has persistent symptoms that are disabling and incompatible w ith the demands of any occupation.

The employee separated from w ork w ith back pain on July 10, 2023 and has undergone conservative treatment for this. The employee underw ent a Functional Capacity Evaluation on March 1, 2024 w ith findings that correlate w ith a sedentary activity level. Current office visits include a visit on April 17, 2024 w ith Dr. Su w hich documents exam findings of normal motor strength of bilateral low er extremities, full range of motion of low back w ith pain w ith tenderness, and negative straight leg raise. The employee is treated w ith diclofenac and baclofen and denies side effects. Per most recent office visit dated April 24, 2024 w ith Physician Assistant Weltha, there are no abnormal exam findings. Additional records from this visit to present include an MRI of the lumbar spine and a letter from Physician Assistant Weltha. Given the available medical records w ith no motor/sensory deficits, no need for assistive devices w ith mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently w ith position changes as needed for comfort, stand/w alk occasionally, lift/carry/push/pull 10 pounds occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below w aist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of low er extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forw ard.

Review of medical records on file completed.

Phyllis T. RN, MSN, CCM
Nurse Disability Appeals Consultant, Lincoln Financial Group - PRETY2 - Oct 14, 2025 07:13:37 pm
UPDATE:

New medical documentation in AWD 10/6/25 - please be sure to add that to scan

Thank you - KRTEDFO - Oct 08, 2025 12:47:29 pm
Transfer to prety2.

prety2 - PRETY2 - Oct 14, 2025 06:51:15 am

10/15/2025 11:59:58 AM Referrals 19 TSA Initial KRTEDFO

Refer for updated TSA for 2nd level LTD appeal:

Claimant Name: David Boruchow itz
Claim Number: 1230082409
Medical: see NDC review dated 10/14/25
Job Description: Operations Captain (JD in AWD 10/24/23; no JA; OA in AWD 12/27/23)
TEE: TEE in AWD 3/20/25
Other Job Information: n/a
Policy Requirements: general labor market and national economy
Gross Benefit Amount and Percentage: $7394.40 - 60%
Prior VRC's: CAFTH9, NIUHA2

1. Please complete an updated TSA.

Thank you.
- KRTEDFO - Oct 15, 2025 12:09:34 pm

Appeal Vocational Memorandum
Based on these updated capacities, the previously-identified sedentary occupations remain viable. Ow n occupation w as eliminated based on capacities above.

Sarah S., M.Ed., CRC
Certified Rehabilitation Counselor

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Vocational Consultant<br>Group Protection<br>Lincoln Financial Group<br>- SAZSO3 - Oct 20, 2025 08:19:49 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:04 pm | | | | |
| 10/20/2025 | Documents/Mail | 126 | Appeal Dis EE 21 Day Letter | Completed | KRTEDFO |
| | Attachments:D Boruchow itz medical review .pdf D Boruchow itz TSA.pdf Appeal Dis EE 21 Day Letter | | | | |
| 10/20/2025 | Documents/Mail | 127 | Email | Completed | KRTEDFO |
| | 2025-10-20-09.20.34.390600O01 | | | | |
| 10/20/2025 | Documents/Mail | 128 | Voc Rehab Forms | Completed | KRTEDFO |
| | 2025-10-20-09.20.34.408600O01 | | | | |
| 10/20/2025 | Referrals | 19 | TSA | Completed | KRTEDFO |
| | Refer for updated TSA for 2nd level LTD appeal:<br><br>Claimant Name: David Boruchow itz<br>Claim Number: 1230082409<br>Medical: see NDC review dated 10/14/25<br>Job Description: Operations Captain (JD in AWD 10/24/23; no JA; OA in AWD 12/27/23)<br>TEE: TEE in AWD 3/20/25<br>Other Job Information: n/a<br>Policy Requirements: general labor market and national economy<br>Gross Benefit Amount and Percentage: $7394.40 - 60%<br>Prior VRC's: CAFTH9, NIUHA2<br><br>1. Please complete an updated TSA.<br><br>Thank you.<br>- KRTEDFO - Oct 15, 2025 12:09:34 pm<br><br><br>Appeal Vocational Memorandum<br>Based on these updated capacities, the previously-identified sedentary occupations remain viable. Ow n occupation w as eliminated based on capacities above.<br><br>Sarah S., M.Ed., CRC<br>Certified Rehabilitation Counselor<br>Vocational Consultant<br>Group Protection<br>Lincoln Financial Group<br>- SAZSO3 - Oct 20, 2025 08:19:49 am<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:04 pm | | | | |
| 10/20/2025 12:57:07 PM | Claim Tasks | 32 | Appeal - 21 Day Letter | Requested | KRTEDFO |
| | RTR letter to EE w /cc's of NDC and TSA reports<br><br>f/up 11/10/25 - KRTEDFO - Oct 20, 2025 12:57:41 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:46 pm | | | | |
| 11/3/2025 | Claim Tasks | 32 | Appeal - 21 Day Letter | Completed | KRTEDFO |
| | RTR letter to EE w /cc's of NDC and TSA reports<br><br>f/up 11/10/25 - KRTEDFO - Oct 20, 2025 12:57:41 pm<br><br>Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:46 pm | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Claim Tasks | 31 | Appeal 90 Day Extension | Completed | KRTEDFO |

90th day is 11/24/25

begin tolling 9/5/25 - KRTEDFO - Sep 05, 2025 09:57:05 am

tolling ended 10/6/25 - new 90th day is 12/24/25 - KRTEDFO - Oct 06, 2025 10:30:09 am

begin tolling again 10/20/25 - KRTEDFO - Oct 20, 2025 12:57:02 pm

tolling ended 11/1/25 - new 90th day is 1/5/26 - KRTEDFO - Nov 03, 2025 08:15:15 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:44:43 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Claim Tasks | 30 | Update Claim Information | Completed | KRTEDFO |

next status update due 10/5/25 - KRTEDFO - Sep 05, 2025 09:56:31 am

next status update due 11/5/25 - KRTEDFO - Oct 06, 2025 10:30:35 am

next status update due 11/19/25 - KRTEDFO - Oct 20, 2025 12:56:41 pm

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:45:06 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Documents/Mail | 129 | Email | Completed | KRTEDFO |

2025-11-03-09.09.33.385060O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Documents/Mail | 130 | Appeal Any Occ Level 2 Uphold EE | Completed | KRTEDFO |

Appeal Any Occ Level 2 Uphold EEAttachments:Translation services

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Appeal | 2 | Level 2 | Closed | KRTEDFO |

changed appeal rec'd date to 8/26/25 as that is w hen EE faxed appeal to LFG - KRTEDFO - Aug 29, 2025 10:33:51 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/4/2025 | Summary/Assessment/Pa | 6h | 2nd LEVEL APPEAL PENDING RATIONALE: - KRTEDFO - Sep | Completed | KRTEDFO |

Summary Notes
2nd LEVEL APPEAL PENDING RATIONALE: - KRTEDFO - Sep 05, 2025 09:58:01 am
Assessment Notes
see path - KRTEDFO - Sep 05, 2025 09:58:01 am
Path Notes
2nd LEVEL APPEAL PENDING RATIONALE:

LTD or WOP or combo: LTD
1st or 2nd Level Appeal: 2nd
Date Appeal Received: 8/26/25
30th day: 9/25/25
45th Day: 10/10/25
90th Day: 11/24/25

Attorney info: n/a
Attorney email: n/a

Claim Demographics

Claimant Name: David Boruchow itz
DOB:
Age at DOD: 43
Current age: 45
Claim Number: 1230082409
ER name: Nye County
Group ID (active/termed): NYECOUNTY (active)
Class: 2
ERISA or NON-ERISA: (How w as information verified?): non-ERISA (county govt)

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Nat'l Acct (y/n): no
Situs State: NVState Language applicable (y/n): no
State of Residence:NVState Language applicable (y/n): no

Occupation / Location in AWD: Operations Captain (JD in AWD 10/24/23; no JA)
Physical Demand Level of Occ (OA): light (OA Police Captain, Precinct 375.167-034 12/27/23)
Primary Diagnosis: low back pain
Co-Morbid Diagnoses: lumbar spondylosis w /o myelopathy or radiculopathy, sprain of ligaments of lumbar spine, lumbar facet syndrome, thoracic sprain/strain

DOH: 2/21/06
Eff Date: 7/1/13
Pre-Ex investigation required (y/n): no
Pre-Ex per policy: 12/12/24
Look-back period: n/a

Date of Disability: 7/10/23
DLW: 7/7/23
EP: 90 days
Benefit Commencement Date: 10/8/23
Benefit Paid/Approved To Date: 10/8/25 (in advance)
Change in Definition (COD) Date: 24 mo. 10/8/25
AO investigation required (y/n): yes
Gainful amount: $7394.40
Gainful %: 60
Is gainful defined in policy (y/n): no
Note: If w ithin 6 months of COD, check for rehab survey or TEE: TEE in AWD 3/20/25
Prior TSA (y/n): yes 4/20/25 & 6/12/25 (sed/light - EE's ow n occ included)
Dominant hand (needed only if UE may be limited): unk

Estimated Net benefit Mthly Coverage amount(s): $600 min after pension offset
Max Duration Date: 6/21/2047 (policy does have 24 mo. spec limit)
SSDI Aw ard information needed/requested - if not - w hy: not qualify (not enough qtrs)

STD claim number/status: n/a
LW claim number/status: 1240001544 & 1240003278 closed
LTD claim number/status: appealed

Date of most recent auth in AWD & exp date (12/24 months): 3/18/25 - 24 mo.
Riders: PIB, fam care
Offsets other than SSD (state, WC, pension, etc.): pension $6754.10/mo.
Ovp amount (if applicable): none

Contractual Limits
Legal Actions: 3 years
Proof of claim: w ithin 90 days after the end of the elim period

Initial Claim Decision:
Reason/Date of denial: no TDAO 4/23/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (ortho sx) Chintan Sampat, MD 4/14/25

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:

Sitting, Standing, Walking-
Sitting: Constant
Standing: Occasional
Walking: Occasional

Lifting, Pushing, Pulling, Carrying-
Lifting: Occasional, up to 10 lbs., utilizing both extremities together
Pushing: Occasional, up to 10 lbs., utilizing both extremities together
Pulling: Occasional, up to 10 lbs., utilizing both extremities together
Carrying: Occasional, up to 10 lbs., utilizing both extremities together

Bilateral Upper Extremities-
Over shoulder level: Frequent
To desk level: Unrestricted
Below w aist level: Frequent
Fine manipulation: Unrestricted
Simple grasping: Unrestricted
Firm grasping: Frequent
Finger: Unrestricted
Handle: Unrestricted
Feel: Unrestricted

Other-
Climbing stairs: Occasional
Balancing: Occasional
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Craw ling: Never
Ladder climbing: Never
Low er extremities for foot controls: Occasional
Driving: Occasional

These R/Ls are permanent.

1st Level Appeal Decision:
Reason/Date of denial: no TDAO 8/7/25
Type of Med Review , Vendor, Name, Specialty & Date: ECN (PM&R) Charisma Pinna, MD 6/6/25 + addendum 7/14/25

Orig peer:

The follow ing restrictions and limitations are recommended from 10/08/2024 and forw ard:

8 hours/day - 5 days/w eek (40 hours per w eek)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- w ith use of bilateral upper extremities -
Lifting: Occasional, up to 20 pounds BUE -
Pushing: Occasional, up to 20 pounds BUE -
Pulling: Occasional, up to 20 pounds BUE -
Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below w aist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral
-Keyboard/mousing: Frequent, bilateral

Use of lower extremities for foot controls: Occasional, bilateral
Climbing stairs: Occasional with the use of a handrail
Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

Addendum:

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl's nodes, and multilevel disc bulges with neural foraminal narrowing, including greater right L4 nerve root contact at L4-L5. These findings are consistent with the claimant's prior 12/13/2022 MRI, which already demonstrated mild multilevel degenerative changes, foraminal narrowing, and disc pathology with suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that would necessitate a reassessment of the current functional capacity recommendations. Clinical notes throughout 2023 and 2024, including from the FCE and multiple follow-ups with Dr. Peter Su, consistently report primarily axial low back pain without neurological deficits. Motor strength, sensation, and reflexes were repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forward remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that would undermine or require modification of the original report.

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Peter Su, MD (PM&R) 702-779-3994 fax 888-464-0838
Last Date of Service: 1/18/24
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Joshua Weltha, PA-C (PCP) 702-703-3351 fax 775-727-9452
Last Date of Service: 3/26/25; AF 3/26/25
Restrictions and Limitations/Duration: frequently sit, drive; occasionally lift/carry 0-100 lbs. stand, walk, climb, bend, kneel, finger, handle, operate foot controls; never reach above shoulder; patient needs to adjust between sitting, standing and lying down to adjust for pain and discomfort as needed; patient also needs to discontinue activities when they cause pain or discomfort.

AP Name/Specialty/Phone Number: Davin Christensen, DPT
Last Date of Service: FCE 3/1/24
Restrictions and Limitations/Duration: sedentary physical capacity

Date and Type of Recent Surgeries: none

Appeal being discussed
Reasons for disagreement as explained in appeal: I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations and vocational realities documented in my claim file…my doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing and laying down…the jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations and all three include law

enforcement duties.

Information Submitted w ith appeal and not previously review ed: none

Cc of 4/23/25 denial letter

Appeal Analysis: (summarize claim story/handling & Next Steps): EE w as involved in a roll-over MVA w hile on duty and sustained back injuries w hich have been treated conservatively w ith PT, chiro, ESI, facet joint injections, ablation and meds.

If SSDI approved or applied for w hen w e got appeal, ask if they w ant to send file
SSDI file mentioned in initial call (y/n, if not w hy): no - not elig
SSDI language added to ack appeal letter (y/n, if not w hy): no
SSDI notes added to SAP (y/n): yes

Notes: (tolling, other pertinent info, etc.)

Prior peers: ICP PM&R Martin Hoffman, MD; ICP Occ Med Raj Ahsan, MD
Prior VRCs: CAFTH9, NIUHA2
SIU report in AWD 2/15/24 (possible business affiliation)
MVA 4/9/22 (w ork-related)
45-day language added to ack letter
Begin tolling 9/5/25

Ack letter to EE; none to ER as DOD over 2 years ago

PATH: pend med records
 - KRTEDFO - Sep 05, 2025 09:58:01 am

no addl info rec'd - w ill move fw d w ith appeal review

end tolling

status email to EE - KRTEDFO - Oct 06, 2025 10:31:03 am

sent for NDC review - KRTEDFO - Oct 06, 2025 10:33:00 am

rec'd email/letter from EE: no new medical records are available - KRTEDFO - Oct 06, 2025 11:14:25 am

rec'd from EE:

Letter w ritten by EE
Letter J Weltha PA-C 10/2/25 - KRTEDFO - Oct 08, 2025 12:47:38 pm

NDC review complete

sent for updated TSA - KRTEDFO - Oct 15, 2025 11:59:35 am

TSA complete - gainful found

RTR letter to EE w /cc's of NDC and TSA reports

begin tolling again - KRTEDFO - Oct 20, 2025 12:56:07 pm

email from EE dated 11/1/25: "There is nothing further to respond to"

w ill move fw d w ith appeal review

end tolling - KRTEDFO - Nov 03, 2025 08:06:26 am

sched mgmt discussion - KRTEDFO - Nov 03, 2025 04:52:25 pm

**Chronological Activity List**

see DECISION SAP for further details - KRTEDFO - Nov 04, 2025 01:29:36 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/4/2025 | Summary/Assessment/Pa7h | | **2nd LEVEL APPEAL DECISION RATIONALE** - KRTEDFO - Nov | Completed | KRTEDFO |

Summary Notes
**2nd LEVEL APPEAL DECISION RATIONALE** - KRTEDFO - Nov 04, 2025 01:31:23 pm
Assessment Notes
see path - KRTEDFO - Nov 04, 2025 01:31:23 pm
Path Notes
**2nd LEVEL APPEAL DECISION RATIONALE**

EE is a now 45 y/o Operations Captain (Police Captain per OA - light) w ho stopped w orking due to a roll-over MVA w hile on duty and sustained back injuries w hich have been treated conservatively w ith PT, chiro, ESI, facet joint injections, ablation and meds. DOD 7/10/23 BCD 10/8/23 benefits have been paid to COD 10/8/25. Dxs include low back pain, lumbar spondylosis w /o myelopathy or radiculopathy, sprain of ligaments of lumbar spine, lumbar facet syndrome, thoracic sprain/strain. For the appeal, addl info w as submitted:

Cc of 4/23/25 denial letter
EE Letter
Letter J Weltha PA-C 10/2/25

Prior medical review s include:

Claim level: ortho sx peer
First appeal: PM&R peer

Upon appeal, an NDC review w as completed. The NDC opined, in part:

The employee separated from w ork w ith back pain on July 10, 2023 and has undergone conservative treatment for this. The employee underw ent a Functional Capacity Evaluation on March 1, 2024 w ith findings that correlate w ith a sedentary activity level. Current office visits include a visit on April 17, 2024 w ith Dr. Su w hich documents exam findings of normal motor strength of bilateral low er extremities, full range of motion of low back w ith pain w ith tenderness, and negative straight leg raise. The employee is treated w ith diclofenac and baclofen and denies side effects. Per most recent office visit dated April 24, 2024 w ith Physician Assistant Weltha, there are no abnormal exam findings. Additional records from this visit to present include an MRI of the lumbar spine and a letter from Physician Assistant Weltha. Given the available medical records w ith no motor/sensory deficits, no need for assistive devices w ith mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently w ith position changes as needed for comfort, stand/w alk occasionally, lift/carry/push/pull 10 pounds occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below w aist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of low er extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forw ard.

A prior TSA identified multiple gainful sedentary/light occs the EE could perform, including his ow n occ.

A copy of the NDC review w as sent to the EE w ith a RTR letter. In response, the EE sent an email dated 11/1/25 indicating, "There is nothing further to respond to."

Based upon the findings of the medical and vocational review s of the file, upholding the denial of benefits beyond COD.

Letter to EE; none to ER as DOD over 2 years ago. File closed.
- KRTEDFO - Nov 04, 2025 01:31:23 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/4/2025 | Referrals | 17 | Tolling Review | Completed | KRTEDFO |

Today's Date9/5/2025
Appeal Rcvd Date8/26/2025
Days Since Received10
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/20250
0
0



Lincoln/Boruchowitz 0209

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

0
0
0
0
Tolling Days0
45th Day of Active Review 10/9/2025
90th Day of Active Review 11/23/2025
Active Review Days Remaining to 90th Day78
- KRTEDFO - Sep 05, 2025 10:00:09 am

UPDATED TOLLING

Today's Date10/6/2025
Appeal Rcvd Date8/26/2025
Days Since Received41
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
0
0
0
0
0
0
Tolling Days31
45th Day of Active Review 10/9/2025
90th Day of Active Review 12/24/2025
Active Review Days Remaining to 90th Day78
- KRTEDFO - Oct 06, 2025 10:29:35 am

UPDATED TOLLING

Today's Date10/20/2025
Appeal Rcvd Date8/26/2025
Days Since Received55
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
10/20/20250
0
0
0
0
0
Tolling Days31
45th Day of Active Review 10/9/2025
90th Day of Active Review 12/24/2025
Active Review Days Remaining to 90th Day64
- KRTEDFO - Oct 20, 2025 01:00:48 pm

UPDATED TOLLING

Today's Date11/3/2025
Appeal Rcvd Date8/26/2025
Days Since Received69
Extension Sent Date9/5/2025
Tolling Start DateTolling end DateTolling Days
9/5/202510/6/202531
10/20/202511/1/202512
0

**Chronological Activity List**

0
0
0
0
Tolling Days43
45th Day of Active Review 10/9/2025
90th Day of Active Review 1/5/2026
Active Review Days Remaining to 90th Day62
- KRTEDFO - Nov 03, 2025 08:14:28 am

Item Closed w ith Claim by System - KRTEDFO - Nov 04, 2025 02:47:06 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/4/2025 2:44:33 PM | Status | | Not TD Any Occ | CLOSED | KRTEDFO |
| 5/6/2026 8:19:13 AM | Claim Tasks | 33 | Paper File | Follow Up | SANFA3 |

Please prepare a full file copy. As a reminder the file copy should include the follow ing information, in this order.

1. Claim Profile
2. Chronological Activity List
3. Policy at time of DOD
4. Certificate at time of DOD
5. All AWD/Paper documents.

Please save the follow ing file(s) in the Legal Requests folder:

LTD 1230082409
LW 1240001544
LW 1240003278
- DMQMA5 - May 06, 2026 08:21:36 am

| | | | | | |
|---|---|---|---|---|---|
| 5/6/2026 9:12:32 AM | Status | | | REOPENED | CXGEARY |
| 10/22/2026 | Lien | 1 | Subrogation | Received | SAAED9 |

Please review for possible subrogation:

LTD Claim # 1230082409

CLAIMANT NAME: David Boruchow itz

Group Name / ARDIS or COVERGE ID: NYECOUNTY

LTD Benefit -
Start Date 10/08/2023
Paid To current
Other Offsets retirement monthly offset $6,754.10 ($5,400 due to minimum)
Monthly Amount $600

Alternate contact (Attorney, TPA, POA, etc) Name, address, phone, email n/a

STD Claim # (if applicable)

OTHER INFO (Police report, judgments or other documents relevant to claim w ith AWD locations): Attached to email-
WC form and accident report, employer form
AWD- 2023-10-16-11.02.58.436560O01

Brief history of claim details and issue that needs review by Subro Team: Please review due to possible other income from auto and or w orkers comp.

- SAAED9 - Feb 06, 2024 11:23:40 am

Date: Mon Oct 20 13:07:22 CDT 2025
From: Kelly Tedford <Kelly.Tedford@lfg.com>
To: dboruchowitz@fltg.net
Message-ID: <1513032041.196.1760983642739.JavaMail.webadmin@ne1plwas106>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-confirmation from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Tedford**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x66246
Fax: 402-361-1460
Email: Kelly.Tedford@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 20, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in regard to your appeal for Long Term Disability benefits.

As part of your appeal review, your medical information was reviewed by a health care consultant. We are enclosing a copy of the report with this letter for your review prior to completion of our appeal decision. We are also including a copy of the vocational review that was done.

You may wish to provide these assessments to your treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 11/10/2025. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your disability claim at this time as we want to provide you every opportunity to review our assessment and provide a response.

If we do not receive a response by 11/10/2025, we will render a decision based on the information currently in the file.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Kelly T
800-423-2765 x66246
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Date: October 14, 2025

Subject: Appeal Nursing Memorandum

Claim#: 1230082409

Employee: David Boruchowitz

Date of Birth:

Date of Disability: July 10, 2023

This file has been reviewed on appeal. This appeal nurse review was requested from the time period of October 8, 2025 and forward. All pertinent records have been reviewed.

The employee is followed by Joshua Weltha / Primary Care Physician Assistant, Dr. Alexander Janda / Chiropractor, Dr. Andrew Cash / Orthopedic Surgery, Dr. Peter Su / Physical Medicine and Rehabilitation, and Dr. Amber Anderson / Primary Care.

The medical history includes overweight, back pain, diabetes, and Gaucher disease.

The employee separated from work on July 10, 2023 with the diagnosis of low back pain. The employee is reported to be unable to return to work in a law enforcement capacity. The file was previously determined to be supportive from July 10, 2023 to October 8, 2025.

The employee separated from work with low back pain that began in April 2022 following a motor vehicle accident. The employee has undergone evaluation and work up with conservative treatment with chiropractor treatment, spinal injections, physical therapy, and medications. Treating providers have included Primary Care, Physical Medicine and Rehabilitation, Chiropractor, and Orthopedic Surgery.

A functional Capacity Evaluation was completed on March 1, 2024 by Physical Therapy. The findings include sit/stand/walk occasionally, stoop/twist/squat occasionally, 2 hand carry/lift 10 pounds to chest occasionally, 2 hand push/pull occasionally, frequent upper extremity grasp/handle, and unable to perform bilateral upper extremity reaching.

Current medical records include a visit with Dr. Su dated April 17, 2024 for lower back pain. The provider reports findings of functional capacity evaluation and provider notes that the results were valid and consistent and employee was placed in the sedentary physical demand category. The employee has been recommended to continue with injection therapy and does not want to pursue surgical options at this point. The employee is treated with diclofenac and baclofen and denies side effects. The exam documents normal motor strength of bilateral lower extremities, full range of motion of low back with pain and tenderness and negative straight leg raise. The assessment is sprain of ligaments of lumbar spine, lumbar/lumbosacral intervertebral disc displacement and lumbar spondylosis. The provider documents that employee is at maximal medical improvement, stable and will follow up as needed.

An office visit with Physician Assistant Weltha is noted on April 24, 2024 for lab results and follow up regarding back. The employee reports changing diet, walking, losing weight and sleeping well. The exam documents body mass index of 33, lab work is reviewed, and no abnormal physical or psychiatric exam findings. The assessment is elevated alanine aminotransferase (ALT) and provider orders lab work with recommended follow up in 3 months.

A Provider Statement is completed by Dr. Weltha on April 24, 2024 with a diagnosis of low back pain. The employee is noted to have limited mobility due to lumbar injury and continued pain due to motor vehicle accident. An Abilities

Form is also completed by provider on March 26, 2025 with restrictions and limitations documented as frequent sit/drive, occasionally lift/carry up to 100 pounds, occasionally walk/stand/climb/bend/kneel/finger/handle/operate foot controls and never reach above shoulder.

The records then skip to an MRI of the lumbar spine completed on April 18, 2025. The indication for the study is low back pain and right sided sciatica. The impression is mild acquired spinal stenosis at lumbar level 1 through sacral level 1, multilevel disc space narrowing/Schmorl's nodes, and neural foraminal narrowing.

Records then skip to a letter written by Dr. Weltha dated October 2, 2025. The provider states that employee is under medical care and is unable to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. The provider documents that employee was involved in a vehicular accident and diagnosed with thoracolumbar musculoligamentous injury and persistent low back pain. The provider outlines treatment, imaging studies, functional capacity evaluation, Abilities Form and reviews. The provider documents that employee has persistent symptoms that are disabling and incompatible with the demands of any occupation.

The employee separated from work with back pain on July 10, 2023 and has undergone conservative treatment for this. The employee underwent a Functional Capacity Evaluation on March 1, 2024 with findings that correlate with a sedentary activity level. Current office visits include a visit on April 17, 2024 with Dr. Su which documents exam findings of normal motor strength of bilateral lower extremities, full range of motion of low back with pain with tenderness, and negative straight leg raise. The employee is treated with diclofenac and baclofen and denies side effects. Per most recent office visit dated April 24, 2024 with Physician Assistant Weltha, there are no abnormal exam findings. Additional records from this visit to present include an MRI of the lumbar spine and a letter from Physician Assistant Weltha. Given the available medical records with no motor/sensory deficits, no need for assistive devices with mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently with position changes as needed for comfort, stand/walk occasionally, lift/carry/push/pull 10 pounds occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below waist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of lower extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forward.

Review of medical records on file completed.

Phyllis T. RN, MSN, CCM

Nurse Disability Appeals Consultant, Lincoln Financial Group

Sarah S., M.Ed., CRC
Vocational Rehabilitation Consultant
Group Protection

**Appeal Vocational Memorandum**

Date: 10/20/25
Claim#: 1230082409
Claimant: David Boruchowitz
Employer: Nye County

**Vocational Assessment:**
VRC received this file for an Appeal TSA due to updated restrictions and limitations. A previous Transferable Skills Analysis (TSA) was completed on 06/12/2025. Please see those reports for complete details of past work history, education/training, and adjustments. The following occupations were identified in that TSA:

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | Strength | National Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | S | $8,831 |
| 375.167-026 | Harbor Master | S | $17,202 |
| 189.167-034 | Security Officer | S | $11,379 |
| 375.167-034 | [*] Police Captain | L | $12,324 |

**Wage Information is based on median 2024 Bureau of Labor Statistical Data*
*[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

This was based on the following:

**Education & Training:**
Education: High School Diploma, bachelor's degree, master's degree, Juris Doctorate

Certifications/Licensures:

Computer Skills: E-mail; Internet; Word Processing; Spreadsheets; Databases; Photo Software; Graphics Software; Hardware Installation/Repair; Programming Installation/Repair; Project Management; Typing WPM 120

**Work History:**

| DOT Code | Occupation Title | Years Performed | Strength Level |
|---|---|---|---|
| 375.167-034 | Police Captain* | 2006-2023 | L |

**Claimant Own Occupation*

I have been asked to utilize restrictions and limitations from a Clinical Nurse Consult on 10/14/25. They include:

"Given the available medical records with no motor/sensory deficits, no need for assistive devices with mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently with position changes as needed for comfort, stand/walk occasionally, lift/carry/push/pull 10 pounds

occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below waist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of lower extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forward."

Based on these updated capacities, the previously-identified sedentary occupations remain viable. Own occupation was eliminated based on capacities above.

| **DOT Code** | **Occupation Title** | **Strength Level** | **Monthly Wage*** |
|---|---|---|---|
| 375.137–014 | Desk Officer | Sedentary | $8,831 |
| 375.167–026 | Harbor Master | Sedentary | $17,202 |
| 189.167–034 | Security Officer | Sedentary | $11,379 |

** Wage information is based on median 2024 national data from the Bureau of Labor Statistics*

*Note: occupations listed above verified through a review of physical demands from ERI,* ***and/or*** *a review of material and substantial functions. The occupation(s) above have been included based on consideration of the Insured's training, education, experience, and reviewed for current existence in the national economy.*

Due to advancements in workplace technology and evolving employment practices, employers may provide various workstation configurations and equipment to support employee comfort and productivity across applicable occupational settings. Reaching can be reduced (desk/waist level) or eliminated (upward/above shoulder level and downward/below waist level) by moving objects an ergonomically-correct distance from the body.

I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information and resources noted only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Sarah S., M.Ed., CRC

Certified Rehabilitation Counselor

Vocational Consultant

Group Protection

Lincoln Financial Group

**WORK HISTORY**

| DOT Code | DOT Title | Strength | SVP | Years | Months | Meets SVP | Included in TSA | CWF |
|---|---|---|---|---|---|---|---|---|
| 375.167-034 | Police Captain, Precinct | L | 8 | 17 | 0 | y | y | n |

**ABILITY PROFILE**

**Strength**

| | From Work History | Adjusted Ability |
|---|---|---|
| Maximum | L (Light) | S (Sedentary) |

**Physical Demands**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Posture** | | |
| CL - Climbing | Never | Never - Occasional |
| BA - Balancing | Never | Never - No Limit |
| ST - Stoop/Bending | Never | Never - Occasional |
| KN - Kneeling | Never | Never - Occasional |
| CR - Crouching | Never | Never - Occasional |
| CW - Crawling | Never | Never - No Limit |
| **Manipulation** | | |
| RE - Reaching | Frequent | Never - No Limit |
| HA - Handling | Frequent | Never - No Limit |
| FI - Fingering | Frequent | Never - No Limit |
| **Tactile/Communication** | | |

| | | |
|---|---|---|
| FE - Feeling | Never | Never - No Limit |
| TA - Talking | Frequent | Never - No Limit |
| HE - Hearing | Frequent | Never - No Limit |
| TS - Tasting/Smelling | Never | Never - No Limit |
| **Vision** | | |
| NE - Near Acuity | Frequent | Never - No Limit |
| FA - Far Acuity | Occasional | Never - No Limit |
| DE - Depth Perception | Occasional | Never - No Limit |
| AC - Accommodation | Occasional | Never - No Limit |
| CV - Color Vision | Occasional | Never - No Limit |
| FV - Field of Vision | Occasional | Never - No Limit |

**Environmental Conditions**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Exposure to Work Settings** | | |
| WE - Exposure to Weather | Occasional | Never - No Limit |
| CO - Extreme Cold (non-weather) | Never | Never - No Limit |
| HO - Extreme Heat (non-weather) | Never | Never - No Limit |
| WT - Wet and/or Humid (non-weather) | Never | Never - No Limit |
| NO - Noise Intensity | Moderate | Very Quiet - Very Loud |
| VI - Vibration | Never | Never - No Limit |
| AT - Atmospheric Conditions (Fumes, dust, odors) | Never | Never - No Limit |
| **Hazardous Conditions** | | |
| MV - Proximity to Moving Mechanical Parts | Never | Never - No Limit |
| EL - Exposure to Electrical Shock | Never | Never - No Limit |

| | | |
|---|---|---|
| HI - Working in High Exposed Places | Never | Never - No Limit |
| RA - Exposure to Radiation | Never | Never - No Limit |
| EX - Working with Explosives | Never | Never - No Limit |
| TX - Exposure to Toxic or Caustic Chemicals | Never | Never - No Limit |
| OT - Other Environmental Conditions | Never | Never - No Limit |

**General Education Development**

| | From Work History | Adjusted Ability |
|---|---|---|
| R - Reasoning | 5 (Scientific) | 1 (Grade 1-3) - 6 (Intellectual) |
| M - Math | 3 (Grade 7-8) | 1 (Grade 1-3) - 6 (Adv. Calc.) |
| L - Language | 4 (High School) | 1 (Grade 1-3) - 6 (Graduate) |

**Specific Vocational Preparation**

| | From Work History | Adjusted Ability |
|---|---|---|
| SVP | 8 (4-10 Years (MS-Ph.D.)) | 1 (Short Demo Only) - 8 (4-10 Years (MS-Ph.D.)) |

**Aptitudes**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Cognition** | | |
| G - General Learning Ability | 2 (Above Average) | 4 (Below Average) - 2 (Above Average) |
| V - Verbal | 2 (Above Average) | 5 (Minimal/No Ability) - 2 (Above Average) |
| N - Numerical | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |

| | | |
|---|---|---|
| **Perception** | | |
| S - Spatial Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| P - Form Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| Q - Clerical Perception | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| C - Color Discrimination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| **Dexterity** | | |
| K - Motor Coordination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| F - Finger Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| M - Manual Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| E - Eye-Hand-Foot Coordination | 5 (Minimal/No Ability) | 5 (Minimal/No Ability) |

**Work Situations / Temperaments**

| | From Work History | Adjusted Ability |
|---|---|---|
| **People Situations** | | |
| D - Directing, Controlling, Planning | In Work History | |
| I - Influencing Opinions, Attitudes, Judgments | | |
| E - Expressing Personal Feelings | | Avoid |
| A - Working Alone or Apart from Others | | Avoid |
| U - Working Under Specific Instructions | | |
| P - Dealing with People | In Work History | |
| **Performance Situations** | | |

| | | |
|---|---|---|
| R - Repetitive or Short Cycle Work | | |
| V - Variety of Work Activities | | |
| S - Performing Effectively Under Stress | | |
| T - Attaining Precise Set Limits, Tolerances, and Standards | | |
| J - Making Judgments and Decisions | In Work History | |

**Worker Functions Demonstrated**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 6 - Speaking-Signaling | 7 - Handling |

**Worker Functions Excluded**

| D - Data | P - People | T - Things |
|---|---|---|
| | 0 - Mentoring | 0 - Setting Up |
| | 2 - Instructing | 1 - Precision Working |
| | 4 - Diverting | 3 - Driving-Operating |
| | | 5 - Tending |
| | | 6 - Feeding/Offbearing |

**Worker Functions Included in the Occupational Search**

| D - Data | P - People | T - Things |
|---|---|---|
| 0 - Synthesizing | 1 - Negotiating | 2 - Operating-Controlling |
| 1 - Coordinating | 3 - Supervising | 4 - Manipulating |
| 2 - Analyzing | 5 - Persuading | 7 - Handling |
| 3 - Compiling | 6 - Speaking-Signaling | |
| 4 - Computing | 7 - Serving | |
| 5 - Copying | 8 - Taking Instructions/Helping | |

| | | |
|---|---|---|
| 6 - Comparing | | |

| OGA Code | Occupational Group Arrangement (OGA) |
|---|---|
| 375 | Police Officers and Detectives, Public Service |

| SOC Code | Standard Occupational Classification (SOC) |
|---|---|
| 33-1012 | First-Line Supervisors of Police and Detectives |

| GOE Code | Guide for Occupational Exploration (GOE) |
|---|---|
| 04.01.01 | MANAGING: SAFETY AND LAW ENFORCEMENT |

| DIC Code | DOT Industry Classification Designation (DIC) |
|---|---|
| 425 | GOVERNMENT SERVICES |

**SPECIAL NOTES**

- For search purposes, unadjusted physical and environmental conditions are assumed to be unlimited and are therefore excluded in searches.
- Average Aptitudes assume a minimum middle third of the scales. No superior or above average values are reduced.
- Completion of regular High School assumes minimum of GED - RML = 333 and minimum average aptitudes.
- Lack of experience, unwillingness, or inability to supervise others excludes occupations from searches with a DPT - People Code = Supervising.

Report created on 10/20/2025

Lincoln Financial

**Sarah S., M.Ed., CRC**
Vocational Rehabilitation Consultant
Group Protection

**Appeal Vocational Memorandum**

Date: 10/20/25
Claim#: 1230082409
Claimant: David Boruchowitz
Employer: Nye County

**Vocational Assessment:**
VRC received this file for an Appeal TSA due to updated restrictions and limitations. A previous Transferable Skills Analysis (TSA) was completed on 06/12/2025. Please see those reports for complete details of past work history, education/training, and adjustments. The following occupations were identified in that TSA:

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | Strength | National Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | S | $8,831 |
| 375.167-026 | Harbor Master | S | $17,202 |
| 189.167-034 | Security Officer | S | $11,379 |
| 375.167-034 | [*] Police Captain | L | $12,324 |

**Wage Information is based on median 2024 Bureau of Labor Statistical Data*
*[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

This was based on the following:

**Education & Training:**
Education: High School Diploma, bachelor's degree, master's degree, Juris Doctorate

Certifications/Licensures:

Computer Skills: E-mail; Internet; Word Processing; Spreadsheets; Databases; Photo Software; Graphics Software; Hardware Installation/Repair; Programming Installation/Repair; Project Management; Typing WPM 120

**Work History:**

| DOT Code | Occupation Title | Years Performed | Strength Level |
|---|---|---|---|
| 375.167-034 | Police Captain* | 2006-2023 | L |

**Claimant Own Occupation*

I have been asked to utilize restrictions and limitations from a Clinical Nurse Consult on 10/14/25. They include:

"Given the available medical records with no motor/sensory deficits, no need for assistive devices with mobility, no documentation of inability to care for self/perform activities of daily living, and no side effects from medications; reasonable restrictions and limitations are sit frequently with position changes as needed for comfort, stand/walk occasionally, lift/carry/push/pull 10 pounds

occasionally, unrestricted use of upper extremities for fine/gross motor movements, unrestricted reach at desk level, occasional reach overhead/below waist, occasional kneel/bend/stoop/crouch/climb stairs, and occasional use of lower extremities for foot controls. These restrictions and limitations are reasonable from October 8, 2025 and forward."

Based on these updated capacities, the previously-identified sedentary occupations remain viable. Own occupation was eliminated based on capacities above.

| **DOT Code** | **Occupation Title** | **Strength Level** | **Monthly Wage*** |
|---|---|---|---|
| 375.137–014 | Desk Officer | Sedentary | $8,831 |
| 375.167–026 | Harbor Master | Sedentary | $17,202 |
| 189.167–034 | Security Officer | Sedentary | $11,379 |

** Wage information is based on median 2024 national data from the Bureau of Labor Statistics*

*Note: occupations listed above verified through a review of physical demands from ERI, **and/or** a review of material and substantial functions. The occupation(s) above have been included based on consideration of the Insured's training, education, experience, and reviewed for current existence in the national economy.*

Due to advancements in workplace technology and evolving employment practices, employers may provide various workstation configurations and equipment to support employee comfort and productivity across applicable occupational settings. Reaching can be reduced (desk/waist level) or eliminated (upward/above shoulder level and downward/below waist level) by moving objects an ergonomically-correct distance from the body.

I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information and resources noted only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Sarah S., M.Ed., CRC

Certified Rehabilitation Counselor

Vocational Consultant

Group Protection

Lincoln Financial Group

**WORK HISTORY**

| DOT Code | DOT Title | Strength | SVP | Years | Months | Meets SVP | Included in TSA | CWF |
|---|---|---|---|---|---|---|---|---|
| 375.167-034 | Police Captain, Precinct | L | 8 | 17 | 0 | y | y | n |

**ABILITY PROFILE**

**Strength**

| | From Work History | Adjusted Ability |
|---|---|---|
| Maximum | L (Light) | S (Sedentary) |

**Physical Demands**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Posture** | | |
| CL - Climbing | Never | Never - Occasional |
| BA - Balancing | Never | Never - No Limit |
| ST - Stoop/Bending | Never | Never - Occasional |
| KN - Kneeling | Never | Never - Occasional |
| CR - Crouching | Never | Never - Occasional |
| CW - Crawling | Never | Never - No Limit |
| **Manipulation** | | |
| RE - Reaching | Frequent | Never - No Limit |
| HA - Handling | Frequent | Never - No Limit |
| FI - Fingering | Frequent | Never - No Limit |
| **Tactile/Communication** | | |

| | | |
|---|---|---|
| FE - Feeling | Never | Never - No Limit |
| TA - Talking | Frequent | Never - No Limit |
| HE - Hearing | Frequent | Never - No Limit |
| TS - Tasting/Smelling | Never | Never - No Limit |
| **Vision** | | |
| NE - Near Acuity | Frequent | Never - No Limit |
| FA - Far Acuity | Occasional | Never - No Limit |
| DE - Depth Perception | Occasional | Never - No Limit |
| AC - Accommodation | Occasional | Never - No Limit |
| CV - Color Vision | Occasional | Never - No Limit |
| FV - Field of Vision | Occasional | Never - No Limit |

**Environmental Conditions**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Exposure to Work Settings** | | |
| WE - Exposure to Weather | Occasional | Never - No Limit |
| CO - Extreme Cold (non-weather) | Never | Never - No Limit |
| HO - Extreme Heat (non-weather) | Never | Never - No Limit |
| WT - Wet and/or Humid (non-weather) | Never | Never - No Limit |
| NO - Noise Intensity | Moderate | Very Quiet - Very Loud |
| VI - Vibration | Never | Never - No Limit |
| AT - Atmospheric Conditions (Fumes, dust, odors) | Never | Never - No Limit |
| **Hazardous Conditions** | | |
| MV - Proximity to Moving Mechanical Parts | Never | Never - No Limit |
| EL - Exposure to Electrical Shock | Never | Never - No Limit |

| | | |
|---|---|---|
| HI - Working in High Exposed Places | Never | Never - No Limit |
| RA - Exposure to Radiation | Never | Never - No Limit |
| EX - Working with Explosives | Never | Never - No Limit |
| TX - Exposure to Toxic or Caustic Chemicals | Never | Never - No Limit |
| OT - Other Environmental Conditions | Never | Never - No Limit |

**General Education Development**

| | From Work History | Adjusted Ability |
|---|---|---|
| R - Reasoning | 5 (Scientific) | 1 (Grade 1-3) - 6 (Intellectual) |
| M - Math | 3 (Grade 7-8) | 1 (Grade 1-3) - 6 (Adv. Calc.) |
| L - Language | 4 (High School) | 1 (Grade 1-3) - 6 (Graduate) |

**Specific Vocational Preparation**

| | From Work History | Adjusted Ability |
|---|---|---|
| SVP | 8 (4-10 Years (MS-Ph.D.)) | 1 (Short Demo Only) - 8 (4-10 Years (MS-Ph.D.)) |

**Aptitudes**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Cognition** | | |
| G - General Learning Ability | 2 (Above Average) | 4 (Below Average) - 2 (Above Average) |
| V - Verbal | 2 (Above Average) | 5 (Minimal/No Ability) - 2 (Above Average) |
| N - Numerical | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |

| | | |
|---|---|---|
| **Perception** | | |
| S - Spatial Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| P - Form Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| Q - Clerical Perception | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| C - Color Discrimination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| **Dexterity** | | |
| K - Motor Coordination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| F - Finger Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| M - Manual Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| E - Eye-Hand-Foot Coordination | 5 (Minimal/No Ability) | 5 (Minimal/No Ability) |

**Work Situations / Temperaments**

| | From Work History | Adjusted Ability |
|---|---|---|
| **People Situations** | | |
| D - Directing, Controlling, Planning | In Work History | |
| I - Influencing Opinions, Attitudes, Judgments | | |
| E - Expressing Personal Feelings | | Avoid |
| A - Working Alone or Apart from Others | | Avoid |
| U - Working Under Specific Instructions | | |
| P - Dealing with People | In Work History | |
| **Performance Situations** | | |

| | | |
|---|---|---|
| R - Repetitive or Short Cycle Work | | |
| V - Variety of Work Activities | | |
| S - Performing Effectively Under Stress | | |
| T - Attaining Precise Set Limits, Tolerances, and Standards | | |
| J - Making Judgments and Decisions | In Work History | |

**Worker Functions Demonstrated**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 6 - Speaking-Signaling | 7 - Handling |

**Worker Functions Excluded**

| D - Data | P - People | T - Things |
|---|---|---|
| | 0 - Mentoring | 0 - Setting Up |
| | 2 - Instructing | 1 - Precision Working |
| | 4 - Diverting | 3 - Driving-Operating |
| | | 5 - Tending |
| | | 6 - Feeding/Offbearing |

**Worker Functions Included in the Occupational Search**

| D - Data | P - People | T - Things |
|---|---|---|
| 0 - Synthesizing | 1 - Negotiating | 2 - Operating-Controlling |
| 1 - Coordinating | 3 - Supervising | 4 - Manipulating |
| 2 - Analyzing | 5 - Persuading | 7 - Handling |
| 3 - Compiling | 6 - Speaking-Signaling | |
| 4 - Computing | 7 - Serving | |
| 5 - Copying | 8 - Taking Instructions/Helping | |

| | | |
|---|---|---|
| 6 - Comparing | | |

| OGA Code | Occupational Group Arrangement (OGA) |
|---|---|
| 375 | Police Officers and Detectives, Public Service |

| SOC Code | Standard Occupational Classification (SOC) |
|---|---|
| 33-1012 | First-Line Supervisors of Police and Detectives |

| GOE Code | Guide for Occupational Exploration (GOE) |
|---|---|
| 04.01.01 | MANAGING: SAFETY AND LAW ENFORCEMENT |

| DIC Code | DOT Industry Classification Designation (DIC) |
|---|---|
| 425 | GOVERNMENT SERVICES |

**SPECIAL NOTES**

- For search purposes, unadjusted physical and environmental conditions are assumed to be unlimited and are therefore excluded in searches.
- Average Aptitudes assume a minimum middle third of the scales. No superior or above average values are reduced.
- Completion of regular High School assumes minimum of GED - RML = 333 and minimum average aptitudes.
- Lack of experience, unwillingness, or inability to supervise others excludes occupations from searches with a DPT - People Code = Supervising.

Report created on 10/20/2025

October 2nd 2025

To whom it may concern,

I am writing on behalf of my patient, David Boruchowitz, who has been under my medical care for years and to provide a comprehensive reaffirmation of my medical opinion regarding Mr. David Boruchowitz's inability to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. This letter is intended to clarify and reinforce the clinical findings already documented in his record, and to directly address the conclusions presented by Lincoln Financials' independent peer reviewer.

Mr. Boruchowitz sustained a serious work-related injury on April 9, 2022, while serving as a law enforcement officer. During a search operation, the off-road vehicle he was operating lost steering and rolled three times, ultimately landing upside down. He was the restrained driver and sustained trauma to his head, shoulder, rib cage, and lumbar spine. He was hospitalized and underwent extensive imaging, including CT scans of the brain, cervical spine, chest, and abdomen. While no acute fractures were found, he was diagnosed with thoracolumbar musculoligamentous injury and persistent low back pain.

Over the subsequent three years, Mr. Boruchowitz underwent a wide range of conservative treatments including physical therapy, chiropractic care, epidural steroid injections, facet joint injections, and radiofrequency ablation. Despite these interventions, his symptoms have remained chronic, debilitating, and incompatible with sustained occupational function.

Multiple imaging studies have confirmed the presence of significant lumbar pathology:

- MRI Lumbar Spine (12/13/2022): Multilevel degenerative changes, disc bulges, annular fissure, facet arthropathy, and suspected nerve root abutment at L5-S1.
- MRI Lumbar Spine (04/18/2025): Mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl's nodes, and bilateral anterior neural foraminal narrowing at L4-L5 with greater contact on the right L4 nerve root. A 5 mm atypical hemangioma was also noted in the right L4 vertebra.

These findings are consistent with chronic degenerative disc disease, facet syndrome, and nerve root irritation. They correlate with Mr. Boruchowitz's persistent axial pain and functional limitations.

The Functional Capacity Evaluation (FCE) conducted on March 1, 2024, concluded:

"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time. Even at the sedentary level, he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."

This conclusion was based on valid and consistent testing. Mr. Boruchowitz was placed in the sedentary physical demand category, but even that classification failed to accommodate his need

for frequent positional changes, symptom-triggered rest, and unpredictable pain episodes as noted by the completing professional.

Mr. Boruchowitz' condition has not improved, and in fact continues to worsen with time which would be clinically consistent with the condition.

Additionally, the Abilities Form completed by me on March 26, 2025, states:

"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."

These limitations are not theoretical—they are observed, documented, and consistent across multiple visits with several providers. Mr. Boruchowitz has repeatedly reported pain levels ranging from 7–10/10, especially during activities of daily living, travel, and attempts at physical exertion. His symptoms interfere with sleep, concentration, and basic mobility.

The peer review dated June 12, 2025 and the peer review addendum dated July 14, 2025, authored by Dr. Charisma Pinna, that Mr. Boruchowitz's condition is "chronic, degenerative, and stable." While I agree that the condition is chronic and degenerative, I strongly disagree with the implication that it is functionally compatible with an occupation.

Dr. Pinna's review fails to address the functional implications of the imaging findings and physical situation of Mr. Boruchowitz. It does not explain how a person with bilateral foraminal narrowing, facet arthropathy, and persistent axial pain could sustain any occupation requiring consistent attendance, postural endurance, or cognitive focus. The review also omits any discussion of the FCE results, the Abilities Form, or the repeated clinical documentation of symptom-triggered rest and positional intolerance.

Mr. Boruchowitz appropriately pointed out in his appeals that the pertinent facts of his medical record were being ignored, and that the response neglected to consider how needing to adjust from sitting, standing and laying down regularly could possibly be tolerated in occupation.

Dr. Pinna's conclusions are based solely on chart review and lack the clinical nuance and firsthand observation necessary to assess functional capacity. Her assertion that "motor strength, sensation, and reflexes were repeatedly intact" is irrelevant to the core issue: axial pain and postural intolerance, not neurological deficit, is the primary barrier to employment. Dr. Pinna's conclusions discount my notations as well as the notations in the Functional Capacity Evaluation, which clearly note that sedentary employment would still not be a match for mr. Boruchowitz.

To suggest that Mr. Boruchowitz can seek a any occupation without explaining how he could manage prolonged sitting or standing, or concentration while experiencing severe pain is not only medically unsound—it is dismissive of the documented reality of his condition and daily life.

Lincoln Financial's policy defines total disability as the inability to perform the main duties of any occupation for which one is reasonably qualified. Mr. Boruchowitz's documented limitations—frequent positional changes, limited endurance, and unpredictable pain—render him unable to meet the requirements of any occupation. This includes sedentary roles, which typically require prolonged sitting, consistent attendance, and uninterrupted focus.

No evidence has been presented to refute the FCE findings or demonstrate that Mr. Boruchowitz could perform any job without exacerbating his symptoms. The Transferable Skills Analysis suggesting roles such as Desk Officer or Harbor Master is speculative and ignores the real-world demands of those positions.

In summary, Mr. Boruchowitz suffers from a chronic, degenerative lumbar condition that has been extensively documented through imaging, clinical evaluation, and functional testing. His symptoms are persistent, disabling, and incompatible with the demands of any occupation. He requires regular and frequent rotation between standing, sitting and laying down sometimes as frequently as twenty minutes. Mr. Boruchowitz' condition has been persistent for years and is getting worse not better. Mr. Boruchowitz has been consistently compliant with treatment recommendations and does what is asked of him by his providers. The need to adjust positions to include laying down regularly is not diminishing and is in fact only getting worse and is not compatible with any occupation. The peer review conducted by Lincoln Financial fails to address the functional realities of his condition and does not provide a credible basis for denying disability benefits.

I strongly reaffirm that Mr. Boruchowitz is not medically cleared for any occupation and remains disabled for the reasons noted in his chart by many providers. Any suggestion to the contrary is without merit and unsupported by the medical record.

PA-C

Josh Weltha
Spring Mountain Medical
1151 S. Hwy 160
Pahrump, Nevada 89048
775-727-8900

**David Boruchowitz**

dboruchowitz@fltg.net

**October 2, 2025**

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103

**VIA FAX**: 402-361-1460
**VIA EMAIL**: LFGAppeals@lfg.com

**Subject**: Appeal of Disability Insurance Denial
**Policy #**: 00001017736300000
**Claim #**: 1230082409

Dear Appeals Officer,

I am writing in response to your letter dated September 5, 2025, requesting updated medical records. As of this date, there are no new records that materially alter the clinical or functional findings previously submitted. The most recent documentation from Dr. Peter Su (dated January 18, 2024) and Joshua Weltha, PA-C (dated March 26, 2025) remains accurate and reflective of my current condition.

Dr. Su was my treating physician under the workers' compensation claim, which has since been closed. I no longer see Dr. Su. My primary care provider, Joshua Weltha, PA-C, continues to oversee all aspects of my physical health. I see him every 3 to 6 months depending on clinical need. My last visit prior to today was on March 26, 2025. During today's visit, we reviewed Lincoln Financial's documentation and appeal correspondence. I have attached a letter from Mr. Weltha reaffirming his clinical opinion that I am not medically cleared to pursue any occupation.

I have recently added new specialists to my care team for further evaluation. On September 30, 2025, I was seen by Dr. Gregory Logan Douds of Las Vegas Center for Spine and Brain Surgery. He reviewed my file and referred me to Dr. Vogul of Comprehensive and Interventional Pain Management. I am currently awaiting an appointment date. No new records are available from these providers at this time.

As stated in my prior appeals, I respectfully assert that the denial of benefits does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my file. The peer review and denial letters repeatedly reference my treating providers but omit critical portions of their assessments. Most notably:

- **Functional Capacity Evaluation (March 1, 2024):**
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*

- **Abilities Form by Joshua Weltha, PA-C (March 26, 2025):**
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any occupation I am aware of, and certainly not with those suggested in the Transferable Skills Analysis. Roles such as Desk Officer or Harbor Master:

- Do not accommodate the need for frequent positional changes or symptom-triggered rest
- Ignore the impact of occasional lifting, driving, or postural strain, which exacerbates my symptoms and makes workdays unpredictable

Per your policy definition, total disability is the inability to perform the main duties of any occupation for which one is reasonably qualified. Given my documented need for frequent positional changes, limited endurance, and symptom unpredictability, I do not meet the functional requirements of any occupation.

I respectfully request that this appeal be reviewed in light of the full medical record, including the original FCE, treating provider statements, and the real-world implications of my documented limitations. The denial appears to rely on incomplete or selectively interpreted portions of the file.

My next follow-up with Joshua Weltha is scheduled for October 13, 2025. If additional documentation is required from him to assist in your evaluation, please advise.

Thank you for your time and consideration. I remain available for any further clarification or documentation you may require.

Sincerely,



**David Boruchowitz**

dboruchowitz@fltg.net

# FAX COVER SHEET

**To:** LFG Appeals

**From:** David Boruchowitz

**Company:** LFG

**Date:** October 02, 2025 10:14

**Fax Number:** 14023611460

**Pages (Including cover):** 6

**Re:** Claim #1230082409

---

**Notes:**

Please confirm receipt via e-mail dboruchowitz@fltg.net

Also sent via e-mail.

**David Boruchowitz**

dboruchowitz@fltg.net

**October 2, 2025**

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103

**VIA FAX**: 402-361-1460
**VIA EMAIL**: LFGAppeals@lfg.com

**Subject**: Appeal of Disability Insurance Denial
**Policy #**: 00001017736300000
**Claim #**: 1230082409

Dear Appeals Officer,

I am writing in response to your letter dated September 5, 2025, requesting updated medical records. As of this date, there are no new records that materially alter the clinical or functional findings previously submitted. The most recent documentation from Dr. Peter Su (dated January 18, 2024) and Joshua Weltha, PA-C (dated March 26, 2025) remains accurate and reflective of my current condition.

Dr. Su was my treating physician under the workers' compensation claim, which has since been closed. I no longer see Dr. Su. My primary care provider, Joshua Weltha, PA-C, continues to oversee all aspects of my physical health. I see him every 3 to 6 months depending on clinical need. My last visit prior to today was on March 26, 2025. During today's visit, we reviewed Lincoln Financial's documentation and appeal correspondence. I have attached a letter from Mr. Weltha reaffirming his clinical opinion that I am not medically cleared to pursue any occupation.

I have recently added new specialists to my care team for further evaluation. On September 30, 2025, I was seen by Dr. Gregory Logan Douds of Las Vegas Center for Spine and Brain Surgery. He reviewed my file and referred me to Dr. Vogul of Comprehensive and Interventional Pain Management. I am currently awaiting an appointment date. No new records are available from these providers at this time.

As stated in my prior appeals, I respectfully assert that the denial of benefits does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my file. The peer review and denial letters repeatedly reference my treating providers but omit critical portions of their assessments. Most notably:

- **Functional Capacity Evaluation (March 1, 2024):**
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*

- **Abilities Form by Joshua Weltha, PA-C (March 26, 2025):**
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any occupation I am aware of, and certainly not with those suggested in the Transferable Skills Analysis. Roles such as Desk Officer or Harbor Master:

- Do not accommodate the need for frequent positional changes or symptom-triggered rest
- Ignore the impact of occasional lifting, driving, or postural strain, which exacerbates my symptoms and makes workdays unpredictable

Per your policy definition, total disability is the inability to perform the main duties of any occupation for which one is reasonably qualified. Given my documented need for frequent positional changes, limited endurance, and symptom unpredictability, I do not meet the functional requirements of any occupation.

I respectfully request that this appeal be reviewed in light of the full medical record, including the original FCE, treating provider statements, and the real-world implications of my documented limitations. The denial appears to rely on incomplete or selectively interpreted portions of the file.

My next follow-up with Joshua Weltha is scheduled for October 13, 2025. If additional documentation is required from him to assist in your evaluation, please advise.

Thank you for your time and consideration. I remain available for any further clarification or documentation you may require.

Sincerely,

**David Boruchowitz**

dboruchowitz@fltg.net

October 2nd 2025

To whom it may concern,

I am writing on behalf of my patient, David Boruchowitz, who has been under my medical care for years and to provide a comprehensive reaffirmation of my medical opinion regarding Mr. David Boruchowitz's inability to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. This letter is intended to clarify and reinforce the clinical findings already documented in his record, and to directly address the conclusions presented by Lincoln Financials' independent peer reviewer.

Mr. Boruchowitz sustained a serious work-related injury on April 9, 2022, while serving as a law enforcement officer. During a search operation, the off-road vehicle he was operating lost steering and rolled three times, ultimately landing upside down. He was the restrained driver and sustained trauma to his head, shoulder, rib cage, and lumbar spine. He was hospitalized and underwent extensive imaging, including CT scans of the brain, cervical spine, chest, and abdomen. While no acute fractures were found, he was diagnosed with thoracolumbar musculoligamentous injury and persistent low back pain.

Over the subsequent three years, Mr. Boruchowitz underwent a wide range of conservative treatments including physical therapy, chiropractic care, epidural steroid injections, facet joint injections, and radiofrequency ablation. Despite these interventions, his symptoms have remained chronic, debilitating, and incompatible with sustained occupational function.

Multiple imaging studies have confirmed the presence of significant lumbar pathology:

- MRI Lumbar Spine (12/13/2022): Multilevel degenerative changes, disc bulges, annular fissure, facet arthropathy, and suspected nerve root abutment at L5-S1.
- MRI Lumbar Spine (04/18/2025): Mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl's nodes, and bilateral anterior neural foraminal narrowing at L4-L5 with greater contact on the right L4 nerve root. A 5 mm atypical hemangioma was also noted in the right L4 vertebra.

These findings are consistent with chronic degenerative disc disease, facet syndrome, and nerve root irritation. They correlate with Mr. Boruchowitz's persistent axial pain and functional limitations.

The Functional Capacity Evaluation (FCE) conducted on March 1, 2024, concluded:

"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time. Even at the sedentary level, he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."

This conclusion was based on valid and consistent testing. Mr. Boruchowitz was placed in the sedentary physical demand category, but even that classification failed to accommodate his need

for frequent positional changes, symptom-triggered rest, and unpredictable pain episodes as noted by the completing professional.

Mr. Boruchowitz' condition has not improved, and in fact continues to worsen with time which would be clinically consistent with the condition.

Additionally, the Abilities Form completed by me on March 26, 2025, states:

"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."

These limitations are not theoretical—they are observed, documented, and consistent across multiple visits with several providers. Mr. Boruchowitz has repeatedly reported pain levels ranging from 7–10/10, especially during activities of daily living, travel, and attempts at physical exertion. His symptoms interfere with sleep, concentration, and basic mobility.

The peer review dated June 12, 2025 and the peer review addendum dated July 14, 2025, authored by Dr. Charisma Pinna, that Mr. Boruchowitz's condition is "chronic, degenerative, and stable." While I agree that the condition is chronic and degenerative, I strongly disagree with the implication that it is functionally compatible with an occupation.

Dr. Pinna's review fails to address the functional implications of the imaging findings and physical situation of Mr. Boruchowitz. It does not explain how a person with bilateral foraminal narrowing, facet arthropathy, and persistent axial pain could sustain any occupation requiring consistent attendance, postural endurance, or cognitive focus. The review also omits any discussion of the FCE results, the Abilities Form, or the repeated clinical documentation of symptom-triggered rest and positional intolerance.

Mr. Boruchowitz appropriately pointed out in his appeals that the pertinent facts of his medical record were being ignored, and that the response neglected to consider how needing to adjust from sitting, standing and laying down regularly could possibly be tolerated in occupation.

Dr. Pinna's conclusions are based solely on chart review and lack the clinical nuance and firsthand observation necessary to assess functional capacity. Her assertion that "motor strength, sensation, and reflexes were repeatedly intact" is irrelevant to the core issue: axial pain and postural intolerance, not neurological deficit, is the primary barrier to employment. Dr. Pinna's conclusions discount my notations as well as the notations in the Functional Capacity Evaluation, which clearly note that sedentary employment would still not be a match for mr. Boruchowitz.

To suggest that Mr. Boruchowitz can seek a any occupation without explaining how he could manage prolonged sitting or standing, or concentration while experiencing severe pain is not only medically unsound—it is dismissive of the documented reality of his condition and daily life.

Lincoln Financial's policy defines total disability as the inability to perform the main duties of any occupation for which one is reasonably qualified. Mr. Boruchowitz's documented limitations—frequent positional changes, limited endurance, and unpredictable pain—render him unable to meet the requirements of any occupation. This includes sedentary roles, which typically require prolonged sitting, consistent attendance, and uninterrupted focus.

No evidence has been presented to refute the FCE findings or demonstrate that Mr. Boruchowitz could perform any job without exacerbating his symptoms. The Transferable Skills Analysis suggesting roles such as Desk Officer or Harbor Master is speculative and ignores the real-world demands of those positions.

In summary, Mr. Boruchowitz suffers from a chronic, degenerative lumbar condition that has been extensively documented through imaging, clinical evaluation, and functional testing. His symptoms are persistent, disabling, and incompatible with the demands of any occupation. He requires regular and frequent rotation between standing, sitting and laying down sometimes as frequently as twenty minutes. Mr. Boruchowitz' condition has been persistent for years and is getting worse not better. Mr. Boruchowitz has been consistently compliant with treatment recommendations and does what is asked of him by his providers. The need to adjust positions to include laying down regularly is not diminishing and is in fact only getting worse and is not compatible with any occupation. The peer review conducted by Lincoln Financial fails to address the functional realities of his condition and does not provide a credible basis for denying disability benefits.

I strongly reaffirm that Mr. Boruchowitz is not medically cleared for any occupation and remains disabled for the reasons noted in his chart by many providers. Any suggestion to the contrary is without merit and unsupported by the medical record.

PA-C

Josh Weltha
Spring Mountain Medical
1151 S. Hwy 160
Pahrump, Nevada 89048
775-727-8900

**David Boruchowitz**

dboruchowitz@fltg.net

**October 2, 2025**

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103

**VIA FAX**: 402-361-1460
**VIA EMAIL**: LFGAppeals@lfg.com

**Subject**: Appeal of Disability Insurance Denial
**Policy #**: 00001017736300000
**Claim #**: 1230082409

Dear Appeals Officer,

I am writing in response to your letter dated September 5, 2025, requesting updated medical records. As of this date, there are no new records that materially alter the clinical or functional findings previously submitted. The most recent documentation from Dr. Peter Su (dated January 18, 2024) and Joshua Weltha, PA-C (dated March 26, 2025) remains accurate and reflective of my current condition.

Dr. Su was my treating physician under the workers' compensation claim, which has since been closed. I no longer see Dr. Su. My primary care provider, Joshua Weltha, PA-C, continues to oversee all aspects of my physical health. I see him every 3 to 6 months depending on clinical need. My last visit prior to today was on March 26, 2025. During today's visit, we reviewed Lincoln Financial's documentation and appeal correspondence. I have attached a letter from Mr. Weltha reaffirming his clinical opinion that I am not medically cleared to pursue any occupation.

I have recently added new specialists to my care team for further evaluation. On September 30, 2025, I was seen by Dr. Gregory Logan Douds of Las Vegas Center for Spine and Brain Surgery. He reviewed my file and referred me to Dr. Vogul of Comprehensive and Interventional Pain Management. I am currently awaiting an appointment date. No new records are available from these providers at this time.

As stated in my prior appeals, I respectfully assert that the denial of benefits does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my file. The peer review and denial letters repeatedly reference my treating providers but omit critical portions of their assessments. Most notably:

- **Functional Capacity Evaluation (March 1, 2024)**:
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time… even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*

- **Abilities Form by Joshua Weltha, PA-C (March 26, 2025)**:
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any occupation I am aware of, and certainly not with those suggested in the Transferable Skills Analysis. Roles such as Desk Officer or Harbor Master:

- Do not accommodate the need for frequent positional changes or symptom-triggered rest
- Ignore the impact of occasional lifting, driving, or postural strain, which exacerbates my symptoms and makes workdays unpredictable

Per your policy definition, total disability is the inability to perform the main duties of any occupation for which one is reasonably qualified. Given my documented need for frequent positional changes, limited endurance, and symptom unpredictability, I do not meet the functional requirements of any occupation.

I respectfully request that this appeal be reviewed in light of the full medical record, including the original FCE, treating provider statements, and the real-world implications of my documented limitations. The denial appears to rely on incomplete or selectively interpreted portions of the file.

My next follow-up with Joshua Weltha is scheduled for October 13, 2025. If additional documentation is required from him to assist in your evaluation, please advise.

Thank you for your time and consideration. I remain available for any further clarification or documentation you may require.

Sincerely,

**David Boruchowitz**

dboruchowitz@fltg.net

October 2nd 2025

To whom it may concern,

I am writing on behalf of my patient, David Boruchowitz, who has been under my medical care for years and to provide a comprehensive reaffirmation of my medical opinion regarding Mr. David Boruchowitz's inability to engage in gainful full-time employment in any occupation due to persistent, functionally limiting lumbar spine pathology and chronic pain. This letter is intended to clarify and reinforce the clinical findings already documented in his record, and to directly address the conclusions presented by Lincoln Financials' independent peer reviewer.

Mr. Boruchowitz sustained a serious work-related injury on April 9, 2022, while serving as a law enforcement officer. During a search operation, the off-road vehicle he was operating lost steering and rolled three times, ultimately landing upside down. He was the restrained driver and sustained trauma to his head, shoulder, rib cage, and lumbar spine. He was hospitalized and underwent extensive imaging, including CT scans of the brain, cervical spine, chest, and abdomen. While no acute fractures were found, he was diagnosed with thoracolumbar musculoligamentous injury and persistent low back pain.

Over the subsequent three years, Mr. Boruchowitz underwent a wide range of conservative treatments including physical therapy, chiropractic care, epidural steroid injections, facet joint injections, and radiofrequency ablation. Despite these interventions, his symptoms have remained chronic, debilitating, and incompatible with sustained occupational function.

Multiple imaging studies have confirmed the presence of significant lumbar pathology:

- MRI Lumbar Spine (12/13/2022): Multilevel degenerative changes, disc bulges, annular fissure, facet arthropathy, and suspected nerve root abutment at L5-S1.
- MRI Lumbar Spine (04/18/2025): Mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl's nodes, and bilateral anterior neural foraminal narrowing at L4-L5 with greater contact on the right L4 nerve root. A 5 mm atypical hemangioma was also noted in the right L4 vertebra.

These findings are consistent with chronic degenerative disc disease, facet syndrome, and nerve root irritation. They correlate with Mr. Boruchowitz's persistent axial pain and functional limitations.

The Functional Capacity Evaluation (FCE) conducted on March 1, 2024, concluded:

"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time. Even at the sedentary level, he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."

This conclusion was based on valid and consistent testing. Mr. Boruchowitz was placed in the sedentary physical demand category, but even that classification failed to accommodate his need

for frequent positional changes, symptom-triggered rest, and unpredictable pain episodes as noted by the completing professional.

Mr. Boruchowitz' condition has not improved, and in fact continues to worsen with time which would be clinically consistent with the condition.

Additionally, the Abilities Form completed by me on March 26, 2025, states:

"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."

These limitations are not theoretical—they are observed, documented, and consistent across multiple visits with several providers. Mr. Boruchowitz has repeatedly reported pain levels ranging from 7–10/10, especially during activities of daily living, travel, and attempts at physical exertion. His symptoms interfere with sleep, concentration, and basic mobility.

The peer review dated June 12, 2025 and the peer review addendum dated July 14, 2025, authored by Dr. Charisma Pinna, that Mr. Boruchowitz's condition is "chronic, degenerative, and stable." While I agree that the condition is chronic and degenerative, I strongly disagree with the implication that it is functionally compatible with an occupation.

Dr. Pinna's review fails to address the functional implications of the imaging findings and physical situation of Mr. Boruchowitz. It does not explain how a person with bilateral foraminal narrowing, facet arthropathy, and persistent axial pain could sustain any occupation requiring consistent attendance, postural endurance, or cognitive focus. The review also omits any discussion of the FCE results, the Abilities Form, or the repeated clinical documentation of symptom-triggered rest and positional intolerance.

Mr. Boruchowitz appropriately pointed out in his appeals that the pertinent facts of his medical record were being ignored, and that the response neglected to consider how needing to adjust from sitting, standing and laying down regularly could possibly be tolerated in occupation.

Dr. Pinna's conclusions are based solely on chart review and lack the clinical nuance and firsthand observation necessary to assess functional capacity. Her assertion that "motor strength, sensation, and reflexes were repeatedly intact" is irrelevant to the core issue: axial pain and postural intolerance, not neurological deficit, is the primary barrier to employment. Dr. Pinna's conclusions discount my notations as well as the notations in the Functional Capacity Evaluation, which clearly note that sedentary employment would still not be a match for mr. Boruchowitz.

To suggest that Mr. Boruchowitz can seek a any occupation without explaining how he could manage prolonged sitting or standing, or concentration while experiencing severe pain is not only medically unsound—it is dismissive of the documented reality of his condition and daily life.

Lincoln Financial's policy defines total disability as the inability to perform the main duties of any occupation for which one is reasonably qualified. Mr. Boruchowitz's documented limitations—frequent positional changes, limited endurance, and unpredictable pain—render him unable to meet the requirements of any occupation. This includes sedentary roles, which typically require prolonged sitting, consistent attendance, and uninterrupted focus.

No evidence has been presented to refute the FCE findings or demonstrate that Mr. Boruchowitz could perform any job without exacerbating his symptoms. The Transferable Skills Analysis suggesting roles such as Desk Officer or Harbor Master is speculative and ignores the real-world demands of those positions.

In summary, Mr. Boruchowitz suffers from a chronic, degenerative lumbar condition that has been extensively documented through imaging, clinical evaluation, and functional testing. His symptoms are persistent, disabling, and incompatible with the demands of any occupation. He requires regular and frequent rotation between standing, sitting and laying down sometimes as frequently as twenty minutes. Mr. Boruchowitz' condition has been persistent for years and is getting worse not better. Mr. Boruchowitz has been consistently compliant with treatment recommendations and does what is asked of him by his providers. The need to adjust positions to include laying down regularly is not diminishing and is in fact only getting worse and is not compatible with any occupation. The peer review conducted by Lincoln Financial fails to address the functional realities of his condition and does not provide a credible basis for denying disability benefits.

I strongly reaffirm that Mr. Boruchowitz is not medically cleared for any occupation and remains disabled for the reasons noted in his chart by many providers. Any suggestion to the contrary is without merit and unsupported by the medical record.

PA-C

Josh Weltha
Spring Mountain Medical
1151 S. Hwy 160
Pahrump, Nevada 89048
775-727-8900

Date: Fri Sep 05 10:06:03 CDT 2025
From: Kelly Tedford <Kelly.Tedford@lfg.com>
To: dboruchowitz@fltg.net
Message-ID: <1008331160.347.1757084763339.JavaMail.webadmin@ne1plwas106>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-confirmation from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Tedford**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x66246
Fax: 402-361-1460
Email: Kelly.Tedford@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 5, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This is to acknowledge receipt of your appeal for Long Term Disability benefits. We received your letter on 08/26/2025.

It appears that the most recent medical records (office treatment notes and/or test results) in your file from Dr. Su are dated **01/18/2024** and from Joshua Weltha PA-C **03/26/2025**. No new or additional medical evidence was submitted with the letter of appeal.

In an effort to provide your claim with a full and fair review, it would be in your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your appeal. For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated 08/07/2025.

It is important that we have all available medical records so that we have a clear picture of your current condition.

As a reminder, we are looking at the time frame of **10/08/2025** forward for Total Disability benefits.

Please submit any and all additional medical evidence that you believe would support your appeal. Please have the medical records submitted to our office no later than 10/05/2025. We will allow you additional time to supplement your file. Please understand the appeal review will not continue until we have received your additional documents or until such time as you communicate with Lincoln that your appeal is complete.

If we do not receive the additional information by 10/05/2025, we will review your appeal and render a decision based upon the information currently available in your file.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of your appeal. For your convenience, all documents may be sent via facsimile to 402-361-1460.

Please note that we are not making a final determination on your disability claim at this time as we want to provide you with every opportunity to submit a complete appeal.

In addition, we are approaching our initial deadline for deciding your appeal under the policy issued to your employer and have not yet reached a determination because (insert reason). An extension of time to process your appeal is required. Due to these special circumstances, we are exercising our right to take a 45-day extension of time to decide your appeal.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Kelly T
800-423-2765 x66246
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA C, reaffirmed those findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00300112LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00030112 15PD7T11 00000354

## Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

## Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

**David Boruchowitz**

dboruchowitz@fltg.net

08/26/2025

**Claims Shared Services**
Claims Shared Services
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
***VIA FAX 402-361-1460***

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally request a secondary review of the denial of my disability benefits, as referenced in your letter dated August 7, 2025. I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my claim file.

1. Misrepresentation of Medical Findings

The peer review and denial letters repeatedly cite my treating providers but omit critical portions of their assessments. For example:

- The **Functional Capacity Evaluation** dated March 1, 2024, states:
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*
- The **Abilities Form** completed by **Joshua Weltha, PA-C** on March 26, 2025, confirms:
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any full-time employment I am aware of, and no evidence has been presented to refute these findings or demonstrate error on the part of my treating providers.

2. Lack of Functional Rebuttal

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,

David Boruchowitz

# FAX COVER SHEET

**To:** Claims Shared Services

**From:** David Boruchowitz

**Company:** Lincoln National Life Insurance Company

**Date:** August 26, 2025 08:09

**Fax Number:** 14023611460

**Pages (Including cover):** 83

**Re:** Claim #1230082409 Policy #00001017736300000

**Notes:**

Please see attached appeal, as well as supporting record. Any questions please let me know.

David Boruchowitz
dboruchowitz@fltg.net

Lincoln Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000000
00112 TFPD7TD1

DAVID E BORUCHOWITZ

00000112 LFPD7TH1 00000351

8

**David Boruchowitz**

dboruchowitz@fltg.net

08/26/2025

**Claims Shared Services**
Claims Shared Services
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
***VIA FAX 402-361-1460***

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally request a secondary review of the denial of my disability benefits, as referenced in your letter dated August 7, 2025. I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my claim file.

1. Misrepresentation of Medical Findings

The peer review and denial letters repeatedly cite my treating providers but omit critical portions of their assessments. For example:

- The **Functional Capacity Evaluation** dated March 1, 2024, states:
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*
- The **Abilities Form** completed by **Joshua Weltha, PA-C** on March 26, 2025, confirms:
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any full-time employment I am aware of, and no evidence has been presented to refute these findings or demonstrate error on the part of my treating providers.

2. Lack of Functional Rebuttal

The reviewing physician did not consult with my providers or offer any medical rationale for disagreeing with their conclusions. Instead, the review repeats generic assertions without addressing the specific limitations documented in my file.

3. Vocational Mismatch

The Transferable Skills Analysis suggests sedentary roles such as Desk Officer or Harbor Master However, these roles:

- Do not accommodate the need for frequent positional changes or symptom-triggered rest.
- Were evaluated based on national benchmarks, not actual job descriptions or workplace feasibility.
- Ignore the fact that even occasional lifting, driving, or postural strain exacerbates my symptoms and makes workdays unpredictable.

4. Policy Definition of Disability

Per your own policy language, total disability is defined as the inability to perform the main duties of any occupation for which one is reasonably qualified. Given the documented need for frequent positional changes, limited endurance, and symptom unpredictability, I do not meet the functional requirements of any full-time occupation.

I respectfully request that this appeal be reviewed in light of the full medical record, including the original FCE, treating provider statements, and the real-world implications of my documented limitations. I am not medically cleared for employment, and the denial appears to rely on incomplete or selectively interpreted evidence.

Thank you for your time and consideration. Please contact me if further clarification or documentation is needed.

Sincerely,
**David Boruchowitz**

775 543 7771
dboruchowitz@fltg.net



**David Boruchowitz**

dboruchowitz@fltg.net

05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5 10 lbs. at chest level using both upper extremities. You were unable to reach above 80–85 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "….this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

> Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:
>
> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-
>
> REF #29387056
>
> 33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 180.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says **72%** reporting "half the time standing", **15%** responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,



David Boruchowitz

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Woltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christenson, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA C, reaffirmed those findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00300112LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00030112 15PD7TC1 00000354

## Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

## Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

**David Boruchowitz**

dboruchowitz@fltg.net

08/26/2025

**Claims Shared Services**
Claims Shared Services
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
***VIA FAX 402-361-1460***

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally request a secondary review of the denial of my disability benefits, as referenced in your letter dated August 7, 2025. I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my claim file.

1. Misrepresentation of Medical Findings

The peer review and denial letters repeatedly cite my treating providers but omit critical portions of their assessments. For example:

- The **Functional Capacity Evaluation** dated March 1, 2024, states:
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*
- The **Abilities Form** completed by **Joshua Weltha, PA-C** on March 26, 2025, confirms:
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any full-time employment I am aware of, and no evidence has been presented to refute these findings or demonstrate error on the part of my treating providers.

2. Lack of Functional Rebuttal

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000112 LFPD7TD1
000000

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000351

S

# FAX COVER SHEET

**To:** Claims Shared Services

**From:** David Boruchowitz

**Company:** Lincoln National Life Insurance Company

**Date:** August 26, 2025 08:09

**Fax Number:** 14023611460

**Pages (Including cover):** 83

**Re:** Claim #1230082409 Policy #00001017736300000

**Notes:**

Please see attached appeal, as well as supporting record. Any questions please let me know.

David Boruchowitz
dboruchowitz@fltg.net

**David Boruchowitz**

dboruchowitz@fltg.net

08/26/2025

**Claims Shared Services**
Claims Shared Services
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
***VIA FAX 402-361-1460***

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally request a secondary review of the denial of my disability benefits, as referenced in your letter dated August 7, 2025. I respectfully assert that the decision does not reflect the full scope of medical evidence, functional limitations, and vocational realities documented in my claim file.

1. Misrepresentation of Medical Findings

The peer review and denial letters repeatedly cite my treating providers but omit critical portions of their assessments. For example:

- The **Functional Capacity Evaluation** dated March 1, 2024, states:
  *"Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time... even at the SEDENTARY level he would struggle to complete some prolonged sitting tasks as that exacerbates his symptoms after approximately 20–25 minutes."*
- The **Abilities Form** completed by **Joshua Weltha, PA-C** on March 26, 2025, confirms:
  *"Patient needs to adjust between sitting, standing, and laying down to manage pain and discomfort. Patient also needs to discontinue activities when they cause pain."*

These limitations are incompatible with any full-time employment I am aware of, and no evidence has been presented to refute these findings or demonstrate error on the part of my treating providers.

2. Lack of Functional Rebuttal

The reviewing physician did not consult with my providers or offer any medical rationale for disagreeing with their conclusions. Instead, the review repeats generic assertions without addressing the specific limitations documented in my file.

3. Vocational Mismatch

The Transferable Skills Analysis suggests sedentary roles such as Desk Officer or Harbor Master. However, these roles:

- Do not accommodate the need for frequent positional changes or symptom-triggered rest.
- Were evaluated based on national benchmarks, not actual job descriptions or workplace feasibility.
- Ignore the fact that even occasional lifting, driving, or postural strain exacerbates my symptoms and makes workdays unpredictable.

4. Policy Definition of Disability

Per your own policy language, total disability is defined as the inability to perform the main duties of any occupation for which one is reasonably qualified. Given the documented need for frequent positional changes, limited endurance, and symptom unpredictability, I do not meet the functional requirements of any full-time occupation.

I respectfully request that this appeal be reviewed in light of the full medical record, including the original FCE, treating provider statements, and the real-world implications of my documented limitations. I am not medically cleared for employment, and the denial appears to rely on incomplete or selectively interpreted evidence.

Thank you for your time and consideration. Please contact me if further clarification or documentation is needed.

Sincerely,
**David Boruchowitz**

dboruchowitz@fltg.net

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

> On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

> The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

REF #29387056

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,

David Boruchowitz

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000000 000112 LFPD7TD1

DAVID E BORUCHOWITZ

S 00000112 LFPD7TD1 00000351

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

Date: Thu Aug 07 10:20:22 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: rgott@co.nye.nv.us
Message-ID: <1418164690.8.1754580022703@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 7, 2025

NYE COUNTY
ATTN Ryanne Gott
2101 E. Calvada Blvd.
Suite 150
Pahrump, NV 89048

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Ryanne Gott:

This letter is in regard to David Boruchowitz's request for an appeal of the denied Long Term Disability claim.

Upon review of the medical evidence, it has been determined that we are unable to overturn the original denial of their claim.

We cannot provide you with a copy of the detailed letter sent to the employee due to the confidential information that is contained in the letter regarding their medical records.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Thu Aug 07 10:15:23 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: dboruchowitz@ottcmail.com
Message-ID: <702440682.8.1754579723978@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

August 7, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

We have completed our review of your Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 10/08/2025. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To receive benefits under the policy issued to Nye County, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

This policy has a 24 month Own Occupation Period which ended on 10/08/2025. In order to be considered Totally Disabled beyond this date, the medical evidence must support that you would be unable to perform each of the main duties of any occupation for which you are qualified. As such, in considering whether you qualify for Long Term Disability benefits beyond 10/08/2025, we evaluated whether you would be restricted or limited from performing the main duties of any occupation for which you are qualified.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Your entire file was reviewed upon appeal. Disability must be supported from 10/08/2025 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

As you know your claim was originally approved from 10/08/2023 to 10/08/2025 as we found you met the definition of Total Disability that applied during that period. Benefits were terminated as of 10/08/2025 because we determined you were not Totally Disabled from performing the main duties of any occupation. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report from an independent physician who is Board Certified in Orthopedic. For complete details please refer to our letter dated 04/23/2025.

**Summary of Appeal**

On 05/19/2025, you filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your appeal.

As part of our appeal review all current and new medical information was reviewed by Dr. Charisma Pinna, an independent physician who is Board Certified in Physical Medicine and Rehabilitation. Dr. Pinna's review noted, in part:

> "The following restrictions and limitations are recommended from 10/08/2024 and forward
>
> 8 hours/day – 5 days/week (40 hours per week)
>
> Sit: Frequent
> Stand: Occasional
> Walk: Occasional
>
> Bilateral Upper Extremities- with use of bilateral upper extremities
> -Lifting: Occasional, up to 20 pounds BUE
> -Pushing: Occasional, up to 20 pounds BUE
> -Pulling: Occasional, up to 20 pounds BUE
> -Carrying: Occasional, up to 20 pounds BUE
>
> Reaching-
> -Over shoulder level: Occasional, bilateral
> -To desk level: Frequent, bilateral
> -Below waist level: Occasional, bilateral
>
> Bilateral Upper Extremities-
> -Fine manipulation: Unrestricted, bilateral
> -Simple grasping: Unrestricted, bilateral
> -Firm Grasping: Unrestricted, bilateral
> -Finger/handle/feel: Unrestricted, bilateral
> -Keyboard/mousing: Frequent, bilateral
> Use of lower extremities for foot controls: Occasional, bilateral
> Climbing stairs: Occasional with the use of a handrail

Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised”

A copy of the full report was sent to you to review and respond to. A response was received, and the new information was reviewed by Dr. Charisma O Pinna. Dr. Pinna stated:

“No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl’s nodes, and multilevel disc bulges with neural foraminal narrowing, including greater right L4 nerve root contact at L4-L5. These findings are consistent with the claimant’s prior 12/13/2022 MRI, which already demonstrated mild multilevel degenerative changes, foraminal narrowing, and disc pathology with suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that would necessitate a reassessment of the current functional capacity recommendations. Clinical notes throughout 2023 and 2024, including from the FCE and multiple follow-ups with Dr. Peter Su, consistently report primarily axial low back pain without neurological deficits. Motor strength, sensation, and reflexes were repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forward remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant’s chronic degenerative lumbar condition but does not introduce findings that would undermine or require modification of the original report.”

A copy of the full report was sent to you to review and respond to. No response was received.

**<u>Appeal Decision</u>**

We understand that you have been diagnosed with Low back pain. However, our review of the medical documentation, which included consultation with and/or review of a written report from an independent physician who is Board Certified in physical medicine & Rehabilitation, does not support restrictions and limitations that would render you unable to perform each of the main duties of any gainful occupation that you have the training, education, and experience to

perform beyond 10/08/2025. We therefore find that you are no longer Totally Disabled under the terms of the policy.

**Vocational**

We reviewed your past training, education, and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.
Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,831/mo. | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,202/mo. | Sedentary |
| 3. 189.167-034 | Security Officer | $11,379/mo. | Sedentary |
| 4. 375.167-034 | Police Captain | $12,324/mo. | Light |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards, or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, you have exhausted your first level of appeal. If you disagree with this decision, you, your attorney, or a person legally authorized as your representative, may pursue a final administrative appeal.

To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays, or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 10/08/2028.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Koji̜' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Date: Wed Jul 16 13:10:13 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: dboruchowitz@ottcmail.com
Message-ID: <1641776831.3.1752689413595@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

July 16, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in regard to your appeal for Long Term Disability benefits.

As part of your appeal review, your medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your review prior to completion of our appeal decision.

You may wish to provide this assessment to your treating physician(s) for further review. Any additional written information or comments must be received within 14 days.

The 14-day period will expire on 07/30/2025. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your disability claim at this time as we want to provide you every opportunity to review our assessment and provide a response. If we do not receive a response by 07/30/2025, then we will render a decision based on the information currently in the file.

We are allowing you time to submit additional information, as requested. Due to these special circumstances an extension of time to process your/your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

**Charisma O Pinna, MD**
Board Certified in Physical Medicine and Rehabilitation

**Claimant Name:** David Boruchowitz
**Date of Birth:**
**Date of Disability:** 7/10/2023

**Claim #:** 1230082409
**ECN #:** 294082-3
**Report Date:** 07/14/2025

**ADDENDUM**

**MEDICAL RECORDS REVIEWED:**

All medical records have been reviewed and any pertinent information has bee addressed.

- 03/01/2024 - FCE
- 04/18/2025 - Desert Radiology - MRI Lumbar Spine Without Contrast
- 06/30/2025 - Appeal Letter - Claim #1230082409

**DIAGNOSTIC REPORTS**

04/18/2025 - MRI Lumbar Spine Without Contrast - Desert Radiology
1. Mild acquired spinal stenoses L1-S1
2. Multilevel disc space narrowing and Schmorl's nodes
3. Neural foraminal narrowing with disc bulges at multiple levels
4. At L4-L5, bilateral anterior neural foraminal narrowing with greater contact on the right L4 intraforaminal nerve root
5. 5 mm atypical hemangioma in the right L4 vertebra

**QUESTIONS AND ANSWERS**

**1. Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl’s nodes, and multilevel disc bulges with neural foraminal narrowing, including greater right L4 nerve root contact at L4-L5. These findings are consistent with the claimant’s prior 12/13/2022 MRI, which already demonstrated mild multilevel degenerative changes, foraminal narrowing, and disc pathology with suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that would necessitate a reassessment of the current functional capacity recommendations. Clinical

notes throughout 2023 and 2024, including from the FCE and multiple follow-ups with Dr. Peter Su, consistently report primarily axial low back pain without neurological deficits. Motor strength, sensation, and reflexes were repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forward remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that would undermine or require modification of the original report.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,




Charisma Pinna, MD
Board-Certified in PM&R
State Medical Licensure
UT: 5525633-1205

**Charisma O Pinna, MD**
Board Certified in Physical Medicine and Rehabilitation

**Claimant Name:** David Boruchowitz
**Date of Birth:**
**Date of Disability:** 7/10/2023

**Claim #:** 1230082409
**ECN #:** 294082-3
**Report Date:** 07/14/2025

**ADDENDUM**

**MEDICAL RECORDS REVIEWED:**

All medical records have been reviewed and any pertinent information has bee addressed.

- 03/01/2024 - FCE
- 04/18/2025 - Desert Radiology - MRI Lumbar Spine Without Contrast
- 06/30/2025 - Appeal Letter - Claim #1230082409

**DIAGNOSTIC REPORTS**

04/18/2025 - MRI Lumbar Spine Without Contrast - Desert Radiology
1. Mild acquired spinal stenoses L1-S1
2. Multilevel disc space narrowing and Schmorl's nodes
3. Neural foraminal narrowing with disc bulges at multiple levels
4. At L4-L5, bilateral anterior neural foraminal narrowing with greater contact on the right L4 intraforaminal nerve root
5. 5 mm atypical hemangioma in the right L4 vertebra

**QUESTIONS AND ANSWERS**

**1. Does the new information at all impact and/or change the findings expressed in your prior peer review? Please explain and provide clinical rationale.**

No, the new information does not materially change the clinical conclusions or recommendations previously expressed. The 04/18/2025 MRI confirms mild acquired spinal stenosis from L1-S1, multilevel disc space narrowing, Schmorl's nodes, and multilevel disc bulges with neural foraminal narrowing, including greater right L4 nerve root contact at L4-L5. These findings are consistent with the claimant's prior 12/13/2022 MRI, which already demonstrated mild multilevel degenerative changes, foraminal narrowing, and disc pathology with suspected nerve root abutment at L5-S1. The updated MRI reinforces a chronic, degenerative, and stable condition rather than indicating a new or progressive pathology.

Critically, the updated imaging does not document significant central canal stenosis, nerve root compression, or new findings that would necessitate a reassessment of the current functional capacity recommendations. Clinical

notes throughout 2023 and 2024, including from the FCE and multiple follow-ups with Dr. Peter Su, consistently report primarily axial low back pain without neurological deficits. Motor strength, sensation, and reflexes were repeatedly intact.

Thus, the diagnoses remain unchanged, the recommended restrictions and limitations from 10/08/2024 forward remain appropriate, and the determination of maximum medical improvement and stability stands. The new MRI supports the claimant's chronic degenerative lumbar condition but does not introduce findings that would undermine or require modification of the original report.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,




Charisma Pinna, MD
Board-Certified in PM&R
State Medical Licensure
UT: 5525633-1205

DESERT RADIOLOGY
DIAGNOSTIC IMAGING CENTER of EXCELLENCE™

702-759-8600
WWW.DESERTRAD.COM

| | | | |
|---|---|---|---|
| **Patient Name:** | BORUCHOWITZ, DAVID | **Requested Date:** | April 18, 2025 10:35 |
| **Date of Birth:** | | **Report Status:** | Final |
| **Referring Physician:** | WELTH, JOSH | **Procedure Description:** | MR LUMBAR WO CONTRAST |

| | | | |
|---|---|---|---|
| **Patient ID:** | 502437501 | **Requested Procedure:** | 1 |
| **Gender:** | Male | **Modality:** | MR |
| **Home Phone:** | | **Accession Number:** | 521961285 |
| **Organization:** | PAH | | |

## Findings

| | |
|---|---|
| **Reporting MD:** | STEINBERG MD, TODD |
| **Fellow MD:** | Not available |
| **Dictation Time:** | |
| **Transcriptionist:** | Not available |
| **Transcription Date:** | |

MR LUMBAR SPINE WITHOUT CONTRAST

HISTORY: Sciatica, right side M5431 Low back pain M545

COMPARISON: None.

TECHNIQUE: Axial and sagittal T1-weighted, T2-weighted, and fat-suppressed T2-weighted MR images of the lumbar spine from T12 to S1 vertebral bodies were performed without contrast.

CONTRAST: None.

FINDINGS:

There are 5 lumbar type vertebral bodies present. The lumbar vertebral body heights are maintained. No prevertebral soft tissue normality is seen. Lower thoracic cord signal is unremarkable. Conus medullaris ends at L1.

The T12-L1 disc space is unremarkable

At L1-L2, the disc space is narrowed with a Schmorl's node along the inferior L1 vertebra. 1 mm dorsal disc bulge. The neural foramina are patent.

At L2-L3, the disc space is narrowed and desiccated. Very small broad-based right paracentral disc fusion flattens the anterior thecal sac. Very mild anterior neural foraminal narrowing secondary to disc material

At L3-L4, the disc space is narrowed with disc desiccation. Schmorl's node along the anterior superior L4 vertebra. Annular disc bulge flattens the ventral thecal sac. Minimal bilateral anterior inferior neural foramina secondary to disc material.

At L4-L5, there is annular disc bulge flattening the ventral thecal sac. Bilateral anterior neural foraminal narrowing secondary to disc material. This contacts the undersurface of both L4 intraforaminal nerve roots slightly greater on the right. 5 mm atypical hemangioma in the right L4 vertebra.

At L5-S1, the disc is desiccated. There is annular disc bulge contacting but not

DR DESERT RADIOLOGY

DIAGNOSTIC IMAGING CENTER of EXCELLENCE™

702-759-8600
WWW.DESERTRAD.COM

| | | | |
|---|---|---|---|
| **Patient Name:** | BORUCHOWITZ, DAVID | **Requested Date:** | April 18, 2025 10:35 |
| **Date of Birth:** | | **Report Status:** | Final |
| **Referring Physician:** | WELTH, JOSH | **Procedure Description:** | MR LUMBAR WO CONTRAST |

deflecting the ventral thecal sac. Mild degenerative endplate changes. Minimal anterior inferior neural foraminal narrowing secondary to disc material. SI joints are unremarkable.

IMPRESSION:
1. Mild acquired spinal stenoses L1-S1 as above
2. Multilevel disc space narrowing and Schmorl's nodes
3. Neural foraminal narrowing as above

Electronically signed by: Todd Steinberg MD 04/18/2025 05:55 PM PDT RP Workstation: DRHMERS31149

Sciatica, right side | M5431 Low back pain | M545 no iv contrast Low Back pain that radiates down right leg since 2021 after roll over ATV accident, no surgery. IA-1.5T .

**Subject:** Long-Term Disability Appeal — Claim #1230082409
**To:** Lincoln National Life Insurance Company
**Via Email:** LFGAppeals@lfg.com
**Date:** 06/30/2025

Dear Appeals Department,

I am writing in response to the peer review conducted by Dr. Charisma Pinna dated June 6, 2025, regarding my appeal for Long-Term Disability (LTD) benefits under Claim #1230082409. Please consider this as additional written information or comments to be considered in making the decision in my case. While I appreciate your efforts in reviewing my case, I must respectfully assert that the report is materially insufficient in several respects. Moreover, the totality of clinical and functional evidence clearly demonstrates that I am unable to perform the essential duties of any regular full-time occupation.

**I. Deficiencies in the Peer Review Report**

1. **Lack of Firsthand Medical Evaluation**
   Dr. Pinna never consulted with me or any of my treating providers. This undermines the assessment's accuracy, especially given its heavy reliance on records without context, such as variability in pain intensity and fluctuations in my functional capacity. As noted in my providers' records, many of his restrictions and abilities hinge on my personal capabilities daily. The amount of pain, discomfort, and frequency of adjusting positions changes daily and is not consistent. Without consulting me and identifying the frequency or intensity of pain and adjustments the report is deficient, and those things need to be considered.

2. **Dismissal of Pain Severity and Persistence**
   The review acknowledges persistent chronic low back pain but fails to account for its long-term debilitating effects. Despite multiple interventional treatments—including epidural steroid injections, facet joint injections, and radiofrequency ablations—I continue to report high pain levels (VAS 7–8/10) that significantly impair basic activities such as walking, sitting, standing, laying down and even restful sleep.

3. **Overemphasis on Temporary or Transient Improvement**
   The report highlights 95% initial relief from the 11/6/23 facet joint injections but neglects to emphasize that this benefit was **not sustained**, as documented in follow-up visits and confirmed by Dr. Su, who stated "limited relief" post-ablation. This relief was a minor and short-term relief that has almost no impact on the long term.

4. **Inadequate Consideration of Functional Capacity Evaluation (FCE)**
   The March 1, 2024 FCE—administered after nearly two years of treatment—categorized me in the **Sedentary Physical Demand Level**, with **valid and consistent** results but specifically on page 3 the doctor specifically noted, “Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE”. It continues, “Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx’s after approximately 20-25 minutes.” These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination and appear to be ignored by the independent review. This doctor’s notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform. Dr. Weltha’s notations are consistent in this citing to regular adjusting that is required between sitting, laying and standing positions. This is addressed at length in the initial appeal letter.

5. **Omission of Real-World Limitations**
   Though the review lists detailed physical restrictions (e.g., occasional lifting of up to 20 pounds, alternating between sitting and standing), it fails to acknowledge how frequently I must change positions or terminate activities altogether to manage pain. These limitations are *incompatible* with the performance expectations of competitive full-time work. As noted by the LFG denial letter, totally disability or totally disabled is defined as follows:

   > After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

   As is noted by the provider in the medical records, I need to be able to “adjust between sitting, standing and laying down” to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee without consistency. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

**II. Evidence Supporting Disability**

The medical record outlines a clear and persistent decline in functional abilities post-accident:

- **Degenerative Lumbar Pathology:** Multilevel disc disease with nerve root abutment and Grade 1 retrolisthesis—correlated with chronic axial pain and mechanical instability.
- **Failed Interventional Pain Management:** Minimal and short-lived relief despite escalating therapies, suggesting a refractory clinical course.
- **Validated FCE Results:** Consistently placed in a sedentary category **without improvement**, and with the requirement of regular adjusting, confirming endurance limitations and unsuitability for most occupational roles.
- **Ongoing Physician Support:** Multiple statements from my treating providers confirm my inability to return to work in law enforcement or engage in continuous physical labor due to medically documented restrictions and limitations.

**III. Disability Determination and Vocational Mismatch**

While the Transferable Skills Analysis suggests potential sedentary occupations (e.g., Desk Officer, Harbor Master), these roles:

- Do **not align** with the required need for constant position changes, pain-mitigating rest breaks, and symptom-triggered task avoidance.
- Were evaluated based on generic national economy benchmarks rather than actual jobs that are functional in the marketplace and accommodations for those positions. This is discussed at length in the initial appeal.
- Ignore the fact that even occasional lifting, driving, or postural strain can exacerbate my symptoms and make workdays unpredictable and unsustainable.

**IV. Errors in the report**

Although the investigatory notations in the report appear to be of little value in considering my disability, there are inaccuracies that need to be corrected.

- Page 13 of report.
  - Investigator notes the following:
    - The claimant is currently on administrative leave from his position as Police Captain at Nye County Sheriff's Office pending investigation of federal charges.
  - **THIS IS FALSE**
  - The claimant is retired, on a disability retirement as a result of the injury pertinent to this claim. The claimant has been retired since October of 2023.
- Page 13 of report.

- Investigator notes the following:
  - Voter registration as a Democrat
- I am not sure why a person's political party is pertinent, but if it is then it should be accurate
- **THIS IS FALSE**
- Claimant is a registered Republican

- Page 13 & 17
  - The wrongful death suit mentioned in the report was settled almost a year ago and is not a pending case

**Conclusion**

Based on the totality of clinical findings, failed treatments, documented functional impairment, and physician-validated restrictions incompatible with employment, I respectfully request the approval of my continued LTD claim. The existing evidence clearly supports the inability to engage in regular gainful employment, consistent with the policy's disability definition.

I am committed to providing any further clarification or documentation required. Please let me know.

Sincerely,
David Boruchowitz

dboruchowitz@fltg.net

**Subject:** Long-Term Disability Appeal — Claim #1230082409
**To:** Lincoln National Life Insurance Company
**Via Email:** LFGAppeals@lfg.com
**Date:** 06/30/2025

Dear Appeals Department,

I am writing in response to the peer review conducted by Dr. Charisma Pinna dated June 6, 2025, regarding my appeal for Long-Term Disability (LTD) benefits under Claim #1230082409. Please consider this as additional written information or comments to be considered in making the decision in my case. While I appreciate your efforts in reviewing my case, I must respectfully assert that the report is materially insufficient in several respects. Moreover, the totality of clinical and functional evidence clearly demonstrates that I am unable to perform the essential duties of any regular full-time occupation.

**I. Deficiencies in the Peer Review Report**

1. **Lack of Firsthand Medical Evaluation**
   Dr. Pinna never consulted with me or any of my treating providers. This undermines the assessment's accuracy, especially given its heavy reliance on records without context, such as variability in pain intensity and fluctuations in my functional capacity. As noted in my providers' records, many of his restrictions and abilities hinge on my personal capabilities daily. The amount of pain, discomfort, and frequency of adjusting positions changes daily and is not consistent. Without consulting me and identifying the frequency or intensity of pain and adjustments the report is deficient, and those things need to be considered.

2. **Dismissal of Pain Severity and Persistence**
   The review acknowledges persistent chronic low back pain but fails to account for its long-term debilitating effects. Despite multiple interventional treatments—including epidural steroid injections, facet joint injections, and radiofrequency ablations—I continue to report high pain levels (VAS 7–8/10) that significantly impair basic activities such as walking, sitting, standing, laying down and even restful sleep.

3. **Overemphasis on Temporary or Transient Improvement**
   The report highlights 95% initial relief from the 11/6/23 facet joint injections but neglects to emphasize that this benefit was **not sustained**, as documented in follow-up visits and confirmed by Dr. Su, who stated "limited relief" post-ablation. This relief was a minor and short-term relief that has almost no impact on the long term.

4. **Inadequate Consideration of Functional Capacity Evaluation (FCE)**
   The March 1, 2024 FCE—administered after nearly two years of treatment—categorized me in the **Sedentary Physical Demand Level**, with **valid and consistent** results but specifically on page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination and appear to be ignored by the independent review. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform. Dr. Weltha's notations are consistent in this citing to regular adjusting that is required between sitting, laying and standing positions. This is addressed at length in the initial appeal letter.

5. **Omission of Real-World Limitations**
   Though the review lists detailed physical restrictions (e.g., occasional lifting of up to 20 pounds, alternating between sitting and standing), it fails to acknowledge how frequently I must change positions or terminate activities altogether to manage pain. These limitations are *incompatible* with the performance expectations of competitive full-time work. As noted by the LFG denial letter, totally disability or totally disabled is defined as follows:

   > After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

   As is noted by the provider in the medical records, I need to be able to "adjust between sitting, standing and laying down" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee without consistency. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

**II. Evidence Supporting Disability**

The medical record outlines a clear and persistent decline in functional abilities post-accident:

- **Degenerative Lumbar Pathology:** Multilevel disc disease with nerve root abutment and Grade 1 retrolisthesis—correlated with chronic axial pain and mechanical instability.
- **Failed Interventional Pain Management:** Minimal and short-lived relief despite escalating therapies, suggesting a refractory clinical course.
- **Validated FCE Results:** Consistently placed in a sedentary category **without improvement**, and with the requirement of regular adjusting, confirming endurance limitations and unsuitability for most occupational roles.
- **Ongoing Physician Support:** Multiple statements from my treating providers confirm my inability to return to work in law enforcement or engage in continuous physical labor due to medically documented restrictions and limitations.

**III. Disability Determination and Vocational Mismatch**

While the Transferable Skills Analysis suggests potential sedentary occupations (e.g., Desk Officer, Harbor Master), these roles:

- Do **not align** with the required need for constant position changes, pain-mitigating rest breaks, and symptom-triggered task avoidance.
- Were evaluated based on generic national economy benchmarks rather than actual jobs that are functional in the marketplace and accommodations for those positions. This is discussed at length in the initial appeal.
- Ignore the fact that even occasional lifting, driving, or postural strain can exacerbate my symptoms and make workdays unpredictable and unsustainable.

**IV. Errors in the report**

Although the investigatory notations in the report appear to be of little value in considering my disability, there are inaccuracies that need to be corrected.

- Page 13 of report.
    - Investigator notes the following:
        - The claimant is currently on administrative leave from his position as Police Captain at Nye County Sheriff's Office pending investigation of federal charges.
    - **THIS IS FALSE**
    - The claimant is retired, on a disability retirement as a result of the injury pertinent to this claim. The claimant has been retired since October of 2023.
- Page 13 of report.

    - Investigator notes the following:
        - Voter registration as a Democrat
    - I am not sure why a person's political party is pertinent, but if it is then it should be accurate
    - **THIS IS FALSE**
    - Claimant is a registered Republican
- Page 13 & 17
    - The wrongful death suit mentioned in the report was settled almost a year ago and is not a pending case

**Conclusion**

Based on the totality of clinical findings, failed treatments, documented functional impairment, and physician-validated restrictions incompatible with employment, I respectfully request the approval of my continued LTD claim. The existing evidence clearly supports the inability to engage in regular gainful employment, consistent with the policy's disability definition.

I am committed to providing any further clarification or documentation required. Please let me know.

Sincerely,
David Boruchowitz

dboruchowitz@fltg.net

DESERT RADIOLOGY
DIAGNOSTIC IMAGING CENTER of EXCELLENCE™

702-759-8600
WWW.DESERTRAD.COM

| | | | |
|---|---|---|---|
| **Patient Name:** | BORUCHOWITZ, DAVID | **Requested Date:** | April 18, 2025 10:35 |
| **Date of Birth:** | | **Report Status:** | Final |
| **Referring Physician:** | WELTH, JOSH | **Procedure Description:** | MR LUMBAR WO CONTRAST |
| **Patient ID:** | 502437501 | **Requested Procedure:** | 1 |
| **Gender:** | Male | **Modality:** | MR |
| **Home Phone:** | | **Accession Number:** | 521961285 |
| **Organization:** | PAH | | |

## Findings

| | |
|---|---|
| **Reporting MD:** | STEINBERG MD, TODD |
| **Fellow MD:** | Not available |
| **Dictation Time:** | |
| **Transcriptionist:** | Not available |
| **Transcription Date:** | |

MR LUMBAR SPINE WITHOUT CONTRAST

HISTORY: Sciatica, right side M5431 Low back pain M545

COMPARISON: None.

TECHNIQUE: Axial and sagittal T1-weighted, T2-weighted, and fat-suppressed T2-weighted MR images of the lumbar spine from T12 to S1 vertebral bodies were performed without contrast.

CONTRAST: None.

FINDINGS:

There are 5 lumbar type vertebral bodies present. The lumbar vertebral body heights are maintained. No prevertebral soft tissue normality is seen. Lower thoracic cord signal is unremarkable. Conus medullaris ends at L1.

The T12-L1 disc space is unremarkable

At L1-L2, the disc space is narrowed with a Schmorl's node along the inferior L1 vertebra. 1 mm dorsal disc bulge. The neural foramina are patent.

At L2-L3, the disc space is narrowed and desiccated. Very small broad-based right paracentral disc fusion flattens the anterior thecal sac. Very mild anterior neural foraminal narrowing secondary to disc material

At L3-L4, the disc space is narrowed with disc desiccation. Schmorl's node along the anterior superior L4 vertebra. Annular disc bulge flattens the ventral thecal sac. Minimal bilateral anterior inferior neural foramina secondary to disc material.

At L4-L5, there is annular disc bulge flattening the ventral thecal sac. Bilateral anterior neural foraminal narrowing secondary to disc material. This contacts the undersurface of both L4 intraforaminal nerve roots slightly greater on the right. 5 mm atypical hemangioma in the right L4 vertebra.

At L5-S1, the disc is desiccated. There is annular disc bulge contacting but not

DR DESERT RADIOLOGY
ACR RADIOLOGY DIAGNOSTIC IMAGING CENTER of EXCELLENCE™

702-759-8600
WWW.DESERTRAD.COM

| | | | |
|---|---|---|---|
| **Patient Name:** | BORUCHOWITZ, DAVID | **Requested Date:** | April 18, 2025 10:35 |
| **Date of Birth:** | | **Report Status:** | Final |
| **Referring Physician:** | WELTH, JOSH | **Procedure Description:** | MR LUMBAR WO CONTRAST |

deflecting the ventral thecal sac. Mild degenerative endplate changes. Minimal anterior inferior neural foraminal narrowing secondary to disc material. SI joints are unremarkable.

IMPRESSION:
1. Mild acquired spinal stenoses L1-S1 as above
2. Multilevel disc space narrowing and Schmorl's nodes
3. Neural foraminal narrowing as above

Electronically signed by: Todd Steinberg MD 04/18/2025 05:55 PM PDT RP Workstation: DRHMERS31149

Sciatica, right side | M5431 Low back pain | M545 no iv contrast Low Back pain that radiates down right leg since 2021 after roll over ATV accident, no surgery. IA-1.5T .

**Subject:** Long-Term Disability Appeal — Claim #1230082409
**To:** Lincoln National Life Insurance Company
**Via Email:** LFGAppeals@lfg.com
**Date:** 06/30/2025

Dear Appeals Department,

I am writing in response to the peer review conducted by Dr. Charisma Pinna dated June 6, 2025, regarding my appeal for Long-Term Disability (LTD) benefits under Claim #1230082409. Please consider this as additional written information or comments to be considered in making the decision in my case. While I appreciate your efforts in reviewing my case, I must respectfully assert that the report is materially insufficient in several respects. Moreover, the totality of clinical and functional evidence clearly demonstrates that I am unable to perform the essential duties of any regular full-time occupation.

**I. Deficiencies in the Peer Review Report**

1. **Lack of Firsthand Medical Evaluation**
   Dr. Pinna never consulted with me or any of my treating providers. This undermines the assessment's accuracy, especially given its heavy reliance on records without context, such as variability in pain intensity and fluctuations in my functional capacity. As noted in my providers' records, many of his restrictions and abilities hinge on my personal capabilities daily. The amount of pain, discomfort, and frequency of adjusting positions changes daily and is not consistent. Without consulting me and identifying the frequency or intensity of pain and adjustments the report is deficient, and those things need to be considered.

2. **Dismissal of Pain Severity and Persistence**
   The review acknowledges persistent chronic low back pain but fails to account for its long-term debilitating effects. Despite multiple interventional treatments—including epidural steroid injections, facet joint injections, and radiofrequency ablations—I continue to report high pain levels (VAS 7–8/10) that significantly impair basic activities such as walking, sitting, standing, laying down and even restful sleep.

3. **Overemphasis on Temporary or Transient Improvement**
   The report highlights 95% initial relief from the 11/6/23 facet joint injections but neglects to emphasize that this benefit was **not sustained**, as documented in follow-up visits and confirmed by Dr. Su, who stated "limited relief" post-ablation. This relief was a minor and short-term relief that has almost no impact on the long term.

4. **Inadequate Consideration of Functional Capacity Evaluation (FCE)**
   The March 1, 2024 FCE—administered after nearly two years of treatment—categorized me in the **Sedentary Physical Demand Level**, with **valid and consistent** results but specifically on page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination and appear to be ignored by the independent review. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform. Dr. Weltha's notations are consistent in this citing to regular adjusting that is required between sitting, laying and standing positions. This is addressed at length in the initial appeal letter.

5. **Omission of Real-World Limitations**
   Though the review lists detailed physical restrictions (e.g., occasional lifting of up to 20 pounds, alternating between sitting and standing), it fails to acknowledge how frequently I must change positions or terminate activities altogether to manage pain. These limitations are *incompatible* with the performance expectations of competitive full-time work. As noted by the LFG denial letter, totally disability or totally disabled is defined as follows:

   > After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

   As is noted by the provider in the medical records, I need to be able to "adjust between sitting, standing and laying down" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee without consistency. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

**II. Evidence Supporting Disability**

The medical record outlines a clear and persistent decline in functional abilities post-accident:

- **Degenerative Lumbar Pathology:** Multilevel disc disease with nerve root abutment and Grade 1 retrolisthesis—correlated with chronic axial pain and mechanical instability.
- **Failed Interventional Pain Management:** Minimal and short-lived relief despite escalating therapies, suggesting a refractory clinical course.
- **Validated FCE Results:** Consistently placed in a sedentary category **without improvement**, and with the requirement of regular adjusting, confirming endurance limitations and unsuitability for most occupational roles.
- **Ongoing Physician Support:** Multiple statements from my treating providers confirm my inability to return to work in law enforcement or engage in continuous physical labor due to medically documented restrictions and limitations.

**III. Disability Determination and Vocational Mismatch**

While the Transferable Skills Analysis suggests potential sedentary occupations (e.g., Desk Officer, Harbor Master), these roles:

- Do **not align** with the required need for constant position changes, pain-mitigating rest breaks, and symptom-triggered task avoidance.
- Were evaluated based on generic national economy benchmarks rather than actual jobs that are functional in the marketplace and accommodations for those positions. This is discussed at length in the initial appeal.
- Ignore the fact that even occasional lifting, driving, or postural strain can exacerbate my symptoms and make workdays unpredictable and unsustainable.

**IV. Errors in the report**

Although the investigatory notations in the report appear to be of little value in considering my disability, there are inaccuracies that need to be corrected.

- Page 13 of report.
  - Investigator notes the following:
    - The claimant is currently on administrative leave from his position as Police Captain at Nye County Sheriff's Office pending investigation of federal charges.
  - **THIS IS FALSE**
  - The claimant is retired, on a disability retirement as a result of the injury pertinent to this claim. The claimant has been retired since October of 2023.
- Page 13 of report.

    - Investigator notes the following:
        - Voter registration as a Democrat
    - I am not sure why a person's political party is pertinent, but if it is then it should be accurate
    - **THIS IS FALSE**
    - Claimant is a registered Republican
- Page 13 & 17
    - The wrongful death suit mentioned in the report was settled almost a year ago and is not a pending case

**Conclusion**

Based on the totality of clinical findings, failed treatments, documented functional impairment, and physician-validated restrictions incompatible with employment, I respectfully request the approval of my continued LTD claim. The existing evidence clearly supports the inability to engage in regular gainful employment, consistent with the policy's disability definition.

I am committed to providing any further clarification or documentation required. Please let me know.

Sincerely,
David Boruchowitz

dboruchowitz@fltg.net

Date: Thu Jun 12 15:40:11 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: dboruchowitz@ottcmail.com
Message-ID: <1785495362.3.1749760811475@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 12, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in regard to your appeal for Long Term Disability benefits.

As part of your appeal review, your medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your review prior to completion of our appeal decision.

You may wish to provide this assessment to your treating physician(s) for further review. Any additional written information or comments must be received within 21 days.

The 21-day period will expire on 07/03/2025. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your disability claim at this time as we want to provide you every opportunity to review our assessment and provide a response. If we do not receive a response by 07/03/2025, then we will render a decision based on the information currently in the file.

We are allowing you time to submit additional information, as requested. Due to these special circumstances an extension of time to process your/your client's appeal is required and we are exercising our right to take a 45-day extension of time to decide the appeal.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

**Charisma O Pinna, MD**
Board Certified in Physical Medicine and Rehabilitation

**Claimant Name:** David Boruchowitz
**Date of Birth:**
**Date of Disability:** 7/10/2023
**Claim #:** 1230082409
**ECN #:** 294082-2
**Report Date:** 06/06/2025

## PEER REVIEW

### MEDICAL RECORDS REVIEWED

2022

- 04/09/2022 - Desert View Hospital - Emergency Room Visit
- 04/10/2022 - Desert View Hospital - CT Brain W/O
- 04/10/2022 - Desert View Hospital - CT Cervical Spine W/O
- 04/10/2022 - Desert View Hospital - CT Chest W/O
- 04/10/2022 - Desert View Hospital - CT Abdomen/Pelvis With Contrast
- 04/10/2022 - Employer's Report of Industrial Injury
- 04/12/2022 - Nye County Human Resources - Light Duty Job Offer
- 05/13/2022 - X-Ray - Chest
- 06/01/2022 - Desert Radiology - XR Lumbar Spine
- 06/07/2022 - Certification of Disability
- 06/08/2022 - Work Status
- 06/22/2022 - Desert View - Office Visit - Evaluation
- 06/22/2022 - 03/01/2024 - Optimal Therapy - Physical Therapy
- 09/27/2022 - Certification of Disability - Alexander Noche, NP
- 11/16/2022 - 08/09/2023 - Advanced Spine & Rehabilitation - Chiropractic Care
- 12/13/2022 - SimonMed NV Maryland - MRI Lumbar Spine W/O Contrast

2023

- 01/09/2023 - Desert View - Office Visit - Follow-up
- 01/17/2023 - Desert View - Office Visit - Follow-up
- 08/09/2023 - Office Visit - Follow-up
- 08/09/2023 - Physician's Report - Alexander S. Janda, DC
- 08/28/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections - Dr. Peter Su
- 09/05/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
- 09/18/2023 - Desert Institute of Spine Care - Initial Consult - Andrew M. Cash, MD - Orthopedic Spine Surgery
- 09/26/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
- 11/06/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Facet Joint Injection - Dr. Peter Su
- 11/06/2023 - Durango Surgery Center - Bilateral L4-5 and L5-S1 Facet Joint Injection - Peter Su, MD

- 11/13/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
- 11/14/2023 - Physician's Statement
- 11/14/2023 - Physician's Statement - Joshua Weltha, PA-C
- 12/11/2023 - Su Spine & Sports - Bilateral L3, L4, L5 Radiofrequency Ablation - Dr. Peter Su
- 12/11/2023 - Bilateral Ablation

2024

- 01/11/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C
- 01/11/2024 - Spring Mountain Medical - Ultrasound Abdomen
- 01/18/2024 - Su Spine and Sports - Office Visit - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation
- 01/22/2024 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha, PA-C
- 01/31/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C - Primary Care
- 01/31/2024 - Spring Mountain Medical - X-Ray - Right Elbow
- 02/13/2024 - Spring Mountain Medical - Office Visit - Follow Up - Joshua Weltha, PA-C - Primary Care
- 02/14/2024 - Surveillance Report
- 03/01/2024 - Optimal Therapy - Functional Capacity Evaluation
- 04/17/2024 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation
- 04/24/2024 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha, PAC-C
- 04/24/2024 - Work Status - Joshua Weltha, PA-C

2025

- 03/18/2025 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha - Primary Care
- 03/19/2025 - X-Ray
- 03/26/2025 - Office Visit - Follow-up
- 03/26/2025 - Abilities Form - Joshua Weltha, PA-C

**CLINICAL DIAGNOSIS**

David Boruchowitz is a 44-year-old male (DOB: diagnosed with low back pain, other specific arthropathies.

**INJURY REPORT**

04/09/2022 – Work-Related Accident/Vehicle Rollover
Details: Claimant was searching for a missing person when the off-road vehicle they were in lost steering and rolled three times on Sandy Valley Road at approximately 10:45 PM. The vehicle came to rest upside down. Claimant was the restrained driver and was facing forward at impact. He hit his head but did not lose consciousness. Immediately after the collision, he felt shaken up and began to experience pain. Claimant sustained injuries to his shoulder, mid to lower back, and rib cage, diagnosed as shoulder and back sprain. He was transported to Desert View Hospital Emergency Room where he underwent CT scans of the chest, abdomen/pelvis, cervical spine, and brain, which showed no acute abnormalities except for hepatic steatosis. He was hospitalized from 04/09/2022 to 04/10/2022. The accident resulted in low back pain that has persisted despite

treatment. Following additional evaluation at Intermountain Healthcare, the claimant underwent radiographic evaluation of the lumbar spine. Injury to the lower back, primarily axial without radiation. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing.

04/10/2022 – Employer's Report of Industrial Injury
Details: Claimant was involved in an off-road vehicle roll over accident while on duty as a police officer. The vehicle lost steering and rolled 3 times, resulting in injuries.

**DIAGNOSTIC REPORTS**

04/10/2022 - CT Brain W/O - Desert View Hospital
1. No acute intracranial abnormality
2. Moderate mucosal thickening involves ethmoid air cells and maxillary sinuses

04/10/2022 - CT Cervical Spine W/O - Desert View Hospital
1. No acute abnormality of cervical spine
2. Normal vertebral body alignment and spacing
3. No significant spondylotic changes

04/10/2022 - CT Chest W/O - Desert View Hospital
1. No evidence of acute intrathoracic injury
2. No acute osseous abnormalities

04/10/2022 - CT Abdomen/Pelvis With Contrast - Desert View Hospital
1. No acute intra-abdominal injury
2. Hepatic steatosis
3. Status post cholecystectomy
4. Small umbilical hernia containing only fat

05/13/2022 - X-Ray - Chest
1. Normal chest
2. No skeletal abnormalities of significance

06/01/2022 - XR Lumbar Spine - Desert Radiology
1. Lumbar alignment maintained
2. Intervertebral disc space narrowing with anterior marginal osteophytic spurring at L2-L3 and L3-L4
3. Multilevel degenerative disc disease

12/13/2022 - MRI Lumbar Spine W/O Contrast - SimonMed NV Maryland
1. Mild multilevel degenerative changes, worst at L5-S1
2. Levocurvature of the lumbar spine
3. L1-L2: Minimal circumferential disc bulge, no significant neuroforaminal narrowing or spinal canal stenosis
4. L2-L3: Minimal bilobed disc bulge, minimal facet arthropathy, no significant neuroforaminal narrowing or

spinal canal stenosis
5. L3-L4: Tiny circumferential disc bulge, minimal facet arthropathy, effacement of ventral thecal sac, mild lateral recess narrowing
6. L4-L5: Minimal circumferential disc bulge, mild facet arthropathy, mild bilateral neuroforaminal narrowing, possible minimal abutment of exiting left L4 nerve root
7. L5-S1: Circumferential disc bulge and annular fissure, minimal facet arthropathy, minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing, suspected abutment of bilateral descending S1 nerve roots
8. Grade 1 retrolisthesis of L5 on S1

01/11/2024 - Ultrasound Abdomen - Spring Mountain Medical
1. Hepatic steatosis
2. Splenomegaly (length up to 15 cm)
3. Status post cholecystectomy
4. Normal common bile duct caliber

01/31/2024 - X-Ray - Right Elbow - Spring Mountain Medical
1. Normal findings, no abnormalities detected

03/01/2024 - Functional Capacity Evaluation - Optimal Therapy
1. Results were valid and consistent
2. Placed claimant in sedentary physical demand category
3. Does not meet job requirements

03/19/2025 - X-Ray
1. Ordered by physician on 03/18/2025
2. Completed on 03/19/2025

**OPERATIVE REPORTS**

11/06/2023 - Durango Surgery Center - Bilateral L4-5 and L5-S1 Facet Joint Injection - Peter Su, MD:
Pre-op Diagnosis: Lumbar facet arthropathy
Operative Findings: In an oblique view with clear visualization of zygoapophyseal joint, a 25-gauge 3.5 inch needle was directed in gun-barrel fashion towards the superior aspect of the facet joint (L4-5 and L5-S1) until the joint space was entered on the left and right. After negative aspiration, radiographic contrast was injected through the needle. There was excellent spread within the facet joint itself on the left and right at each level. There was no vascular uptake of contrast. There was no paresthesia. This was followed by a total of about 1cc of mix (2cc Normal Saline, 2cc of 1% lidocaine and 10mg dexamethasone) into each joint.
Complications: None
Post-op Status: Patient tolerated the procedure well with no apparent complications. Blood loss was minimal. Patient was monitored for approximately 30 minutes, demonstrated pre-operative levels of awareness, met all discharge criteria and was discharged home in stable condition with a chaperone.

12/11/2023 - Bilateral Ablation:
Pre-op Diagnosis: Not specified
Operative Findings: Not specified
Complications: Not specified
Post-op Status: Limited relief reported at 01/18/2024 follow-up

**PROCEDURE REPORTS**

08/28/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 transforaminal epidural steroid injections
Outcome: No relief reported

11/06/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Facet Joint Injection - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 facet joint injection
Outcome: 95% initial pain relief reported

12/11/2023 - Su Spine & Sports - Bilateral L3, L4, L5 Radiofrequency Ablation - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain, facet syndrome
Procedure Details: Bilateral L3, L4, L5 radiofrequency ablation
Outcome: Minimal relief reported

**OFFICE VISITS**

06/22/2022 - Desert View - Evaluation:
Subjective: Low back pain and occasional cervical pain following a rollover accident at work on 04/09/2022
Objective: Impaired posture, decreased ROM, core stability and mild weakness
Assessment/Plan: Referred to physical therapy, Home exercise program

01/09/2023 - Desert View - Follow-up:
Subjective: Pain is more accurately described about the lumbar. Reports 3 episodes of severe pain. Woke up in panic after snorkeling.
Objective: Not specified
Assessment/Plan: Not specified

01/17/2023 - Desert View - Follow-up:
Subjective: Back pain has been more pronounced. Tries to get up to gain relief. Rib cage pain persists.
Objective: Not specified
Assessment/Plan: Not specified

08/09/2023 - Follow-up:
Subjective: Has been undergoing conservative treatment
Objective: Not specified
Assessment/Plan: Underwent pain management consult, recommended for epidural injections

09/05/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Pain located at lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worse with movement and range of motion, alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Reports VAS 2-3/10 today. Reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, and activities of daily living.
Objective: BP 134/85, HR 71, Temp 98.2F. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Start diclofenac 75mg BID PRN inflammatory pain. Start baclofen 10mg QHS PRN muscle spasms. Follow-up in 3-4 weeks.

09/18/2023 - Desert Institute of Spine Care - Initial Consult - Andrew M. Cash, MD - Orthopedic Spine Surgery:
Subjective: 43-year-old male involved in work-related motor vehicle accident on 04/09/2022. Patient states he lost control of the OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. The worst back pain level is 10/10. Reports no radicular symptoms in lower extremities. Has had chiropractic and injection treatment.
Objective: Ht 5'11", Wt 250 lbs, BMI 34.86, RR 16, Temp 97.3F. Lumbar: painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Muscle strength 5/5 bilaterally. Deep tendon reflexes symmetrical. Light touch sensation intact. Hip exam unremarkable. Sacroiliac joint exam tender with provocation compression, FABER, and fortin test unremarkable. Negative straight leg raise.
Assessment/Plan: 1. Other intervertebral disc displacement, lumbar region 2. Facet syndrome. Referral to Pain Medicine for lumbar MBB.

09/26/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Saw ortho spine Dr. Cash, who recommended facet joint injections. Is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief. Reports VAS 4-5/10 today.
Objective: BP 127/83, HR 63, Temp 97.2F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L4-5 and L5-S1 facet joint injection. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.

11/13/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase. Discussed radiofrequency ablation, patient wishes to proceed. Reports VAS 6/10 today.
Objective: BP 126/82, HR 74, Temp 98.6F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L3, L4, L5 radiofrequency ablation. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.

01/11/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C:
Subjective: Patient presenting for follow-up on abnormal liver function studies
Objective: BP: 124/84 mm Hg, HR: 74 /min, Temp: 98.0 F, Oxygen sat: 96%, Wt: 266 lbs, BMI: 38.16
Assessment/Plan: Abnormal results of liver function studies. Ordered abdominal ultrasound with Doppler.

01/18/2024 - Su Spine and Sports - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain which developed after work-related injury on 4/9/22. Status post bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, still reporting limited relief. Continues with diclofenac and baclofen. VAS 7-8/10 today.
Objective: BP: 136/92 mm Hg, HR: 72 /min, Temp: 98.2 F, Wt: 259 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, Other intervertebral disc displacement, lumbar region, Other intervertebral disc disorders, lumbosacral region, Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend functional capacity evaluation as patient does not want to pursue surgical options. Continue home exercises, diclofenac 75mg BID PRN, baclofen 10mg QHS PRN. Follow up in 3-4 weeks.

01/22/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PA-C:
Subjective: 43-year-old male presents for follow-up. Ultrasound shows fatty liver, large spleen. Labs show elevated bilirubin, AST, ALT. A1C is 6.8. Glucocerebrosidase is low but not low enough to be consistent with Gaucher disease. Reports right-sided sciatica after ablation procedure. Reports work claim is being closed out.
Objective: BP: 128/88 mm Hg, HR: 70 /min, Temp: 97.6 F, Oxygen sat: 97%, Wt: 249 lbs, BMI: 35.72. Pain on right lateral epicondyle with palpation.
Assessment/Plan: Abnormal results of liver function studies, Type 2 diabetes mellitus, right elbow pain, right-sided sciatica, Gaucher disease. Ordered right elbow x-ray, CBC, CMP, Lipids, A1C, CHITO (chitotriosidase), mutation analysis. Follow up in 3 weeks.

01/31/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C - Primary Care:
Subjective: 4-view right elbow x-rays referred by Josh
Objective: No physical exam documented
Assessment/Plan: Elbow pain, right. X-ray of right elbow ordered.

02/13/2024 - Spring Mountain Medical - Follow Up - Joshua Weltha, PA-C - Primary Care:
Subjective: XR R elbow WNL. Pain is improving. Watchful waiting. Triglycerides elevated. Patient making lifestyle modifications and diet changes. A1C is 6.9. AST, ALT at patient baseline. CHITO is normal. Patient was seen by Swedish physician, director of Gaucher International Foundation, told he does not have Gauchers.
Objective: BP: 124/82 mm Hg, HR: 67 /min, Temp: 98 F, Oxygen sat: 97%, Wt: 251 lbs, BMI: 36.01. Physical exam normal.
Assessment/Plan: 1. Type 2 diabetes mellitus without complication 2. Hyperlipidemia, unspecified 3. Elevated liver enzymes. Plan includes CBC, CMP, A1C, Lipids. Follow up in 2 months.

04/17/2024 - Su Spine and Sports (Sunset) - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Per FCE done on 3/1/24 at Optimal Therapy, results were valid, consistent, and patient was placed in sedentary physical demand category, does NOT meet job requirements. Previously saw Dr. Cash who recommended continuing injection therapy; patient does not want to pursue surgical options. Continues with diclofenac and baclofen, denies side effects, providing some benefits. Reports VAS 7-8/10 today. Pain negatively affecting sleep, comfort, independence, ability to work, ADLs, and participation in activities.
Objective: BP 128/85, HR 66, RR 15, Temp 98.2F, Wt 259 lbs. Low back: ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR negative bilaterally. MMT 5/5 BLE. Sensory intact BLE. Reflexes WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, Other intervertebral disc displacement (lumbar region), Other intervertebral disc disorders (lumbosacral region), Spondylosis without myelopathy or radiculopathy (lumbar region). Continue diclofenac 75mg BID PRN and baclofen 10mg QHS PRN. Patient is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23 with minimal relief, s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23 with 95% pain relief during initial testing phase, and s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23 with limited relief. MMI, stable, ratable.

04/24/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PAC-C:
Subjective: 43-year-old male presents for follow-up. Labs completed: CBC, CMP, Lipids, A1C not actionable. ALT is 100, this is chronic, has been worked up extensively. Patient had functional exercise test completed, reports back pain. Has been changing diet, walking, losing weight, sleeping well.
Objective: BP 142/90, HR 88, Temp 98.2F, O2 sat 95%, Wt 236.6 lbs, BMI 33.94. General: WDWN, NAD. Heart: RRR without murmurs. Lungs: CTAB. Abdomen: soft, nontender, nondistended. Neurologic: No focal deficits. CN 2-12 grossly intact. Psych: AOx4.
Assessment/Plan: Elevated ALT measurement. Follow up in 3 months.

03/18/2025 - Spring Mountain Medical - Follow-up - Joshua Weltha - Primary Care:
Subjective: Not specified
Objective: Ordered X-ray and MRI for updated imaging
Assessment/Plan: X-ray completed on 03/19/2025, MRI planned for following week

03/26/2025 - Follow-up:
Subjective: Not specified
Objective: Not specified

Assessment/Plan: Follow-up scheduled for 04/15/2025

**PHYSICAL THERAPY SUMMARY**

06/22/2022 - 03/01/2024 - Optimal Therapy:
Visits: 3
Initial Findings: Patient reports low back pain started 4/9/22 from a vehicle rollover. Pain with standing upright and prolonged sitting with good posture. Impaired posture, decreased ROM in flexion and lateral bending, decreased core stability, and mild weakness. Lumbar flexion 50°, extension 20°, rotation 15° bilaterally, side bending 15° right and 20° left. Manual muscle testing 4+/5 for all lumbar movements. Mild to moderate weakness in core muscles.
Interventions: Home exercise program education, Functional Capacity Evaluation
Progress: Initially demonstrated difficulty with prolonged standing, sitting, and squatting activities. By final visit, demonstrated physical capabilities at Sedentary Physical Demand Level with significant deficits in standing, walking, pushing/pulling, lifting, carrying, sitting, and squatting tolerances.
Status: Discharged after evaluation. Not a good candidate to return to workforce. FCE results were valid and consistent, placed in sedentary physical demand category.

**CHIROPRACTIC SUMMARY**

11/16/2022 - 08/09/2023 - Advanced Spine & Rehabilitation:
Visits: 13
Initial Findings: Moderate thoracolumbar paraspinal guarding with associated tenderness. Moderate tenderness at thoracolumbar, upper lumbar facet joints bilaterally. Range of motion moderately diminished in extension with end range pain. Positive facet loading tests with ipsilateral facet mediated pain radiating around lower rib cage. Positive disc loading tests. Functional Rating Index 32% (moderate disability).
Treatments: Moist heat application, interferential current therapy, manual therapy (active/PNF stretching, trigger point release, myofascial release), supervised active lumbopelvic/abdominal core rehabilitation (abdominal crunches, bridge exercises, oblique exercises), proprioceptive training on balance board, and lumbar pump maneuvers.

Claimant Response: Initially reported mid to lower back pain (5-10/10) and rib cage pain (9-10/10) described as constant and sharp/stabbing. Pain was provoked by lying down, pushing his son in wheelchair, lifting, walking, prolonged sitting, standing and travel. By final visit, rib cage pain was 70% improved (0-10/10), but persistent mid to lower back pain continued (3-10/10). Patient experienced severe pain episodes, including after snorkeling and during travel to Vancouver, with pain reaching 10/10 at times, especially at night.
Findings: Throughout treatment, patient demonstrated myofascial guarding and tenderness in thoracolumbar, rib cage and lumbar musculature. Oswestry score improved slightly from 46% to 42% (moderate disability) between June and August 2023. Range of motion remained moderately diminished in extension with end range pain.
Recommendations: Initially treated 3x/week with conservative measures. Lumbar MRI and bone scan were requested to rule out occult rib fractures. Care ultimately transferred to pain management by Worker's Comp carrier on 08/09/2023, with recommendation to await referral back to facility following recommended procedures.

**WORK STATUS**

04/10/2022 - Initial Treatment - James Clark MD:
Restrictions and Limitations: No heavy lifting/squatting until clear by PCP

04/12/2022 - Light Duty Job Offer - Nye County Human Resources:
Restrictions and Limitations: No heavy lifting, squatting or running until cleared
Date of Restrictions and Limitations: Beginning April 10, 2022 until released to return to full duty

06/07/2022 - Certification of Disability:
Restrictions and Limitations: Released to full duty

06/08/2022 - Work Status:
Restrictions and Limitations: No bending at waist, no stooping, and no lifting
Date of Restrictions and Limitations: Released to modified duty

09/27/2022 - Certification of Disability - Alexander Noche, NP:
Restrictions and Limitations: Released to full duty with no restrictions
Date of Restrictions and Limitations: 09/27/2022

08/09/2023 - Physician's Report - Alexander S. Janda, DC:
Restrictions and Limitations: Unable to work due to injury or mental or physical illness. This includes physical aspects/requirements of his law enforcement duties.
Date of Restrictions and Limitations: Certified as of 08/09/2023

11/14/2023 - Physician's Statement:
Restrictions and Limitations: Limited mobility due to lumbar injury and continued pain as a result of a work-related motor vehicle accident. Thoracolumbar musculoligamentous injury, circumferential disc bulge and annular fissure, clinical facet medical pain, clinical discogenic pain generator.
Date of Restrictions and Limitations: Advised to stop work on 11/14/2023.

11/14/2023 - Physician's Statement - Joshua Weltha, PA-C:
Restrictions and Limitations: No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally. Not able to return to work in law enforcement.
Date of Restrictions and Limitations: From 07/10/2023

04/24/2024 - Joshua Weltha, PA-C:
Restrictions and Limitations: Occasionally able to lift/carry 1-100+ lbs. Occasionally: stand, walk, balance, stoop, kneel, finger, crouch, crawling, grasping, climbing, pushing, pulling, bending. Frequently: Sitting. Not able to return to work in law enforcement capacity.
Date of Restrictions and Limitations: From 04/24/2024 to 07/24/2024

03/26/2025 - Abilities Form - Joshua Weltha, PA-C:
Restrictions and Limitations: Patient needs to adjust between sitting, standing, and laying down to adjust for pain and discomfort as needed. Patient also needs to discontinue activities when they cause pain or discomfort. Can

occasionally lift/carry 0-10 lbs. Can frequently sit. Can occasionally stand, walk, climb, bend, kneel, drive, and finger.
Date of Restrictions and Limitations: 03/26/2025

**INVESTIGATIONS**

02/14/2024 - Surveillance Report:
Purpose: To gather information about David Boruchowitz, a Police Captain at Nye County.
Findings: The investigation identified multiple social media accounts belonging to the claimant across platforms (Facebook, Instagram, Twitter, LinkedIn, TikTok, YouTube, etc.). News articles documented that the claimant was placed on administrative leave in 2023 following federal indictment on charges of wire fraud, perjury, and civil rights violations related to the alleged false arrest of a Valley Electric Association CEO. Additional findings included a wrongful death lawsuit filed against the claimant alleging he turned off his body camera during a negotiation with a suicidal individual. Background data collection included vehicle information (2020 COTC utility vehicle, 2023 Honda Civic, and 2021 RAM truck), driver's license information, address history (primarily in Pahrump, NV with previous residence in New York), and business affiliations. No criminal records, traffic infractions, civil cases, judgments, liens, or foreclosure records were found.
Conclusions: The claimant is currently on administrative leave from his position as Police Captain at Nye County Sheriff's Office pending investigation of federal charges. Claimant has business affiliations with Breatheasy Properties LLC where he is listed as Managing Member and voter registration as a Democrat.

Following review of the available documentation, there was sufficient and consistent medical information to render my opinion as outlined below, and there was no need to speak to a treating provider to obtain further clarification. This does not preclude a provider request for clarification if deemed applicable.

**QUESTIONS AND ANSWERS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Sprain of ligaments of lumbar spine (S33.5XXA)
Lumbar spondylosis without myelopathy or radiculopathy, lumbar region (M47.816)
Low back pain (M54.5)
Facet syndrome, lumbar region
Thoracic sprain/strain

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Type 2 diabetes mellitus without complications (E11.9)
Obesity (E66.9)
Hyperlipidemia, unspecified (E78.5)

Umbilical hernia
Elevated liver enzymes
Right Elbow pain
Sleep apnea
Hepatic steatosis
Splenomegaly

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 10/08/2024 and forward. a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s) provide a detailed explanation.**

The claimant is a 44-year-old police officer/captain diagnosed with low back pain, other specific arthropathies.

On April 10, 2022, a CT scan of the cervical spine was performed without contrast. The imaging showed no acute abnormalities, with normal vertebral alignment and spacing. No significant spondylotic changes were noted.

On April 10, 2022, a CT scan of the chest was performed without contrast. There was no evidence of acute intrathoracic injury or osseous abnormality.

On April 10, 2022, a CT scan of the abdomen and pelvis with contrast was performed. Findings included hepatic steatosis, post-cholecystectomy status, and a small umbilical hernia containing fat. No acute intra-abdominal injury was seen.

On May 13, 2022, a chest X-ray was performed. The study revealed a normal chest without any significant skeletal abnormalities.

On June 1, 2022, lumbar spine X-rays were performed. Lumbar alignment was maintained, with intervertebral disc space narrowing and anterior marginal osteophytic spurring at L2-L3 and L3-L4. Multilevel degenerative disc disease was noted.

On December 13, 2022, an MRI of the lumbar spine without contrast was performed. Mild multilevel degenerative changes were noted, most pronounced at L5-S1, along with a levocurvature of the lumbar spine. Various disc bulges, facet arthropathy, neuroforaminal narrowing, and a Grade 1 retrolisthesis of L5 on S1 were documented, with possible nerve root abutment.

On August 28, 2023, Dr. Peter Su performed bilateral L4-5 and L5-S1 transforaminal epidural steroid injections. The patient reported no relief following the procedure.

On November 6, 2023, Dr. Peter Su administered bilateral L4-5 and L5-S1 facet joint injections. The patient reported 95% initial pain relief after the procedure.

On December 11, 2023, Dr. Peter Su performed bilateral radiofrequency ablation at L3, L4, and L5. This was done for low back pain and facet syndrome, but the patient only experienced minimal relief.

On January 11, 2024, a follow-up office visit was conducted by Joshua Weltha, PA-C. The patient presented for ongoing evaluation of abnormal liver function studies. Vitals were stable, and an abdominal ultrasound with Doppler was ordered.

On January 18, 2024, Dr. Peter Su conducted a follow-up visit in physical medicine and rehabilitation. The 43-year-old male reported persistent low back pain post-ablation with limited relief. Examination revealed tenderness and facet loading pain at L4-5 and L5-S1. Diagnoses included lumbar sprain, disc displacement, disc disorders, and spondylosis. Continued conservative care was recommended.

On January 22, 2024, a follow-up visit was conducted by Joshua Weltha, PA-C. The patient presented for continued abnormal liver labs and right-sided sciatica post-ablation. Additional diagnoses included type 2 diabetes, right elbow pain, and possible Gaucher disease. Labs and imaging were ordered.

On January 31, 2024, an office visit was conducted by Joshua Weltha, PA-C. The visit involved assessment of right elbow pain, and an X-ray was ordered. No physical exam was documented.

On February 13, 2024, a follow-up visit was performed by Joshua Weltha, PA-C. The patient reported improving elbow pain and discussed lab findings including elevated triglycerides and liver enzymes. Gaucher disease was ruled out. Continued lifestyle changes and follow-up lab work were planned.

On April 17, 2024, Dr. Peter Su performed a follow-up visit in physical medicine and rehabilitation. The patient reported chronic low back pain post-injury, with limited benefit from previous injections and radiofrequency ablation. Functional capacity evaluation indicated sedentary work level. Conservative care was continued, and the patient was considered at MMI.

On April 24, 2024, a follow-up visit was conducted by Joshua Weltha, PA-C. The patient reported experiencing chronic back pain. Labs showed persistently elevated ALT, and general exam findings were within normal limits. Continued monitoring was recommended.

On March 18, 2025, a follow-up visit was conducted by Joshua Weltha, PA-C. Imaging was ordered, including an X-ray completed on March 19, 2025, and an MRI scheduled for the following week. No further subjective findings were documented.

After review of the medical records, impairment would be supported from 10/08/2024 and forward. David Boruchowitz is a 44-year-old male diagnosed with chronic low back pain and other specific arthropathies after an off-road vehicle rollover on 04/09/2022. His initial imaging on April 10, 2022, included CT scans of the cervical spine, chest, and abdomen/pelvis. These revealed no acute cervical or thoracic abnormalities, but did show hepatic steatosis, a post-cholecystectomy status, and a small umbilical hernia. A chest X-ray in May 2022 was unremarkable. June 2022 lumbar X-rays revealed multilevel degenerative disc disease with anterior marginal osteophytes, and a December 2022 lumbar MRI confirmed mild multilevel degenerative changes, levocurvature, disc bulges, facet arthropathy, and a Grade 1 retrolisthesis at L5-S1 with possible nerve root abutment.

Interventional pain procedures were initiated in 2023. On August 28, 2023, Dr. Peter Su performed bilateral L4-5 and L5-S1 transforaminal epidural steroid injections with no reported relief. This was followed by bilateral facet joint injections on November 6, 2023, which initially provided 95% pain relief. A radiofrequency ablation at L3, L4, and L5 was performed on December 11, 2023, but yielded minimal long-term benefit. Follow-up evaluations by Dr. Su in January and April 2024 confirmed ongoing low back pain, limited response to prior interventions, and diagnoses including lumbar sprain, disc displacement, spondylosis, and facet syndrome. A Functional Capacity Evaluation in March 2024 placed the patient in the sedentary physical demand category, and he was deemed at Maximum Medical Improvement (MMI) and stable.

Concurrently, primary care provider Joshua Weltha, PA-C, managed comorbidities including abnormal liver function, type 2 diabetes, hyperlipidemia, and right elbow pain. Lab work and imaging were pursued throughout early 2024, and Gaucher disease was ultimately ruled out. Persistent liver enzyme elevation, fatty liver, and elevated triglycerides were managed conservatively with lifestyle modifications. As of March 2025, updated imaging was ordered to further evaluate the patient's ongoing musculoskeletal complaints.

The following restrictions and limitations are recommended from 10/08/2024 and forward

8 hours/day – 5 days/week (40 hours per week)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- with use of bilateral upper extremities
-Lifting: Occasional, up to 20 pounds BUE
-Pushing: Occasional, up to 20 pounds BUE
-Pulling: Occasional, up to 20 pounds BUE
-Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below waist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral
-Keyboard/mousing: Frequent, bilateral

Use of lower extremities for foot controls: Occasional, bilateral
Climbing stairs: Occasional with the use of a handrail

Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

**4. Treatment opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

Yes, the treatment provided to David Boruchowitz appears consistent with the standard of care for chronic low back pain with degenerative changes and facet-related pathology. The diagnostic workup, including lumbar X-rays, MRI, and functional capacity evaluation, was appropriate for characterizing severity and structural involvement. Conservative management with NSAIDs, muscle relaxants, and home exercise was initiated, followed by a logical escalation to interventional procedures such as epidural steroid injections, facet joint injections, and radiofrequency ablation, all of which align with evidence-based guidelines for chronic lumbar spine pain due to disc degeneration and facet arthropathy.

There is no indication in the records provided that the claimant has been non-compliant with recommended treatment. He consistently followed up with both his spine specialist and primary care provider, completed imaging and lab work as ordered, and trialed multiple interventional procedures. Furthermore, he reported efforts to make lifestyle changes, including weight loss and dietary improvements. His decision to decline surgical intervention does not constitute non-compliance, especially since less invasive treatments were still being explored and conservative management remains a valid approach in the absence of surgical red flags or progressive neurological decline.

**5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts-child or elder care issues, or legal issues)?**

The medical records indicate the claimant is facing federal indictment on charges of wire fraud, perjury, and civil rights violations related to an alleged false arrest, as documented in the 02/14/2024 surveillance report. He was placed on administrative leave from his position as Police Captain at Nye County Sheriff's Office in 2023 pending investigation of these charges. Additionally, a wrongful death lawsuit has been filed against the claimant alleging he turned off his body camera during a negotiation with a suicidal individual. These legal issues could potentially interfere with work-related activities.

**6. Do the medical records indicate r/Is that would prevent the claimant from performing on a reliable and consistent basis?**

No, the medical records do not indicate a complete inability to perform on a reliable and consistent basis. However, documentation from March 26, 2025, in an Abilities Form completed by Joshua Weltha, PA-C, outlines notable functional restrictions. The claimant requires the ability to alternate between sitting, standing, and lying down to manage ongoing pain and discomfort. He is also advised to discontinue activities when they exacerbate symptoms. Functionally, he is limited to occasionally lifting or carrying up to 0–10 pounds, frequent sitting, and occasional standing, walking, climbing, bending, kneeling, driving, and fingering. These limitations suggest a reduced capacity for sustained physical activity but do not preclude all forms of consistent or reliable work particularly in a sedentary or accommodated role.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

Charisma Pinna, MD

Charisma Pinna, MD
Board-Certified in PM&R
State Medical Licensure
UT: 5525633-1205

Lincoln Financial[SM]

Nicole H., MS, CRC
Vocational Rehabilitation Consultant II
Group Protection

**Vocational Memorandum – Appeal Transferable Skills Analysis**

**Date:** 06/12/2025
**Claim #:** 1230082409
**Claimant:** David Boruchowitz
**Policyholder:** Nye County

**Vocational Assessment:**
This file was referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained. By way of summary, the insured is a 44-year-old Operations Captain employed with Nye County since 02/21/06. The insured discontinued work on 07/10/23 due to sprain of ligaments of lumbar spine, lumbar spondylosis without myelopathy or radiculopathy lumbar region, low back pain, facet syndrome lumbar region, and thoracic sprain/strain. For the purpose of this report, I reviewed the claim file and researched standard vocational resources. I also reviewed the previously completed Occupational Analysis (OA) dated 12/27/23, as well as the previously completed TSA report dated 04/20/25 (please see the completed TSA report for full details).

As per the prior TSA report, the insured's education and work history is included below along with the previously identified occupational alternatives:

**Education & Training:**
Education: High School Diploma, bachelor's degree, master's degree, Juris Doctorate

Certifications/Licensures:

Computer Skills: E-mail; Internet; Word Processing; Spreadsheets; Databases; Photo Software; Graphics Software; Hardware Installation/Repair; Programming Installation/Repair; Project Management; Typing WPM 120

**Work History:**

| DOT Code | Occupation Title | Years Performed | Strength Level |
|---|---|---|---|
| 375.167-034 | Police Captain* | 2006-2023 | L |

**Claimant Own Occupation*

**Summary:**
The Transferable Skills Analysis identified occupations that are within the physical abilities and identified skills level.

**Examples of Occupations identified based on national economy labor market and claimant's ability profile analysis:**

| DOT Code | Occupation | Strength | Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | Sedentary | $8,479 |
| 375.167-026 | Harbor Master | Sedentary | $17,224 |
| 189.167-034 | Security Officer | Sedentary | $11,129 |

**Wage Information is based on median 2023 Bureau of Labor Statistical Data*

Per Appeal Review Consultant request, the updated restrictions and limitations to be reviewed are outlined within the Physical Medicine and Rehabilitation Peer Review completed by Dr. O Pinna, M.D., dated 06/06/25. Restrictions include the following:

- Sit: Frequent
- Stand: Occasional
- Walk: Occasional
- Lifting: Occasional, up to 20 pounds BUE
- Pushing: Occasional, up to 20 pounds BUE
- Pulling: Occasional, up to 20 pounds BUE
- Carrying: Occasional, up to 20 pounds BUE
- Reaching
    - Over shoulder level: Occasional, bilateral
    - To desk level: Frequent, bilateral
    - Below waist level: Occasional, bilateral
- Fine manipulation: Unrestricted, bilateral
- Simple grasping: Unrestricted, bilateral
- Firm Grasping: Unrestricted, bilateral
- Finger/handle/feel: Unrestricted, bilateral
- Keyboard/mousing: Frequent, bilateral
- Use of lower extremities for foot controls: Occasional, bilateral
- Climbing stairs: Occasional with the use of a handrail
- Balancing: Frequent
- Stooping: Occasional
- Bending: Occasional
- Kneeling: Occasional
- Crouching: Occasional
- Crawling: Never
- Ladder climbing: Never
- Working at unprotected heights: Never
- Operating heavy machinery: Never
- Operating motor vehicles: Occasional

**Summary:**
An updated OASYS analysis was performed taking into consideration the above outlined updated restrictions. Upon review of the available information, this VRC has found that the previously identified occupational alternatives continue to remain viable at this time. Additionally, the insured's own occupation was identified through the updated analysis as it falls within the outlined restrictions. Updated wages are included below:

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | Strength | National Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | S | $8,831 |
| 375.167-026 | Harbor Master | S | $17,202 |
| 189.167-034 | Security Officer | S | $11,379 |
| 375.167-034 | [*] Police Captain | L | $12,324 |

**Wage Information is based on median 2024 Bureau of Labor Statistical Data*
*[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

*Note: the occupations listed above have been verified through a review of physical demands from the ERI, **and/or** a review of material and substantial functions where data does not exist in the DOT **or** is considered out-of-date due to advancements in the occupation, technology, etc. All outlined occupations would not require more than occasional standing/walking or occasional reaching over shoulder or below waist level.*

*The occupation(s) above have been included based on consideration of the insured's training, education, experience, and reviewed for current existence in the national economy.*

This memorandum will serve in lieu of a formal report. No further vocational services rendered. I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information, medical records and resources noted.

---

Respectfully submitted,

*Electronically Signed by*
*Nicole H., MS, CRC*
*Vocational Rehabilitation Consultant II*
*Group Protection*

## WORK HISTORY

| DOT Code | DOT Title | Strength | SVP | Years | Months | Meets SVP | Included in TSA | CWF |
|---|---|---|---|---|---|---|---|---|
| 375.167-034 | Police Captain, Precinct | L | 8 | 17 | 0 | y | y | n |

## ABILITY PROFILE

### Strength

| | From Work History | Adjusted Ability |
|---|---|---|
| Maximum | L (Light) | S (Sedentary) - L (Light) |

### Physical Demands

| | From Work History | Adjusted Ability |
|---|---|---|
| **Posture** | | |
| CL - Climbing | Never | Never |
| BA - Balancing | Never | Never - Frequent |
| ST - Stoop/Bending | Never | Never - Occasional |
| KN - Kneeling | Never | Never - Occasional |
| CR - Crouching | Never | Never - Occasional |
| CW - Crawling | Never | Never |
| **Manipulation** | | |
| RE - Reaching | Frequent | Never - Frequent |
| HA - Handling | Frequent | Never - No Limit |
| FI - Fingering | Frequent | Never - Frequent |
| **Tactile/Communication** | | |
| FE - Feeling | Never | Never - No Limit |
| TA - Talking | Frequent | Never - No Limit |
| HE - Hearing | Frequent | Never - No Limit |
| TS - Tasting/Smelling | Never | Never - No Limit |
| **Vision** | | |
| NE - Near Acuity | Frequent | Never - No Limit |
| FA - Far Acuity | Occasional | Never - No Limit |
| DE - Depth Perception | Occasional | Never - No Limit |
| AC - Accommodation | Occasional | Never - No Limit |
| CV - Color Vision | Occasional | Never - No Limit |
| FV - Field of Vision | Occasional | Never - No Limit |

### Environmental Conditions

| | From Work History | Adjusted Ability |
|---|---|---|
| **Exposure to Work Settings** | | |
| WE - Exposure to Weather | Occasional | Never - No Limit |
| CO - Extreme Cold (non-weather) | Never | Never - No Limit |

| | | |
|---|---|---|
| HO - Extreme Heat (non-weather) | Never | Never - No Limit |
| WT - Wet and/or Humid (non-weather) | Never | Never - No Limit |
| NO - Noise Intensity | Moderate | Very Quiet - Very Loud |
| VI - Vibration | Never | Never - No Limit |
| AT - Atmospheric Conditions (Fumes, dust, odors) | Never | Never - No Limit |
| **Hazardous Conditions** | | |
| MV - Proximity to Moving Mechanical Parts | Never | Never |
| EL - Exposure to Electrical Shock | Never | Never - No Limit |
| HI - Working in High Exposed Places | Never | Never |
| RA - Exposure to Radiation | Never | Never - No Limit |
| EX - Working with Explosives | Never | Never - No Limit |
| TX - Exposure to Toxic or Caustic Chemicals | Never | Never - No Limit |
| OT - Other Environmental Conditions | Never | Never - No Limit |

**General Education Development**

| | From Work History | Adjusted Ability |
|---|---|---|
| R - Reasoning | 5 (Scientific) | 1 (Grade 1-3) - 6 (Intellectual) |
| M - Math | 3 (Grade 7-8) | 1 (Grade 1-3) - 6 (Adv. Calc.) |
| L - Language | 4 (High School) | 1 (Grade 1-3) - 6 (Graduate) |

**Specific Vocational Preparation**

| | From Work History | Adjusted Ability |
|---|---|---|
| SVP | 8 (4-10 Years (MS-Ph.D.)) | 1 (Short Demo Only) - 8 (4-10 Years (MS-Ph.D.)) |

**Aptitudes**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Cognition** | | |
| G - General Learning Ability | 2 (Above Average) | 4 (Below Average) - 2 (Above Average) |
| V - Verbal | 2 (Above Average) | 5 (Minimal/No Ability) - 2 (Above Average) |
| N - Numerical | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| **Perception** | | |
| S - Spatial Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| P - Form Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |

| | | |
|---|---|---|
| Q - Clerical Perception | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| C - Color Discrimination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| **Dexterity** | | |
| K - Motor Coordination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| F - Finger Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| M - Manual Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| E - Eye-Hand-Foot Coordination | 5 (Minimal/No Ability) | 5 (Minimal/No Ability) |

**Work Situations / Temperaments**

| | From Work History | Adjusted Ability |
|---|---|---|
| **People Situations** | | |
| D - Directing, Controlling, Planning | In Work History | |
| I - Influencing Opinions, Attitudes, Judgments | | |
| E - Expressing Personal Feelings | | Avoid |
| A - Working Alone or Apart from Others | | Avoid |
| U - Working Under Specific Instructions | | |
| P - Dealing with People | In Work History | |
| **Performance Situations** | | |
| R - Repetitive or Short Cycle Work | | |
| V - Variety of Work Activities | | |
| S - Performing Effectively Under Stress | | |
| T - Attaining Precise Set Limits, Tolerances, and Standards | | |
| J - Making Judgments and Decisions | In Work History | |

**Worker Functions Demonstrated**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 6 - Speaking-Signaling | 7 - Handling |

**Worker Functions Excluded**

| D - Data | P - People | T - Things |
|---|---|---|
| | 0 - Mentoring | 0 - Setting Up |
| | 2 - Instructing | 1 - Precision Working |
| | 4 - Diverting | 3 - Driving-Operating |
| | | 5 - Tending |
| | | 6 - Feeding/Offbearing |

**Worker Functions Included in the Occupational Search**

| D - Data | P - People | T - Things |
|---|---|---|
| 0 - Synthesizing | 1 - Negotiating | 2 - Operating-Controlling |
| 1 - Coordinating | 3 - Supervising | 4 - Manipulating |
| 2 - Analyzing | 5 - Persuading | 7 - Handling |
| 3 - Compiling | 6 - Speaking-Signaling | |
| 4 - Computing | 7 - Serving | |
| 5 - Copying | 8 - Taking Instructions/Helping | |
| 6 - Comparing | | |

Lincoln Financial[SM]

**Nicole H., MS, CRC**
Vocational Rehabilitation Consultant II
Group Protection

**Vocational Memorandum – Appeal Transferable Skills Analysis**

**Date:** 06/12/2025
**Claim #:** 1230082409
**Claimant:** David Boruchowitz
**Policyholder:** Nye County

**Vocational Assessment:**
This file was referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained. By way of summary, the insured is a 44-year-old Operations Captain employed with Nye County since 02/21/06. The insured discontinued work on 07/10/23 due to sprain of ligaments of lumbar spine, lumbar spondylosis without myelopathy or radiculopathy lumbar region, low back pain, facet syndrome lumbar region, and thoracic sprain/strain. For the purpose of this report, I reviewed the claim file and researched standard vocational resources. I also reviewed the previously completed Occupational Analysis (OA) dated 12/27/23, as well as the previously completed TSA report dated 04/20/25 (please see the completed TSA report for full details).

As per the prior TSA report, the insured's education and work history is included below along with the previously identified occupational alternatives:

**Education & Training:**
Education: High School Diploma, bachelor's degree, master's degree, Juris Doctorate

Certifications/Licensures:

Computer Skills: E-mail; Internet; Word Processing; Spreadsheets; Databases; Photo Software; Graphics Software; Hardware Installation/Repair; Programming Installation/Repair; Project Management; Typing WPM 120

**Work History:**

| DOT Code | Occupation Title | Years Performed | Strength Level |
|---|---|---|---|
| 375.167-034 | Police Captain* | 2006-2023 | L |

**Claimant Own Occupation*

**Summary:**
The Transferable Skills Analysis identified occupations that are within the physical abilities and identified skills level.

**Examples of Occupations identified based on national economy labor market and claimant's ability profile analysis:**

| DOT Code | Occupation | Strength | Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | Sedentary | $8,479 |
| 375.167-026 | Harbor Master | Sedentary | $17,224 |
| 189.167-034 | Security Officer | Sedentary | $11,129 |

**Wage Information is based on median 2023 Bureau of Labor Statistical Data*

Per Appeal Review Consultant request, the updated restrictions and limitations to be reviewed are outlined within the Physical Medicine and Rehabilitation Peer Review completed by Dr. O Pinna, M.D., dated 06/06/25. Restrictions include the following:

- Sit: Frequent
- Stand: Occasional
- Walk: Occasional
- Lifting: Occasional, up to 20 pounds BUE
- Pushing: Occasional, up to 20 pounds BUE
- Pulling: Occasional, up to 20 pounds BUE
- Carrying: Occasional, up to 20 pounds BUE
- Reaching
  - Over shoulder level: Occasional, bilateral
  - To desk level: Frequent, bilateral
  - Below waist level: Occasional, bilateral
- Fine manipulation: Unrestricted, bilateral
- Simple grasping: Unrestricted, bilateral
- Firm Grasping: Unrestricted, bilateral
- Finger/handle/feel: Unrestricted, bilateral
- Keyboard/mousing: Frequent, bilateral
- Use of lower extremities for foot controls: Occasional, bilateral
- Climbing stairs: Occasional with the use of a handrail
- Balancing: Frequent
- Stooping: Occasional
- Bending: Occasional
- Kneeling: Occasional
- Crouching: Occasional
- Crawling: Never
- Ladder climbing: Never
- Working at unprotected heights: Never
- Operating heavy machinery: Never
- Operating motor vehicles: Occasional

**Summary:**
An updated OASYS analysis was performed taking into consideration the above outlined updated restrictions. Upon review of the available information, this VRC has found that the previously identified occupational alternatives continue to remain viable at this time. Additionally, the insured's own occupation was identified through the updated analysis as it falls within the outlined restrictions. Updated wages are included below:

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | Strength | National Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | S | $8,831 |
| 375.167-026 | Harbor Master | S | $17,202 |
| 189.167-034 | Security Officer | S | $11,379 |
| 375.167-034 | [*] Police Captain | L | $12,324 |

**Wage Information is based on median 2024 Bureau of Labor Statistical Data*
*[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

*Note: the occupations listed above have been verified through a review of physical demands from the ERI, **and/or** a review of material and substantial functions where data does not exist in the DOT **or** is considered out-of-date due to advancements in the occupation, technology, etc. All outlined occupations would not require more than occasional standing/walking or occasional reaching over shoulder or below waist level.*

*The occupation(s) above have been included based on consideration of the insured's training, education, experience, and reviewed for current existence in the national economy.*

This memorandum will serve in lieu of a formal report. No further vocational services rendered. I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information, medical records and resources noted.

---

Respectfully submitted,

*Electronically Signed by*
*Nicole H., MS, CRC*
*Vocational Rehabilitation Consultant II*
*Group Protection*

## WORK HISTORY

| DOT Code | DOT Title | Strength | SVP | Years | Months | Meets SVP | Included in TSA | CWF |
|---|---|---|---|---|---|---|---|---|
| 375.167-034 | Police Captain, Precinct | L | 8 | 17 | 0 | y | y | n |

## ABILITY PROFILE

**Strength**

| | From Work History | Adjusted Ability |
|---|---|---|
| Maximum | L (Light) | S (Sedentary) - L (Light) |

**Physical Demands**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Posture** | | |
| CL - Climbing | Never | Never |
| BA - Balancing | Never | Never - Frequent |
| ST - Stoop/Bending | Never | Never - Occasional |
| KN - Kneeling | Never | Never - Occasional |
| CR - Crouching | Never | Never - Occasional |
| CW - Crawling | Never | Never |
| **Manipulation** | | |
| RE - Reaching | Frequent | Never - Frequent |
| HA - Handling | Frequent | Never - No Limit |
| FI - Fingering | Frequent | Never - Frequent |
| **Tactile/Communication** | | |
| FE - Feeling | Never | Never - No Limit |
| TA - Talking | Frequent | Never - No Limit |
| HE - Hearing | Frequent | Never - No Limit |
| TS - Tasting/Smelling | Never | Never - No Limit |
| **Vision** | | |
| NE - Near Acuity | Frequent | Never - No Limit |
| FA - Far Acuity | Occasional | Never - No Limit |
| DE - Depth Perception | Occasional | Never - No Limit |
| AC - Accommodation | Occasional | Never - No Limit |
| CV - Color Vision | Occasional | Never - No Limit |
| FV - Field of Vision | Occasional | Never - No Limit |

**Environmental Conditions**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Exposure to Work Settings** | | |
| WE - Exposure to Weather | Occasional | Never - No Limit |
| CO - Extreme Cold (non-weather) | Never | Never - No Limit |

| | | |
|---|---|---|
| HO - Extreme Heat (non-weather) | Never | Never - No Limit |
| WT - Wet and/or Humid (non-weather) | Never | Never - No Limit |
| NO - Noise Intensity | Moderate | Very Quiet - Very Loud |
| VI - Vibration | Never | Never - No Limit |
| AT - Atmospheric Conditions (Fumes, dust, odors) | Never | Never - No Limit |
| **Hazardous Conditions** | | |
| MV - Proximity to Moving Mechanical Parts | Never | Never |
| EL - Exposure to Electrical Shock | Never | Never - No Limit |
| HI - Working in High Exposed Places | Never | Never |
| RA - Exposure to Radiation | Never | Never - No Limit |
| EX - Working with Explosives | Never | Never - No Limit |
| TX - Exposure to Toxic or Caustic Chemicals | Never | Never - No Limit |
| OT - Other Environmental Conditions | Never | Never - No Limit |

**General Education Development**

| | From Work History | Adjusted Ability |
|---|---|---|
| R - Reasoning | 5 (Scientific) | 1 (Grade 1-3) - 6 (Intellectual) |
| M - Math | 3 (Grade 7-8) | 1 (Grade 1-3) - 6 (Adv. Calc.) |
| L - Language | 4 (High School) | 1 (Grade 1-3) - 6 (Graduate) |

**Specific Vocational Preparation**

| | From Work History | Adjusted Ability |
|---|---|---|
| SVP | 8 (4-10 Years (MS-Ph.D.)) | 1 (Short Demo Only) - 8 (4-10 Years (MS-Ph.D.)) |

**Aptitudes**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Cognition** | | |
| G - General Learning Ability | 2 (Above Average) | 4 (Below Average) - 2 (Above Average) |
| V - Verbal | 2 (Above Average) | 5 (Minimal/No Ability) - 2 (Above Average) |
| N - Numerical | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| **Perception** | | |
| S - Spatial Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| P - Form Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |

| | | |
|---|---|---|
| Q - Clerical Perception | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| C - Color Discrimination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| **Dexterity** | | |
| K - Motor Coordination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| F - Finger Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| M - Manual Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| E - Eye-Hand-Foot Coordination | 5 (Minimal/No Ability) | 5 (Minimal/No Ability) |

**Work Situations / Temperaments**

| | From Work History | Adjusted Ability |
|---|---|---|
| **People Situations** | | |
| D - Directing, Controlling, Planning | In Work History | |
| I - Influencing Opinions, Attitudes, Judgments | | |
| E - Expressing Personal Feelings | | Avoid |
| A - Working Alone or Apart from Others | | Avoid |
| U - Working Under Specific Instructions | | |
| P - Dealing with People | In Work History | |
| **Performance Situations** | | |
| R - Repetitive or Short Cycle Work | | |
| V - Variety of Work Activities | | |
| S - Performing Effectively Under Stress | | |
| T - Attaining Precise Set Limits, Tolerances, and Standards | | |
| J - Making Judgments and Decisions | In Work History | |

**Worker Functions Demonstrated**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 6 - Speaking-Signaling | 7 - Handling |

**Worker Functions Excluded**

| D - Data | P - People | T - Things |
|---|---|---|
| | 0 - Mentoring | 0 - Setting Up |
| | 2 - Instructing | 1 - Precision Working |
| | 4 - Diverting | 3 - Driving-Operating |
| | | 5 - Tending |
| | | 6 - Feeding/Offbearing |

**Worker Functions Included in the Occupational Search**

| D - Data | P - People | T - Things |
|---|---|---|
| 0 - Synthesizing | 1 - Negotiating | 2 - Operating-Controlling |
| 1 - Coordinating | 3 - Supervising | 4 - Manipulating |
| 2 - Analyzing | 5 - Persuading | 7 - Handling |
| 3 - Compiling | 6 - Speaking-Signaling | |
| 4 - Computing | 7 - Serving | |
| 5 - Copying | 8 - Taking Instructions/Helping | |
| 6 - Comparing | | |

**Charisma O Pinna, MD**
Board Certified in Physical Medicine and Rehabilitation

**Claimant Name:** David Boruchowitz
**Date of Birth:**
**Date of Disability:** 7/10/2023
**Claim #:** 1230082409
**ECN #:** 294082-2
**Report Date:** 06/06/2025

## PEER REVIEW

### MEDICAL RECORDS REVIEWED

2022

- 04/09/2022 - Desert View Hospital - Emergency Room Visit
- 04/10/2022 - Desert View Hospital - CT Brain W/O
- 04/10/2022 - Desert View Hospital - CT Cervical Spine W/O
- 04/10/2022 - Desert View Hospital - CT Chest W/O
- 04/10/2022 - Desert View Hospital - CT Abdomen/Pelvis With Contrast
- 04/10/2022 - Employer's Report of Industrial Injury
- 04/12/2022 - Nye County Human Resources - Light Duty Job Offer
- 05/13/2022 - X-Ray - Chest
- 06/01/2022 - Desert Radiology - XR Lumbar Spine
- 06/07/2022 - Certification of Disability
- 06/08/2022 - Work Status
- 06/22/2022 - Desert View - Office Visit - Evaluation
- 06/22/2022 - 03/01/2024 - Optimal Therapy - Physical Therapy
- 09/27/2022 - Certification of Disability - Alexander Noche, NP
- 11/16/2022 - 08/09/2023 - Advanced Spine & Rehabilitation - Chiropractic Care
- 12/13/2022 - SimonMed NV Maryland - MRI Lumbar Spine W/O Contrast

2023

- 01/09/2023 - Desert View - Office Visit - Follow-up
- 01/17/2023 - Desert View - Office Visit - Follow-up
- 08/09/2023 - Office Visit - Follow-up
- 08/09/2023 - Physician's Report - Alexander S. Janda, DC
- 08/28/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections - Dr. Peter Su
- 09/05/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
- 09/18/2023 - Desert Institute of Spine Care - Initial Consult - Andrew M. Cash, MD - Orthopedic Spine Surgery
- 09/26/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
- 11/06/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Facet Joint Injection - Dr. Peter Su
- 11/06/2023 - Durango Surgery Center - Bilateral L4-5 and L5-S1 Facet Joint Injection - Peter Su, MD

• 11/13/2023 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation
• 11/14/2023 - Physician's Statement
• 11/14/2023 - Physician's Statement - Joshua Weltha, PA-C
• 12/11/2023 - Su Spine & Sports - Bilateral L3, L4, L5 Radiofrequency Ablation - Dr. Peter Su
• 12/11/2023 - Bilateral Ablation

2024
• 01/11/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C
• 01/11/2024 - Spring Mountain Medical - Ultrasound Abdomen
• 01/18/2024 - Su Spine and Sports - Office Visit - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation
• 01/22/2024 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha, PA-C
• 01/31/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C - Primary Care
• 01/31/2024 - Spring Mountain Medical - X-Ray - Right Elbow
• 02/13/2024 - Spring Mountain Medical - Office Visit - Follow Up - Joshua Weltha, PA-C - Primary Care
• 02/14/2024 - Surveillance Report
• 03/01/2024 - Optimal Therapy - Functional Capacity Evaluation
• 04/17/2024 - Su Spine and Sports (Sunset) - Office Visit - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation
• 04/24/2024 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha, PAC-C
• 04/24/2024 - Work Status - Joshua Weltha, PA-C

2025
• 03/18/2025 - Spring Mountain Medical - Office Visit - Follow-up - Joshua Weltha - Primary Care
• 03/19/2025 - X-Ray
• 03/26/2025 - Office Visit - Follow-up
• 03/26/2025 - Abilities Form - Joshua Weltha, PA-C

**CLINICAL DIAGNOSIS**

David Boruchowitz is a 44-year-old male (DOB: diagnosed with low back pain, other specific arthropathies.

**INJURY REPORT**

04/09/2022 – Work-Related Accident/Vehicle Rollover
Details: Claimant was searching for a missing person when the off-road vehicle they were in lost steering and rolled three times on Sandy Valley Road at approximately 10:45 PM. The vehicle came to rest upside down. Claimant was the restrained driver and was facing forward at impact. He hit his head but did not lose consciousness. Immediately after the collision, he felt shaken up and began to experience pain. Claimant sustained injuries to his shoulder, mid to lower back, and rib cage, diagnosed as shoulder and back sprain. He was transported to Desert View Hospital Emergency Room where he underwent CT scans of the chest, abdomen/pelvis, cervical spine, and brain, which showed no acute abnormalities except for hepatic steatosis. He was hospitalized from 04/09/2022 to 04/10/2022. The accident resulted in low back pain that has persisted despite

treatment. Following additional evaluation at Intermountain Healthcare, the claimant underwent radiographic evaluation of the lumbar spine. Injury to the lower back, primarily axial without radiation. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing.

04/10/2022 – Employer's Report of Industrial Injury
Details: Claimant was involved in an off-road vehicle roll over accident while on duty as a police officer. The vehicle lost steering and rolled 3 times, resulting in injuries.

**DIAGNOSTIC REPORTS**

04/10/2022 - CT Brain W/O - Desert View Hospital
1. No acute intracranial abnormality
2. Moderate mucosal thickening involves ethmoid air cells and maxillary sinuses

04/10/2022 - CT Cervical Spine W/O - Desert View Hospital
1. No acute abnormality of cervical spine
2. Normal vertebral body alignment and spacing
3. No significant spondylotic changes

04/10/2022 - CT Chest W/O - Desert View Hospital
1. No evidence of acute intrathoracic injury
2. No acute osseous abnormalities

04/10/2022 - CT Abdomen/Pelvis With Contrast - Desert View Hospital
1. No acute intra-abdominal injury
2. Hepatic steatosis
3. Status post cholecystectomy
4. Small umbilical hernia containing only fat

05/13/2022 - X-Ray - Chest
1. Normal chest
2. No skeletal abnormalities of significance

06/01/2022 - XR Lumbar Spine - Desert Radiology
1. Lumbar alignment maintained
2. Intervertebral disc space narrowing with anterior marginal osteophytic spurring at L2-L3 and L3-L4
3. Multilevel degenerative disc disease

12/13/2022 - MRI Lumbar Spine W/O Contrast - SimonMed NV Maryland
1. Mild multilevel degenerative changes, worst at L5-S1
2. Levocurvature of the lumbar spine
3. L1-L2: Minimal circumferential disc bulge, no significant neuroforaminal narrowing or spinal canal stenosis
4. L2-L3: Minimal bilobed disc bulge, minimal facet arthropathy, no significant neuroforaminal narrowing or

spinal canal stenosis
5. L3-L4: Tiny circumferential disc bulge, minimal facet arthropathy, effacement of ventral thecal sac, mild lateral recess narrowing
6. L4-L5: Minimal circumferential disc bulge, mild facet arthropathy, mild bilateral neuroforaminal narrowing, possible minimal abutment of exiting left L4 nerve root
7. L5-S1: Circumferential disc bulge and annular fissure, minimal facet arthropathy, minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing, suspected abutment of bilateral descending S1 nerve roots
8. Grade 1 retrolisthesis of L5 on S1

01/11/2024 - Ultrasound Abdomen - Spring Mountain Medical
1. Hepatic steatosis
2. Splenomegaly (length up to 15 cm)
3. Status post cholecystectomy
4. Normal common bile duct caliber

01/31/2024 - X-Ray - Right Elbow - Spring Mountain Medical
1. Normal findings, no abnormalities detected

03/01/2024 - Functional Capacity Evaluation - Optimal Therapy
1. Results were valid and consistent
2. Placed claimant in sedentary physical demand category
3. Does not meet job requirements

03/19/2025 - X-Ray
1. Ordered by physician on 03/18/2025
2. Completed on 03/19/2025

**OPERATIVE REPORTS**

11/06/2023 - Durango Surgery Center - Bilateral L4-5 and L5-S1 Facet Joint Injection - Peter Su, MD:
Pre-op Diagnosis: Lumbar facet arthropathy
Operative Findings: In an oblique view with clear visualization of zygoapophyseal joint, a 25-gauge 3.5 inch needle was directed in gun-barrel fashion towards the superior aspect of the facet joint (L4-5 and L5-S1) until the joint space was entered on the left and right. After negative aspiration, radiographic contrast was injected through the needle. There was excellent spread within the facet joint itself on the left and right at each level. There was no vascular uptake of contrast. There was no paresthesia. This was followed by a total of about 1cc of mix (2cc Normal Saline, 2cc of 1% lidocaine and 10mg dexamethasone) into each joint.
Complications: None
Post-op Status: Patient tolerated the procedure well with no apparent complications. Blood loss was minimal. Patient was monitored for approximately 30 minutes, demonstrated pre-operative levels of awareness, met all discharge criteria and was discharged home in stable condition with a chaperone.

12/11/2023 - Bilateral Ablation:
Pre-op Diagnosis: Not specified
Operative Findings: Not specified
Complications: Not specified
Post-op Status: Limited relief reported at 01/18/2024 follow-up

**PROCEDURE REPORTS**

08/28/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 transforaminal epidural steroid injections
Outcome: No relief reported

11/06/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Facet Joint Injection - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 facet joint injection
Outcome: 95% initial pain relief reported

12/11/2023 - Su Spine & Sports - Bilateral L3, L4, L5 Radiofrequency Ablation - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain, facet syndrome
Procedure Details: Bilateral L3, L4, L5 radiofrequency ablation
Outcome: Minimal relief reported

**OFFICE VISITS**

06/22/2022 - Desert View - Evaluation:
Subjective: Low back pain and occasional cervical pain following a rollover accident at work on 04/09/2022
Objective: Impaired posture, decreased ROM, core stability and mild weakness
Assessment/Plan: Referred to physical therapy, Home exercise program

01/09/2023 - Desert View - Follow-up:
Subjective: Pain is more accurately described about the lumbar. Reports 3 episodes of severe pain. Woke up in panic after snorkeling.
Objective: Not specified
Assessment/Plan: Not specified

01/17/2023 - Desert View - Follow-up:
Subjective: Back pain has been more pronounced. Tries to get up to gain relief. Rib cage pain persists.
Objective: Not specified
Assessment/Plan: Not specified

08/09/2023 - Follow-up:
Subjective: Has been undergoing conservative treatment
Objective: Not specified
Assessment/Plan: Underwent pain management consult, recommended for epidural injections

09/05/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Pain located at lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worse with movement and range of motion, alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Reports VAS 2-3/10 today. Reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, and activities of daily living.
Objective: BP 134/85, HR 71, Temp 98.2F. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Start diclofenac 75mg BID PRN inflammatory pain. Start baclofen 10mg QHS PRN muscle spasms. Follow-up in 3-4 weeks.

09/18/2023 - Desert Institute of Spine Care - Initial Consult - Andrew M. Cash, MD - Orthopedic Spine Surgery:
Subjective: 43-year-old male involved in work-related motor vehicle accident on 04/09/2022. Patient states he lost control of the OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. The worst back pain level is 10/10. Reports no radicular symptoms in lower extremities. Has had chiropractic and injection treatment.
Objective: Ht 5'11", Wt 250 lbs, BMI 34.86, RR 16, Temp 97.3F. Lumbar: painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Muscle strength 5/5 bilaterally. Deep tendon reflexes symmetrical. Light touch sensation intact. Hip exam unremarkable. Sacroiliac joint exam tender with provocation compression, FABER, and fortin test unremarkable. Negative straight leg raise.
Assessment/Plan: 1. Other intervertebral disc displacement, lumbar region 2. Facet syndrome. Referral to Pain Medicine for lumbar MBB.

09/26/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Saw ortho spine Dr. Cash, who recommended facet joint injections. Is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief. Reports VAS 4-5/10 today.
Objective: BP 127/83, HR 63, Temp 97.2F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L4-5 and L5-S1 facet joint injection. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.

11/13/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase. Discussed radiofrequency ablation, patient wishes to proceed. Reports VAS 6/10 today.
Objective: BP 126/82, HR 74, Temp 98.6F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L3, L4, L5 radiofrequency ablation. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.

01/11/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C:
Subjective: Patient presenting for follow-up on abnormal liver function studies
Objective: BP: 124/84 mm Hg, HR: 74 /min, Temp: 98.0 F, Oxygen sat: 96%, Wt: 266 lbs, BMI: 38.16
Assessment/Plan: Abnormal results of liver function studies. Ordered abdominal ultrasound with Doppler.

01/18/2024 - Su Spine and Sports - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain which developed after work-related injury on 4/9/22. Status post bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, still reporting limited relief. Continues with diclofenac and baclofen. VAS 7-8/10 today.
Objective: BP: 136/92 mm Hg, HR: 72 /min, Temp: 98.2 F, Wt: 259 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, Other intervertebral disc displacement, lumbar region, Other intervertebral disc disorders, lumbosacral region, Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend functional capacity evaluation as patient does not want to pursue surgical options. Continue home exercises, diclofenac 75mg BID PRN, baclofen 10mg QHS PRN. Follow up in 3-4 weeks.

01/22/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PA-C:
Subjective: 43-year-old male presents for follow-up. Ultrasound shows fatty liver, large spleen. Labs show elevated bilirubin, AST, ALT. A1C is 6.8. Glucocerebrosidase is low but not low enough to be consistent with Gaucher disease. Reports right-sided sciatica after ablation procedure. Reports work claim is being closed out.
Objective: BP: 128/88 mm Hg, HR: 70 /min, Temp: 97.6 F, Oxygen sat: 97%, Wt: 249 lbs, BMI: 35.72. Pain on right lateral epicondyle with palpation.
Assessment/Plan: Abnormal results of liver function studies, Type 2 diabetes mellitus, right elbow pain, right-sided sciatica, Gaucher disease. Ordered right elbow x-ray, CBC, CMP, Lipids, A1C, CHITO (chitotriosidase), mutation analysis. Follow up in 3 weeks.

01/31/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C - Primary Care:
Subjective: 4-view right elbow x-rays referred by Josh
Objective: No physical exam documented
Assessment/Plan: Elbow pain, right. X-ray of right elbow ordered.

02/13/2024 - Spring Mountain Medical - Follow Up - Joshua Weltha, PA-C - Primary Care:
Subjective: XR R elbow WNL. Pain is improving. Watchful waiting. Triglycerides elevated. Patient making lifestyle modifications and diet changes. A1C is 6.9. AST, ALT at patient baseline. CHITO is normal. Patient was seen by Swedish physician, director of Gaucher International Foundation, told he does not have Gauchers.
Objective: BP: 124/82 mm Hg, HR: 67 /min, Temp: 98 F, Oxygen sat: 97%, Wt: 251 lbs, BMI: 36.01. Physical exam normal.
Assessment/Plan: 1. Type 2 diabetes mellitus without complication 2. Hyperlipidemia, unspecified 3. Elevated liver enzymes. Plan includes CBC, CMP, A1C, Lipids. Follow up in 2 months.

04/17/2024 - Su Spine and Sports (Sunset) - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Per FCE done on 3/1/24 at Optimal Therapy, results were valid, consistent, and patient was placed in sedentary physical demand category, does NOT meet job requirements. Previously saw Dr. Cash who recommended continuing injection therapy; patient does not want to pursue surgical options. Continues with diclofenac and baclofen, denies side effects, providing some benefits. Reports VAS 7-8/10 today. Pain negatively affecting sleep, comfort, independence, ability to work, ADLs, and participation in activities.
Objective: BP 128/85, HR 66, RR 15, Temp 98.2F, Wt 259 lbs. Low back: ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR negative bilaterally. MMT 5/5 BLE. Sensory intact BLE. Reflexes WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, Other intervertebral disc displacement (lumbar region), Other intervertebral disc disorders (lumbosacral region), Spondylosis without myelopathy or radiculopathy (lumbar region). Continue diclofenac 75mg BID PRN and baclofen 10mg QHS PRN. Patient is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23 with minimal relief, s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23 with 95% pain relief during initial testing phase, and s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23 with limited relief. MMI, stable, ratable.

04/24/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PAC-C:
Subjective: 43-year-old male presents for follow-up. Labs completed: CBC, CMP, Lipids, A1C not actionable. ALT is 100, this is chronic, has been worked up extensively. Patient had functional exercise test completed, reports back pain. Has been changing diet, walking, losing weight, sleeping well.
Objective: BP 142/90, HR 88, Temp 98.2F, O2 sat 95%, Wt 236.6 lbs, BMI 33.94. General: WDWN, NAD. Heart: RRR without murmurs. Lungs: CTAB. Abdomen: soft, nontender, nondistended. Neurologic: No focal deficits. CN 2-12 grossly intact. Psych: AOx4.
Assessment/Plan: Elevated ALT measurement. Follow up in 3 months.

03/18/2025 - Spring Mountain Medical - Follow-up - Joshua Weltha - Primary Care:
Subjective: Not specified
Objective: Ordered X-ray and MRI for updated imaging
Assessment/Plan: X-ray completed on 03/19/2025, MRI planned for following week

03/26/2025 - Follow-up:
Subjective: Not specified
Objective: Not specified

Assessment/Plan: Follow-up scheduled for 04/15/2025

**PHYSICAL THERAPY SUMMARY**

06/22/2022 - 03/01/2024 - Optimal Therapy:
Visits: 3
Initial Findings: Patient reports low back pain started 4/9/22 from a vehicle rollover. Pain with standing upright and prolonged sitting with good posture. Impaired posture, decreased ROM in flexion and lateral bending, decreased core stability, and mild weakness. Lumbar flexion 50°, extension 20°, rotation 15° bilaterally, side bending 15° right and 20° left. Manual muscle testing 4+/5 for all lumbar movements. Mild to moderate weakness in core muscles.
Interventions: Home exercise program education, Functional Capacity Evaluation
Progress: Initially demonstrated difficulty with prolonged standing, sitting, and squatting activities. By final visit, demonstrated physical capabilities at Sedentary Physical Demand Level with significant deficits in standing, walking, pushing/pulling, lifting, carrying, sitting, and squatting tolerances.
Status: Discharged after evaluation. Not a good candidate to return to workforce. FCE results were valid and consistent, placed in sedentary physical demand category.

**CHIROPRACTIC SUMMARY**

11/16/2022 - 08/09/2023 - Advanced Spine & Rehabilitation:
Visits: 13
Initial Findings: Moderate thoracolumbar paraspinal guarding with associated tenderness. Moderate tenderness at thoracolumbar, upper lumbar facet joints bilaterally. Range of motion moderately diminished in extension with end range pain. Positive facet loading tests with ipsilateral facet mediated pain radiating around lower rib cage. Positive disc loading tests. Functional Rating Index 32% (moderate disability).
Treatments: Moist heat application, interferential current therapy, manual therapy (active/PNF stretching, trigger point release, myofascial release), supervised active lumbopelvic/abdominal core rehabilitation (abdominal crunches, bridge exercises, oblique exercises), proprioceptive training on balance board, and lumbar pump maneuvers.

Claimant Response: Initially reported mid to lower back pain (5-10/10) and rib cage pain (9-10/10) described as constant and sharp/stabbing. Pain was provoked by lying down, pushing his son in wheelchair, lifting, walking, prolonged sitting, standing and travel. By final visit, rib cage pain was 70% improved (0-10/10), but persistent mid to lower back pain continued (3-10/10). Patient experienced severe pain episodes, including after snorkeling and during travel to Vancouver, with pain reaching 10/10 at times, especially at night.
Findings: Throughout treatment, patient demonstrated myofascial guarding and tenderness in thoracolumbar, rib cage and lumbar musculature. Oswestry score improved slightly from 46% to 42% (moderate disability) between June and August 2023. Range of motion remained moderately diminished in extension with end range pain.
Recommendations: Initially treated 3x/week with conservative measures. Lumbar MRI and bone scan were requested to rule out occult rib fractures. Care ultimately transferred to pain management by Worker's Comp carrier on 08/09/2023, with recommendation to await referral back to facility following recommended procedures.

**WORK STATUS**

04/10/2022 - Initial Treatment - James Clark MD:
Restrictions and Limitations: No heavy lifting/squatting until clear by PCP

04/12/2022 - Light Duty Job Offer - Nye County Human Resources:
Restrictions and Limitations: No heavy lifting, squatting or running until cleared
Date of Restrictions and Limitations: Beginning April 10, 2022 until released to return to full duty

06/07/2022 - Certification of Disability:
Restrictions and Limitations: Released to full duty

06/08/2022 - Work Status:
Restrictions and Limitations: No bending at waist, no stooping, and no lifting
Date of Restrictions and Limitations: Released to modified duty

09/27/2022 - Certification of Disability - Alexander Noche, NP:
Restrictions and Limitations: Released to full duty with no restrictions
Date of Restrictions and Limitations: 09/27/2022

08/09/2023 - Physician's Report - Alexander S. Janda, DC:
Restrictions and Limitations: Unable to work due to injury or mental or physical illness. This includes physical aspects/requirements of his law enforcement duties.
Date of Restrictions and Limitations: Certified as of 08/09/2023

11/14/2023 - Physician's Statement:
Restrictions and Limitations: Limited mobility due to lumbar injury and continued pain as a result of a work-related motor vehicle accident. Thoracolumbar musculoligamentous injury, circumferential disc bulge and annular fissure, clinical facet medical pain, clinical discogenic pain generator.
Date of Restrictions and Limitations: Advised to stop work on 11/14/2023.

11/14/2023 - Physician's Statement - Joshua Weltha, PA-C:
Restrictions and Limitations: No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally. Not able to return to work in law enforcement.
Date of Restrictions and Limitations: From 07/10/2023

04/24/2024 - Joshua Weltha, PA-C:
Restrictions and Limitations: Occasionally able to lift/carry 1-100+ lbs. Occasionally: stand, walk, balance, stoop, kneel, finger, crouch, crawling, grasping, climbing, pushing, pulling, bending. Frequently: Sitting. Not able to return to work in law enforcement capacity.
Date of Restrictions and Limitations: From 04/24/2024 to 07/24/2024

03/26/2025 - Abilities Form - Joshua Weltha, PA-C:
Restrictions and Limitations: Patient needs to adjust between sitting, standing, and laying down to adjust for pain and discomfort as needed. Patient also needs to discontinue activities when they cause pain or discomfort. Can

occasionally lift/carry 0-10 lbs. Can frequently sit. Can occasionally stand, walk, climb, bend, kneel, drive, and finger.
Date of Restrictions and Limitations: 03/26/2025

**INVESTIGATIONS**

02/14/2024 - Surveillance Report:
Purpose: To gather information about David Boruchowitz, a Police Captain at Nye County.
Findings: The investigation identified multiple social media accounts belonging to the claimant across platforms (Facebook, Instagram, Twitter, LinkedIn, TikTok, YouTube, etc.). News articles documented that the claimant was placed on administrative leave in 2023 following federal indictment on charges of wire fraud, perjury, and civil rights violations related to the alleged false arrest of a Valley Electric Association CEO. Additional findings included a wrongful death lawsuit filed against the claimant alleging he turned off his body camera during a negotiation with a suicidal individual. Background data collection included vehicle information (2020 COTC utility vehicle, 2023 Honda Civic, and 2021 RAM truck), driver's license information, address history (primarily in Pahrump, NV with previous residence in New York), and business affiliations. No criminal records, traffic infractions, civil cases, judgments, liens, or foreclosure records were found.
Conclusions: The claimant is currently on administrative leave from his position as Police Captain at Nye County Sheriff's Office pending investigation of federal charges. Claimant has business affiliations with Breatheasy Properties LLC where he is listed as Managing Member and voter registration as a Democrat.

Following review of the available documentation, there was sufficient and consistent medical information to render my opinion as outlined below, and there was no need to speak to a treating provider to obtain further clarification. This does not preclude a provider request for clarification if deemed applicable.

**QUESTIONS AND ANSWERS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Sprain of ligaments of lumbar spine (S33.5XXA)
Lumbar spondylosis without myelopathy or radiculopathy, lumbar region (M47.816)
Low back pain (M54.5)
Facet syndrome, lumbar region
Thoracic sprain/strain

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Type 2 diabetes mellitus without complications (E11.9)
Obesity (E66.9)
Hyperlipidemia, unspecified (E78.5)

Umbilical hernia
Elevated liver enzymes
Right Elbow pain
Sleep apnea
Hepatic steatosis
Splenomegaly

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 10/08/2024 and forward. a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s) provide a detailed explanation.**

The claimant is a 44-year-old police officer/captain diagnosed with low back pain, other specific arthropathies.

On April 10, 2022, a CT scan of the cervical spine was performed without contrast. The imaging showed no acute abnormalities, with normal vertebral alignment and spacing. No significant spondylotic changes were noted.

On April 10, 2022, a CT scan of the chest was performed without contrast. There was no evidence of acute intrathoracic injury or osseous abnormality.

On April 10, 2022, a CT scan of the abdomen and pelvis with contrast was performed. Findings included hepatic steatosis, post-cholecystectomy status, and a small umbilical hernia containing fat. No acute intra-abdominal injury was seen.

On May 13, 2022, a chest X-ray was performed. The study revealed a normal chest without any significant skeletal abnormalities.

On June 1, 2022, lumbar spine X-rays were performed. Lumbar alignment was maintained, with intervertebral disc space narrowing and anterior marginal osteophytic spurring at L2-L3 and L3-L4. Multilevel degenerative disc disease was noted.

On December 13, 2022, an MRI of the lumbar spine without contrast was performed. Mild multilevel degenerative changes were noted, most pronounced at L5-S1, along with a levocurvature of the lumbar spine. Various disc bulges, facet arthropathy, neuroforaminal narrowing, and a Grade 1 retrolisthesis of L5 on S1 were documented, with possible nerve root abutment.

On August 28, 2023, Dr. Peter Su performed bilateral L4-5 and L5-S1 transforaminal epidural steroid injections. The patient reported no relief following the procedure.

On November 6, 2023, Dr. Peter Su administered bilateral L4-5 and L5-S1 facet joint injections. The patient reported 95% initial pain relief after the procedure.

On December 11, 2023, Dr. Peter Su performed bilateral radiofrequency ablation at L3, L4, and L5. This was done for low back pain and facet syndrome, but the patient only experienced minimal relief.

On January 11, 2024, a follow-up office visit was conducted by Joshua Weltha, PA-C. The patient presented for ongoing evaluation of abnormal liver function studies. Vitals were stable, and an abdominal ultrasound with Doppler was ordered.

On January 18, 2024, Dr. Peter Su conducted a follow-up visit in physical medicine and rehabilitation. The 43-year-old male reported persistent low back pain post-ablation with limited relief. Examination revealed tenderness and facet loading pain at L4-5 and L5-S1. Diagnoses included lumbar sprain, disc displacement, disc disorders, and spondylosis. Continued conservative care was recommended.

On January 22, 2024, a follow-up visit was conducted by Joshua Weltha, PA-C. The patient presented for continued abnormal liver labs and right-sided sciatica post-ablation. Additional diagnoses included type 2 diabetes, right elbow pain, and possible Gaucher disease. Labs and imaging were ordered.

On January 31, 2024, an office visit was conducted by Joshua Weltha, PA-C. The visit involved assessment of right elbow pain, and an X-ray was ordered. No physical exam was documented.

On February 13, 2024, a follow-up visit was performed by Joshua Weltha, PA-C. The patient reported improving elbow pain and discussed lab findings including elevated triglycerides and liver enzymes. Gaucher disease was ruled out. Continued lifestyle changes and follow-up lab work were planned.

On April 17, 2024, Dr. Peter Su performed a follow-up visit in physical medicine and rehabilitation. The patient reported chronic low back pain post-injury, with limited benefit from previous injections and radiofrequency ablation. Functional capacity evaluation indicated sedentary work level. Conservative care was continued, and the patient was considered at MMI.

On April 24, 2024, a follow-up visit was conducted by Joshua Weltha, PA-C. The patient reported experiencing chronic back pain. Labs showed persistently elevated ALT, and general exam findings were within normal limits. Continued monitoring was recommended.

On March 18, 2025, a follow-up visit was conducted by Joshua Weltha, PA-C. Imaging was ordered, including an X-ray completed on March 19, 2025, and an MRI scheduled for the following week. No further subjective findings were documented.

After review of the medical records, impairment would be supported from 10/08/2024 and forward. David Boruchowitz is a 44-year-old male diagnosed with chronic low back pain and other specific arthropathies after an off-road vehicle rollover on 04/09/2022. His initial imaging on April 10, 2022, included CT scans of the cervical spine, chest, and abdomen/pelvis. These revealed no acute cervical or thoracic abnormalities, but did show hepatic steatosis, a post-cholecystectomy status, and a small umbilical hernia. A chest X-ray in May 2022 was unremarkable. June 2022 lumbar X-rays revealed multilevel degenerative disc disease with anterior marginal osteophytes, and a December 2022 lumbar MRI confirmed mild multilevel degenerative changes, levocurvature, disc bulges, facet arthropathy, and a Grade 1 retrolisthesis at L5-S1 with possible nerve root abutment.

Interventional pain procedures were initiated in 2023. On August 28, 2023, Dr. Peter Su performed bilateral L4-5 and L5-S1 transforaminal epidural steroid injections with no reported relief. This was followed by bilateral facet joint injections on November 6, 2023, which initially provided 95% pain relief. A radiofrequency ablation at L3, L4, and L5 was performed on December 11, 2023, but yielded minimal long-term benefit. Follow-up evaluations by Dr. Su in January and April 2024 confirmed ongoing low back pain, limited response to prior interventions, and diagnoses including lumbar sprain, disc displacement, spondylosis, and facet syndrome. A Functional Capacity Evaluation in March 2024 placed the patient in the sedentary physical demand category, and he was deemed at Maximum Medical Improvement (MMI) and stable.

Concurrently, primary care provider Joshua Weltha, PA-C, managed comorbidities including abnormal liver function, type 2 diabetes, hyperlipidemia, and right elbow pain. Lab work and imaging were pursued throughout early 2024, and Gaucher disease was ultimately ruled out. Persistent liver enzyme elevation, fatty liver, and elevated triglycerides were managed conservatively with lifestyle modifications. As of March 2025, updated imaging was ordered to further evaluate the patient’s ongoing musculoskeletal complaints.

The following restrictions and limitations are recommended from 10/08/2024 and forward

8 hours/day – 5 days/week (40 hours per week)

Sit: Frequent
Stand: Occasional
Walk: Occasional

Bilateral Upper Extremities- with use of bilateral upper extremities
-Lifting: Occasional, up to 20 pounds BUE
-Pushing: Occasional, up to 20 pounds BUE
-Pulling: Occasional, up to 20 pounds BUE
-Carrying: Occasional, up to 20 pounds BUE

Reaching-
-Over shoulder level: Occasional, bilateral
-To desk level: Frequent, bilateral
-Below waist level: Occasional, bilateral

Bilateral Upper Extremities-
-Fine manipulation: Unrestricted, bilateral
-Simple grasping: Unrestricted, bilateral
-Firm Grasping: Unrestricted, bilateral
-Finger/handle/feel: Unrestricted, bilateral
-Keyboard/mousing: Frequent, bilateral

Use of lower extremities for foot controls: Occasional, bilateral
Climbing stairs: Occasional with the use of a handrail

Balancing: Frequent
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Working at unprotected heights: Never
Operating heavy machinery: Never
Operating motor vehicles: Occasional

These recommendations are temporary and a follow up on or around 9/1/2025 is advised.

**4. Treatment opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

Yes, the treatment provided to David Boruchowitz appears consistent with the standard of care for chronic low back pain with degenerative changes and facet-related pathology. The diagnostic workup, including lumbar X-rays, MRI, and functional capacity evaluation, was appropriate for characterizing severity and structural involvement. Conservative management with NSAIDs, muscle relaxants, and home exercise was initiated, followed by a logical escalation to interventional procedures such as epidural steroid injections, facet joint injections, and radiofrequency ablation, all of which align with evidence-based guidelines for chronic lumbar spine pain due to disc degeneration and facet arthropathy.

There is no indication in the records provided that the claimant has been non-compliant with recommended treatment. He consistently followed up with both his spine specialist and primary care provider, completed imaging and lab work as ordered, and trialed multiple interventional procedures. Furthermore, he reported efforts to make lifestyle changes, including weight loss and dietary improvements. His decision to decline surgical intervention does not constitute non-compliance, especially since less invasive treatments were still being explored and conservative management remains a valid approach in the absence of surgical red flags or progressive neurological decline.

**5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts-child or elder care issues, or legal issues)?**

The medical records indicate the claimant is facing federal indictment on charges of wire fraud, perjury, and civil rights violations related to an alleged false arrest, as documented in the 02/14/2024 surveillance report. He was placed on administrative leave from his position as Police Captain at Nye County Sheriff's Office in 2023 pending investigation of these charges. Additionally, a wrongful death lawsuit has been filed against the claimant alleging he turned off his body camera during a negotiation with a suicidal individual. These legal issues could potentially interfere with work-related activities.

**6. Do the medical records indicate r/ls that would prevent the claimant from performing on a reliable and consistent basis?**

No, the medical records do not indicate a complete inability to perform on a reliable and consistent basis. However, documentation from March 26, 2025, in an Abilities Form completed by Joshua Weltha, PA-C, outlines notable functional restrictions. The claimant requires the ability to alternate between sitting, standing, and lying down to manage ongoing pain and discomfort. He is also advised to discontinue activities when they exacerbate symptoms. Functionally, he is limited to occasionally lifting or carrying up to 0–10 pounds, frequent sitting, and occasional standing, walking, climbing, bending, kneeling, driving, and fingering. These limitations suggest a reduced capacity for sustained physical activity but do not preclude all forms of consistent or reliable work particularly in a sedentary or accommodated role.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,



Charisma Pinna, MD
Board-Certified in PM&R
State Medical Licensure
UT: 5525633-1205

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 27, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This is to acknowledge receipt of your appeal for Long Term Disability benefits. We received your letter on 05/19/2025.

We are in the process of reviewing your appeal and we will notify you of the results within 45 days or as soon as a decision has been made.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Tue May 27 10:10:17 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: dboruchowitz@ottcmail.com
Message-ID: <1929230237.8.1748358617844@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 27, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This is to acknowledge receipt of your appeal for Long Term Disability benefits. We received your letter on 05/19/2025.

We are in the process of reviewing your appeal and we will notify you of the results within 45 days or as soon as a decision has been made.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Tue May 27 10:10:11 CDT 2025
From: Jeff Booth <Jeff.Booth@lfg.com>
To: rgott@co.nye.nv.us
Message-ID: <1681259036.3.1748358611055@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz.   You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com.   If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 27, 2025

NYE COUNTY
ATTN Ryanne Gott
2101 E. Calvada Blvd.
Suite 150
Pahrump, NV 89048

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Ryanne Gott:

We are writing in regard to the Long Term Disability appeal for David Boruchowitz.

We have found it necessary to request additional information from David.

As soon as the requested information is received, we will notify you of the disposition of the appeal. Thank you for your patience during this time.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff B
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

REF #29387056

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,

David Boruchowitz

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

00000112 LFPD7TD1 00000353

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00030112 LFPD7TD1 00003354

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

00000112 LFPD7TD1 00003355

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąąǫąíéę.

0000112 LFPD7TD1 00000356 E

Lincoln Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha Ne 68114

# GROUP EXPLANATION OF BENEFITS

**DATE:** 04/23/2025

**PAYEE:** DAVID BORUCHOWITZ

001561

**GROUP NUMBER:** 000010177363000000
**CLAIM NUMBER:** 1230082409
**PAYMENT TYPE:** Direct Deposit

**CERTIFICATE NUMBER:** 4991282

**GROUP INFORMATION:** ATTN: DANELLE SHAMRELL
Nye County
1981 E. Calvada Blvd
Suite 120
Pahrump, NV 89048

S 00001561 LFPD0MD1 00001561 E

**BENEFIT - PERIOD 4/8/2025 TO 10/8/2025**

| | |
|---|---|
| GROSS MONTHLY BENEFIT - LTD | $36,000.00 |
| RETIREMENT EMPLOYER | ($32,400.00) |
| **DEPOSIT AMOUNT** | $3,600.00 |

**MESSAGES:**

Register at www.LFG.com for 24/7 access to benefit and coverage information.

Please inform us immediately should any change occur in the disability status.

Direct Deposit has been made

***********FINAL PAYMENT MESSAGE***********

Final Benefits - If Waiver of Premium was applicable, it will terminate with this payment period.

If any questions, please call 1-800-423-2765
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



A B C D E F G H I J K L M N O P Q R S T U V W X Y Z ?

<Previous | Next > | Search | Contents | ONET NEW | Link

CODE: **375.137-014**
Buy the DOT: **Download**

TITLE(s): **DESK OFFICER (government ser.) alternate titles: op**

Supervises and coordinates activities of personnel assigned to police
Assumes responsibility for safekeeping of money and valuables take
stolen articles, and property held as evidence. Supervises work of P(
(government ser.) II 375.367-010 or POLICE OFFICER (government
search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.6(
sending and receiving police communication by telephone and radio
notification and informs commanding officer of calls and orders recei
communication systems. Records information, such as name of arre:
prisoner's name, address, and charge, to complete precinct activity
officer. Commands subordinate officers and subordinate personnel o:
assumes responsibility for efficiency and discipline of workers under
command of station house in absence of commanding officer. May m
police beats in precinct area [TRAFFIC LIEUTENANT (government se:
supervise and coordinate activities of police clerical staff [SECRETAR
(government ser.) 375.137-022]. May be designated according to ra
(government ser.); Desk Lieutenant (government ser.); Desk Sergea
**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**
ONET CROSSWALK: 61005 Police and Detective Supervisors

$0 - Start Your LLC

We Know You're Busy - We've Created The Simplest Way To Launch Y LLC.

ZenBusine

Learn Mo

Print PDF
View PDF

Printable PDF (Fre
View PDF

Form Your LLC
We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.
ZenBusiness



PAGE 15/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):28-50

- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index
- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/37/375137014.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About



PAGE 16/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

TITLE(s): **DESK OFFICER (government ser.) alternate titles: operations officer**

Supervises and coordinates activities of personnel assigned to police precinct station: Assumes responsibility for safekeeping of money and valuables taken from prisoners, lost or stolen articles, and property held as evidence. Supervises work of POLICE OFFICER (government ser.) II 375.367-010 or POLICE OFFICER (government ser.) I 375.263-014 who search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.662-022 engaged in sending and receiving police communication by telephone and radio systems. Receives notification and informs commanding officer of calls and orders received over police communication systems. Records information, such as name of arresting officer and prisoner's name, address, and charge, to complete precinct activity reports for commanding officer. Commands subordinate officers and subordinate personnel on assigned duty and assumes responsibility for efficiency and discipline of workers under command. Assumes command of station house in absence of commanding officer. May make inspection tour of police beats in precinct area [TRAFFIC LIEUTENANT (government ser.) 375.167-046]. May supervise and coordinate activities of police clerical staff [SECRETARY OF POLICE (government ser.) 375.137-022]. May be designated according to rank as Desk Captain (government ser.); Desk Lieutenant (government ser.); Desk Sergeant (government ser.).
**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**
ONET CROSSWALK: 61005 Police and Detective Supervisors



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

$0 - Start Your LLC

We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.



PAGE 17/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 18/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

City of Blaine

# Desk Officer

| | | | |
|---|---|---|---|
| **SALARY** | $29.56 - $33.18 Hourly | **LOCATION** | Blaine, MN |
| **JOB TYPE** | Part Time | **JOB NUMBER** | 175 |
| **DEPARTMENT** | Safety Services | **OPENING DATE** | 04/30/2025 |
| **CLOSING DATE** | 5/14/2025 4:30 PM Central | | |

## Description

The Desk Officer provides customer service and administrative support for the Police Department in a non-sworn capacity, which includes assisting the public in-person and by telephone, conducting background checks, and performing office/administrative functions.
Part time 24 to 29 hours weekly.

## Examples of Duties

1. Receives, answers, or refers telephone, electronic and in-person inquiries, concerns, complaints, and questions about police- and public safety-related services and issues while providing information or connecting individuals with the appropriate City resource.
2. Receives and prepares police reports from citizens, using law enforcement experience to obtain necessary information for department personnel to provide an effective response.
3. Responds to requests for information on programs, ordinances, statutes, and policies.
4. Conducts background investigations for gun permits, liquor licenses, and employment.

5. Assists with investigation-related cases and initial case follow-up.
6. Coordinates department requests including ride-along requests.
7. Participates in various department committees, City sponsored events and activities, and training.
8. Performs other duties as assigned.

**Examples of specific job duties may include, but are not limited, to:**

1. Responds to citizens' requests, concerns, and complaints by providing information or connecting them with the appropriate City resource.
2. Answer general questions about police and public safety-related services and issues.

These examples are intended only as illustrations of various types of work performed and are not necessarily all-inclusive. This job description is subject to change as the needs of the employer and requirements of the job change.

## Knowledge, Skills, and Abilities

**KNOWLEDGE, SKILLS, AND ABILITIES**

1. Law Enforcement and Criminal Justice Information Systems;
2. Data Practices and Compliance;
3. Understanding of Codes, Regulations, and Ordinances at Federal, State, County, and Local Levels;
4. Take complaints, diffuse difficult situations, and direct to the appropriate personnel;
5. Maintain an organized filing and recordkeeping system, both hard copy and electronic;
6. Work independently as well as a part of a team;
7. Make decisions using good judgment and discretion in accordance with established policies and procedures.
8. Communicate effectively, orally and in writing.
9. Establish and maintain effective working relationships with others.
10. Perform typical assignments under limited supervision with general autonomy in determining how objectives are achieved.

## Supplemental Information

**MINIMUM REQUIREMENTS**

1. Five years' experience as a MN licensed peace officer
2. Valid Driver's License

**DESIRED REQUIREMENTS**



PAGE 20/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

1. Proficient with Microsoft Office Suite.
2. Previous experience in investigations.
3. Previous supervisory or administrative experience.
4. Previous background investigations experience.

**PHYSICAL REQUIREMENTS**

Positions in this class typically require: reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions.

**Sedentary Work**: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally.

**CONDITIONS OF EMPLOYMENT**

Offer of employment is contingent upon successful completion of a comprehensive background check, drivers check and reference check.

---

**Employer**

City of Blaine

**Address**

10801 Town Square Drive NE

Blaine, Minnesota, 55449

**Phone**

763-785-6109
763-717-2624

**Website**

https://BlaineMN.gov

## Desk Officer Supplemental Questionnaire

*QUESTION 1

**Do you have at least five years' experience as a MN licensed peace officer?**

○ No



PAGE 21/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

◯ Yes

*QUESTION 2

Do you have a valid driver's license?

◯ No

◯ Yes

QUESTION 3

Do you have experience utilizing Microsoft Office or similar software program?

◯ No

◯ Yes

*QUESTION 4

Do you have experience in investigations?

◯ No

◯ Yes

*QUESTION 5

Do you have supervisory or administrative experience?

◯ No

◯ Yes

*QUESTION 6

Do you have background investigations experience?

◯ No

◯ Yes

QUESTION 7

Are you claiming a Veteran's preference?



PAGE 22/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- ◯ No
- ◯ Yes, non-Disabled Veteran
- ◯ Yes, Disabled Veteran

QUESTION 8

**How did you learn about this position?**

- ◯ Website
- ◯ I am a Current Employee
- ◯ Referral

* Required Question



PAGE 23/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

| | | |
|---|---|---|
| A | B | C |
| D | E | F |
| G | H | I |
| J | K | L |
| M | N | O |
| P | Q | R |
| S | T | U |
| V | W | X |
| Y | Z | ? |

<Previous | Next > | Search | Contents | ONET NEW | Link to this page | About

Like 0

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.
**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**
ONET CROSSWALK: 19005A Government Service Executives

View PDF
PDFOneStartToday Dow
View PDF
PDFOneStartToday Dow

- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

URL address of this page: **https://occupationalinfo.org/37/375167026.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

---

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable



PAGE 25/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.
**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**
ONET CROSSWALK: 19005A Government Service Executives



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

View PDF

PDFOneStartToday Downloa



PAGE 26/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

| | | | |
|---|---|---|---|
| **Job Title** | Harbor Master | **Department** | Harbor |
| **Reports to** | City Manger | **Salary Level** | IX |
| **Classification** | Seasonal, Exempt | **Revision Date** | 03.23.23 |

## I. General Description

This position is responsible for the security, maintenance, repair, collection of harbor permit fees, and safe usage of the Boat Harbor and facilities; Wood River boat launch and Kanakanak beach access road.

## II. Reasonable Accommodations

An individual must be able to perform each essential job duty and physical demands satisfactorily. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential duties.

## III. Essential Job Duties

- Plan, direct, manage, supervise and coordinate the administration, operations and maintenance of the Boat Harbor and its facilities including the development and implementation of written policy procedures, work standards, goals and objectives.
- Enforce all provisions, rules and regulations adopted for Harbor facilities.
- Render aid to distressed vessels in the Harbor.
- Prepare and submit reports and recommendations concerning new rules and regulations and fee structures to ensure safe and effective operation of Harbor facilities.
- Plan, prepare, and organize workloads and staff assignments, expedite workflow, and make staffing decisions for department.
- Oversee department personnel matters, make recommendations regarding appointments, promotions, suspensions, and dismissal of department employees.
- Assist Human Resources with recruitment and selection of employees.
- Execute end of season department personnel evaluations.
- Provide monthly staff report to City Manager for City Council meeting.
- Collect Harbor fees for marine vessels.
- Post Harbor speeds, classification, and use of Harbor areas.
- Direct waterborne traffic as conditions require and monitor pedestrian traffic on floats and ramps.
- Move boats as need may arise.
- Regularly inspect facilities, monitor maintenance, and make recommendations for repairs.



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

- Operate and maintain equipment and machinery for boat launching and haul-out.
- Supervise Harbor staff.
- Review and make recommendations for annual department budget and monitor revenues and expenditures.
- Monitor contracted Harbor projects.
- Prepare grants for Harbor improvements.
- Attend City Council meetings as required.

## IV. Knowledge, Skills and Abilities

Knowledge

This position requires proficiency in the following areas:

- Must have a general knowledge of the construction and operations of marine-related Harbor facilities, Coast Guard regulations and maritime law, and marine vessels.
- Must be familiar with and have a working knowledge of Coast Guard, HazMat, and Alaska Department of Environmental Conservation regulations.
- Ability to assist in all marine emergencies, including oil spill response.

Skills and Abilities:

This position must demonstrate the following skills and abilities:

- Must be able to prepare clear, concise reports.
- Must be able to operate the following office equipment: computer, including word-processing, and spreadsheets.
- Must be able to write and maintain Harbor security plans.
- Must have the ability to take direction from the City Manager and exercise independent judgment in accomplishing assigned tasks in a reasonable and timely manner.
- Demonstrate skill in operating motor-powered watercraft and equipment.
- Interact with the public, co-workers, outside agencies, and vendors in a courteous, helpful, and professional manner.

## V. Work Environment and Physical Effort

Office environment combined with an active Boat Harbor. The noise level in the work environment will vary from quiet to moderately noisy depending on other employees or members of the public with business in the office or any equipment noises outside. While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment,



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone.

## VI. Education and/or Experience

Education:

- High school diploma or GED.
- Graduation from an accredited college or university with a bachelor's degree or equivalent in Engineering, Transportation, Business Administration, Public Administration, Marine Science or a related field, preferred
- First aid / CPR certification, or ability to obtain within one year.
- An equivalent combination of education and experience sufficient to successfully perform the essential duties of the job as listed above.

Experience:

- At least two years of experience in Harbor operations. Supervisory and administrative experience, preferred.

## VII. Certification and Training

- National Incident Management System (NIMS) compliance training and certification, within 3 months of hire.
- Transportation Worker Identification Credential (TWIC) card within 1 year of hire.
- U.S. Coast Guard licenses or certifications desirable.

## VIII. Supervisory Responsibility

Harbor staff.

## IX. Scope of Employment

Regular, full-time, seasonal, exempt position.

## X. Acknowledgment

I understand the duties of this position as detailed in this job description.

Employee:________________________________ Date:______________________________



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF DILLINGHAM ALASKA

# JOB DESCRIPTION – HARBOR MASTER

This job description is accurate and has been reviewed with the above employee.

Supervisor:________________________________Date:___________________________

This job description approved by:

| | Initials | Date |
|---|---|---|
| City Manager: | ______________ | ______________ |



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z ?

‹Previous | Next › | Search | Contents | ONET new | Link to this page | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.
**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**
ONET CROSSWALK: 19999F Security Managers




- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index



PAGE 31/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/18/189167034.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal



PAGE 32/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.

**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**

ONET CROSSWALK: 19999F Security Managers



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03



PAGE 33/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

O*NET OnLine

Occupation keyword search

electrician Go

# Security Guards

**33-9032.00**

Bright Outlook | Updated 2025

Guard, patrol, or monitor premises to prevent theft, violence, or infractions of rules. May operate x-ray and metal detector equipment.

**Sample of reported job titles:** Armed Security Officer, Campus Security Officer (CSO), Custom Protection Officer (CPO), Customer Service Security Officer, Hotel Security Officer, Loss Prevention Officer, Safety and Security Officer, Security Agent, Security Guard, Security Officer

Summary | Details | Custom | Easy Read | Veterans | Español

Contents

## Occupation-Specific Information

## Tasks

All 14 displayed

- Lock doors and gates of entrances and exits to secure buildings.
- Patrol industrial or commercial premises to prevent and detect signs of intrusion and ensure security of doors, windows, and gates.
- Respond to medical emergencies by administering basic first aid or by obtaining assistance from paramedics.
- Answer alarms and investigate disturbances.
- Circulate among visitors, patrons, or employees to preserve order and protect property.
- Monitor and authorize entrance and departure of employees, visitors, and other persons to guard against theft and maintain security of premises.



PAGE 34/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- Write reports of daily activities and irregularities, such as equipment or property damage, theft, presence of unauthorized persons, or unusual occurrences.
- Warn persons of rule infractions or violations, and apprehend or evict violators from premises, using force when necessary.
- Answer telephone calls to take messages, answer questions, and provide information during non-business hours or when switchboard is closed.
- Call police or fire departments in cases of emergency, such as fire or presence of unauthorized persons.
- Operate detecting devices to screen individuals and prevent passage of prohibited articles into restricted areas.
- Inspect and adjust security systems, equipment, or machinery to ensure operational use and to detect evidence of tampering.
- Escort or drive motor vehicle to transport individuals to specified locations or to provide personal protection.
- Monitor and adjust controls that regulate building systems, such as air conditioning, furnace, or boiler.

Find occupations related to multiple tasks

## Technology Skills

All 8 displayed

- **Cloud-based data access and sharing software** — Microsoft SharePoint
- **Electronic mail software** — Microsoft Outlook
- **Network monitoring software** — Wireshark
- **Office suite software** — Corel WordPerfect Office Suite; Microsoft Office software
- **Spreadsheet software** — IBM Lotus 1-2-3; Microsoft Excel
- **Transaction security and virus protection software** — McAfee; NortonLifeLock cybersecurity software
- **Video conferencing software** — FaceTime
- **Word processing software** — Microsoft Word

Hot Technologies are requirements most frequently included across all employer job postings.
See all 5 Hot Technologies for this occupation.

## Occupational Requirements



PAGE 35/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):28-50

## Work Activities

All 35 displayed

- **Identifying Objects, Actions, and Events** — Identifying information by categorizing, estimating, recognizing differences or similarities, and detecting changes in circumstances or events.
- **Getting Information** — Observing, receiving, and otherwise obtaining information from all relevant sources.
- **Communicating with Supervisors, Peers, or Subordinates** — Providing information to supervisors, co-workers, and subordinates by telephone, in written form, e-mail, or in person.
- **Documenting/Recording Information** — Entering, transcribing, recording, storing, or maintaining information in written or electronic/magnetic form.
- **Establishing and Maintaining Interpersonal Relationships** — Developing constructive and cooperative working relationships with others, and maintaining them over time.
- **Performing for or Working Directly with the Public** — Performing for people or dealing directly with the public. This includes serving customers in restaurants and stores, and receiving clients or guests.
- **Making Decisions and Solving Problems** — Analyzing information and evaluating results to choose the best solution and solve problems.
- **Organizing, Planning, and Prioritizing Work** — Developing specific goals and plans to prioritize, organize, and accomplish your work.
- **Training and Teaching Others** — Identifying the educational needs of others, developing formal educational or training programs or classes, and teaching or instructing others.
- **Communicating with People Outside the Organization** — Communicating with people outside the organization, representing the organization to customers, the public, government, and other external sources. This information can be exchanged in person, in writing, or by telephone or e-mail.
- **Evaluating Information to Determine Compliance with Standards** — Using relevant information and individual judgment to determine whether events or processes comply with laws, regulations, or standards.
- **Resolving Conflicts and Negotiating with Others** — Handling complaints, settling disputes, and resolving grievances and conflicts, or otherwise negotiating with others.
- **Assisting and Caring for Others** — Providing personal assistance, medical attention, emotional support, or other personal care to others such as coworkers, customers, or patients.
- **Inspecting Equipment, Structures, or Materials** — Inspecting equipment, structures, or materials to identify the cause of errors or other problems or defects.



PAGE 36/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Coordinating the Work and Activities of Others** — Getting members of a group to work together to accomplish tasks.
- **Developing Objectives and Strategies** — Establishing long-range objectives and specifying the strategies and actions to achieve them.
- **Processing Information** — Compiling, coding, categorizing, calculating, tabulating, auditing, or verifying information or data.
- **Working with Computers** — Using computers and computer systems (including hardware and software) to program, write software, set up functions, enter data, or process information.
- **Monitoring Processes, Materials, or Surroundings** — Monitoring and reviewing information from materials, events, or the environment, to detect or assess problems.
- **Analyzing Data or Information** — Identifying the underlying principles, reasons, or facts of information by breaking down information or data into separate parts.
- **Performing General Physical Activities** — Performing general physical activities includes doing activities that require considerable use of your arms and legs and moving your whole body, such as climbing, lifting, balancing, walking, stooping, and handling materials.
- **Operating Vehicles, Mechanized Devices, or Equipment** — Running, maneuvering, navigating, or driving vehicles or mechanized equipment, such as forklifts, passenger vehicles, aircraft, or watercraft.
- **Updating and Using Relevant Knowledge** — Keeping up-to-date technically and applying new knowledge to your job.
- **Guiding, Directing, and Motivating Subordinates** — Providing guidance and direction to subordinates, including setting performance standards and monitoring performance.
- **Staffing Organizational Units** — Recruiting, interviewing, selecting, hiring, and promoting employees in an organization.
- **Thinking Creatively** — Developing, designing, or creating new applications, ideas, relationships, systems, or products, including artistic contributions.
- **Scheduling Work and Activities** — Scheduling events, programs, and activities, as well as the work of others.
- **Estimating the Quantifiable Characteristics of Products, Events, or Information** — Estimating sizes, distances, and quantities; or determining time, costs, resources, or materials needed to perform a work activity.
- **Coaching and Developing Others** — Identifying the developmental needs of others and coaching, mentoring, or otherwise helping others to improve their knowledge or skills.
- **Developing and Building Teams** — Encouraging and building mutual trust, respect, and cooperation among team members.
- **Interpreting the Meaning of Information for Others** — Translating or explaining what information means and how it can be used.
- **Judging the Qualities of Objects, Services, or People** — Assessing the value, importance, or quality of things or people.
- **Performing Administrative Activities** — Performing day-to-day administrative tasks such as maintaining information files and processing paperwork.
- **Providing Consultation and Advice to Others** — Providing guidance and expert advice to management or other groups on technical, systems-, or process-related topics.



PAGE 37/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Monitoring and Controlling Resources** — Monitoring and controlling resources and overseeing the spending of money.

## Detailed Work Activities

^ All 17 displayed

- Block physical access to restricted areas.
- Patrol properties to maintain safety.
- Provide first aid or rescue assistance in emergencies.
- Investigate illegal or suspicious activities.
- Maintain public order or security.
- Respond to emergencies to provide assistance.
- Monitor access or flow of people to prevent problems.
- Prevent unauthorized individuals from entering restricted areas.
- Write operational reports.
- Use weapons or physical force to maintain security.
- Warn individuals about rule violations or safety concerns.
- Answer telephones to direct calls or provide information.
- Request emergency personnel.
- Operate surveillance equipment to detect suspicious or illegal activities.
- Inspect equipment to ensure safety or proper functioning.
- Drive vehicles to transport individuals or equipment.
- Adjust building climate control systems.

Find occupations related to multiple detailed work activities

## Work Context

^ All 26 displayed



PAGE 38/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Health and Safety of Other Workers** — 95% responded "Very high responsibility."
- **Deal With External Customers or the Public in General** — 95% responded "Extremely important."
- **Contact With Others** — 90% responded "Constant contact with others."
- **Telephone Conversations**
- **Face-to-Face Discussions with Individuals and Within Teams**
- **Freedom to Make Decisions** — 68% responded "A lot of freedom."
- **Importance of Repeating Same Tasks** — 73% responded "Extremely important."
- **Importance of Being Exact or Accurate** — 70% responded "Extremely important."
- **Determine Tasks, Priorities and Goals** — 68% responded "A lot of freedom."
- **Indoors, Environmentally Controlled**
- **E-Mail** — 67% responded "Every day."
- **Work With or Contribute to a Work Group or Team** — 59% responded "Extremely important."
- **Conflict Situations** — 23% responded "Once a week or more but not every day."
- **Frequency of Decision Making**
- **Coordinate or Lead Others in Accomplishing Work Activities** — 15% responded "Very important."
- **Work Outcomes and Results of Other Workers** — 16% responded "Very high responsibility."
- **Impact of Decisions on Co-workers or Company Results** — 38% responded "Very important results."
- **Spend Time Standing** — 72% responded "About half the time."
- **Physical Proximity** — 24% responded "Moderately close (at arm's length)."
- **Duration of Typical Work Week** — 80% responded "40 hours."
- **Exposed to Disease or Infections**
- **Outdoors, Exposed to All Weather Conditions** — 39% responded "Never."
- **Dealing With Unpleasant, Angry, or Discourteous People** — 15% responded "Once a week or more but not every day."
- **Consequence of Error**
- **Spend Time Sitting**
- **Time Pressure** — 37% responded "Never."

## Experience Requirements



PAGE 39/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 40/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## Job Zone

| | |
|---|---|
| **Title** | Job Zone Two: Some Preparation Needed |
| **Education** | These occupations usually require a high school diploma. |
| **Related Experience** | Some previous work-related skill, knowledge, or experience is usually needed. For example, a teller would benefit from experience working directly with the public. |
| **Job Training** | Employees in these occupations need anywhere from a few months to one year of working with experienced employees. A recognized apprenticeship program may be associated with these occupations. |
| **Job Zone Examples** | These occupations often involve using your knowledge and skills to help others. Examples include orderlies, counter and rental clerks, customer service representatives, security guards, upholsterers, tellers, and dental laboratory technicians. |
| **SVP Range** | (4.0 to < 6.0) |

## Training & Credentials

| | |
|---|---|
| **State training** | Select a State Go |
| **Local training** | ZIP Code Go |
| **Certifications** | Find certifications nationwide |
| **State licenses** | Select a State Go |

## Apprenticeship Opportunities

All 1 displayed

Example apprenticeship titles for this occupation:

- Guard, Security

Specific title(s) listed above are vetted by industry and approved by the U.S. Department of Labor for use in a Registered Apprenticeship Program.

Start your career and build your skillset. Visit **Apprenticeship.gov** to learn about opportunities related to this occupation.

## Worker Requirements

# Skills

5 of 8 displayed

- **Active Listening** — Giving full attention to what other people are saying, taking time to understand the points being made, asking questions as appropriate, and not interrupting at inappropriate times.
- **Monitoring** — Monitoring/Assessing performance of yourself, other individuals, or organizations to make improvements or take corrective action.
- **Speaking** — Talking to others to convey information effectively.
- **Coordination** — Adjusting actions in relation to others' actions.
- **Critical Thinking** — Using logic and reasoning to identify the strengths and weaknesses of alternative solutions, conclusions, or approaches to problems.

# Knowledge

5 of 12 displayed

- **Public Safety and Security** — Knowledge of relevant equipment, policies, procedures, and strategies to promote effective local, state, or national security operations for the protection of people, data, property, and institutions.
- **Customer and Personal Service** — Knowledge of principles and processes for providing customer and personal services. This includes customer needs assessment, meeting quality standards for services, and evaluation of customer satisfaction.



PAGE 41/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **English Language** — Knowledge of the structure and content of the English language including the meaning and spelling of words, and rules of composition and grammar.
- **Computers and Electronics** — Knowledge of circuit boards, processors, chips, electronic equipment, and computer hardware and software, including applications and programming.
- **Administration and Management** — Knowledge of business and management principles involved in strategic planning, resource allocation, human resources modeling, leadership technique, production methods, and coordination of people and resources.

## Education

How much education does a new hire need to perform a job in this occupation? Respondents said:

| | |
|---|---|
| 79% | High school diploma or equivalent required |
| 10% | Some college, no degree required |
| 5% | Associate's degree required |

### Worker Characteristics

## Abilities

5 of 13 displayed

- **Problem Sensitivity** — The ability to tell when something is wrong or is likely to go wrong. It does not involve solving the problem, only recognizing that there is a problem.
- **Far Vision** — The ability to see details at a distance.
- **Oral Comprehension** — The ability to listen to and understand information and ideas presented through spoken words and sentences.
- **Near Vision** — The ability to see details at close range (within a few feet of the observer).
- **Oral Expression** — The ability to communicate information and ideas in speaking so others will understand.

## Interests



PAGE 42/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

^ All 2 displayed

Interest code: **RC**

Want to discover your interests? Take the **O*NET Interest Profiler** at My Next Move.

- **Realistic** — Work involves designing, building, or repairing of equipment, materials, or structures, engaging in physical activity, or working outdoors. Realistic occupations are often associated with engineering, mechanics and electronics, construction, woodworking, transportation, machine operation, agriculture, animal services, physical or manual labor, athletics, or protective services.
- **Conventional** — Work involves following procedures and regulations to organize information or data, typically in a business setting. Conventional occupations are often associated with office work, accounting, mathematics/statistics, information technology, finance, or human resources.

## Work Values

^ All 3 displayed

- **Support** — Occupations that satisfy this work value offer supportive management that stands behind employees. Corresponding needs are Company Policies, Supervision: Human Relations and Supervision: Technical.
- **Relationships** — Occupations that satisfy this work value allow employees to provide service to others and work with co-workers in a friendly non-competitive environment. Corresponding needs are Co-workers, Moral Values and Social Service.
- **Independence** — Occupations that satisfy this work value allow employees to work on their own and make decisions. Corresponding needs are Creativity, Responsibility and Autonomy.

## Work Styles

5 of 16 displayed

- **Integrity** — Job requires being honest and ethical.
- **Dependability** — Job requires being reliable, responsible, and dependable, and fulfilling obligations.
- **Self-Control** — Job requires maintaining composure, keeping emotions in check, controlling anger, and avoiding aggressive behavior, even in very difficult situations.
- **Concern for Others** — Job requires being sensitive to others' needs and feelings and being understanding and helpful on the job.
- **Cooperation** — Job requires being pleasant with others on the job and displaying a good-natured, cooperative attitude.



PAGE 43/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

### Workforce Characteristics

## Wages & Employment Trends

| | |
|---|---|
| **Median wages (2024)** | $18.45 hourly, $38,370 annual |
| **State wages** | Select a State Go |
| **Local wages** | ZIP Code Go |
| **Employment (2023)** | 1,229,600 employees |
| **Projected growth (2023-2033)** | Slower than average (1% to 2%) |
| **Projected job openings (2023-2033)** | 161,000 |
| **State trends** | Select a State Go |
| **Top industries (2023)** | Administrative and Support Services |

Source: Bureau of Labor Statistics 2024 wage data and 2023-2033 employment projections. "Projected growth" represents the estimated change in total employment over the projections period (2023-2033). "Projected job openings" represent openings due to growth and replacement.

## Job Openings on the Web

| | |
|---|---|
| **State job openings** | Select a State Go |
| **Local job openings** | ZIP Code Go |



PAGE 44/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## More Information

# Related Occupations

5 of 10 displayed

- 33-1091.00 First-Line Supervisors of Security Workers
- 33-3041.00 Parking Enforcement Workers
- 33-3051.00 Police and Sheriff's Patrol Officers
- 33-3052.00 Transit and Railroad Police
- 33-9093.00 Transportation Security Screeners

# Professional Associations

**Disclaimer:** Sources are listed to provide additional information on related jobs, specialties, and/or industries. Links to non-DOL Internet sites are provided for your convenience and do not constitute an endorsement.

### National Associations

- ASIS International
- Fraternal Order of Police

PAGE 45/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

# Functional Capacity Evaluation

**Patient Name:** David Boruchowitz

**Date:** 03-01-2024
**Dx:** LBP /c Radiculopathy

## History:

Mr. David Boruchowitz is a 43 year old male who reports having low back pain /c R LE radiculopathy that is frequent and recurring. He reports that on April 9th, 2022 he was riding an ATV and sustained a rollover accident injuring his back. He reports going to the ER that same day for treatment. David states that he never lost consciousness and underwent a variety of tests including x-rays and CT scans which reportedly revealed a lumbar strain and lower lumbar disc bulges. David reports that he was eventually referred to his Dr which then referred him to Pain Management, Chiropractic services, and an Orthopedic surgeon. None of these helped reduce his sx's and in the meantime he was working for the Nye County Sheriff's Department as a Captain. David states that he was not able to complete his normal work tasks but also reports that he was limited /c some tasks because of pre-existing B shoulder pathologies. David states that he also was referred to physical therapy services on/about June of 2022 where he received a home exercise program and he indicates that those exercises did not help reduce pain/sx's. He states that he underwent 3 injections over the course of 18 months and in December of 2023 he underwent an ablation procedure that he reports made things worse in his back /c increased pain. David states that his pain levels are typically around 5-6/10. He reports that he has been retired since October 12th of 2023 and has not returned to any form of work. David also mentioned that he was in a "fender bender" in November of 2023 but that it didn't affect how he is feeling in his back as sx's have been painful and made his work and personal life increasingly difficult. David states that he can walk up to approx ½ mile on flat ground and then his R LE sx's will increase in intensity. David has reportedly lost approx 23 lbs in the last few months and that has not improved his sx's. He indicates that he is not able to return to work and the lingering pain and issues in his low back and R LE have affected his ability to function at home and continues to be a lingering problem for nearly 2 years since the ATV incident. He knows that he is at the physical therapy clinic today to undergo a functional capacity evaluation and states that he will give a full and consistent effort.

**Reason for Referral:**

Mr. Boruchowitz is being referred for a Functional Capacity Evaluation in order to determine his overall physical capabilities and tolerances, and to determine any physical barriers that may prevent him from returning to work.

**Evaluation Results:**

The results of this evaluation are considered **valid**; Mr. Boruchowitz exhibited a full and consistent effort during the evaluation.

Mr. Boruchowitz demonstrated the physical capabilities to function **at the SEDENTARY Physical Demand Level,** as outlined by the U.S. Department of Labor, **which involves being able to exert up to 5-10 pounds of force occasionally**

**OR a NEGLIGENT amount of force to frequently PUSH, PULL, CARRY, LIFT or OTHERWISE MOVE objects, including the human body (self). Sedentary work involves sitting most of the time, but may involve walking at times. This is a general classification and this report must distinguish that** Mr. Boruchowitz **demonstrated difficulty performing most activities that he was asked to perform in the clinic. Most notably, crouching, squatting, lifting, carrying, pushing, pulling, and any prolonged task that involved sitting, standing, and/or walking.** (Please refer to the *'Physical Activity Sheet'* on the last page of this report for a summary of Mr. Boruchowitz's overall physical capabilities and tolerances.)

**Recommendations:**

Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issues with his low back and R LE. He also demonstrated difficulty with frequent, occasional, and rarely lifting, pushing, pulling, squatting, kneeling, prolonged standing, walking tasks. Mr. Boruchowitz had frequent pain levels above 7-8/10 during evaluation. On more than one occasion he had to cease a particular activity/task because of R LE cramping and increased pain and would limp around for 30-60 seconds while he worked it out. Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes. This would be under the approval of his treating physician.

There was a formal Job Description at the time of this evaluation, however it did not indicate any type of physical demands other than a statement that said "physical and mental requirements described here are representative of those that must be met by an employee to successfully perform the essential functions of the job." It also states "Normal law enforcement patrol and administrative duties–lifting and subduing citizens."

This evaluation was to determine if the individual is able to safely and realistically return to the workforce. Below is a summary of some job related tasks that Mr. Boruchowitz was asked to perform and the results.

| Job Activity | Able to perform | Unable to perform |
|---|---|---|
| Frequent standing | | √ Achieved occasional tolerance. |
| Frequent sitting | | √ Achieved occasional tolerance. |
| Occasional carrying | | √ Achieved occasional tolerance. |
| Occasional lifting | | √ Can't lift above shoulder level. |
| Frequent walking | | √ Achieved occasional tolerance. |

## Conclusion:

Mr. Boruchowitz's current functional abilities and musculoskeletal findings demonstrate that he **cannot return to full work activity.** He exhibited functional deficits with the necessary standing, walking, pushing/pulling, lifting, carrying,

sitting, and squatting tolerances that are required to perform most essential job demands.

Mr. Boruchowitz exhibited **significant** deficits upon the Musculoskeletal Exam, which would have a negative impact on his overall level of physical functioning.

## Significant Musculoskeletal Findings:

1. Palpation: Tender throughout the lower thoracic and lumbar spinal segments and paraspinals, right > left. Pt also has tenderness to R glute and piriformis musculature.
2. Lumbar AROM: Limited to ~70% of normal flexion, 15% normal extension, and 65% of bilateral side flexion with increased pain reported in the low back with most movements.
3. Strength: 3+/5 gross static strength of the core/abdominal musculature. 4-/5 /c lumbar side bending.
4. Observation: Significantly guarded, antalgic movement patterns with lifting, carrying, pushing, pulling, and with most position changes.
5. Waddell's Signs: Negative.

## General Condition:

| | | |
|---|---|---|
| **Resting heart rate** | **71** | **Beats/min** |
| **Resting blood pressure** | **NT** | **S/d** |

**Body Composition**

| | |
|---|---|
| **Total body weight** | **238 lbs** |
| **Height** | **5 feet, 9 inches** |
| **Body mass index** | **35.1** |

## Consistency Measurements:

**Observed vs. Measured**

- I did not note any self limiting behavior during the evaluation, as he consistently performed outlined tasks to the best of his ability, even if symptoms were reportedly increasing with each task.

**Questionnaire Scores** (*Actual questionnaires are available upon request.*)

- Scored 23/50 on the Modified Oswestry, 46% indicating a high level of perceived disability.

**Clinician Conclusions**

Mr. Boruchowitz exhibited consistent objective deficits and pain mannerisms as well as subjective complaints in combination with physiological responses (i.e. increased heart rate and on 2 occasions stopping a task because he displayed increased pain and discomfort in the R LE with increased pain complaints). He has given an overall full and consistent effort during this evaluation, and as such the conclusions are considered **valid.**

## Functional Performance:

**Sitting:**

Mr. Boruchowitz demonstrated frequent weight shifting with sitting lasting longer than 15-20 min of time. He exhibited occasional tolerance to this activity.

**Standing:**

Mr. Boruchowitz exhibited occasional weight shifting and antalgic postures with prolonged standing, lasting longer than 10-15 min. He exhibited occasional tolerance to this activity.

**Walking:**

Mr. Boruchowitz performed continuous walking on a treadmill for ~10 minutes at a speed of 1.6 to 1.8 mph, with a progressively antalgic gait and objective pain mannerisms noted, particularly on the R LE. He exhibited occasional tolerance to this activity.

**Stooping:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with sustained and repetitive bending/stooping postures, with objective pain mannerisms noted. He exhibited very limited tolerance to this activity.

**Twisting:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with repetitive twisting/trunk rotation, with objective pain mannerisms noted. He exhibited occasional tolerance to this activity.

**Squatting:**

Mr. Boruchowitz was not able to perform more than 1 or 2 squatting tasks/activities as he demonstrated moderately to severely guarded, antalgic movement patterns with repetitive functional squatting, favoring the R LE at times. He exhibited very limited/rare tolerance to this activity.

**Lift/Carry:**

Mr. Boruchowitz demonstrated the ability to perform a **2-hand OCCASIONAL lift/carry of 5-10#** from a table to a counter at chest level for a distance of 90 feet for a

total of 5-6 minutes at a time. He exhibited moderately guarded, antalgic movement patterns with this activity, particularly with floor level lifting. He exhibited occasional tolerance to this activity.

**Reaching:**
Mr. Boruchowitz is unable to reach above approximately 90 to 95 degrees in the sagittal and coronal planes d/t previous shoulder pathologies. He was not able to perform reaching overhead tasks.

**Grasping/Handling:**
Mr. Boruchowitz demonstrated frequent tolerance and some mild functional deficits with right/left hand repetitive grasping/handling activities. His primary limitations dealt with prolonged sitting or standing while performing these tasks.

**Abdominal strength test:**
Mr. Boruchowitz exhibited poor overall dynamic abdominal and core strength and control when performing functional tasks.

If you have any questions regarding this evaluation, please call 775-727-3838.
Thank you for this referral.

Sincerely,

Dave Christensen, DPT
License: #2804
Optimal Therapy, an Affiliated Therapy Company
Davin Christensen, PT, DPT

# Functional Activity Sheet

| Functional Activities | Constant 66% - 100% | Frequent 33% - 65% | Occasional 1% - 33% | Unable to Performed | Comments |
|---|---|---|---|---|---|
| Sitting | | | X | | Frequent weight shifting and antalgic postures noted. Tolerated ~20 minutes |
| Standing | | | X | | Frequent weight shifting and antalgic postures noted with prolonged standing. Tolerated ~12-15 minutes |
| Walking | | | X | | Progressively antalgic gait right LE with prolonged walking. Tolerated ~10-15 minutes |
| Climbing | | | | Not Tested | Not Tested |
| Stooping | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Twisting | | | X | | Generally poor tolerance with repetitive twisting. Tolerated 5-8 minutes. |
| Squatting | | | X | | Moderately guarded, antalgic movement patterns with repetitive squatting. Tolerated 1-2 repetitions. |
| 2-Hand Lift/Carry | | | 5, 10# chest carry x 90 ft. | | Moderately antalgic movement patterns, particularly w/ floor level lifting. Tolerated ~8 minutes. |
| 2-Hand Push/Pull | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Grasping/ Handling | | Right/Left Hand. | | | Mild right/left hand functional deficits with forceful, repetitive grasping. |
| Reaching | | | | Right/Left UE | Moderate to severe right/left UE deficits with repetitive reaching, particularly above shoulders. He is unable to reach overhead |
| Core/Abdominal Strength | | | | X | Poor overall dynamic core stability w/ functional activities. |

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "….this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

REF #29387056

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,



David Boruchowitz

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00030112 LFPD7TD1 00000354

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

00000112 LFPD7TD1 00003355

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫjóóǫéąą́ǫąíę́ę.

00000112 LFPD7TD1 00000356 E

Lincoln Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha Ne 68114

# GROUP EXPLANATION OF BENEFITS

**DATE:** 04/23/2025

**PAYEE:** DAVID BORUCHOWITZ

001561

**GROUP NUMBER:** 000010177363000000
**CLAIM NUMBER:** 1230082409
**PAYMENT TYPE:** Direct Deposit

**CERTIFICATE NUMBER:** 4991282

**GROUP INFORMATION:** ATTN: DANELLE SHAMRELL
Nye County
1981 E. Calvada Blvd
Suite 120
Pahrump, NV 89048

S 00001561 LFPD0MD1 00001561 E

**BENEFIT - PERIOD 4/8/2025 TO 10/8/2025**

| | |
|---|---|
| GROSS MONTHLY BENEFIT - LTD | $36,000.00 |
| RETIREMENT EMPLOYER | ($32,400.00) |
| **DEPOSIT AMOUNT** | $3,600.00 |

**MESSAGES:**

Register at www.LFG.com for 24/7 access to benefit and coverage information.

Please inform us immediately should any change occur in the disability status.

Direct Deposit has been made

***********FINAL PAYMENT MESSAGE***********

Final Benefits - If Waiver of Premium was applicable, it will terminate with this payment period.

If any questions, please call 1-800-423-2765
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

CODE: **375.137-014**
Buy the DOT: **Download**

TITLE(s): **DESK OFFICER (government ser.) alternate titles: op**

Supervises and coordinates activities of personnel assigned to police
Assumes responsibility for safekeeping of money and valuables take
stolen articles, and property held as evidence. Supervises work of P(
(government ser.) II 375.367-010 or POLICE OFFICER (government
search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.6(
sending and receiving police communication by telephone and radio
notification and informs commanding officer of calls and orders recei
communication systems. Records information, such as name of arre
prisoner's name, address, and charge, to complete precinct activity i
officer. Commands subordinate officers and subordinate personnel o
assumes responsibility for efficiency and discipline of workers under
command of station house in absence of commanding officer. May m
police beats in precinct area (TRAFFIC LIEUTENANT (government se
supervise and coordinate activities of police clerical staff (SECRETAR
(government ser.) 375.137-022). May be designated according to ra
(government ser.); Desk Lieutenant (government ser.); Desk Sergea
**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**
ONET CROSSWALK: 61005 Police and Detective Supervisors

$0 - Start Your LLC
We Know You're Busy - We've Created The Simplest Way To Launch Y LLC.
ZenBusine
Learn Mo

Print PDF
View PDF

Printable PDF (Fre
View PDF

Form Your LLC
We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.
ZenBusiness



PAGE 15/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):28-50

- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index
- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/37/375137014.html**

Language Translations
| | Espaool | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About



PAGE 16/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

TITLE(s): **DESK OFFICER (government ser.) alternate titles: operations officer**

Supervises and coordinates activities of personnel assigned to police precinct station: Assumes responsibility for safekeeping of money and valuables taken from prisoners, lost or stolen articles, and property held as evidence. Supervises work of POLICE OFFICER (government ser.) II 375.367-010 or POLICE OFFICER (government ser.) I 375.263-014 who search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.662-022 engaged in sending and receiving police communication by telephone and radio systems. Receives notification and informs commanding officer of calls and orders received over police communication systems. Records information, such as name of arresting officer and prisoner's name, address, and charge, to complete precinct activity reports for commanding officer. Commands subordinate officers and subordinate personnel on assigned duty and assumes responsibility for efficiency and discipline of workers under command. Assumes command of station house in absence of commanding officer. May make inspection tour of police beats in precinct area [TRAFFIC LIEUTENANT (government ser.) 375.167-046]. May supervise and coordinate activities of police clerical staff [SECRETARY OF POLICE (government ser.) 375.137-022]. May be designated according to rank as Desk Captain (government ser.); Desk Lieutenant (government ser.); Desk Sergeant (government ser.).

**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**

ONET CROSSWALK: 61005 Police and Detective Supervisors



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

$0 - Start Your LLC

We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.



PAGE 17/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 18/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 19/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

City of Blaine

# Desk Officer

| | | | |
|---|---|---|---|
| **SALARY** | $29.56 - $33.18 Hourly | **LOCATION** | Blaine, MN |
| **JOB TYPE** | Part Time | **JOB NUMBER** | 175 |
| **DEPARTMENT** | Safety Services | **OPENING DATE** | 04/30/2025 |
| **CLOSING DATE** | 5/14/2025 4:30 PM Central | | |

## Description

The Desk Officer provides customer service and administrative support for the Police Department in a non-sworn capacity, which includes assisting the public in-person and by telephone, conducting background checks, and performing office/administrative functions.
Part time 24 to 29 hours weekly.

## Examples of Duties

1. Receives, answers, or refers telephone, electronic and in-person inquiries, concerns, complaints, and questions about police- and public safety-related services and issues while providing information or connecting individuals with the appropriate City resource.
2. Receives and prepares police reports from citizens, using law enforcement experience to obtain necessary information for department personnel to provide an effective response.
3. Responds to requests for information on programs, ordinances, statutes, and policies.
4. Conducts background investigations for gun permits, liquor licenses, and employment.

5. Assists with investigation-related cases and initial case follow-up.
6. Coordinates department requests including ride-along requests.
7. Participates in various department committees, City sponsored events and activities, and training.
8. Performs other duties as assigned.

**Examples of specific job duties may include, but are not limited, to:**

1. Responds to citizens' requests, concerns, and complaints by providing information or connecting them with the appropriate City resource.
2. Answer general questions about police and public safety-related services and issues.

These examples are intended only as illustrations of various types of work performed and are not necessarily all-inclusive. This job description is subject to change as the needs of the employer and requirements of the job change.

## Knowledge, Skills, and Abilities

**KNOWLEDGE, SKILLS, AND ABILITIES**

1. Law Enforcement and Criminal Justice Information Systems;
2. Data Practices and Compliance;
3. Understanding of Codes, Regulations, and Ordinances at Federal, State, County, and Local Levels;
4. Take complaints, diffuse difficult situations, and direct to the appropriate personnel;
5. Maintain an organized filing and recordkeeping system, both hard copy and electronic;
6. Work independently as well as a part of a team;
7. Make decisions using good judgment and discretion in accordance with established policies and procedures.
8. Communicate effectively, orally and in writing.
9. Establish and maintain effective working relationships with others.
10. Perform typical assignments under limited supervision with general autonomy in determining how objectives are achieved.

## Supplemental Information

**MINIMUM REQUIREMENTS**

1. Five years' experience as a MN licensed peace officer
2. Valid Driver's License

**DESIRED REQUIREMENTS**



PAGE 20/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

1. Proficient with Microsoft Office Suite.
2. Previous experience in investigations.
3. Previous supervisory or administrative experience.
4. Previous background investigations experience.

**PHYSICAL REQUIREMENTS**

Positions in this class typically require: reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions.

**Sedentary Work**: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally.

**CONDITIONS OF EMPLOYMENT**

Offer of employment is contingent upon successful completion of a comprehensive background check, drivers check and reference check.

---

**Employer**

City of Blaine

**Address**

10801 Town Square Drive NE

Blaine, Minnesota, 55449

**Phone**

763-785-6109
763-717-2624

**Website**

https://BlaineMN.gov

## Desk Officer Supplemental Questionnaire

*QUESTION 1

**Do you have at least five years' experience as a MN licensed peace officer?**

◯ No



PAGE 21/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

◯ Yes

*QUESTION 2

Do you have a valid driver's license?

◯ No

◯ Yes

QUESTION 3

Do you have experience utilizing Microsoft Office or similar software program?

◯ No

◯ Yes

*QUESTION 4

Do you have experience in investigations?

◯ No

◯ Yes

*QUESTION 5

Do you have supervisory or administrative experience?

◯ No

◯ Yes

*QUESTION 6

Do you have background investigations experience?

◯ No

◯ Yes

QUESTION 7

Are you claiming a Veteran's preference?



PAGE 22/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

◯ No

◯ Yes, non-Disabled Veteran

◯ Yes, Disabled Veteran

QUESTION 8

**How did you learn about this position?**

◯ Website

◯ I am a Current Employee

◯ Referral

* Required Question



PAGE 23/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 24/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z ?

‹Previous | Next › | Search | Contents | ONET NEW | Link to this page | About

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.
**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**
ONET CROSSWALK: 19005A Government Service Executives

View PDF
PDFOneStartToday Dow
View PDF
PDFOneStartToday Dow

- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/37/375167026.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable



PAGE 25/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.
**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**
ONET CROSSWALK: 19005A Government Service Executives



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

View PDF

PDFOneStartToday Downloa



PAGE 26/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

| | | | |
|---|---|---|---|
| **Job Title** | Harbor Master | **Department** | Harbor |
| **Reports to** | City Manger | **Salary Level** | IX |
| **Classification** | Seasonal, Exempt | **Revision Date** | 03.23.23 |

## I. General Description

This position is responsible for the security, maintenance, repair, collection of harbor permit fees, and safe usage of the Boat Harbor and facilities; Wood River boat launch and Kanakanak beach access road.

## II. Reasonable Accommodations

An individual must be able to perform each essential job duty and physical demands satisfactorily. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential duties.

## III. Essential Job Duties

- Plan, direct, manage, supervise and coordinate the administration, operations and maintenance of the Boat Harbor and its facilities including the development and implementation of written policy procedures, work standards, goals and objectives.
- Enforce all provisions, rules and regulations adopted for Harbor facilities.
- Render aid to distressed vessels in the Harbor.
- Prepare and submit reports and recommendations concerning new rules and regulations and fee structures to ensure safe and effective operation of Harbor facilities.
- Plan, prepare, and organize workloads and staff assignments, expedite workflow, and make staffing decisions for department.
- Oversee department personnel matters, make recommendations regarding appointments, promotions, suspensions, and dismissal of department employees.
- Assist Human Resources with recruitment and selection of employees.
- Execute end of season department personnel evaluations.
- Provide monthly staff report to City Manager for City Council meeting.
- Collect Harbor fees for marine vessels.
- Post Harbor speeds, classification, and use of Harbor areas.
- Direct waterborne traffic as conditions require and monitor pedestrian traffic on floats and ramps.
- Move boats as need may arise.
- Regularly inspect facilities, monitor maintenance, and make recommendations for repairs.

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

- Operate and maintain equipment and machinery for boat launching and haul-out.
- Supervise Harbor staff.
- Review and make recommendations for annual department budget and monitor revenues and expenditures.
- Monitor contracted Harbor projects.
- Prepare grants for Harbor improvements.
- Attend City Council meetings as required.

## IV. Knowledge, Skills and Abilities

Knowledge

This position requires proficiency in the following areas:

- Must have a general knowledge of the construction and operations of marine-related Harbor facilities, Coast Guard regulations and maritime law, and marine vessels.
- Must be familiar with and have a working knowledge of Coast Guard, HazMat, and Alaska Department of Environmental Conservation regulations.
- Ability to assist in all marine emergencies, including oil spill response.

Skills and Abilities:

This position must demonstrate the following skills and abilities:

- Must be able to prepare clear, concise reports.
- Must be able to operate the following office equipment: computer, including word-processing, and spreadsheets.
- Must be able to write and maintain Harbor security plans.
- Must have the ability to take direction from the City Manager and exercise independent judgment in accomplishing assigned tasks in a reasonable and timely manner.
- Demonstrate skill in operating motor-powered watercraft and equipment.
- Interact with the public, co-workers, outside agencies, and vendors in a courteous, helpful, and professional manner.

## V. Work Environment and Physical Effort

Office environment combined with an active Boat Harbor. The noise level in the work environment will vary from quiet to moderately noisy depending on other employees or members of the public with business in the office or any equipment noises outside. While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment,



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF DILLINGHAM ALASKA

# JOB DESCRIPTION – HARBOR MASTER

including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone.

## VI. Education and/or Experience

Education:

- High school diploma or GED.
- Graduation from an accredited college or university with a bachelor's degree or equivalent in Engineering, Transportation, Business Administration, Public Administration, Marine Science or a related field, preferred
- First aid / CPR certification, or ability to obtain within one year.
- An equivalent combination of education and experience sufficient to successfully perform the essential duties of the job as listed above.

Experience:

- At least two years of experience in Harbor operations. Supervisory and administrative experience, preferred.

## VII. Certification and Training

- National Incident Management System (NIMS) compliance training and certification, within 3 months of hire.
- Transportation Worker Identification Credential (TWIC) card within 1 year of hire.
- U.S. Coast Guard licenses or certifications desirable.

## VIII. Supervisory Responsibility

Harbor staff.

## IX. Scope of Employment

Regular, full-time, seasonal, exempt position.

## X. Acknowledgment

I understand the duties of this position as detailed in this job description.

Employee:________________________________Date:________________________________



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

This job description is accurate and has been reviewed with the above employee.

Supervisor:________________________________Date:___________________________

This job description approved by:

| | Initials | Date |
|---|---|---|
| City Manager: | ____________ | ____________ |



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z ?

‹Previous | Next › | Search | Contents | ONET new | Link to this page | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.
**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**
ONET CROSSWALK: 19999F Security Managers




- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index



PAGE 31/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

URL address of this page: **https://occupationalinfo.org/18/189167034.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal



PAGE 32/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.

**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**

ONET CROSSWALK: 19999F Security Managers



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03



PAGE 33/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

O*NET OnLine

Occupation keyword search

electrician Go

# Security Guards

**33-9032.00**

Bright Outlook | Updated 2025

Guard, patrol, or monitor premises to prevent theft, violence, or infractions of rules. May operate x-ray and metal detector equipment.

**Sample of reported job titles:** Armed Security Officer, Campus Security Officer (CSO), Custom Protection Officer (CPO), Customer Service Security Officer, Hotel Security Officer, Loss Prevention Officer, Safety and Security Officer, Security Agent, Security Guard, Security Officer

Summary | Details | Custom | Easy Read | Veterans | Español

Contents

## Occupation-Specific Information

## Tasks

All 14 displayed

- Lock doors and gates of entrances and exits to secure buildings.
- Patrol industrial or commercial premises to prevent and detect signs of intrusion and ensure security of doors, windows, and gates.
- Respond to medical emergencies by administering basic first aid or by obtaining assistance from paramedics.
- Answer alarms and investigate disturbances.
- Circulate among visitors, patrons, or employees to preserve order and protect property.
- Monitor and authorize entrance and departure of employees, visitors, and other persons to guard against theft and maintain security of premises.



PAGE 34/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- Write reports of daily activities and irregularities, such as equipment or property damage, theft, presence of unauthorized persons, or unusual occurrences.
- Warn persons of rule infractions or violations, and apprehend or evict violators from premises, using force when necessary.
- Answer telephone calls to take messages, answer questions, and provide information during non-business hours or when switchboard is closed.
- Call police or fire departments in cases of emergency, such as fire or presence of unauthorized persons.
- Operate detecting devices to screen individuals and prevent passage of prohibited articles into restricted areas.
- Inspect and adjust security systems, equipment, or machinery to ensure operational use and to detect evidence of tampering.
- Escort or drive motor vehicle to transport individuals to specified locations or to provide personal protection.
- Monitor and adjust controls that regulate building systems, such as air conditioning, furnace, or boiler.

Find occupations related to multiple tasks

## Technology Skills

All 8 displayed

- **Cloud-based data access and sharing software** — Microsoft SharePoint
- **Electronic mail software** — Microsoft Outlook
- **Network monitoring software** — Wireshark
- **Office suite software** — Corel WordPerfect Office Suite; Microsoft Office software
- **Spreadsheet software** — IBM Lotus 1-2-3; Microsoft Excel
- **Transaction security and virus protection software** — McAfee; NortonLifeLock cybersecurity software
- **Video conferencing software** — FaceTime
- **Word processing software** — Microsoft Word

Hot Technologies are requirements most frequently included across all employer job postings.
See all 5 Hot Technologies for this occupation.

## Occupational Requirements



PAGE 35/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## Work Activities

^ All 35 displayed

- **Identifying Objects, Actions, and Events** — Identifying information by categorizing, estimating, recognizing differences or similarities, and detecting changes in circumstances or events.
- **Getting Information** — Observing, receiving, and otherwise obtaining information from all relevant sources.
- **Communicating with Supervisors, Peers, or Subordinates** — Providing information to supervisors, co-workers, and subordinates by telephone, in written form, e-mail, or in person.
- **Documenting/Recording Information** — Entering, transcribing, recording, storing, or maintaining information in written or electronic/magnetic form.
- **Establishing and Maintaining Interpersonal Relationships** — Developing constructive and cooperative working relationships with others, and maintaining them over time.
- **Performing for or Working Directly with the Public** — Performing for people or dealing directly with the public. This includes serving customers in restaurants and stores, and receiving clients or guests.
- **Making Decisions and Solving Problems** — Analyzing information and evaluating results to choose the best solution and solve problems.
- **Organizing, Planning, and Prioritizing Work** — Developing specific goals and plans to prioritize, organize, and accomplish your work.
- **Training and Teaching Others** — Identifying the educational needs of others, developing formal educational or training programs or classes, and teaching or instructing others.
- **Communicating with People Outside the Organization** — Communicating with people outside the organization, representing the organization to customers, the public, government, and other external sources. This information can be exchanged in person, in writing, or by telephone or e-mail.
- **Evaluating Information to Determine Compliance with Standards** — Using relevant information and individual judgment to determine whether events or processes comply with laws, regulations, or standards.
- **Resolving Conflicts and Negotiating with Others** — Handling complaints, settling disputes, and resolving grievances and conflicts, or otherwise negotiating with others.
- **Assisting and Caring for Others** — Providing personal assistance, medical attention, emotional support, or other personal care to others such as coworkers, customers, or patients.
- **Inspecting Equipment, Structures, or Materials** — Inspecting equipment, structures, or materials to identify the cause of errors or other problems or defects.



PAGE 36/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Coordinating the Work and Activities of Others** — Getting members of a group to work together to accomplish tasks.
- **Developing Objectives and Strategies** — Establishing long-range objectives and specifying the strategies and actions to achieve them.
- **Processing Information** — Compiling, coding, categorizing, calculating, tabulating, auditing, or verifying information or data.
- **Working with Computers** — Using computers and computer systems (including hardware and software) to program, write software, set up functions, enter data, or process information.
- **Monitoring Processes, Materials, or Surroundings** — Monitoring and reviewing information from materials, events, or the environment, to detect or assess problems.
- **Analyzing Data or Information** — Identifying the underlying principles, reasons, or facts of information by breaking down information or data into separate parts.
- **Performing General Physical Activities** — Performing general physical activities includes doing activities that require considerable use of your arms and legs and moving your whole body, such as climbing, lifting, balancing, walking, stooping, and handling materials.
- **Operating Vehicles, Mechanized Devices, or Equipment** — Running, maneuvering, navigating, or driving vehicles or mechanized equipment, such as forklifts, passenger vehicles, aircraft, or watercraft.
- **Updating and Using Relevant Knowledge** — Keeping up-to-date technically and applying new knowledge to your job.
- **Guiding, Directing, and Motivating Subordinates** — Providing guidance and direction to subordinates, including setting performance standards and monitoring performance.
- **Staffing Organizational Units** — Recruiting, interviewing, selecting, hiring, and promoting employees in an organization.
- **Thinking Creatively** — Developing, designing, or creating new applications, ideas, relationships, systems, or products, including artistic contributions.
- **Scheduling Work and Activities** — Scheduling events, programs, and activities, as well as the work of others.
- **Estimating the Quantifiable Characteristics of Products, Events, or Information** — Estimating sizes, distances, and quantities; or determining time, costs, resources, or materials needed to perform a work activity.
- **Coaching and Developing Others** — Identifying the developmental needs of others and coaching, mentoring, or otherwise helping others to improve their knowledge or skills.
- **Developing and Building Teams** — Encouraging and building mutual trust, respect, and cooperation among team members.
- **Interpreting the Meaning of Information for Others** — Translating or explaining what information means and how it can be used.
- **Judging the Qualities of Objects, Services, or People** — Assessing the value, importance, or quality of things or people.
- **Performing Administrative Activities** — Performing day-to-day administrative tasks such as maintaining information files and processing paperwork.
- **Providing Consultation and Advice to Others** — Providing guidance and expert advice to management or other groups on technical, systems-, or process-related topics.



PAGE 37/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Monitoring and Controlling Resources** — Monitoring and controlling resources and overseeing the spending of money.

## Detailed Work Activities

All 17 displayed

- Block physical access to restricted areas.
- Patrol properties to maintain safety.
- Provide first aid or rescue assistance in emergencies.
- Investigate illegal or suspicious activities.
- Maintain public order or security.
- Respond to emergencies to provide assistance.
- Monitor access or flow of people to prevent problems.
- Prevent unauthorized individuals from entering restricted areas.
- Write operational reports.
- Use weapons or physical force to maintain security.
- Warn individuals about rule violations or safety concerns.
- Answer telephones to direct calls or provide information.
- Request emergency personnel.
- Operate surveillance equipment to detect suspicious or illegal activities.
- Inspect equipment to ensure safety or proper functioning.
- Drive vehicles to transport individuals or equipment.
- Adjust building climate control systems.

Find occupations related to multiple detailed work activities

## Work Context

All 26 displayed

PAGE 38/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Health and Safety of Other Workers** — 95% responded "Very high responsibility."
- **Deal With External Customers or the Public in General** — 95% responded "Extremely important."
- **Contact With Others** — 90% responded "Constant contact with others."
- **Telephone Conversations**
- **Face-to-Face Discussions with Individuals and Within Teams**
- **Freedom to Make Decisions** — 68% responded "A lot of freedom."
- **Importance of Repeating Same Tasks** — 73% responded "Extremely important."
- **Importance of Being Exact or Accurate** — 70% responded "Extremely important."
- **Determine Tasks, Priorities and Goals** — 68% responded "A lot of freedom."
- **Indoors, Environmentally Controlled**
- **E-Mail** — 67% responded "Every day."
- **Work With or Contribute to a Work Group or Team** — 59% responded "Extremely important."
- **Conflict Situations** — 23% responded "Once a week or more but not every day."
- **Frequency of Decision Making**
- **Coordinate or Lead Others in Accomplishing Work Activities** — 15% responded "Very important."
- **Work Outcomes and Results of Other Workers** — 16% responded "Very high responsibility."
- **Impact of Decisions on Co-workers or Company Results** — 38% responded "Very important results."
- **Spend Time Standing** — 72% responded "About half the time."
- **Physical Proximity** — 24% responded "Moderately close (at arm's length)."
- **Duration of Typical Work Week** — 80% responded "40 hours."
- **Exposed to Disease or Infections**
- **Outdoors, Exposed to All Weather Conditions** — 39% responded "Never."
- **Dealing With Unpleasant, Angry, or Discourteous People** — 15% responded "Once a week or more but not every day."
- **Consequence of Error**
- **Spend Time Sitting**
- **Time Pressure** — 37% responded "Never."

## Experience Requirements



PAGE 39/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 40/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## Job Zone

| | |
|---|---|
| **Title** | Job Zone Two: Some Preparation Needed |
| **Education** | These occupations usually require a high school diploma. |
| **Related Experience** | Some previous work-related skill, knowledge, or experience is usually needed. For example, a teller would benefit from experience working directly with the public. |
| **Job Training** | Employees in these occupations need anywhere from a few months to one year of working with experienced employees. A recognized apprenticeship program may be associated with these occupations. |
| **Job Zone Examples** | These occupations often involve using your knowledge and skills to help others. Examples include orderlies, counter and rental clerks, customer service representatives, security guards, upholsterers, tellers, and dental laboratory technicians. |
| **SVP Range** | (4.0 to < 6.0) |

## Training & Credentials

| | |
|---|---|
| **State training** | Select a State Go |
| **Local training** | ZIP Code Go |
| **Certifications** | Find certifications nationwide |
| **State licenses** | Select a State Go |

## Apprenticeship Opportunities

All 1 displayed

Example apprenticeship titles for this occupation:

- Guard, Security

Specific title(s) listed above are vetted by industry and approved by the U.S. Department of Labor for use in a Registered Apprenticeship Program.

Start your career and build your skillset. Visit **Apprenticeship.gov** to learn about opportunities related to this occupation.

## Worker Requirements

# Skills

5 of 8 displayed

- **Active Listening** — Giving full attention to what other people are saying, taking time to understand the points being made, asking questions as appropriate, and not interrupting at inappropriate times.
- **Monitoring** — Monitoring/Assessing performance of yourself, other individuals, or organizations to make improvements or take corrective action.
- **Speaking** — Talking to others to convey information effectively.
- **Coordination** — Adjusting actions in relation to others' actions.
- **Critical Thinking** — Using logic and reasoning to identify the strengths and weaknesses of alternative solutions, conclusions, or approaches to problems.

# Knowledge

5 of 12 displayed

- **Public Safety and Security** — Knowledge of relevant equipment, policies, procedures, and strategies to promote effective local, state, or national security operations for the protection of people, data, property, and institutions.
- **Customer and Personal Service** — Knowledge of principles and processes for providing customer and personal services. This includes customer needs assessment, meeting quality standards for services, and evaluation of customer satisfaction.



PAGE 41/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **English Language** — Knowledge of the structure and content of the English language including the meaning and spelling of words, and rules of composition and grammar.
- **Computers and Electronics** — Knowledge of circuit boards, processors, chips, electronic equipment, and computer hardware and software, including applications and programming.
- **Administration and Management** — Knowledge of business and management principles involved in strategic planning, resource allocation, human resources modeling, leadership technique, production methods, and coordination of people and resources.

## Education

How much education does a new hire need to perform a job in this occupation? Respondents said:

| | |
|---|---|
| 79% | High school diploma or equivalent required |
| 10% | Some college, no degree required |
| 5% | Associate's degree required |

### Worker Characteristics

## Abilities

5 of 13 displayed

- **Problem Sensitivity** — The ability to tell when something is wrong or is likely to go wrong. It does not involve solving the problem, only recognizing that there is a problem.
- **Far Vision** — The ability to see details at a distance.
- **Oral Comprehension** — The ability to listen to and understand information and ideas presented through spoken words and sentences.
- **Near Vision** — The ability to see details at close range (within a few feet of the observer).
- **Oral Expression** — The ability to communicate information and ideas in speaking so others will understand.

## Interests



PAGE 42/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

^ All 2 displayed

Interest code: **RC**

Want to discover your interests? Take the **O*NET Interest Profiler** at My Next Move.

- **Realistic** — Work involves designing, building, or repairing of equipment, materials, or structures, engaging in physical activity, or working outdoors. Realistic occupations are often associated with engineering, mechanics and electronics, construction, woodworking, transportation, machine operation, agriculture, animal services, physical or manual labor, athletics, or protective services.
- **Conventional** — Work involves following procedures and regulations to organize information or data, typically in a business setting. Conventional occupations are often associated with office work, accounting, mathematics/statistics, information technology, finance, or human resources.

## Work Values

^ All 3 displayed

- **Support** — Occupations that satisfy this work value offer supportive management that stands behind employees. Corresponding needs are Company Policies, Supervision: Human Relations and Supervision: Technical.
- **Relationships** — Occupations that satisfy this work value allow employees to provide service to others and work with co-workers in a friendly non-competitive environment. Corresponding needs are Co-workers, Moral Values and Social Service.
- **Independence** — Occupations that satisfy this work value allow employees to work on their own and make decisions. Corresponding needs are Creativity, Responsibility and Autonomy.

## Work Styles

5 of 16 displayed

- **Integrity** — Job requires being honest and ethical.
- **Dependability** — Job requires being reliable, responsible, and dependable, and fulfilling obligations.
- **Self-Control** — Job requires maintaining composure, keeping emotions in check, controlling anger, and avoiding aggressive behavior, even in very difficult situations.
- **Concern for Others** — Job requires being sensitive to others' needs and feelings and being understanding and helpful on the job.
- **Cooperation** — Job requires being pleasant with others on the job and displaying a good-natured, cooperative attitude.



PAGE 43/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):28-50

### Workforce Characteristics

## Wages & Employment Trends

| | |
|---|---|
| **Median wages** (2024) | $18.45 hourly, $38,370 annual |
| **State wages** | Select a State Go |
| **Local wages** | ZIP Code Go |
| **Employment** (2023) | 1,229,600 employees |
| **Projected growth** (2023-2033) | Slower than average (1% to 2%) |
| **Projected job openings** (2023-2033) | 161,000 |
| **State trends** | Select a State Go |
| **Top industries** (2023) | Administrative and Support Services |

Source: Bureau of Labor Statistics 2024 wage data and 2023-2033 employment projections. "Projected growth" represents the estimated change in total employment over the projections period (2023-2033). "Projected job openings" represent openings due to growth and replacement.

## Job Openings on the Web

| | |
|---|---|
| **State job openings** | Select a State Go |
| **Local job openings** | ZIP Code Go |



PAGE 44/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 45/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## More Information

# Related Occupations

5 of 10 displayed

- 33-1091.00 First-Line Supervisors of Security Workers
- 33-3041.00 Parking Enforcement Workers
- 33-3051.00 Police and Sheriff's Patrol Officers
- 33-3052.00 Transit and Railroad Police
- 33-9093.00 Transportation Security Screeners

# Professional Associations

**Disclaimer:** Sources are listed to provide additional information on related jobs, specialties, and/or industries. Links to non-DOL Internet sites are provided for your convenience and do not constitute an endorsement.

### National Associations

- ASIS International
- Fraternal Order of Police

# Functional Capacity Evaluation

**Patient Name:** David Boruchowitz

**Date:** 03-01-2024
**Dx:** LBP /c Radiculopathy

## History:

Mr. David Boruchowitz is a 43 year old male who reports having low back pain /c R LE radiculopathy that is frequent and recurring. He reports that on April 9th, 2022 he was riding an ATV and sustained a rollover accident injuring his back. He reports going to the ER that same day for treatment. David states that he never lost consciousness and underwent a variety of tests including x-rays and CT scans which reportedly revealed a lumbar strain and lower lumbar disc bulges. David reports that he was eventually referred to his Dr which then referred him to Pain Management, Chiropractic services, and an Orthopedic surgeon. None of these helped reduce his sx's and in the meantime he was working for the Nye County Sheriff's Department as a Captain. David states that he was not able to complete his normal work tasks but also reports that he was limited /c some tasks because of pre-existing B shoulder pathologies. David states that he also was referred to physical therapy services on/about June of 2022 where he received a home exercise program and he indicates that those exercises did not help reduce pain/sx's. He states that he underwent 3 injections over the course of 18 months and in December of 2023 he underwent an ablation procedure that he reports made things worse in his back /c increased pain. David states that his pain levels are typically around 5-6/10. He reports that he has been retired since October 12th of 2023 and has not returned to any form of work. David also mentioned that he was in a "fender bender" in November of 2023 but that it didn't affect how he is feeling in his back as sx's have been painful and made his work and personal life increasingly difficult. David states that he can walk up to approx ½ mile on flat ground and then his R LE sx's will increase in intensity. David has reportedly lost approx 23 lbs in the last few months and that has not improved his sx's. He indicates that he is not able to return to work and the lingering pain and issues in his low back and R LE have affected his ability to function at home and continues to be a lingering problem for nearly 2 years since the ATV incident. He knows that he is at the physical therapy clinic today to undergo a functional capacity evaluation and states that he will give a full and consistent effort.

**Reason for Referral:**
Mr. Boruchowitz is being referred for a Functional Capacity Evaluation in order to determine his overall physical capabilities and tolerances, and to determine any physical barriers that may prevent him from returning to work.

**Evaluation Results:**
The results of this evaluation are considered **valid**; Mr. Boruchowitz exhibited a full and consistent effort during the evaluation.

Mr. Boruchowitz demonstrated the physical capabilities to function **at the SEDENTARY Physical Demand Level,** as outlined by the U.S. Department of Labor, **which involves being able to exert up to 5-10 pounds of force occasionally**

**OR a NEGLIGENT amount of force to frequently PUSH, PULL, CARRY, LIFT or OTHERWISE MOVE objects, including the human body (self). Sedentary work involves sitting most of the time, but may involve walking at times. This is a general classification and this report must distinguish that** Mr. Boruchowitz **demonstrated difficulty performing most activities that he was asked to perform in the clinic. Most notably, crouching, squatting, lifting, carrying, pushing, pulling, and any prolonged task that involved sitting, standing, and/or walking.** (Please refer to the *'Physical Activity Sheet'* on the last page of this report for a summary of Mr. Boruchowitz's overall physical capabilities and tolerances.)

**Recommendations:**

Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issues with his low back and R LE. He also demonstrated difficulty with frequent, occasional, and rarely lifting, pushing, pulling, squatting, kneeling, prolonged standing, walking tasks. Mr. Boruchowitz had frequent pain levels above 7-8/10 during evaluation. On more than one occasion he had to cease a particular activity/task because of R LE cramping and increased pain and would limp around for 30-60 seconds while he worked it out. Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes. This would be under the approval of his treating physician.

There was a formal Job Description at the time of this evaluation, however it did not indicate any type of physical demands other than a statement that said "physical and mental requirements described here are representative of those that must be met by an employee to successfully perform the essential functions of the job." It also states "Normal law enforcement patrol and administrative duties–lifting and subduing citizens."

This evaluation was to determine if the individual is able to safely and realistically return to the workforce. Below is a summary of some job related tasks that Mr. Boruchowitz was asked to perform and the results.

| Job Activity | Able to perform | Unable to perform |
|---|---|---|
| Frequent standing | | √ Achieved occasional tolerance. |
| Frequent sitting | | √ Achieved occasional tolerance. |
| Occasional carrying | | √ Achieved occasional tolerance. |
| Occasional lifting | | √ Can't lift above shoulder level. |
| Frequent walking | | √ Achieved occasional tolerance. |

## Conclusion:

Mr. Boruchowitz's current functional abilities and musculoskeletal findings demonstrate that he **cannot return to full work activity.** He exhibited functional deficits with the necessary standing, walking, pushing/pulling, lifting, carrying,

sitting, and squatting tolerances that are required to perform most essential job demands.

Mr. Boruchowitz exhibited **significant** deficits upon the Musculoskeletal Exam, which would have a negative impact on his overall level of physical functioning.

## Significant Musculoskeletal Findings:

1. Palpation: Tender throughout the lower thoracic and lumbar spinal segments and paraspinals, right > left. Pt also has tenderness to R glute and piriformis musculature.
2. Lumbar AROM: Limited to ~70% of normal flexion, 15% normal extension, and 65% of bilateral side flexion with increased pain reported in the low back with most movements.
3. Strength: 3+/5 gross static strength of the core/abdominal musculature. 4-/5 /c lumbar side bending.
4. Observation: Significantly guarded, antalgic movement patterns with lifting, carrying, pushing, pulling, and with most position changes.
5. Waddell's Signs: Negative.

### General Condition:

| | | |
|---|---|---|
| **Resting heart rate** | **71** | **Beats/min** |
| **Resting blood pressure** | **NT** | **S/d** |

**Body Composition**

| | |
|---|---|
| **Total body weight** | **238 lbs** |
| **Height** | **5 feet, 9 inches** |
| **Body mass index** | **35.1** |

### Consistency Measurements:

**Observed vs. Measured**

- I did not note any self limiting behavior during the evaluation, as he consistently performed outlined tasks to the best of his ability, even if symptoms were reportedly increasing with each task.

**Questionnaire Scores (***Actual questionnaires are available upon request.)*

- Scored 23/50 on the Modified Oswestry, 46% indicating a high level of perceived disability.

**Clinician Conclusions**

Mr. Boruchowitz exhibited consistent objective deficits and pain mannerisms as well as subjective complaints in combination with physiological responses (i.e. increased heart rate and on 2 occasions stopping a task because he displayed increased pain and discomfort in the R LE with increased pain complaints). He has given an overall full and consistent effort during this evaluation, and as such the conclusions are considered **valid.**

## Functional Performance:

**Sitting:**

Mr. Boruchowitz demonstrated frequent weight shifting with sitting lasting longer than 15-20 min of time. He exhibited occasional tolerance to this activity.

**Standing:**

Mr. Boruchowitz exhibited occasional weight shifting and antalgic postures with prolonged standing, lasting longer than 10-15 min. He exhibited occasional tolerance to this activity.

**Walking:**

Mr. Boruchowitz performed continuous walking on a treadmill for ~10 minutes at a speed of 1.6 to 1.8 mph, with a progressively antalgic gait and objective pain mannerisms noted, particularly on the R LE. He exhibited occasional tolerance to this activity.

**Stooping:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with sustained and repetitive bending/stooping postures, with objective pain mannerisms noted. He exhibited very limited tolerance to this activity.

**Twisting:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with repetitive twisting/trunk rotation, with objective pain mannerisms noted. He exhibited occasional tolerance to this activity.

**Squatting:**

Mr. Boruchowitz was not able to perform more than 1 or 2 squatting tasks/activities as he demonstrated moderately to severely guarded, antalgic movement patterns with repetitive functional squatting, favoring the R LE at times. He exhibited very limited/rare tolerance to this activity.

**Lift/Carry:**

Mr. Boruchowitz demonstrated the ability to perform a **2-hand OCCASIONAL lift/carry of 5-10#** from a table to a counter at chest level for a distance of 90 feet for a

total of 5-6 minutes at a time. He exhibited moderately guarded, antalgic movement patterns with this activity, particularly with floor level lifting. He exhibited occasional tolerance to this activity.

**Reaching:**
Mr. Boruchowitz is unable to reach above approximately 90 to 95 degrees in the sagittal and coronal planes d/t previous shoulder pathologies. He was not able to perform reaching overhead tasks.

**Grasping/Handling:**
Mr. Boruchowitz demonstrated frequent tolerance and some mild functional deficits with right/left hand repetitive grasping/handling activities. His primary limitations dealt with prolonged sitting or standing while performing these tasks.

**Abdominal strength test:**
Mr. Boruchowitz exhibited poor overall dynamic abdominal and core strength and control when performing functional tasks.

If you have any questions regarding this evaluation, please call 775-727-3838.
Thank you for this referral.

Sincerely,

Dave Christensen, DPT
License: #2804
Optimal Therapy, an Affiliated Therapy Company
Davin Christensen, PT, DPT

# Functional Activity Sheet

| Functional Activities | Constant 66% - 100% | Frequent 33% - 65% | Occasional 1% - 33% | Unable to Performed | Comments |
|---|---|---|---|---|---|
| Sitting | | | X | | Frequent weight shifting and antalgic postures noted. Tolerated ~20 minutes |
| Standing | | | X | | Frequent weight shifting and antalgic postures noted with prolonged standing. Tolerated ~12-15 minutes |
| Walking | | | X | | Progressively antalgic gait right LE with prolonged walking. Tolerated ~10-15 minutes |
| Climbing | | | | Not Tested | Not Tested |
| Stooping | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Twisting | | | X | | Generally poor tolerance with repetitive twisting. Tolerated 5-8 minutes. |
| Squatting | | | X | | Moderately guarded, antalgic movement patterns with repetitive squatting. Tolerated 1-2 repetitions. |
| 2-Hand Lift/Carry | | | 5, 10# chest carry x 90 ft. | | Moderately antalgic movement patterns, particularly w/ floor level lifting. Tolerated ~8 minutes. |
| 2-Hand Push/Pull | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Grasping/ Handling | | Right/Left Hand. | | | Mild right/left hand functional deficits with forceful, repetitive grasping. |
| Reaching | | | | Right/Left UE | Moderate to severe right/left UE deficits with repetitive reaching, particularly above shoulders. He is unable to reach overhead |
| Core/Abdominal Strength | | | | X | Poor overall dynamic core stability w/ functional activities. |

# FAX COVER SHEET

**To:** Claims Shared Services

**From:** David Boruchowitz

**Company:** Lincoln National Insurance Company

**Date:** May 19, 2025 04:32

**Fax Number:** 14023611460

**Pages (Including cover):** 52

**Re:** Appeal claim #1230082409

**Notes:**

Please see the attached appeal. I would appreciate either a fax or email confirmation of receipt. Email dboruchowitz@fltg.net

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000000 000112 LFPD7TD1

DAVID E BORUCHOWITZ

S 00000112 LFPD7TD1 00000351

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

> Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:
>
> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-
>
> REF #29387058
>
> 33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,



David Boruchowitz

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00090112 LFPD7TD1 00000354

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

00000112 LFPD7TD1 00000356

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

00000112 LFPD7TD1 00000356 E

Lincoln Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha Ne 68114

# GROUP EXPLANATION OF BENEFITS

**DATE:** 04/23/2025

**PAYEE:** DAVID BORUCHOWITZ

001561

| | |
|---|---|
| **GROUP NUMBER:** | 000010177363000000 |
| **CLAIM NUMBER:** | 1230082409 |
| **PAYMENT TYPE:** | Direct Deposit |
| **CERTIFICATE NUMBER:** | 4991282 |
| **GROUP INFORMATION:** | ATTN: DANELLE SHAMRELL<br>Nye County<br>1981 E. Calvada Blvd<br>Suite 120<br>Pahrump, NV 89048 |

S 00001561 LFPD0MD1 00001561 E

**BENEFIT - PERIOD 4/8/2025 TO 10/8/2025**

| | |
|---|---|
| GROSS MONTHLY BENEFIT - LTD | $36,000.00 |
| RETIREMENT EMPLOYER | ($32,400.00) |
| **DEPOSIT AMOUNT** | $3,600.00 |

**MESSAGES:**

Register at www.LFG.com for 24/7 access to benefit and coverage information.

Please inform us immediately should any change occur in the disability status.

Direct Deposit has been made

***********FINAL PAYMENT MESSAGE***********

Final Benefits - If Waiver of Premium was applicable, it will terminate with this payment period.

If any questions, please call 1-800-423-2765
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

A B C
D E F
G H I
J K L
M N O
P Q R
S T U
V W X
Y Z ?



CODE: **375.137-014**
Buy the DOT: **Download**

TITLE(s): **DESK OFFICER (government ser.) alternate titles: op**

Supervises and coordinates activities of personnel assigned to police
Assumes responsibility for safekeeping of money and valuables take
stolen articles, and property held as evidence. Supervises work of PC
(government ser.) II 375.367-010 or POLICE OFFICER (government
search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.6
sending and receiving police communication by telephone and radio
notification and informs commanding officer of calls and orders recei
communication systems. Records information, such as name of arres
prisoner's name, address, and charge, to complete precinct activity
officer. Commands subordinate officers and subordinate personnel o
assumes responsibility for efficiency and discipline of workers under
command of station house in absence of commanding officer. May m
police beats in precinct area [TRAFFIC LIEUTENANT (government se
supervise and coordinate activities of police clerical staff [SECRETAR
(government ser.) 375.137-022]. May be designated according to ra
(government ser.); Desk Lieutenant (government ser.); Desk Sergea
**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**
ONET CROSSWALK: 61005 Police and Detective Supervisors

$0 - Start Your LLC
We Know You're Busy - We've Created The Simplest Way To Launch Y LLC.
ZenBusine
Learn Mo

Print PDF
View PDF

Printable PDF (Fre
View PDF

Form Your LLC
We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.
ZenBusiness



PAGE 15/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):28-50

- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index
- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/37/375137014.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About



PAGE 16/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

TITLE(s): **DESK OFFICER (government ser.) alternate titles: operations officer**

Supervises and coordinates activities of personnel assigned to police precinct station: Assumes responsibility for safekeeping of money and valuables taken from prisoners, lost or stolen articles, and property held as evidence. Supervises work of POLICE OFFICER (government ser.) II 375.367-010 or POLICE OFFICER (government ser.) I 375.263-014 who search suspects. Supervises TELEPHONE OPERATOR (clerical) 235.662-022 engaged in sending and receiving police communication by telephone and radio systems. Receives notification and informs commanding officer of calls and orders received over police communication systems. Records information, such as name of arresting officer and prisoner's name, address, and charge, to complete precinct activity reports for commanding officer. Commands subordinate officers and subordinate personnel on assigned duty and assumes responsibility for efficiency and discipline of workers under command. Assumes command of station house in absence of commanding officer. May make inspection tour of police beats in precinct area [TRAFFIC LIEUTENANT (government ser.) 375.167-046]. May supervise and coordinate activities of police clerical staff [SECRETARY OF POLICE (government ser.) 375.137-022]. May be designated according to rank as Desk Captain (government ser.); Desk Lieutenant (government ser.); Desk Sergeant (government ser.).

**GOE: 04.01.01 STRENGTH: S GED: R4 M2 L3 SVP: 7 DLU: 78**

ONET CROSSWALK: 61005 Police and Detective Supervisors



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

$0 - Start Your LLC

We Know You're Busy - We've Created The Simplest Way To Launch Your LLC.



PAGE 17/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 18/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

City of Blaine

# Desk Officer

| | | | |
|---|---|---|---|
| **SALARY** | $29.56 - $33.18 Hourly | **LOCATION** | Blaine, MN |
| **JOB TYPE** | Part Time | **JOB NUMBER** | 175 |
| **DEPARTMENT** | Safety Services | **OPENING DATE** | 04/30/2025 |
| **CLOSING DATE** | 5/14/2025 4:30 PM Central | | |

## Description

The Desk Officer provides customer service and administrative support for the Police Department in a non-sworn capacity, which includes assisting the public in-person and by telephone, conducting background checks, and performing office/administrative functions.
Part time 24 to 29 hours weekly.

## Examples of Duties

1. Receives, answers, or refers telephone, electronic and in-person inquiries, concerns, complaints, and questions about police- and public safety-related services and issues while providing information or connecting individuals with the appropriate City resource.
2. Receives and prepares police reports from citizens, using law enforcement experience to obtain necessary information for department personnel to provide an effective response.
3. Responds to requests for information on programs, ordinances, statutes, and policies.
4. Conducts background investigations for gun permits, liquor licenses, and employment.



PAGE 19/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

5. Assists with investigation-related cases and initial case follow-up.
6. Coordinates department requests including ride-along requests.
7. Participates in various department committees, City sponsored events and activities, and training.
8. Performs other duties as assigned.

**Examples of specific job duties may include, but are not limited, to:**

1. Responds to citizens' requests, concerns, and complaints by providing information or connecting them with the appropriate City resource.
2. Answer general questions about police and public safety-related services and issues.

These examples are intended only as illustrations of various types of work performed and are not necessarily all-inclusive. This job description is subject to change as the needs of the employer and requirements of the job change.

## Knowledge, Skills, and Abilities

**KNOWLEDGE, SKILLS, AND ABILITIES**

1. Law Enforcement and Criminal Justice Information Systems;
2. Data Practices and Compliance;
3. Understanding of Codes, Regulations, and Ordinances at Federal, State, County, and Local Levels;
4. Take complaints, diffuse difficult situations, and direct to the appropriate personnel;
5. Maintain an organized filing and recordkeeping system, both hard copy and electronic;
6. Work independently as well as a part of a team;
7. Make decisions using good judgment and discretion in accordance with established policies and procedures.
8. Communicate effectively, orally and in writing.
9. Establish and maintain effective working relationships with others.
10. Perform typical assignments under limited supervision with general autonomy in determining how objectives are achieved.

## Supplemental Information

**MINIMUM REQUIREMENTS**

1. Five years' experience as a MN licensed peace officer
2. Valid Driver's License

**DESIRED REQUIREMENTS**



PAGE 20/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

1. Proficient with Microsoft Office Suite.
2. Previous experience in investigations.
3. Previous supervisory or administrative experience.
4. Previous background investigations experience.

**PHYSICAL REQUIREMENTS**

Positions in this class typically require: reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions.

**Sedentary Work**: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally.

**CONDITIONS OF EMPLOYMENT**

Offer of employment is contingent upon successful completion of a comprehensive background check, drivers check and reference check.

---

**Employer**

City of Blaine

**Address**

10801 Town Square Drive NE

Blaine, Minnesota, 55449

**Phone**

763-785-6109
763-717-2624

**Website**

https://BlaineMN.gov

## Desk Officer Supplemental Questionnaire

*QUESTION 1

**Do you have at least five years' experience as a MN licensed peace officer?**

◯ No



PAGE 21/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

◯ Yes

*QUESTION 2

Do you have a valid driver's license?

◯ No

◯ Yes

QUESTION 3

Do you have experience utilizing Microsoft Office or similar software program?

◯ No

◯ Yes

*QUESTION 4

Do you have experience in investigations?

◯ No

◯ Yes

*QUESTION 5

Do you have supervisory or administrative experience?

◯ No

◯ Yes

*QUESTION 6

Do you have background investigations experience?

◯ No

◯ Yes

QUESTION 7

Are you claiming a Veteran's preference?



PAGE 22/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- No
- Yes, non-Disabled Veteran
- Yes, Disabled Veteran

QUESTION 8

**How did you learn about this position?**

- Website
- I am a Current Employee
- Referral

* Required Question



PAGE 23/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

A B C
D E F
G H I
J K L
M N O
P Q R
S T U
V W X
Y Z ?

<Previous | Next > | Search | Contents | ONET NEW | Link to this page | About

Like 0

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.
**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**
ONET CROSSWALK: 19005A Government Service Executives

View PDF
PDFOneStartToday Dow

View PDF
PDFOneStartToday Dow

- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index



PAGE 24/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/37/375167026.html**

Language Translations
| | Espanol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

---

CODE: **375.167-026**
Buy the DOT: **Download**

TITLE(s): **HARBOR MASTER (government ser.) alternate titles: port warden**

Directs and coordinates activities of harbor police force to ensure enforcement of laws, regulations, and policies governing navigable



PAGE 25/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

waters and property under jurisdiction of municipality or port district: Confers with officials, such as port authorities, Coast Guard officers, and members of city council to establish policies, define responsibilities, and determine operating requirements. Issues general instructions and outline of departmental policies regarding water-traffic control, public safety, theft prevention, and apprehension of law violators to subordinate officers and confers with them to determine operating procedures. Authorizes or approves departmental expenditures, personnel actions, and department's participation or assistance in activities not regularly assigned. Prepares periodic activity reports and annual budget. May evaluate work performance of captain and crew of ship. May direct rescue operations from patrol launch after major disaster, such as ship collision or downed aircraft.

**GOE: 04.01.01 STRENGTH: S GED: R5 M3 L4 SVP: 8 DLU: 77**

ONET CROSSWALK: 19005A Government Service Executives



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03

View PDF

PDFOneStartToday Downloa



PAGE 26/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

| | | | |
|---|---|---|---|
| **Job Title** | Harbor Master | **Department** | Harbor |
| **Reports to** | City Manger | **Salary Level** | IX |
| **Classification** | Seasonal, Exempt | **Revision Date** | 03.23.23 |

## I. General Description

This position is responsible for the security, maintenance, repair, collection of harbor permit fees, and safe usage of the Boat Harbor and facilities; Wood River boat launch and Kanakanak beach access road.

## II. Reasonable Accommodations

An individual must be able to perform each essential job duty and physical demands satisfactorily. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential duties.

## III. Essential Job Duties

- Plan, direct, manage, supervise and coordinate the administration, operations and maintenance of the Boat Harbor and its facilities including the development and implementation of written policy procedures, work standards, goals and objectives.
- Enforce all provisions, rules and regulations adopted for Harbor facilities.
- Render aid to distressed vessels in the Harbor.
- Prepare and submit reports and recommendations concerning new rules and regulations and fee structures to ensure safe and effective operation of Harbor facilities.
- Plan, prepare, and organize workloads and staff assignments, expedite workflow, and make staffing decisions for department.
- Oversee department personnel matters, make recommendations regarding appointments, promotions, suspensions, and dismissal of department employees.
- Assist Human Resources with recruitment and selection of employees.
- Execute end of season department personnel evaluations.
- Provide monthly staff report to City Manager for City Council meeting.
- Collect Harbor fees for marine vessels.
- Post Harbor speeds, classification, and use of Harbor areas.
- Direct waterborne traffic as conditions require and monitor pedestrian traffic on floats and ramps.
- Move boats as need may arise.
- Regularly inspect facilities, monitor maintenance, and make recommendations for repairs.



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF DILLINGHAM ALASKA

# JOB DESCRIPTION – HARBOR MASTER

- Operate and maintain equipment and machinery for boat launching and haul-out.
- Supervise Harbor staff.
- Review and make recommendations for annual department budget and monitor revenues and expenditures.
- Monitor contracted Harbor projects.
- Prepare grants for Harbor improvements.
- Attend City Council meetings as required.

## IV. Knowledge, Skills and Abilities

Knowledge

This position requires proficiency in the following areas:

- Must have a general knowledge of the construction and operations of marine-related Harbor facilities, Coast Guard regulations and maritime law, and marine vessels.
- Must be familiar with and have a working knowledge of Coast Guard, HazMat, and Alaska Department of Environmental Conservation regulations.
- Ability to assist in all marine emergencies, including oil spill response.

Skills and Abilities:

This position must demonstrate the following skills and abilities:

- Must be able to prepare clear, concise reports.
- Must be able to operate the following office equipment: computer, including word-processing, and spreadsheets.
- Must be able to write and maintain Harbor security plans.
- Must have the ability to take direction from the City Manager and exercise independent judgment in accomplishing assigned tasks in a reasonable and timely manner.
- Demonstrate skill in operating motor-powered watercraft and equipment.
- Interact with the public, co-workers, outside agencies, and vendors in a courteous, helpful, and professional manner.

## V. Work Environment and Physical Effort

Office environment combined with an active Boat Harbor. The noise level in the work environment will vary from quiet to moderately noisy depending on other employees or members of the public with business in the office or any equipment noises outside. While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment,



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone.

## VI. Education and/or Experience

Education:

- High school diploma or GED.
- Graduation from an accredited college or university with a bachelor's degree or equivalent in Engineering, Transportation, Business Administration, Public Administration, Marine Science or a related field, preferred
- First aid / CPR certification, or ability to obtain within one year.
- An equivalent combination of education and experience sufficient to successfully perform the essential duties of the job as listed above.

Experience:

- At least two years of experience in Harbor operations. Supervisory and administrative experience, preferred.

## VII. Certification and Training

- National Incident Management System (NIMS) compliance training and certification, within 3 months of hire.
- Transportation Worker Identification Credential (TWIC) card within 1 year of hire.
- U.S. Coast Guard licenses or certifications desirable.

## VIII. Supervisory Responsibility

Harbor staff.

## IX. Scope of Employment

Regular, full-time, seasonal, exempt position.

## X. Acknowledgment

I understand the duties of this position as detailed in this job description.

Employee:__________________________________Date:__________________________________



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

CITY OF
DILLINGHAM
ALASKA

# JOB DESCRIPTION – HARBOR MASTER

This job description is accurate and has been reviewed with the above employee.

Supervisor:_______________________________Date:__________________________

This job description approved by:

| | Initials | Date |
|---|---|---|
| City Manager: | ____________ | ____________ |



*The above job description is intended to describe the duties of an employee in general terms and does not necessarily describe all job duties.*

A B C
D E F
G H I
J K L
M N O
P Q R
S T U
V W X
Y Z ?

‹Previous | Next › | Search | Contents | ONET new | Link to this page | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.
**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**
ONET CROSSWALK: 19999F Security Managers






- Dictionary of Occupational Titles (DOT) Index
- Standard Industrial Classifications (SIC) Index
- Occupational Information Network (ONET) Index



PAGE 31/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- US Census Statistical Tables
- China Statistical Tables
- World Facts
- Quick Maps (for your web site)
- Flags of All Countries (for your web site)
- Digraphs - Internet Country Codes
- Airport Codes
- Seaport Codes
- About Climate (+ Glossary)
- Immigration Superhighway
- ITA Main Page

. Feedback

Please Add this page to your FAVORITES

URL address of this page: **https://occupationalinfo.org/18/189167034.html**

Language Translations
| | Espapol | Children | Lawyers | E-mail

"Immigration Superhighway", "Immigration Central", "Immigration Assistant", "Immigration Expert", "Immigration Expert Pro" and "Immigration USA" are trademarks of Information Technology Associates.

© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved).
Revised 26-May-03

Previous | Next | Contents | ONET | About

CODE: **189.167-034**
Buy the DOT: **Download**

TITLE(s): **SECURITY OFFICER (any industry)**

Plans and establishes security procedures for company engaged in manufacturing products or processing data or material for federal



PAGE 32/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

government: Studies federal security regulations and restrictions relative to company operations. Directs activities of personnel in developing company security measures which comply with federal regulations. Consults with local, district, or other federal representatives for interpretation or application of particular regulations applying to company operations. Prepares security manual outlining and establishing measures and procedures for handling, storing, safekeeping, and destroying classified records and documents, and for granting company personnel or visitors access to classified material or entry into restricted areas. Directs and coordinates activities of personnel in revising or updating security measures due to new or revised regulations. May request deviations from restrictive regulations that interfere with normal operations. May interview and hire applicants to fill security guard vacancies.

**GOE: 11.05.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 82**

ONET CROSSWALK: 19999F Security Managers



© 1995 - 2015 Photius Coutsoukis and Information Technology Associates (All Rights Reserved). Revised 26-May-03



PAGE 33/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

O*NET OnLine

Occupation keyword search

electrician Go

# Security Guards

**33-9032.00**

Bright Outlook | Updated 2025

Guard, patrol, or monitor premises to prevent theft, violence, or infractions of rules. May operate x-ray and metal detector equipment.

**Sample of reported job titles:** Armed Security Officer, Campus Security Officer (CSO), Custom Protection Officer (CPO), Customer Service Security Officer, Hotel Security Officer, Loss Prevention Officer, Safety and Security Officer, Security Agent, Security Guard, Security Officer

Summary | Details | Custom | Easy Read | Veterans | Español

Contents

## Occupation-Specific Information

## Tasks

All 14 displayed

- Lock doors and gates of entrances and exits to secure buildings.
- Patrol industrial or commercial premises to prevent and detect signs of intrusion and ensure security of doors, windows, and gates.
- Respond to medical emergencies by administering basic first aid or by obtaining assistance from paramedics.
- Answer alarms and investigate disturbances.
- Circulate among visitors, patrons, or employees to preserve order and protect property.
- Monitor and authorize entrance and departure of employees, visitors, and other persons to guard against theft and maintain security of premises.



PAGE 34/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- Write reports of daily activities and irregularities, such as equipment or property damage, theft, presence of unauthorized persons, or unusual occurrences.
- Warn persons of rule infractions or violations, and apprehend or evict violators from premises, using force when necessary.
- Answer telephone calls to take messages, answer questions, and provide information during non-business hours or when switchboard is closed.
- Call police or fire departments in cases of emergency, such as fire or presence of unauthorized persons.
- Operate detecting devices to screen individuals and prevent passage of prohibited articles into restricted areas.
- Inspect and adjust security systems, equipment, or machinery to ensure operational use and to detect evidence of tampering.
- Escort or drive motor vehicle to transport individuals to specified locations or to provide personal protection.
- Monitor and adjust controls that regulate building systems, such as air conditioning, furnace, or boiler.

Find occupations related to multiple tasks

## Technology Skills

All 8 displayed

- **Cloud-based data access and sharing software** — Microsoft SharePoint
- **Electronic mail software** — Microsoft Outlook
- **Network monitoring software** — Wireshark
- **Office suite software** — Corel WordPerfect Office Suite; Microsoft Office software
- **Spreadsheet software** — IBM Lotus 1-2-3; Microsoft Excel
- **Transaction security and virus protection software** — McAfee; NortonLifeLock cybersecurity software
- **Video conferencing software** — FaceTime
- **Word processing software** — Microsoft Word

Hot Technologies are requirements most frequently included across all employer job postings.
See all 5 Hot Technologies for this occupation.

## Occupational Requirements



PAGE 35/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

PAGE 36/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## Work Activities

All 35 displayed

- **Identifying Objects, Actions, and Events** — Identifying information by categorizing, estimating, recognizing differences or similarities, and detecting changes in circumstances or events.
- **Getting Information** — Observing, receiving, and otherwise obtaining information from all relevant sources.
- **Communicating with Supervisors, Peers, or Subordinates** — Providing information to supervisors, co-workers, and subordinates by telephone, in written form, e-mail, or in person.
- **Documenting/Recording Information** — Entering, transcribing, recording, storing, or maintaining information in written or electronic/magnetic form.
- **Establishing and Maintaining Interpersonal Relationships** — Developing constructive and cooperative working relationships with others, and maintaining them over time.
- **Performing for or Working Directly with the Public** — Performing for people or dealing directly with the public. This includes serving customers in restaurants and stores, and receiving clients or guests.
- **Making Decisions and Solving Problems** — Analyzing information and evaluating results to choose the best solution and solve problems.
- **Organizing, Planning, and Prioritizing Work** — Developing specific goals and plans to prioritize, organize, and accomplish your work.
- **Training and Teaching Others** — Identifying the educational needs of others, developing formal educational or training programs or classes, and teaching or instructing others.
- **Communicating with People Outside the Organization** — Communicating with people outside the organization, representing the organization to customers, the public, government, and other external sources. This information can be exchanged in person, in writing, or by telephone or e-mail.
- **Evaluating Information to Determine Compliance with Standards** — Using relevant information and individual judgment to determine whether events or processes comply with laws, regulations, or standards.
- **Resolving Conflicts and Negotiating with Others** — Handling complaints, settling disputes, and resolving grievances and conflicts, or otherwise negotiating with others.
- **Assisting and Caring for Others** — Providing personal assistance, medical attention, emotional support, or other personal care to others such as coworkers, customers, or patients.
- **Inspecting Equipment, Structures, or Materials** — Inspecting equipment, structures, or materials to identify the cause of errors or other problems or defects.

- **Coordinating the Work and Activities of Others** — Getting members of a group to work together to accomplish tasks.
- **Developing Objectives and Strategies** — Establishing long-range objectives and specifying the strategies and actions to achieve them.
- **Processing Information** — Compiling, coding, categorizing, calculating, tabulating, auditing, or verifying information or data.
- **Working with Computers** — Using computers and computer systems (including hardware and software) to program, write software, set up functions, enter data, or process information.
- **Monitoring Processes, Materials, or Surroundings** — Monitoring and reviewing information from materials, events, or the environment, to detect or assess problems.
- **Analyzing Data or Information** — Identifying the underlying principles, reasons, or facts of information by breaking down information or data into separate parts.
- **Performing General Physical Activities** — Performing general physical activities includes doing activities that require considerable use of your arms and legs and moving your whole body, such as climbing, lifting, balancing, walking, stooping, and handling materials.
- **Operating Vehicles, Mechanized Devices, or Equipment** — Running, maneuvering, navigating, or driving vehicles or mechanized equipment, such as forklifts, passenger vehicles, aircraft, or watercraft.
- **Updating and Using Relevant Knowledge** — Keeping up-to-date technically and applying new knowledge to your job.
- **Guiding, Directing, and Motivating Subordinates** — Providing guidance and direction to subordinates, including setting performance standards and monitoring performance.
- **Staffing Organizational Units** — Recruiting, interviewing, selecting, hiring, and promoting employees in an organization.
- **Thinking Creatively** — Developing, designing, or creating new applications, ideas, relationships, systems, or products, including artistic contributions.
- **Scheduling Work and Activities** — Scheduling events, programs, and activities, as well as the work of others.
- **Estimating the Quantifiable Characteristics of Products, Events, or Information** — Estimating sizes, distances, and quantities; or determining time, costs, resources, or materials needed to perform a work activity.
- **Coaching and Developing Others** — Identifying the developmental needs of others and coaching, mentoring, or otherwise helping others to improve their knowledge or skills.
- **Developing and Building Teams** — Encouraging and building mutual trust, respect, and cooperation among team members.
- **Interpreting the Meaning of Information for Others** — Translating or explaining what information means and how it can be used.
- **Judging the Qualities of Objects, Services, or People** — Assessing the value, importance, or quality of things or people.
- **Performing Administrative Activities** — Performing day-to-day administrative tasks such as maintaining information files and processing paperwork.
- **Providing Consultation and Advice to Others** — Providing guidance and expert advice to management or other groups on technical, systems-, or process-related topics.



PAGE 37/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Monitoring and Controlling Resources** — Monitoring and controlling resources and overseeing the spending of money.

## Detailed Work Activities

^ All 17 displayed

- Block physical access to restricted areas.
- Patrol properties to maintain safety.
- Provide first aid or rescue assistance in emergencies.
- Investigate illegal or suspicious activities.
- Maintain public order or security.
- Respond to emergencies to provide assistance.
- Monitor access or flow of people to prevent problems.
- Prevent unauthorized individuals from entering restricted areas.
- Write operational reports.
- Use weapons or physical force to maintain security.
- Warn individuals about rule violations or safety concerns.
- Answer telephones to direct calls or provide information.
- Request emergency personnel.
- Operate surveillance equipment to detect suspicious or illegal activities.
- Inspect equipment to ensure safety or proper functioning.
- Drive vehicles to transport individuals or equipment.
- Adjust building climate control systems.

Find occupations related to multiple detailed work activities

## Work Context

^ All 26 displayed



PAGE 38/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **Health and Safety of Other Workers** — 95% responded "Very high responsibility."
- **Deal With External Customers or the Public in General** — 95% responded "Extremely important."
- **Contact With Others** — 90% responded "Constant contact with others."
- **Telephone Conversations**
- **Face-to-Face Discussions with Individuals and Within Teams**
- **Freedom to Make Decisions** — 68% responded "A lot of freedom."
- **Importance of Repeating Same Tasks** — 73% responded "Extremely important."
- **Importance of Being Exact or Accurate** — 70% responded "Extremely important."
- **Determine Tasks, Priorities and Goals** — 68% responded "A lot of freedom."
- **Indoors, Environmentally Controlled**
- **E-Mail** — 67% responded "Every day."
- **Work With or Contribute to a Work Group or Team** — 59% responded "Extremely important."
- **Conflict Situations** — 23% responded "Once a week or more but not every day."
- **Frequency of Decision Making**
- **Coordinate or Lead Others in Accomplishing Work Activities** — 15% responded "Very important."
- **Work Outcomes and Results of Other Workers** — 16% responded "Very high responsibility."
- **Impact of Decisions on Co-workers or Company Results** — 38% responded "Very important results."
- **Spend Time Standing** — 72% responded "About half the time."
- **Physical Proximity** — 24% responded "Moderately close (at arm's length)."
- **Duration of Typical Work Week** — 80% responded "40 hours."
- **Exposed to Disease or Infections**
- **Outdoors, Exposed to All Weather Conditions** — 39% responded "Never."
- **Dealing With Unpleasant, Angry, or Discourteous People** — 15% responded "Once a week or more but not every day."
- **Consequence of Error**
- **Spend Time Sitting**
- **Time Pressure** — 37% responded "Never."

## Experience Requirements



PAGE 39/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

## Job Zone

| | |
|---|---|
| **Title** | Job Zone Two: Some Preparation Needed |
| **Education** | These occupations usually require a high school diploma. |
| **Related Experience** | Some previous work-related skill, knowledge, or experience is usually needed. For example, a teller would benefit from experience working directly with the public. |
| **Job Training** | Employees in these occupations need anywhere from a few months to one year of working with experienced employees. A recognized apprenticeship program may be associated with these occupations. |
| **Job Zone Examples** | These occupations often involve using your knowledge and skills to help others. Examples include orderlies, counter and rental clerks, customer service representatives, security guards, upholsterers, tellers, and dental laboratory technicians. |
| **SVP Range** | (4.0 to < 6.0) |

## Training & Credentials

**State training** Select a State Go

**Local training** ZIP Code Go

**Certifications** Find certifications nationwide

**State licenses** Select a State Go

## Apprenticeship Opportunities

^ All 1 displayed



PAGE 40/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

Example apprenticeship titles for this occupation:

- Guard, Security

Specific title(s) listed above are vetted by industry and approved by the U.S. Department of Labor for use in a Registered Apprenticeship Program.

Start your career and build your skillset. Visit **Apprenticeship.gov** to learn about opportunities related to this occupation.

## Worker Requirements

# Skills

5 of 8 displayed

- **Active Listening** — Giving full attention to what other people are saying, taking time to understand the points being made, asking questions as appropriate, and not interrupting at inappropriate times.
- **Monitoring** — Monitoring/Assessing performance of yourself, other individuals, or organizations to make improvements or take corrective action.
- **Speaking** — Talking to others to convey information effectively.
- **Coordination** — Adjusting actions in relation to others' actions.
- **Critical Thinking** — Using logic and reasoning to identify the strengths and weaknesses of alternative solutions, conclusions, or approaches to problems.

# Knowledge

5 of 12 displayed

- **Public Safety and Security** — Knowledge of relevant equipment, policies, procedures, and strategies to promote effective local, state, or national security operations for the protection of people, data, property, and institutions.
- **Customer and Personal Service** — Knowledge of principles and processes for providing customer and personal services. This includes customer needs assessment, meeting quality standards for services, and evaluation of customer satisfaction.



PAGE 41/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

- **English Language** — Knowledge of the structure and content of the English language including the meaning and spelling of words, and rules of composition and grammar.
- **Computers and Electronics** — Knowledge of circuit boards, processors, chips, electronic equipment, and computer hardware and software, including applications and programming.
- **Administration and Management** — Knowledge of business and management principles involved in strategic planning, resource allocation, human resources modeling, leadership technique, production methods, and coordination of people and resources.

## Education

How much education does a new hire need to perform a job in this occupation? Respondents said:

| | |
|---|---|
| 79% | High school diploma or equivalent required |
| 10% | Some college, no degree required |
| 5% | Associate's degree required |

### Worker Characteristics

## Abilities

5 of 13 displayed

- **Problem Sensitivity** — The ability to tell when something is wrong or is likely to go wrong. It does not involve solving the problem, only recognizing that there is a problem.
- **Far Vision** — The ability to see details at a distance.
- **Oral Comprehension** — The ability to listen to and understand information and ideas presented through spoken words and sentences.
- **Near Vision** — The ability to see details at close range (within a few feet of the observer).
- **Oral Expression** — The ability to communicate information and ideas in speaking so others will understand.

## Interests



PAGE 42/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

^ All 2 displayed

Interest code: **RC**

Want to discover your interests? Take the **O*NET Interest Profiler** at My Next Move.

- **Realistic** — Work involves designing, building, or repairing of equipment, materials, or structures, engaging in physical activity, or working outdoors. Realistic occupations are often associated with engineering, mechanics and electronics, construction, woodworking, transportation, machine operation, agriculture, animal services, physical or manual labor, athletics, or protective services.
- **Conventional** — Work involves following procedures and regulations to organize information or data, typically in a business setting. Conventional occupations are often associated with office work, accounting, mathematics/statistics, information technology, finance, or human resources.

## Work Values

^ All 3 displayed

- **Support** — Occupations that satisfy this work value offer supportive management that stands behind employees. Corresponding needs are Company Policies, Supervision: Human Relations and Supervision: Technical.
- **Relationships** — Occupations that satisfy this work value allow employees to provide service to others and work with co-workers in a friendly non-competitive environment. Corresponding needs are Co-workers, Moral Values and Social Service.
- **Independence** — Occupations that satisfy this work value allow employees to work on their own and make decisions. Corresponding needs are Creativity, Responsibility and Autonomy.

## Work Styles

5 of 16 displayed

- **Integrity** — Job requires being honest and ethical.
- **Dependability** — Job requires being reliable, responsible, and dependable, and fulfilling obligations.
- **Self-Control** — Job requires maintaining composure, keeping emotions in check, controlling anger, and avoiding aggressive behavior, even in very difficult situations.
- **Concern for Others** — Job requires being sensitive to others' needs and feelings and being understanding and helpful on the job.
- **Cooperation** — Job requires being pleasant with others on the job and displaying a good-natured, cooperative attitude.



PAGE 43/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

### Workforce Characteristics

## Wages & Employment Trends

**Median wages (2024)** $18.45 hourly, $38,370 annual

**State wages** Select a State Go

**Local wages** ZIP Code Go

**Employment (2023)** 1,229,600 employees

**Projected growth (2023-2033)** Slower than average (1% to 2%)

**Projected job openings (2023-2033)** 161,000

**State trends** Select a State Go

**Top industries (2023)** Administrative and Support Services

Source: Bureau of Labor Statistics 2024 wage data and 2023-2033 employment projections. "Projected growth" represents the estimated change in total employment over the projections period (2023-2033). "Projected job openings" represent openings due to growth and replacement.

## Job Openings on the Web

**State job openings** Select a State Go

**Local job openings** ZIP Code Go



PAGE 44/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX3012 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

### More Information

## Related Occupations

5 of 10 displayed

- 33-1091.00 First-Line Supervisors of Security Workers
- 33-3041.00 Parking Enforcement Workers
- 33-3051.00 Police and Sheriff's Patrol Officers
- 33-3052.00 Transit and Railroad Police
- 33-9093.00 Transportation Security Screeners

## Professional Associations

**Disclaimer:** Sources are listed to provide additional information on related jobs, specialties, and/or industries. Links to non-DOL Internet sites are provided for your convenience and do not constitute an endorsement.

### National Associations

- ASIS International
- Fraternal Order of Police



PAGE 45/52 * RCVD AT 5/19/2025 8:12:55 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/2 * DNIS:4023611460 * CSID:17252393426 * ANI:17252393426 * DURATION (mm-ss):29-50

# Functional Capacity Evaluation

**Patient Name:** David Boruchowitz **Date:** 03-01-2024
**Dx:** LBP /c Radiculopathy

## History:

Mr. David Boruchowitz is a 43 year old male who reports having low back pain /c R LE radiculopathy that is frequent and recurring. He reports that on April 9th, 2022 he was riding an ATV and sustained a rollover accident injuring his back. He reports going to the ER that same day for treatment. David states that he never lost consciousness and underwent a variety of tests including x-rays and CT scans which reportedly revealed a lumbar strain and lower lumbar disc bulges. David reports that he was eventually referred to his Dr which then referred him to Pain Management, Chiropractic services, and an Orthopedic surgeon. None of these helped reduce his sx's and in the meantime he was working for the Nye County Sheriff's Department as a Captain. David states that he was not able to complete his normal work tasks but also reports that he was limited /c some tasks because of pre-existing B shoulder pathologies. David states that he also was referred to physical therapy services on/about June of 2022 where he received a home exercise program and he indicates that those exercises did not help reduce pain/sx's. He states that he underwent 3 injections over the course of 18 months and in December of 2023 he underwent an ablation procedure that he reports made things worse in his back /c increased pain. David states that his pain levels are typically around 5-6/10. He reports that he has been retired since October 12th of 2023 and has not returned to any form of work. David also mentioned that he was in a "fender bender" in November of 2023 but that it didn't affect how he is feeling in his back as sx's have been painful and made his work and personal life increasingly difficult. David states that he can walk up to approx ½ mile on flat ground and then his R LE sx's will increase in intensity. David has reportedly lost approx 23 lbs in the last few months and that has not improved his sx's. He indicates that he is not able to return to work and the lingering pain and issues in his low back and R LE have affected his ability to function at home and continues to be a lingering problem for nearly 2 years since the ATV incident. He knows that he is at the physical therapy clinic today to undergo a functional capacity evaluation and states that he will give a full and consistent effort.

**Reason for Referral:**
Mr. Boruchowitz is being referred for a Functional Capacity Evaluation in order to determine his overall physical capabilities and tolerances, and to determine any physical barriers that may prevent him from returning to work.

**Evaluation Results:**
The results of this evaluation are considered **valid**; Mr. Boruchowitz exhibited a full and consistent effort during the evaluation.

Mr. Boruchowitz demonstrated the physical capabilities to function **at the SEDENTARY Physical Demand Level,** as outlined by the U.S. Department of Labor, **which involves being able to exert up to 5-10 pounds of force occasionally**

**OR a NEGLIGENT amount of force to frequently PUSH, PULL, CARRY, LIFT or OTHERWISE MOVE objects, including the human body (self). Sedentary work involves sitting most of the time, but may involve walking at times. This is a general classification and this report must distinguish that** Mr. Boruchowitz **demonstrated difficulty performing most activities that he was asked to perform in the clinic. Most notably, crouching, squatting, lifting, carrying, pushing, pulling, and any prolonged task that involved sitting, standing, and/or walking.** (Please refer to the *'Physical Activity Sheet'* on the last page of this report for a summary of Mr. Boruchowitz's overall physical capabilities and tolerances.)

**Recommendations:**

Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issues with his low back and R LE. He also demonstrated difficulty with frequent, occasional, and rarely lifting, pushing, pulling, squatting, kneeling, prolonged standing, walking tasks. Mr. Boruchowitz had frequent pain levels above 7-8/10 during evaluation. On more than one occasion he had to cease a particular activity/task because of R LE cramping and increased pain and would limp around for 30-60 seconds while he worked it out. Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes. This would be under the approval of his treating physician.

There was a formal Job Description at the time of this evaluation, however it did not indicate any type of physical demands other than a statement that said "physical and mental requirements described here are representative of those that must be met by an employee to successfully perform the essential functions of the job." It also states "Normal law enforcement patrol and administrative duties–lifting and subduing citizens."

This evaluation was to determine if the individual is able to safely and realistically return to the workforce. Below is a summary of some job related tasks that Mr. Boruchowitz was asked to perform and the results.

| Job Activity | Able to perform | Unable to perform |
|---|---|---|
| Frequent standing | | √ Achieved occasional tolerance. |
| Frequent sitting | | √ Achieved occasional tolerance. |
| Occasional carrying | | √ Achieved occasional tolerance. |
| Occasional lifting | | √ Can't lift above shoulder level. |
| Frequent walking | | √ Achieved occasional tolerance. |

## Conclusion:

Mr. Boruchowitz's current functional abilities and musculoskeletal findings demonstrate that he **cannot return to full work activity.** He exhibited functional deficits with the necessary standing, walking, pushing/pulling, lifting, carrying,

sitting, and squatting tolerances that are required to perform most essential job demands.

Mr. Boruchowitz exhibited **significant** deficits upon the Musculoskeletal Exam, which would have a negative impact on his overall level of physical functioning.

## Significant Musculoskeletal Findings:

1. Palpation: Tender throughout the lower thoracic and lumbar spinal segments and paraspinals, right > left. Pt also has tenderness to R glute and piriformis musculature.
2. Lumbar AROM: Limited to ~70% of normal flexion, 15% normal extension, and 65% of bilateral side flexion with increased pain reported in the low back with most movements.
3. Strength: 3+/5 gross static strength of the core/abdominal musculature. 4-/5 /c lumbar side bending.
4. Observation: Significantly guarded, antalgic movement patterns with lifting, carrying, pushing, pulling, and with most position changes.
5. Waddell's Signs: Negative.

## General Condition:

| | | |
|---|---|---|
| **Resting heart rate** | **71** | **Beats/min** |
| **Resting blood pressure** | **NT** | **S/d** |

**Body Composition**

| | |
|---|---|
| **Total body weight** | **238 lbs** |
| **Height** | **5 feet, 9 inches** |
| **Body mass index** | **35.1** |

## Consistency Measurements:

**Observed vs. Measured**

- I did not note any self limiting behavior during the evaluation, as he consistently performed outlined tasks to the best of his ability, even if symptoms were reportedly increasing with each task.

**Questionnaire Scores (***Actual questionnaires are available upon request.)*

- Scored 23/50 on the Modified Oswestry, 46% indicating a high level of perceived disability.

**Clinician Conclusions**

Mr. Boruchowitz exhibited consistent objective deficits and pain mannerisms as well as subjective complaints in combination with physiological responses (i.e. increased heart rate and on 2 occasions stopping a task because he displayed increased pain and discomfort in the R LE with increased pain complaints). He has given an overall full and consistent effort during this evaluation, and as such the conclusions are considered **valid.**

## Functional Performance:

**Sitting:**

Mr. Boruchowitz demonstrated frequent weight shifting with sitting lasting longer than 15-20 min of time. He exhibited occasional tolerance to this activity.

**Standing:**

Mr. Boruchowitz exhibited occasional weight shifting and antalgic postures with prolonged standing, lasting longer than 10-15 min. He exhibited occasional tolerance to this activity.

**Walking:**

Mr. Boruchowitz performed continuous walking on a treadmill for ~10 minutes at a speed of 1.6 to 1.8 mph, with a progressively antalgic gait and objective pain mannerisms noted, particularly on the R LE. He exhibited occasional tolerance to this activity.

**Stooping:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with sustained and repetitive bending/stooping postures, with objective pain mannerisms noted. He exhibited very limited tolerance to this activity.

**Twisting:**

Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with repetitive twisting/trunk rotation, with objective pain mannerisms noted. He exhibited occasional tolerance to this activity.

**Squatting:**

Mr. Boruchowitz was not able to perform more than 1 or 2 squatting tasks/activities as he demonstrated moderately to severely guarded, antalgic movement patterns with repetitive functional squatting, favoring the R LE at times. He exhibited very limited/rare tolerance to this activity.

**Lift/Carry:**

Mr. Boruchowitz demonstrated the ability to perform a **2-hand OCCASIONAL lift/carry of 5-10#** from a table to a counter at chest level for a distance of 90 feet for a

total of 5-6 minutes at a time. He exhibited moderately guarded, antalgic movement patterns with this activity, particularly with floor level lifting. He exhibited occasional tolerance to this activity.

**Reaching:**
Mr. Boruchowitz is unable to reach above approximately 90 to 95 degrees in the sagittal and coronal planes d/t previous shoulder pathologies. He was not able to perform reaching overhead tasks.

**Grasping/Handling:**
Mr. Boruchowitz demonstrated frequent tolerance and some mild functional deficits with right/left hand repetitive grasping/handling activities. His primary limitations dealt with prolonged sitting or standing while performing these tasks.

**Abdominal strength test:**
Mr. Boruchowitz exhibited poor overall dynamic abdominal and core strength and control when performing functional tasks.

If you have any questions regarding this evaluation, please call 775-727-3838.
Thank you for this referral.

Sincerely,

Dave Christensen, DPT
License: #2804
Optimal Therapy, an Affiliated Therapy Company
Davin Christensen, PT, DPT

# Functional Activity Sheet

| Functional Activities | Constant 66% - 100% | Frequent 33% - 65% | Occasional 1% - 33% | Unable to Performed | Comments |
|---|---|---|---|---|---|
| Sitting | | | X | | Frequent weight shifting and antalgic postures noted. Tolerated ~20 minutes |
| Standing | | | X | | Frequent weight shifting and antalgic postures noted with prolonged standing. Tolerated ~12-15 minutes |
| Walking | | | X | | Progressively antalgic gait right LE with prolonged walking. Tolerated ~10-15 minutes |
| Climbing | | | | Not Tested | Not Tested |
| Stooping | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Twisting | | | X | | Generally poor tolerance with repetitive twisting. Tolerated 5-8 minutes. |
| Squatting | | | X | | Moderately guarded, antalgic movement patterns with repetitive squatting. Tolerated 1-2 repetitions. |
| 2-Hand Lift/Carry | | | 5, 10# chest carry x 90 ft. | | Moderately antalgic movement patterns, particularly w/ floor level lifting. Tolerated ~8 minutes. |
| 2-Hand Push/Pull | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Grasping/ Handling | | Right/Left Hand. | | | Mild right/left hand functional deficits with forceful, repetitive grasping. |
| Reaching | | | | Right/Left UE | Moderate to severe right/left UE deficits with repetitive reaching, particularly above shoulders. He is unable to reach overhead |
| Core/Abdominal Strength | | | | X | Poor overall dynamic core stability w/ functional activities. |

REF #29387056

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00300112 LFPD7TD1 00000354

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

00000112 LFPD7TD1 00000355

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000000 000112 LFPD7TD1

DAVID E BORUCHOWITZ

S 00000112 LFPD7TD1 00000351

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

> On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

> The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

> Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:
>
> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

REF #29387056

> 33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,

David Boruchowitz

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00300112 LFPD7TD1 00000354

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

00000112 LFPD7TD1 00000355

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000112 LFPD7TD1
000000

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000351

S

# FAX COVER SHEET

**To:** Claims Shared Services

**From:** David Boruchowitz

**Company:** Lincoln National Insurance Company

**Date:** May 19, 2025 04:32

**Fax Number:** 14023611460

**Pages (Including cover):** 52

**Re:** Appeal claim #1230082409

**Notes:**

Please see the attached appeal. I would appreciate either a fax or email confirmation of receipt. Email dboruchowitz@fltg.net

**David Boruchowitz**

dboruchowitz@fltg.net
05/18/2025

**Claims Shared Services**
The Lincoln National Life Insurance Company
PO BOX 2337
Omaha, NE 68103
VIA FAX 402-361-1460

**Subject: Appeal Disability Insurance Denial – Policy #00001017736300000**
**Claim #1230082409**

Dear Appeals Officer for Lincoln Financial,

I am writing to formally appeal the denial of my disability benefits, referenced in your denial letter dated 04/23/2025. I respectfully request an appeal/review of the denied claim, as I believe the decision does not accurately reflect the medical evidence and circumstances surrounding my condition.

I initially applied for disability benefits due to my injury that prevented me from working. I have been under continuous medical care since the injury and have been advised that I am not a good candidate to return to the work force due to my physical limitations and medical reasoning.

The report issued for the denial cites to several medical documents however inappropriately applied conclusions that are not supported by the documentation. I am going to go through each notation and note the things that need to be considered in this appeal.

> On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

This notation ignored a very important part of the doctor's recommendation in the functional capacity exam. On page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the

SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different then attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce, and specifically noting that even at the SEDENTARY level I would struggle to perform.

> On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and **laying down** as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

These notations seem to imply that Dr. Chintan Sampat agrees with the notations by the treating providers. If this is the case, then they would seem to agree with the previous doctors that note that I would not be a candidate to re-enter the workforce.

> The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Again, this notation discredits the important notations by Davin Christen, specifically, on page 2 the doctor specifically noted, "....this report must distinguish that Mr. Boruchowitz demonstrated difficulty performing most activities that he was asked to perform in the

clinic." On page 3 the doctor specifically noted, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issue with his low back and R LE". It continues, "Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes." These notations by the doctor are significantly different than attributed to the denial citing to the functional capacity examination. This doctor's notations indicate that I am not a good candidate to return to the workforce and specifically noting that even at the SEDENTARY level I would struggle to perform.

> Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

This denial report accurately notes that Dr. Weltha specifically noted that I need to be able to "adjust between sitting, standing and **laying down**" to adjust for pain and discomfort as needed. There is no full-time employment that I am aware of that allows habitual adjusting between sitting standing and laying down as needed by the employee. Any assertion that this is an acceptable limitation or light duty assignment in an employment setting is false.

> We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:
>
> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-
>
> REF #29387058
>
> 33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

The denial report inaccurately cites that the documentation provided suggests that it is appropriate to work in a sedentary work capacity. The documentation specifically states the opposite that it is one doctor's opinion that I do not return to employment, and the other that I have to alternate between standing, sitting, walking, and **laying down** as needed for pain and symptoms.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The denial report cites 3 possible jobs that they consider alternative employments. They cite DOT job descriptions that are no longer currently being used as they have been replaced by the O Net system, however I am using what they provided to be consistent since the positions don't exist exactly in O Net system except for Security Guard where this is a direct comparison.

**DOT #375.137-014** is a desk officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find one from the City of Blaine. This job description cites: "PHYSICAL REQUIREMENTS Positions in this class typically require reaching, standing, walking, finger dexterity, grasping, feeling, talking, hearing, seeing and repetitive motions. Sedentary Work: Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. Walking and standing are required only occasionally." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement supervision role and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #375.167-026** is a harbor master position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are not many job descriptions available for a position similar to this indicating that the position is not even a position readily available. I was able to find a

job description for the City of Dillingham Alaska for the position. The job description cites: "While performing the duties of this job, employee will frequently be required to use hands and fingers dexterously to operate office equipment. The employee will have to spend long hours sitting and using office equipment which can cause muscle strain. Must possess mobility to work in a standard office setting and to use standard office equipment including a computer, strength to lift and carry materials weighing up to 20 or more pounds; vision to read printed materials and a computer screen; and hearing and speech to communicate in person and over the telephone." Again, based on this job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. All other job descriptions with similar names do not appear to be consistent. This position is a critical law enforcement position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

**DOT #189.167-034** is a security officer position. This specific job description cites that the job is "S" in the area of Strength. S stands for Sedentary which is identified that the job "requires mostly sitting with occasional lifting of up to 10 lbs". When writing this denial, they are clearly looking at the "sedentary rating" in the doctor's reports and ignoring the doctor's notations regarding actual capabilities. The job description that they cite to is attached for review. There are hundreds of job descriptions for this position, and they vary drastically. However, I could not find one job description that did not require more physical activity or ability than this generic federal job description that they used. The O*Net equivalent for the job description security guard provides a little more context. On that listing (attached) it says 72% reporting "half the time standing", 15% responded with "dealing with unpleasant, angry or discourteous people". When reading through the updated listing this position is far more physical than my restrictions and medical condition allow. Again, based on the job description (attached) it does not appear realistic that they would allow regular standing, sitting and **laying down** to alleviate symptoms. This position is a critical law enforcement type position and there is no way shape or form that any employer for this position would allow the employee to walk away from their post or lay down somewhere several times a shift.

On page 3 of the Denial Report it documents appropriately that I was "deemed permanently disabled to return to law enforcement duties". It is extremely confusing that the three positions that they provided as plausible options for employment are all three law enforcement-related positions and duties. There is no question that the medical records in your file document that I cannot RETURN TO LAW ENFORCEMENT DUTIES. If you look at all 3 positions that they cited as possible employment, they all include law enforcement duties.

My doctors have remained consistent in the position that I am not a candidate to return to ANY LAW ENFORCEMENT DUTIES, and not to a good candidate to return to employment in general because of my injury and the need for frequent adjustment between sitting, standing, walking and **laying down**.

The jobs that they listed as jobs that I would be "capable of performing" clearly do not meet the requirements listed in my medical file and limitations, and all three include law enforcement duties.

I have attached the job descriptions cited to as well as the ones that I could find to support my notations above.

I kindly request that my claim and the denial (attached) be reviewed based on the clear discrepancies in the parts of the medical record relied on, the documentation in my file, the restrictions I have, my medical needs, and the law enforcement duties and capabilities needed for the positions that they have cited to. If further clarification or additional documentation is required, please let me know, and I will provide whatever is necessary to facilitate a fair appeal, but I do not think there is any way you can review that denial report and agree with their findings based on my medical records which you have. Those records are cited in the letter, but the pertinent portions regarding my inability to seek employment again were conveniently left out by the author.

Thank you for your time and consideration. I appreciate your prompt review of my appeal and look forward to your response. Please feel free to contact me if further information is needed.

Sincerely,

David Boruchowitz

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

00000112 LFPD7TD1 00000352

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

00000112 LFPD7TD1 00000353

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

00000112 LFPD7TD1 00000354

## Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

## Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

00000112 LFPD7TD1 00000355

Lincoln Financial Group®
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

000000 000112 LFPD7TD1

DAVID E BORUCHOWITZ

S 00000112 LFPD7TD1 00000351

REF #29387056

Lincoln Financial Group®

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 23, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear Mr. Boruchowitz:

We have completed our review of your Long Term Disability claim and benefits beyond 10/8/2025 have been denied.

The Policy issued to Nye County contains, but is not limited to the following:

TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 10/08/2025. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #29387056

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- X-Ray dated 3/19/2025
- Office and Treatment notes from Joshua Weltha, PAC-C dated 3/18/2025
- Abilities Form completed by Joshua Weltha, PAC-C dated 3/26/2025
- Peer Review completed by Board Certified Physician in Orthopedic Surgery, Dr. Chintan Sampat dated 4/11/2025
- FCE dated 3/1/2024

On 3/1/2024, you had a functional capacity exam done that placed you in the Sedentary Capacity physical demand category.

On 3/26/2025, Joshua Weltha, PAC-C completed an Abilities form. He advised that you need to be able to adjust between, sitting, standing, and laying down to adjust for pain and discomfort as needed. He advised that you could never lift/carry over 21 lbs, bend, climb, kneel, or reach above your shoulder. You can occasionally lift carry up to 20 lbs, sit, stand, walk, drive, finger, handle, and operate foot controls. You were deemed permanently disabled to return to law enforcement duties.

On 4/11/2025, Board Certified physician in Orthopedic Surgery, Dr. Chintan Sampat reviewed your entire medical claim file. He opined that the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to 10/8/2025. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. You were unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and you were noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated you must be able to alternate between sitting, standing, and lying down as needed, and must discontinue activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

REF #29387056

33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 375.137-014 | Desk Officer | $8,479.00/month | Sedentary |
| 2. 375.167-026 | Harbor Master | $17,224.00/month | Sedentary |
| 3. 189.167-034 | Security Officer | $11,129.00/month | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the national labor market.

**Summary**

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 10/08/2025. Your payment for benefits through 10/08/2025 is being sent under separate cover.

> ***If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.***

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

REF #29387056

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Jaclyn K
Assisting on behalf of Savannah E
800-423-2765 X 6932
Associate, LTD Claims
The Lincoln National Life Insurance Company

REF #29387056

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti’go Diné bizaad, saad bee áká’ánida’áwo’dę́ę́’ t’áá jiik’eh, ná hóló̜. Kojį’ hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Candra B., MS, LPC, CRC
Vocational Rehabilitation Consultant
Group Protection

# Transferable Skills Analysis

**Date: 4/20/2025**
**Claimant Name: David Boruchowitz**
**Claim Number: 1230082409**
**Policyholder: Nye County**
**Pre-disability Earnings: $12324.00**
**Benefit Amount: $6000.00**

A Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the insured's transferable skills.

**Resources /Documentation were utilized:**

- Job Description-10/24/2023
- Previous Occupational Analysis-12/29/2023
- Training-Education-Experience 03/20/2025
- Peer Review from Chintan S. Sampat, MD dated 4/14/2025.
- Dictionary of Occupational Titles (DOT)
- Occupational Information Network (O*NET)
- Economic Research Institute (ERI) Occupational Assessor

**Restrictions and Limitations:**

I have been asked to base this review on the insured's restrictions and limitations per

Peer Review from Chintan S. Sampat, MD dated 4/14/2025.

- Sitting, Standing, Walking–
- Sitting: Constant
- Standing: Occasional
- Walking: Occasional
- Lifting, Pushing, Pulling, Carrying–
- Lifting: Occasional, up to 10 lbs., utilizing both extremities together
- Pushing: Occasional, up to 10 lbs., utilizing both extremities together
- Pulling: Occasional, up to 10 lbs., utilizing both extremities together
- Carrying: Occasional, up to 10 lbs., utilizing both extremities together
- Bilateral Upper Extremities–
- Over shoulder level: Frequent
- To desk level: Unrestricted
- Below waist level: Frequent
- Fine manipulation: Unrestricted
- Simple grasping: Unrestricted
- Firm grasping: Frequent
- Finger: Unrestricted
- Handle: Unrestricted
- Feel: Unrestricted
- Other–
- Climbing stairs: Occasional
- Balancing: Occasional
- Stooping: Occasional
- Bending: Occasional
- Kneeling: Occasional

- Crouching: Occasional
- Crawling: Never
- Ladder climbing: Never
- Lower extremities for foot controls: Occasional
- Driving: Occasional
- These R/Ls are permanent.

**Education & Training:**
Education: High School Diploma, bachelor's degree, master's degree, Juris Doctorate

Certifications/Licensures:

Computer Skills: E-mail; Internet; Word Processing; Spreadsheets; Databases; Photo Software; Graphics Software; Hardware Installation/Repair; Programming Installation/Repair; Project Management; Typing WPM 120

**Work History:**

| DOT Code | Occupation Title | Years Performed | Strength Level |
|---|---|---|---|
| 375.167-034 | Police Captain* | 2006-2023 | L |

**Claimant Own Occupation*

**TRANSFERABLE SKILLS:** Knowledge of laws, regulations, and safety rules; patrolling assigned areas to assure that laws are enforced and violators arrested; organizing, planning, and directing work of others; using tact and courtesy to work with people; working under pressure or extreme circumstances; using weapons, fire-fighting equipment and safety devices skillfully; and keeping in good physical shape.

**Profile Adjustments:**

- **Strength**: was adjusted to Sedentary per medical documentation reviewed.
- **Physical adjustments:** were made to reflect the insured's physical abilities as outlined above. All other physical abilities were adjusted to "constantly" as limitations were not specified.
- **Environmental Conditions:** were adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to constantly.
- **Noise**: Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to very loud.

- **Work Situations (Temperaments):**
- *People Situations*
- Working under specific instructions was included based on the ability to follow supervisory instruction.
- Dealing with people was included based on the ability to communicate with coworkers, customers, or supervisors.
- *Performance Situations*
- Performing repetitive or short-cycle work was included based on the ability to conduct roll calls.
- Performing a variety of duties was included based on the ability to direct and coordinate activities of members of police force.
- Attaining precise set limits, tolerances, and standards was included based on the ability to follow related safety regulations, contract requirements, company policies, and operating procedures.
- Making judgments and decisions was included based on the ability to make basic decisions required to adhere to employer policies and procedures.

- **Work Functions – Data:**
  Analyzing was included based on the ability to review information to investigate charges filed.
  Compiling was included based on the ability to gather information to submit reports.
  Copying was included based on the ability to complete necessary documentation, and reporting.

Comparing was included based on the ability to review documentation for accuracy.

- **Work Functions – People:**
  Supervising was included based on the ability to guide and oversee staff or personnel.

- **SVP Level:** No adjustments made.
- **GED:** Adjusted to reflect the insured's Juris Doctorate (Grades 15-16+).
- **Aptitudes:** No adjustments made.

**Summary:**
The Transferable Skills Analysis identified occupations that are within the physical abilities and identified skills level.

**Examples of Occupations identified based on national economy labor market and claimant's ability profile analysis:**

| DOT Code | Occupation | Strength | Monthly Wage |
|---|---|---|---|
| 375.137-014 | Desk Officer | Sedentary | $8,479 |
| 375.167-026 | Harbor Master | Sedentary | $17,224 |
| 189.167-034 | Security Officer | Sedentary | $11,129 |

**Wage Information is based on median 2023 Bureau of Labor Statistical Data*

I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information, medical records and resources noted.

Respectfully submitted,

Electronically Signed

Candra B., MS, LPC, CRC

Vocational Rehabilitation Counselor

Report produced from SkillTRAN Online Services - by SkillTRAN LLC - www.skilltran.com

# Name: David Boruchowitz

## WORK HISTORY

| DOT Code | DOT Title | Strength | SVP | Years | Months | Meets SVP | Included in TSA | CWF |
|---|---|---|---|---|---|---|---|---|
| 375.167-034 | Police Captain, Precinct | L | 8 | 17 | 0 | y | y | n |

## ABILITY PROFILE

### Strength

| | From Work History | Adjusted Ability |
|---|---|---|
| Maximum | L (Light) | S (Sedentary) |

**Physical Demands**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Posture** | | |
| CL - Climbing | Never | Never - Occasional |
| BA - Balancing | Never | Never - Occasional |
| ST - Stoop/Bending | Never | Never - Occasional |
| KN - Kneeling | Never | Never - Occasional |
| CR - Crouching | Never | Never - Occasional |
| CW - Crawling | Never | Never |
| **Manipulation** | | |
| RE - Reaching | Frequent | Never - Frequent |
| HA - Handling | Frequent | Never - No Limit |
| FI - Fingering | Frequent | Never - No Limit |
| **Tactile/Communication** | | |
| FE - Feeling | Never | Never - No Limit |
| TA - Talking | Frequent | Never - No Limit |
| HE - Hearing | Frequent | Never - No Limit |
| TS - Tasting/Smelling | Never | Never - No Limit |
| **Vision** | | |
| NE - Near Acuity | Frequent | Never - No Limit |
| FA - Far Acuity | Occasional | Never - No Limit |
| DE - Depth Perception | Occasional | Never - No Limit |
| AC - Accommodation | Occasional | Never - No Limit |
| CV - Color Vision | Occasional | Never - No Limit |
| FV - Field of Vision | Occasional | Never - No Limit |

**Environmental Conditions**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Exposure to Work Settings** | | |
| WE - Exposure to Weather | Occasional | Never - No Limit |
| CO - Extreme Cold (non-weather) | Never | Never - No Limit |
| HO - Extreme Heat (non-weather) | Never | Never - No Limit |
| WT - Wet and/or Humid (non-weather) | Never | Never - No Limit |
| NO - Noise Intensity | Moderate | Very Quiet - Very Loud |
| VI - Vibration | Never | Never - No Limit |
| AT - Atmospheric Conditions (Fumes, dust, odors) | Never | Never - No Limit |
| **Hazardous Conditions** | | |
| MV - Proximity to Moving Mechanical Parts | Never | Never - No Limit |
| EL - Exposure to Electrical Shock | Never | Never - No Limit |
| HI - Working in High Exposed Places | Never | Never - No Limit |
| RA - Exposure to Radiation | Never | Never - No Limit |
| EX - Working with Explosives | Never | Never - No Limit |

| | | |
|---|---|---|
| TX - Exposure to Toxic or Caustic Chemicals | Never | Never - No Limit |
| OT - Other Environmental Conditions | Never | Never - No Limit |

**General Education Development**

| | From Work History | Adjusted Ability |
|---|---|---|
| R - Reasoning | 5 (Scientific) | 1 (Grade 1-3) - 6 (Intellectual) |
| M - Math | 3 (Grade 7-8) | 1 (Grade 1-3) - 6 (Adv. Calc.) |
| L - Language | 4 (High School) | 1 (Grade 1-3) - 6 (Graduate) |

**Specific Vocational Preparation**

| | From Work History | Adjusted Ability |
|---|---|---|
| SVP | 8 (4-10 Years (MS-Ph.D.)) | 1 (Short Demo Only) - 8 (4-10 Years (MS-Ph.D.)) |

**Aptitudes**

| | From Work History | Adjusted Ability |
|---|---|---|
| **Cognition** | | |
| G - General Learning Ability | 2 (Above Average) | 4 (Below Average) - 2 (Above Average) |
| V - Verbal | 2 (Above Average) | 5 (Minimal/No Ability) - 2 (Above Average) |
| N - Numerical | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| **Perception** | | |
| S - Spatial Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| P - Form Perception | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| Q - Clerical Perception | 3 (Average) | 5 (Minimal/No Ability) - 3 (Average) |
| C - Color Discrimination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| **Dexterity** | | |
| K - Motor Coordination | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| F - Finger Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| M - Manual Dexterity | 4 (Below Average) | 5 (Minimal/No Ability) - 4 (Below Average) |
| E - Eye-Hand-Foot Coordination | 5 (Minimal/No Ability) | 5 (Minimal/No Ability) |

**Work Situations / Temperaments**

| | From Work History | Adjusted Ability |
|---|---|---|
| **People Situations** | | |

| | | |
|---|---|---|
| D - Directing, Controlling, Planning | In Work History | |
| I - Influencing Opinions, Attitudes, Judgments | | Avoid |
| E - Expressing Personal Feelings | | Avoid |
| A - Working Alone or Apart from Others | | Avoid |
| U - Working Under Specific Instructions | | |
| P - Dealing with People | In Work History | |
| **Performance Situations** | | |
| R - Repetitive or Short Cycle Work | | |
| V - Variety of Work Activities | | |
| S - Performing Effectively Under Stress | | Avoid |
| T - Attaining Precise Set Limits, Tolerances, and Standards | | |
| J - Making Judgments and Decisions | In Work History | |

**Worker Functions Demonstrated**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 6 - Speaking-Signaling | 7 - Handling |

**Worker Functions Excluded**

| D - Data | P - People | T - Things |
|---|---|---|
| 0 - Synthesizing | 0 - Mentoring | 0 - Setting Up |
| 4 - Computing | 1 - Negotiating | 1 - Precision Working |
| | 2 - Instructing | 2 - Operating-Controlling |
| | 4 - Diverting | 3 - Driving-Operating |
| | 5 - Persuading | 4 - Manipulating |
| | 7 - Serving | 5 - Tending |
| | 8 - Taking Instructions/Helping | 6 - Feeding/Offbearing |

**Worker Functions Included in the Occupational Search**

| D - Data | P - People | T - Things |
|---|---|---|
| 1 - Coordinating | 3 - Supervising | 7 - Handling |
| 2 - Analyzing | 6 - Speaking-Signaling | |
| 3 - Compiling | | |
| 5 - Copying | | |
| 6 - Comparing | | |

Report created on 04/20/2025

emperion

**April 14, 2025**

**Claimant Name: David Boruchowitz**

**Claim #: 1230082409**

**Primary Diagnosis: Low back pain**

**DOD: 7/10/2023**

**DOR: 4/2/2025**

**EMPERION #: 294082-1**

**Specialty: Orthopedic Surgery**

**Chintan S Sampat, MD**
Board Certified in Orthopedic Surgery

**Claimant Name: David Boruchowitz**
**Date of Birth:**
**Date of Disability:** 7/10/2023

**Claim #:** 1230082409
**ECN #:** 294082-1
**Report Date:** 04/11/2025

**PEER REVIEW**

**MEDICAL RECORDS REVIEWED**

- 04/09/2022 – Desert View Hospital – Emergency Room – Unknown Provider
- 04/10/2022 – Desert View Hospital – Employer's Report of Industrial Injury – Unknown Provider
- 04/10/2022 – Desert View Hospital – CT Brain W/O – Unknown Provider
- 04/10/2022 – Desert View Hospital – CT Cervical Spine W/O – Unknown Provider
- 04/10/2022 – Desert View Hospital – CT Chest W/O – Unknown Provider
- 04/10/2022 – Desert View Hospital – CT Abdomen/Pelvis with Contrast – Unknown Provider
- 04/12/2022 – Nye County Human Resources – Light Duty Job Offer – Unknown Provider
- 05/13/2022 – Unknown Facility – X-Ray Chest – Unknown Provider
- 06/01/2022 – Desert Radiology – XR Lumbar Spine – Unknown Provider
- 06/01/2022 – Unknown Facility – Email Claim Number – Christine Guerrero
- 06/07/2022 – Unknown Facility – Certification of Disability – Unknown Provider
- 06/08/2022 – Unknown Facility – Work Status – Unknown Provider
- 06/22/2022 – Desert View – Evaluation – Unknown Provider
- 09/27/2022 – Unknown Facility – Certification of Disability – A. Jisu, NP
- 11/16/2022 – 08/09/2023 – Advanced Spine & Rehabilitation – Chiropractic Treatment – Unknown Provider
- 12/13/2022 – SimonMed NV Maryland – MRI Lumbar Spine W/O Contrast – Unknown Provider
- 01/09/2023 – Desert View – Follow-up – Unknown Provider
- 01/17/2023 – Desert View – Follow-up – Unknown Provider
- 08/09/2023 – Unknown Facility – Follow-up – Unknown Provider
- 08/09/2023 – Unknown Facility – Physician's Report – Alexander S. Janda, DC
- 08/28/2023 – Su Spine & Sports – Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections – Peter Su, MD
- 09/05/2023 – Su Spine and Sports (Sunset) – Follow-up – Peter Su, MD – Physical Medicine and Rehabilitation
- 09/18/2023 – Desert Institute of Spine Care – Initial Consult – Andrew M. Cash, MD – Orthopedic Surgery
- 09/26/2023 – Su Spine and Sports (Sunset) – Follow-up – Peter Su, MD – Physical Medicine and Rehabilitation
- 11/06/2023 – Durango Surgery Center – Bilateral L4-5 and L5-S1 Facet Joint Injection – Peter Su, MD
- 11/13/2023 – Su Spine and Sports (Sunset) – Follow-up – Peter Su, MD – Physical Medicine and Rehabilitation
- 11/14/2023 – Spring Mountain Medical – Attending Physician Statement – Joshua Weltha, PA-C
- 12/11/2023 – Su Spine & Sports – Bilateral L3, L4, L5 Radiofrequency Ablation – Peter Su, MD
- 01/11/2024 – Spring Mountain Medical – Office Visit – Joshua Weltha, PA-C
- 01/11/2024 – Spring Mountain Medical – Ultrasound Abdomen – Unknown Provider
- 01/11/2024 – Unknown Facility – Lab Report – Unknown Provider
- 01/18/2024 – Su Spine and Sports – Follow-up – Peter S Su, MD – Physical Medicine and Rehabilitation
- 01/22/2024 – Spring Mountain Medical – Follow-up – Joshua Weltha, PA-C

• 01/23/2024 – Unknown Facility – Lab Report – Unknown Provider
• 01/31/2024 – Spring Mountain Medical – Office Visit – Joshua Weltha, PA-C – Primary Care
• 01/31/2024 – Spring Mountain Medical – X-Ray Right Elbow – Unknown Provider
• 02/13/2024 – Spring Mountain Medical – Follow Up – Joshua Weltha, PA-C – Primary Care
• 02/14/2024 – Unknown Facility – Surveillance Report – Unknown Provider
• 03/01/2024 – Optimal Therapy – Functional Capacity Evaluation – Davin Christensen, DPT
• 04/11/2024 – Unknown Facility – Lab Report – Unknown Provider
• 04/17/2024 – Su Spine and Sports (Sunset) – Follow-up – Peter S Su, MD – Physical Medicine and Rehabilitation
• 04/24/2024 – Spring Mountain Medical – Follow-up – Joshua Weltha, PAC-C
• 04/24/2024 – Unknown Facility – Attending Physician Statement – Joshua Weltha, PA-C
• 06/11/2024 – Unknown Facility – Phone Call – Unknown Provider
• 10/04/2024 – Unknown Facility – Vocational Services Referral – Unknown Provider
• 10/07/2024 – Unknown Facility – Email Exchange – Unknown Provider
• 03/18/2025 – Unknown Facility – Insured's Supplementary Statement – Unknown Provider
• 03/18/2025 – Spring Mountain Medical – Follow-up – Joshua Weltha – Primary Care
• 03/19/2025 – Unknown Facility – X-Ray – Unknown Provider
• 03/20/2025 – Unknown Facility – Email – Unknown Provider
• 03/26/2025 – Unknown Facility – Follow-up – Unknown Provider
• 03/26/2025 – Unknown Facility – Abilities Form – Joshua Weltha, PAC-C
• 03/27/2025 – Unknown Facility – Email – Unknown Provider
• Undated – Barnes-Jewish Hospital – After Visit Summary – Lucy Yao, MD

**CLINICAL SYNOPSIS**

David Boruchowitz is a 44-year-old male (DOB: who sustained injuries to his shoulder and back on 04/09/2022 when the off-road vehicle he was operating during a missing person search lost steering and rolled three times. His primary diagnosis is thoracolumbar musculoligamentous injury with clinical facet mediated pain and discogenic pain, as well as rib cage sprain/strain. Significant comorbidities include Type 2 diabetes mellitus, obesity, sleep apnea, hyperlipidemia, elevated liver enzymes, splenomegaly, and a history of Gaucher disease (though recent testing suggests he may not have this condition). His surgical history includes bilateral shoulder procedures and gallbladder removal. Treatment has included physical therapy, manual therapy, chiropractic care, medication (diclofenac and baclofen), bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections on 08/28/2023, bilateral L4-5 and L5-S1 Facet Joint Injections on 11/06/2023 with reported 95% pain relief during initial testing phase, and bilateral L3, L4, L5 Radiofrequency Ablation on 12/11/2023 with limited relief. Imaging revealed multilevel degenerative disc disease in the lumbar spine, with an MRI on 12/13/2022 showing mild multilevel degenerative changes worst at L5-S1 with suspected nerve root abutment. A Functional Capacity Evaluation performed on 03/01/2024 placed him in the sedentary physical demand category. He was declared at maximum medical improvement on 04/17/2024 and medically retired from his position as Captain with the Nye County Sheriff's Department effective 10/13/2023, with current restrictions including no repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

**INJURY REPORT**

04/09/2022 – Vehicle Accident/Rollover

Details: Claimant was searching for a missing person when the off-road vehicle he was operating lost steering and rolled 3 times on Sandy Valley Road at approximately 10:45 PM. The vehicle came to rest upside down. Claimant was the restrained driver and was facing forward at impact. He hit his head but did not lose consciousness.

Immediately after the collision, he felt shaken up and began to experience pain. Others involved in the incident were Madam Berante and Caleb Seral. Claimant sustained injuries to his shoulder, mid to lower back, and rib cage, diagnosed as shoulder and back sprain. He was transported to Desert View Hospital Emergency Room where he underwent CT scans of the chest, abdomen/pelvis, cervical spine, and brain, which showed no acute abnormalities except for hepatic steatosis. He was hospitalized from 04/09/2022 to 04/10/2022. Additional evaluation at Intermountain Healthcare included radiographic evaluation of the lumbar spine, which revealed lumbar strain and lower lumbar disc bulges. Patient reports this injury has caused frequent and recurring low back pain with right lower extremity radiculopathy for nearly 2 years. Claimant was placed on restricted/modified duty with no heavy lifting, squatting or running until cleared.

04/10/2022 – Employer's Report of Industrial Injury
Details: Claimant was involved in an off-road vehicle roll over accident while on duty as a police officer. The vehicle lost steering and rolled 3 times, resulting in injuries.

07/10/2023 – Unknown
Details: No specific details about the injury are provided in the available records. The date of loss is listed as 07/10/2023, but the mechanism of injury, injured body parts, initial presentation, and immediate interventions are not documented in the provided materials.

**DIAGNOSTIC REPORTS**

04/10/2022 - CT Brain W/O - Desert View Hospital
1. No acute intracranial abnormality
2. Moderate mucosal thickening involves ethmoid air cells and maxillary sinuses

04/10/2022 - CT Cervical Spine W/O - Desert View Hospital
1. No acute abnormality of cervical spine
2. Normal vertebral body alignment and spacing
3. No significant spondylotic changes

04/10/2022 - CT Chest W/O - Desert View Hospital
1. No evidence of acute intrathoracic injury
2. No acute osseous abnormalities

04/10/2022 - CT Abdomen/Pelvis With Contrast - Desert View Hospital
1. No acute intra-abdominal injury
2. Hepatic steatosis
3. Status post cholecystectomy
4. Small umbilical hernia containing only fat

05/13/2022 - X-Ray - Chest
1. Normal chest
2. No skeletal abnormalities of significance

06/01/2022 - XR Lumbar Spine - Desert Radiology
1. Lumbar alignment maintained
2. Intervertebral disc space narrowing with anterior marginal osteophytic spurring at L2-L3 and L3-L4

3. Multilevel degenerative disc disease

12/13/2022 - MRI Lumbar Spine W/O Contrast - SimonMed NV Maryland
1. Mild multilevel degenerative changes, worst at L5-S1
2. Levocurvature of the lumbar spine
3. L1-L2: Minimal circumferential disc bulge, no significant neuroforaminal narrowing or spinal canal stenosis
4. L2-L3: Minimal bilobed disc bulge, minimal facet arthropathy, no significant neuroforaminal narrowing or spinal canal stenosis
5. L3-L4: Tiny circumferential disc bulge, minimal facet arthropathy, effacement of ventral thecal sac, mild lateral recess narrowing
6. L4-L5: Minimal circumferential disc bulge, mild facet arthropathy, mild bilateral neuroforaminal narrowing, possible minimal abutment of exiting left L4 nerve root
7. L5-S1: Circumferential disc bulge and annular fissure, minimal facet arthropathy, minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing, suspected abutment of bilateral descending S1 nerve roots
8. Grade 1 retrolisthesis of L5 on S1

01/11/2024 - Ultrasound Abdomen - Spring Mountain Medical
1. Hepatic steatosis
2. Splenomegaly (length up to 15 cm)
3. Status post cholecystectomy
4. Normal common bile duct caliber

01/31/2024 - X-Ray - Right Elbow - Spring Mountain Medical
1. Normal findings, no abnormalities detected

03/01/2024 - Functional Capacity Evaluation - Optimal Therapy
1. Results were valid and consistent
2. Placed claimant in sedentary physical demand category
3. Does not meet job requirements

03/19/2025 - X-Ray
1. Ordered by physician on 03/18/2025
2. Completed on 03/19/2025

**LAB REPORTS**
01/11/2024 - Comprehensive Metabolic Panel: Glucose 115 mg/dl (Reference Range: 70-99), Creatinine 0.75 mg/dl (Reference Range: 0.76-1.27), Chloride 108 mmol/L (Reference Range: 96-106), Bilirubin, Total 1.3 mg/dl (Reference Range: 0.0-1.2), AST (SGOT) 51 IU/L (Reference Range: 0-40), ALT (SGPT) 143 IU/L (Reference Range: 0-44)
01/11/2024 - Lipid Panel: HDL Cholesterol 32 mg/dl (Reference Range: >39)
01/11/2024 - Hemoglobin A1c: 6.8% (Reference Range: 4.8-5.6)
01/11/2024 - Gaucher Enzyme Analysis: Glucocerebrosidase/WBC 5.350 nanomoles/hr/mg protein (Reference Range: 7.5-14.5)

01/23/2024 - Comp. Metabolic Panel: Glucose 103 mg/dl (Reference Range: 70-99), Creatinine 0.62 mg/dl (Reference Range: 0.76-1.27), BUN/Creatinine Ratio 23 (Reference Range: 9-20), AST 42 IU/L (Reference Range: 0-40), ALT 118 IU/L (Reference Range: 0-44)
01/23/2024 - Lipid Panel: Triglycerides 340 mg/dl (Reference Range: 0-149), HDL Cholesterol 28 mg/dl (Reference Range: >39), VLDL Cholesterol 56 mg/dl (Reference Range: 5-40)
01/23/2024 - Hemoglobin A1c: 6.9% (Reference Range: 4.8-5.6)

04/11/2024 - CBC With Differential/Platelet: Platelets 151 x10E3/uL (Reference Range: 150-450)
04/11/2024 - Comp. Metabolic Panel: Glucose 107 mg/dl (Reference Range: 70-99), BUN/Creatinine Ratio 21 (Reference Range: 9-20), ALT (SGPT) 100 IU/L (Reference Range: 0-44)
04/11/2024 - Hemoglobin A1c: 5.7% (Reference Range: 4.8-5.6)

**OPERATIVE REPORTS**
11/06/2023 - Durango Surgery Center - Bilateral L4-5 and L5-S1 Facet Joint Injection - Peter Su, MD:
Pre-op Diagnosis: Lumbar facet arthropathy
Operative Findings: In an oblique view with clear visualization of zygoapophyseal joint, a 25-gauge 3.5 inch needle was directed in gun-barrel fashion towards the superior aspect of the facet joint (L4-5 and L5-S1) until the joint space was entered on the left and right. After negative aspiration, radiographic contrast was injected through the needle. There was excellent spread within the facet joint itself on the left and right at each level. There was no vascular uptake of contrast. There was no paresthesia. This was followed by a total of about 1cc of mix (2cc Normal Saline, 2cc of 1% lidocaine and 10mg dexamethasone) into each joint.
Complications: None
Post-op Status: Patient tolerated the procedure well with no apparent complications. Blood loss was minimal. Patient was discharged home in stable condition with a chaperone.

12/11/2023 - Bilateral Ablation:
Pre-op Diagnosis: Not specified
Operative Findings: Not specified
Complications: Not specified
Post-op Status: Limited relief reported at 01/18/2024 follow-up

**PROCEDURE REPORTS**
08/28/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Transforaminal Epidural Steroid Injections - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 transforaminal epidural steroid injections
Outcome: No relief reported

11/06/2023 - Su Spine & Sports - Bilateral L4-5 and L5-S1 Facet Joint Injection - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain
Procedure Details: Bilateral L4-5 and L5-S1 facet joint injection
Outcome: 95% initial pain relief reported

12/11/2023 - Su Spine & Sports - Bilateral L3, L4, L5 Radiofrequency Ablation - Dr. Peter Su:
Pre-procedure Diagnosis: Low back pain, facet syndrome

Procedure Details: Bilateral L3, L4, L5 radiofrequency ablation
Outcome: Minimal relief reported

**OFFICE VISITS**
06/22/2022 - Desert View - Evaluation - Unknown Provider:
CC: Low back pain evaluation
Subjective: Low back pain and occasional cervical pain following a rollover accident at work on 04/09/2022
Objective: Impaired posture, decreased ROM, core stability and mild weakness
Assessment/Plan: Referred to physical therapy, Home exercise program
Restrictions: Not specified

01/09/2023 - Desert View - Follow-up - Unknown Provider:
CC: Back pain
Subjective: Pain is more accurately described about the lumbar. Reports 3 episodes of severe pain. Woke up in panic after snorkeling.
Objective: Not specified
Assessment/Plan: Not specified
Restrictions: Not specified

01/17/2023 - Desert View - Follow-up - Unknown Provider:
CC: Back pain
Subjective: Back pain has been more pronounced. Tries to get up to gain relief. Rib cage pain persists.
Objective: Not specified
Assessment/Plan: Not specified
Restrictions: Not specified

08/09/2023 - Follow-up:
CC: Low back pain
Subjective: Has been undergoing conservative treatment
Objective: Not specified
Assessment/Plan: Underwent pain management consult, recommended for epidural injections
Restrictions: Not specified

09/05/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
CC: Lower back pain
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Pain located at lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion, alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Reports VAS 2-3/10 today. Reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, and activities of daily living.
Objective: BP 134/85, HR 71, Temp 98.2F. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy,

lumbar region. Start diclofenac 75mg BID PRN inflammatory pain. Start baclofen 10mg QHS PRN muscle spasms. Follow-up in 3-4 weeks.
Restrictions: None specified

09/18/2023 - Desert Institute of Spine Care - Initial Consult - Andrew M. Cash, MD - Orthopedic Surgery:
CC: Initial Consult - Lumbar
Subjective: 43-year-old male involved in work-related motor vehicle accident on 04/09/2022. Patient states he lost control of the OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. Worst back pain level is 10/10. Reports no radicular symptoms in lower extremities. Has had chiropractic and injection treatment.
Objective: Ht 5'11", Wt 250 lbs, BMI 34.86, RR 16, Temp 97.3F. Lumbar: painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Muscle strength 5/5 bilaterally. Deep tendon reflexes symmetrical. Light touch sensation intact. Hip exam unremarkable. Sacroiliac joint exam tender with provocation compression, FABER, and fortin test unremarkable. Negative straight leg raise.
Assessment/Plan: 1. Other intervertebral disc displacement, lumbar region 2. Facet syndrome. Referral to Pain Medicine for lumbar MBB.
Restrictions: Lumbar restrictions: No repetitive bending, twisting, stooping, crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally.

09/26/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
CC: Lower back pain
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Saw ortho spine Dr. Cash, who recommended facet joint injections. Is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief. Reports VAS 4-5/10 today.
Objective: BP 127/83, HR 63, Temp 97.2F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L4-5 and L5-S1 facet joint injection. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.
Restrictions: None specified

11/13/2023 - Su Spine and Sports (Sunset) - Follow-up - Peter Su, MD - Physical Medicine and Rehabilitation:
CC: Lower back pain
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain. Is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase. Discussed radiofrequency ablation, patient wishes to proceed. Reports VAS 6/10 today.
Objective: BP 126/82, HR 74, Temp 98.6F, Wt 259.6 lbs. Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: 1. Sprain of ligaments of lumbar spine 2. Other intervertebral disc displacement, lumbar region 3. Other intervertebral disc disorders, lumbosacral region 4. Spondylosis without myelopathy or radiculopathy, lumbar region. Recommend bilateral L3, L4, L5 radiofrequency ablation. Continue diclofenac and baclofen. Follow-up in 3-4 weeks.
Restrictions: None specified

01/11/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C:
CC: RUQ abnormal liver function studies
Subjective: Patient presenting for follow-up on abnormal liver function studies
Objective: BP: 124/84 mm Hg, HR: 74 /min, Temp: 98.0 F, Oxygen sat: 96%, Wt: 266 lbs, BMI: 38.16
Assessment/Plan: Abnormal results of liver function studies. Ordered abdominal ultrasound with Doppler.
Restrictions: None documented

01/18/2024 - Su Spine and Sports - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
CC: Low back pain
Subjective: 43-year-old male returns for follow-up. Continues to report lower back pain which developed after work-related injury on 4/9/22. Status post bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, still reporting limited relief. Continues with diclofenac and baclofen. VAS 7-8/10 today.
Objective: Low back: ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR negative bilaterally. MMT: 5/5 BLE. Sensory: intact BLE. Reflexes: WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, other intervertebral disc displacement, other intervertebral disc disorders, spondylosis without myelopathy or radiculopathy. Recommend functional capacity evaluation as patient does not want to pursue surgical options. Continue home exercises, diclofenac 75mg BID PRN, baclofen 10mg QHS PRN. Follow up in 3-4 weeks.
Restrictions: See PPR

01/22/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PA-C:
CC: Two month follow-up for lab and ultrasound results, right elbow pain from fall
Subjective: 43-year-old male presents for follow-up. Ultrasound shows fatty liver, large spleen. Labs show elevated bilirubin, AST, ALT. A1C is 6.8. Glucocerebrosidase is low but not low enough to be consistent with Gaucher disease. Reports right-sided sciatica after ablation procedure. Reports work claim is being closed out.
Objective: BP: 128/88 mm Hg, HR: 70 /min, Temp: 97.6 F, Oxygen sat: 97%, Wt: 249 lbs, BMI: 35.72. Pain on right lateral epicondyle with palpation.
Assessment/Plan: Abnormal results of liver function studies, Type 2 diabetes mellitus, right elbow pain, right-sided sciatica, Gaucher disease. Ordered right elbow x-ray, CBC, CMP, Lipids, A1C, CHITO (chitotriosidase), mutation analysis. Follow up in 3 weeks.
Restrictions: None documented

01/31/2024 - Spring Mountain Medical - Office Visit - Joshua Weltha, PA-C - Primary Care:
CC: Right elbow
Subjective: 4-view right elbow x-rays referred by Josh
Objective: No physical exam documented
Assessment/Plan: Elbow pain, right. X-ray of right elbow ordered.
Restrictions: None documented

02/13/2024 - Spring Mountain Medical - Follow Up - Joshua Weltha, PA-C - Primary Care:
CC: Here for lab and xray results
Subjective: XR R elbow WNL. Pain is improving. Watchful waiting. Triglycerides elevated. Patient making lifestyle modifications and diet changes. A1C is 6.9. AST, ALT at patient baseline. CHITO is normal. Patient was seen by Swedish physician, director of Gaucher International Foundation, told he does not have Gauchers.

Objective: BP: 124/82 mm Hg, HR: 67 /min, Temp: 98 F, Oxygen sat: 97%, Wt: 251 lbs, BMI: 36.01. Physical exam normal.
Assessment/Plan: 1. Type 2 diabetes mellitus without complication 2. Hyperlipidemia, unspecified 3. Elevated liver enzymes. Plan includes CBC, CMP, A1C, Lipids. Follow up in 2 months.
Restrictions: None documented

04/17/2024 - Su Spine and Sports (Sunset) - Follow-up - Peter S Su, MD - Physical Medicine and Rehabilitation:
CC: Lower back pain
Subjective: 43-year-old male returns for follow-up. Reports lower back pain which developed after work-related injury on 4/9/22. Per FCE done on 3/1/24, results were valid, consistent, and patient was placed in sedentary physical demand category, does NOT meet job requirements. Previously saw Dr. Cash who recommended continuing injection therapy; patient does not want to pursue surgical options. Continues with diclofenac and baclofen, denies side effects, providing some benefits. Reports VAS 7-8/10 today. Pain negatively affecting sleep, comfort, independence, ability to work, ADLs, and participation in activities.
Objective: BP 128/85, HR 66, RR 15, Temp 98.2F, Wt 259 lbs. Low back: ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR negative bilaterally. MMT 5/5 BLE. Sensory intact BLE. Reflexes WNL BLE.
Assessment/Plan: Sprain of ligaments of lumbar spine, Other intervertebral disc displacement (lumbar region), Other intervertebral disc disorders (lumbosacral region), Spondylosis without myelopathy or radiculopathy (lumbar region). Continue diclofenac 75mg BID PRN and baclofen 10mg QHS PRN. Patient is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23 with minimal relief, s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23 with 95% pain relief during initial testing phase, and s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23 with limited relief. MMI, stable, ratable.
Restrictions: Per FCE, sedentary physical demand category, does NOT meet job requirements.

04/24/2024 - Spring Mountain Medical - Follow-up - Joshua Weltha, PAC-C:
CC: Lab results and follow up on back
Subjective: 43-year-old male presents for follow-up. Labs completed: CBC, CMP, Lipids, A1C not actionable. ALT is 100, this is chronic, has been worked up extensively. Patient had functional exercise test completed, reports back pain. Has been changing diet, walking, losing weight, sleeping well.
Objective: BP 142/90, HR 88, Temp 98.2F, O2 sat 95%, Wt 236.6 lbs, BMI 33.94. General: WDWN, NAD. Heart: RRR without murmurs. Lungs: CTAB. Abdomen: soft, nontender, nondistended. Neurologic: No focal deficits. CN 2-12 grossly intact. Psych: AOx4.
Assessment/Plan: Elevated ALT measurement. Follow up in 3 months.
Restrictions: Occasionally able to lift/carry 1-100+ lbs. Occasionally: stand, walk, balance, stoop, kneel, finger, crouch, crawling, grasping, climbing, pushing, pulling, bending. Frequently: sitting. Not able to return to work in law enforcement capacity.

03/18/2025 - Spring Mountain Medical - Follow-up - Joshua Weltha - Primary Care:
CC: Not specified
Subjective: Not specified
Objective: Ordered X-ray and MRI for updated imaging
Assessment/Plan: X-ray completed on 03/19/2025, MRI planned for following week
Restrictions: Not specified

03/26/2025 - Follow-up:
CC: Not specified
Subjective: Not specified
Objective: Not specified
Assessment/Plan: Follow-up scheduled for 04/15/2025
Restrictions: Not specified

**MEDICAL EVALUATIONS AND REVIEWS**
08/09/2023 - Physician's Report - Alexander S. Janda, DC
Purpose: Disability evaluation
Key Findings: Thoracolumbar musculoligamentous injury, Clinical facet mediated pain, Clinical discogenic pain generator, Rib cage sprain/strain injury
Recommendations: Patient is unable to work due to injury
Restrictions: Unable to work, including physical aspects/requirements of law enforcement duties

11/14/2023 - Spring Mountain Medical - Joshua Weltha, PA-C
Purpose: Attending Physician Statement for disability claim/Long Term Disability Claim evaluation
Key Findings: Diagnosis of Low Back Pain (M54.50) with onset date of 04/09/2022. Injury occurred during a search and rescue operation when employee rolled off-highway vehicle numerous times. Hospital confinement 04/09/2022-04/10/2022. Limited mobility due to lumbar injury and continued pain as a result of a work-related motor vehicle accident. Thoracolumbar musculoligamentous injury, circumferential disc bulge and annular fissure, clinical facet medical pain, clinical discogenic pain generator.
Recommendations: Patient is being treated by Advanced Spine & Rehabilitation, Su Spine & Sports, and Desert Institute of Spine Care. Patient is currently undergoing epidural steroid injection with the last one being administered 11/6, with no positive effect. Patient is currently pending approval and scheduling of radiofrequency ablation (Rhizotomy) by Su Spine & Sports and is anticipated to be completed within 30 days. Not able to return to work in law enforcement.
Restrictions: Lumbar restrictions, no law enforcement activity. No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs on occasion. Not able to return to work in law enforcement capacity.

03/01/2024 - Functional Capacity Evaluation - Davin Christensen, DPT - Optimal Therapy
Purpose: To determine overall physical capabilities and tolerances, identify physical barriers preventing return to work, and assess functional capacity
Key Findings: Patient demonstrated physical capabilities to function at Sedentary Physical Demand Level (5-10 pounds of force occasionally). Significant deficits in musculoskeletal exam including: tender throughout lower thoracic and lumbar spine, limited lumbar ROM (70% normal flexion, 15% normal extension), reduced core strength, guarded movement patterns. Modified Oswestry score 23/50 (46%) indicating high level of perceived disability. Demonstrated difficulty with most activities including crouching, squatting, lifting, carrying, pushing, pulling, and prolonged sitting/standing/walking. Frequent pain levels above 7-8/10 during evaluation. Occasional R LE cramping requiring cessation of activities. Patient exhibited moderately guarded, antalgic movement patterns with floor level lifting. Poor overall dynamic abdominal and core strength. Unable to reach above 90-95 degrees in sagittal and coronal planes due to previous shoulder pathologies. Functional activity limitations include: occasional sitting (tolerated ~20 minutes), occasional standing (tolerated ~12-15 minutes), occasional walking (tolerated ~10-15 minutes), occasional stooping (tolerated 3-5 minutes), occasional twisting (tolerated 5-

8 minutes), occasional squatting (tolerated 1-2 repetitions), occasional 2-hand lift/carry (5-10 lbs chest carry), occasional 2-hand push/pull (tolerated 3-5 minutes), frequent grasping/handling with mild deficits, and poor core stability. Valid and consistent results; can finger/keyboard frequently.
Recommendations: Not a good candidate to return to workforce at this time due to multiple issues with low back and R LE. Even at Sedentary level, would struggle with prolonged sitting tasks as symptoms exacerbate after 20-25 minutes. Sedentary physical demands only. Has reached maximum medical improvement.
Restrictions: Limited to occasional sitting (20 min tolerance), occasional standing (12-15 min tolerance), occasional walking (10-15 min tolerance), occasional twisting (5-8 min tolerance), rare squatting (1-2 repetitions), occasional 2-hand lift/carry of 5-10 lbs at chest level, unable to reach overhead. Restricted from climbing and working from unprotected heights. Does not meet job requirements.

**PHYSICAL THERAPY SUMMARY**
06/22/2022 - 03/01/2024 - Optimal Therapy and Desert View:
Visits: 4
Initial Findings: Patient presented with low back pain following rollover ATV accident on 04/09/2022. Initial evaluation showed impaired posture, decreased ROM in flexion and lateral bending, decreased core stability, and mild weakness. Increased pain and hypertonicity with palpation near/around L3/L4 centrally with A/P pressure and L QL tension. Pain rated 0/10 at best and 7/10 at worst. By 03/01/2024, patient reported right lower extremity radiculopathy with pain levels typically 5-6/10. Can walk approximately 1/2 mile on flat ground before right lower extremity symptoms increase.
Interventions: Home exercise program education, self-management instruction, manual therapy, and Functional Capacity Evaluation.
Progress: Initial concerns were pain when transitioning from sitting to standing and with prolonged sitting/standing. Condition evolved over time with changing characteristics. By final evaluation, patient demonstrated physical capabilities at Sedentary level only with significant limitations with all functional activities.
Status: Discharged after final evaluation. Not a candidate to return to workforce at this time. Previous treatments included pain management, chiropractic services, orthopedic consultation, three injections, and ablation procedure in December 2023 which reportedly worsened symptoms.

**WORK STATUS**
04/10/2022 - Initial Treatment - James Clark MD:
Restrictions and Limitations: No heavy lifting/squatting until clear by PCP
Excused From Work: Not specified

04/12/2022 - Light Duty Job Offer - Nye County Human Resources:
Restrictions and Limitations: No heavy lifting, squatting or running until cleared
Excused From Work: Beginning April 10, 2022 until released to return to full duty

06/07/2022 - Certification of Disability:
Restrictions and Limitations: Released to full duty
Excused From Work: None

06/08/2022 - Work Status:
Restrictions and Limitations: No bending at waist, no stooping, and no lifting
Excused From Work: Released to modified duty

09/27/2022 - Certification of Disability - A. Jisu NP:
Restrictions and Limitations: None
Excused From Work: Released to full duty on 09/27/2022

08/09/2023 - Physician's Report - Alexander S. Janda, DC:
Restrictions and Limitations: Unable to work due to injury, including physical aspects/requirements of law enforcement duties
Excused From Work: Certified as unable to work

09/18/2023 - Office Visit - Andrew M. Cash, MD:
Restrictions and Limitations: Lumbar restrictions: No repetitive bending, twisting, stooping, crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally
Excused From Work: Not specified

11/14/2023 - APS - Joshua Weltha, PA-C:
Restrictions and Limitations: No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally. Not able to return to work in law enforcement
Excused From Work: From 07/10/2023, advised to stop work

03/01/2024 - Functional Capacity Evaluation - Davin Christensen, DPT:
Restrictions and Limitations: Limited to Sedentary Physical Demand Level (5-10 pounds occasional lifting). Occasional sitting (20 min tolerance), occasional standing (12-15 min tolerance), occasional walking (10-15 min tolerance), occasional twisting (5-8 min tolerance), rare squatting (1-2 repetitions), occasional 2-hand lift/carry of 5-10 lbs at chest level, unable to reach overhead
Excused From Work: Patient retired from position as Captain with Nye County Sheriff's Department on October 12, 2023, and has not returned to any form of work

04/24/2024 - Attending Physician Statement - Joshua Weltha, PA-C:
Restrictions and Limitations: Occasionally able to lift/carry 1-100+ lbs. Occasionally: Stand, walk, balance, stoop, kneel, finger, crouch, crawling, grasping, climbing, pushing, pulling, bending. Frequently: Sitting. Not able to return to work in law enforcement capacity
Excused From Work: Patient at maximum medical improvement per Dr. Su on 4/17/2024

03/26/2025 - Abilities Form - Joshua Weltha, PAC-C:
Restrictions and Limitations: Patient needs to adjust between sitting, standing, and laying down to adjust for pain and discomfort as needed. Patient also needs to discontinue activities when they cause pain or discomfort. Never: lift/carry 21-100 lbs, climb, bend, kneel, reach above shoulder. Occasionally: lift/carry 0-20 lbs, sit, stand, walk, drive, finger, handle, operate foot controls
Excused From Work: Ongoing restrictions

**CORRESPONDENCE**
06/01/2022 - Email - Claim Number:
Details: Email from Christine Guerrero (claims representative) to Ryanne Gott regarding conversation with Mr. Boruchowitz about his claim. Claimant stated he was using his personal OHV vehicle during a missing person search after his truck could not access the area. He was initially off duty but went on duty to assist. He had his

daughter and a family friend in the OHV with him. The search lasted about 7-7.5 hours. Claimant reported the steering seemed to malfunction which caused the incident.
Action Items: None specified.

06/11/2024 - Phone Call - 1230082409:
Details: Claimant reports that anything with physical exertion requires position changes. If sitting, he must stand, and if standing, must sit. Can prepare/cook meals, chop, load dishwasher with pain, carry laundry basket, switch laundry loads, shower independently, reach to wash head, bend to wash toes, dress himself, put on socks and shoes, and drive. Typical day involves shuttling teenage kids, sitting on patio or computer, taking light walks to change positions. Reports physical requirements of job prevent return to work, including sense of tactics requirements (fighting, wrestling, quick moving). Employer unable to accommodate restrictions with desk position. Not pursuing surgery as doctor does not recommend it now due to risk. Current treatment is exercise and movement. Waiting for workers' compensation evaluation and recommendations. Reports constant need for position changes.
Action Items: Obtain copy of workers' compensation provider records.

10/04/2024 - Vocational Services Referral - 1230082409:
Details: Vocational rehabilitation consultant offered employment assistance services including exploration of employment leads in local labor market, resume development, job seeking services, consideration of work accommodations, and referrals to employment assistance programs.
Action Items: Claimant to identify dates/times for discussion of services.

10/07/2024 - Email Exchange - 1230082409:
Details: Claimant indicated schedule is busy until beginning of November and asked about availability on the afternoon of November 4th. Vocational consultant confirmed availability between 8am-4:30pm CST on that date.
Action Items: Claimant to confirm specific time for call.

03/18/2025 - Insured's Supplementary Statement - 1230082409:
Details: Claimant reports lower back pain extending into leg. States he does not expect to be able to return to employment in his or another occupation unless medical professionals find alternative treatment plan. Reports restrictions vary daily and sometimes hourly with pain levels frequently at 7-8 and often 9-10. Experiences pain and discomfort from sitting longer than 25 minutes, standing 15-20 minutes, and walking 10-15 minutes. Often needs to lie down to alleviate pain. Bending, reaching, and lifting cause pain and discomfort. Activities vary day to day with no consistency to pain triggers. Assists with non-profit support group for special needs children and wife's company as physically able, with tasks completely dependent on back pain and discomfort. Activities intermingled with sitting, standing, and lying down rotations as needed.
Action Items: None specified.

03/20/2025 - Email - 1230082409:
Details: Claimant submitted insured's supplementary statement. Saw physician on 03/18/2025 who ordered X-ray and MRI for updated imaging. X-ray completed on 03/19/2025 with MRI planned for following week.
Action Items: Claimant to submit physician paperwork after imaging completed.

03/27/2025 - Email - 1230082409:
Details: Claimant submitted physician statement from appointment on 03/26/2025. Follow-up appointment scheduled for 04/15/2025. Patient offers to obtain additional information from the physician if needed.

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Type 2 diabetes mellitus without complications – E11.9
Obesity – E66.9
Obstructive sleep apnea – G47.33
Hyperlipidemia, unspecified – E78.5
Hepatic steatosis – K76.0
Elevated liver enzymes – R74.8
Splenomegaly – R16.1
History of Gaucher disease (not confirmed) – Z83.49

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond, and comment on the expected duration.**

David Boruchowitz is a 44-year-old male who sustained injuries to his shoulder, back, and rib cage in a work-related rollover accident on April 9, 2022, while operating an off-road vehicle during a missing person search. Imaging performed shortly after the incident revealed multilevel degenerative disc disease, most notably at L5-S1. He was diagnosed with thoracolumbar musculoligamentous injury, clinical facet-mediated and discogenic lumbar pain, and rib cage strain. Treatment over the following two years included physical therapy, chiropractic care, pain medication (diclofenac and baclofen), bilateral transforaminal epidural steroid injections (08/28/2023), bilateral facet joint injections (11/06/2023), and radiofrequency ablation at L3–L5 (12/11/2023). While facet injections provided significant short-term relief, the epidural and ablation procedures offered minimal to limited improvement. A Functional Capacity Evaluation (FCE) conducted on March 1, 2024, determined he could function only within the sedentary physical demand category, and his treating providers subsequently confirmed maximum medical improvement as of April 17, 2024.

The restrictions and limitations are supported by consistent findings from Dr. Peter Su (Su Spine & Sports), who documented ongoing painful range of motion and paraspinal tenderness on multiple occasions between September 2023 and April 2024. On January 18, 2024, Dr. Su noted full but painful lumbar range of motion, bilateral lumbar facet tenderness, and a VAS pain rating of 7–8/10. In conjunction with those findings, Davin Christensen, DPT, performed a thorough FCE on March 1, 2024, documenting severely limited lumbar ROM (only 70% of normal flexion and 15% of normal extension), reduced core strength, and poor tolerance for positional activities. Mr. Boruchowitz was only able to sit for 20 minutes at a time, stand for 12–15 minutes, and walk for 10–15 minutes before needing to change position or rest due to pain and right lower extremity cramping. Despite medication management, his condition remains symptomatic with a need for regular position changes and avoidance of prolonged static postures. He has been deemed permanently unable to return to law enforcement duties, and there is no indication that further improvement is expected.

Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side-effects, the supported level of impairment translates into restrictions and limitations from 07/2024 to current and beyond of:

Sitting, Standing, Walking–
Sitting: Constant
Standing: Occasional
Walking: Occasional

Lifting, Pushing, Pulling, Carrying–
Lifting: Occasional, up to 10 lbs., utilizing both extremities together
Pushing: Occasional, up to 10 lbs., utilizing both extremities together
Pulling: Occasional, up to 10 lbs., utilizing both extremities together
Carrying: Occasional, up to 10 lbs., utilizing both extremities together

Bilateral Upper Extremities–
Over shoulder level: Frequent
To desk level: Unrestricted
Below waist level: Frequent
Fine manipulation: Unrestricted
Simple grasping: Unrestricted
Firm grasping: Frequent
Finger: Unrestricted
Handle: Unrestricted
Feel: Unrestricted

Other–
Climbing stairs: Occasional
Balancing: Occasional
Stooping: Occasional
Bending: Occasional
Kneeling: Occasional
Crouching: Occasional
Crawling: Never
Ladder climbing: Never
Lower extremities for foot controls: Occasional
Driving: Occasional

These R/Ls are permanent.

**4. Do medical records support any restrictions and limitations that were recommended by treating providers for the timeframes in question?**

Yes, the medical records support restrictions and limitations recommended by treating providers for the timeframe beginning July 2024 to present. These restrictions are based on findings documented by Dr. Peter Su, Physical Medicine & Rehabilitation; Joshua Weltha, PA-C; and Davin Christensen, DPT, who performed the Functional Capacity Evaluation on March 1, 2024. All of these providers identified consistent impairments related to the lumbar spine, including limited tolerance for static postures, reduced core strength, guarded movement patterns, and increased pain with activity.

The FCE documented by Davin Christensen, DPT, supports the following restrictions: sitting for up to 20–25 minutes at a time on an occasional basis, standing for 12–15 minutes at a time, and walking for 10–15 minutes at a time, all with the need to alternate positions. Lifting, carrying, pushing, and pulling were limited to 5–10 lbs. at chest level using both upper extremities. He was unable to reach above 90–95 degrees in the sagittal and coronal planes due to previous bilateral shoulder pathologies. Crawling and ladder climbing were precluded. Frequent grasping and handling were permitted, and he was noted to have poor tolerance for squatting, crouching, stooping, and prolonged positional activities.

Joshua Weltha, PA-C, reaffirmed these findings in multiple visits, including on March 26, 2025, where he stated the claimant must be able to alternate between sitting, standing, and lying down as needed, and must discontinue

activities when they cause pain. He specifically restricted overhead reaching, kneeling, bending, climbing, and lifting above 20 pounds.

There are two differences between the documented restrictions and those listed above:

Sitting: The FCE categorized sitting as occasional, with a 20-minute tolerance before needing to change positions. The current restriction categorizes sitting as constant, for up to 30 minutes at a time, and up to 6 hours total per day. This adjustment is supported by the claimant's reported ability to sit at a computer or on a patio if allowed to change positions regularly. His pain is triggered by prolonged static postures, not total daily sitting time. This level of sitting is also reasonable in light of his medication use, which has provided some symptom relief, and the absence of cognitive or systemic side effects that would limit sedentary tasks.

Overhead reaching: The FCE noted an inability to reach above 90–95 degrees due to prior bilateral shoulder surgeries. The current restriction allows for frequent reaching over shoulder level. While the primary impairment is lumbar and the claimant has not recently sought treatment for shoulder issues, a limitation to occasional overhead reaching may be more consistent with the FCE findings. However, if reaching is non-forceful or intermittent, frequent use may still be appropriate.

All other restrictions and limitations are consistent with the medical file and reflect the claimant's maximum medical improvement status, the chronicity of his condition, and the lack of surgical options or curative treatment.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the providers and followed by the claimant is clinically reasonable and consistent with the severity of his condition. It included appropriate conservative measures such as physical therapy, medications, injections, and radiofrequency ablation, with surgery deferred due to limited expected benefit.

**6. A peer review completed 07/05/2024 opined claimant was at MMI and outlined restrictions and limitations. Please review the previous peer to determine if the restrictions and limitations have changed. Please expand on restrictions and limitations related to reaching at all levels and when it comes to the frequency/time of change. Example (Needs to sit, stand, lay every 15 min).**

The medical records confirm the claimant reached maximum medical improvement on 04/17/2024, with restrictions consistent with the 03/01/2024 Functional Capacity Evaluation. Current restrictions remain unchanged: occasional sitting (up to 20 minutes at a time), standing (up to 15 minutes at a time), walking (up to 15 minutes at a time), and lifting or carrying (5–10 pounds). The claimant is restricted from repetitive bending, twisting, stooping, crawling, climbing, or squatting. The 03/26/2025 abilities form provides further detail regarding reaching, noting the claimant should never reach above shoulder level. He consistently reports the need to alternate between sitting, standing, and lying down based on pain, with position changes typically required every 15–20 minutes, as documented in the 06/11/2024 phone call and 03/18/2025 supplementary statement. These restrictions remain supported by objective imaging, the valid and consistent FCE, and there is no evidence of clinical improvement since the 07/05/2024 peer review.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment or issue under review for this specific case. I have current, relevant experience and/or knowledge to render a determination for this case. To the best of my knowledge, I have not been involved with the

specific episode of care prior to referral of this review. I have no relationship, affiliation or conflict of interest with the covered person or covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,



Chintan S. Sampat, MD
Boarded Certified in Orthopaedic Surgery
State Medical Licensure
KY: C1215
IL: 036.122261
WI: 1847-320

Lincoln Financial Group®

Please Return Response To:
**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# ABILITIES FORM

**(PLEASE see FRAUD NOTICES attached)**

Patient Name: David Boruchowitz Date of Birth: ______

Occupation: Retired Claim Number: 1230082409

Date of Last Office Visit: 03/26/2025 Date of Next Office Visit: 04/15/2025

☐ **The patient does not have functional/limitations or restrictions**

Provider's Signature: ______ Date: ______

Provider Printed Name: ______ Degree: ☐ MD ☐ DO Other ______

Specialty: ______ Phone: ______

**OR**

☒ **The patient has the following functional/limitations or restrictions:**

| Lift/Carry | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) |
|---|---|---|---|---|
| 0 - 10 lbs. | | X | | |
| 11 - 20 lbs. | | X | | |
| 21 - 35 lbs. | | X | | |
| 36 - 50 lbs. | | X | | |
| 51 - 100 lbs. | | X | | |

| The patient may: | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) | |
|---|---|---|---|---|---|
| Sit | | | X | | |
| Stand | | X | | | |
| Walk | | X | | | |
| Climb | | X | | | |
| Bend | | X | | | |
| Kneel | | X | | | |
| Drive | | | X | | |
| Finger | | X | | | R / L / Both (Both circled) |
| Handle | | X | | | R / L / Both (Both circled) |
| Operate Foot Controls | | X | | | R / L / Both (Both circled) |
| Reach above the shoulder | X | | | | R / L / Both (Both circled) |

Are there environmental factors that the patient should avoid? ☐ Yes ☒ No Specify: ______

Specific Limitations or Restrictions not noted above: Patient needs to adjust between sitting, standing, and laying down to adjust for pain and discomfort as needed. Patient also needs to discontinue activities when they cause pain or discomfort.

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud and Warning Statements.

Provider's Signature: [signature] PA-C 3/26/25 Date: 03/26/2025

Provider Printed Name: Joshua Weltha, Spring Mountain Medical Degree: ☐ MD ☐ DO Other PA-C

Specialty: Primary Care Phone: 702-703-3351

Address: 1151 Nevada Highway 160, Pahrump, Nevada 89048

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# INSURED'S SUPPLEMENTARY STATEMENT

**PLEASE see FRAUD NOTICES attached.**

(To Avoid Delay Please Answer ALL Questions)

Claimant's Name David Boruchowitz    Return Form By ______
Policy No 00001017736300000    Claim No 1230082409

When do you expect to be able to return to work in either your own or another occupation?
I don't expect to be able to return to employment in mine or another occupation. See attached for more information.

Describe your current symptoms.
Lower back pain, extending into leg.

What do you believe is the cause of your continuing disability and what could be done about it?
The motor vehicle accidents, and based on medical diagnosis nothing. See attached for more information.

Describe your current restrictions/limitations specifically and thoroughly.
It varies day to day and sometimes hour by hours. I have to frequently rotate between sitting, standing, laying down to mitigate pain. See attached for more inf

Describe your present activities.
Again varies day to day based on physical activities that I can perform that day. See attached for more info.

Do you require another person's active, hands-on help to safely perform activities of daily living? ☐ Yes ☒ No
If "yes", please explain what kind of help you receive and who provides it:

Provide the name, address and telephone number of your current attending physician and the date you were last seen by him/her.
Joshua Weltha, Spring Mountain Medical, 1151 Nevada Highway 160, Pahrump, NV 89048 702-703-3351 -- last seen 3/18/202

Are you now eligible for, have applied for or are you now receiving benefits from: **(If the answer is "Yes" to any of these questions, provide a date you began receiving benefits and the monthly amount)**

| Benefit | Answer | Date | Amount | Benefit | Answer | Date | Amount |
|---|---|---|---|---|---|---|---|
| Social Security | ☐ Yes ☒ No | | $ | Unemployment Compensation | ☐ Yes ☒ No | | $ |
| Dependent Social Security | ☐ Yes ☒ No | | $ | State Disability Benefits | ☐ Yes ☒ No | | $ |
| Workers' Compensation | ☒ Yes ☐ No | 12/2024 | $332.54 | Any other disability benefit-Federal, State | ☐ Yes ☒ No | | $ |
| Pension Disability or Pension Retirement | ☒ Yes ☐ No | 10/2023 | $6696.50 | Disability Income from Automobile Policy | ☐ Yes ☒ No | | $ |
| Railroad or Canadian Pension | ☐ Yes ☒ No | | $ | Statement from injury causing disability | ☐ Yes ☒ No | | $ |

Please refer to your Policy for definitions:

| Question | Answer | Dates | From | Through |
|---|---|---|---|---|
| Are you claiming Total Disability? | ☒ Yes ☐ No | Dates of Total Disability: | 10/2023 | present |
| Are you claiming Partial Disability? | ☐ Yes ☒ No | Dates of Partial Disability: | | |
| Have you performed any type of work? | ☐ Yes ☒ No | Dates of any Work: | | |

Please explain: See attached.

The above Statements are true and complete to the best of my knowledge and belief. I hereby authorize any hospital or physician who has treated me, or other person who has attended me or examined me, or any company or government agency to furnish to The Lincoln National Life Insurance Company (or their representatives) any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits, and copies of all applicable records. I have read and understand the attached Fraud Warning Statements. A photostatic copy of this form will be as valid as the original.

Date 03/18/2025    Telephone Number 775-513-7771    Social Security # ______

Employee's Signature [signature]

Address ______

**When do you expect to be able to return to work in either your own or another occupation?**

Unless the medical professionals find an alternative treatment plan, I do not anticipate being able to return to employment because I cannot consistently do any one task for any extended length of time and because of my symptoms as noted below, I do not anticipate that I could perform any responsibilities of any employment consistently or with regular interval that an employer would authorize.

**Describe your current restrictions/limitations specifically and thoroughly continued:**

My restrictions vary daily and sometimes hourly. The pain in my back frequently is a 7-8 and often a 9 or 10. I suffer from significant cramping and pain and discomfort from any continuous activity. I traditionally begin experiencing pain and discomfort from sitting longer than 25 minutes of time, stationary standing 15 or 20 minutes, and walking 10 or 15 minutes. I often need to lay down to alleviate that pain and discomfort. In addition, bending over, reaching or lifting causes me pain and discomfort depending on the task. There is no consistency to when or how this pain seems to be triggered making activities sporadic, and varied, as well as the positioning adjustments that go with that.

**Describe your present activities continued:**

My present activities vary day to day as a result of the above symptoms. There is no rhyme or reason as to which day or what time the pain results. I am President of a non-profit support group for special needs children, and volunteer to assist as I can based on tasks, and physical limitations at the time of the request. I am also co-owner of a company my wife works for. As I physically can I assist with company tasks, however, when and how often varies completely dependent on the day and how my back responds. My assistance is completely random and tasks completed dependent on back pain and discomfort for that day and the task needed. My present activities are traditionally intermingled with sitting, standing, and laying down rotations as needed to adjust for back pain with no consistency.

.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**TREATING MEDICAL PROFESSIONALS (PLEASE see FRAUD NOTICES attached)**

CLAIMANT NAME: David Boruchowitz CLAIM NUMBER: 1230082409

**PLEASE LIST ALL PROVIDERS INCLUDING DOCTORS (CHIROPRACTORS, ALTERNATIVE MEDICINE), PHARMACIES, HOSPITALS, AND DIAGNOSTIC CLINICS FOR THE DATES** 8/6/2024 **TO** 2/6/2025

**DOCTORS:**

Name: Josh Weltha Specialty: Primary Care
Address: 1151 Nevada Highway 160
City: Pahrump State: Nevada Zip Code: 89048
Phone: 702-703-3351 Fax:
Dates Seen: 2023 to Present

Name: Specialty:
Address:
City: State: Zip Code:
Phone: Fax:
Dates Seen: to

Name: Specialty:
Address:
City: State: Zip Code:
Phone: Fax:
Dates Seen: to

Name: Specialty:
Address:
City: State: Zip Code:
Phone: Fax:
Dates Seen: to

**PHARMACIES:**

Name: Smith's Pharmacy
Address: 601 Highway 160
City: Pahrump State: Nevada Zip Code: 89048
Phone: 775-727-2400 Fax:
Dates: around 2012 to present

Name:
Address:
City: State: Zip Code:
Phone: Fax:
Dates: to

**HOSPITALS:**

Name:
Address:
City: State: Zip Code:
Phone: Fax:
Dates Confined: to

Name:
Address:
City: State: Zip Code:
Phone: Fax:
Dates Confined: to

**MEDICAL CARRIERS:** Please provide the name of your medical carrier(s) (ex: Aetna, United Healthcare) for dates identified at top of form. If you have more than one carrier during this period of time, please list this information on the back of this form).

Name: Blue Cross Blue Shield
Address: 200 E. Randolph Street
City: Chicago State: IL Zip Code:
Phone Number: 800-676-2583

Policy Number: L05850M004
Member ID: YFW724W13200
Dates of Coverage: 07/01/2023 to present
Fax Number:

**PLEASE MAKE SURE TO INCLUDE THE OFFICE NAME, PHONE NUMBER, ADDRESS, CITY, STATE AND FAX NUMBER (IF POSSIBLE). PLEASE LIST ALL DOCTORS, PHARMACIES & HOSPITALS FOR YOUR CURRENT CONDITION FOR THE DATES INDICATED ABOVE. PLEASE USE THE BACK OF THE FORM IF MORE ROOM IS NEEDED TO LIST THIS INFORMATION. COMPLETE INFORMATION IS NEEDED TO AVOID DELAY ON YOUR CLAIM.**

The above information is true and complete to the best of my knowledge and belief.

Employee's Signature [signature] Date 03/18/2025

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Boruchowitz (Last) David (First) Earle (Middle)

Date of Birth: ______ Social Security Number: ______

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** [signature] **DATE** 03/18/2025

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient n/a

**ADDRESS:** ______ (Street)

______ (City) (State) (Zip Code)

**PHONE NO:** ______

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

EMPLOYEE/CLAIMANT NAME: David Boruchowitz

CLAIM NO: 1230082409

EMPLOYER/SPONSOR: Nye County DATE OF BIRTH_

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: College Check if earned: ☐ GED ☒ HS Diploma

Vocational Training: ______ Certificate Program completed: ______

Associates Degree: ______ College: number of years: 8

Bachelor's Degree: BA /☒BS Major: Business Graduate School: ☐ MA ☒ MS ☐ CAGS PHD Degree: ______

Professional Training, License, Certificates(s): Juris Doctorate

Are you currently attending any classes: ☐Y ☒N If yes, provide name of school: ______

List any other Training or Classes Attended or Plan to Attend: Numerous law enforcement training

Primary language spoken: English Other language(s) spoken fluently: ______

Additional Skills, Hobbies & Volunteer Work
Computer use, and President of a non-profit organization for special needs children

Did you serve in the Armed Forces? ☐Y ☒N From: ______ To: ______

Branch of Service: ______ Specialty: ______

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)

Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years. (add additional pages if needed for a complete work history).

1. Company: Nye County Department: Sheriff's Office From: 02/2006 To: 10/2023
   Job Title(s): Captain
   Supervisory Experience ☒Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): Supervisor of numerous Peace Officers in 3rd largest County in the United States.

2. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties (please be specific): ______

3. Company:____________ Department:____________ From:____ To:____
   Job Title(s):____________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific):____________

4. Company:____________ Department:____________ From:____ To:____
   Job Title(s):____________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties (please be specific):____________

5. Company:____________ Department:____________ From:____ To:____
   Job Title(s):____________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific):____________

**<u>Computer Utilization:</u>**
Computer Training/Courses, Certifications:

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☒ | ☒ | Graphics Software | ☒ | ☒ |
| Internet | ☒ | ☒ | Installation/Repair Hardware | ☒ | ☒ |
| Word Processing (MS Word) | ☒ | ☒ | Installation/Repair Programming | ☒ | ☒ |
| Spread Sheet (MS Excel) | ☒ | ☒ | Project Management | ☒ | ☒ |
| Database | ☒ | ☒ | Other:______ | | |
| Photo Software | ☒ | ☒ | | | |

How much time is spent daily on your work computer? ☐None ☐1-2 hours ☐2-3 hours ☐3+ hours no work com

How much time is spent daily on your home computer? ☐None ☒1-2 hours ☐2-3 hours ☐3+ hours

Keyboarding/Typing Experience: Yes☒ No☐ If yes, WPM (words per minute) 120
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: dboruchowitz@fltg.net Work: ____________

**SIGNATURE:** [signature] **PHONE NO: (** ____________

Date: Mon Mar 10 13:25:17 CDT 2025
From: Savannah Eddy <Savannah.Eddy@lfg.com>
To: dboruchowitz@ottcmail.com
Message-ID: <854719230.3.1741631117905@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
The Lincoln National Life Insurance Company
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

March 10, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

Please refer to our letter dated 02/06/2025 regarding our investigation into your ability to perform the main duties of any gainful occupation.

To remain eligible for benefits, you must be disabled as defined in the policy issued to Nye County, which states:

**TOTAL DISABILITY or TOTALLY DISABLED** will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

Own Occupation Period means a period beginning at the end of the Elimination Period and ending 24 months later.

As stated in our letter dated 02/06/2025, we must obtain the following information from you and your physicians:

- Insured Supplemental Statement form
- Treating Medical Professionals form – for the 6 months prior to 02/06/2025
- Training Education Experience form

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- Current Authorization signed and dated -- needed to obtain copies of all medical records.
- Abilities Form (requested directly from your physician)

Please complete all sections of the forms to insure that a proper investigation can be made regarding your eligibility for benefits beyond 10/08/2025.

We will be unable to consider benefits beyond 10/08/2025 until our investigation has been completed; therefore, please return the completed forms to our office no later than 03/25/2025. This is our final request for this information. We must be provided with or have the ability to obtain evidence of specific restrictions and limitations related to recent medical findings by examination of a physician or testing defining any abnormalities that would preclude you from performing the main duties of any gainful occupation.

Without this evidence, a full review into your ability to perform the main duties of any gainful occupation cannot be completed and we will issue your final benefit to 10/08/2025, the end of the own occupation period and your claim will be terminated.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

You have the following options to return any forms or medical information related to your claim:

**Email:** DisabilityClaims@lfg.com

**Fax:** (877) 843-3950

**Online Disability Claims Portal:** If you haven't already checked out our secure portal, you'll want to do so. Here you can access information and upload documents to support the processing of your claim. You can visit www.LincolnFinancial.com to register.

**Mail To:**

Lincoln Financial Group
PO Box 2609
Omaha, NE 68103-2609

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah E
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure(s): Insured Supp Statement
TMP Form
General Authorization
Training Education Experience

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# INSURED'S SUPPLEMENTARY STATEMENT

**PLEASE see FRAUD NOTICES attached.**

(To Avoid Delay Please Answer ALL Questions)

Claimant's Name David Boruchowitz Return Form By ______

Policy No 00001017736300000 Claim No 1230082409

When do you expect to be able to return to work in either your own or another occupation?

______

Describe your current symptoms.

______

What do you believe is the cause of your continuing disability and what could be done about it?

______

Describe your current restrictions/limitations specifically and thoroughly.

______

Describe your present activities.

______

Do you require another person's active, hands-on help to safely perform activities of daily living? ☐ Yes ☐ No

If "yes", please explain what kind of help you receive and who provides it:

______

Provide the name, address and telephone number of your current attending physician and the date you were last seen by him/her.

______

Are you now eligible for, have applied for or are you now receiving benefits from: **(If the answer is "Yes" to any of these questions, provide a date you began receiving benefits and the monthly amount)**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Social Security | ☐ Yes ☐ No | ______ | $______ | Unemployment Compensation | ☐ Yes ☐ No | ______ | $______ |
| Dependent Social Security | ☐ Yes ☐ No | ______ | $______ | State Disability Benefits | ☐ Yes ☐ No | ______ | $______ |
| Workers' Compensation | ☐ Yes ☐ No | ______ | $______ | Any other disability benefit-Federal, State | ☐ Yes ☐ No | ______ | $______ |
| Pension Disability or Pension Retirement | ☐ Yes ☐ No | ______ | $______ | Disability Income from Automobile Policy | ☐ Yes ☐ No | ______ | $______ |
| Railroad or Canadian Pension | ☐ Yes ☐ No | ______ | $______ | Statement from injury causing disability | ☐ Yes ☐ No | ______ | $______ |

Please refer to your Policy for definitions:

Are you claiming Total Disability? ☐ Yes ☐ No Dates of Total Disability: From ______ Through ______

Are you claiming Partial Disability? ☐ Yes ☐ No Dates of Partial Disability: From ______ Through ______

Have you performed any type of work? ☐ Yes ☐ No Dates of any Work: From ______ Through ______

Please explain:

______

The above Statements are true and complete to the best of my knowledge and belief. I hereby authorize any hospital or physician who has treated me, or other person who has attended me or examined me, or any company or government agency to furnish to The Lincoln National Life Insurance Company (or their representatives) any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits, and copies of all applicable records. I have read and understand the attached Fraud Warning Statements. A photostatic copy of this form will be as valid as the original.

Date ______ Telephone Number ______ Social Security # ______

Employee's Signature ______

Address ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**TREATING MEDICAL PROFESSIONALS (PLEASE see FRAUD NOTICES attached)**

CLAIMANT NAME: David Boruchowitz CLAIM NUMBER: 1230082409

**PLEASE LIST ALL PROVIDERS INCLUDING DOCTORS (CHIROPRACTORS, ALTERNATIVE MEDICINE), PHARMACIES, HOSPITALS, AND DIAGNOSTIC CLINICS FOR THE DATES __________ TO__________**

**DOCTORS:**

Name: ________________ Specialty: ________________ Name: ________________ Specialty: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Seen: ________ to ________ Dates Seen: ________ to ________

Name: ________________ Specialty: ________________ Name: ________________ Specialty: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Seen: ________ to ________ Dates Seen: ________ to ________

**PHARMACIES:**

Name: ________________ Name: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates: ________ to ________ Dates: ________ to ________

**HOSPITALS:**

Name: ________________ Name: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Confined: ________ to ________ Dates Confined: ________ to ________

**MEDICAL CARRIERS:** Please provide the name of your medical carrier(s) (ex: Aetna, United Healthcare) for dates identified at top of form. If you have more than one carrier during this period of time, please list this information on the back of this form).

Name: ________________ Policy Number: ________________
Address: ________________ Member ID: ________________
City: ________ State: ________ Zip Code: ________ Dates of Coverage: ________ to ________
Phone Number: ________________ Fax Number: ________________

**PLEASE MAKE SURE TO INCLUDE THE OFFICE NAME, PHONE NUMBER, ADDRESS, CITY, STATE AND FAX NUMBER (IF POSSIBLE). PLEASE LIST ALL DOCTORS, PHARMACIES & HOSPITALS FOR YOUR CURRENT CONDITION FOR THE DATES INDICATED ABOVE. PLEASE USE THE BACK OF THE FORM IF MORE ROOM IS NEEDED TO LIST THIS INFORMATION. COMPLETE INFORMATION IS NEEDED TO AVOID DELAY ON YOUR CLAIM.**

The above information is true and complete to the best of my knowledge and belief.

Employee's Signature ________________________________ Date ________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________________________
(Last) (First) (Middle)

Date of Birth: ____________________ Social Security Number: ____________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____________________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME**: ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

EMPLOYEE/CLAIMANT NAME: David Boruchowitz

CLAIM NO: 1230082409

EMPLOYER/SPONSOR: Nye County DATE OF BIRTH_

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: ____________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ____________ Certificate Program completed: ____________

Associates Degree: ____________ College: number of years: ____________

Bachelor's Degree: BA /BS Major: ______ Graduate School: ☐ MA ☐ MS ☐ CAGS PHD Degree: _____

Professional Training, License, Certificates(s): ____________

Are you currently attending any classes: ☐Y ☐ N If yes, provide name of school: ____________

List any other Training or Classes Attended or Plan to Attend: ____________

Primary language spoken: ____________ Other language(s) spoken fluently: ____________

Additional Skills, Hobbies & Volunteer Work

____________

Did you serve in the Armed Forces? ☐Y ☐ N From: ________ To: ________

Branch of Service: ____________ Specialty:

____________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)

Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years. (add additional pages if needed for a complete work history).

1. Company: ____________ Department: ____________ From: ______ To: ______
   Job Title(s): ____________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ____________

   ____________

2. Company: ____________ Department: ____________ From: ______ To: ____
   Job Title(s): ____________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties (please be specific): ____________

   ____________

3. Company:______________________Department:__________________From:______To:____
Job Title(s):_______________________________________________________________
Supervisory Experience ☐ Y ☐ N
Tasks/Duties (please be specific):________________________________________________

_____________________________________________________________________________

4. Company:______________________Department:_________________From:______To:_____
Job Title(s):_______________________________________________________________
Supervisory Experience ☐Y ☐ N
Tasks/Duties (please be specific):________________________________________________

_____________________________________________________________________________

5. Company:______________________Department:_________________From:______To:_____
Job Title(s):_______________________________________________________________
Supervisory Experience ☐ Y ☐ N
Tasks/Duties (please be specific):________________________________________________
_____________________________________________________________________________

**Computer Utilization:**
Computer Training/Courses, Certifications:

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | | | |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Database | ☐ | ☐ | Project Management | ☐ | ☐ |
| Photo Software | ☐ | ☐ | Other:_____________ | | |

How much time is spent daily on your work computer? ☐None ☐1-2 hours ☐2-3 hours ☐3+ hours

How much time is spent daily on your home computer? ☐None ☐1-2 hours ☐2-3 hours ☐3+ hours

Keyboarding/Typing Experience: Yes☐ No☐ If yes, WPM (words per minute) __________
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: _____________________Work: __________________

**SIGNATURE:** ____________________________**PHONE NO: (          )**________________________

Date: Thu Feb 06 12:35:28 CST 2025
From: Savannah Eddy <Savannah.Eddy@lfg.com>
To: dboruchowitz@ottcmail.com
E-communication from Lincoln Financial Group
Message-ID: <703762013.8.1738866928046@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
The Lincoln National Life Insurance Company
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

February 6, 2025

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in reference to your claim for Long Term Disability benefits.

As you will recall in your original approval letter we advised your policy provides 24 months of benefits as long as you are unable to perform the main duties of your Own Occupation.

The Own Occupation Period begins at the end of the Elimination Period and ends 24 months later. Your Own Occupation Period will end on 10/08/2025.

At this time we are re-evaluating your claim to determine if you are Totally Disabled from any occupation. To make an appropriate determination, we will be evaluating current medical documentation and your past training, education and work experience.

Therefore, we must obtain the following information from you:

- ☐ Insured's Supplementary Statement form
- ☐ Treating Medical Professionals form
- ☐ Training Education Experience form
- ☐ Current Authorization signed and dated -- needed to obtain copies of all medical records
- ☐ Abilities Form – To be completed by your medical provider

You have the following options to return any forms or medical information related to your claim:

**Email:** DisabilityClaims@lfg.com

**Fax:** (877) 843-3950

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**Online Disability Claims Portal:** If you haven't already checked out our secure portal, you'll want to do so. Here you can access information and upload documents to support the processing of your claim. You can visit www.LincolnFinancial.com to register.

**Mail To:**

Lincoln Financial Group
PO Box 2609
Omaha, NE 68103-2609

Once we receive this information from you, we will assist you in obtaining the medical records from your physicians by sending a request to them directly. However, you are ultimately responsible to ensure that sufficient proof is provided in support of your claim for continuing disability beyond the Own Occupation Period. If all requested information is not provided in a timely manner, we may proceed with our determination based on the available information. This determination, however, may be negatively impacted if all requested and/or pertinent information is not made available for consideration during the review period. We appreciate your assistance in acquiring copies of your medical records.

We will be unable to consider benefits beyond 10/08/2025 until our investigation has been completed; therefore, please return the completed forms to our office within 30 days.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah E
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure(s): Abilities Form
Insured Supp Statement
TMP Form
General Authorization
Training Education Experience

Lincoln Financial Group®

**Please Return Response To:**
**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

## ABILITIES FORM

**(PLEASE see FRAUD NOTICES attached)**

Patient Name: David Boruchowitz Date of Birth: _

Occupation: ______ Claim Number: 1230082409

Date of Last Office Visit: ______ Date of Next Office Visit: ______

☐ **The patient does not have functional/limitations or restrictions**

Provider's Signature:______ Date:______

Provider Printed Name:______ Degree: ☐ MD ☐ DO Other______

Specialty:______ Phone:______

**OR**

☐ **The patient has the following functional/limitations or restrictions:**

| Lift/Carry | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) |
|---|---|---|---|---|
| 0 - 10 lbs. | | | | |
| 11 - 20 lbs. | | | | |
| 21 - 35 lbs. | | | | |
| 36 - 50 lbs. | | | | |
| 51 - 100 lbs. | | | | |

| The patient may: | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) | |
|---|---|---|---|---|---|
| Sit | | | | | |
| Stand | | | | | |
| Walk | | | | | |
| Climb | | | | | |
| Bend | | | | | |
| Kneel | | | | | |
| Drive | | | | | |
| Finger | | | | | R / L / Both |
| Handle | | | | | R / L / Both |
| Operate Foot Controls | | | | | R / L / Both |
| Reach above the shoulder | | | | | R / L / Both |

Are there environmental factors that the patient should avoid? ☐Yes ☐No Specify:______

Specific Limitations or Restrictions not noted above:______

______

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud and Warning Statements.

Provider's Signature:______ Date:______

Provider Printed Name:______ Degree: ☐ MD ☐ DO Other______

Specialty:______ Phone:______

Address:_ ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# INSURED'S SUPPLEMENTARY STATEMENT

**PLEASE see FRAUD NOTICES attached.**

(To Avoid Delay Please Answer ALL Questions)

Claimant's Name David Boruchowitz    Return Form By ____________

Policy No 00001017736300000    Claim No 1230082409

When do you expect to be able to return to work in either your own or another occupation?

______________________________________________________________

Describe your current symptoms.

______________________________________________________________

What do you believe is the cause of your continuing disability and what could be done about it?

______________________________________________________________

Describe your current restrictions/limitations specifically and thoroughly.

______________________________________________________________

Describe your present activities.

______________________________________________________________

Do you require another person's active, hands-on help to safely perform activities of daily living? ☐ Yes ☐ No

If "yes", please explain what kind of help you receive and who provides it:

______________________________________________________________

Provide the name, address and telephone number of your current attending physician and the date you were last seen by him/her.

______________________________________________________________

Are you now eligible for, have applied for or are you now receiving benefits from: **(If the answer is "Yes" to any of these questions, provide a date you began receiving benefits and the monthly amount)**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Social Security | ☐ Yes ☐ No | __________ | $__________ | Unemployment Compensation | ☐ Yes ☐ No | __________ | $__________ |
| Dependent Social Security | ☐ Yes ☐ No | __________ | $__________ | State Disability Benefits | ☐ Yes ☐ No | __________ | $__________ |
| Workers' Compensation | ☐ Yes ☐ No | __________ | $__________ | Any other disability benefit-Federal, State | ☐ Yes ☐ No | __________ | $__________ |
| Pension Disability or Pension Retirement | ☐ Yes ☐ No | __________ | $__________ | Disability Income from Automobile Policy | ☐ Yes ☐ No | __________ | $__________ |
| Railroad or Canadian Pension | ☐ Yes ☐ No | __________ | $__________ | Statement from injury causing disability | ☐ Yes ☐ No | __________ | $__________ |

Please refer to your Policy for definitions:

Are you claiming Total Disability? ☐ Yes ☐ No Dates of Total Disability: From __________ Through __________

Are you claiming Partial Disability? ☐ Yes ☐ No Dates of Partial Disability: From __________ Through __________

Have you performed any type of work? ☐ Yes ☐ No Dates of any Work: From __________ Through __________

Please explain:

______________________________________________________________

The above Statements are true and complete to the best of my knowledge and belief. I hereby authorize any hospital or physician who has treated me, or other person who has attended me or examined me, or any company or government agency to furnish to The Lincoln National Life Insurance Company (or their representatives) any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits, and copies of all applicable records. I have read and understand the attached Fraud Warning Statements. A photostatic copy of this form will be as valid as the original.

Date ____________ Telephone Number ____________ Social Security # ____________

Employee's Signature ______________________________________

Address ______________________________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**TREATING MEDICAL PROFESSIONALS (PLEASE see FRAUD NOTICES attached)**

CLAIMANT NAME: David Boruchowitz CLAIM NUMBER: 1230082409

**PLEASE LIST ALL PROVIDERS INCLUDING DOCTORS (CHIROPRACTORS, ALTERNATIVE MEDICINE), PHARMACIES, HOSPITALS, AND DIAGNOSTIC CLINICS FOR THE DATES __________ TO_________**

**DOCTORS:**

Name: ________________ Specialty: _______________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Seen: ____________ to ____________________

Name: ________________ Specialty: _______________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Seen: ____________ to ____________________

Name: ________________ Specialty: _______________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Seen: ____________ to ____________________

Name: ________________ Specialty: _______________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Seen: ____________ to ____________________

**PHARMACIES:**

Name: ______________________________________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates: ________________ to ____________________

Name: ______________________________________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates: ________________ to ____________________

**HOSPITALS:**

Name: ______________________________________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Confined: __________ to ____________________

Name: ______________________________________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone: ________________ Fax: ___________________
Dates Confined: __________ to ____________________

**MEDICAL CARRIERS:** Please provide the name of your medical carrier(s) (ex: Aetna, United Healthcare) for dates identified at top of form. If you have more than one carrier during this period of time, please list this information on the back of this form).

Name: ______________________________________
Address: ______________________________________
City: ______________ State: ________ Zip Code: ________
Phone Number: ________________________________
Policy Number: ________________________________
Member ID: ___________________________________
Dates of Coverage: ___________ to _______________
Fax Number: __________________________________

**PLEASE MAKE SURE TO INCLUDE THE OFFICE NAME, PHONE NUMBER, ADDRESS, CITY, STATE AND FAX NUMBER (IF POSSIBLE). PLEASE LIST ALL DOCTORS, PHARMACIES & HOSPITALS FOR YOUR CURRENT CONDITION FOR THE DATES INDICATED ABOVE. PLEASE USE THE BACK OF THE FORM IF MORE ROOM IS NEEDED TO LIST THIS INFORMATION. COMPLETE INFORMATION IS NEEDED TO AVOID DELAY ON YOUR CLAIM.**

The above information is true and complete to the best of my knowledge and belief.

Employee's Signature ____________________________________ Date _________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Name of Insured: ______________________________________________
   (Last) (First) (Middle)

   Date of Birth: ____________________ Social Security Number: ____________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____________________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME**: ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

EMPLOYEE/CLAIMANT NAME: David Boruchowitz

CLAIM NO: 1230082409

EMPLOYER/SPONSOR: Nye County DATE OF BIRTH_

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: ____________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ____________ Certificate Program completed: ____________

Associates Degree: ____________ College: number of years: ____________

Bachelor's Degree: BA /BS Major: ______ Graduate School: ☐ MA ☐ MS ☐ CAGS PHD Degree: ____

Professional Training, License, Certificates(s): ____________

Are you currently attending any classes: ☐Y ☐ N If yes, provide name of school: ____________

List any other Training or Classes Attended or Plan to Attend: ____________

Primary language spoken: ____________ Other language(s) spoken fluently: ____________

Additional Skills, Hobbies & Volunteer Work

____________

Did you serve in the Armed Forces? ☐Y ☐ N From: ________ To: ________

Branch of Service: ____________ Specialty:

____________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)

Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years. (add additional pages if needed for a complete work history).

1. Company: ____________ Department: ____________ From: ______ To: ______
   Job Title(s): ____________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ____________

   ____________

2. Company: ____________ Department: ____________ From: ______ To: ______
   Job Title(s): ____________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties (please be specific): ____________

   ____________

3. Company:______________________Department:__________________From:______To:____
   Job Title(s):_____________________________________________________________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific):_________________________________________________

   _____________________________________________________________________________

4. Company:______________________Department:_________________From:______To:_____
   Job Title(s):_____________________________________________________________
   Supervisory Experience ☐Y ☐ N
   Tasks/Duties (please be specific):_________________________________________________

   _____________________________________________________________________________

5. Company:______________________Department:_________________From:______To:_____
   Job Title(s):_____________________________________________________________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific):_________________________________________________
   _____________________________________________________________________________

**Computer Utilization:**
Computer Training/Courses, Certifications:

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | | | |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Database | ☐ | ☐ | Project Management | ☐ | ☐ |
| Photo Software | ☐ | ☐ | Other:_____________ | | |

How much time is spent daily on your work computer? ☐None ☐1-2 hours ☐2-3 hours ☐3+ hours

How much time is spent daily on your home computer? ☐None ☐1-2 hours ☐2-3 hours ☐3+ hours

Keyboarding/Typing Experience: Yes☐ No☐ If yes, WPM (words per minute) __________
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: _____________________Work: __________________

**SIGNATURE:** _____________________________ **PHONE NO: (        )**________________________

**McDonald, Cathy**

| | |
|---|---|
| **From:** | McDonald, Cathy |
| **Sent:** | Friday, October 4, 2024 3:07 PM |
| **To:** | dboruchowitz@ottcmail.com |
| **Subject:** | Referral for Vocational Services (secure) |

Hello David-
Your file was referred to our vocational program for consideration of employment assistance. There may be opportunities to support you with returning to work in a setting that accommodates your restrictions. The following types of services are typically provided. These include:

- Exploration of employment leads in your local labor market and identification of work settings that fit your needs (i.e., remote/work from home, office work, part-time or full-time).
- Resume development or support updating/reformatting an existing resume.
- Job seeking services to include setting up employment profiles on job seeking sites, uploading/submitting resumes, cover letters, etc.
- Consideration of work accommodations (i.e., ergonomic desk, chair, etc.).
- Referrals to employment assistance programs in your community for training and job placement activities, if needed.

If you would like to discuss services, please identify the dates/times that work best for you, and I will arrange to call you. My work schedule is Monday-Friday, 8:00 am-4:30 pm CST. I hope that you are doing well, and I hope to be able to support you with your future return to work needs.

Best regards-

**Cathy McDonald, MA, CRC**
Vocational Rehabilitation Consultant II
Group Protection
**Lincoln Financial Group**

**402-361-7771 Office**
**402-361-1154 Fax**

CENTRAL TIME ZONE

LincolnFinancial.com

**McDonald, Cathy**

**From:** McDonald, Cathy
**Sent:** Monday, October 7, 2024 1:33 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** RE: Referral for Vocational Services (secure)

Hello-

I have availability that day between 8 am-4:30 CST. Just let me know what time works best for you and I will arrange to call you.

Thank you!

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Sunday, October 6, 2024 2:14 PM
**To:** McDonald, Cathy <Cathy.McDonald@lfg.com>
**Subject:** RE: Referral for Vocational Services (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

My schedule is crazy until the beginning of November.

Do you have anything the afternoon of the 4th?

---

**From:** McDonald, Cathy <Cathy.McDonald@lfg.com>
**Sent:** Friday, October 4, 2024 1:07 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** Referral for Vocational Services (secure)

This message was sent securely using Zix®

Hello David-
Your file was referred to our vocational program for consideration of employment assistance. There may be opportunities to support you with returning to work in a setting that accommodates your restrictions. The following types of services are typically provided. These include:

- Exploration of employment leads in your local labor market and identification of work settings that fit your needs (i.e., remote/work from home, office work, part-time or full-time).
- Resume development or support updating/reformatting an existing resume.
- Job seeking services to include setting up employment profiles on job seeking sites, uploading/submitting resumes, cover letters, etc.
- Consideration of work accommodations (i.e., ergonomic desk, chair, etc.).
- Referrals to employment assistance programs in your community for training and job placement activities, if needed.

If you would like to discuss services, please identify the dates/times that work best for you, and I will arrange to call you. My work schedule is Monday-Friday, 8:00 am-4:30 pm CST. I hope that you are doing well, and I hope to be able to support you with your future return to work needs.

Best regards-

**Cathy McDonald, MA, CRC**
Vocational Rehabilitation Consultant II
Group Protection
**Lincoln Financial Group**

**402-361-7771 Office**
**402-361-1154 Fax**

CENTRAL TIME ZONE

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**®.

**McDonald, Cathy**

| | |
|---|---|
| **From:** | McDonald, Cathy |
| **Sent:** | Tuesday, October 15, 2024 8:25 AM |
| **To:** | dboruchowitz@ottcmail.com |
| **Subject:** | Vocational Services Update (secure) |

Hello David-
I am following up to see if you still want to schedule a time for Monday, 11/04 to discuss services or if you prefer to move this to a different date. I am open to whatever dates/times work best for you. My work schedule is Monday-Friday, 8:00 am-4:30 pm CST.

I hope that you are doing well.

Best regards-

**Cathy McDonald, MA, CRC**
Vocational Rehabilitation Consultant II
Group Protection
**Lincoln Financial Group**

**402-361-7771 Office**
**402-361-1154 Fax**

CENTRAL TIME ZONE

LincolnFinancial.com

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| Nye County | David Boruchowitz | 1230082409 |

| | | | |
|---|---|---|---|
| **Report Date:** | 7/5/2024 | | |
| **Referred By:** | Steffanie Guerena | **Claimant DOB:** | |
| **Referral Date:** | 06/21/2024 | **Job Title:** | Police Captain |
| **Due Date:** | 07/06/2024 | **Medical/ Surgical Condition:** | Low back pain, lumbar strain, degeneration of lumbar intervertebral disc |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 07/07/2023 |
| | | **DOD:** | 07/10/2023 |
| **Physical Demands:** | | **BBD:** | 10/08/2023 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Referral Questions**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.**

- Low back pain (M54.5)
- Lumbar strain (39.012)
- Facet Syndrome M12.88

**2. If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.**

- Degeneration of lumbar intervertebral disc (M51.36)
- Type 2 diabetes mellitus (E11)
- Obesity (E66.9)

**3. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from *3/1/2024 to current and beyond*, and comment on the expected duration.**

Regarding the claimant's chronic low back pain and facet syndrome, and given the entire clinical picture, the information contained in the medical records reviewed reasonably support the following R/Ls from 3/1/24 to the present and ongoing for the foreseeable future: exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherwise move objects; reaching above the shoulder and below the waist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and walking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and working from unprotected heights.

**4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If "No," please discuss differences in the comment section below).**

Yes

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If "No" please explain in the comment section below).**

Yes

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

No

**7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:**

**Name: Dr. Peter Su Phone: (702) 779 3994 Fax: 888-464-0838**
**Name: Joshua Weltha, PA-C Phone: (702) 703 3351 Fax: 775-727-9452**

AP Contact was not indicated as review of the medical records was sufficient to conclude impairments and R/Ls.

**8. If functional impairment is present, what are the reasonable expectations for improvement and when would those be expected?**

Functional impairments and R/Ls noted in the response to question # 3 above are ongoing for the foreseeable future. The claimant was noted at maximum medical improvement.

**9. Do the available records document any clinical evaluation abnormalities to support the medical necessity for restrictions and limitations?**

Yes

**10. Would an IME be recommended as appropriate follow-up for ongoing claim management?**

An IME would not be indicated since records from the claimant's medical providers and functional capacity evaluation were sufficient to conclude impairments and R/Ls.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

David Boruchowitz is a 44 year old male Police Captain for Nye County, last date worked on 7/7/23, who on 4/9/22 was involved in an injury during police officer duties when he was inside a vehicle that lost steering and rolled 3 times with subsequent shoulder pain (not persistent since 2022) and chronic low back pain s/p chiropractic manual therapy care with Alexander Janda 11/16/22 to 8/9/23, and physical therapy without relief. The claimant was evaluated by Orthopedics

and Physical Medicine and subsequently had a functional capacity evaluation in 3/2024. He was noted as reaching maximum medical improvement (MMI) and was recommended ongoing R/Ls for the foreseeable future.

Evaluation with Dr. Andrew Cash (Orthopedics) on 9/18/23 noted the claimant with painful lumbar flexion, extension, and bilateral paraspinal musculature pain and tenderness; negative straight leg raises; diagnosed with Facet Syndrome and referred to Pain Medicine.

Dr. Peter Su (Physical Medicine and Rehabilitation) from 9/5/23 to 4/17/24 noted the claimant with low back pain, facet syndrome, failed conservative treatment with chiropractic therapy, physical therapy, home exercises and stretches, diclofenac and baclofen, medial branch blocks with limited relief, bilateral L4-5 and L5-S1 facet joint injections (performed on 11/6/23), bilateral L3, L4, L5 radiofrequency ablation (performed on 12/11/23) with minimal relief. The claimant was not interested in pursuing surgical intervention. The claimant was referred for a functional capacity evaluation (performed on 3/1/24 at Optimal Therapy) that indicated the claimant had valid and consistent results and recommended for sedentary physical demands and had met maximal medical improvement.

Functional Capacity Evaluation authored by Davin Christensen from Optimal Therapy on 3/1/24 concluded that the claimant met sedentary physical demand levels, exerting to 5-10 lb. occasionally, sitting, standing, and walking occasionally up to 15 minutes at a time, occasional carrying, occasionally stooping and, squatting, unable to reach above shoulder level; can finger/keyboard frequently. He would be restricted from climbing and working from unprotected heights.

Dr. Amber Anderson and Joshua Weltha PA-C (Primary Care) from 11/14/23 to 4/24/24 noted the claimant with low back pain and recommended no repetitive bending, twisting, stooping, crawling, climbing, squatting, or lifting more than 10 pounds occasionally. The claimant was also noted with right upper quadrant pain, found with hepatic steatosis (fatty liver) on ultrasound on 1/11/24.

Studies:

- 4/10/22: CT Cervical Spine with no acute abnormality of cervical spine.
- 4/10/22: CT Abdomen pelvis with no acute abnormality.
- 4/10/22: CT Chest with no acute intrathoracic injury
- 4/10/22: CT Brain with no acute intracranial abnormality.
- 6/1/22: X-ray lumbar spine noted for multilevel degenerative disc disease.
- 12/13/22: MRI Lumbar spine noted with mild multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots.

Therefore, given the entire clinical picture, it is reasonable to conclude that the following R/Ls for the claimant's impairments described in question #3 (exerting to 10 lb. of force occasionally and/or a negligible amount of force frequently to lift/carry/push/pull or otherwise move objects; reaching above the shoulder and below the waist occasionally, reaching at desk level frequently; fingering and keyboarding frequently; sitting, standing, and walking occasionally up to 15 minutes at a time; bending, kneeling, stooping, crouching occasionally; restricted from balancing, climbing, and working from unprotected heights.) are supported from 3/1/24 to the present and ongoing for the foreseeable future.

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

Office visit record authored by Joshua Weltha PA-C (Primary Care) on 4/24/24.

**Electronically Signed:**

Raj Ahsan, MD MPH
Independent Consulting Physician
Board Certified in Occupational Medicine / Preventive Medicine

The opinion above is based on the information available for review and held to a reasonable degree of clinical accuracy. I attest that I have no relationship or association with the claimant who is the subject of this independent review. I also attest that I have no substantial personal or financial relationship with the treating provider(s) and/or treatment facility(ies), I have no financial interest in the insurer or claim administrator and my opinion(s) were not influenced by compensation received for my services. I hereby submit this attestation that I have complied, to the highest degree possible, with the provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the standards decreed thereunder.

REF #24051376

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 12, 2024

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

We are writing about your claim for LTD benefits under the Long-Term Disability (LTD) Policy issued to your employer.

In addition to your Long-Term Disability (LTD) benefit, you may qualify for additional benefits from the Social Security Administration.

There are several advantages for you if you are approved for Social Security Disability benefits. These advantages are outlined in the attachment, and include:

- Increased Social Security Retirement benefits
- Cost of Living Adjustment (COLA) increases
- Expedited Medicare coverage
- Dependent and Spousal benefits
- Return to Work incentives

The purpose of this letter is to provide you with information about how you can apply for those benefits.

We realize that applying for Social Security Disability benefits can be intimidating. To help you through the process, we are providing information on using the services of Claimify, a Social Security claimant representative. Claimify specializes in preparing Social Security Disability claims and, when necessary, representing claimants. They have a 90% success rate in obtaining awards. Their professional and experienced staff will act on your behalf and will keep your contact with the Social Security Administration to a minimum.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #24051376

This will be explained to you in greater detail upon accepting representation by Claimify. However, if you are choosing to apply for Social Security benefits without utilizing our Social Security Claimant representative services, you must initiate the process by either calling SSA toll free at 1-800-772-1213 (for TTY call 1-800-325-0778), applying directly online at www.socialsecurity.gov/disabilityssi/apply.html, or by visiting your local Social Security office.

If you have any other family members (dependents) that may be eligible for benefits, please make sure the Social Security Administration is informed so application and payment for dependent benefits is not delayed.

You are required to apply for Social Security benefits under the terms of

Nye County LTD Policy and it is important that you begin this process immediately. Therefore, please initiate your application by July 16, 2024.

If you do not complete that application and provide proof of the application, your LTD payments may be reduced as we may estimate the monthly Social Security Disability benefit for which you and your dependents may be eligible.

If you are approved for Social Security Disability benefits, the disability benefits received by you from Lincoln will be reduced by the amount you receive from the Social Security Administration. In other words, you will continue to receive the same amount of monthly benefits, but the money will come from two sources (Lincoln and the Social Security Administration). If you are entitled to retroactive benefits, you may receive a large payment from the Social Security Administration. This money is essentially money that Lincoln advanced to you while you were waiting for Social Security's decision, and you must repay it immediately upon our request.

If you have any questions regarding this letter, please contact me at 1-800-423-2765, ext. 2787.

Sincerely,

Lori Jones
800-423-2765 x 2787
Claims Examiner II, Social Security
The Lincoln National Life Insurance Company

Enclosure(s): Disability Payment Options Form
Social Security Advantage

REF #24051376

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# DISABILITY PAYMENT OPTIONS

Insurer: The Lincoln National Life Insurance Company (Herein Referred to as "we" and "us")
8801 Indian Hills Drive
Omaha, NE 68114

Policy Number: 00001017736300000 Claim No. 1230082409 Disability Date: ______________

Issued To: Nye County Address: ______________

Claimant David Boruchowitz Address: ______________

The policy under which you are covered provides that Disability benefits will be reduced by the amount of Social Security benefits which you and your spouse and family are eligible to receive. The policy also provides that, if you do not apply for Social Security benefits, the policy benefits will be reduced by the amount of Social Security benefits you and your spouse and family would be eligible to receive, if application had been made. Once a Social Security Application is made, you must pursue the application until Social Security makes a final decision. We consider a final decision one made at the Administrative Law Judge level.

We understand that the Social Security Administration has not yet made a decision concerning your benefits. Until the Social Security Administration makes a decision, your Disability benefits can be handled in one of two ways:

☐ 1. We can estimate the amount of Social Security benefits you and your spouse and family will receive and reduce your monthly policy benefit by this amount. If Social Security benefits are estimated, the monthly policy benefit will be adjusted when we receive:
(a) proof of the amount awarded by Social Security; or,
(b) proof that Social Security benefits have been denied and all appeals have been exhausted.
If your Social Security application is denied, the amount estimated will be returned to you in a lump sum within 30 days of our receipt of the final Social Security determination. If Social Security awards benefits which exceed our estimate, then we will have overpaid benefits to you and you will need to repay the overpayment.

☐ 2. We can pay you a monthly benefit with no reduction for estimated Social Security benefits until Social Security makes a decision. If Social Security does award benefits, this will result in an overpayment by us. You must supply us with a copy of the Social Security decision and repay any overpayment. In addition, if Social Security makes an award, we will reduce your future monthly policy benefits by the amount of Social Security benefits you and your spouse and family receive, according to the policy provisions. If you want to elect this option but have not yet applied for Social Security benefits, you must agree to apply for them immediately. If you do not apply for Social Security benefits, we will use approach #1.

Under either of the above approaches, if you do not repay an overpayment within 60 days of our notification or otherwise make acceptable repayment arrangements, we may offset the amount of the overpayment against any current or future benefits payable to you and take any other actions necessary to recover the overpayment. Please indicate which approach you want to use by checking box #1 or box #2 and signing this form. If you make no selection, we will use approach #1. If you have any questions, please contact us.

The Lincoln National Life Insurance Company reserves all rights under the contract. Notwithstanding any election to the contrary, we will begin estimating your Social Security benefits if Social Security information is not provided within 60 days of the date of this agreement.

| | |
|---|---|
| (Insured) | (Witness) |
| (Address) | (Address) |
| (Date) | (Date) |

REF #24051376

Lincoln Financial Group®

# FINANCIAL ADVANTAGES PROVIDED TO SOCIAL SECURITY DISABILITY INSURANCE RECIPIENTS

**The Lincoln National Life Insurance Company**
PO Box 2609
Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

Though your Long Term Disability benefit from Lincoln Financial Group would be reduced for any Social Security Disability benefits you might receive, there are still several very important reasons why Social Security disability income (SSDI) benefits would benefit you and your family. These all represent financial savings in one form or another and could have a major impact on your life both now and in the future. They include:

## Increased Social Security Retirement Benefits:

For every year that you are unable to work and do not “pay into the system,” no earnings are factored into your Social Security record even if you are receiving worker’s compensation payments or benefits under a private long term disability insurance plan. This is known as “zero wage earner” status. Social Security calculates your retirement benefits based on a weighted average of the income that you earned over your working life. As a result, a significant amount of non-working years will result in zeros factored into your average and a substantially lower Social Security Retirement benefit. However, if the Social Security Administration determines you are disabled within the meaning of the Social Security Act, your earnings record will be “frozen” for those years you were unable to be gainfully employed. This protects your Social Security retirement benefits.

## Health Insurance via Medicare Entitlement

SSDI recipients are entitled to Medicare coverage after receiving SSDI benefits for 24 months. This inexpensive health insurance includes Part A (Hospital) at no charge and Part B (Medical) for a small monthly payment.

## Reduced Health Insurance Premiums

Once you establish eligibility for Medicare, your premiums for any other health insurance coverage you might have could decrease. With Medicare coverage available to help defray the cost of medical expenses, such premiums may be adjusted downwards.

## Cost of Living Adjustment (COLA) Raises

Your SSDI benefit will also increase at an average of 5.8% due to COLA raises. Though you and your dependents’ initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living increases would not. Thus, your combined benefit amounts would increase each year with your Social Security increases not being subject to offset.

## Trial Work Period

In most cases, entitlement to SSDI benefits also allows you the opportunity to attempt to return to work for a period of up to nine (9) months while you still receive your full monthly SSDI benefit.

Extended period of Eligibility: Once your Trial Work period ends you can continue to work for another 36 months without being terminated from Social Security. If you are earning more than what Social Security deems Substantial Gainful Activity, then you are not due your Social Security check. Any month you earn less than SGA in a month you are due your full Social Security check.

## Tax Advantages

The majority of SSDI recipients also receive their benefits tax-free. You should, however, consult with a tax professional to determine if this tax exemption applies to your individual situation.

## Closed Period of Social Security Disability Benefits

If you anticipate returning to work in the near future, but were unable to work for twelve or more months, you may still be entitled to a closed period of SSDI benefits.

### Note: Award of Social Security Benefits May Cause Overpayment

Currently the backlog at Social Security Administration is very large, it is not uncommon for the process of obtaining benefits to take up to 1 to 2 years. Often Social Security will award back payment or retro benefits. If you are awarded retro benefits from Social Security, more than likely your Long Term Disability claim will be overpaid. Please make sure to notify Lincoln Financial Group so that they can review your past benefits and determine if your claim has been overpaid, as you are responsible to refund any overpayment within 30 days.

REF #24051376

claimify

Claimify - ATTN 83420
9450 SW Gemini Drive
Beaverton, OR, 97008-7105

# Frequently Asked Questions About Social Security Disability Insurance

## What is Social Security Disability Insurance (SSDI)?

The Social Security Administration (SSA) seeks to help workers and their families when a disabling condition occurs by providing SSDI benefits. The SSDI program provides financial assistance to people who meet the requirements for disability with SSA. These requirements are based upon the severity of the condition and your work history. Claimify is able to help you establish if you are eligible for SSDI.

## What are the advantages of applying for SSDI?

If you apply for SSDI, and you are awarded SSDI benefits, there are many advantages for you which may include:

| | |
|---|---|
| Preserve your Social Security Retirement income in order to maximize your financial income | Take advantage of the Trial Work Period that SSA provides without jeopardizing your SSDI benefit |
| Obtain Medicare Coverage to help with medical costs, prescriptions, and doctor visits | Provide benefits to your family for eligible dependents which may include children, spouse, or others |
| Increase your monthly benefit with Cost Of Living Adjustments provided by SSA on an annual basis | Save on potential tax obligations resulting in increased financial opportunities |

## What are the advantages to working with Claimify?

Published statistics demonstrate that having a representative assist you with your SSDI application increases your chance of a favorable outcome. The application process may be complex and requires a knowledgebase of the different forms required, the regulations and timelines associated with each step of the process, an understanding of how to submit an appeal if initially denied, and the potential to present at a Hearing in front of an Administrative Law Judge. Claimify provides multiple options for you to select from in order to set your application up for success.

## Do I have to pay a fee to Claimify if I work with them?

There is no out of pocket expense to you when you work with Claimify since Lincoln Financial Group will absorb the fee for a successful award with your claim.

REF #24051376

claimify | Claimify - ATTN 83420
9450 SW Gemini Drive
Beaverton, OR, 97008-7105

## How long does it take to apply for SSDI benefits?

Understanding the timelines associated with an application is an important step. The SSA has an Initial application process that may take 3-6 months to complete. If they deny your Initial application, don't worry, Claimify will assist in appealing their decision through the Reconsideration or Hearing levels. These appeal timelines will depend on the details associated with your claim, but they could take upwards of 12-24 months to complete.

## Does SSDI impact my Social Security Retirement (SSR) benefits?

Typically, SSDI positively impacts your SSR benefits. SSR is calculated using the highest 35 year earnings over the span of your career. If you are unable to work due to a disability, and are approved for SSDI, SSA will acknowledge that you are unable to work and place a "freeze" on your earnings record in order to not factor reduced income into your SSR calculation. This "freeze" will help maintain the benefit amount you would receive from SSA at full retirement age.

## Is there a lot of paperwork involved with filing for SSDI?

The SSA does require applications to be submitted in order to be considered for SSDI benefits. These applications and forms may be complex, and they need to be supported by records documenting your current condition. If the paperwork is not filled out appropriately, or if timelines are missed when the SSA is requesting information, you may receive a technical denial. By working with Claimify, we are able to manage that process directly and ensure nothing is missed with your application.

## If you didn't find the answer to your question, please contact Claimify and submit your question using one of the following methods:

**Call: (888) 512-9136**
**Text: (617) 958-8358**
**Email: info@claimify.com**

SPRING MOUNTAIN MEDICAL

| | | |
|---|---|---|
| Phone: (775)-727-8900 | Date | 5/13/2024 |
| Email: cpersieck@springmtnmed.com | | |
| | | Invoice # 2 |
| **Item** | **Requesting Entity** | **Amount** |
| Medical Records | Lincoln Financial Group | $22 |
| Spring Mountain Medical<br>1151 S Highway 160<br>Pahrump, NV 89048 | **Final Balance Due:** | $22.00 |

Lincoln Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 29, 2024

DR. JOSH WELTHA
RELEASE OF INFORMATION
1151 NV-160
PAHRUMP, NV 89048

| | | |
|---|---|---|
| Re: | Policy Number: | 00001017736300000 |
| | Claim Number: | 1230082409 |
| | Patient: | David Boruchowitz |
| | DOB: | |

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 01/01/2024 to Present |
| Diagnostic Test Results | 01/01/2024 to Present |

Current state statutes for Nevada: For paper copies: the cost of the copy, not to exceed $0.60. A reasonable fee may be charged for X-rays. The cost of postage may be charged.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950.**

***Payment Options:***

☐ ***Credit Card***

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

**Authorization Agreement**

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

**Account Information**

Name of Financial Institution: ____________________

Routing Number: ____________________

Account Number: ____________________

Authorized Signature: ____________________ Date: ____________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Denise Jimerson
Assisting on behalf of Savannah Eddy
800-423-2765 X 6932
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

   Date of Birth: ____________ Social Security Number: ____________

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).

3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** ____________ **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ____________

ADDRESS: ____________ (Street) PHONE NO: ( ) ____________

____________ (City) (State) (Zip Code)

# Patient Medical Record

**Boruchowitz, David**

43 yo M, DOB:
Account Number: 16185

| Patient Medical Record | Page(s) |
|---|---|
| Encounters | 2 to 16 |
| Patient Documents | 17 to 37 |
| **Total Pages** | **37** |

**Note:** There may be certain notes which are not made available as per your physician's discretion, please contact your physician's office to obtain those.

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

**Progress Notes**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 04/24/2024

## Subjective:

**Chief Complaints:**

1. I am here for lab results and follow up on back..

**HPI:**

Extremities:

43 yo M presents today for a follow up. They reported the following information:
-Last seen: 2.13.24
-Requests refills: no
-Pharmacy:
-Imaging completed:
-Labs completed:
CBC, CMP, Lipids A1C not actionable.
ALT is 100, this is chronic, has been worked up extensively.
-Pt has some paperwork for Lincoln Financial Group.
-Pt had functional exercise test completed, Reports back pain.
-Pt has been changing diet, walking, losing weight, sleeping well.
Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**

Allergy / Immunology:
Patient denies hives, itching, rash.
ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.
Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.
Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.
Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.
Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.
Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.
Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).
Neurologic:
Patient denies dizziness, gait abnormality, headache.
Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s)

- healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **142/90** mm Hg, HR: **88** /min, Temp: **98.2** F, Oxygen sat %: **95** %, Wt: **236.6** lbs, Wt-kg: 107.32 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **33.94** Index, Body Surface Area: 2.3.

**Past Orders:**

**Lab:Hemoglobin A1c-001453 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Hemoglobin A1c** | **5.9** | **H** | **4.8-5.6 - %** |

Notes: eclinicalworks, support 02/27/2024 07:15:07 : This order was created by the Interface.

**Lab:CBC With Differential/Platelet-005009 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| WBC | 5.1 | | 3.4-10.8 - x10E3/uL |
| RBC | 4.74 | | 4.14-5.80 - x10E6/uL |
| Hemoglobin | 13.8 | | 13.0-17.7 - g/dL |
| Hematocrit | 41.6 | | 37.5-51.0 - % |
| MCV | 88 | | 79-97 - fL |
| MCH | 29.1 | | 26.6-33.0 - pg |
| MCHC | 33.2 | | 31.5-35.7 - g/dL |
| RDW | 14.3 | | 11.6-15.4 - % |
| **Platelets** | **144** | **L** | **150-450 - x10E3/uL** |
| Neutrophils | 55 | | Not Estab. - % |
| Lymphs | 34 | | Not Estab. - % |
| Monocytes | 8 | | Not Estab. - % |
| Eos | 3 | | Not Estab. - % |
| Basos | 0 | | Not Estab. - % |
| Neutrophils (Absolute) | 2.8 | | 1.4-7.0 - x10E3/uL |
| Lymphs (Absolute) | 1.7 | | 0.7-3.1 - x10E3/uL |
| Monocytes(Absolute) | 0.4 | | 0.1-0.9 - x10E3/uL |
| Eos (Absolute) | 0.1 | | 0.0-0.4 - x10E3/uL |
| Baso (Absolute) | 0.0 | | 0.0-0.2 - x10E3/uL |
| Immature Granulocytes | 0 | | Not Estab. - % |
| Immature Grans (Abs) | 0.0 | | 0.0-0.1 - x10E3/uL |

**Lab:Lipid Panel-303756 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

| | | | |
|---|---|---|---|
| Cholesterol, Total | 111 | | 100-199 - mg/dL |
| Triglycerides | 105 | | 0-149 - mg/dL |
| **HDL Cholesterol** | **30** | **L** | **>39 - mg/dL** |
| VLDL Cholesterol Cal | 20 | | 5-40 - mg/dL |
| LDL Chol Calc (NIH) | 61 | | 0-99 - mg/dL |

Notes: eclinicalworks, support 02/27/2024 07:15:07 : This order was created by the Interface.

**Lab:Comp. Metabolic Panel (14)-322000 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| Glucose | 94 | | 70-99 - mg/dL |
| BUN | 12 | | 6-24 - mg/dL |
| **Creatinine** | **0.69** | **L** | **0.76-1.27 - mg/dL** |
| BUN/Creatinine Ratio | 17 | | 9-20 - |
| Sodium | 143 | | 134-144 - mmol/L |
| Potassium | 4.0 | | 3.5-5.2 - mmol/L |
| **Chloride** | **107** | **H** | **96-106 - mmol/L** |
| Carbon Dioxide, Total | 21 | | 20-29 - mmol/L |
| Calcium | 8.7 | | 8.7-10.2 - mg/dL |
| Protein, Total | 6.6 | | 6.0-8.5 - g/dL |
| Albumin | 4.2 | | 4.1-5.1 - g/dL |
| Globulin, Total | 2.4 | | 1.5-4.5 - g/dL |
| A/G Ratio | 1.8 | | 1.2-2.2 - |
| Bilirubin, Total | 0.7 | | 0.0-1.2 - mg/dL |
| Alkaline Phosphatase | 72 | | 44-121 - IU/L |
| AST (SGOT) | 36 | | 0-40 - IU/L |
| **ALT (SGPT)** | **57** | **H** | **0-44 - IU/L** |
| eGFR | 118 | | >59 - mL/min/1.73 |

**Examination:**

DTR, Dermatomes, and Cranial Nerves:

General: WDWN, NAD.
Head: normocephalic, atraumatic.
ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.
Skin: warm and dry, no rashes.
Heart: RRR without murmurs, gallops, clicks or rubs.
Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.
Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.
Neurologic: No focal deficits. CN 2-12 grossly intact.
Psych: AOx4.

## Assessment:

**Assessment:**

1. Elevated ALT measurement - R74.01 (Primary)

## Plan:

**Treatment:**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

**1. Elevated ALT measurement**
LAB: Lipid Panel-361767

**Procedures:**
CBC, CMP, Lipids, A1C.

**Labs:**
Lab: CBC With Differential/Platelet-005009

Lab: Hemoglobin A1c-501270

Lab: Comp. Metabolic Panel (14)-322000

**Follow Up:** 3 Months

## Billing Information:

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

## Images

**d.Boruchowitz req 4.24.24**

**Electronically signed by Joshua Weltha , PA-C on 04/24/2024 at 03:24 PM PDT**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 04/24/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Progress Notes**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 02/13/2024

## Subjective:

**Chief Complaints:**
1. I am here today for lab and xray results.

**HPI:**
Extremities:
43 yo M presents today for a follow up. They reported the following information:
-Last seen: 1.22.24
-Requests refills: No
-Pharmacy: Smiths
-Imaging completed:
XR R elbow wnl. Pain is improving. Watchful waiting.
-Labs completed:
CBC not actionable.
Trigly elev. Pt is making lifestyle mods, diet changes.
A1C is 6.9.
AST, ALT pt baseline. Seen by GI, hepatology, had US Abd.
CHITO is normal.
Pt was seen by Swedish phsyician, director of Gaucher International foundatoin, told he does not have Gauchers.
Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**
Allergy / Immunology:
Patient denies hives, itching, rash.
ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.
Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.
Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.
Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.
Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.
Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.
Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).
Neurologic:
Patient denies dizziness, gait abnormality, headache.
Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s) - healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **124/82** mm Hg, HR: **67** /min, Temp: **98** F, Oxygen sat %: **97** %, Wt: **251** lbs, Wt-kg: 113.85 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **36.01** Index, Body Surface Area: 2.37.

**Past Orders:**

**Lab:Hemoglobin A1c-001453 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Hemoglobin A1c** | **6.9** | **H** | **4.8-5.6 - %** |

Notes: eclinicalworks, support 01/31/2024 11:16:07 : This order was created by the Interface.

**Lab:CBC With Differential/Platelet-005009 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | Reference Range |
|---|---|---|
| WBC | 6.9 | 3.4-10.8 - x10E3/uL |
| RBC | 5.35 | 4.14-5.80 - x10E6/uL |
| Hemoglobin | 15.6 | 13.0-17.7 - g/dL |
| Hematocrit | 46.4 | 37.5-51.0 - % |
| MCV | 87 | 79-97 - fL |
| MCH | 29.2 | 26.6-33.0 - pg |
| MCHC | 33.6 | 31.5-35.7 - g/dL |
| RDW | 13.4 | 11.6-15.4 - % |
| Platelets | 190 | 150-450 - x10E3/uL |
| Neutrophils | 60 | Not Estab. - % |
| Lymphs | 28 | Not Estab. - % |
| Monocytes | 9 | Not Estab. - % |
| Eos | 2 | Not Estab. - % |
| Basos | 1 | Not Estab. - % |
| Neutrophils (Absolute) | 4.1 | 1.4-7.0 - x10E3/uL |
| Lymphs (Absolute) | 2.0 | 0.7-3.1 - x10E3/uL |
| Monocytes(Absolute) | 0.6 | 0.1-0.9 - x10E3/uL |
| Eos (Absolute) | 0.1 | 0.0-0.4 - x10E3/uL |
| Baso (Absolute) | 0.0 | 0.0-0.2 - x10E3/uL |
| Immature Granulocytes | 0 | Not Estab. - % |
| Immature Grans (Abs) | 0.0 | 0.0-0.1 - x10E3/uL |

**Lab:Lipid Panel-303756 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

| | Value | | Reference Range |
|---|---|---|---|
| Cholesterol, Total | 168 | | 100-199 - mg/dL |
| **Triglycerides** | **340** | **H** | **0-149 - mg/dL** |
| **HDL Cholesterol** | **28** | **L** | **>39 - mg/dL** |
| **VLDL Cholesterol Cal** | **56** | **H** | **5-40 - mg/dL** |
| LDL Chol Calc (NIH) | 84 | | 0-99 - mg/dL |

Notes: eclinicalworks, support 01/31/2024 11:16:07 : This order was created by the Interface.

**Lab:Comp. Metabolic Panel (14)-322000 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Glucose** | **103** | **H** | **70-99 - mg/dL** |
| BUN | 14 | | 6-24 - mg/dL |
| **Creatinine** | **0.62** | **L** | **0.76-1.27 - mg/dL** |
| **BUN/Creatinine Ratio** | **23** | **H** | **9-20 -** |
| Sodium | 142 | | 134-144 - mmol/L |
| Potassium | 4.1 | | 3.5-5.2 - mmol/L |
| Chloride | 103 | | 96-106 - mmol/L |
| Carbon Dioxide, Total | 21 | | 20-29 - mmol/L |
| Calcium | 8.8 | | 8.7-10.2 - mg/dL |
| Protein, Total | 6.8 | | 6.0-8.5 - g/dL |
| Albumin | 4.4 | | 4.1-5.1 - g/dL |
| Globulin, Total | 2.4 | | 1.5-4.5 - g/dL |
| A/G Ratio | 1.8 | | 1.2-2.2 - |
| Bilirubin, Total | 0.8 | | 0.0-1.2 - mg/dL |
| Alkaline Phosphatase | 81 | | 44-121 - IU/L |
| **AST (SGOT)** | **42** | **H** | **0-40 - IU/L** |
| **ALT (SGPT)** | **118** | **H** | **0-44 - IU/L** |
| eGFR | 122 | | >59 - mL/min/1.73 |

**Lab:Chitotriosidase Assay (CHITO)-451822 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | Reference Range |
|---|---|---|
| Patient History | Note | - |
| Family History | Note | - |
| Indication | Note | - |
| Mutation Analysis | Not applicable | - |
| Chitotriosidase (CHITO) | 33 | 4 - 120 - nmoles/hr/mL |
| Interpretation | Note | - |
| Comments | Note | - |
| Director | Note | - |
| Disclaimer: | Note | - |

Notes: eclinicalworks, support 01/31/2024 11:16:06 : This order was created by the Interface.

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Examination:**
DTR, Dermatomes, and Cranial Nerves:
General: WDWN, NAD.
Head: normocephalic, atraumatic.
ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.
Skin: warm and dry, no rashes.
Heart: RRR without murmurs, gallops, clicks or rubs.
Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.
Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.
Neurologic: No focal deficits. CN 2-12 grossly intact.
Psych: AOx4.

## Assessment:

**Assessment:**

1. Type 2 diabetes mellitus without complication, unspecified whether long term insulin use - E11.9 (Primary)
2. Hyperlipidemia, unspecified hyperlipidemia type - E78.5
3. Elevated liver enzymes - R74.8

## Plan:

**Treatment:**
**Procedures:**
CBC, CMP, A1C, Lipids.

**Labs:**
Lab: CBC With Differential/Platelet-005009

Lab: Comp. Metabolic Panel (14)-322000

Lab: Lipid Panel-361767

Lab: Hemoglobin A1c-501270

**Follow Up:** 4/18/24

## Billing Information:

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

**Electronically signed by Joshua Weltha , PA-C on 02/13/2024 at 01:01 PM PST**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 02/13/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/31/2024

**Progress Note**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/31/2024

## Subjective:

**Chief Complaints:**
1. Right elbow.

**HPI:**
HPI:
4-view right elbow x-rays referred by Josh.

**Medical History:**

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48

## Objective:

## Assessment:

**Assessment:**

1. Elbow pain, right - M25.521 (Primary)

## Plan:

**Treatment:**
**1. Elbow pain, right**
Imaging: X ray : Elbow, right
**Procedure Codes:** 73070 X-RAY EXAM OF ELBOW

## Billing Information:

**Visit Code:**
99211 Office Visit, Est Pt., Level 1.
**Procedure Codes:**
73070 X-RAY EXAM OF ELBOW.

**Electronically signed by Joshua Weltha , PA-C on 01/31/2024 at 09:27 AM PST**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/31/2024

**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 01/31/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

## Progress Notes

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/22/2024

### Subjective:

**Chief Complaints:**

1. I am here for 2 month follow up lab and Us results. I fell on my elbow 2 weeks ago and I would like an xray..

**HPI:**

Extremities:

43 yo M presents today for a follow up. They reported the following information:
-Last seen: 11.14.23
-Requests refills: No
-Pharmacy: Smiths
-Imaging completed:
US RUQ shows fatty liver, large spleen.
-Labs completed:
Bili, AST, ALT, elev. Chronically elevated. Has been seen by hepatology, oncology.
A1C is 6.8 (6.5). He reports getting steroid back injections q2weeks x4 months.
Glucocerebrosidase is low but not low enough to be consistent with Gaucher disease.
CBC, CMP, Lipids, hep C, Iron not actionable.
-Pain mgt perfromed ablation, now Pt has R sided sciatica. He reports this claim is being closed out. MRI L-spine 2022 shows some minimal disk bulging, S1 nerve abutment. He did see a neurosurgeon, Dr. Cash, for work claim, nothing to do at this time. Reports that movement helps.
-Pt has some disability paperwork.
-Suspect splenomegaly is from Gauchers, if tests come back negative, will investigate other causes for spleen.
-Lab Corps has the test recommended, but unable to find in the system.
Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**

Allergy / Immunology:
Patient denies hives, itching, rash.
ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.
Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.
Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.
Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.
Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.
Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.
Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).
Neurologic:
Patient denies dizziness, gait abnormality, headache.
Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

5/13/24, 3:43 PM

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s) - healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **128/88** mm Hg, HR: **70** /min, Temp: **97.6** F, Oxygen sat %: **97** %, Wt: **249** lbs, Wt-kg: 112.94 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **35.72** Index, Body Surface Area: 2.36.

**Examination:**

DTR, Dermatomes, and Cranial Nerves:

General: WDWN, NAD.

Head: normocephalic, atraumatic.

ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.

Skin: warm and dry, no rashes.

Heart: RRR without murmurs, gallops, clicks or rubs.

Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.

Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.

Neurologic: No focal deficits. CN 2-12 grossly intact.

Psych: AOx4.

Pain on R lateral epicondyle with palpation.

## Assessment:

**Assessment:**

1. Abnormal results of liver function studies - R94.5 (Primary)
2. Type 2 diabetes mellitus without complication, unspecified whether long term insulin use - E11.9
3. Elbow pain, right - M25.521
4. Sciatica of right side - M54.31
5. Gaucher disease - E75.22

## Plan:

**Treatment:**

**Procedures:**

XR R elbow

CBC, CMP, Lipids, A1C

CHITO (chitotriosidase), mutation analysis (3 weeks).

**Labs:**

Lab: CBC With Differential/Platelet-005009

Lab: Comp. Metabolic Panel (14)-322000

Lab: Lipid Panel-361767

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

Lab: Hemoglobin A1c-501270

**Follow Up:** 3 weeks, 3 months

**Billing Information:**

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

**Electronically signed by Joshua Weltha , PA-C on 01/22/2024 at 10:35 AM PST**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

---

**Provider: Joshua Weltha, PAC-C** **Date: 01/22/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/11/2024

**Progress Note**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/11/2024

## Subjective:

**Chief Complaints:**
1. RUQ R74.8 Joshua.

**Medical History:**

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48

## Objective:

**Vitals:** BP: **124/84** mm Hg, HR: **74** /min, Temp: **98.0** F, Oxygen sat %: **96** %, Wt: **266** lbs, Wt-kg: 120.66 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **38.16** Index, Body Surface Area: 2.44.

## Assessment:

**Assessment:**

1. Abnormal results of liver function studies - R94.5 (Primary)

## Plan:

**Treatment:**
**1. Abnormal results of liver function studies**
Imaging: *U/S Abdominal w/Doppler

**Procedure Codes:** 76700 US EXAM, ABDOM, COMPLETE, 93975 VASCULAR STUDY

## Billing Information:

**Visit Code:**
**Procedure Codes:**
76700 US EXAM, ABDOM, COMPLETE.
93975 VASCULAR STUDY.

**Electronically signed by Amber Anderson on 01/11/2024 at 09:26 AM PST**
**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 01/11/2024**

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **102-847-3219-0** Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **04/11/2024** Date Received: **04/11/2024** Date Reported: **04/12/2024** Fasting: **Not Given**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Lipid Panel; Hemoglobin A1c; Venipuncture**

Date Collected: **04/11/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.4 | | 5.1 | 02/26/2024 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 4.95 | | 4.74 | 02/26/2024 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 14.7 | | 13.8 | 02/26/2024 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 45.4 | | 41.6 | 02/26/2024 | % | 37.5-51.0 |
| MCV [01] | 92 | | 88 | 02/26/2024 | fL | 79-97 |
| MCH [01] | 29.7 | | 29.1 | 02/26/2024 | pg | 26.6-33.0 |
| MCHC [01] | 32.4 | | 33.2 | 02/26/2024 | g/dL | 31.5-35.7 |
| RDW [01] | 13.9 | | 14.3 | 02/26/2024 | % | 11.6-15.4 |
| Platelets [01] | 151 | | **144** | 02/26/2024 | x10E3/uL | 150-450 |
| Neutrophils [01] | 63 | | 55 | 02/26/2024 | % | Not Estab. |
| Lymphs [01] | 25 | | 34 | 02/26/2024 | % | Not Estab. |
| Monocytes [01] | 7 | | 8 | 02/26/2024 | % | Not Estab. |
| Eos [01] | 3 | | 3 | 02/26/2024 | % | Not Estab. |
| Basos [01] | 1 | | 0 | 02/26/2024 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.2 | | 2.8 | 02/26/2024 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 1.6 | | 1.7 | 02/26/2024 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.4 | | 0.4 | 02/26/2024 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.2 | | 0.1 | 02/26/2024 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 02/26/2024 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 1 | | 0 | 02/26/2024 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 02/26/2024 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **107** | **High** | 94 | 02/26/2024 | mg/dL | 70-99 |
| BUN [01] | 16 | | 12 | 02/26/2024 | mg/dL | 6-24 |
| Creatinine [01] | 0.78 | | **0.69** | 02/26/2024 | mg/dL | 0.76-1.27 |
| eGFR | 113 | | 118 | 02/26/2024 | mL/min/1.73 | >59 |
| ▲ **BUN/Creatinine Ratio** | **21** | **High** | 17 | 02/26/2024 | | 9-20 |
| Sodium [01] | 143 | | 143 | 02/26/2024 | mmol/L | 134-144 |
| Potassium [01] | 4.3 | | 4.0 | 02/26/2024 | mmol/L | 3.5-5.2 |
| Chloride [01] | 106 | | **107** | 02/26/2024 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 24 | | 21 | 02/26/2024 | mmol/L | 20-29 |
| Calcium [01] | 8.8 | | 8.7 | 02/26/2024 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.5 | | 6.6 | 02/26/2024 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.4 | | 4.2 | 02/26/2024 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.1 | | 2.4 | 02/26/2024 | g/dL | 1.5-4.5 |
| A/G Ratio | 2.1 | | 1.8 | 02/26/2024 | | 1.2-2.2 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **102-847-3219-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **04/11/2024**

## Comp. Metabolic Panel (14) (Cont.)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| Bilirubin, Total [01] | 1.0 | | 0.7 | 02/26/2024 | mg/dL | 0.0-1.2 |
| Alkaline Phosphatase [01] | 76 | | 72 | 02/26/2024 | IU/L | 44-121 |
| AST (SGOT) [01] | 37 | | 36 | 02/26/2024 | IU/L | 0-40 |
| ⚠ **ALT (SGPT)** [01] | **100** | **High** | **57** | 02/26/2024 | IU/L | 0-44 |

## Lipid Panel

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| Cholesterol, Total [01] | 139 | | 111 | 02/26/2024 | mg/dL | 100-199 |
| Triglycerides [01] | 100 | | 105 | 02/26/2024 | mg/dL | 0-149 |
| HDL Cholesterol [01] | 43 | | **30** | 02/26/2024 | mg/dL | >39 |
| VLDL Cholesterol Cal | 19 | | 20 | 02/26/2024 | mg/dL | 5-40 |
| LDL Chol Calc (NIH) | 77 | | 61 | 02/26/2024 | mg/dL | 0-99 |

## Hemoglobin A1c

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ⚠ **Hemoglobin A1c** [01] | **5.7** | **High** | **5.9** | 02/26/2024 | % | 4.8-5.6 |

Please Note: [01]

```
Prediabetes: 5.7 - 6.4
Diabetes: >6.4
Glycemic control for adults with diabetes: <7.0
```

**Disclaimer**
The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**
⚠ Out of Reference Range ■ Critical or Alert

**Performing Labs**
01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD
For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone: **775-513-7771**
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **102-847-3219-0**
Control ID: **61107802978**
Alternate Control Number:
Date Collected: **04/11/2024 0843 Local**
Date Received: **04/11/2024 0000 ET**
Date Entered: **04/11/2024 1144 ET**
Date Reported: **04/12/2024 0911 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** | DOB: | **Patient Report** | labcorp
Patient ID: **16185** | Age: **43** | Account Number: **27008440**
Specimen ID: **102-847-3219-0** | Sex: **Male** | Ordering Physician: **J WELTHA**

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

### Hemoglobin

◇ Current Result: 14.7 *g/dL*




*Reference Interval: 13.0-17.7 g/dL*

### Hematocrit

◇ Current Result: 45.4 %




*Reference Interval: 37.5-51.0 %*

### WBC

◇ Current Result: 6.4 *x10E3/uL*




*Reference Interval: 3.4-10.8 x10E3/uL*

### Platelets

◇ Current Result: 151 *x10E3/uL*




*Reference Interval: 150-450 x10E3/uL*



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **102-847-3219-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**Creatinine**
◇ Current Result: 0.78 *mg/dL*




*Reference Interval: 0.76-1.27 mg/dL*

**eGFR**
◇ Current Result: 113 *mL/min/1.73*




*Reference Interval: >59 mL/min/1.73*

**AST (SGOT)**
◇ Current Result: 37 *IU/L*




*Reference Interval: 0-40 IU/L*

† Fasting

**ALT (SGPT)**
◆ Current Result: 100 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **102-847-3219-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**HbA1c**
◆ Current Result: 5.7 % **BELOW GOAL**




**Glucose**
◆ Current Result: 107 mg/dL **HIGH**




† Fasting

**Cardiovascular Tests**

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 04/11/2024 | **139** | **100** | **43** | **19** | **77** |
| 02/26/2024† | 111 | 105 | 30 | 20 | 61 |
| 01/23/2024† | 168 | 340 | 28 | 56 | 84 |
| 01/11/2024† | 140 | 137 | 32 | 24 | 84 |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| Ref. Interval<br>Units | 100-199<br>mg/dL | 0-149<br>mg/dL | >39<br>mg/dL | 5-40<br>mg/dL | 0-99<br>mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **023-847-9018-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024** Date Received: **01/23/2024** Date Reported: **01/31/2024** Fasting: **Yes**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Chitotriosidase Assay (CHITO); Lipid Panel; Hemoglobin A1c; Venipuncture**

Date Collected: **01/23/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.9 | | 6.6 | 01/11/2024 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 5.35 | | 5.32 | 01/11/2024 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 15.6 | | 15.5 | 01/11/2024 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 46.4 | | 45.6 | 01/11/2024 | % | 37.5-51.0 |
| MCV [01] | 87 | | 86 | 01/11/2024 | fL | 79-97 |
| MCH [01] | 29.2 | | 29.1 | 01/11/2024 | pg | 26.6-33.0 |
| MCHC [01] | 33.6 | | 34.0 | 01/11/2024 | g/dL | 31.5-35.7 |
| RDW [01] | 13.4 | | 13.4 | 01/11/2024 | % | 11.6-15.4 |
| Platelets [01] | 190 | | 168 | 01/11/2024 | x10E3/uL | 150-450 |
| Neutrophils [01] | 60 | | 61 | 01/11/2024 | % | Not Estab. |
| Lymphs [01] | 28 | | 28 | 01/11/2024 | % | Not Estab. |
| Monocytes [01] | 9 | | 8 | 01/11/2024 | % | Not Estab. |
| Eos [01] | 2 | | 2 | 01/11/2024 | % | Not Estab. |
| Basos [01] | 1 | | 0 | 01/11/2024 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.1 | | 4.1 | 01/11/2024 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 2.0 | | 1.8 | 01/11/2024 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.6 | | 0.6 | 01/11/2024 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.1 | | 0.1 | 01/11/2024 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 01/11/2024 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 0 | | 1 | 01/11/2024 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 01/11/2024 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **103** | **High** | **115** | 01/11/2024 | mg/dL | 70-99 |
| BUN [01] | 14 | | 14 | 01/11/2024 | mg/dL | 6-24 |
| ▼ **Creatinine** [01] | **0.62** | **Low** | **0.75** | 01/11/2024 | mg/dL | 0.76-1.27 |
| eGFR | 122 | | 115 | 01/11/2024 | mL/min/1.73 | >59 |
| ▲ **BUN/Creatinine Ratio** | **23** | **High** | 19 | 01/11/2024 | | 9-20 |
| Sodium [01] | 142 | | 143 | 01/11/2024 | mmol/L | 134-144 |
| Potassium [01] | 4.1 | | 4.4 | 01/11/2024 | mmol/L | 3.5-5.2 |
| Chloride [01] | 103 | | **108** | 01/11/2024 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 21 | | 21 | 01/11/2024 | mmol/L | 20-29 |
| Calcium [01] | 8.8 | | 8.7 | 01/11/2024 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.8 | | 6.9 | 01/11/2024 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.4 | | 4.7 | 01/11/2024 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.4 | | 2.2 | 01/11/2024 | g/dL | 1.5-4.5 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David** DOB: **Patient Report**
Patient ID: **16185** Age: **43** Account Number: **27008440**
Specimen ID: **023-847-9018-0** Sex: **Male** Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024**

## Comp. Metabolic Panel (14) (Cont.)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| A/G Ratio | 1.8 | | 2.1 | 01/11/2024 | | 1.2-2.2 |
| Bilirubin, Total [01] | 0.8 | | **1.3** | 01/11/2024 | mg/dL | 0.0-1.2 |
| Alkaline Phosphatase [01] | 81 | | 73 | 01/11/2024 | IU/L | 44-121 |
| ▲ **AST (SGOT)** [01] | **42** | **High** | **51** | 01/11/2024 | IU/L | 0-40 |
| ▲ **ALT (SGPT)** [01] | **118** | **High** | **143** | 01/11/2024 | IU/L | 0-44 |

## Chitotriosidase Assay (CHITO)

| Test | Current Result and Flag | Previous Result and Date | Units | Reference Interval |
|---|---|---|---|---|
| Ethnicity [02] | Not Provided | | | |
| Patient History [02] | Note<br>Known/Suspected Gaucher Disease:<br>Obligate or Possible Carrier of Gaucher Disease: | | | |
| Family History [02] | Note<br>Family History of Gaucher Disease:<br>Family Members: | | | |
| Indication [02] | Note<br>Gaucher Disease monitoring | | | |
| Mutation Analysis [02] | Not applicable | | | |
| Chitotriosidase (CHITO) [02] | 33 | | nmoles/hr/mL | 4 - 120 |
| Interpretation [02] | Note<br>Please see Result Values and Monitoring History. | | | |
| Comments [02] | Note<br>The ACE fluorometric enzyme assay uses tripeptide (hippuryl-his-leu) as substrate and o-phthaldialdehyde for fluorescent derivatization. The CHITO fluorometric enzyme assay uses 4-methylumbelliferyl-beta-D-triacetylchitotrioside as substrate. The TRAP colorimetric enzyme assay uses p-nitrophenyl phosphate as substrate. | | | |
| Director [02] | Note<br>Philip R. Wyatt M.D., Ph.D | | | |
| Disclaimer: [02] | Note<br>Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.<br>Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.<br>This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration. | | | |
| PDF [02] | . | | | |

## Lipid Panel

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Cholesterol, Total [01] | 168 | 140 | 01/11/2024 | mg/dL | 100-199 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **023-847-9018-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024**

## Lipid Panel (Cont.)

| | Test | Current Result | Flag | Previous Result | Date | Units | Reference Interval |
|---|---|---|---|---|---|---|---|
| ⚠ | **Triglycerides** [01] | **340** | **High** | 137 | 01/11/2024 | mg/dL | 0-149 |
| ▼ | **HDL Cholesterol** [01] | **28** | **Low** | **32** | 01/11/2024 | mg/dL | >39 |
| ⚠ | **VLDL Cholesterol Cal** | **56** | **High** | 24 | 01/11/2024 | mg/dL | 5-40 |
| | LDL Chol Calc (NIH) | 84 | | 84 | 01/11/2024 | mg/dL | 0-99 |

## Hemoglobin A1c

| | Test | Current Result | Flag | Previous Result | Date | Units | Reference Interval |
|---|---|---|---|---|---|---|---|
| ⚠ | **Hemoglobin A1c** [01] | **6.9** | **High** | **6.8** | 01/11/2024 | % | 4.8-5.6 |
| | Please Note: [01] | | | | | | |

```
Prediabetes: 5.7 - 6.4
Diabetes: >6.4
Glycemic control for adults with diabetes: <7.0
```

**Disclaimer**
The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**
⚠ Out of Reference Range ■ Critical or Alert

**Performing Labs**
01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD
02: EGLNM - Esoterix Genetic Laboratories, 2000 Vivigen Way, Santa Fe, NM 87505-5600 Dir: Philip Wyatt, MDPhD
For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone: **775-513-7771**
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **023-847-9018-0**
Control ID: **170L1P44697**
Alternate Control Number: **170L1P446979**
Date Collected: **01/23/2024 1154 Local**
Date Received: **01/23/2024 0000 ET**
Date Entered: **01/23/2024 1752 ET**
Date Reported: **01/31/2024 1410 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** | DOB: | **Patient Report** | labcorp
Patient ID: **16185** | Age: **43** | Account Number: **27008440**
Specimen ID: **023-847-9018-0** | Sex: **Male** | Ordering Physician: **J WELTHA**

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

**Creatinine**
◇ Current Result: 0.62 *mg/dL* LOW




**eGFR**
◇ Current Result: 122 *mL/min/1.73*






©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **023-847-9018-0** Sex: **Male**

**Patient Report** labcorp
Account Number: **27008440**
Ordering Physician: **J WELTHA**

## AST (SGOT)

◆ Current Result: 42 *IU/L* **HIGH**




*Reference Interval: 0-40 IU/L*

† Fasting

## ALT (SGPT)

◆ Current Result: 118 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting

## HbA1c

◆ Current Result: 6.9 % **WITHIN GOAL**




*Goal Range: 6.0-7.0 %*

## Glucose

◆ Current Result: 103 *mg/dL* **HIGH**




*Reference Interval: 70-99 mg/dL*

* Previous Reference Interval: (Sep 12, 2022: 65-99 mg/dL). † Fasting

## Cardiovascular Tests

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 01/23/2024† | **168** | **340** | **28** | **56** | **84** |
| 01/11/2024† | 140 | 137 | 32 | 24 | 84 |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| 08/04/2023 | 144 | 143 | 34 | | 85 |
| 06/23/2021† | 156 | 103 | 38 | | 99 |
| 05/04/2021† | | | | 28 | |
| 08/03/2020† | | | | 59 | |
| Ref. Interval Units | 100-199 mg/dL | 0-149 mg/dL | >39 mg/dL | 5-40 mg/dL | 0-99 mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

# Gaucher Disease Analysis Secondary Markers

labcorp

Patient Name: Boruchowitz, David
Referring Physician: Not Provided
Specimen #: 26847698
Patient ID # 23569736-1-BIO Client #: 889588

DOB:
SSN: ***-**-****
Sex: M

Date Collected: 01/23/2024
Date Received: 01/25/2024
Hospital ID: PDLCA^EGLNM
Lab ID: 02384790180

Ethnicity: Not Provided

**602 453-7012**
**Labcorp**

**ET**

Patient History
Known/Suspected Gaucher Disease:
Obligate or Possible Carrier of Gaucher Disease:

Family History
Family History of Gaucher Disease:
Family Members:

Clinical Indication: Gaucher Disease monitoring

| Results | Result Values | Flag | Units | Reference Interval |
|---|---|---|---|---|
| Angiotensin converting enzyme (ACE) | (not ordered) | | | |
| Chitotriosidase (CHITO) | 33 | | nmoles/hr/mL | 4 - 120 |
| Tartrate resistant acid phosphatase (TRAP) | (not ordered) | | | |

Interpretation:
Please see Result Values and Monitoring History.

Monitoring History







Comments:

The ACE fluorometric enzyme assay uses tripeptide (hippuryl-his-leu) as substrate and o-phthaldialdehyde for fluorescent derivatization. The CHITO fluorometric enzyme assay uses 4-methylumbelliferyl-beta-D-triacetylchitotrioside as substrate. The TRAP colorimetric enzyme assay uses p-nitrophenyl phosphate as substrate.

Under the Direction of: 35572

Philip R. Wyatt M.D., Ph.D Date Reported: 01/31/2024

Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.
Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.
This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration.

***Spring Mountain Medical***
***1151 South Highway 160***
***Pahrump, NV 89048***
***(775)727-8900***
***(775)727-9452***

RADIOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient: | BORUCHOWITZ, DAVID | Date: | 01/31/2024 |
| Physician: | WELTHA, JOSH PA-C | DOB: | |
| Facility: | SPRING MOUNTAIN MEDICAL | ID #: | |

RIGHT ELBOW

The examination demonstrates preservation of the joint space. There is no evidence of fracture or dislocation. The fat pads appear normal. There is no evidence of radiopaque foreign body noted.

Interpretation: No significant abnormality of the elbow.

Electronically Signed
DEAN YARBRO, M.D.
DY/DD: February 1, 2024
DY/DT: February 1, 2024

Interpreted by **LAKE MEAD RADIOLOGISTS**
**2559 Wigwam Parkway Henderson, Nevada 89074**
**Phone (702) 982-3659 | Fax (702) 823-5434 | https://pacs.lmrlv.com**

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/11/2024** Date Received: **01/11/2024** Date Reported: **01/16/2024** Fasting: **Yes**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Gaucher Enzyme Analysis; Lipid Panel; Hepatic Function Panel (7); Acute Hepatitis; Hemoglobin A1c; Iron; Venipuncture**

Date Collected: **01/11/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.6 | | 6.1 | 11/01/2023 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 5.32 | | 5.21 | 11/01/2023 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 15.5 | | 15.4 | 11/01/2023 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 45.6 | | 46.4 | 11/01/2023 | % | 37.5-51.0 |
| MCV [01] | 86 | | 89 | 11/01/2023 | fL | 79-97 |
| MCH [01] | 29.1 | | 29.6 | 11/01/2023 | pg | 26.6-33.0 |
| MCHC [01] | 34.0 | | 33.2 | 11/01/2023 | g/dL | 31.5-35.7 |
| RDW [01] | 13.4 | | 13.5 | 11/01/2023 | % | 11.6-15.4 |
| Platelets [01] | 168 | | 177 | 11/01/2023 | x10E3/uL | 150-450 |
| Neutrophils [01] | 61 | | 60 | 11/01/2023 | % | Not Estab. |
| Lymphs [01] | 28 | | 29 | 11/01/2023 | % | Not Estab. |
| Monocytes [01] | 8 | | 7 | 11/01/2023 | % | Not Estab. |
| Eos [01] | 2 | | 3 | 11/01/2023 | % | Not Estab. |
| Basos [01] | 0 | | 1 | 11/01/2023 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.1 | | 3.7 | 11/01/2023 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 1.8 | | 1.8 | 11/01/2023 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.6 | | 0.4 | 11/01/2023 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.1 | | 0.2 | 11/01/2023 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 11/01/2023 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 1 | | 0 | 11/01/2023 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 11/01/2023 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **115** | **High** | **109** | 11/01/2023 | mg/dL | 70-99 |
| BUN [01] | 14 | | 15 | 11/01/2023 | mg/dL | 6-24 |
| ▼ **Creatinine** [01] | **0.75** | **Low** | 0.86 | 11/01/2023 | mg/dL | 0.76-1.27 |
| eGFR | 115 | | 110 | 11/01/2023 | mL/min/1.73 | >59 |
| BUN/Creatinine Ratio | 19 | | 17 | 11/01/2023 | | 9-20 |
| Sodium [01] | 143 | | 143 | 11/01/2023 | mmol/L | 134-144 |
| Potassium [01] | 4.4 | | 4.3 | 11/01/2023 | mmol/L | 3.5-5.2 |
| ▲ **Chloride** [01] | **108** | **High** | **107** | 11/01/2023 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 21 | | 23 | 11/01/2023 | mmol/L | 20-29 |
| Calcium [01] | 8.7 | | **8.6** | 11/01/2023 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.9 | | 6.4 | 11/01/2023 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.7 | | 4.4 | 11/01/2023 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.2 | | 2.0 | 11/01/2023 | g/dL | 1.5-4.5 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/11/2024**

## Comp. Metabolic Panel (14) (Cont.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | A/G Ratio | 2.1 | | 2.2 | 11/01/2023 | | 1.2-2.2 |
| ▲ | **Bilirubin, Total** [01] | **1.3** | **High** | 0.8 | 11/01/2023 | mg/dL | 0.0-1.2 |
| | Alkaline Phosphatase [01] | 73 | | 70 | 11/01/2023 | IU/L | 44-121 |
| ▲ | **AST (SGOT)** [01] | **51** | **High** | **57** | 11/01/2023 | IU/L | 0-40 |
| ▲ | **ALT (SGPT)** [01] | **143** | **High** | **141** | 11/01/2023 | IU/L | 0-44 |

## Gaucher Enzyme Analysis

| Test | Current Result and Flag | Previous Result and Date | Units | Reference Interval |
|---|---|---|---|---|
| Ethnicity [02] | Not Provided | | | |
| Patient History [02] | Note<br>Known/Suspected Gaucher Disease:<br>Obligate or Possible Carrier of Gaucher Disease: | | | |
| Family History [02] | Note<br>Family History of Gaucher Disease:<br>Family Members: | | | |
| Indication [02] | Not applicable | | | |
| Mutation Analysis [02] | Not applicable | | | |
| Glucocerebrosidase/WBC [02] | 5.350<br>Units: nanomoles/hr/mg protein | | | 7.5-14.5 |
| Interpretation [02] | Note<br>Glucocerebrosidase enzyme activity is below the normal range, but not low enough to be consistent with a diagnosis of Gaucher disease.<br><br>For further assessment of disease status, measurement of chitotriosidase (CHITO), a secondary marker that is often elevated in untreated Gaucher disease, is recommended, as well as mutation analysis.<br><br>For further assessment of carrier status, mutation analysis is recommended. | | | |
| Comments [02] | Note<br>Glucocerebrosidase (leukocyte) was measured by fluorometric enzyme assay using 4-methylumbelliferyl-beta-D-glucoside as substrate, with/without glucocerebrosidase specific inhibitor. | | | |
| Director [02] | Note<br>Philip R. Wyatt M.D., Ph.D | | | |
| Disclaimer: [02] | Note<br>Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.<br>Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.<br>This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug | | | |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/11/2024**

## Gaucher Enzyme Analysis (Cont.)

| | | |
|---|---|---|
| | Administration. | |
| Gaucher Enzyme Analysis PDF [02] | . | |

## Lipid Panel

| | Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|---|
| | Cholesterol, Total [01] | 140 | | 148 | 11/01/2023 | mg/dL | 100-199 |
| | Triglycerides [01] | 137 | | 143 | 11/01/2023 | mg/dL | 0-149 |
| ▼ | **HDL Cholesterol** [01] | **32** | **Low** | **33** | 11/01/2023 | mg/dL | >39 |
| | VLDL Cholesterol Cal | 24 | | 25 | 11/01/2023 | mg/dL | 5-40 |
| | LDL Chol Calc (NIH) | 84 | | 90 | 11/01/2023 | mg/dL | 0-99 |

## Hepatic Function Panel (7)

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Bilirubin, Direct [01] | 0.26 | 0.16 | 05/04/2021 | mg/dL | 0.00-0.40 |

## Acute Hepatitis

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Hep A Ab, IgM [01] | Negative | Negative | 08/14/2020 | | Negative |
| HBsAg Screen [01] | Negative | Negative | 08/14/2020 | | Negative |
| Hep B Core Ab, IgM [01] | Negative | Negative | 08/14/2020 | | Negative |
| HCV Ab [01] | Non Reactive | | | | Non Reactive |
| Interpretation: [01] | Not infected with HCV unless early or acute infection is suspected (which may be delayed in an immunocompromised individual), or other evidence exists to indicate HCV infection. | | | | |

## Hemoglobin A1c

| | Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|---|
| ▲ | **Hemoglobin A1c** [01] | **6.8** | **High** | **6.5** | 11/01/2023 | % | 4.8-5.6 |
| | Please Note: [01] | Prediabetes: 5.7 - 6.4<br>Diabetes: >6.4<br>Glycemic control for adults with diabetes: <7.0 | | | | | |

## Iron

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Iron [01] | 144 | 96 | 11/01/2023 | ug/dL | 38-169 |

**Disclaimer**
The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**
▲ Out of Reference Range ■ Critical or Alert



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**Performing Labs**
01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD
02: EGLNM - Esoterix Genetic Laboratories, 2000 Vivigen Way, Santa Fe, NM 87505-5600 Dir: Philip Wyatt, MDPhD
For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone:
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **011-847-3266-0**
Control ID: **61107801900**
Alternate Control Number:
Date Collected: **01/11/2024 0833 Local**
Date Received: **01/11/2024 0000 ET**
Date Entered: **01/11/2024 1248 ET**
Date Reported: **01/16/2024 1708 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

### Creatinine

◇ Current Result: 0.75 *mg/dL* LOW




### eGFR

◇ Current Result: 115 *mL/min/1.73*






©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

### AST (SGOT)
◆ Current Result: 51 *IU/L* **HIGH**




*Reference Interval: 0-40 IU/L*

† Fasting

### ALT (SGPT)
◆ Current Result: 143 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting

### HbA1c
◆ Current Result: 6.8 % **WITHIN GOAL**




*Goal Range: 6.0-7.0 %*

### Glucose
◆ Current Result: 115 *mg/dL* **HIGH**




*Reference Interval: 70-99 mg/dL*

* Previous Reference Intervals: (Sep 12, 2022: 65-99 mg/dL), (Jun 23, 2021: 65-99 mg/dL). † Fasting

### Cardiovascular Tests

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 01/11/2024† | **140** | **137** | **32** | **24** | **84** |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| 08/04/2023 | 144 | 143 | 34 | | 85 |
| 06/23/2021† | 156 | 103 | 38 | | 99 |
| 05/21/2021† | 135 | 82 | 34 | | 85 |
| 05/04/2021† | | | | 28 | |
| 08/03/2020† | | | | 59 | |
| Ref. Interval Units | 100-199 mg/dL | 0-149 mg/dL | >39 mg/dL | 5-40 mg/dL | 0-99 mg/dL |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**Cardiovascular Tests (Cont.)**

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 04/16/2019† | | | | 43 | |
| Ref. Interval | 100-199 | 0-149 | >39 | 5-40 | 0-99 |
| Units | mg/dL | mg/dL | mg/dL | mg/dL | mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

# Gaucher Enzyme Analysis

labcorp

Patient Name: Boruchowitz, David
Referring Physician: Not Provided
Specimen #: 26838854
Patient ID # 23561742-1-BIO Client #: 889588

602 453-7012
Labcorp

ET

DOB:
SSN: ***-**-****
Sex: M
Date Collected: 01/11/2024
Date Received: 01/13/2024
Hospital ID: PDLCA^EGLNM
Lab ID: 01184732660

Ethnicity: Not Provided

**Patient History**
Known/Suspected Gaucher Disease:
Obligate or Possible Carrier of Gaucher Disease:

**Family History**
Family History of Gaucher Disease:
Family Members:

Clinical Indication:

| Results | Result Value | Normal Range |
|---|---|---|
| Glucocerebrosidase/WBC | 5.350 nanomoles/hr/mg protein | 7.5-14.5 nanomoles/hr/mg protein |

**Interpretation:**
Glucocerebrosidase enzyme activity is below the normal range, but not low enough to be consistent with a diagnosis of Gaucher disease.

For further assessment of disease status, measurement of chitotriosidase (CHITO), a secondary marker that is often elevated in untreated Gaucher disease, is recommended, as well as mutation analysis.

For further assessment of carrier status, mutation analysis is recommended.

**Comments:**
Glucocerebrosidase (leukocyte) was measured by fluorometric enzyme assay using 4-methylumbelliferyl-beta-D-glucoside as substrate, with/without glucocerebrosidase specific inhibitor.

Under the Direction of:

35447

Philip R. Wyatt M.D., Ph.D Date Reported: 01/16/2024

Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.
Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.
This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration.

**SPRING MOUNTAIN MEDICAL**
1151 S Highway 160
Pahrump, NV 89048
(775) 727-8900 • Fax (775) 537-2090

Patient: BORUCHOWITZ, DAVID Exam Date: 01/11/2024
X-Ray #: 10051080 Accession #: 10104159
DOB:
Outside Mrno: PPMBODA000003PMI2X
Referring Doctor: MATTHEW ROBERSON MD

**PROCEDURE:** Ultrasound

HISTORY: Abnormal liver function tests

COMPARISON: No pertinent priors available.

TECHNIQUE: Complete abdominal sonogram was done with grayscale and Doppler.

FINDINGS:
Pancreas: The visualized segments of the pancreas are grossly unremarkable.

Liver: There is hepatic steatosis. There are no focal findings.

Gallbladder: The patient is status post cholecystectomy.

Common bile duct: Caliber is normal measuring 5 mm or less.

Kidneys: There is no hydronephrosis or perinephric fluid. Renal size is normal.

Spleen: There is splenomegaly. The length is up to 15 cm.

IVC: Patent.

Abdominal aorta: Normal caliber and patent.

IMPRESSION:
Hepatic steatosis and splenomegaly.

**Dictated By:** Eric Biesbroeck M.D. at 2024-01-11 15:28:55
**Electronically Signed By:** Eric Biesbroeck M.D. at 2024-01-11 15:29:50

Workstation: G4ZMMD2

---

# F A X   C O V E R S H E E T

---

| | |
|---|---|
| To: | From: Spring Mountain Medical |
| Company: | Company: 1449384-1 |
| Fax: 18778433950 | Phone: 7757278900 |
| Date: 05/13/2024 17:37:19 | Pages: 43 (w/coversheet) |

Subject:

Message:

Lincoln
Financial Group®

**To:** DR. JOSH WELTHA
Company:
Fax: 775-727-9452
Phone:

**From:**
Fax:
Phone:

---

**NOTES:**

ATTN: MED RECS / ROI

2ND REFAX

PLEASE FAX CONFIRMATION OF RECEIPT OF THIS REQUEST TO THE FAX #
LISTED ON THIS REQUEST FORM. THANK YOU!

---

This facsimile transmission may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the recipient of this facsimile transmission is not the intended recipient or his or her authorized agent, the recipient is hereby notified that any dissemination, distribution, or copying of this facsimile transmission is prohibited. If you have received this facsimile transmission in error, please notify the sender and destroy this facsimile immediately.

**Date and time of transmission:** Wednesday, May 1, 2024 2:33:02 PM
**Number of pages including this cover sheet:** 04

Lincoln Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 29, 2024

DR. JOSH WELTHA
RELEASE OF INFORMATION
1151 NV-160
PAHRUMP, NV 89048

Re: Policy Number: 000010177363000000
Claim Number: 1230082409
Patient: David Boruchowitz
DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 01/01/2024 to Present |
| Diagnostic Test Results | 01/01/2024 to Present |

Current state statutes for Nevada: For paper copies: the cost of the copy, not to exceed $0.60. A reasonable fee may be charged for X-rays. The cost of postage may be charged.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950.**

***Payment Options:***

☐ ***Credit Card***

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

**Authorization Agreement**

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

**Account Information**

Name of Financial Institution: ____________________

Routing Number: ____________________

Account Number: ____________________

Authorized Signature: ____________________ Date: ____________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Denise Jimerson
Assisting on behalf of Savannah Eddy
800-423-2765 X 6932
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

Date of Birth: ______ Social Security Number: ______

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).
3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609
4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.
5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.
7. A photocopy of this Authorization is to be considered as valid as the original.
8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** ______ **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ______

ADDRESS: ______ (Street) PHONE NO: ______

______ (City) (State) (Zip Code)

# Patient Medical Record

**Boruchowitz, David**

43 yo M, DOB:
Account Number: 16185

| **Patient Medical Record** | **Page(s)** |
|---|---|
| Encounters | 2 to 16 |
| Patient Documents | 17 to 37 |
| **Total Pages** | **37** |

**Note:** There may be certain notes which are not made available as per your physician's discretion, please contact your physician's office to obtain those.

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

**Progress Notes**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 04/24/2024

## Subjective:

**Chief Complaints:**

1. I am here for lab results and follow up on back..

**HPI:**

Extremities:

43 yo M presents today for a follow up. They reported the following information:
-Last seen: 2.13.24
-Requests refills: no
-Pharmacy:
-Imaging completed:
-Labs completed:
CBC, CMP, Lipids A1C not actionable.
ALT is 100, this is chronic, has been worked up extensively.
-Pt has some paperwork for Lincoln Financial Group.
-Pt had functional exercise test completed, Reports back pain.
-Pt has been changing diet, walking, losing weight, sleeping well.
Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**

Allergy / Immunology:
Patient denies hives, itching, rash.
ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.
Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.
Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.
Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.
Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.
Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.
Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).
Neurologic:
Patient denies dizziness, gait abnormality, headache.
Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s)

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

- healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **142/90** mm Hg, HR: **88** /min, Temp: **98.2** F, Oxygen sat %: **95** %, Wt: **236.6** lbs, Wt-kg: 107.32 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **33.94** Index, Body Surface Area: 2.3.

**Past Orders:**

**Lab:Hemoglobin A1c-001453 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Hemoglobin A1c** | **5.9** | **H** | **4.8-5.6 - %** |

Notes: eclinicalworks, support 02/27/2024 07:15:07 : This order was created by the Interface.

**Lab:CBC With Differential/Platelet-005009 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| WBC | 5.1 | | 3.4-10.8 - x10E3/uL |
| RBC | 4.74 | | 4.14-5.80 - x10E6/uL |
| Hemoglobin | 13.8 | | 13.0-17.7 - g/dL |
| Hematocrit | 41.6 | | 37.5-51.0 - % |
| MCV | 88 | | 79-97 - fL |
| MCH | 29.1 | | 26.6-33.0 - pg |
| MCHC | 33.2 | | 31.5-35.7 - g/dL |
| RDW | 14.3 | | 11.6-15.4 - % |
| **Platelets** | **144** | **L** | **150-450 - x10E3/uL** |
| Neutrophils | 55 | | Not Estab. - % |
| Lymphs | 34 | | Not Estab. - % |
| Monocytes | 8 | | Not Estab. - % |
| Eos | 3 | | Not Estab. - % |
| Basos | 0 | | Not Estab. - % |
| Neutrophils (Absolute) | 2.8 | | 1.4-7.0 - x10E3/uL |
| Lymphs (Absolute) | 1.7 | | 0.7-3.1 - x10E3/uL |
| Monocytes(Absolute) | 0.4 | | 0.1-0.9 - x10E3/uL |
| Eos (Absolute) | 0.1 | | 0.0-0.4 - x10E3/uL |
| Baso (Absolute) | 0.0 | | 0.0-0.2 - x10E3/uL |
| Immature Granulocytes | 0 | | Not Estab. - % |
| Immature Grans (Abs) | 0.0 | | 0.0-0.1 - x10E3/uL |

**Lab:Lipid Panel-303756 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

| | | | |
|---|---|---|---|
| Cholesterol, Total | 111 | | 100-199 - mg/dL |
| Triglycerides | 105 | | 0-149 - mg/dL |
| **HDL Cholesterol** | **30** | **L** | **>39 - mg/dL** |
| VLDL Cholesterol Cal | 20 | | 5-40 - mg/dL |
| LDL Chol Calc (NIH) | 61 | | 0-99 - mg/dL |

Notes: eclinicalworks, support 02/27/2024 07:15:07 : This order was created by the Interface.

**Lab:Comp. Metabolic Panel (14)-322000 (Order Date - 02/13/2024) (Collection Date & Time - 02/26/2024 09:22 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| Glucose | 94 | | 70-99 - mg/dL |
| BUN | 12 | | 6-24 - mg/dL |
| **Creatinine** | **0.69** | **L** | **0.76-1.27 - mg/dL** |
| BUN/Creatinine Ratio | 17 | | 9-20 - |
| Sodium | 143 | | 134-144 - mmol/L |
| Potassium | 4.0 | | 3.5-5.2 - mmol/L |
| **Chloride** | **107** | **H** | **96-106 - mmol/L** |
| Carbon Dioxide, Total | 21 | | 20-29 - mmol/L |
| Calcium | 8.7 | | 8.7-10.2 - mg/dL |
| Protein, Total | 6.6 | | 6.0-8.5 - g/dL |
| Albumin | 4.2 | | 4.1-5.1 - g/dL |
| Globulin, Total | 2.4 | | 1.5-4.5 - g/dL |
| A/G Ratio | 1.8 | | 1.2-2.2 - |
| Bilirubin, Total | 0.7 | | 0.0-1.2 - mg/dL |
| Alkaline Phosphatase | 72 | | 44-121 - IU/L |
| AST (SGOT) | 36 | | 0-40 - IU/L |
| **ALT (SGPT)** | **57** | **H** | **0-44 - IU/L** |
| eGFR | 118 | | >59 - mL/min/1.73 |

**Examination:**

DTR, Dermatomes, and Cranial Nerves:

General: WDWN, NAD.

Head: normocephalic, atraumatic.

ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.

Skin: warm and dry, no rashes.

Heart: RRR without murmurs, gallops, clicks or rubs.

Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.

Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.

Neurologic: No focal deficits. CN 2-12 grossly intact.

Psych: AOx4.

## Assessment:

**Assessment:**

1. Elevated ALT measurement - R74.01 (Primary)

## Plan:

**Treatment:**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 04/24/2024

**1. Elevated ALT measurement**
LAB: Lipid Panel-361767

**Procedures:**
CBC, CMP, Lipids, A1C.

**Labs:**
Lab: CBC With Differential/Platelet-005009

Lab: Hemoglobin A1c-501270

Lab: Comp. Metabolic Panel (14)-322000

**Follow Up:** 3 Months

### Billing Information:

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

### Images

**d.Boruchowitz req 4.24.24**

**Electronically signed by Joshua Weltha , PA-C on 04/24/2024 at 03:24 PM PDT**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 04/24/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Progress Notes**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 02/13/2024

## Subjective:

**Chief Complaints:**

1. I am here today for lab and xray results.

**HPI:**

Extremities:

43 yo M presents today for a follow up. They reported the following information:
-Last seen: 1.22.24
-Requests refills: No
-Pharmacy: Smiths
-Imaging completed:
XR R elbow wnl. Pain is improving. Watchful waiting.
-Labs completed:
CBC not actionable.
Trigly elev. Pt is making lifestyle mods, diet changes.
A1C is 6.9.
AST, ALT pt baseline. Seen by GI, hepatology, had US Abd.
CHITO is normal.

Pt was seen by Swedish phsyician, director of Gaucher International foundatoin, told he does not have Gauchers.

Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**

Allergy / Immunology:
Patient denies hives, itching, rash.

ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.

Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.

Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.

Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.

Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.

Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.

Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).

Neurologic:
Patient denies dizziness, gait abnormality, headache.

Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s) - healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **124/82** mm Hg, HR: **67** /min, Temp: **98** F, Oxygen sat %: **97** %, Wt: **251** lbs, Wt-kg: 113.85 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **36.01** Index, Body Surface Area: 2.37.

**Past Orders:**

**Lab:Hemoglobin A1c-001453 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Hemoglobin A1c** | **6.9** | **H** | **4.8-5.6 - %** |

Notes: eclinicalworks, support 01/31/2024 11:16:07 : This order was created by the Interface.

**Lab:CBC With Differential/Platelet-005009 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | Reference Range |
|---|---|---|
| WBC | 6.9 | 3.4-10.8 - x10E3/uL |
| RBC | 5.35 | 4.14-5.80 - x10E6/uL |
| Hemoglobin | 15.6 | 13.0-17.7 - g/dL |
| Hematocrit | 46.4 | 37.5-51.0 - % |
| MCV | 87 | 79-97 - fL |
| MCH | 29.2 | 26.6-33.0 - pg |
| MCHC | 33.6 | 31.5-35.7 - g/dL |
| RDW | 13.4 | 11.6-15.4 - % |
| Platelets | 190 | 150-450 - x10E3/uL |
| Neutrophils | 60 | Not Estab. - % |
| Lymphs | 28 | Not Estab. - % |
| Monocytes | 9 | Not Estab. - % |
| Eos | 2 | Not Estab. - % |
| Basos | 1 | Not Estab. - % |
| Neutrophils (Absolute) | 4.1 | 1.4-7.0 - x10E3/uL |
| Lymphs (Absolute) | 2.0 | 0.7-3.1 - x10E3/uL |
| Monocytes(Absolute) | 0.6 | 0.1-0.9 - x10E3/uL |
| Eos (Absolute) | 0.1 | 0.0-0.4 - x10E3/uL |
| Baso (Absolute) | 0.0 | 0.0-0.2 - x10E3/uL |
| Immature Granulocytes | 0 | Not Estab. - % |
| Immature Grans (Abs) | 0.0 | 0.0-0.1 - x10E3/uL |

**Lab:Lipid Panel-303756 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

| | Value | | Reference Range |
|---|---|---|---|
| Cholesterol, Total | 168 | | 100-199 - mg/dL |
| **Triglycerides** | **340** | **H** | **0-149 - mg/dL** |
| **HDL Cholesterol** | **28** | **L** | **>39 - mg/dL** |
| **VLDL Cholesterol Cal** | **56** | **H** | **5-40 - mg/dL** |
| LDL Chol Calc (NIH) | 84 | | 0-99 - mg/dL |

Notes: eclinicalworks, support 01/31/2024 11:16:07 : This order was created by the Interface.

**Lab:Comp. Metabolic Panel (14)-322000 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | | Reference Range |
|---|---|---|---|
| **Glucose** | **103** | **H** | **70-99 - mg/dL** |
| BUN | 14 | | 6-24 - mg/dL |
| **Creatinine** | **0.62** | **L** | **0.76-1.27 - mg/dL** |
| **BUN/Creatinine Ratio** | **23** | **H** | **9-20 -** |
| Sodium | 142 | | 134-144 - mmol/L |
| Potassium | 4.1 | | 3.5-5.2 - mmol/L |
| Chloride | 103 | | 96-106 - mmol/L |
| Carbon Dioxide, Total | 21 | | 20-29 - mmol/L |
| Calcium | 8.8 | | 8.7-10.2 - mg/dL |
| Protein, Total | 6.8 | | 6.0-8.5 - g/dL |
| Albumin | 4.4 | | 4.1-5.1 - g/dL |
| Globulin, Total | 2.4 | | 1.5-4.5 - g/dL |
| A/G Ratio | 1.8 | | 1.2-2.2 - |
| Bilirubin, Total | 0.8 | | 0.0-1.2 - mg/dL |
| Alkaline Phosphatase | 81 | | 44-121 - IU/L |
| **AST (SGOT)** | **42** | **H** | **0-40 - IU/L** |
| **ALT (SGPT)** | **118** | **H** | **0-44 - IU/L** |
| eGFR | 122 | | >59 - mL/min/1.73 |

**Lab:Chitotriosidase Assay (CHITO)-451822 (Order Date - 01/22/2024) (Collection Date & Time - 01/23/2024 11:54 AM)**

| | Value | Reference Range |
|---|---|---|
| Patient History | Note | - |
| Family History | Note | - |
| Indication | Note | - |
| Mutation Analysis | Not applicable | - |
| Chitotriosidase (CHITO) | 33 | 4 - 120 - nmoles/hr/mL |
| Interpretation | Note | - |
| Comments | Note | - |
| Director | Note | - |
| Disclaimer: | Note | - |

Notes: eclinicalworks, support 01/31/2024 11:16:06 : This order was created by the Interface.

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**Examination:**

DTR, Dermatomes, and Cranial Nerves:

General: WDWN, NAD.

Head: normocephalic, atraumatic.

ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.

Skin: warm and dry, no rashes.

Heart: RRR without murmurs, gallops, clicks or rubs.

Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.

Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.

Neurologic: No focal deficits. CN 2-12 grossly intact.

Psych: AOx4.

## Assessment:

**Assessment:**

1. Type 2 diabetes mellitus without complication, unspecified whether long term insulin use - E11.9 (Primary)
2. Hyperlipidemia, unspecified hyperlipidemia type - E78.5
3. Elevated liver enzymes - R74.8

## Plan:

**Treatment:**

**Procedures:**

CBC, CMP, A1C, Lipids.

**Labs:**

Lab: CBC With Differential/Platelet-005009

Lab: Comp. Metabolic Panel (14)-322000

Lab: Lipid Panel-361767

Lab: Hemoglobin A1c-501270

**Follow Up:** 4/18/24

## Billing Information:

**Visit Code:**

99214 Office Visit, Est Pt., Level 4.

**Procedure Codes:**

**Electronically signed by Joshua Weltha , PA-C on 02/13/2024 at 01:01 PM PST**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 02/13/2024

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

---

**Provider: Joshua Weltha, PAC-C** **Date: 02/13/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/31/2024

**Progress Note**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/31/2024

## Subjective:

**Chief Complaints:**
1. Right elbow.

**HPI:**
HPI:
4-view right elbow x-rays referred by Josh.

**Medical History:**

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48

## Objective:

## Assessment:

**Assessment:**

1. Elbow pain, right - M25.521 (Primary)

## Plan:

**Treatment:**
**1. Elbow pain, right**
Imaging: X ray : Elbow, right

**Procedure Codes:** 73070 X-RAY EXAM OF ELBOW

## Billing Information:

**Visit Code:**
99211 Office Visit, Est Pt., Level 1.
**Procedure Codes:**
73070 X-RAY EXAM OF ELBOW.

**Electronically signed by Joshua Weltha , PA-C on 01/31/2024 at 09:27 AM PST**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/31/2024

**Sign off status: Completed**

---

**Provider: Joshua Weltha, PAC-C** **Date: 01/31/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

**Progress Notes**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/22/2024

## Subjective:

**Chief Complaints:**

1. I am here for 2 month follow up lab and Us results. I fell on my elbow 2 weeks ago and I would like an xray..

**HPI:**

Extremities:

43 yo M presents today for a follow up. They reported the following information:
-Last seen: 11.14.23
-Requests refills: No
-Pharmacy: Smiths
-Imaging completed:
US RUQ shows fatty liver, large spleen.
-Labs completed:
Bili, AST, ALT, elev. Chronically elevated. Has been seen by hepatology, oncology.
A1C is 6.8 (6.5). He reports getting steroid back injections q2weeks x4 months.
Glucocerebrosidase is low but not low enough to be consistent with Gaucher disease.
CBC, CMP, Lipids, hep C, Iron not actionable.
-Pain mgt perfromed ablation, now Pt has R sided sciatica. He reports this claim is being closed out. MRI L-spine 2022 shows some minimal disk bulging, S1 nerve abutment. He did see a neurosurgeon, Dr. Cash, for work claim, nothing to do at this time. Reports that movement helps.
-Pt has some disability paperwork.
-Suspect splenomegaly is from Gauchers, if tests come back negative, will investigate other causes for spleen.
-Lab Corps has the test recommended, but unable to find in the system.
Pt has no further concerns today. I had a lengthy discussion with the patient. I explained findings, management, and prognosis. All the patient's questions have been answered and the patient verbalized complete understanding.

**ROS:**

Allergy / Immunology:
Patient denies hives, itching, rash.

ENT:
Patient denies blocked ear(s) , decreased hearing , decreased sense of smell.

Respiratory:
Patient denies chronic cough, shortness of breath, sputum production.

Cardiovascular:
Patient denies chest pain, chest pain with exertion, irregular heartbeat.

Gastrointestinal:
Patient denies abdominal pain, diarrhea, rectal bleeding.

Hematology:
Patient denies easy bleeding, easy bruising, recent transfusion.

Musculoskeletal:
Patient denies arthritis / arthralgia, joint stiffness, swollen joints.

Skin:
Patient denies blistering of skin, changing moles, skin lesion(s).

Neurologic:
Patient denies dizziness, gait abnormality, headache.

Psychiatric:
Patient denies anxiety, depressed mood, difficulty sleeping.

**Medical History:** Diabetes.

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

**Surgical History:** Bilateral Shoulders , Gallbladder .

**Hospitalization/Major Diagnostic Procedure:** Liver .

**Family History:** Father: alive, diagnosed with Diabetes, Hypertension, High Cholesterol, Cancer, Mental Illness, Arthritis. Mother: alive, diagnosed with Cancer, Mental Illness. 5 brother(s) , 5 sister(s) . 1 son(s) , 1 daughter(s) - healthy. .
Mother and father skin cancer; son has down syndrome and heart defect.

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48, Medication List reviewed and reconciled with the patient

**Allergies:** penicillin: Allergy, ALPRAZolam: Allergy.

## Objective:

**Vitals:** BP: **128/88** mm Hg, HR: **70** /min, Temp: **97.6** F, Oxygen sat %: **97** %, Wt: **249** lbs, Wt-kg: 112.94 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **35.72** Index, Body Surface Area: 2.36.

**Examination:**

DTR, Dermatomes, and Cranial Nerves:
General: WDWN, NAD.
Head: normocephalic, atraumatic.
ENT: EOMI, pupils equal and round, hearing intact to conversation, nose symmetrical. Moist mucus membranes. No tonsillar hypertrophy, no stridor.
Skin: warm and dry, no rashes.
Heart: RRR without murmurs, gallops, clicks or rubs.
Lungs: CTAB, with good air movement and no rales, rhonchi or wheezes.
Abdomen: soft, nontender, nondistended. No CVA tenderness, no suprapubic tenderness.
Neurologic: No focal deficits. CN 2-12 grossly intact.
Psych: AOx4.
Pain on R lateral epicondyle with palpation.

## Assessment:

**Assessment:**

1. Abnormal results of liver function studies - R94.5 (Primary)
2. Type 2 diabetes mellitus without complication, unspecified whether long term insulin use - E11.9
3. Elbow pain, right - M25.521
4. Sciatica of right side - M54.31
5. Gaucher disease - E75.22

## Plan:

**Treatment:**
**Procedures:**
XR R elbow
CBC, CMP, Lipids, A1C
CHITO (chitotriosidase), mutation analysis (3 weeks).

**Labs:**

Lab: CBC With Differential/Platelet-005009

Lab: Comp. Metabolic Panel (14)-322000

Lab: Lipid Panel-361767

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/22/2024

Lab: Hemoglobin A1c-501270

**Follow Up:** 3 weeks, 3 months

**Billing Information:**

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

**Electronically signed by Joshua Weltha , PA-C on 01/22/2024 at 10:35 AM PST**

**This patient has been seen under the direct supervision of Beraldo Vazquez Correa, who is in agreement with the treatment plan**
**Sign off status: Completed**

---

**Provider: Joshua Weltha, PAC-C** **Date: 01/22/2024**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16185 **DOS:** 01/11/2024

**Progress Note**

**Patient:** BORUCHOWITZ, David
**Account Number:** 16185
**DOB:** **Age:** 43 Y **Sex:** Male
**Phone:**
**Address:**

**Provider:** Joshua Weltha, PAC-C
**Date:** 01/11/2024

## Subjective:

**Chief Complaints:**
1. RUQ R74.8 Joshua.

**Medical History:**

**Medications:** Taking Diclofenac 35 MG Capsule 1 capsule as needed Orally Two times a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally Once a day , Not-Taking Tetanus Immune Globulin 250 UNIT/ML Solution Prefilled Syringe as directed Intramuscular once , Unknown No Known Medications , Notes to Pharmacist: *please review for potential _update for e-prescription and drug interaction check* Prescribed Datetime : 06/08/2021 16:48

## Objective:

**Vitals:** BP: **124/84** mm Hg, HR: **74** /min, Temp: **98.0** F, Oxygen sat %: **96** %, Wt: **266** lbs, Wt-kg: 120.66 kg, Ht: 70 in, Ht-cm: 177.80 cm, BMI: **38.16** Index, Body Surface Area: 2.44.

## Assessment:

**Assessment:**

1. Abnormal results of liver function studies - R94.5 (Primary)

## Plan:

**Treatment:**
**1. Abnormal results of liver function studies**
Imaging: *U/S Abdominal w/Doppler

**Procedure Codes:** 76700 US EXAM, ABDOM, COMPLETE, 93975 VASCULAR STUDY

## Billing Information:

**Visit Code:**
**Procedure Codes:**
76700 US EXAM, ABDOM, COMPLETE.
93975 VASCULAR STUDY.

**Electronically signed by Amber Anderson on 01/11/2024 at 09:26 AM PST**
**Sign off status: Completed**

**Provider: Joshua Weltha, PAC-C** **Date: 01/11/2024**

**Boruchowitz, David** | DOB: | **Patient Report** | labcorp

Patient ID: **16185** | Age: **43** | Account Number: **27008440**

Specimen ID: **102-847-3219-0** | Sex: **Male** | Ordering Physician: **J WELTHA**

Date Collected: **04/11/2024** Date Received: **04/11/2024** Date Reported: **04/12/2024** Fasting: **Not Given**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Lipid Panel; Hemoglobin A1c; Venipuncture**

Date Collected: **04/11/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.4 | | 5.1 | 02/26/2024 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 4.95 | | 4.74 | 02/26/2024 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 14.7 | | 13.8 | 02/26/2024 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 45.4 | | 41.6 | 02/26/2024 | % | 37.5-51.0 |
| MCV [01] | 92 | | 88 | 02/26/2024 | fL | 79-97 |
| MCH [01] | 29.7 | | 29.1 | 02/26/2024 | pg | 26.6-33.0 |
| MCHC [01] | 32.4 | | 33.2 | 02/26/2024 | g/dL | 31.5-35.7 |
| RDW [01] | 13.9 | | 14.3 | 02/26/2024 | % | 11.6-15.4 |
| Platelets [01] | 151 | | **144** | 02/26/2024 | x10E3/uL | 150-450 |
| Neutrophils [01] | 63 | | 55 | 02/26/2024 | % | Not Estab. |
| Lymphs [01] | 25 | | 34 | 02/26/2024 | % | Not Estab. |
| Monocytes [01] | 7 | | 8 | 02/26/2024 | % | Not Estab. |
| Eos [01] | 3 | | 3 | 02/26/2024 | % | Not Estab. |
| Basos [01] | 1 | | 0 | 02/26/2024 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.2 | | 2.8 | 02/26/2024 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 1.6 | | 1.7 | 02/26/2024 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.4 | | 0.4 | 02/26/2024 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.2 | | 0.1 | 02/26/2024 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 02/26/2024 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 1 | | 0 | 02/26/2024 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 02/26/2024 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **107** | **High** | 94 | 02/26/2024 | mg/dL | 70-99 |
| BUN [01] | 16 | | 12 | 02/26/2024 | mg/dL | 6-24 |
| Creatinine [01] | 0.78 | | **0.69** | 02/26/2024 | mg/dL | 0.76-1.27 |
| eGFR | 113 | | 118 | 02/26/2024 | mL/min/1.73 | >59 |
| ▲ **BUN/Creatinine Ratio** | **21** | **High** | 17 | 02/26/2024 | | 9-20 |
| Sodium [01] | 143 | | 143 | 02/26/2024 | mmol/L | 134-144 |
| Potassium [01] | 4.3 | | 4.0 | 02/26/2024 | mmol/L | 3.5-5.2 |
| Chloride [01] | 106 | | **107** | 02/26/2024 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 24 | | 21 | 02/26/2024 | mmol/L | 20-29 |
| Calcium [01] | 8.8 | | 8.7 | 02/26/2024 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.5 | | 6.6 | 02/26/2024 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.4 | | 4.2 | 02/26/2024 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.1 | | 2.4 | 02/26/2024 | g/dL | 1.5-4.5 |
| A/G Ratio | 2.1 | | 1.8 | 02/26/2024 | | 1.2-2.2 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **102-847-3219-0** Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **04/11/2024**

## Comp. Metabolic Panel (14) (Cont.)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| Bilirubin, Total [01] | 1.0 | | 0.7 | 02/26/2024 | mg/dL | 0.0-1.2 |
| Alkaline Phosphatase [01] | 76 | | 72 | 02/26/2024 | IU/L | 44-121 |
| AST (SGOT) [01] | 37 | | 36 | 02/26/2024 | IU/L | 0-40 |
| ⚠ **ALT (SGPT)** [01] | **100** | **High** | **57** | 02/26/2024 | IU/L | 0-44 |

## Lipid Panel

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Cholesterol, Total [01] | 139 | 111 | 02/26/2024 | mg/dL | 100-199 |
| Triglycerides [01] | 100 | 105 | 02/26/2024 | mg/dL | 0-149 |
| HDL Cholesterol [01] | 43 | **30** | 02/26/2024 | mg/dL | >39 |
| VLDL Cholesterol Cal | 19 | 20 | 02/26/2024 | mg/dL | 5-40 |
| LDL Chol Calc (NIH) | 77 | 61 | 02/26/2024 | mg/dL | 0-99 |

## Hemoglobin A1c

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ⚠ **Hemoglobin A1c** [01] | **5.7** | **High** | **5.9** | 02/26/2024 | % | 4.8-5.6 |

Please Note: [01]

```
Prediabetes: 5.7 - 6.4
Diabetes: >6.4
Glycemic control for adults with diabetes: <7.0
```

**Disclaimer**
The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**
⚠ Out of Reference Range ■ Critical or Alert

**Performing Labs**
01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD
For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone: **775-513-7771**
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **102-847-3219-0**
Control ID: **61107802978**
Alternate Control Number:
Date Collected: **04/11/2024 0843 Local**
Date Received: **04/11/2024 0000 ET**
Date Entered: **04/11/2024 1144 ET**
Date Reported: **04/12/2024 0911 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **102-847-3219-0** Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

### Hemoglobin

◇ Current Result: 14.7 *g/dL*




*Reference Interval: 13.0-17.7 g/dL*

### Hematocrit

◇ Current Result: 45.4 %




*Reference Interval: 37.5-51.0 %*

### WBC

◇ Current Result: 6.4 *x10E3/uL*




*Reference Interval: 3.4-10.8 x10E3/uL*

### Platelets

◇ Current Result: 151 *x10E3/uL*




*Reference Interval: 150-450 x10E3/uL*



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **102-847-3219-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**Creatinine**
◇ Current Result: 0.78 *mg/dL*




*Reference Interval: 0.76-1.27 mg/dL*

**eGFR**
◇ Current Result: 113 *mL/min/1.73*




*Reference Interval: >59 mL/min/1.73*

**AST (SGOT)**
◇ Current Result: 37 *IU/L*




*Reference Interval: 0-40 IU/L*

† Fasting

**ALT (SGPT)**
◆ Current Result: 100 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **102-847-3219-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**HbA1c**
◆ Current Result: 5.7 % **BELOW GOAL**




**Glucose**
◆ Current Result: 107 mg/dL **HIGH**




† Fasting

**Cardiovascular Tests**

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 04/11/2024 | **139** | **100** | **43** | **19** | **77** |
| 02/26/2024† | 111 | 105 | 30 | 20 | 61 |
| 01/23/2024† | 168 | 340 | 28 | 56 | 84 |
| 01/11/2024† | 140 | 137 | 32 | 24 | 84 |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| Ref. Interval | 100-199 | 0-149 | >39 | 5-40 | 0-99 |
| Units | mg/dL | mg/dL | mg/dL | mg/dL | mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **023-847-9018-0** Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024** Date Received: **01/23/2024** Date Reported: **01/31/2024** Fasting: **Yes**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Chitotriosidase Assay (CHITO); Lipid Panel; Hemoglobin A1c; Venipuncture**

Date Collected: **01/23/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.9 | | 6.6 | 01/11/2024 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 5.35 | | 5.32 | 01/11/2024 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 15.6 | | 15.5 | 01/11/2024 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 46.4 | | 45.6 | 01/11/2024 | % | 37.5-51.0 |
| MCV [01] | 87 | | 86 | 01/11/2024 | fL | 79-97 |
| MCH [01] | 29.2 | | 29.1 | 01/11/2024 | pg | 26.6-33.0 |
| MCHC [01] | 33.6 | | 34.0 | 01/11/2024 | g/dL | 31.5-35.7 |
| RDW [01] | 13.4 | | 13.4 | 01/11/2024 | % | 11.6-15.4 |
| Platelets [01] | 190 | | 168 | 01/11/2024 | x10E3/uL | 150-450 |
| Neutrophils [01] | 60 | | 61 | 01/11/2024 | % | Not Estab. |
| Lymphs [01] | 28 | | 28 | 01/11/2024 | % | Not Estab. |
| Monocytes [01] | 9 | | 8 | 01/11/2024 | % | Not Estab. |
| Eos [01] | 2 | | 2 | 01/11/2024 | % | Not Estab. |
| Basos [01] | 1 | | 0 | 01/11/2024 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.1 | | 4.1 | 01/11/2024 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 2.0 | | 1.8 | 01/11/2024 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.6 | | 0.6 | 01/11/2024 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.1 | | 0.1 | 01/11/2024 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 01/11/2024 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 0 | | 1 | 01/11/2024 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 01/11/2024 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **103** | **High** | **115** | 01/11/2024 | mg/dL | 70-99 |
| BUN [01] | 14 | | 14 | 01/11/2024 | mg/dL | 6-24 |
| ▼ **Creatinine** [01] | **0.62** | **Low** | **0.75** | 01/11/2024 | mg/dL | 0.76-1.27 |
| eGFR | 122 | | 115 | 01/11/2024 | mL/min/1.73 | >59 |
| ▲ **BUN/Creatinine Ratio** | **23** | **High** | 19 | 01/11/2024 | | 9-20 |
| Sodium [01] | 142 | | 143 | 01/11/2024 | mmol/L | 134-144 |
| Potassium [01] | 4.1 | | 4.4 | 01/11/2024 | mmol/L | 3.5-5.2 |
| Chloride [01] | 103 | | **108** | 01/11/2024 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 21 | | 21 | 01/11/2024 | mmol/L | 20-29 |
| Calcium [01] | 8.8 | | 8.7 | 01/11/2024 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.8 | | 6.9 | 01/11/2024 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.4 | | 4.7 | 01/11/2024 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.4 | | 2.2 | 01/11/2024 | g/dL | 1.5-4.5 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **023-847-9018-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024**

## Comp. Metabolic Panel (14) (Cont.)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| A/G Ratio | 1.8 | | 2.1 | 01/11/2024 | | 1.2-2.2 |
| Bilirubin, Total [01] | 0.8 | | **1.3** | 01/11/2024 | mg/dL | 0.0-1.2 |
| Alkaline Phosphatase [01] | 81 | | 73 | 01/11/2024 | IU/L | 44-121 |
| **AST (SGOT)** [01] | **42** | **High** | **51** | 01/11/2024 | IU/L | 0-40 |
| **ALT (SGPT)** [01] | **118** | **High** | **143** | 01/11/2024 | IU/L | 0-44 |

## Chitotriosidase Assay (CHITO)

| Test | Current Result and Flag | Previous Result and Date | Units | Reference Interval |
|---|---|---|---|---|
| Ethnicity [02] | Not Provided | | | |
| Patient History [02] | Note<br>Known/Suspected Gaucher Disease:<br>Obligate or Possible Carrier of Gaucher Disease: | | | |
| Family History [02] | Note<br>Family History of Gaucher Disease:<br>Family Members: | | | |
| Indication [02] | Note<br>Gaucher Disease monitoring | | | |
| Mutation Analysis [02] | Not applicable | | | |
| Chitotriosidase (CHITO) [02] | 33 | | nmoles/hr/mL | 4 - 120 |
| Interpretation [02] | Note<br>Please see Result Values and Monitoring History. | | | |
| Comments [02] | Note<br>The ACE fluorometric enzyme assay uses tripeptide (hippuryl-his-leu) as substrate and o-phthaldialdehyde for fluorescent derivatization. The CHITO fluorometric enzyme assay uses 4-methylumbelliferyl-beta-D-triacetylchitotrioside as substrate. The TRAP colorimetric enzyme assay uses p-nitrophenyl phosphate as substrate. | | | |
| Director [02] | Note<br>Philip R. Wyatt M.D., Ph.D | | | |
| Disclaimer: [02] | Note<br>Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.<br>Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.<br>This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration. | | | |
| PDF [02] | . | | | |

## Lipid Panel

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Cholesterol, Total [01] | 168 | 140 | 01/11/2024 | mg/dL | 100-199 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **023-847-9018-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/23/2024**

## Lipid Panel (Cont.)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ⚠ **Triglycerides** [01] | **340** | **High** | 137 | 01/11/2024 | mg/dL | 0-149 |
| ▼ **HDL Cholesterol** [01] | **28** | **Low** | **32** | 01/11/2024 | mg/dL | >39 |
| ⚠ **VLDL Cholesterol Cal** | **56** | **High** | 24 | 01/11/2024 | mg/dL | 5-40 |
| LDL Chol Calc (NIH) | 84 | | 84 | 01/11/2024 | mg/dL | 0-99 |

## Hemoglobin A1c

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ⚠ **Hemoglobin A1c** [01] | **6.9** | **High** | **6.8** | 01/11/2024 | % | 4.8-5.6 |
| Please Note: [01] | | | | | | |

```
Prediabetes: 5.7 - 6.4
Diabetes: >6.4
Glycemic control for adults with diabetes: <7.0
```

**Disclaimer**
The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**
⚠ Out of Reference Range ■ Critical or Alert

**Performing Labs**
01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD
02: EGLNM - Esoterix Genetic Laboratories, 2000 Vivigen Way, Santa Fe, NM 87505-5600 Dir: Philip Wyatt, MDPhD
For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone: **775-513-7771**
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **023-847-9018-0**
Control ID: **170L1P44697**
Alternate Control Number: **170L1P446979**
Date Collected: **01/23/2024 1154 Local**
Date Received: **01/23/2024 0000 ET**
Date Entered: **01/23/2024 1752 ET**
Date Reported: **01/31/2024 1410 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

| **Boruchowitz, David** | DOB: | **Patient Report** |
|---|---|---|
| Patient ID: **16185** | Age: **43** | Account Number: **27008440** |
| Specimen ID: **023-847-9018-0** | Sex: **Male** | Ordering Physician: **J WELTHA** |

labcorp

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

**Creatinine**

◇ Current Result: 0.62 *mg/dL* **LOW**




**eGFR**

◇ Current Result: 122 *mL/min/1.73*






©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **023-847-9018-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

**AST (SGOT)**
◆ Current Result: 42 *IU/L* **HIGH**




*Reference Interval: 0-40 IU/L*

† Fasting

**ALT (SGPT)**
◆ Current Result: 118 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting

**HbA1c**
◆ Current Result: 6.9 % **WITHIN GOAL**




*Goal Range: 6.0-7.0 %*

**Glucose**
◆ Current Result: 103 *mg/dL* **HIGH**




*Reference Interval: 70-99 mg/dL*

* Previous Reference Interval: (Sep 12, 2022: 65-99 mg/dL). † Fasting

**Cardiovascular Tests**

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 01/23/2024† | **168** | **340** | **28** | **56** | **84** |
| 01/11/2024† | 140 | 137 | 32 | 24 | 84 |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| 08/04/2023 | 144 | 143 | 34 | | 85 |
| 06/23/2021† | 156 | 103 | 38 | | 99 |
| 05/04/2021† | | | | 28 | |
| 08/03/2020† | | | | 59 | |
| Ref. Interval Units | 100-199 mg/dL | 0-149 mg/dL | >39 mg/dL | 5-40 mg/dL | 0-99 mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

# Gaucher Disease Analysis
# Secondary Markers

labcorp

Patient Name: Boruchowitz, David
Referring Physician: Not Provided
Specimen #: 26847698
Patient ID # 23569736-1-BIO Client #: 889588
DOB:
SSN: ***-**-****
Sex: M
Date Collected: 01/23/2024
Date Received: 01/25/2024
Hospital ID: PDLCA^EGLNM
Lab ID: 02384790180
Ethnicity: Not Provided

**602 453-7012**
**Labcorp**

**ET**

Patient History
Known/Suspected Gaucher Disease:
Obligate or Possible Carrier of Gaucher Disease:

Family History
Family History of Gaucher Disease:
Family Members:

Clinical Indication: Gaucher Disease monitoring

| Results | Result Values | Flag | Units | Reference Interval |
|---|---|---|---|---|
| Angiotensin converting enzyme (ACE) | (not ordered) | | | |
| Chitotriosidase (CHITO) | 33 | | nmoles/hr/mL | 4 - 120 |
| Tartrate resistant acid phosphatase (TRAP) | (not ordered) | | | |

Interpretation:
Please see Result Values and Monitoring History.

Monitoring History







Comments:

The ACE fluorometric enzyme assay uses tripeptide (hippuryl-his-leu) as substrate and o-phthaldialdehyde for fluorescent derivatization. The CHITO fluorometric enzyme assay uses 4-methylumbelliferyl-beta-D-triacetylchitotrioside as substrate. The TRAP colorimetric enzyme assay uses p-nitrophenyl phosphate as substrate.

Under the Direction of: 35572

Philip R. Wyatt M.D., Ph.D Date Reported: 01/31/2024

Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.
Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.
This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration.

# *Spring Mountain Medical*
## *1151 South Highway 160*
## *Pahrump, NV 89048*
## *(775)727-8900*
## *(775)727-9452*

RADIOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient: | BORUCHOWITZ, DAVID | Date: | 01/31/2024 |
| Physician: | WELTHA, JOSH PA-C | DOB: | |
| Facility: | SPRING MOUNTAIN MEDICAL | ID #: | |

RIGHT ELBOW

The examination demonstrates preservation of the joint space. There is no evidence of fracture or dislocation. The fat pads appear normal. There is no evidence of radiopaque foreign body noted.

Interpretation: No significant abnormality of the elbow.

Electronically Signed
DEAN YARBRO, M.D.
DY/DD: February 1, 2024
DY/DT: February 1, 2024

Interpreted by **LAKE MEAD RADIOLOGISTS**
**2559 Wigwam Parkway Henderson, Nevada 89074**
**Phone (702) 982-3659 | Fax (702) 823-5434 | https://pacs.lmrlv.com**

**Boruchowitz, David** DOB:
Patient ID: **16185** Age: **43**
Specimen ID: **011-847-3266-0** Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/11/2024** Date Received: **01/11/2024** Date Reported: **01/16/2024** Fasting: **Yes**

Ordered Items: **CBC With Differential/Platelet; Comp. Metabolic Panel (14); Gaucher Enzyme Analysis; Lipid Panel; Hepatic Function Panel (7); Acute Hepatitis; Hemoglobin A1c; Iron; Venipuncture**

Date Collected: **01/11/2024**

## CBC With Differential/Platelet

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| WBC [01] | 6.6 | | 6.1 | 11/01/2023 | x10E3/uL | 3.4-10.8 |
| RBC [01] | 5.32 | | 5.21 | 11/01/2023 | x10E6/uL | 4.14-5.80 |
| Hemoglobin [01] | 15.5 | | 15.4 | 11/01/2023 | g/dL | 13.0-17.7 |
| Hematocrit [01] | 45.6 | | 46.4 | 11/01/2023 | % | 37.5-51.0 |
| MCV [01] | 86 | | 89 | 11/01/2023 | fL | 79-97 |
| MCH [01] | 29.1 | | 29.6 | 11/01/2023 | pg | 26.6-33.0 |
| MCHC [01] | 34.0 | | 33.2 | 11/01/2023 | g/dL | 31.5-35.7 |
| RDW [01] | 13.4 | | 13.5 | 11/01/2023 | % | 11.6-15.4 |
| Platelets [01] | 168 | | 177 | 11/01/2023 | x10E3/uL | 150-450 |
| Neutrophils [01] | 61 | | 60 | 11/01/2023 | % | Not Estab. |
| Lymphs [01] | 28 | | 29 | 11/01/2023 | % | Not Estab. |
| Monocytes [01] | 8 | | 7 | 11/01/2023 | % | Not Estab. |
| Eos [01] | 2 | | 3 | 11/01/2023 | % | Not Estab. |
| Basos [01] | 0 | | 1 | 11/01/2023 | % | Not Estab. |
| Neutrophils (Absolute) [01] | 4.1 | | 3.7 | 11/01/2023 | x10E3/uL | 1.4-7.0 |
| Lymphs (Absolute) [01] | 1.8 | | 1.8 | 11/01/2023 | x10E3/uL | 0.7-3.1 |
| Monocytes(Absolute) [01] | 0.6 | | 0.4 | 11/01/2023 | x10E3/uL | 0.1-0.9 |
| Eos (Absolute) [01] | 0.1 | | 0.2 | 11/01/2023 | x10E3/uL | 0.0-0.4 |
| Baso (Absolute) [01] | 0.0 | | 0.0 | 11/01/2023 | x10E3/uL | 0.0-0.2 |
| Immature Granulocytes [01] | 1 | | 0 | 11/01/2023 | % | Not Estab. |
| Immature Grans (Abs) [01] | 0.0 | | 0.0 | 11/01/2023 | x10E3/uL | 0.0-0.1 |

## Comp. Metabolic Panel (14)

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| ▲ **Glucose** [01] | **115** | **High** | **109** | 11/01/2023 | mg/dL | 70-99 |
| BUN [01] | 14 | | 15 | 11/01/2023 | mg/dL | 6-24 |
| ▼ **Creatinine** [01] | **0.75** | **Low** | 0.86 | 11/01/2023 | mg/dL | 0.76-1.27 |
| eGFR | 115 | | 110 | 11/01/2023 | mL/min/1.73 | >59 |
| BUN/Creatinine Ratio | 19 | | 17 | 11/01/2023 | | 9-20 |
| Sodium [01] | 143 | | 143 | 11/01/2023 | mmol/L | 134-144 |
| Potassium [01] | 4.4 | | 4.3 | 11/01/2023 | mmol/L | 3.5-5.2 |
| ▲ **Chloride** [01] | **108** | **High** | **107** | 11/01/2023 | mmol/L | 96-106 |
| Carbon Dioxide, Total [01] | 21 | | 23 | 11/01/2023 | mmol/L | 20-29 |
| Calcium [01] | 8.7 | | **8.6** | 11/01/2023 | mg/dL | 8.7-10.2 |
| Protein, Total [01] | 6.9 | | 6.4 | 11/01/2023 | g/dL | 6.0-8.5 |
| Albumin [01] | 4.7 | | 4.4 | 11/01/2023 | g/dL | 4.1-5.1 |
| Globulin, Total | 2.2 | | 2.0 | 11/01/2023 | g/dL | 1.5-4.5 |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-738-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

Date Collected: **01/11/2024**

## Comp. Metabolic Panel (14) (Cont.)

| | Test | Current Result | Flag | Previous Result | Date | Units | Reference Interval |
|---|---|---|---|---|---|---|---|
| | A/G Ratio | 2.1 | | 2.2 | 11/01/2023 | | 1.2-2.2 |
| ▲ | **Bilirubin, Total** [01] | **1.3** | **High** | 0.8 | 11/01/2023 | mg/dL | 0.0-1.2 |
| | Alkaline Phosphatase [01] | 73 | | 70 | 11/01/2023 | IU/L | 44-121 |
| ▲ | **AST (SGOT)** [01] | **51** | **High** | **57** | 11/01/2023 | IU/L | 0-40 |
| ▲ | **ALT (SGPT)** [01] | **143** | **High** | **141** | 11/01/2023 | IU/L | 0-44 |

## Gaucher Enzyme Analysis

| Test | Current Result and Flag | Previous Result and Date | Units | Reference Interval |
|---|---|---|---|---|
| Ethnicity [02] | Not Provided | | | |
| Patient History [02] | Note<br>Known/Suspected Gaucher Disease:<br>Obligate or Possible Carrier of Gaucher Disease: | | | |
| Family History [02] | Note<br>Family History of Gaucher Disease:<br>Family Members: | | | |
| Indication [02] | Not applicable | | | |
| Mutation Analysis [02] | Not applicable | | | |
| Glucocerebrosidase/WBC [02] | 5.350<br>Units: nanomoles/hr/mg protein | | | 7.5-14.5 |
| Interpretation [02] | Note<br>Glucocerebrosidase enzyme activity is below the normal range, but not low enough to be consistent with a diagnosis of Gaucher disease.<br><br>For further assessment of disease status, measurement of chitotriosidase (CHITO), a secondary marker that is often elevated in untreated Gaucher disease, is recommended, as well as mutation analysis.<br><br>For further assessment of carrier status, mutation analysis is recommended. | | | |
| Comments [02] | Note<br>Glucocerebrosidase (leukocyte) was measured by fluorometric enzyme assay using 4-methylumbelliferyl-beta-D-glucoside as substrate, with/without glucocerebrosidase specific inhibitor. | | | |
| Director [02] | Note<br>Philip R. Wyatt M.D., Ph.D | | | |
| Disclaimer: [02] | Note<br>Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.<br>Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.<br>This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug | | | |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** | DOB: | **Patient Report** | labcorp

Patient ID: **16185** | Age: **43** | Account Number: **27008440**

Specimen ID: **011-847-3266-0** | Sex: **Male** | Ordering Physician: **J WELTHA**

Date Collected: **01/11/2024**

## Gaucher Enzyme Analysis (Cont.)

Administration.

| | |
|---|---|
| Gaucher Enzyme Analysis PDF [02] | . |

## Lipid Panel

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| Cholesterol, Total [01] | 140 | | 148 | 11/01/2023 | mg/dL | 100-199 |
| Triglycerides [01] | 137 | | 143 | 11/01/2023 | mg/dL | 0-149 |
| **HDL Cholesterol** [01] | **32** | **Low** | **33** | 11/01/2023 | mg/dL | >39 |
| VLDL Cholesterol Cal | 24 | | 25 | 11/01/2023 | mg/dL | 5-40 |
| LDL Chol Calc (NIH) | 84 | | 90 | 11/01/2023 | mg/dL | 0-99 |

## Hepatic Function Panel (7)

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Bilirubin, Direct [01] | 0.26 | 0.16 | 05/04/2021 | mg/dL | 0.00-0.40 |

## Acute Hepatitis

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Hep A Ab, IgM [01] | Negative | Negative | 08/14/2020 | | Negative |
| HBsAg Screen [01] | Negative | Negative | 08/14/2020 | | Negative |
| Hep B Core Ab, IgM [01] | Negative | Negative | 08/14/2020 | | Negative |
| HCV Ab [01] | Non Reactive | | | | Non Reactive |
| Interpretation: [01] | | | | | |

Not infected with HCV unless early or acute infection is
suspected (which may be delayed in an immunocompromised
individual), or other evidence exists to indicate HCV infection.

## Hemoglobin A1c

| Test | Current Result and Flag | | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|---|
| **Hemoglobin A1c** [01] | **6.8** | **High** | **6.5** | 11/01/2023 | % | 4.8-5.6 |
| Please Note: [01] | | | | | | |

Prediabetes: 5.7 - 6.4
Diabetes: >6.4
Glycemic control for adults with diabetes: <7.0

## Iron

| Test | Current Result and Flag | Previous Result and Date | | Units | Reference Interval |
|---|---|---|---|---|---|
| Iron [01] | 144 | 96 | 11/01/2023 | ug/dL | 38-169 |

**Disclaimer**

The Previous Result is listed for the most recent test performed by Labcorp in the past 5 years where there is sufficient patient demographic data to match the result to the patient. Results from certain tests are excluded from the Previous Result display.

**Icon Legend**

Out of Reference Range ■ Critical or Alert



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** DOB: **Patient Report** labcorp

Patient ID: **16185** Age: **43** Account Number: **27008440**

Specimen ID: **011-847-3266-0** Sex: **Male** Ordering Physician: **J WELTHA**

**Performing Labs**

01: PDLCA - Labcorp Phoenix, 5005 S 40th Street Ste 1200, Phoenix, AZ 85040-2969 Dir: Earle Collum, MD

02: EGLNM - Esoterix Genetic Laboratories, 2000 Vivigen Way, Santa Fe, NM 87505-5600 Dir: Philip Wyatt, MDPhD

For inquiries, the physician may contact Branch: 888-522-2677 Lab: 800-788-9743

Patient Details
**Boruchowitz, David**

Phone:
Date of Birth:
Age: **43**
Sex: **Male**
Patient ID: **16185**
Alternate Patient ID: **16185**

Physician Details
**J WELTHA**
**dba Spring Mountain Medical**
**1151 S Highway 160, Pahrump, NV, 89048**

Phone: **775-727-8900**
Account Number: **27008440**
Physician ID:
NPI: **1245832013**

Specimen Details
Specimen ID: **011-847-3266-0**
Control ID: **61107801900**
Alternate Control Number:
Date Collected: **01/11/2024 0833 Local**
Date Received: **01/11/2024 0000 ET**
Date Entered: **01/11/2024 1248 ET**
Date Reported: **01/16/2024 1708 ET**



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

## Historical Results & Insights

Labcorp offers historical lab results data with easy-to-interpret visualizations to provide a more complete picture of a patient's lab history and improve patient care.

**Creatinine**
◇ Current Result: 0.75 *mg/dL* **LOW**




*Reference Interval: 0.76-1.27 mg/dL*

**eGFR**
◇ Current Result: 115 *mL/min/1.73*




*Reference Interval: >59 mL/min/1.73*



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David**
Patient ID: **16185**
Specimen ID: **011-847-3266-0**

DOB:
Age: **43**
Sex: **Male**

**Patient Report**
Account Number: **27008440**
Ordering Physician: **J WELTHA**

labcorp

### AST (SGOT)
◆ Current Result: 51 *IU/L* **HIGH**




*Reference Interval: 0-40 IU/L*

† Fasting

### ALT (SGPT)
◆ Current Result: 143 *IU/L* **HIGH**




*Reference Interval: 0-44 IU/L*

† Fasting

### HbA1c
◆ Current Result: 6.8 % **WITHIN GOAL**




*Goal Range: 6.0-7.0 %*

### Glucose
◆ Current Result: 115 *mg/dL* **HIGH**




*Reference Interval: 70-99 mg/dL*

* Previous Reference Intervals: (Sep 12, 2022: 65-99 mg/dL), (Jun 23, 2021: 65-99 mg/dL). † Fasting

### Cardiovascular Tests

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 01/11/2024† | **140** | **137** | **32** | **24** | **84** |
| 11/01/2023† | 148 | 143 | 33 | 25 | 90 |
| 08/04/2023 | 144 | 143 | 34 | | 85 |
| 06/23/2021† | 156 | 103 | 38 | | 99 |
| 05/21/2021† | 135 | 82 | 34 | | 85 |
| 05/04/2021† | | | | 28 | |
| 08/03/2020† | | | | 59 | |
| Ref. Interval | 100-199 | 0-149 | >39 | 5-40 | 0-99 |
| Units | mg/dL | mg/dL | mg/dL | mg/dL | mg/dL |



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

**Boruchowitz, David** DOB: **Patient Report** labcorp

Patient ID: **16185** Age: **43** Account Number: **27008440**

Specimen ID: **011-847-3266-0** Sex: **Male** Ordering Physician: **J WELTHA**

**Cardiovascular Tests (Cont.)**

| Date | Total Chol. | TG | HDL-C | VLDL | LDL-C |
|---|---|---|---|---|---|
| 04/16/2019† | | | | 43 | |
| Ref. Interval | 100-199 | 0-149 | >39 | 5-40 | 0-99 |
| Units | mg/dL | mg/dL | mg/dL | mg/dL | mg/dL |

† Fasting



©2024 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version 2.00

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error please call 800-788-9743

# Gaucher Enzyme Analysis

labcorp

Patient Name: Boruchowitz, David
Referring Physician: Not Provided
Specimen #: 26838854
Patient ID # 23561742-1-BIO Client #: 889588

DOB:
SSN: ***-**-****
Sex: M

Date Collected: 01/11/2024
Date Received: 01/13/2024
Hospital ID: PDLCA^EGLNM
Lab ID: 01184732660

Ethnicity: Not Provided

602 453-7012
Labcorp

ET

**Patient History**
Known/Suspected Gaucher Disease:
Obligate or Possible Carrier of Gaucher Disease:

**Family History**
Family History of Gaucher Disease:
Family Members:

Clinical Indication:

| Results | Result Value | Normal Range |
|---|---|---|
| Glucocerebrosidase/WBC | 5.350 nanomoles/hr/mg protein | 7.5-14.5 nanomoles/hr/mg protein |

**Interpretation:**
Glucocerebrosidase enzyme activity is below the normal range, but not low enough to be consistent with a diagnosis of Gaucher disease.

For further assessment of disease status, measurement of chitotriosidase (CHITO), a secondary marker that is often elevated in untreated Gaucher disease, is recommended, as well as mutation analysis.

For further assessment of carrier status, mutation analysis is recommended.

Comments:
Glucocerebrosidase (leukocyte) was measured by fluorometric enzyme assay using 4-methylumbelliferyl-beta-D-glucoside as substrate, with/without glucocerebrosidase specific inhibitor.

Under the Direction of: 35447

Philip R. Wyatt M.D., Ph.D Date Reported: 01/16/2024

Testing Performed at Esoterix Genetic Laboratories, LLC, 2000 Vivigen Way Santa Fe, NM 87505 Philip R. Wyatt, M.D., Ph.D., Laboratory Director 1-800-848-4436.
Esoterix Genetic Laboratories, LLC is a subsidiary of Laboratory Corporation of America Holdings, using the brand Labcorp.
This test was developed and its performance characteristics determined by Esoterix Genetic Laboratories, LLC. It has not been cleared or approved by the Food and Drug Administration.

**SPRING MOUNTAIN MEDICAL**
1151 S Highway 160
Pahrump, NV 89048
(775) 727-8900 • Fax (775) 537-2090

Patient: BORUCHOWITZ, DAVID Exam Date: 01/11/2024
X-Ray #: 10051080 Accession #: 10104159
DOB:
Outside Mrno: PPMBODA000003PMI2X
Referring Doctor: MATTHEW ROBERSON MD

**PROCEDURE:** Ultrasound

HISTORY: Abnormal liver function tests

COMPARISON: No pertinent priors available.

TECHNIQUE: Complete abdominal sonogram was done with grayscale and Doppler.

FINDINGS:
Pancreas: The visualized segments of the pancreas are grossly unremarkable.

Liver: There is hepatic steatosis. There are no focal findings.

Gallbladder: The patient is status post cholecystectomy.

Common bile duct: Caliber is normal measuring 5 mm or less.

Kidneys: There is no hydronephrosis or perinephric fluid. Renal size is normal.

Spleen: There is splenomegaly. The length is up to 15 cm.

IVC: Patent.

Abdominal aorta: Normal caliber and patent.

IMPRESSION:
Hepatic steatosis and splenomegaly.

**Dictated By:** Eric Biesbroeck M.D. at 2024-01-11 15:28:55
**Electronically Signed By:** Eric Biesbroeck M.D. at 2024-01-11 15:29:50

Workstation: G4ZMMD2

SPRING MOUNTAIN MEDICAL

| | |
|---|---|
| Phone: (775)-727-8900 | Date 5/13/2024 |
| Email: cpersieck@springmtnmed.com | |
| | Invoice # 2 |

| Item | Requesting Entity | Amount |
|---|---|---|
| Medical Records | Lincoln Financial Group | $22 |
| | Final Balance Due: | $22.00 |

Spring Mountain Medical
1151 S Highway 160
Pahrump, NV 89048

BORUCHOWITZ, David **DOB:**

**Patient:** BORUCHOWITZ, David
**Account Number:** 10896
**DOB:**
**Phon**
**Addr**

**Provider:** Peter S Su, MD

## Subjective:

**Chief Complaints:**

1. Low back pain.

**HPI:**

New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He is s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, still reporting limited relief.

He previously saw Dr. Cash who recommended to continue injection therapy, he does not want to pursue surgical options at this point.

He continues with diclofenac and baclofen, denies side effects, providing some benefits.

Patient reports VAS 7-8/10 today.

BORUCHOWITZ, David **DOB**:

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.
L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.
L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.
.

**ROS:**
All Other Systems:
Review of Systems (ROS) **All others negative except for those mentioned in HPI**.
Musculoskeletal:
Comments See HPI for details.
General / Constitutional:

BORUCHOWITZ, David **DOB:**

Change in appetite Denies. Chills Denies. Fatigue Denies. Fever Denies. Night sweats Denies. Sleep disturbance Denies. Weight gain Denies. Weight loss Denies. Weakness Denies. Excessive Thirst Denies. Low Sex Drive Denies.

Ophthalmologic:

Blurry vision Denies. Change in vision Denies.

ENT:

Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.

Respiratory:

Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.

Cardiovascular:

Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.

Gastrointestinal:

Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.

Hematology:

Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.

Allergy / Immunology:

Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.

Genitourinary:

Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.

Neurologic:

Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.

Psychiatric:

Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

**Medical History:** Diabetes.

**Surgical History:** gallbladder removal 2019, bilateral shoulder surgery 2014/2019.

**Family History:** No Family History documented..

**Social History:**

non-drinker, non-smoker.

**Medications:** Taking Diclofenac Sodium 75 MG Tablet Delayed Release 1 tablet as needed Orally Twice a day , Taking Baclofen 10 MG Tablet 1 tablet as needed Orally bedtime , Medication List reviewed and reconciled with the patient

**Allergies:** ALPRAZolam.

## Objective:

**Vitals:** BP: **136/92** mm Hg, HR: **72** /min, Temp: **98.2** F, Wt: **259** lbs, Wt-kg: 117.48 kg.

**Examination:**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat..

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).
Sensory: intact BLE.
Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic .

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

BORUCHOWITZ, David **DOB:**

Lungs: no cough or signs of respiratory distress.
Chest: normal chest wall expansion.
Abdomen: soft, nontender, nondistended.
Skin: normal.
Extremities: no edema.
Ears: normal appearance.
Nose: normal appearance, no external masses or lesions.
Oral cavity: mucosa moist .

## Assessment:

**Assessment:**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

## Plan:

**Treatment:**

**1. Sprain of ligaments of lumbar spine, initial encounter**

Referral To:Physical Therapist
Reason:Functional Capacity Evaluation

**2. Other intervertebral disc displacement, lumbar region**

Referral To:Physical Therapist
Reason:Functional Capacity Evaluation

**3. Other intervertebral disc disorders, lumbosacral region**

Referral To:Physical Therapist
Reason:Functional Capacity Evaluation

**4. Spondylosis without myelopathy or radiculopathy, lumbar region**

Referral To:Physical Therapist
Reason:Functional Capacity Evaluation

**5. Others**

Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0 ; Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0 .
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industrial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Continue diclofenac 75mg BID PRN inflammatory pain.
-Continue baclofen 10mg QHS PRN muscle spasms.

BORUCHOWITZ, David **DOB:**

-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief.
-He is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase.
-He is s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, reporting limited relief.
-Recommend **functional capacity evaluation**, as patient does not want to pursue surgical options.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine

**Follow Up:** 3-4 Weeks

## Billing Information:

**Visit Code:**
99214 Office Visit, Est Pt., Level 4.
**Procedure Codes:**

**Electronically signed by PETER SU , MD on 05/03/2024 at 02:37 PM PDT**
**Sign off status: Pending**

---

**Provider: Peter S Su, MD** **Date: 01/18/2024**

BORUCHOWITZ, David **DOB:**

# BORUCHOWITZ, David

43 Y old Male, DOB:
Account Number: 10896

Home:
Guarantor: Boruchowitz, David Insurance: CCMSI Payer
ID: PAPER
Referring: ANDREW CASH, MD
Appointment Facility: Su Spine and Sports (SUNSET)

**04/17/2024** **Peter S Su, MD**

## Current Medications

**Unknown**

- Diclofenac Sodium 75 MG Tablet Delayed Release 1 tablet as needed Orally Twice a day
- Baclofen 10 MG Tablet 1 tablet as needed Orally bedtime

Medication List reviewed and reconciled with the patient

## Past Medical History

Diabetes.

## Surgical History

gallbladder removal 2019
bilateral shoulder surgery 2014/2019

## Family History

No Family History documented.

## Social History

non-drinker, non-smoker.

## Allergies

ALPRAZolam

## Hospitalization/Major Diagnostic Procedure

No Hospitalization History.

## Review of Systems

All Other Systems:
Review of Systems (ROS) **All others negative except for those mentioned in HPI**.
Musculoskeletal:
Comments See HPI for details.
General / Constitutional:
Change in appetite Denies. Chills Denies. Fatigue Denies. Fever Denies. Night sweats Denies. Sleep disturbance Denies. Weight gain Denies. Weight loss Denies. Weakness Denies. Excessive

## Reason for Appointment

1. Low back pain

## History of Present Illness

New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

Per FCE that was done on 3/1/24 at Optimal Therapy, results were **valid**, **consistent**, and patient was placed in the **sedentary** physical

BORUCHOWITZ, David **DOB:**

Thirst Denies. Low Sex Drive Denies.
Ophthalmologic:
Blurry vision Denies. Change in vision Denies.
ENT:
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
Respiratory:
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.
Cardiovascular:
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
Gastrointestinal:
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
Hematology:
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
Allergy / Immunology:
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
Genitourinary:
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.
Neurologic:
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
Psychiatric:
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

demand category, and does **NOT** meet job requirements.

He previously saw Dr. Cash who recommended to continue injection therapy, he does not want to pursue surgical options at this point.

He continues with diclofenac and baclofen, denies side effects, providing some benefits.

Patient reports VAS 7-8/10 today.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve

BORUCHOWITZ, David **DOB:**

roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.
L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.
L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.
.

## Vital Signs

BP: **128/85** mm Hg, HR: **66** /min, RR: **15** /min, Temp: **98.2** F, Wt: **259** lbs, Wt-kg: 117.48 kg.

## Examination

General Examination:
General appearance: well developed, well nourished.
Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat..
Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).
Sensory: intact BLE.
Reflexes: WNL BLE..
Psych: alert, oriented, cooperative with exam.
Head: normocephalic, atraumatic .
Eyes: extraocular movement full and smooth.
Heart: regular rate and rhythm.
Lungs: no cough or signs of respiratory distress.
Chest: normal chest wall expansion.
Abdomen: soft, nontender, nondistended.
Skin: normal.
Extremities: no edema.
Ears: normal appearance.
Nose: normal appearance, no external masses or lesions.
Oral cavity: mucosa moist .

## Assessments

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

BORUCHOWITZ, David **DOB:**

## Treatment

**1. Others**

Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0
Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Continue diclofenac 75mg BID PRN inflammatory pain.
-Continue baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief.
-He is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase.
-He is s/p bilateral L3, L4, L5 radiofrequency ablation on 12/11/23, reporting limited relief.
-Per FCE that was done on 3/1/24 at Optimal Therapy, results were **valid**, **consistent**, and patient was placed in the **sedentary** physical demand category, and does **NOT** meet job requirements.
**-MMI, stable, ratable.**
-F/U PRN.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

BORUCHOWITZ, David **DOB:**

**Visit Codes**
99213 Office Visit, Est Pt., Level 3.

**Follow Up**
prn



**Electronically signed by PETER SU , MD on 04/17/2024 at 10:22 AM PDT**

**Sign off status: Completed**

---

**Su Spine and Sports (SUNSET)**
**9260 W SUNSET RD**
**STE 306**
**LAS VEGAS, NV 89148-4903**
**Tel: 702-779-3994**
**Fax: 888-464-0838**

---

OPTIMAL THERAPY AN AFFILIATED COMPANY

# Physical Therapy Initial Eval/Discharge

**Date of Visit:** 03-01-24
**Patient Name:** Boruchowitz, David
**Patient #:** 0004767

**Therapist:** Davin Christensen, DPT
**Referring MD:** Peter Su,

**Date of Birth:**
**Age:** 43

**Certification Period:** 03-01-24 - 03-01-24

**Date of Onset:** 04-09-22

**Diagnosis:**

M54.59 Other low back pain
M54.16 Radiculopathy, lumbar region
M62.81 Muscle weakness (generalized)

**Subscriber ID:** CCMSI W/C Subscriber ID: 22J11K236563

**SUBJECTIVE:**
David Boruchowitz is a 43 year old male who presents to therapy today for evaluation of Bilateral Work Services - Functional Cap. The patient was referred by Peter Su, . SEE FULL REPORT FOR FCE INFO

**Presenting Problems:**

**OBJECTIVE:**

**ACTIVITY LOG:**

| Service Based Activities | Comment | Status | Time | Done Today | CPT |
|---|---|---|---|---|---|
| Evaluation | | Active | | Yes | Evaluation |

**ASSESSMENT:**
SEE FULL FCE REPORT ATTACHED.

| Goals | Short-Long | Time Frame | Result | Comment |
|---|---|---|---|---|
| 1 x visit - Patient has a good understanding of their outlined FCE Report | | | New | |

**Assessment of Complexity:**

Medical and Therapy History: 1-2 personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems was completed using standardized tests and measures addressing 3 or more elements from any of the following: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: Evolving clinical presentation with changing characteristics.
Clinical Decision Making: Moderate complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.

Based on the documented information above, the patient complexity is determined to be moderate.**PLAN:**
**Primary Discharge Reason**
No Services Needed

PT REFERRED FOR FUNCTIONAL CAPACTIY EVALUATION

Thank you for this referral.

Best regards,

Davin Christensen, DPT License #: 2804
This document was electronically signed on 03-05-24 at 06:38a by Davin Christensen DPT .

OPTIMAL THERAPY AN AFFILIATED COMPANY

## Plan of Care

## PHYSICAL THERAPY PLAN OF CARE

**Date:** 03-01-24
**Patient Name:** David Boruchowitz
**Patient Number:** 0004767
**Date of Birth:**

**Referral Source:** Peter Su,
**Date of Onset:** 04-09-22
**Certification Period:** 03-01-24 - 03-01-24
**Case:** PT002

**Diagnosis:**

| | |
|---|---|
| M54.59 | Other low back pain |
| M54.16 | Radiculopathy, lumbar region |
| M62.81 | Muscle weakness (generalized) |

**ASSESSMENT:**
SEE FULL FCE REPORT ATTACHED.

**PLAN:**
The patient will be seen 1 time per week for 1 week, for a total of 1 visit.

**Primary Discharge Reason**
No Services Needed

| Goals | Short-Long | Time Frame | Result | Comment |
|---|---|---|---|---|
| 1 x visit - Patient has a good understanding of their outlined FCE Report | | | New | |

Davin Christensen, DPT License #: 2804
This document was electronically signed on 03-05-24 at 06:38a by Davin Christensen DPT .

This is just for your information - signature not required.

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 29, 2024

DR. JOSH WELTHA
RELEASE OF INFORMATION
1151 NV-160
PAHRUMP, NV 89048

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Patient: David Boruchowitz
DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 01/01/2024 to Present |
| Diagnostic Test Results | 01/01/2024 to Present |

Current state statutes for Nevada: For paper copies: the cost of the copy, not to exceed $0.60. A reasonable fee may be charged for X-rays. The cost of postage may be charged.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950**.

***Payment Options:***

☐ ***Credit Card***

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

**Authorization Agreement**

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

**Account Information**

Name of Financial Institution: ______________________

Routing Number: ______________________

Account Number: ______________________

Authorized Signature: ______________________ Date: ______________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Denise Jimerson
Assisting on behalf of Savannah Eddy
800-423-2765 X 6932
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

   Date of Birth: ______________ Social Security Number: ______________

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).

3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** [signature] **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ______________

ADDRESS: ______________ (Street) PHONE NO: ______________

______________ (City) (State) (Zip Code)

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 29, 2024

DR. BRIAN SU
RELEASE OF INFORMATION
9260 W SUNSET RD #306
LAS VEGAS, NV 89148

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Patient: David Boruchowitz
DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 01/01/2024 to Present |
| Diagnostic Test Results | 01/01/2024 to Present |

****Please fill out all forms that are attached****

Current state statutes for Nevada: For paper copies: the cost of the copy, not to exceed $0.60. A reasonable fee may be charged for X-rays. The cost of postage may be charged.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950**.

***Payment Options:***

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

☐ ***Credit Card***

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** *(*Please complete the below)

Direct Deposit Agreement

**Authorization Agreement**

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

**Account Information**

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ______________________________________ Date: ________________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Denise Jimerson
Assisting on behalf of Savannah Eddy
800-423-2765 X 6932
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Enclosure(s): Abilities Form

Lincoln Financial Group®

**Please Return Response To:**
**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# ABILITIES FORM

**(PLEASE see FRAUD NOTICES attached)**

Patient Name: David Boruchowitz ____________________ Date of Birth: _ ____________

Occupation: ____________________ Claim Number: 1230082409

Date of Last Office Visit: ____________________ Date of Next Office Visit: ____________

☐ **The patient does not have functional/limitations or restrictions**

Provider's Signature:____________________ Date:____________________

Provider Printed Name:____________________ Degree: ☐ MD ☐ DO Other____________

Specialty:____________________ Phone:____________________

**OR**

☐ **The patient has the following functional/limitations or restrictions:**

| Lift/Carry | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) |
|---|---|---|---|---|
| 0 - 10 lbs. | | | | |
| 11 - 20 lbs. | | | | |
| 21 - 35 lbs. | | | | |
| 36 - 50 lbs. | | | | |
| 51 - 100 lbs. | | | | |

| The patient may: | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) | |
|---|---|---|---|---|---|
| Sit | | | | | |
| Stand | | | | | |
| Walk | | | | | |
| Climb | | | | | |
| Bend | | | | | |
| Kneel | | | | | |
| Drive | | | | | |
| Finger | | | | | R / L / Both |
| Handle | | | | | R / L / Both |
| Operate Foot Controls | | | | | R / L / Both |
| Reach above the shoulder | | | | | R / L / Both |

Are there environmental factors that the patient should avoid? ☐Yes ☐No Specify:____________________

Specific Limitations or Restrictions not noted above:____________________

____________________

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud and Warning Statements.

Provider's Signature:____________________ Date:____________________

Provider Printed Name:____________________ Degree: ☐ MD ☐ DO Other____________

Specialty:____________________ Phone:____________________

Address:_ ____________________

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

   Date of Birth: ______ Social Security Number: ______

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).

3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** [signature] **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ______

ADDRESS: ______ (Street) PHONE NO: ______

______ (City) (State) (Zip Code)

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 29, 2024

OPTIMAL THERAPY
RELEASE OF INFORMATION
9050 W CHEYENNE AVE #210
LAS VEGAS, NV 89129

Re: Policy Number: 000010177363000000
Claim Number: 1230082409
Patient: David Boruchowitz
DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 01/01/2024 to Present |
| Diagnostic Test Results | 01/01/2024 to Present |

Current state statutes for Nevada: For paper copies: the cost of the copy, not to exceed $0.60. A reasonable fee may be charged for X-rays. The cost of postage may be charged.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT.**

Payment instructions:

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

- **We must have your Tax Identification Number (TIN) & NPI.**
- **Please fax this remittance form and records to 1-877-843-3950**.

***Payment Options:***

☐ ***Credit Card***

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

- If you accept a credit card, ***payment can be made immediately*** upon receipt of your invoice.

☐ ***Direct Deposit*** (Please complete the below)

Direct Deposit Agreement

Authorization Agreement

We hereby authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to initiate automatic deposits to our account at the Financial Institution named below. We also authorize Lincoln Financial Group / The Lincoln National Life Insurance Company to make withdrawals from this account in the event that a credit entry is made in error.

Further, we agree not to hold Lincoln Financial Group / The Lincoln National Life Insurance Company responsible for any delay or loss of funds due to incorrect or incomplete information supplied by us or by our financial institution or due to an error on the part of our financial institution in depositing funds to our account.

This agreement will remain in effect until Lincoln Financial Group / The Lincoln National Life Insurance Company received a written notice of cancellation from us or our financial institution, or until we submit a new direct deposit form.

Account Information

Name of Financial Institution: ______________________________

Routing Number: ______________________________

Account Number: ______________________________

Authorized Signature: ______________________________ Date: ____________________

☐ ***Checks Only*** (Please note that pre-payment via check could delay payment by up to 30 days)

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

Sincerely,

Denise Jimerson
Assisting on behalf of Savannah Eddy
800-423-2765 X 6932
Coordinator, Clinical Support
The Lincoln National Life Insurance Company

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

Date of Birth: ______ Social Security Number: ______

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).
3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609
4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.
5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.
7. A photocopy of this Authorization is to be considered as valid as the original.
8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** [signature] **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ______

ADDRESS: ______ (Street) PHONE NO: ______

______ (City) (State) (Zip Code)

REF #23316560

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 25, 2024

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

We wish to notify you of the need for proof of continued disability regarding your Long Term Disability claim.

**TOTAL DISABILITY BENEFIT**. The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:

1. is Totally Disabled;
2. becomes Disabled while insured for this benefit;
3. is under the Regular Care of a Physician; and
4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

We have submitted requests for copies of medical records from Drs. Josh Weltha, Brian Su and Optimal Therapy for the dates of 01/01/2024 through current. Please contact their office and complete any additional authorizations that would be required.

As stated in your policy, benefits are payable when proof of continued disability and regular care of a physician are given to the Company. We have made the request to your physicians on your behalf. Please see that the necessary information is submitted to our office within 30 days.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #23316560

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Lincoln Financial Group

# Long Term Disability Claim Form Physician's Statement

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number |
|---|---|---|---|
| David | E | Boruchowitz | |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| 5'11 | 235 | 142/90 | Nye County |

## 2. Diagnosis

Primary ICD diagnostic Code **(Required)**: M 54-50

Primary ICD diagnosis Description: Low Back Pain

Secondary ICD Diagnosis Code:

Secondary ICD Diagnosis Description:

**Pregnancy** First Treated: __/__/__ Estimated Delivery: __/__/__ Date of Delivery: __/__/__ ☐ Vaginal ☐ C-Section

Symptoms: Limited mobility due to lumbar injury and continued pain as a result of a work related motor vehicle accident.

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings): Thoraculumbar musculoligamentous injury, circumferential disc bulge and annular fissure, clinical facet medical pain, clinical discogenic pain generator.

## 3. Disability Circumstances - *Check if applicable*

☐ Illness ☒ Injury ☒ Work Related

If work related or injury, summarize circumstances: During a search and rescue operation patient rolled an off-highway vehicle numerous times. Patient sought treatment immediately at the hospital for the back injury and has remained under care of several medical professionals since that time.

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 04/09/2022 | 04/09/2022 | 07/10/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 04/09/2022 | 04/24/2024 | 07/24/2024 |

Dates hospital confined: 04/09/2022 to 04/10/2022

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Long Term Disability Claim Form Physician's Statement

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 4. Limitations and Restrictions

Lumbar restrictions, no law enforcement activity.

Restrictions (what the patient SHOULD NOT do)

No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs freq or 20lbs occasionally.

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | O | Standing | O | Crouching | O | Overhead | N |
| 6-10 lbs. | O | Walking | O | Crawling | O | Desk Level | N |
| 11-25 lbs. | O | Sitting | F | Grasping | O | Below Waist | N |
| 26-50 lbs. | O | Balancing | O | Climbing | O | | |
| 51-100 lbs. | O | Stooping | O | Pushing | O | | |
| 100 + lbs. | O | Kneeling | O | Pulling | O | | |
| | | Fingering | O | Bending | O | | |

Not able to return to work in law enforcement capacity.

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

Date patient experienced loss of Cognitive Functioning: ____/____/________

## 5. Treatment

Patient had a Functional Capacity Evaluation conducted on 03/01/2024 and the evaluator stated, "Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time". Patient has been seeing Su Spine and Sports. On 04/ 17/2024 patient had his last appointment and Dr. Su identified he is at maximum medical improvement and recommended cessation of care. I will continue monitoring and evaluating patient for additional treatment options.

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

## 6. Prognosis

Patient saw Dr. Su at Su Spine and Sports on 4/17/2024 and Dr. Su said he is at maximum medical improvement and recommended cessation of care. I will continue monitoring and evaluating patient, however, at this time based on the medical professional evaluations which I concur with patient is not able to return to work.

Describe the patients prognosis for recovery

I will see patient regularly.

Describe ongoing treatment frequency

Patient not to return to work at this time.

Patient able to return to work Full-Time on:

____/____/________ to ____/____/________

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

## 7. Physician's Information

Name: Joshua Weltha, Spring Mountain Medical

Street Address: 1151 Nevada Highway 160

City: Pahrump State: NV Zip Code: 89048

Phone Number: 702-703-3351 Fax Number: 775-727-9452

Signature: [signature] PA-C Date: 04/24/24

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

# Functional Capacity Evaluation

**Patient Name:** David Boruchowitz

**Date:** 03-01-2024
**Dx:** LBP /c Radiculopathy

## History:

Mr. David Boruchowitz is a 43 year old male who reports having low back pain /c R LE radiculopathy that is frequent and recurring. He reports that on April 9th, 2022 he was riding an ATV and sustained a rollover accident injuring his back. He reports going to the ER that same day for treatment. David states that he never lost consciousness and underwent a variety of tests including x-rays and CT scans which reportedly revealed a lumbar strain and lower lumbar disc bulges. David reports that he was eventually referred to his Dr which then referred him to Pain Management, Chiropractic services, and an Orthopedic surgeon. None of these helped reduce his sx's and in the meantime he was working for the Nye County Sheriff's Department as a Captain. David states that he was not able to complete his normal work tasks but also reports that he was limited /c some tasks because of pre-existing B shoulder pathologies. David states that he also was referred to physical therapy services on/about June of 2022 where he received a home exercise program and he indicates that those exercises did not help reduce pain/sx's. He states that he underwent 3 injections over the course of 18 months and in December of 2023 he underwent an ablation procedure that he reports made things worse in his back /c increased pain. David states that his pain levels are typically around 5-6/10. He reports that he has been retired since October 12th of 2023 and has not returned to any form of work. David also mentioned that he was in a "fender bender" in November of 2023 but that it didn't affect how he is feeling in his back as sx's have been painful and made his work and personal life increasingly difficult. David states that he can walk up to approx ½ mile on flat ground and then his R LE sx's will increase in intensity. David has reportedly lost approx 23 lbs in the last few months and that has not improved his sx's. He indicates that he is not able to return to work and the lingering pain and issues in his low back and R LE have affected his ability to function at home and continues to be a lingering problem for nearly 2 years since the ATV incident. He knows that he is at the physical therapy clinic today to undergo a functional capacity evaluation and states that he will give a full and consistent effort.

**Reason for Referral:**

Mr. Boruchowitz is being referred for a Functional Capacity Evaluation in order to determine his overall physical capabilities and tolerances, and to determine any physical barriers that may prevent him from returning to work.

**Evaluation Results:**

The results of this evaluation are considered **valid**; Mr. Boruchowitz exhibited a full and consistent effort during the evaluation.

Mr. Boruchowitz demonstrated the physical capabilities to function **at the SEDENTARY Physical Demand Level,** as outlined by the U.S. Department of Labor, **which involves being able to exert up to 5-10 pounds of force occasionally**

**OR a NEGLIGENT amount of force to frequently PUSH, PULL, CARRY, LIFT or OTHERWISE MOVE objects, including the human body (self). Sedentary work involves sitting most of the time, but may involve walking at times. This is a general classification and this report must distinguish that** Mr. Boruchowitz **demonstrated difficulty performing most activities that he was asked to perform in the clinic. Most notably, crouching, squatting, lifting, carrying, pushing, pulling, and any prolonged task that involved sitting, standing, and/or walking.** (Please refer to the *'Physical Activity Sheet'* on the last page of this report for a summary of Mr. Boruchowitz's overall physical capabilities and tolerances.)

**Recommendations:**

Mr. Boruchowitz does not appear to be a good candidate to return to the workforce at this time, primarily due to multiple issues with his low back and R LE. He also demonstrated difficulty with frequent, occasional, and rarely lifting, pushing, pulling, squatting, kneeling, prolonged standing, walking tasks. Mr. Boruchowitz had frequent pain levels above 7-8/10 during evaluation. On more than one occasion he had to cease a particular activity/task because of R LE cramping and increased pain and would limp around for 30-60 seconds while he worked it out. Even at the SEDENTARY level Mr. Boruchowitz would struggle to complete some prolonged sitting tasks as that exacerbates his sx's after approximately 20-25 minutes. This would be under the approval of his treating physician.

There was a formal Job Description at the time of this evaluation, however it did not indicate any type of physical demands other than a statement that said "physical and mental requirements described here are representative of those that must be met by an employee to successfully perform the essential functions of the job." It also states "Normal law enforcement patrol and administrative duties–lifting and subduing citizens."

This evaluation was to determine if the individual is able to safely and realistically return to the workforce. Below is a summary of some job related tasks that Mr. Boruchowitz was asked to perform and the results.

| Job Activity | Able to perform | Unable to perform |
|---|---|---|
| Frequent standing | | √ Achieved occasional tolerance. |
| Frequent sitting | | √ Achieved occasional tolerance. |
| Occasional carrying | | √ Achieved occasional tolerance. |
| Occasional lifting | | √ Can't lift above shoulder level. |
| Frequent walking | | √ Achieved occasional tolerance. |

**Conclusion:**

Mr. Boruchowitz's current functional abilities and musculoskeletal findings demonstrate that he **cannot return to full work activity.** He exhibited functional deficits with the necessary standing, walking, pushing/pulling, lifting, carrying,

sitting, and squatting tolerances that are required to perform most essential job demands.

Mr. Boruchowitz exhibited **significant** deficits upon the Musculoskeletal Exam, which would have a negative impact on his overall level of physical functioning.

## Significant Musculoskeletal Findings:

1. Palpation: Tender throughout the lower thoracic and lumbar spinal segments and paraspinals, right > left. Pt also has tenderness to R glute and piriformis musculature.
2. Lumbar AROM: Limited to ~70% of normal flexion, 15% normal extension, and 65% of bilateral side flexion with increased pain reported in the low back with most movements.
3. Strength: 3+/5 gross static strength of the core/abdominal musculature. 4-/5 /c lumbar side bending.
4. Observation: Significantly guarded, antalgic movement patterns with lifting, carrying, pushing, pulling, and with most position changes.
5. Waddell's Signs: Negative.

## General Condition:

| | | |
|---|---|---|
| **Resting heart rate** | **71** | **Beats/min** |
| **Resting blood pressure** | **NT** | **S/d** |

**Body Composition**

| | |
|---|---|
| **Total body weight** | **238 lbs** |
| **Height** | **5 feet, 9 inches** |
| **Body mass index** | **35.1** |

## Consistency Measurements:

**Observed vs. Measured**

- I did not note any self limiting behavior during the evaluation, as he consistently performed outlined tasks to the best of his ability, even if symptoms were reportedly increasing with each task.

**Questionnaire Scores (***Actual questionnaires are available upon request.)*

- Scored 23/50 on the Modified Oswestry, 46% indicating a high level of perceived disability.

**Clinician Conclusions**
Mr. Boruchowitz exhibited consistent objective deficits and pain mannerisms as well as subjective complaints in combination with physiological responses (i.e. increased heart rate and on 2 occasions stopping a task because he displayed increased pain and discomfort in the R LE with increased pain complaints). He has given an overall full and consistent effort during this evaluation, and as such the conclusions are considered **valid.**

## Functional Performance:

**Sitting:**
Mr. Boruchowitz demonstrated frequent weight shifting with sitting lasting longer than 15-20 min of time. He exhibited occasional tolerance to this activity.

**Standing:**
Mr. Boruchowitz exhibited occasional weight shifting and antalgic postures with prolonged standing, lasting longer than 10-15 min. He exhibited occasional tolerance to this activity.

**Walking:**
Mr. Boruchowitz performed continuous walking on a treadmill for ~10 minutes at a speed of 1.6 to 1.8 mph, with a progressively antalgic gait and objective pain mannerisms noted, particularly on the R LE. He exhibited occasional tolerance to this activity.

**Stooping:**
Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with sustained and repetitive bending/stooping postures, with objective pain mannerisms noted. He exhibited very limited tolerance to this activity.

**Twisting:**
Mr. Boruchowitz demonstrated moderately guarded, antalgic movement patterns with repetitive twisting/trunk rotation, with objective pain mannerisms noted. He exhibited occasional tolerance to this activity.

**Squatting:**
Mr. Boruchowitz was not able to perform more than 1 or 2 squatting tasks/activities as he demonstrated moderately to severely guarded, antalgic movement patterns with repetitive functional squatting, favoring the R LE at times. He exhibited very limited/rare tolerance to this activity.

**Lift/Carry:**
Mr. Boruchowitz demonstrated the ability to perform a **2-hand OCCASIONAL lift/carry of 5-10#** from a table to a counter at chest level for a distance of 90 feet for a

total of 5-6 minutes at a time. He exhibited moderately guarded, antalgic movement patterns with this activity, particularly with floor level lifting. He exhibited occasional tolerance to this activity.

**Reaching:**
Mr. Boruchowitz is unable to reach above approximately 90 to 95 degrees in the sagittal and coronal planes d/t previous shoulder pathologies. He was not able to perform reaching overhead tasks.

**Grasping/Handling:**
Mr. Boruchowitz demonstrated frequent tolerance and some mild functional deficits with right/left hand repetitive grasping/handling activities. His primary limitations dealt with prolonged sitting or standing while performing these tasks.

**Abdominal strength test:**
Mr. Boruchowitz exhibited poor overall dynamic abdominal and core strength and control when performing functional tasks.

If you have any questions regarding this evaluation, please call 775-727-3838.
Thank you for this referral.

Sincerely,

Dave Christensen, DPT
License: #2804
Optimal Therapy, an Affiliated Therapy Company
Davin Christensen, PT, DPT

# Functional Activity Sheet

| Functional Activities | Constant 66% - 100% | Frequent 33% - 65% | Occasional 1% - 33% | Unable to Performed | Comments |
|---|---|---|---|---|---|
| Sitting | | | X | | Frequent weight shifting and antalgic postures noted. Tolerated ~20 minutes |
| Standing | | | X | | Frequent weight shifting and antalgic postures noted with prolonged standing. Tolerated ~12-15 minutes |
| Walking | | | X | | Progressively antalgic gait right LE with prolonged walking. Tolerated ~10-15 minutes |
| Climbing | | | | Not Tested | Not Tested |
| Stooping | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Twisting | | | X | | Generally poor tolerance with repetitive twisting. Tolerated 5-8 minutes. |
| Squatting | | | X | | Moderately guarded, antalgic movement patterns with repetitive squatting. Tolerated 1-2 repetitions. |
| 2-Hand Lift/Carry | | | 5, 10# chest carry x 90 ft. | | Moderately antalgic movement patterns, particularly w/ floor level lifting. Tolerated ~8 minutes. |
| 2-Hand Push/Pull | | | X | | Generally poor tolerance with repetitive stooping/ bending. Tolerated 3-5 minutes. |
| Grasping/ Handling | | Right/Left Hand. | | | Mild right/left hand functional deficits with forceful, repetitive grasping. |
| Reaching | | | | Right/Left UE | Moderate to severe right/left UE deficits with repetitive reaching, particularly above shoulders. He is unable to reach overhead |
| Core/Abdominal Strength | | | | X | Poor overall dynamic core stability w/ functional activities. |

Lincoln Financial Group®

**The Lincoln National Life Insurance Company,** PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Claimant/Patient Name: Boruchowitz (Last) David (First) E (Middle)

   Date of Birth: ______________ Social Security Number: ______________

2. Information to be released:
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage; and
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, Retirement Income, financial, earnings and employment history).

3. Information to be released to: The Lincoln National Life Insurance Company
   PO Box 2609
   Omaha, NE 68103-2609

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for disability benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by the company, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing the claimant with wellness, disability or leave related services as part of an employer sponsored benefit plan
   - to the employer for self-insured disability plans; or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by the federal HIPAA Privacy Rule. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

**SIGNATURE:** [signature] **DATE:** 04/20/2024

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient: ______________

ADDRESS: ______________ (Street) PHONE NO: (

______________ (City) (State) (Zip Code)

REF #23212364

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 19, 2024

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in reference to your claim for Long Term Disability benefits.

As part of our ongoing review, we need to request additional information to determine your eligibility for continued benefits. Please complete and return the following form(s):

- Authorization- Please hand sign this form
- Abilities form to be completed by your provider
- Treating Medical Professional Form

You have the following options to return any forms or medical information related to your claim:

**Email:** DisabilityClaims@lfg.com

**Fax:** (877) 843-3950

**Online Disability Claims Portal:** If you haven't already checked out our secure portal, you'll want to do so. Here you can access information and upload documents to support the processing of your claim. You can visit www.LincolnFinancial.com to register.

**Mail To:**

Lincoln Financial Group
PO Box 2609
Omaha, NE 68103-2609

This information must be returned to our office no later than 05/19/2024 to avoid interruption of your Long Term Disability benefits.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #23212364

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure(s): Abilities Form
General Authorization
TMP Form

**LETTER MAY REQUIRE AMENDING BEFORE RELEASE TO EMPLOYER DUE TO PHI!!!!**
**REVIEW BEFORE CC'ING THE ER**

REF #23212364

**Please Return Response To:**
**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

## ABILITIES FORM

**(PLEASE see FRAUD NOTICES attached)**

Patient Name: David Boruchowitz Date of Birth: _

Occupation: ______ Claim Number: 1230082409

Date of Last Office Visit: ______ Date of Next Office Visit: ______

☐ **The patient does not have functional/limitations or restrictions**

Provider's Signature:______ Date:______

Provider Printed Name:______ Degree: ☐ MD ☐ DO Other______

Specialty:______ Phone:______

**OR**

☐ **The patient has the following functional/limitations or restrictions:**

| Lift/Carry | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) |
|---|---|---|---|---|
| 0 - 10 lbs. | | | | |
| 11 - 20 lbs. | | | | |
| 21 - 35 lbs. | | | | |
| 36 - 50 lbs. | | | | |
| 51 - 100 lbs. | | | | |

| The patient may: | Never (0%) | Occasionally (1 - 33% of day) | Frequently (34 - 66% of day) | Constantly (67 - 100% of day) | |
|---|---|---|---|---|---|
| Sit | | | | | |
| Stand | | | | | |
| Walk | | | | | |
| Climb | | | | | |
| Bend | | | | | |
| Kneel | | | | | |
| Drive | | | | | |
| Finger | | | | | R / L / Both |
| Handle | | | | | R / L / Both |
| Operate Foot Controls | | | | | R / L / Both |
| Reach above the shoulder | | | | | R / L / Both |

Are there environmental factors that the patient should avoid? ☐Yes ☐No Specify:______

Specific Limitations or Restrictions not noted above:______

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud and Warning Statements.

Provider's Signature:______ Date:______

Provider Printed Name:______ Degree: ☐ MD ☐ DO Other______

Specialty:______ Phone:______

Address:_ ______

REF #23212364

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

REF #23212364

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Name of Insured: ______________________________
   (Last) (First) (Middle)

   Date of Birth: ____________________ Social Security Number: ____________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____________________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME**: ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

REF #23212364

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

REF #23212364

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

**TREATING MEDICAL PROFESSIONALS (PLEASE see FRAUD NOTICES attached)**

CLAIMANT NAME: David Boruchowitz CLAIM NUMBER: 1230082409

**PLEASE LIST ALL PROVIDERS INCLUDING DOCTORS (CHIROPRACTORS, ALTERNATIVE MEDICINE), PHARMACIES, HOSPITALS, AND DIAGNOSTIC CLINICS FOR THE DATES __________ TO__________**

**DOCTORS:**

Name: ________________ Specialty: ________________ Name: ________________ Specialty: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Seen: ________ to ________ Dates Seen: ________ to ________

Name: ________________ Specialty: ________________ Name: ________________ Specialty: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Seen: ________ to ________ Dates Seen: ________ to ________

**PHARMACIES:**

Name: ________________ Name: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates: ________ to ________ Dates: ________ to ________

**HOSPITALS:**

Name: ________________ Name: ________________
Address: ________________ Address: ________________
City: ________ State: ________ Zip Code: ________ City: ________ State: ________ Zip Code: ________
Phone: ________________ Fax: ________________ Phone: ________________ Fax: ________________
Dates Confined: ________ to ________ Dates Confined: ________ to ________

**MEDICAL CARRIERS:** Please provide the name of your medical carrier(s) (ex: Aetna, United Healthcare) for dates identified at top of form. If you have more than one carrier during this period of time, please list this information on the back of this form).

Name: ________________ Policy Number: ________________
Address: ________________ Member ID: ________________
City: ________ State: ________ Zip Code: ________ Dates of Coverage: ________ to ________
Phone Number: ________________ Fax Number: ________________

**PLEASE MAKE SURE TO INCLUDE THE OFFICE NAME, PHONE NUMBER, ADDRESS, CITY, STATE AND FAX NUMBER (IF POSSIBLE). PLEASE LIST ALL DOCTORS, PHARMACIES & HOSPITALS FOR YOUR CURRENT CONDITION FOR THE DATES INDICATED ABOVE. PLEASE USE THE BACK OF THE FORM IF MORE ROOM IS NEEDED TO LIST THIS INFORMATION. COMPLETE INFORMATION IS NEEDED TO AVOID DELAY ON YOUR CLAIM.**

The above information is true and complete to the best of my knowledge and belief.

Employee's Signature ______________________________ Date ________________

REF #23212364

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

**Date Ordered**
02/09/2024

**Date Completed**
02/14/2024

## CASE DETAILS

**Case ID:** 1230082409

**Claim Type:** N/A

**Date of Loss:** 07/10/2023

## PARTY INFORMATION



**Name:** David Boruchowitz

**Alias:** N/A

**DOB:**

**Gender:** Male

**Address:** N/A N/A N/A

**Phone:**

**Email:** N/A

**Employment:** Police Captian at Nye County

**School:** N/A

## Social Media

**2** Accts
**1** Acct
**2** Accts
**1** Acct
**1** Acct
**1** Acct
**1** Acct
**1** Acct
**1** Acct
**1** Acct
**0** Acct

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

# SECTION 3 - SOCIAL MEDIA

Identified Accounts

| Social media platform | Notes |
|---|---|
| **FACEBOOK**  | **Identified Account:** https://www.facebook.com/david.boruchowitz<br>Match found by first and last name and location based on a relative (Stephanie Boruchowitz) from Searchpeoplefree as seen on the likes on this post. |
| **FACEBOOK**   | **Identified Account:** https://www.facebook.com/david.boruchowitz.37<br>Match found by first and last name and common friend (Charles Boruchowitz) as seen on the 1st identified Facebook account. |
| **INSTAGRAM**  | **Identified Account:** https://www.instagram.com/davidboruchowitz<br>Match found by first and last name and facial match. |
| **TWITTER**  | **Identified Account:** https://www.twitter.com/LTDBoruchowitz<br>Match found by first and last name and facial match. |
| **TWITTER**   | **Identified Account:** https://www.twitter.com/DBoruchowitz<br>Match found by first and last name and followed by a Facebook friend (Vickie Bruno) as seen on this post. |
| **YOUTUBE**   | Identified on public YouTube videos. No personal match found.<br>Match found by first and last name and facial match.<br>Video 1<br>Video 2<br>Video 3<br>Video 4<br>Video 5<br>Video 6<br>Video 7<br>Video 8<br>Video 9<br>Video 10<br>Video 11 |

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

Video 12
Video 13
Video 14
Video 15
Video 16
Video 17
Video 18
Video 19
Video 20

---

**LINKEDIN**



**Identified Account:** https://www.linkedin.com/in/davidboruchowitz

Match found by first and last name and facial match.

---

**TIKTOK**



**Identified Account:** https://www.tiktok.com/@dboruchowitz

Match found by first and last name and facial match.

---

**PINTEREST**



**Identified Account**: https://www.pinterest.com/boruchowitz

Match found by first and last name and facial match.

---

**GOOGLE**




Match found by first and last name, location, and age.

411
Whitepages
Radaris
Mylife
Spokeo
Persontrust
Truepeoplesearch
Searchpeoplefree

Match found by first and last name and facial match.

Rocketreach

Match found by first and last name, location, and nature of work (Police Captain).

Reviewjournal
Pvtimes
Reviewjournal (2)
Pvtimes
Fox5vegas
8newsnow
Kpvm
Cops
Fox5vegas
Ground
8newsnow (2)
News3lv
Cops
Casetext
Livep
[ressreader

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

Ktnv
Caselawfindlaw
Bjaojp
Wsj
Mynews4
News3lv
News3lv (2)
Casetext
Knsl
Flippinonline
Bja
Oven2table
Destinationsalinas
Knpr
Ktnv
Kesq
Goldmyne
Sacbee
Atmycrib
Nyecountynv
Lasvegassun
Msn
Msn (2)
Theintelligencer
Nyecountynv (2)
Yahoo
Lasvegassun
Rgj
Thenevadaindependent
Foxreno
Times-standard
Tri-cityherald
Washingtontimes
Mcwgame88
Ctvnews

**SOUNDCLOUD**



**Identified Account:** https://www.soundcloud.com/david-boruchowitz

Match found by first and last name and facial match.

**REDDIT**

NO PHOTO

Identified on a public Reddit post. No personal match found.

Match found by first and last name, location, and nature of work (Police Captain).

**VENMO**

NO PHOTO

**Possible Account:** https://account.venmo.com/u/dboruchowitz

Possible match found by first and last name and same username (DBoruchowitz) as seen on the identified TikTok account.

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

| Background Data | Notes |
|---|---|
| **CRIMINAL RECORDS** | None found. |
| **TRAFFIC INFRACTIONS** | None found. |
| **CIVIL CASES AND JUDGMENTS** | None found. |
| **LIENS** | None found. |
| **CURRENT PROPERTY DEEDS AND ASSETS** | None found. |
| **FORECLOSURE RECORDS** | None found. |
| **CURRENT VEHICLE INFORMATION** | **Current Vehicle Information:**<br><br>Registered: 09/01/2020 to 06/07/2026<br>2020 COTC -Series: UTILIT<br>VIN: 4YMBU1420LN017366<br>Body Style: 4 Wheel -Vehicle Type: Unknown<br>Color: Unknown<br>Most Current Owner/Registrant/Lien Information - 09/01/2020 to 06/07/2026<br>Title Holders<br>6944 (NYE COUNTY) |

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

Title Number: NV012773317 4
State Titled In: NV
Original Title Date: 07/22/2020
Title Transfer Date: 07/22/2020
Lien Holders
None Found
Lessors
None Found
Registrant
DAVID EARLE BORUCHOWITZ
Registered: 09/01/2020 to 06/07/2026
Addresses Registered to While owned by DAVID EARLE BORUCHOWITZ
PO BOX 1366, PAHRUMP, NV 89041-1366 (NYE COUNTY)

6944 (NYE COUNTY)

Registrant
DAVID EARLE BORUCHOWITZ
Registered: 11/20/2023 to 06/07/2026
Addresses Registered to While owned by DAVID EARLE BORUCHOWITZ
PO BOX 1366, PAHRUMP, NV 89041-1366 (NYE COUNTY)
(11/20/2023)

2023 HONDA -Series: TOURING -Model: CIVIC
VIN: 2HGFE1F95PH300728
Body Style: SEDAN 4 Door 5P -Vehicle Type: Passenger Car
Weight: 3077 lbs -Length: 183.3"
Color: Unknown
Doors: 4
MSRP: $30,350
Plant: ALLISTON, ONTARIO, CANADA
Restraint Type: DRIVER AND FRONT PASSENGER FRONT AND KNEE AIRBAGS WITH PASSENGER SENSING DEACTIVATION, AND FRONT AND REAR SIDE AND SIDE CURTAIN AIRBAGS.
Gross Vehicle Weight Range: 4001-5000
Height: 55.7
Width: 70.9
Wheel Base: 107.7
Wheel Dimensions: 18.0 X 8.0
Drive Type: FWD
Fuel:GAS 12.4 Gallon
Engine:1.5L INLINE4 TURBO
Transmission: 7 Speed CONTINUOUSLY VARIABLE

Most Current Owner/Registrant/Lien Information - 12/25/2022 to 12/25/2024
Title Holders

6944 (NYE COUNTY)

Title Number: ET01560520З1
State Titled In: NV
Original Title Date: 02/21/2023
Title Transfer Date: 02/21/2023
Lien Holders
AMERICAN HONDA FINANCE CORP.
PO BOX 997509, SACRAMENTO, CA 95899-7500 (SACRAMENTO COUNTY)
Lessors
None Found
Registrant
DAVID EARLE BORUCHOWITZ
Registered: 12/25/2022 to 12/25/2024
Addresses Registered to While owned by DAVID EARLE

6944 (NYE COUNTY)

2021 RAM -Series: BIG HORN~LONE STAR -Model: 1500
VIN: 1C6RREBT3MN828139
Body Style: EXTENDED CAB 4 Door -Vehicle Type: Passenger Car
Weight: 4775 lbs -Length: 228.9"
Doors: 4
MSRP: $37,290

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

Plant: STERLING HEIGHTS, MICHIGAN
Restraint Type: DRIVER AND FRONT PASSENGER FRONT AND SIDE IMPACT AIRBAGS WITH OCCUPANT SENSING DEACTIVATION, AND FRONT AND REAR SIDE CURTAIN AIRBAGS
Gross Vehicle Weight Range: 6001-7000
Gross Vehicle Weight Rating: 7100
Height: 77.6
Width: 82.1
Wheel Base: 140.5
Wheel Dimensions: 18.0 X 8.0
Max Payload: 2300
Drive Type: 4X2
Fuel:GAS 23.0 Gallon
Engine:5.7L V8 NATURALLY ASPIRATED
Transmission: 8 Speed AUTOMATIC

Registrant
DAVID EARLE BORUCHOWITZ
Registered: 11/20/2023 to 11/20/2024
Addresses Registered to While owned by DAVID EARLE BORUCHOWITZ
6944 (NYE COUNTY)

Registrant
BREATHEASY ADMINISTRATIVE SERV
Registered: 11/20/2023 to 11/20/2024
Addresses Registered to While owned by BREATHEASY
6944 (NYE COUNTY)
(11/20/2023)

Title Holders
JOYCE DESIRRI ROMERO
6160 E H S LN, PAHRUMP, NV 89061-8849 (NYE COUNTY)
Title Number: NV016092588 7
State Titled In: NV
Original Title Date: 08/02/2023
Title Transfer Date: 08/02/2023
Lien Holders
None Found
Lessors
Registrant
JOYCE DESIRRI ROMERO
Registered: 01/15/2022 to 01/15/2024
Addresses Registered to While owned by JOYCE DESIRRI ROMERO
PO BOX 4743, PAHRUMP, NV 89041-4743 (NYE COUNTY) (03/10/2022 to 01/04/2023)
6160 E H S LN, PAHRUMP, NV 89061-8849 (NYE COUNTY) (01/15/2022)

## DRIVER'S LICENSE INFORMATION

**Driver's License Information:**

DAVID EARLE BORUCHOWITZ

8-9197 (NYE COUNTY)

ears ago

, NV 89048-8263 (NYE COUNTY)

ears ago

CLAIMS BUREAU USA, INC.
PO Box 2936, Woburn, MA 01888 • 800-651-0460

## UTILITIES

None found.

## PROFESSIONAL LICENSES

None found.

## UCC FILINGS

None found.

## US BUSINESS AFFILIATIONS

**US Business Affiliations:**

Business Details
BREATHEASY PROPERTIES LLC (Primary)
)(02/12/2021 to
11/04/2023)

Business Details
DAVID E BORUCHOWITZ (Primary)
COUNTY)(2013 to
ddress

## VOTER REGISTRATION

**Voter Registrations:**

Name: DA
Address: COUNTY)
Date o
DOB: (73)
Party:
Gender: Male

Name: DA
Address: )
Date of Re
DOB: (43)
Party:
Phone:

)
Date o
DOB: (43)
Party: Lie
Phone:
Gender: M

CLAIMS BUREAU USA, INC.

PO Box 2936, Woburn, MA 01888 • 800-651-0460

## POSSIBLE EMPLOYERS

**Possible Employers:**

Business Name: BREATHEASY ADMINISTRATIVE SERVICES LLC (01/31/2024)

Business Name: BREATHEASY PROPERTIES LLC (06/01/2022 to 11/04/2023)
Address: 2161 KEENAN WAY, PAHRUMP, NV 89048 (NYE COUNTY)

Business D E BORUCHOWITZ (06/05/2021)
Phone: ( (ET) DAVID E BORUCHOWITZ
Address (TOMPKINS COUNTY)

Busines COUNTY (04/25/2019)
Phone: (PT) NYCOUNTY

## ADDRESS HISTORY

**Address History:**

to

2 to

021 to

/05/2022)
to

to

Y)(07/1998

1/19/2015)
/1999 to

06/08/2005

3/26/2008)
1/01/2006 to

7/05/2006

/2004 to

OUNTY)

## DEATH RECORDS

None found.

## RECREATIONAL LICENSES

None found.

**Possible Phone Numbers Associated with the Subject:**

(PT)(LandLine)(86%)
8 (ET)(Mobile)(66%)

## PHONE NUMBERS

(66%)
e)(66%)
ne)(40%)
ne)(40%)
ne)(39%)
e)(39%)
ne)(39%)
e)(3%)

## EMAIL ADDRESSES

**Email Addresses Associated with the Subject:**

dboruchowitz@fltg.net (100%)
breatheasy@fltg.net (100%)
dboruchowitz@hotmail.com (100%)
dboruchowitz@att.net (66%)
wce@clarityconnect.com (65%)
editor@tfh.com (65%)
dboruchowitz@twcny.rr.com (56%)
boruch@clarityconnect.com (42%)
wdigiusto@comcast.net (40%)
wanttopamperyou@gmail.com (40%)

## ENTITY INFORMATION

### ENTITY INFORMATION

| | | | |
|---|---|---|---|
| **Entity Name:** | BREATHEASY PROPERTIES LLC | **Entity Number:** | E12159922021-7 |
| **Entity Type:** | Domestic Limited-Liability Company (86) | **Entity Status:** | Active |
| **Formation Date:** | 02/03/2021 | **NV Business ID:** | NV20212007530 |
| **Termination Date:** | | **Annual Report Due Date:** | 2/29/2024 |
| **Compliance Hold:** | | **Series LLC:** | **Restricted LLC:** |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| **Name of Individual or Legal Entity:** | Douglas Bruce Nelson | **Status:** | Active |
| **CRA Agent Entity Type:** | | **Registered Agent Type:** | Non-Commercial Registered Agent |

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

**Street Address:** 2161 Keenan Way, PAHRUMP, NV, 89048, USA

**Mailing Address:** PO BOX 1366, Pahrump, NV, 89041, USA

**Individual with Authority to Act:**

**Fictitious Website or Domain Name:**

**OFFICER INFORMATION**

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|---|---|---|---|---|
| Managing Member | David Boruchowitz | | 02/03/2021 | Active |
| Managing Member | Douglas Bruce Nelson | , USA | 02/03/2021 | Active |

**Page 1 of 1, records 1 to 2 of 2**

Filing History Name History Mergers/Conversions

Return to Search Return to Results

**FILING HISTORY**

**ENTITY INFORMATION**

| | | | |
|---|---|---|---|
| **Entity Name:** | BREATHEASY PROPERTIES LLC | **Entity Number:** | E12159922021-7 |
| **Entity Type:** | Domestic Limited-Liability Company (86) | **Entity Status:** | Active |
| **Formation Date:** | 02/03/2021 | **NV Business ID:** | NV20212007530 |
| **Termination Date:** | | **Annual Report Due Date:** | 2/29/2024 |
| **Compliance Hold:** | | **Series LLC:** | **Restricted LLC:** |

FILING HISTORY DETAILS

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | # of Pages | View |
|---|---|---|---|---|---|---|---|
| 02/03/2023 | 02/03/2023 | 20232929049 | Annual List | | External | 2 | |
| 08/10/2022 | 08/10/2022 | 20222541527 | Amended List | | External | 2 | |

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | # of Pages | View |
|---|---|---|---|---|---|---|---|
| 01/10/2022 | 01/10/2022 | 20222014107 | Annual List | | External | 2 | |
| 02/03/2021 | 02/03/2021 | 20211215993 | Initial List | | External | 2 | |
| 02/03/2021 | 02/03/2021 | 20211215991 | Articles of Organization | | External | 3 | |

**Page 1 of 1, records 1 to 5 of 5**

Back Return to Search Return to Results

REF #21681579

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 28, 2023

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

As you know, you have been approved for Long-Term benefits. As part of this review the Social Security team reviews claims to determine if claimants are eligible to apply for Social Security Disability. Currently, we do not believe that you are a good candidate for Social Security Disability Income (SSDI) benefits. Our assessment indicates that you may be able to return to work in your own occupation or to work in a lessor occupation before you reach eligibility for SSDI benefits.

We will continue to review your claim periodically for any change in status that might make you eligible for SSDI benefit consideration.

If you filed for SSDI benefits on your own, you are required to disclose this to Lincoln, and provide us with proof of your application for those benefits or a SSDI Approval Letter (Notice of Decision letter) if approved for Social Security benefits.

If you have any questions regarding this letter, please contact me at 1-800-423-2765, ext. 2787.

Sincerely,

Lori Jones
800-423-2765 *2787
Claims Examiner II, Social Security
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial Group
Group Protection

Candra Bell, MS, LPC, CRC
Vocational Rehabilitation Consultant

# OCCUPATIONAL ANALYSIS

| | |
|---|---|
| **Claimant Name:** | David Boruchowitz |
| **Claim Number:** | 1230082409 |
| **Claims Specialist:** | SAAED9 |
| **Employer:** | Nye County |
| **Date of Report:** | 12/27/2023 |

An Occupational Analysis was requested to compare the following:

**JOB:**

| | |
|---|---|
| Resources: | Job Description |
| Title: | Operations Captain |
| Duties: | 1. Directs operations and reviews requests for assistance, staffing and equipment; develops financial status and other reports and submits to management; determines the effectiveness of work units in meeting the goals and objectives of the departments and divisions.<br>2. Reviews requests for services and assigns to the appropriate division, section or unit ensuring proper staffing and resources are available; coordinates assignments based on changes in priorities, equipment and resources in relation to current assignments and activities, available personnel, and budgetary constraints.<br>3. Directs Lieutenants, Sergeants, Deputies and Dispatchers in law enforcement activities by planning, organizing and reviewing operations and paperwork generated. Provides management oversight and guidance to the Operations Division, Detention Division and others as assigned.<br>4. Performs spot checks and patrols designated areas monitoring and supervising subordinates to insure law enforcement services are provided.<br>5. Directs operations and takes command of personnel during demonstrations.<br>6. Develops and maintains cooperative relationships with State and federal law enforcement agencies, community organizations, the judicial system and other state agencies by responding to inquiries or requests for services and questions regarding policy and procedure; establishes agreements regarding joint operations, staffing levels, and investigative operations.<br>7. Assists in preparation of Sheriff's Office budget, monitors budget, and attends all budget hearings as requested by the Sheriff.<br>8. Prepares specifications for bids, prepares notifications for the securing of bids for items to be purchased by Sheriff's Office.<br>9. Oversees and maintains recordkeeping and reporting systems by developing and ensuring proper policy and procedures are utilized; tracks and maintains information; develops security policy and procedures and reviews requests for |

| | |
|---|---|
| | information; authorizes the release and dissemination of material in accordance with legal requirements and division policy.<br>10. Reviews and approves reports before submission to the D.A. office and/or other agencies as assigned.<br>11. In the absence or incapacity of I.A. Investigators, performs I.A.'s as required and/or recommends appropriate disciplinary action when assigned.<br>12. Provides interpretation of department and division policies and procedures to the general public and news media, public officials, or on a statewide basis, to other agencies as directed; releases information to the local media concerning division operations, arrests, seizures and related incidents as appropriate.<br>13. Reviews applications for employment, assigns background investigations, interview applicants, conducts pre-testing of applicants, and provides recommendations to Sheriff.<br>14. Oversees, conducts, coordinates in-house audits, develops after action plans, identifies corrective actions, lessons learned, provides reports to management and implements approved actions and lessons learned; assists and coordinates out of house audit activities, develops corrective actions and coordinates with county, state, and federal entities to satisfy corrective actions and identifies and assists in the implementation of lessons learned and prepares the documents for the Sheriff's signature.<br>15. Conducts studies pertinent to assignments and reviews requests for services throughout the State; makes recommendations regarding new or expanded programs, future goals and objectives, staffing levels and equipment needs, and submits recommendations and proposals for review.<br>16. Reviews and analyzes statistical data and records regarding division activities; participates in the development of department and division goals and objectives, long-range plans and programs, budgets, department and division policy and procedure, and legislation and its implementation.<br>17. Trains, supervises and evaluates the performance of subordinate staff; participates in the applicant screening process; assess staff development and training needs and counsels staff in work-related activities, professional growth, and career development.<br>18. Receives and adjusts complaints from the public, in coordination with or in the absence of the Undersheriff, when needed, conducts investigations and/or recommends appropriate disciplinary action in situations where employees fail to meet standards or comply with agency policies and regulations;<br>19. Attends variety of meetings on behalf of Sheriff and provides updates as directed.<br>20. Performs peace officer and other related duties as assigned. |
| Level: | N/A |
| Demands: | Normal law enforcement patrol and administrative duties—lifting and subduing citizens. |

**<u>OCCUPATION</u>:**

| | |
|---|---|
| Resources: | (DOT: 375.167-034; O*NET: 33-1012.00; ERI: 375.167-034) |
| Title: | Police Captain, Precinct |

| | |
|---|---|
| Duties: | Directs and coordinates activities of members of police force assigned to precinct or patrol division: Conducts roll call of officers at beginning and end of tour of duty. Explains general orders, special messages, and decisions of POLICE CHIEF (government ser.) 375.117-010 to subordinates. Assigns force members to designated posts. Informs members of command of changes in regulations and policies, implications of new or amended laws, and new techniques of police work. Submits report on condition of precinct or police station house and equipment and on daily precinct or patrol activities to superiors. Investigates charges of inefficiency or neglect of duty against force members and files charges based on evidence. Recommends merit awards for subordinates. Investigates charges filed against private citizens by complainants before issuing arrest orders. Reads and forwards reports of subordinates to POLICE CHIEF (government ser.). May review activity reports prepared by police personnel for quantity and quality of work performance. May read and answer police correspondence. May write and submit police press releases to media. May issue city permits signed by POLICE CHIEF (government ser.) for parades, street vendors and petitioners. May assign and work with ADMINISTRATIVE ASSISTANT (any industry) 169.167-010 to prepare budget of department. May be designated according to assignment as Chief, Airport Safety And Security (government ser.); Police Lieutenant, Precinct (government ser.); Police Sergeant, Precinct (government ser.) II.<br>Alternate Titles: Captain; Commanding Officer, Precinct; District Captain; Patrol Commander; Precinct Captain; Uniform-Force Captain |
| Level: | **L-Light Work** - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible. |
| Demands: | • Frequent: Sitting,<br>• Occasional: Reaching- all directions, Standing, Walking, Handling/Gripping/Grasping, Fingering/Typing/Keyboarding,<br>• Not Present: Bending/Stooping, Kneeling, Crouching/Squatting, Crawling, Climbing, Balancing, |

**CLAIMS SPECIALIST PHYSICAL REQUIREMENT REQUESTS (IF ANY):**
N/A

**SUMMARY:**
The occupation is performed at the light physical demand level. Resources utilized included: (DOT: 375.167-034; O*NET: 33-1012.00; ERI: 375.167-034)

I have not met with the Insured for the purpose of this review. All opinions are based on a review of resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

***Electronically Signed,***
Candra Bell, MS, LPC, CRC
License Professional Counselor
Certified Rehabilitation Counselor
Vocational Rehabilitation Consultant
Group Protection
Lincoln Financial Group

REF #21608540

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 22, 2023

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is to advise your claim for Long Term Disability benefits has been approved.

The policy does have a 90 day elimination period during which no benefits are payable. After satisfaction of this elimination period, benefits for your claim would begin on 10/08/2023. Your first benefit payment will be issued on 12/26/2023 and will cover the period of disability from 10/08/2023 to 12/08/2023.

Subsequent payments will be issued on or around day 8 of each month. Disability benefits will be payable as long as you continue to meet the terms of the policy.

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim. Please complete the enclosed Disability Payment Options form.

**YOUR BENEFIT AMOUNT**

Based on the information provided to our office, we have calculated your basic monthly earnings as $12,324.00. Your benefit will equal 60.0% of your basic monthly earnings or $6,000.00, subject to a maximum policy benefit of $6,000.00 per month, minus other sources of income. Please see the "Other Sources of Income" portion of this letter for further explanation. The policy under which you are covered also contains a minimum monthly benefit of the greater of $100.00 or 10% of your monthly benefit amount.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #21608540

## OTHER SOURCES OF INCOME

Other Sources of Income may reduce your monthly Long Term Disability benefit. Other Sources of Income include, but are not limited to:

- Social Security
- Worker's Compensation
- Short Term Disability and/or State Disability Income
- Pension or Retirement Income
- Part-time earnings

If you receive other sources of income, you are required to notify our office immediately and send us copies of your award letters.

## HOW LONG YOUR CLAIM MAY BE PAID

The policy limits benefits to 24 months for the condition causing your disability. Please refer to the policy for further details of this limitation under "Specified Injuries or Sicknesses Limitations".

## TAXES AND DIRECT DEPOSIT

If your employer pays all or a portion of the premium for your disability coverage, your benefits could be taxable and subject to Federal Income Tax (FIT). If you did not elect a FIT deduction on your initial claim form submission and you wish to have a FIT deduction, you must complete a W-4S form and return it to our office. W-4S forms can be obtained from the Internal Revenue Service website, www.irs.gov. Current Internal Revenue Service regulations have established a minimum withholding amount of $88.00 per month. You may have more withheld if you wish. Please note, we are unable to withhold FIT if your benefits are not taxable even if you indicated this election on your claim form.

If all or part of your benefits are taxable, Federal Income Contributions Act (FICA) taxes are mandatory for any payments issued during the first six full months of disability. These taxes will be automatically calculated and deducted from your monthly benefit payments issued during that time period.

The Lincoln National Life Insurance Company offers electronic funds transfer for your convenience. This will eliminate mail delays and ensure your payment is deposited directly into your bank account on the date it is due each month. If you did not elect electronic funds transfer on your initial claim form, you may call our 800 number listed in this letter to initiate the direct deposit. You also can sign up for direct deposit on our website, www.LincolnFinancial.com.

Please contact us at the number listed below or at Claims@LFG.com with any questions.

**Get to know Lincoln's Online Disability Claims Portal**
If you haven't already checked out our secure portal, you'll want to do so. It is a great resource for information about the status of your claim and is always available. Here you can access forms, check claim and payment status, report your return to work, and upload documents to support the processing of your claim. You can visit www.LincolnFinancial.com to register.

REF #21608540

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure(s): REHAB SURVEY

REF #21608540

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# REHABILITATION SURVEY

**(PLEASE see FRAUD NOTICES attached)**

Date of Request: 12/22/23

| | |
|---|---|
| Policy # 00001017736300000 | Employer Nye County |

## Information About Yourself

| | |
|---|---|
| Name: | Phone Number: |
| Address: PO Box 2609 Omaha, NE 68103-2609 | |
| | |
| Social Security Number: | Date of Birth: |

## Education History

| | | |
|---|---|---|
| Highest Grade Completed 1 2 3 4 5 6 7 8 9 10 11 12 GED | Year Completed: | G.P.A.: |
| College 1 2 3 4 AS BA BS MA MS PhD Major: | Year Completed: | G.P.A.: |
| Vocational Training: | | |
| | | |
| Certifications Held: | | |

## Military

| | | |
|---|---|---|
| Year: From ________ to ________ | Rank: | Job Title. |
| Responsibilities: | | |
| | | |
| | | |

## Vocational History

| | |
|---|---|
| Please fill out completely and be as specific as possible starting with the most recent employer.<br>If you have a resume, please attach and return. This information is important in determining what services may be available to you. | |
| Job Title: | Employer: |
| Dates: From ________ to ________ | Wage: hourly/monthly/yearly |
| Job Tasks/Duties/Special Training (include supervisory responsibilities): | |
| | |
| | |
| Reason for leaving: | |

| | |
|---|---|
| Job Title: | Employer: |
| Dates: From ________ to ________ | Wage: hourly/monthly/yearly |
| Job Tasks/Duties/Special Training (include supervisory responsibilities): | |
| | |
| | |
| Reason for leaving: | |

REF #21608540

**Vocational History Continued**

| | |
|---|---|
| Job Title: | Employer: |
| Dates: From ________ to ________ | Wage: hourly/monthly/yearly |
| Job Tasks/Duties/Special Training (include supervisory responsibilities): | |
| | |
| | |
| Reason for leaving: | |

| | |
|---|---|
| Job Title: | Employer: |
| Dates: From ________ to ________ | Wage: hourly/monthly/yearly |
| Job Tasks/Duties/Special Training (include supervisory responsibilities): | |
| | |
| | |
| Reason for leaving: | |

**Activities of Daily Living:**

How long can you continuously: Sit? _________ Stand? _________ Walk? _________ Drive? _________

How far can you: Walk? _________ Drive? _________

How much weight can you safely lift/carry?

| | Never | Occasionally (0-33%) | Frequently (36-66%) | Constantly (67-100%) |
|---|---|---|---|---|
| 0-10 lbs. | | | | |
| 11-20 lbs. | | | | |
| 21-50 lbs. | | | | |
| 51-100 lbs. | | | | |
| over 100 lbs. | | | | |

How often can you do the following? (use the following codes) N = Never; O = Occasionally; F = Frequently; C = Constantly

Climb? ______ Balance? ______ Stoop? ______ Kneel? ______ Crouch? ______ Crawl? ______ Reach? ______

Perform repetitive movements? Hands? ______ Feet? ______

Describe how your disability impacts your ability to work:

Describe any hobbies, recreational activities or special interests you have:

How does your disability impact your ability to engage in recreational interests?

REF #21608540

**Medical Information**

| Describe your current medical problems and how they prevent you from working: |
|---|
| |
| |
| |
| |
| Names and addresses of current doctors (please indicate what they are treating you for and your next scheduled appointment) |
| |
| |
| |
| Names, dates and addresses of hospitals you have been in for your current disability: |
| |
| |
| |
| |
| Names and dosages of current medications: |
| |
| |
| |
| What special equipment do you use (wheelchair, cane, TENS unit, brace, etc.)? |
| |
| |
| |
| |
| Describe the measures your physician is taking to assist you in returning to work: |
| |
| |
| |
| |

**Benefit Information:**

| List the amount of benefits you are receiving for (include effective dates): | | |
|---|---|---|
| Social Security | Workers Compensation: | State Disability: |
| VA Benefits: | Retirement: | Other: |
| If you do not receive Social Security benefits, have you applied and what is the status? | | |
| | | |
| | | |
| | | |

REF #21608540

**Rehabilitation Activities**

| |
|---|
| Are you or have you ever participated in a Vocational Rehabilitation program through any state, federal or local agency? If so, please provide name, address, phone number, services received and counselors name: |
| |
| |
| |
| Status of above services (active, discontinued, etc.). Be specific and give details: |
| |
| |
| |
| Describe how you feel about returning to work (i.e. scared, anxious, excited, reluctant, etc.): |
| Why? |
| |
| |
| Describe what you will require to return to your regular occupation: |
| |
| |
| |
| If you do not feel you will be able to return to work in your regular occupation, what other occupations are you interested in? |
| |
| |
| |
| Are there any other conditions that will affect your ability to return to work? Please explain: |
| |
| |
| |
| Are you interested in Vocational Rehabilitation to assist you in returning to work? |

**Additional Comments**

| |
|---|
| |
| |
| |
| |

The above Statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud Warning Statements.

Signature ______________________________________Date __________________________________

Thank you for completing this survey. Once we have reviewed, if appropriate, we will contact you to discuss in more detail and determine what services may be available to you in your pursuit of returning to meaningful employment.

The Lincoln National Life Insurance Company
Claims Department

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

REF #21608540

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti’go Diné bizaad, saad bee áká’ánida’áwo’dę́ę́’ t’áá jiik’eh, ná hóló̜. Koji̜’ hódíílnih áo̜i̜óóo̜éa̜á̜o̜aíę́ę.

Date: Fri Dec 22 13:40:18 CST 2023
From: Savannah Eddy <Savannah.Eddy@lfg.com>
To: rgott@co.nye.nv.us
Message-ID: <848343462.3.1703274018550.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge®

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

December 22, 2023

NYE COUNTY
ATTN Ryanne Gott
2101 E. Calvada Blvd.
Suite 150
Pahrump, NV 89048

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear :

This letter is to inform you of the Long Term Disability claim filed by Boruchowitz has been approved beginning on 10/08/2023.

A detailed letter has been sent to Mr. Boruchowitz explaining how the benefits are administered. Due to the confidential nature of the approval documentation, we are unable to provide you with a copy of the actual letter sent.

Please notify us immediately should the employee return to work.

The LTD waiver of premium will take effect the first of the month following or coinciding with 10/08/2023.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**Retirement Board**

Mark Stevens
Chair
Brian A. Wallace
Vice Chair

Jessica Colvin
Dawn E. Huckaby
Todd H. Ingalsbee
Norma Santoyo
Cameron Wagner

**Executive Staff**

Tina Leiss
Executive Officer

Kabrina Feser
Operations Officer

Steve Edmundson
Chief Investment
Officer

December 15, 2023

David E Boruchowitz

6944

Dear Mr. Boruchowitz:

This letter is in response to your request for verification of the contributions in your member account. PERS members may have a combination of contribution types in the system. The information listed below reflects the contributions in your account based on payroll postings through July 23, 2023.

- Your employee contributions total $157,336.42. Employee contributions are refundable only upon your termination of all covered employment.
- Your employer contributions paid on your behalf total $550,510.03 *(total of ERPD and ERS contributions)*. Employer-paid contributions are not refundable.
- Your employee tax deferred rollover contributions total $ 0.00. Tax deferred employee contributions are refundable only upon your termination of all covered employment.

A refund of contributions cancels your membership and all rights to any future benefits. NRS 286.670 states that contributions cannot be used as collateral to secure a loan, nor can they be assigned by power of attorney.

Should you have any questions please contact us and ask to speak with a Counseling Services representative.

Sincerely,

Connie L Miller
Counseling Services Division

693 W. Nye Lane
Carson City, NV 89703
(775) 687-4200
Fax: (775) 687-5131

Toll Free: 1-866-473-7768
Website: www.nvpers.org

5740 S. Eastern Avenue, Suite 120
Las Vegas, NV 89119
(702) 486-3900
Fax: (702) 678-6934

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| Nye County | David Boruchowitz | 1230082409 |

| | | | |
|---|---|---|---|
| **Report Date:** | 12/05/2023 | | |
| **Referred By:** | Karryn Nettell | **Claimant DOB:** | |
| **Referral Date:** | 11/29/2023 | **Job Title:** | Police Captain |
| **Due Date:** | 12/14/2023 | **Medical/ Surgical Condition:** | Low back pain |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 07/08/2023 |
| | | **DOD:** | 07/10/2023 |
| **Physical Demands:** | | **BBD:** | 10/08/2023 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Referral Questions**

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

**Response:**
Low back pain (M54.5)
Lumbar strain (S39.012)
Degeneration of lumbar intervertebral disc (M51.36)

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

**Response:**
Type 2 diabetes mellitus (E11)
Obesity (E66.9)

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 07/10/2023 to 11/282023, and comment on the expected duration.

**Response:**
The medical evidence supports impairments affecting usual life activities, including work-related activities. The support includes the claimant's report of ongoing lower back pain since a roll over OHV accident while on the job as a police officer on 04/09/2022; symptoms initially consistent with a lumbar strain/sprain injury; imaging showing some lumbar disc

disease with some foraminal narrowing; examinations consistent with lumbar facet disease; and treatment including chiropractic, and recent (11/06/2023) lumbar facet injections with good transient relief, with plans for lumbar facet radiofrequency ablation as of the most recent documentation provided.

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:

- sitting frequently with intermittent brief change in position for comfort
- standing/walking occasionally
- lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
- fingering, handling, typing and reaching at desk level and overhead unrestricted
- bending, stooping, crouching, kneeling and reaching below waist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and with additional intervention. However, it seems unlikely that his capacity will expand beyond allowing for improvement in tolerance for sitting and standing/walking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records will document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls would be reasonable.

I found no clinical evidence for medication or other treatment side effects, or other identifiable conditions that support additional impairment or additional restrictions or limitations beyond those outlined above.

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If "No" please explain in the comment section below).

**Response:**
The limited extent of physical therapy received by the claimant seems outside usual standard of care, and it seems that interventional management was delayed. Otherwise, the claimant appears to have received treatment that is consistent with the standard of care for the apparent level of severity of the condition.

6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

**Response:**
None were identified from the records that were reviewed.

7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:

**Name: Dr. Peter Su Phone Number: 1 (702) 779 3994 ex ----- Fax Number: 888-464-0838**

**Name: Joshua Weltha, PA-C Phone Number: 1 (702) 703 3351 ex ----- Fax Number: 775-727-9452**

**Response:**
No AP contact was attempted as it was felt likely to be noncontributory and the records adequately support the R&Ls outlined above.

**Additional Questions**

Other What is the prognosis for recovery and timeframe for clinical follow up?

**Response:**
This has been addressed in response to referral question 3.

**Brief Overview of Clinical Presentation and Course**

The medical records indicate that the claimant is a 43-year old man who last worked on 07/08/2023. He has reported ongoing lower back pain since a roll over OHV accident while on the job as a police officer on 04/09/2022. Symptoms were consistent with a lumbar strain/sprain injury and imaging has shown some lumbar disc disease with some foraminal narrowing. Treatment has included chiropractic, and recent (11/06/2023) lumbar facet injections with good transient relief. Lumbar facet radiofrequency ablation was planned as of the most recent documentation provided. His past medical history is also remarkable for diagnoses of type 2 diabetes mellitus, sleep apnea and obesity. Past surgical history is remarkable for cholecystectomy, and bilateral shoulder surgeries.

Supporting documents are as follows:

The records include an employer's report of industrial injury noting that the claimant was involved in an off road vehicle roll over accident on 04/10/2022.

A single physical therapy visit of 06/22/2022 for low back pain indicated that the claimant was provided a home exercise program and no further visits were planned.

A document filed under chiropractic records with unclear signature indicated the claimant had been released to modified duty on 06/08/2022 with no bending at waist, no stooping and no lifting.

A form completed by A Jusle, NP on 09/27/2022 indicated that the claimant was released to full duty with no restrictions.

Records from Alexander Janda, DC and associate at Advanced Spine & Rehabilitation indicate that the claimant was seen initially on 11/16/2022 with complaints of mid and lower back and rib cage pain. The pain was increased with lying down, pushing his son in a wheelchair, lifting, walking, prolonged sitting, standing and travel. He was assessed with thoracic and lumbar sprains and back muscle spasms. There is documentation of several treatments to 01/25/2023. Visit notes resumed on 06/30/2023 with multiple subsequent visits, with the most recent note provided being from 08/09/2023. The claimant reported ongoing symptoms with some improvement. His score on the Oswestry low back pain questionnaire was 42% (moderate disability), and in the same range as at the initial visit. It was indicated that care was transferred to pain management. A restrictions form was completed as follows:

– 08/09/2023 – unable to work due to mid and lower back and rib cage pain

Records from Peter Su, MD (PM&R) at Su Spine & Sports begin with a follow-up visit on 09/05/2023. The claimant complained of ongoing lower back pain. It was indicated he had been prescribed but not yet started diclofenac and baclofen, and he received the injection noted below without relief. He was assessed with lumbar sprain and lumbar disc disease. Procedures provided were as follows:

– 08/28/2023 - bilateral L4-5 and L5-S1 transforaminal epidural steroid injections
– 11/06/2023 – bilateral L4-5 and L5-S1 facet joint injection

At the most recent visit records provided of 11/13/2023, the claimant reported ongoing lower back pain, and noted he had 95% initial pain relief from the most recent injection. Examination noted full lumbar range with pain, diffuse lower back tenderness, positive lumbar facet loading, and normal lower extremity strength, sensation and reflexes.. The doctor recommended L3, L4 and L5 radiofrequency ablation.

Records from Andrew Cash, MD (orthopedics) at Desert Institute of Spine Care inivolve a consult visit note from 09/18/2023. The claimant complained of back pain without radicular symptoms. An OHV roll over accident on 04/09/2022 was noted. Treatment had included chiropractic and pain management. Examination noted a BMI of 35, pain with lumbar extension and flexion, tenderness of the lumbar paraspinals, normal lower extremity strength, sensation and reflexes, pain with SI joint provocation but unremarkable with compression, and negative straight leg raising. Imaging was reviewed. He was assessed with lumbar disc disease and facet syndrome. The doctor recommended lumbar medial branch blocks. Restrictions were advised of no repetitive bending, twisting, stooping crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally.

Records from Joshua Weltha, PA-C (primary care) at Spring Mountain Medical involve only a restrictions form as follows:

– 11/14/2023 – no repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 pounds frequently or 20 pounds occasionally and no law enforcement activity due to low back pain

Pertinent diagnostics include the following:

– 04/10/2022 - CT of the chest showed no evidence of acute intrathoracic injury

– 04/10/2022 - CT of the abdomen/pelvis showed no acute intraabdominal injury; and hepatic steatosis
– 04/10/2022 - CT of the cervical spine showed no acute abnormality
– 04/10/2022 - CT of the brain showed no acute intracranial abnormality
– 06/01/2022 – X-rays of the lumbar spine showed multilevel degenerative disc disease
– 12/13/2022 – MRI of the lumbar spine showed mild multilevel degenerative changes worst at L5-S1 where there was minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspended abutment of the bilateral descending S1 nerve roots; and levocurvature of lumbar spine

A completed claimant activities questionnaire was not provided.

**Analysis of Medical Documentation and Support for Responses to Referral Questions**

The medical records indicate that the claimant has reported ongoing lower back pain since a roll over OHV accident while on the job as a police officer on 04/09/2022. Symptoms were consistent with a lumbar strain/sprain injury and imaging has shown some lumbar disc disease with some foraminal narrowing. Examinations have been consistent with lumbar facet disease. Treatment has included chiropractic, and recent (11/06/2023) lumbar facet injections with good transient relief. Lumbar facet radiofrequency ablation was planned as of the most recent documentation provided.

See above for conclusions regarding reasonable R&Ls.

**Records Reviewed:**
All medical records referred by Lincoln Financial Group as of today's date were reviewed, including the most recent records in the file.

Electronically Signed

Martin D. Hoffman, M.D.
Board Certified in Physical Medicine & Rehabilitation

REF #21310501

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

November 28, 2023

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

On 10/23/2023 we received your claim for Long Term Disability benefits and advised that we were in the process of reviewing your claim. In order to be eligible for benefits under the policy, you must satisfy all of the provisions of the policy and be disabled throughout and beyond the Elimination Period.

We are approaching our initial deadline for making a decision on your claim. Our decision is currently pending due to pending the determination from the medical review.

For these reasons, we require a 30 day extension of time to make a determination on your claim. You can expect to receive a decision from us within 30 days or notification that an additional extension is required.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial Group®

# Long Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

| | | | |
|---|---|---|---|
| Full Name (First): David | (M.I.): E | (Last Name): Boruchowitz | Social Security Number: |
| Height: 5'11 | Weight: 245 | Blood Pressure: 138/86 | Employer Name: Nye County |

## 2. Diagnosis

Primary ICD diagnostic Code **(Required)**: M54.50

Primary ICD diagnosis Description: Low back Pain

Secondary ICD Diagnosis Code:

Secondary ICD Diagnosis Description:

Pregnancy ~~__/__/__ First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery ☐ Vaginal ☐ C-Section~~

Symptoms:
Limited mobility due to lumbar injury and continued pain as a result of a work related motor vehicle accident.

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings):
Thoracolumbar musculoligamentous injury, circumferential disc bulge and annular fissure, clinical facet medical pain, clinical discogenic pain generator.

Radiologist report of lumbar x-ray and MRI attached.

## 3. Disability Circumstances - *Check if applicable*

☐ Illness ■ Injury ■ Work Related

If work related or injury, summarize circumstances:
During a search and rescue operation patient rolled an off-highway vehicle numerous times. Patient sought treatment immediately at the hospital for the back injury and has remained under care of several medical professionals since that time.

Date of:

| | | |
|---|---|---|
| Symptoms first Appeared: 04/09/2022 | Reduced Ability to work: 04/09/2022 | Advised to stop work: 07/10/2023 |
| Initial Treatment: 04/09/2022 | Most Recent Treatment: 11/14/2023 | Next Treatment: 11/21/2023 |

Dates hospital confined: 04/09/2022 to 04/10/2023

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group®

# Long Term Disability Claim Form Physician's Statement

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 4. Limitations and Restrictions

Lumbar restrictions, no law enforcement activity.

Restrictions (what the patient SHOULD NOT do)

No repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 lbs freq or 20lbs on occasion.

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66%_C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | F | Standing | ___ | Crouching | ___ | Overhead | ___ |
| 6-10 lbs. | F | Walking | ___ | Crawling | ___ | Desk Level | ___ |
| 11-25 lbs. | O | Sitting | ___ | Grasping | ___ | Below Waist | ___ |
| 26-50 lbs. | O | Balancing | ___ | Climbing | ___ | | |
| 51-100 lbs. | N | Stooping | ___ | Pushing | ___ | | |
| 100 + lbs. | N | Kneeling | ___ | Pulling | ___ | | |
| | | Fingering | ___ | Bending | ___ | | |

Not able to return to work in law enforcement capacity.

What job modifications would allow the patient to return to work?

## 5. Treatment

Patient is currently undergoing epidural steroid injection with the last one being administered 11/6, with no positive effect. Patient is currently pending approval and scheduling of radiofrequency ablation (Rhizotomy) by Su Spine & Sports and is anticipated to be completed within 30 days. Patient is under care of multiple providers for this injury.

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

## 6. Prognosis

Patient is being treated by Advanced Spine & Rehabilitation, Su Spine & Sports, and Desert Institute of Spine Care and myself. As patient's primary care provider and based on review of their records I concur that he will not be able to meet the physical requirements of his law enforcement career, hence his medical retirement

Describe the patients prognosis for recovery

## 7. Physician's Information

Joshua Weltha, Spring Mountain Medical
Name

1151 Nevada Highway 160
Street Address

Pahrump — City | NV — State | 89048 — Zip Code

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ___/___/______

Dressing ___/___/______

Transferring ___/___/______

Bathing ___/___/______

Toileting ___/___/______

Eating ___/___/______

Date patient experienced loss of
Cognitive Functioning: ___/___/______

Patient is seeing several providers monthly.
Describe ongoing treatment frequency

Patient not to return to work in law enforcemen
Patient able to return to work Full-Time on:

___/___/______ to ___/___/______

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

702-703-3351 — Phone Number | 775-727-9452 — Fax Number

[signature] PA-C — **Signature** | 11/14/23 — **Date**

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

SU SPINE & SPORTS

**Boruchowitz, David**

43 Y old Male, DOB:
Account Number: 10896
6944
Home:
Guarantor: Boruchowitz, David Insurance: CCMSI Payer
ID: PAPER
Referring: Peter Su, MD
Appointment Facility: Su Spine and Sports (SUNSET)

**09/05/2023** **Peter S Su, MD**

### Current Medications
Unknown
- Diclofenac Sodium 75 MG Tablet Delayed Release 1 tablet as needed Orally Twice a day
- Baclofen 10 MG Tablet 1 tablet as needed Orally bedtime

Medication List reviewed and reconciled with the patient

Past Medical History
Diabetes.

### Surgical History
gallbladder removal 2019
bilateral shoulder surgery 2014/2019

### Family History
No Family History documented.

### Social History
non-drinker, non-smoker.

### Allergies
ALPRAZolam

### Hospitalization/Major Diagnostic Procedure
No Hospitalization History.

### Review of Systems
All Other Systems:
Review of Systems (ROS) **All others negative except for those mentioned in HPI.**
Musculoskeletal:
Comments See HPI for details.
General / Constitutional:
Change in appetite Denies. Chills Denies. Fatigue Denies. Fever Denies. Night sweats Denies. Sleep disturbance Denies. Weight gain Denies. Weight loss Denies. Weakness Denies. Excessive Thirst Denies. Low Sex Drive Denies.
Ophthalmologic:
Blurry vision Denies. Change in vision Denies.
ENT:
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
Respiratory:
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.

### Reason for Appointment
1. Low back pain

### History of Present Illness
New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, awaiting on relief so far.

He has not gotten the diclofenac and baclofen yet, it was just approved and he has not picked it up yet.

Patient reports VAS 2-3/10 today.

Wheezing Denies.
Cardiovascular:
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
Gastrointestinal:
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
Hematology:
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
Allergy / Immunology:
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
Genitourinary:
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.

Neurologic:
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
Psychiatric:
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---

Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.
L4-L5: Minimal circumferential disc bulge. Mild facet

arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

.

**Vital Signs**

BP **134/85 mm Hg**, HR **71 /min**, Temp **98.2 F**.

**Examination**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat.

.

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).

Sensory: intact BLE.

Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic .

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

Lungs: no cough or signs of respiratory distress.

Chest: normal chest wall expansion.

Abdomen: soft, nontender, nondistended.

Skin: normal.

Extremities: no edema.

Ears: normal appearance.

Nose: normal appearance, no external masses or lesions.

Oral cavity: mucosa moist .

**Assessments**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

**Treatment**

**1. Others**

Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0

Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0

Notes: Causation:

In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Start diclofenac 75mg BID PRN inflammatory pain.
-Start baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, awaiting relief.
-May consider bilateral L3, L4, L5 MBB if limited relief.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine.

**Visit Codes**
99214 Office Visit, Est Pt., Level 4.

**Follow Up**
3-4 Weeks



**Electronically signed by PETER SU , MD on 09/05/2023 at 12:13 PM PDT**

**Sign off status: Completed**

**Su Spine and Sports (SUNSET)**
**9260 W SUNSET RD**
**STE 306**
**LAS VEGAS, NV 89148-4903**
**Tel: 702-779-3994**
**Fax: 888-464-0838**

**Progress Note: Peter S Su, MD 09/05/2023**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

SU SPINE & SPORTS

**Boruchowitz, David**
**43 Y old Male, DOB:**
**Account Number: 10896**
**6944**
**Home:**
**Guarantor: Boruchowitz, David Insurance: CCMSI Payer ID: PAPER**
**Referring: Peter Su, MD**
**Appointment Facility: Su Spine and Sports (SUNSET)**

**09/26/2023** **Peter S Su, MD**

## Current Medications

Unknown
- Diclofenac Sodium 75 MG Tablet Delayed Release 1 tablet as needed Orally Twice a day
- Baclofen 10 MG Tablet 1 tablet as needed Orally bedtime

Medication List reviewed and reconciled with the patient

Past Medical History
Diabetes.

## Surgical History

gallbladder removal 2019
bilateral shoulder surgery 2014/2019

## Family History

No Family History documented.

## Social History

non-drinker, non-smoker.

## Allergies

ALPRAZolam

## Hospitalization/Major Diagnostic Procedure

No Hospitalization History.

## Review of Systems

All Other Systems:
Review of Systems (ROS) **All others negative except for those mentioned in HPI.**
Musculoskeletal:
Comments See HPI for details.
General / Constitutional:
Change in appetite Denies. Chills Denies. Fatigue Denies. Fever Denies. Night sweats Denies. Sleep disturbance Denies. Weight gain Denies. Weight loss Denies. Weakness Denies. Excessive Thirst Denies. Low Sex Drive Denies.
Ophthalmologic:
Blurry vision Denies. Change in vision Denies.
ENT:
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
Respiratory:
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.

## Reason for Appointment

1. Low back pain

## History of Present Illness

New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He saw ortho spine Dr. Cash, and was recommended facet joint injections.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief.

He has not gotten the diclofenac and baclofen yet, it was just approved and he has not picked it up yet.

Wheezing Denies.
Cardiovascular:
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
Gastrointestinal:
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
Hematology:
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
Allergy / Immunology:
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
Genitourinary:
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.

Neurologic:
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
Psychiatric:
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

Patient reports VAS 4-5/10 today.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement

of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.

L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

.

**Vital Signs**

BP **127/83 mm Hg**, HR **63 /min**, Temp **97.2 F**, Wt **259.6 lbs**, Wt-kg 117.75 kg.

**Examination**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat.

.

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).

Sensory: intact BLE.

Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic .

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

Lungs: no cough or signs of respiratory distress.

Chest: normal chest wall expansion.

Abdomen: soft, nontender, nondistended.

Skin: normal.

Extremities: no edema.

Ears: normal appearance.

Nose: normal appearance, no external masses or lesions.

Oral cavity: mucosa moist .

**Assessments**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

**Treatment**

**1. Spondylosis without myelopathy or radiculopathy, lumbar region**

PROCEDURE: 64493 INJ PARAVERT F JNT L/S 1 LEV (Ordered for 09/26/2023)

PROCEDURE: 64494 INJ PARAVERT F JNT L/S 2 LEV (Ordered for 09/26/2023)

**2. Others**
Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0
Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Start diclofenac 75mg BID PRN inflammatory pain.
-Start baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, awaiting relief.
-**Recommend bilateral L4-5 and L5-S1 facet joint injection**, per recommendations from Dr. Andrew Cash.
The patient has moderate to severe pain, and has failed conservative care >6 weeks including physical therapy, home exercise program, medication management such as using NSAID's. The pain has been affecting patient's daily life. The risks and benefits of the interventional therapy were discussed at length with the patient including the risk of bleeding, infection, nerve damage and the potential for an increase in pain symptoms. Educational information was provided to the patient regarding the procedure and the procedure was further explained using anatomic models and diagrams. All of the patient's questions were answered and the consent form was reviewed in great detail. The patient understands that the explanation of the procedure is not exhaustive, but all questions and concerns have been fully addressed at this time.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

Sincerely,

Peter Su, MD
Diplomate of ABPMR

Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine.

**Visit Codes**
99215 Office Visit, Est Pt., Level 5.

**Follow Up**
3-4 Weeks



**Electronically signed by PETER SU , MD on 09/26/2023 at 11:33 AM PDT**

**Sign off status: Completed**

**Su Spine and Sports (SUNSET)**
**9260 W SUNSET RD**
**STE 306**
**LAS VEGAS, NV 89148-4903**
**Tel: 702-779-3994**
**Fax: 888-464-0838**

**Progress Note: Peter S Su, MD 09/26/2023**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

SU SPINE & SPORTS

**Boruchowitz, David**
**43 Y old Male, DOB:**
**6944**
**Home:**
**Surgeon: Peter S Su, MD**

**11/06/2023** **Peter S Su, MD**

OPERATIVE REPORT

Pre-op. Diagnosis:
1.lumbar facet arthropathy

Post-op. Diagnosis:
1.lumbar facet arthropathy

Operation:
1.bilateral L4-5 and L5-S1 facet joint injection
2.fluoroscopy

Anesthesia:
MAC

Indications:
The patient had a full discussion of informed consent about diagnosis, nature and purpose of procedure, risk, possible complications or side effects, reasonable and available alternatives, modes of therapy was discussed (including no treatments) and agreed by the patient prior to the procedures. The risks and complications include but were not limited to bleeding, infection, nerve damages, pain aggravations, spinal fluid leaks, headache, tissue trauma, new pain, allergic reaction to medication, side effects from steroids, hemodynamic compromise, permanent neurological compromise and death was mentioned. The patient understood radiation was to be used. No guarantee was implied for any avoidance of complication or success of these procedures. The patient understood that due to transient weakness and sedations, the patient may not operate a motor vehicle or any equipment for twelve hours after the procedures. All the patient's questions were answered and the patient agreed to undergo the procedures.

Details of Procedure:
Consent was obtained after the risks, benefits and alternatives were explained to the patient including: bleeding, infection, nerve damage, coma, and death. The patient understands these risks and signed a consent form, which was placed in the chart.

The patient was taken to the procedure room and placed in the prone position. The area was then prepped and draped in a sterile fashion with chlorhexidine scrub and fenestrated drape.

The skin and subcutaneous tissue were anesthetized with a 25-gauge needle and 1cc of Lidocaine 1% was injected at the needle entry location. In an oblique view with clear visualization of zygoappphyseal joint, a 25-gauge 3.5 inch needle was directed in gun-barrel fashion towards the superior aspect of the facet joint(L4-5 and L5-S1) until the joint space was entered on the left and right.

Correct needle placement was then confirmed in AP and lateral projections. After negative aspiration, radiographic was injected through the needle. There was excellent spread within the facet joint itself on the left and right at each level. There was no vascular uptake of contrast. There was no paresthesia. This was followed by a total of about 1cc of mix (2cc Normal Saline, 2cc of 1% lidocaine and 10mg dexamethasone) into each joint.

The needle was then re-styletted and removed. The patient tolerated the procedure well with no apparent complications. Blood loss was minimal.

Directly after the procedure, the patient was taken to the recovery room and was monitored for approximately 30 minutes. The patient demonstrated pre-operative levels of awareness, met all discharge criteria and was discharged home in stable condition with a chaperone.

Specimens:

Complications:
none

Findings:

Notes:

Procedure Codes:
1.64493 INJ PARAVERT F JNT L/S 1 LEV. Modifiers: 50
2.64494 INJ PARAVERT F JNT L/S 2 LEV. Modifiers: 50



**Electronically signed by PETER SU on 11/06/2023 at 02:17 PM PST**
**Sign off status: Completed**

---

**Durango Surgery Center**
**8530 W SUNSET RD**
**LAS VEGAS, NV 89113-2215**
**Tel: 702-789-5700**
**Fax:**

---

**Progress Note: Peter S Su, MD 11/06/2023**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

SU SPINE & SPORTS

# Boruchowitz, David

43 Y old Male, DOB:
Account Number: 10896
6944
Home:
Guarantor: Boruchowitz, David Insurance: CCMSI Payer ID: PAPER
Referring: Peter Su, MD
Appointment Facility: Su Spine and Sports (SUNSET)

**11/13/2023** **Peter S Su, MD**

## Current Medications

**Unknown**

- Diclofenac Sodium 75 MG Tablet Delayed Release 1 tablet as needed Orally Twice a day
- Baclofen 10 MG Tablet 1 tablet as needed Orally bedtime

Medication List reviewed and reconciled with the patient

Past Medical History
Diabetes.

## Surgical History

gallbladder removal 2019
bilateral shoulder surgery 2014/2019

## Family History

No Family History documented.

## Social History

non-drinker, non-smoker.

## Allergies

ALPRAZolam

## Hospitalization/Major Diagnostic Procedure

No Hospitalization History.

## Review of Systems

All Other Systems:
Review of Systems (ROS) **All others negative except for those mentioned in HPI.**
Musculoskeletal:
Comments See HPI for details.
General / Constitutional:
Change in appetite Denies. Chills Denies. Fatigue Denies. Fever Denies. Night sweats Denies. Sleep disturbance Denies. Weight gain Denies. Weight loss Denies. Weakness Denies. Excessive Thirst Denies. Low Sex Drive Denies.
Ophthalmologic:
Blurry vision Denies. Change in vision Denies.
ENT:
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
Respiratory:
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.
Cardiovascular:

## Reason for Appointment

1. Low back pain

## History of Present Illness

New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase.

Discussed about radiofrequency ablation, he wishes to proceed.

He is pending appt with Dr. Cash next week.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23

Cardiovascular:
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
Gastrointestinal:
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
Hematology:
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
Allergy / Immunology:
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
Genitourinary:
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.

Neurologic:
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
Psychiatric:
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief.

He has not gotten the diclofenac and baclofen yet, it was just approved and he has not picked it up yet.

Patient reports VAS 6/10 today.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.

L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.

L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.

L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

.

**Vital Signs**

BP: **126/82 mm Hg**, HR: **74 /min**, Temp: **98.6 F**, Wt: **259.6 lbs,** Wt-kg: 117.75 kg.

**Examination**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat.

.

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).

Sensory: intact BLE.

Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic .

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

Lungs: no cough or signs of respiratory distress.

Chest: normal chest wall expansion.

Abdomen: soft, nontender, nondistended.

Skin: normal.

Extremities: no edema.

Ears: normal appearance.

Nose: normal appearance, no external masses or lesions.

Oral cavity: mucosa moist .

**Assessments**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

**Treatment**

**1. Spondylosis without myelopathy or radiculopathy, lumbar region**

PROCEDURE: 64635 RFA Lumbar/Sacral 1st Joint (Ordered for 11/13/2023)
PROCEDURE: 64636 RFA Lumbar/Sacral Facet Joint Addl (Ordered for 11/13/2023)

**2. Others**
Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0
Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Continue diclofenac 75mg BID PRN inflammatory pain.
-Continue baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting minimal relief.
-He is s/p bilateral L4-5 and L5-S1 facet joint injection on 11/6/23, reporting 95% pain relief during initial testing phase.
**-Recommend bilateral L3, L4, L5 radiofrequency ablation.**
The patient has moderate to severe pain, and has failed conservative care >6 weeks including physical therapy, home exercise program, medication management such as using NSAID's. The pain has been affecting patient's daily life. The risks and benefits of the interventional therapy were discussed at length with the patient including the risk of bleeding, infection, nerve damage and the potential for an increase in pain symptoms. Educational information was provided to the patient regarding the procedure and the procedure was further explained using anatomic models and diagrams. All of the patient's questions were answered and the consent form was reviewed in great detail. The patient understands that the explanation of the procedure is not exhaustive, but all questions and concerns have been fully addressed at this time.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and

continued treatment. I have outlined my treatment plan above and would ask that you review.

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine

**Visit Codes**
99215 Office Visit, Est Pt., Level 5.

**Follow Up**
3-4 Weeks



**Electronically signed by PETER SU on 11/13/2023 at 09:43 AM PST**

**Sign off status: Completed**

**Su Spine and Sports (SUNSET)**
**9260 W SUNSET RD**
**STE 306**
**LAS VEGAS, NV 89148-4903**
**Tel: 702-779-3994**
**Fax: 888-464-0838**

Lincoln Financial Group®

# Authorization For Release Of Information

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: Boruchowitz (Last) David (First) Earle (Middle)

Date of Birth: ____ /____ /________ Social Security Number: _____-_____-________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________ **DATE** 11 / 10 / 2023

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** David Boruchowitz

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ______________________

**ADDRESS:** ______________________
(Street)

______________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________

(Please see FRAUD NOTICES attached)

CCMSI

April 18, 2022

DAVID BORUCHOWITZ

Claim No: 22J11K236563
Injury Date: 04/09/2022
Employer: NYE COUNTY / TOWN OF PAHRUMP

Dear DAVID BORUCHOWITZ

We have recently received the accident report from your employer, concerning your injury at work. CCMSI is the third party administrator that handles the claims for your employer. Our role is to work with you to ensure that you receive appropriate medical treatment, enjoy a quick and seamless recovery, and provide prompt payment of benefits for which you are entitled.

To ensure the best possible outcome, please be sure to: 1) Follow doctor's instructions, and keep all appointments; 2) Keep your employer informed of your status; and 3) Keep in close contact with your claims adjuster on your medical and work status.

If you have not spoken to the undersigned by the time you have received this letter, and if you have lost five (5) days or more from work as a result of your injury, please call as soon as possible so that your claim can be reviewed for any additional benefits due.

Enclosed you will find the form D-36, a relative treatment history form, and "Declaration of Medical Providers" form. Please sign, date, and return the forms to this office within ten (10) days of the date of this letter. Your signature on these forms acts as a release to acquire information related to your claim. NAC 616C.079 states in part, "an injured employee must sign all medical releases necessary for the insurer to obtain appropriate information and documentation to determine the nature and amount of benefits to which he is entitled. If the injured employee fails to do so, the insurer may withhold compensation from him."

Your attention and cooperation is appreciated and we look forward to working with you.

Sincerely,

Christine Guerrero
Med Only Claim Rep, WC
702-933-4839

CC:

DVH

Desert View Hospital

# HEALTH INFORMATION MANAGEMENT DEPARTMENT

## FACSIMILE TRANSMITTAL SHEET

TO: Advance Spine

FROM: DVH

ATTN: David Boruchowitz

DATE: 1/9/23

FAX NUMBER:

TOTAL NO. OF PAGES INCLUDING COVER: 8

PHONE NUMBER:

SENDER'S PHONE NUMBER: 775-751-7513

RE: Records ~~Patient Release~~

SENDER'S FAX NUMBER: 775-751-7834

The documents accompanying this transmission are intended solely for the individual or entity named above. This communication is intended to be and to remain confidential and may be subject to the requirements of the HIPAA privacy regulation. If you are not the intended recipient of this transmission, you are hereby notified that any disclosure, copying, distributing or action taken in reliance on the contents of these documents is strictly prohibited. If you received this information in error, please immediately alert the sender and arrange for the return or destruction of the documents. Thank you.

DVH
Desert View Hospital

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT CHEST W |
| Accession: | CT22002771 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CLINICAL HISTORY: thoracic/spine pain off road vehicle rollover

COMPARISON STUDIES: None currently available

TECHNIQUE: Postcontrast 5mm thick axial images were obtained through the chest. Coronal and sagittal reformats were constructed from the source images. In accordance with CT protocols and the ALARA principle, radiation dose reduction techniques were utilized for this examination.

CONTRAST: No contrast

FINDINGS: Evaluation of the mediastinum demonstrates no masses or adenopathy enlarged by CT criteria identified. The heart is unremarkable for age. The aorta is within normal limits for age. The trachea is unremarkable. The esophagus is unremarkable.

The lungs demonstrate no focal infiltrate, effusion, or pneumothorax. No pulmonary nodules are identified.

No acute osseous abnormalities are present.

IMPRESSION:

1. No evidence of acute intrathoracic injury.

**Signed by:** NGUYEN MD, VAN **Date Signed:** 4/10/2022 7:17 AM

DVH

Desert View Hospital

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT ABDOMEN/PELVIS WITH CONTRAS |
| Accession: | CT22002772 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CLINICAL HISTORY: LLQ pain bruising rollover off road vehicle

COMPARISON STUDIES: None currently available

TECHNIQUE: CT abdomen and pelvis with contrast. In accordance with CT protocols and the ALARA principle, radiation dose reduction techniques were utilized for this examination.

CONTRAST: Intravenous contrast was administered. Type and amount are documented at the local institution.

FINDINGS:

CT abdomen: The liver demonstrates diffuse steatosis. The spleen is normal. The pancreas is normal. The adrenal glands are normal. The kidneys demonstrate no acute abnormalities. The gall bladder has been removed.

The aorta is unremarkable for age. The IVC is normal. No retroperitoneal adenopathy enlarged by CT criteria is identified.

The bowel demonstrates no acute abnormalities. The appendix is unremarkable. There is a small umbilical hernia containing only fat.

CT pelvis: The bladder is unremarkable. No free fluid is seen. No abnormal pelvic masses or adenopathy enlarged by CT criteria is identified.

No acute osseous abnormalities are present.

IMPRESSION:

1. No acute intra-abdominal injury.
2. Hepatic steatosis.

**Signed by:** NGUYEN MD, VAN **Date Signed:** 4/10/2022 7:11 AM

Desert View Hospital

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT CERVICAL SPINE W/O |
| Accession: | CT22002770 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CT CERVICAL SPINE WITHOUT CONTRAST

HISTORY: neck pain s/p off road vehicle rollover

COMPARISON: None.

TECHNIQUE: Thin section axial CT images were obtained from the foramen magnum to the T1 vertebral body. This CT exam was performed using one or more of the following dose reduction techniques: Automated exposure control, adjustment of the mA and/or kV according to patient size, or use of iterative reconstruction technique. Thin section sagittal and coronal reconstructed images were performed from the axial data set. All images were reviewed and interpreted.

CONTRAST: None.

FINDINGS:

There are no fractures or dislocations. There is normal vertebral body alignment and spacing. There are no significant spondylotic changes. There is normal mineralization. There are no osseous lytic or sclerotic lesions. There are normal paraspinal soft tissues.

IMPRESSION:

No acute abnormality of cervical spine.

**Signed by:** Keifer, Terry **Date Signed:** 4/10/2022 7:20 AM

DVH
Desert View Hospital

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT BRAIN W/O |
| Accession: | CT22002769 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CT BRAIN WITHOUT CONTRAST

HISTORY: headache scalp swelling s/p off road vehicle rollover .

COMPARISON: CT head of September 21, 2018.

TECHNIQUE: Thin section axial CT images were obtained from the vertex of the skull to the foramen magnum without contrast. All images were reviewed and interpreted. This CT exam was performed using one or more of the following dose reduction techniques: Automated exposure control, adjustment of the mA and/or kV according to patient size, or use of iterative reconstruction technique.

CONTRAST: None.

FINDINGS:
No acute intracranial hemorrhage . No CT evidence for acute infarction. There is no midline shift, mass or mass effect. The ventricles, sulci and cisterns are normal.

The visualized orbits are unremarkable. The calvarium is intact. Moderate mucosal thickening involves ethmoid air cells and maxillary sinuses, otherwise the visualized paranasal sinuses and mastoid air cells are clear.

IMPRESSION:

No acute intracranial abnormality.

**Signed by:** BHANDERI MD, SUDIPKUMAR **Date Signed:** 4/10/2022 6:41 AM

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Desert Institute of Spine Care**

## Boruchowitz, David

43 Y old Male, DOB:
Account Number: 16766

Home:
Guarantor: Boruchowitz, David Insurance: CCMSI
PCP: CCMSI CCMSI Referring: CCMSI CCMSI
Appointment Facility: Desert Institute of Spine Care

09/18/2023 NP WC: Andrew M. Cash, MD

### Current Medications

Discontinued

- ALPRAZolam

### Past Medical History

Non-Contributory.

### Surgical History

Gallbladder 2009
Both shoulders 2010 / 2015

### Family History

Non-Contributory

### Social History

Tobacco Use:
Tobacco Use/Smoking
Smoking Status: *nonsmoker*
Drugs/Alcohol:
Do you drink alcohol?: No.

### Allergies

ALPRAZolam
Penicillin
Sunscreens

### Hospitalization/Major Diagnostic Procedure

No Hospitalization History.

### Review of Systems

Sexual Activity:
Sexual Activity Pain interferes with sex.
General/Constitutional:
Chills denies. Fever denies. Sweats denies. Weight loss denies.
Gastrointestinal:
Uncontrollable bowel movements denies .
Genitourinary:

### Reason for Appointment

1. Initial Consult - Lumbar

### History of Present Illness

Todays Visit:

The patient is a 43 year old male who was involved in a work related motor vehicle accident on 04/09/2022. Patient states he last control of th OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. The patient was a restrained driver. The patient was facing forward at the time of impact. The patient reports that the impact was sudden and expected; the patient prepared for impact. He hit his head but not sure on what. The patient did not black out. Immediately after the collision the patient felt shaken up. The patient began to feel pain immediately.

The worst back pain level is 10/10. The patient reports no radicular symptoms in the lower extremities in the form of numbness, tingling, pain, and weakness. The patient has had chiropractic and injection treatment.

Current Treatment:

Pain Management, Chiropractic.

Prior Injuries::

None.

### Vital Signs

Ht 5 ft 11 in, Wt **250 lbs**, BMI **34.86 Index**, RR **16 /min**, Temp **97.3 F**, Ht-cm **180.34 cm**, Wt-kg **113.4 kg**.

### Examination

General Examination:

GENERAL APPEARANCE: well nourished and hydrated.

EYES/ENT: Pupil: Bilateral equal and direct reaction to normal light, normal conjuctiva and lids.

ENT inspection shows no scars, lesions or foreign bodies. Lips, teeth, and gums appear normal.

NECK, THYROID: No masses, symmetrical, no enlargement of thyroid.

NEUROLOGIC: Cranial nerves:

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

Uncontrollable urination denies.
Neurologic:
Headache denies.
Psychiatric:
Lingering memories of the accident denies. Anxiety denies. Depressed mood denies. Difficulty sleeping **admits**.
The patient's handwritten intake forms and information has been reviewed, documented, verified, & reconciled, through oral confirmation, and the type written dictation incorporated all information, representing the complete and corroborated historical and current account.

II Optic: Bilateral visual acuity
III Oculomotor: Normal pupillary constriction.
IV Trochlear: Normal bilateral.
V Trigeminal: Normal bilateral.
VI Abducens: Normal bilateral.
VII Facial: Normal bilateral.
VIII Acoustic: Normal hearing bilateral.
NEUROPSYCHIATRIC: Appropriate judgment and insight, alert and oriented x3.
Associations- Intact.
Thought Processes/Cognitive Function- Appropriate fund of knowledge.

Imaging Studies:
Results: Lumbar disc protrusion(s), Lumbar annular tear(s).
Time was spent with the patient reviewing the chart in the office today, offering full explanations of the pathology therein, as well as different treatment options that could be provided for such pathological findings. As appropriate, the patient was shown illustrations and models for a better understanding of the condition as well as given literature. I reviewed with the patient the records and diagnostic/therapeutic protocol in detail and to their satisfaction.

Spine:

----

Lumbar:

There is painful extension.
There is painful flexion. There is bilateral paraspinal musculature pain and tenderness.
Muscle strength is 5/5 bilaterally.
Deep tendon reflexes are symmetrical.
Light touch sensation is intact.
The hip exam is unremarkable.
The sacroiliac joint exam tender with provocation compression, FABER,and fortin test is unremarkable.
Negative straight leg raise.

.

**Assessments**
1. Other intervertebral disc displacement, lumbar region - M51.26 (Primary)
2. Facet syndrome - M12.88

**Treatment**
**1. Facet syndrome**
Referral To:Pain Medicine
Reason:lumbar MBB

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Disability/Prognosis/Causation**

Medical Records:

Reviewed records from Dr Su, Dr Janda, Simmonmed.

DISABILITY:

Lumbar restrictions: No repetitive bending, twisting, stooping crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally.

CAUSATION:

In my opinion the patient's symptoms which we are evaluating are directly related to the above mentioned accident(s). This opinion is based on patient's history, physical exam, diagnostic studies, and medical records provided. I welcome the opportunity to review any and all medical records regarding past or present treatment of the patient which could possibly reinforce or otherwise affect the above opinions. .

Opioid Risk:

The risks of opioid medications were explained to the patient. The patient understands and agrees to use these medications only as prescribed. The patient agrees to obtain pain medications from this practice only. We have fully discussed the potential side effects of the medication with the patient. These include, but are not limited to, constipation, drowsiness, addiction, nausea, vomiting, impaired judgment and the risk of fatal overdose if not taken as prescribed. We have warned the patient that sharing medications is a felony. We have warned the patient against driving while taking sedating medications.

**Procedure Codes**

72110 X-RAY EXAM OF LOWER SPINE

**Follow Up**

4 Weeks

**Electronically signed by Marie Hilgar on 09/19/2023 at 12:15 PM PDT**

**Sign off status: Completed**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

Desert Institute of Spine Care
9339 W SUNSET RD
STE 100
LAS VEGAS, NV 89148-4849
Tel: 702-630-3472
Fax: 702-946-5115

---

**Progress Note: Andrew M. Cash, MD 09/18/2023**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

OPTIMAL THERAPY AN AFFILIATED COMPANY

# Physical Therapy Initial Eval/Discharge

**Date of Visit:** 06-22-22
**Patient Name:** Boruchowitz, David
**Patient #:** 0004767

**Therapist:** Davin Christensen, DPT
**Referring MD:** Alexander Noche,

**Date of Birth:**
**Age:** 42

**Certification Period:** 06-22-22 - 06-22-22

**Date of Onset:** 06-01-22

**Diagnosis:**

| | |
|---|---|
| M54.59 | Other low back pain |
| S33.5XXD | Sprain of ligaments of lumbar spine, subsequent encounter |
| M47.896 | Other spondylosis, lumbar region |

**Subscriber ID:** CCMSI W/C Subscriber ID: 22J11K236563

**SUBJECTIVE:**
David Boruchowitz is a 42 year old male who presents to therapy today for evaluation of Lumbar. The patient was referred by Alexander Noche, . Pt reports low back pain started 4/9/22 from a vehicle rollover. Pt reports that he has undergone x-rays and CT scans. Sx's have improved slowly over time but still hurting in the low back /c standing upright and prolonged sitting /c good posture.

**Presenting Problems:**
The patient reports:
• Loss of function, minimal
• Loss of motion - stiffness, minimal
• Weakness, minimal
• Bending, minimal
• Carrying, minimal
• Difficulty sleeping, minimal
• Lifting, minimal
• Sitting, minimal
• Squatting, minimal
• Standing, minimal
• Walking, minimal

The patient reports today's pain at L Spine to be 0 out of 10 at best and 7 out of 10 at worst.

| Functional Status | Prior | Current |
|---|---|---|
| ADL self care | 100% | 20% impaired |
| Driving | 100% | 20% impaired |
| Stairs | 100% | 20% impaired |
| Transfers | 100% | 20% impaired |

| Functional Status | Prior | Current |
|---|---|---|
| ADL home care | 100% | 20% impaired |
| ADL outdoor care | 100% | 20% impaired |
| Community Mobility | 100% | 20% impaired |
| Recreation - hobby | 100% | 20% impaired |
| Recreation - sports | 100% | 20% impaired |
| Work activities | 100% | 20% impaired |

**Work Status:**
employed full time

**OBJECTIVE:**
**LUMBAR EVALUATION**

**RANGE OF MOTION:**

| Lumbar | Initial | Goal | Comments |
|---|---|---|---|
| AROM | 06-22-22 | | |
| Flexion (40-60) | 50 | | |
| Extension (20-30) | 20 | | |
| Right Rotation (3-18) | 15 | | |
| Left Rotation (3-18) | 15 | | |
| Right Side Bending (15-25) | 15 | | |
| Left Side Bending (15-25) | 20 | | |

Lumbar passive range of motion was not necessary to test.

| Flexibility | Right | Goal | Left | Goal |
|---|---|---|---|---|
| Hamstring | WNL | | WNL | |
| Rectus Femoris | Mild | | Mild | |

**MANUAL MUSCLE TEST:**

| Lumbar | Initial | Goal | Comments |
|---|---|---|---|
| MMT | 06-22-22 | | |
| Flexion | 4+ | | |
| Extension | 4+ | | |
| Right Rotation | 4+ | | |
| Left Rotation | 4+ | | |
| Right Side Bending | 4+ | | |
| Left Side Bending | 4+ | | |

Mild to moderate weakness in core muscles in general

**GAIT:**
Normal gait.

**PALPATION:**

Increased pain and hypertonicity /c palpation near/around L3/L4 centrally /c A/P pressure and L QL tension.



2250 E Postal Drive #4, Pahrump, NV 89048-4798
Phone: (775) 727-3838 Fax: (775) 996-4451
HTTPS://WWW.OPTIMALPTLV.COM/

**FUNCTION/OBSERVATION:**

| Function | Initial | Goal | Comment |
|---|---|---|---|
| Carrying | Fair | Good | |
| Driving | Fair | Good | |
| Lifting Floor to Waist | Fair | Good | |
| Prolonged Sitting | Fair | Good | |
| Prolonged Standing | Fair | Good | |
| Pushing/Pulling | Fair | Good | |

**ACTIVITY LOG:**

| Time Based Activities | Comment | Status | Sets | Reps | Weight | Time | Done Today | CPT | Performed by |
|---|---|---|---|---|---|---|---|---|---|
| *Self Management* | HEP Education | Active | | | | 10 | Yes | Self Management (97535) - [TP012] | (DPT) Davin Christensen |

**ASSESSMENT:**
David presented to physical therapy today with reports of low back pain and occasional cervical pain following a rollover accident at work 4/9/22. Pt demonstrated impaired posture, decreased ROM in flexion and lateral bending, decreased core stability, and mild weakness. Pt deficits are contributing to his difficulty with prolonged standing, sitting, and squatting activities. Pt is working F/T /c mild limitations. Primary concern is when transitioning from sitting to standing he feels pain and /c prolonged sitting/standing.

Rec pt complete HEP on his own and pt referred to chiropractic care for LBP and mechanical pain. The patient's rehab potential is good. The patient's discharge prognosis is good. He and/or family is aware of his diagnosis. The plans and goals have been developed and discussed with the patient. Patient consents to treatment plan and goals and gives verbal informed consent.

| Goals | Short-Long | Time Frame | Result | Comment |
|---|---|---|---|---|
| 1 x visit - Patient has a good understanding of their outlined HEP | Short Term | 1 week | New | |

**Assessment of Complexity:**
Medical and Therapy History: No personal factors and/or comorbidities that impact the plan of care.
Patient Examination: Examination of body systems was completed using standardized tests and measures addressing 1-2 elements from any of the following: body structures and functions, activity limitations, and/or participation restrictions.
Clinical Presentation: With stable and/or uncomplicated characteristics.
Clinical Decision Making: Low complexity using standardized patient assessment instrument and/or measurable assessment of functional outcome.

Based on the documented information above, the patient complexity is determined to be low.
**PLAN:**
**Primary Discharge Reason**
No Services Needed

RECOMMEND PT RECEIVE CHIROPRACTIC SERVICES FOR LOW BACK PAIN AND POSTURAL IMPAIRMENTS.
D/C TO INDPENDENT HEP FROM PHYSICAL THERAPY.

Thank you for this referral.

Best regards,

Davin Christensen, DPT License #: 2804

This document was electronically signed on 06-22-22 at 10:16a by Davin Christensen DPT .



2250 E Postal Drive #4, Pahrump, NV 89048-4798
Phone: (775) 727-3838 Fax: (775) 996-4451
HTTPS://WWW.OPTIMALPTLV.COM/

OPTIMAL THERAPY AN AFFILIATED COMPANY

## Plan of Care

# PHYSICAL THERAPY PLAN OF CARE

**Date:** 06-22-22
**Patient Name:** David Boruchowitz
**Patient Number:** 0004767
**Date of Birth:**

**Referral Source:** Alexander Noche,
**Date of Onset:** 06-01-22
**Certification Period:** 06-22-22 - 06-22-22
**Case:** PT001

**Diagnosis:**

| | |
|---|---|
| M54.59 | Other low back pain |
| S33.5XXD | Sprain of ligaments of lumbar spine, subsequent encounter |
| M47.896 | Other spondylosis, lumbar region |

**ASSESSMENT:**
David presented to physical therapy today with reports of low back pain and occasional cervical pain following a rollover accident at work 4/9/22. Pt demonstrated impaired posture, decreased ROM in flexion and lateral bending, decreased core stability, and mild weakness. Pt deficits are contributing to his difficulty with prolonged standing, sitting, and squatting activities. Pt is working F/T /c mild limitations. Primary concern is when transitioning from sitting to standing he feels pain and /c prolonged sitting/standing.

Rec pt complete HEP on his own and pt referred to chiropractic care for LBP and mechanical pain. He and/or family is aware of his diagnosis. The plans and goals have been developed and discussed with the patient.

**REHAB POTENTIAL:**
The patient's rehab potential is good.

**PLAN:**
The patient will be seen 1 time per week for 1 week, for a total of 1 visit.

The treatment plan includes:
- Therapeutic exercises
- Functional/therapeutic activities
- Aquatic therapy
- Iontophoresis prn for pain control
- Mechanical traction prn
- Patient education
- Manual therapy
- Neuromuscular re-education
- Posture and body mechanics education
- E-Stim unattended prn for pain control
- Hot pack/cold pack prn
- Dry Needling

**Primary Discharge Reason**

# PHYSICAL THERAPY PLAN OF CARE CONTINUED

**Date of Visit:** 06-22-22
**Patient Name:** David Boruchowitz
**Patient Number:** 0004767
**Date of Birth:**

**Referral Source:** Alexander Noche,
**Date of Onset:** 06-01-22
**Certification Period:** 06-22-22 - 06-22-22
**Case:** PT001

No Services Needed
Modalities will be utilized PRN for pain management.

| Goals | Short-Long | Time Frame | Result | Comment |
|---|---|---|---|---|
| 1 x visit - Patient has a good understanding of their outlined HEP | Short Term | 1 week | New | |

Davin Christensen, DPT License #: 2804
This document was electronically signed on 06-22-22 at 10:16a by Davin Christensen DPT .

This is just for your information - signature not required.

Information Waiver by Applicant – I hereby authorize this physician to provide all required personnel information to the Public Employees Retirement System for consideration by the Retirement staff, the Retirement System Medical Advisor, Retirement Board, and by my attorney, if this application should require legal assistance in an appeal procedure.

Disability Applicant's Signature [signature] Date 07/10/2023

## PART IV. PHYSICIAN'S REPORT

A. Name of Patient: David Boruchowitz Age: 43 Ht 5'11" Wt: 265 lbs.
Date of beginning of symptoms: 4/9/2022
Length of time under my care: 38 weeks

B. Subjective complaints and symptoms evidencing disability: Mid to lower back pain and rib cage pain.

C. PLEASE INCLUDE OBJECTIVE FINDINGS. Examples: Photocopies of lab results, X-ray readings, pathology reports, office records, hospital records, etc.

Attached are:
1. Lumbar X-Ray and MRI
2. CT Chest and X-Ray Chest
3. Treatment records
4.
5.

D. My diagnosis is: Thoracolumbar musculoligamentous injury, Clinical facet medical pain, Clinical discogenic pain generator. Rib cage sprain/strain injury.

E. I hereby certify that I have examined the above-named patient as described and that said person is able to work.

SIGNED: ____________, M.D. DATE: ____________

--OR--

I certify that I have examined the above-named patient as described and that said person is able to work on a limited basis in the following capacity: ____________

SIGNED: ____________, M.D. DATE: ____________

--OR--

I certify that I have examined the above-named patient as described and that said person is unable to work* due to injury or mental or physical illness. *This includes physical aspects/requirements of his law enforcement duties.

SIGNED: [signature], ~~M.D.~~ D.C. DATE: 8/9/2023
Printed Name: Alexander S. Janda, DC, M.D. Address: 715 Mall Ring Cir., Ste. 100, Henderson, NV 89014
Telephone Number: (702) 990-2225

NOTE: THIS REPORT SHOULD BE FULLY COMPLETED AND THEN FORWARDED DIRECTLY TO THE PUBLIC EMPLOYEES RETIREMENT SYSTEM, 693 WEST NYE LANE, CARSON CITY, NEVADA 89703.

DVH
Desert View Hospital

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT CERVICAL SPINE W/O |
| Accession: | CT22002770 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CT CERVICAL SPINE WITHOUT CONTRAST

HISTORY: neck pain s/p off road vehicle rollover

COMPARISON: None.

TECHNIQUE: Thin section axial CT images were obtained from the foramen magnum to the T1 vertebral body. This CT exam was performed using one or more of the following dose reduction techniques: Automated exposure control, adjustment of the mA and/or kV according to patient size, or use of iterative reconstruction technique. Thin section sagittal and coronal reconstructed images were performed from the axial data set. All images were reviewed and interpreted.

CONTRAST: None.

FINDINGS:

There are no fractures or dislocations. There is normal vertebral body alignment and spacing. There are no significant spondylotic changes. There is normal mineralization. There are no osseous lytic or sclerotic lesions. There are normal paraspinal soft tissues.

IMPRESSION:

No acute abnormality of cervical spine.

**Signed by:** Keifer, Terry **Date Signed:** 4/10/2022 7:20 AM

**DVH**

**Desert View Hospital**

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT ABDOMEN/PELVIS WITH CONTRAS |
| Accession: | CT22002772 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CLINICAL HISTORY: LLQ pain bruising rollover off road vehicle

COMPARISON STUDIES: None currently available

TECHNIQUE: CT abdomen and pelvis with contrast. In accordance with CT protocols and the ALARA principle, radiation dose reduction techniques were utilized for this examination.

CONTRAST: Intravenous contrast was administered. Type and amount are documented at the local institution.

FINDINGS:

CT abdomen: The liver demonstrates diffuse steatosis. The spleen is normal. The pancreas is normal. The adrenal glands are normal. The kidneys demonstrate no acute abnormalities. The gall bladder has been removed.

The aorta is unremarkable for age. The IVC is normal. No retroperitoneal adenopathy enlarged by CT criteria is identified.

The bowel demonstrates no acute abnormalities. The appendix is unremarkable. There is a small umbilical hernia containing only fat.

CT pelvis: The bladder is unremarkable. No free fluid is seen. No abnormal pelvic masses or adenopathy enlarged by CT criteria is identified.

No acute osseous abnormalities are present.

IMPRESSION:

1. No acute intra-abdominal injury.
2. Hepatic steatosis.

**Signed by:** NGUYEN MD, VAN **Date Signed:** 4/10/2022 7:11 AM

**DVH**

*Desert View Hospital*

**Report Details**

| | | | |
|---|---|---|---|
| Patient Name: | **BORUCHOWITZ, DAVID** | Procedure Date: | **4/10/2022 3:10 AM** |
| Patient ID: | 3525 | Gender: | M |
| Date of Birth: | Age 41 | Procedure: | CT CHEST W |
| Accession: | CT22002771 | | |
| Referring Physician: | CLARK, JAMES | | |

**Report Text**

CLINICAL HISTORY: thoracic/spine pain off road vehicle rollover

COMPARISON STUDIES: None currently available

TECHNIQUE: Postcontrast 5mm thick axial images were obtained through the chest. Coronal and sagittal reformats were constructed from the source images. In accordance with CT protocols and the ALARA principle, radiation dose reduction techniques were utilized for this examination.

CONTRAST: No contrast

FINDINGS: Evaluation of the mediastinum demonstrates no masses or adenopathy enlarged by CT criteria identified. The heart is unremarkable for age. The aorta is within normal limits for age. The trachea is unremarkable. The esophagus is unremarkable.

The lungs demonstrate no focal infiltrate, effusion, or pneumothorax. No pulmonary nodules are identified.

No acute osseous abnormalities are present.

IMPRESSION:

1. No evidence of acute intrathoracic injury.

**Signed by:** NGUYEN MD, VAN **Date Signed:** 4/10/2022 7:17 AM

SimonMed
*See Tomorrow Today*

**SimonMed NV Maryland**
3061 S Maryland Parkway Ste #102
Las Vegas, NV 89109
Phone: (702)369-4570

**DIAGNOSTIC IMAGING REPORT**

Patient: Boruchowitz, David Sex :M DOB: Age: 42
Diag. Imaging#: 3855551

Status:

Referring Physician: ALEXANDER JANDA D.C

CC Physician:

EXAM #34656137 - 12/13/2022 9:30 AM -MR LUMBAR SPINE WITHOUT CONTRAST

CLINICAL HISTORY: S33.5XXA - Sprain of ligaments of lumbar spine, initial encounter.

COMPARISON: None.

TECHNIQUE: Multiplanar, multi-sequential MR images of the lumbar spine were obtained without contrast enhancement.

FINDINGS:

For the purpose of this study, 5 lumbar type vertebral bodies are presumed. Levocurvature of the lumbar spine. Grade 1 retrolisthesis of L5 on S1. Vertebral body heights and alignment are otherwise maintained. Multilevel disc space narrowing, disc desiccation, degenerative endplate changes and Schmorl's nodes. No discrete aggressive appearing bone marrow lesion.

The conus medullaris is not low lying. Findings at the individual levels are as follows:

L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.

L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. No significant spinal canal stenosis.

L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.

L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

Prevertebral and paraspinal soft tissues are unremarkable.

Study is not targeted to the abdomen/pelvis. Given this, the visualized abdominal and pelvic viscera are grossly unremarkable.

IMPRESSION:

SimonMed
*See Tomorrow Today*

**SimonMed NV Maryland**
3061 S Maryland Parkway Ste #102
Las Vegas, NV 89109
Phone: (702)369-4570

**DIAGNOSTIC IMAGING REPORT**

Patient: Boruchowitz, David Sex :M DOB: Age: 42
Diag. Imaging#: 3855551

Status:

Referring Physician: ALEXANDER JANDA D.C

CC Physician:

EXAM #34656137 - 12/13/2022 9:30 AM -MR LUMBAR SPINE WITHOUT CONTRAST

1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels.

2. Levocurvature of the lumbar spine.

dd:12/15/2022 2:35 PM

Reported by: Kunz, Hannah D.O.
Electronically signed by: KUNZ, HANNAH

Thank you for your kind referral. If you require further assistance, please contact our Radiologist Hotline at 855-RAD-TALK(855-723-8255).

DESERT RADIOLOGY

702-759-8600
WWW.DESERTRAD.COM

# MEDICAL IMAGING REPORT
# REPORT STATUS: FINAL

**Name:** DAVID BORUCHOWITZ
**Patient ID:** 502393606
**Exam Date:** 6/1/2022 03:27 PM
**Age:** 42Y 4M
**Exam Name:** XR L SPINE 4 OR MORE VW | 72110
**Pt Status:** Outpatient
**Referrer:** ALEXANDER NOCHE, MD
**Ref1 Address:** 821 N NELLIS BLVD
LAS VEGAS, NV 89110-5339

**DOB:**
**Gender:** Male
**Site:** PAHRUMP
**Acc #:** 518012912
**Secondary Acc #:** 34994150HCP

XR LUMBAR SPINE

HISTORY: Low back pain

COMPARISON: None

TECHNIQUE: Five views

FINDINGS: Lumbar alignment is maintained. Intervertebral disc space narrowing with anterior marginal osteophytic spurring at L2-L3 and L3-L4.

IMPRESSION:

Multilevel degenerative disc disease

**Report Electronically Signed by:** ERIC MOLDESTAD MD
**Report Electronically Signed on:** 6/7/2022 10:30 AM

**Transcribed By:**

**Signed by:** ERIC MOLDESTAD MD
**Finalized Date:** 6/7/2022 10:30 AM

CONFIDENTIALITY NOTICE: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure or re-disclosure of which it is governed by applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED. If you have received this message by error, please notify Desert Radiology immediately by phone and return the original message to us by mail. Thank you.

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

ADVANCED SPINE & REHABILITATION

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** Boruchowitz, David
**Date:** 8/2/2023
**File #:** 19630

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporting continued lower back pain. He has not had recent episodes of severe pain. However, he wakes up frequently at night and walks for a short period of time. He is sleeping in his bed. Not working has also been beneficial for his pain intensity. He has been scheduled for pain management consultation 8/9/2023.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the lumbar region.

**ASSESSMENT:**
***Related to the Industrial Rollover OHV Crash (04/09/22):***
1. Thoracolumbar musculoligamentous injury
    a. Clinical facet mediated pain
    b. Clinical discogenic pain generator
    c. **MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
    d. **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
    a. Rule out rib cage fracture
    b. **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
    c. **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** Pending pain management consultation 8/9/2023.

***Treatment Rendered:*** The patient underwent a 55-60 minute manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

***Treatment Plan:*** Continue conservative treatment.

**ICD-10**:
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT**:
99212–Limited Office Visit
97140–Manual Therapy Techniques; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **7/31/2023**
**ID #:** **19630**

# *Manual Therapy*

**SUBJECTIVE:** The patient presented for manual therapy.

**OBJECTIVE:** Myofascial involvement.

**ASSESSMENT**:
1. Unchanged

**PLAN:**
***Treatment Rendered:*** The patient underwent 55-60 minutes of manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

**ICD-10:**
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:** 97140–Manual Therapy Techniques; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

ADVANCED SPINE & REHABILITATION

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **7/28/2023**
**File #:** **19630**

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporting continued lower back pain. He woke up frequently last night and had to shift due to his lower back pain. He currently rates his pain intensity at a 3/10. Last night, pain was rated at a 5/10.

He is awaiting authorization for pain management consultation.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the lumbar region.

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***
1. Thoracolumbar musculoligamentous injury
   a. Clinical facet mediated pain
   b. Clinical discogenic pain generator
   **a. MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
   **b. X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
   a. Rule out rib cage fracture
   **a. CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
   **b. X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** Pending pain management consultation.

***Treatment Rendered:*** The patient underwent a 55-60 minute manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

***Treatment Plan:*** Continue conservative treatment.

**ICD-10:** M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:** 99212–Limited Office Visit
97140–Manual Therapy Techniques; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

| | |
|---|---|
| **Name:** | **Boruchowitz, David** |
| **Date:** | **7/26/2023** |
| **File #:** | **19630** |

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporting that he has not had any significant rib cage pain since he saw me. However, after a long flight to Vancouver, suffered pronounced lower back pain (VAS: 10/10) and spasm. Pain was almost to the point that he went to the ER. The only relief he could gain was lying on his side with his right hip and knee flexed. He also took a 6 hour bus tour that was also provocative. He had to get up in the bus frequently. The cold weather was also provocative.

Pain intensity has calmed since returning to the Las Vegas region. However, he still has to shift frequently while seated. Even with the shifting, he can only sit for 2 hours before he can no longer sit. Prolonged standing is also provocative to the point that he has to shift while standing. Pain intensity is rated at a 2-10/10. The 10/10 occurs every night while sleeping. He is awaiting authorization for pain management consultation.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the lumbar region.

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***

3. Thoracolumbar musculoligamentous injury
    1. Clinical facet mediated pain
    2. Clinical discogenic pain generator
    3. **MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
    4. **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
4. Rib cage sprain/strain injury
    1. Rule out rib cage fracture
    2. **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
    3. **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***

1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**

***Discussion:*** Pending pain management consultation.

***Treatment Rendered:*** The patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

***Treatment Plan:*** Continue conservative treatment.

**ICD-10:** M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:** 99212–Limited Office Visit
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **7/21/2023**
**ID #:** **19630**

# *Manual Therapy*

**SUBJECTIVE:** The patient presented for manual therapy.

**OBJECTIVE:** Myofascial involvement.

**ASSESSMENT**:
3. Unchanged

**PLAN:**
***Treatment Rendered:*** The patient underwent 55-60 minutes of manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

**ICD-10:** M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:** 97140–Manual Therapy Techniques; 15 Min/Unit

Troy D. Russell, DC
DIR Designated Rating Physician
Electronically signed by Troy D. Russell, D.C.

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **7/5/2023**
**File #:** **19630**

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporting continued lower back pain with no significant change since last visit. He is awaiting pain management consultation.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the lumbar region.

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***
1. Thoracolumbar musculoligamentous injury
   a. Clinical facet mediated pain
   b. Clinical discogenic pain generator
   1. **MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
   2. **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
   1. Rule out rib cage fracture
   1. **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
   2. **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** Pending pain management consultation.

***Treatment Rendered:*** The patient underwent a 55-60 minute manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose

of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

***Treatment Plan:*** Continue conservative treatment.

***Work Status:*** Working full time.

**ICD-10**: M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT**: 99212–Limited Office Visit
97140–Manual Therapy Techniques; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

ADVANCED SPINE & REHABILITATION

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Patient Name:** **Boruchowitz, David**
**Date of Injury:** **4/9/2022**
**Date of Exam:** **6/30/2023**

# *Outcome Assessment*
# *Detailed Office Visit*

**HISTORY**: The patient presents for follow up. The patient is currently14 months status post MVC. The mechanism of injury was reviewed in this case which was consistent with the initial reporting:

> "The patient was the restrained driver of an OHV that rolled multiple times in a crash before coming to rest upside down. The patient was evaluated at Desert View Hospital emergency room where he underwent CT evaluation. Following additional evaluation at Intermountain Healthcare, the patient underwent radiographic evaluation of the lumbar spine. The patient underwent evaluation with Affiliated Physical Therapy. No other treatment has been rendered."

The patient has been undergoing conservative treatment at our facility. The initial complaints were reassessed today:

1. **Mid to Lower Back Pain:**

   Mid to lower back pain continues at the thocolumbar region in a belt line distribution. However, pain has started to involve the lumbar region as well. Pain / symptom intensity rating over the past week 3-10/10. He feels that his pain is gradually worsening. He is frustrated with the delays in receiving authorization for treatment.

   Pain / symptoms increase with sitting greater than 15 minutes, driving greater than 45 minutes and prolonged standing. Getting restful sleep is difficult due to his injuries. Changing positions, sitting to standing, standing to sitting and while sleeping offers temporary improvement. Certain stretches offer relief. Activities involving upper body movements is also provocative.

2. **Bilateral Rib Pain:**

Rib cage pain has improved considerably.

**WORK STATUS**: The patient is working full duty.

**PAIN STATUS INVENTORIES:**

**Pain Drawing:** The patient completed a pain drawing using symbols to describe sensations. This drawing was appropriate with complaints.

**The Revised Oswestry Low-Back Pain Questionnaire:** The Revised Oswestry Pain Questionnaire (N. Hudson, K. Tome, A Breem; 1989) is a 10 question survey that can be quickly administered and scored. Questions relate to various aspects of function and behavior (pain intensity, personal care, lifting, walking, sitting, standing, sex life, social life, sleeping, traveling), in regards to the lower back. This is a self-report questionnaire which is considered a valid measure of an individualperceived disability. Each of the 10 questions has 6 answer choices -- the patient chooses one. The answer choices are on a scale with values from 0-5. All answers added, then multiplied by 2 to give a percentage disability (final index). The final index score is then compared to the following categories: 0-8% no disability, 10-28% mild disability, 30-48% moderate disability, 50-68% severe disability, and 70-100% complete disability.

| Date | Revised Oswestry Questionnaire |
|---|---|
| 06/30/2023 | 46% |
| 11/16/2022 | 32% |

**RELEVANT EXAMINATION FINDINGS**:

| | |
|---|---|
| **Psychiatric**: | Mood and affect were appropriate. Alert and oriented x 4. No short term memory deficits. |
| **Skin**: | No cyanosis. Normal turgor. |
| **Neck**: | No thyroid enlargement. |
| **Lymphatics**: | No lymphadenopathy in the anterior or posterior cervical chains. |
| **Respiratory**: | Normal respiratory effort. Normal chest expansion with deep inspiration. |
| **ENT & Mouth**: | Exterior inspection of ears and nose was unremarkable. Hearing grossly intact. Normal lips, teeth and gums. |
| **Cardiovascular**: | No jugular distention. No peripheral edema. |

**Thoracolumbar Spine:**

| | |
|---|---|
| **Observation:** | Unremarkable for erythema or surgical scarring. |
| **Tripod Sign:** | Not present. |
| **Minor's Sign:** | Not present. |
| **Palpation:** | Moderate thoracolumbar paraspinal guarding with associated tenderness. There was moderate tenderness at the thoracolumbar, upper lumbar facet joints bilaterally. |

| | |
|---|---|
| **Range of Motion:** | Range of motion moderately diminished in extension with end range pain noted. |
| **Orthopedic:** | |
| Facet Loading | Standing Kemp's was provocative for anterior lower rib cage pain but palliative for lumbar spine complaints. |
| Disc Loading | Sitting Kemp's was positive for discogenic pain.<br>Farfan Torsion and Farfan Compression were negative. |
| Triad of DeJerine | Negative for space occupying lesion / disc protrusion / disc extrusion. Pain was localized to the thoracolumbar, upper lumbar regions. |
| Sphinx Text | Negative for lumbar central canal stenosis. |
| SI Loading | Sacroiliac Compression was positive for left-sided SI joint involvement.<br>Nachlas was negative. |
| **Nerve Tension Test** | |
| Sitting SLR | Bechterew's was negative for pain radiation into the posterior lower extremities. |
| Straight Leg Raise | SLR was negative for pain radiation into the posterior lower extremities. There was localized right-sided lumbosacral pain reported. |
| Femoral N. Stretch | Negative for pain radiating along the femoral nerve distribution. |

**Neurologic Examination**:

| | |
|---|---|
| Reflexes | Deep tendon reflexes were intact. Babinski's pathologic reflex was not present. |
| Sensory | Perception of pin prick and light touch was graded +2/2 throughout the lower extremities. |
| Motor | Voluntary motor function was normal in all extremities. There was no evidence of atrophy or fasciculations. Strength was graded +5/5 throughout the lower extremities. |

**ICD-10**:
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**UPDATED DIAGNOSES**:

***Related to the Industrial Rollover OHV Crash (04/09/22):***

1. Thoracolumbar musculoligamentous injury
    a. Clinical facet mediated pain
    b. Clinical discogenic pain generator
    **a. MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.

   b. **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
   a. Rule out rib cage fracture
   1. **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
   2. **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**RECOMMENDATIONS**: The patient is not progressing as anticipated. He has not been able to present for follow up treatment due to lack of authorization from his workers compensation. The patient's functional assessment / outcome measures are not demonstrating acceptable improvement. At this juncture, we will implement the following recommendations in the patient's treatment plan:

1. Referral for pain management consultation.

2. Reinitiate conservative treatment measures.

In addition to the update evaluation, the patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

The patient will be given a note to leave work early with increased symptomatology.

**CPT:** 99214–Detailed Office Visit
97014–Electrical stimulation (unattended)
97010–Hot or cold pack application

Time: 30 minutes of time was spent reviewing the patient's current status, performing the examination, discussing my recommendations and treatment plan with the patient, and completing the charting for this encounter.

Respectfully submitted,

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **1/25/2023**
**File #:** **19630**

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporting continued lower back and rib cage pain. The requested bone scan has been denied by the patient's workers comp insurance. He reports that performing core exercises increases his preexisting shoulder pain. However, if the takes a break while performing them, it is tolerable. Increased pain in the shoulders is not severe.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the thoracolumbar, rib cage and lumbar musculautre.

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***
Thoracolumbar musculoligamentous injury
a. Clinical facet mediated pain
b. Clinical discogenic pain generator

**MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.

**X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.

Rib cage sprain/strain injury
a. Rule out rib cage fracture

**CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.

**X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** The requested bone scan to rule out the rib cage fracture was denied. At this point, we will continue supervised active core rehab within tolerance. The patient is able to perform the

exercises without significantly increasing his shoulder pain if he takes periodic breaks. We discussed the importance of avoiding exercises if they increase his pain significantly. The patient indicated an understanding of our conversation.

***Treatment Rendered:*** The patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

The patient was started on the stationary bicycle for an appropriate warm up period. This was followed by 15 minutes of supervised active lumbopelvic / abdominal core rehabilitation, which included abdominal crunches, bridge exercises and abdominal oblique exercises.

After verbal informed consent was obtained, I applied a pre-manipulative position and there were no containdications to the procedure. Fixations in the lumbar region were corrected utilizing very cautious lumbar pump maneuvers. No thrust applied. Tightness was greater on the right. The patient responded well to joint manipulation today. There were no observed or reported adverse effects.

***Treatment Plan:*** Continue conservative treatment. An additional 8 visits is requested at this time.

***Work Status:*** Working full time.

**ICD-10**:
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT**:
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)
97110–Therapeutic Procedure; 15 Min/Unit
98940–CMT; 1 2 Spinal Regions

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

| | |
|---|---|
| **Name:** | **Boruchowitz, David** |
| **Date of Exam:** | **1/20/2023** |
| **File #:** | **19630** |

# *Rehabilitation*

**SUBJECTIVE:** The patient presented for supervised active thoracolumbar / core rehabilitation.

**OBJECTIVE:** The patient was able to complete the rehabilitative exercises.

**ASSESSMENT**:
1. Unchanged

**PLAN:**
***Discussion:*** None.

***Treatment Rendered:*** The patient was started on the stationary bicycle for an appropriate warmup period. This was followed by 15 minutes of supervised active thoracolumbar / core rehabilitation, which included abdominal crunches, bridge exercises, abdominal oblique exercises, and proprioceptive training on the balance board. This was followed by heat with interferential current application.

***Treatment Plan:*** Continue thoracolumbar / core rehabilitation.

**ICD-10:**
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:**
97110–Therapeutic Procedure; 15 Min/Unit
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)

Troy D. Russell

Troy D. Russell, DC
DIR Designated Rating Physician

Electronically signed by Troy D. Russell, D.C.

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

| | |
|---|---|
| **Name:** | **Boruchowitz, David** |
| **Date:** | **1/17/2023** |
| **File #:** | **19630** |

# *Chart Note*

**SUBJECTIVE:** The patient presents reporting that his lower back pain has been more pronounced today. Onset occurred insidiously but he notes increased pain with prolonged sitting. He does try to get up frequently to gain relief. Rib cage pain persists.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the thoracolumbar, rib cage and lumbar musculautre.

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***
1. Thoracolumbar musculoligamentous injury
    a. Clinical facet mediated pain
    b. Clinical discogenic pain generator
    **a. MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
    **b. X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
    a. Rule out rib cage fracture
    **a. CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
    **b. X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** None.

***Treatment Rendered:*** The patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

The patient was started on the stationary bicycle for an appropriate warm up period. This was followed by 15 minutes of supervised active lumbopelvic / abdominal core rehabilitation, which included abdominal crunches, bridge exercises and abdominal oblique exercises.

***Treatment Plan:*** Continue conservative treatment. Await authorization for bone scan to rule out occult rib cage fracture.

***Work Status:*** Working full time.

**ICD-10**:
M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT**:
99212–Limited Office Visit
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)
97110–Therapeutic Procedure; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

ADVANCED SPINE & REHABILITATION

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

| | |
|---|---|
| **Name:** | **Boruchowitz, David** |
| **Date:** | **1/9/2023** |
| **File #:** | **19630** |

# *Chart Note*

**SUBJECTIVE:** The patient presents today reporing lower back pain, 4/10. He feels that his pain is more accurately described about the lumbar, thoracolumbar and rib cage regions as opposed to only the lumbar region.

The patient reports 3 episodes of severe pain since his last visit. He noted "waking up in a panic" one night after snorkeling earlier in the day. He had to stretch and lie on his side with a pillow used for support. He also reports several episodes of less pronounced pain.

**OBJECTIVE:** Myofascial guarding and tenderness were noted in the thoracolumbar and lumbar musculautre. Facet loading in the lumbar region elicited lumbar spine pain and contralateral rib cage pain.

**Rib Cage:**

| | |
|---|---|
| **Observation:** | The patient was able to breathe normally. Breathing did not appear labored or difficult. |
| **Palpation:** | Palpation of the anterolateral lower rib cage was graded 10/10 on the right and 7/10 on the left. |
| **Ecchymosis:** | Not present. |
| **Orthopedic:** | |
| Chest Expansion | There was no increased pain reported with deep inspiration. There was no paradoxical chest wall excursion with inspiration. |
| Sternal Compress | Negative for sternal/costosternal pain. |
| AP/Lat Ribcage | Positive for anterolateral rib cage pain bilaterally. |

**ASSESSMENT**:
***Related to the Industrial Rollover OHV Crash (04/09/22):***
1. Thoracolumbar musculoligamentous injury
   Clinical facet mediated pain
   Clinical discogenic pain generator

   1. **MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
   2. **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.

1. Rib cage sprain/strain injury
   Rule out rib cage fracture
   1. **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
   2. **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***
1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**
***Discussion:*** Today, the patient indicated that his pain involves the thoracolumbar region and bilateral rib cage as opposed to only the lumbar region. Exam findings were significant for anterolateral rib cage involvement bilaterally. I am concerned over occult rib fractures and am requesting authorization for bone scan to out such.

***Treatment Rendered:*** The patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

***Treatment Plan:*** Continue conservative treatment. Request bone scan to rule out occult rib cage fracture. Rib cage tenderness is pronounced.

***Work Status:*** Working full time.

**ICD-10**: M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT**: 99213–Expanded Office Visit
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Name:** **Boruchowitz, David**
**Date:** **11/18/2022**
**ID #:** **19630**

# *Manual Therapy*

**Subjective:** The patient presented (according to the treatment plan) for manual therapy.

**Objective:** Myofascial involvement.

**ICD-10:** M62.830-Muscle spasm of back

**Plan:** The patient underwent 55-60 minutes of manual therapy, which includes various techniques, e.g., active / PNF stretching, trigger point release, myofascial release, etc. The purpose of the manual therapy is to increase circulation, promote muscular relaxation, increase active pain-free range of motion, increase extensibility of the musculature, and to facilitate the return to functional activities.

**CPT:** 97140–Manual Therapy Techniques; 15 Min/Unit

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

ADVANCED SPINE & REHABILITATION

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

| | |
|---|---|
| **Name:** | **Boruchowitz, David** |
| **Date:** | **11/16/2022** |
| **File #:** | **19630** |
| **Date of Injury:** | **4/9/2022** |

# *Initial Report*

**CURRENT STATUS / CHIEF COMPLAINTS**:

1. Mid to Lower Back Pain
2. Bilateral Rib Pain

**HISTORY**: The patient was the restrained driver of an OHV that rolled multiple times in a crash before coming to rest upside down. The patient was evaluated at Desert View Hospital emergency room where he underwent CT evaluation. Following additional evaluation at Intermountain Healthcare, the patient underwent radiographic evaluation of the lumbar spine. The patient underwent evaluation with Affiliated Physical Therapy. No other treatment has been rendered.

The patient presents to our facility for consultation and evaluation of the above presenting chief complaints. Mid to lower back pain is mapped out over the thoracolumbar region and is described as a constant sharp stabbing pain with pain intensity radiated had a 5-10/10. Rib cage pain radiates from the thoracolumbar region around the rib cage to the anterior aspect and is described as a constant sharp stabbing pain with pain intensity rated at a 9-10/10. He denies lower extremity radiating pain. Provocative factors include lying down, pushing his son in a wheelchair, lifting, walking, prolonged sitting, standing and travel. Ibuprofen and adjusting while seated offer minimal relief.

**PAST HISTORY**: Past history was negative for prior lower back injuries. The patient reports multiple shoulder and wrist injuries and subsequent surgeries over the years.

1. Type 2 diabetes
2. Sleep apnea

**EXAMINATION:**

**Vitals:**

BP: B/P Left Arm Sitting 111/76
Height: 5' 11"
Weight: 265 lbs 6 oz
BMI: 37

*BP: Normal: 120 / 80; Prehypertensive: 120-139 / 80-89; Hypertension: Stage 1: 140-159 / 90 -99; Stage 2: 160+ / 100+*

*BMI: Underweight 0-18.4; Healthy 18.5-25; Overweight 25-29.9; Obese 30+*

**Psychiatric:** Mood and affect were appropriate. Alert and oriented x 4. No short term memory deficits.

**Skin:** No cyanosis. Normal turgor.

**Neck:** No thyroid enlargement.

**Lymphatics:** No lymphadenopathy in the anterior or posterior cervical chains.

**Respiratory:** Normal respiratory effort. Normal chest expansion with deep inspiration.

**ENT & Mouth:** Exterior inspection of ears and nose was unremarkable. Hearing grossly intact. Normal lips, teeth and gums.

**Cardiovascular:** No jugular distention. No peripheral edema.

**Thoracolumbar Spine:**

**Observation:** Unremarkable for erythema or surgical scarring.

**Tripod Sign:** Not present.

**Minor's Sign:** Not present.

**Palpation:** Moderate thoracolumbar paraspinal guarding with associated tenderness. There was moderate tenderness at the thoracolumbar, upper lumbar facet joints bilaterally.

**Range of Motion:** Range of motion moderately diminished in extension with end range pain noted.

**Orthopedic:**

Facet Loading: Standing Kemp's was positive for moderate ipsilateral facet mediated pain. Pain radiated around the lower rib cage ipsilaterally.

Disc Loading: Sitting Kemp's was positive for discogenic pain.
Farfan Torsion and Farfan Compression were positive for discogenic pain.

Triad of DeJerine: Positive for space occupying lesion / disc protrusion / disc extrusion. Pain was localized to the thoracolumbar, upper lumbar regions.

Sphinx Text: Negative for lumbar central canal stenosis. Localized upper lumbar spine pain reported.

SI Loading: Sacroiliac Compression was negative for SI involvement.
Hibb's was negative for SI involvement or hip joint proper complaints.

**Nerve Tension Test**

Sitting SLR: Bechterew's was negative for pain radiation into the posterior lower extremities.

| | |
|---|---|
| Femoral N. Stretch | Negative for pain radiating along the femoral nerve distribution. |

**Neurologic Examination**:

| | |
|---|---|
| Reflexes | Deep tendon reflexes were intact. Babinski's pathologic reflex was not present. |
| Sensory | Perception of pin prick and light touch was graded +2/2 throughout the lower extremities. |
| Motor | Voluntary motor function was normal in all extremities. There was no evidence of atrophy or fasciculations. Strength was graded +5/5 throughout the lower extremities. |

**PAIN STATUS INVENTORIES:**

**Pain Drawing:** The patient completed a pain drawing using symbols to describe sensations. This drawing was consistent with verbally stated complaints.

**The Functional Rating Index Questionnaire:** The Functional Rating Index is a 10 question survey that can be quickly administered and scored. Questions relate to various aspects of function and behavior (pain intensity, sleeping, personal care, travel, work, recreation, frequency of pain, lifting, walking, and standing), in regards to the spine. This self-report questionnaire is considered a valid measure of an individual`s perceived disability. Each of the 10 questions has 5 answer choices -- the patient chooses one. The answer choices are on a scale with values from 0-4. All answers added, then divided by 0.4 to give a percentage disability (final index). The final index score is then compared to the following categories: 0-8% no disability, 10-28% mild disability, 30-48% moderate disability, 50-68% severe disability, and 70-100% complete disability.

| Date | Functional Rating Index |
|---|---|
| 11/16/2022 | 32% |

**ICD-10**:

M62.830-Muscle spasm of back
S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CLINICAL IMPRESSIONS:**

***Related to the Industrial Rollover OHV Crash (04/09/22):***

1. Thoracolumbar musculoligamentous injury
    a. Clinical facet mediated pain
    b. Clinical discogenic pain generator

***Complicating Factors / Comorbidities:***

1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**PLAN:**

1. Instigate conservative treatment.
2. Schedule the following imaging studies:
   3. Lumbar MRI
4. Prior emergency room records/diagnostic imaging results will be requested.

**DISCUSSION:** The patient was involved in an industrial-related rollover OHV crash dated 04/09/22. Clinical examination revealed the above clinical impressions.

At this juncture, ER records and diagnostic imaging results will be requested. At this point, authorizations requested for lumbar MRI. The patient has been suffering with his complaints since April of this year without any significant relief gained. Pain intensity continues to be pronounced with a rating of 10/10 at its worst.

Treatment Plan: Treatment at our facility may consist of instrument assisted or manual joint manipulation, appropriate physiotherapy modalities, deep tissue myofascial release, and rehabilitation exercises. Treatment frequency will initially be 3x/wk. As the patient demonstrates subjective and objective improvement the treatment frequency will taper and transition to become more active and less passive. Outcome measures will be utilized to help assess patient progress, as well as functional improvement in reference to activities of daily living. Update examination will be performed within the next 3-4 weeks.

With injuries of this nature, there is an inherent weakness in the injured regions. This will be addressed with appropriate rehabilitative stretching and strengthening protocols - typically at the 2-6 week mark.

Treatment Rendered: The patient underwent moist heat application for 10-15 minutes to promote vasodilation, reduce myospasms/hypertonic muscles, decrease pain, increase mobility/flexibility and promote healing. Interferential current was utilized to relieve pain, stimulate muscles and increase blood flow.

Manual joint manipulation may be implemented once appropriate imaging has been reviewed to rule out contraindications and with the patients stated consent. The patient was instructed to utilize cryotherapy and moist heat at home, with specific details described in the *Whiplash: Patient Information Shee*t handout.

Causation: Prior to this crash, the patient was in a normal state of good health without any pain, pain related issues or functional loss associated with the above clinical impressions. The patient indicated the etiology of the pain and injuries were from the OHV crash in question.

The reported injury mechanism and trauma biomechanics are consistent with the reported symptoms and exam findings. The patient has no suspected contributory co-morbidity issues and gave good consistent effort, was a good historian, and there were no signs of symptom magnification or pain fixation in the history, observation or exam.

Handout: The patient was given information on whiplash type injuries (see attached *Whiplash: Patient Information Sheet*) with emphasis on stages of healing and treatment, as

well as instructions for home based self care measures.

**CPT:** 99204–Comprehensive New Patient
97010–Hot or cold pack application
97014–Electrical stimulation (unattended)

Time: 45 minutes of time was spent reviewing the patient's intake paperwork, taking the history, assessing PMH, performing the examination, discussing my recommendations and treatment plan with the patient and completing the charting for this encounter.

Respectfully Submitted,

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

**Henderson, NV Office**
715 Mall Ring Circle, Suite 100
Henderson, NV 89014
Phone: (702) 990-2225
Fax: (702) 990-7711

**Summerlin, NV Office**
241 N. Buffalo Drive, Suite 100
Las Vegas, NV 89145
Phone: (702) 852-1390
Fax: (702) 577-3334

**North Las Vegas, NV Office**
3603 N. Las Vegas Blvd, Suite 110
Las Vegas, NV 89115
Phone: 702-867-1745
Fax: 702-867-1745

**St. George, UT Office**
619 South Bluff Street, Suite 100
St. George, UT 84770
Phone: 435-656-0234
Fax: 435-656-2622

**Patient Name:** **Boruchowitz, David**
**Date of Injury:** **4/9/2022**
**Date of Exam:** **8/9/2023**

# *Outcome Assessment*

The patient's outcome assessment measures were reassessed today. Outcome measures help assess the change in a patient's functional health status, e.g., quality of life, activities of daily living, work, hobbies, and economic efficiency. As a result, proper utilization of outcome measurement tools help determine whether or not a given treatment approach is making a measurable difference in a patient's recovery.

**SUBJECTIVE**: The patient has been undergoing conservative treatment at our facility. He underwent pain management consultation earlier today and was recommended for epidural injections. The patient's current status was reported as follows:

1. **Mid to Low Back Pain:**

   The patient reports persistent mid to lower back pain.
   Pain / symptom intensity rating over the past week 3-10/10.
   Pain / symptoms increased with prolonged staning,sitting and while sleeping sleeping.

2. **Bilateral Rib Pain:**

   70% overall improvement since beginning treatment.
   Pain / symptom intensity rating over the past week 0-10/10.
   Pain / symptoms increased with laying in one position.

**PAIN STATUS INVENTORIES:**

**Pain Drawing:** The patient completed a pain drawing using symbols to describe sensations. This drawing was appropriate with complaints.

**The Revised Oswestry Low-Back Pain Questionnaire:** The Revised Oswestry Pain Questionnaire (N. Hudson, K. Tome, A Breem; 1989) is a 10 question survey that can be quickly administered and scored. Questions relate to various aspects of function and behavior (pain intensity, personal care, lifting, walking, sitting, standing, sex life, social life, sleeping, traveling), in

regards to the lower back. This is a self-report questionnaire which is considered a valid measure of an individualperceived disability. Each of the 10 questions has 6 answer choices -- the patient chooses one. The answer choices are on a scale with values from 0-5. All answers added, then multiplied by 2 to give a percentage disability (final index). The final index score is then compared to the following categories: 0-8% no disability, 10-28% mild disability, 30-48% moderate disability, 50-68% severe disability, and 70-100% complete disability.

| **Date** | **Revised Oswestry Questionnaire** |
|---|---|
| 08/09/2023 | 42% |
| 06/30/2023 | 46% |
| 11/16/2022 | 32% |

**UPDATED DIAGNOSES**:

***Related to the Industrial Rollover OHV Crash (04/09/22):***

1. Thoracolumbar musculoligamentous injury
    a. Clinical facet mediated pain
    b. Clinical discogenic pain generator
    **a.** **MRI Lumbar (12/13/22):** Multilevel degenerative changes, worst at L5-S1 where there is minimal right and mild left neural foraminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Levocurvature of the lumbar spine.
    **b.** **X-Ray Lumbar (06/01/22):** Multilevel degenerative disc disease.
2. Rib cage sprain/strain injury
    a. Rule out rib cage fracture
    **b.** **CT Chest (04/10/22):** No evidence of acute intrathoracic injury. No acute osseous abnormalities are present.
    **c.** **X-Ray Chest (05/13/22):** Normal chest. No skeletal abnormalities of significance.

***Complicating Factors / Comorbidities:***

1. Multiple rollover crash.
2. Chronicity of injury without formal course of treatment.

**RECOMMENDATIONS**: The patient is progressing very slowly with conservative treatment. The patient's functional assessment / outcome measures are demonstrating minimal improvement. At this juncture, the patient's care has been transferred to pain management by the Worker's Comp carrier. We will await referral back to our facility following recommended procedures to continue care.

***Time:*** Today, I spent 20 minutes of direct time with the patient reviewing their current status, outcome measures, discussing my recommendations and completing the charting for this encounter. The patient indicated an understanding of our discussion and we will implement the above treatment plan.

**ICD-10**: M62.830-Muscle spasm of back

S23.3XXA-Sprain of ligaments of thoracic spine, initial encounter
S33.5XXA-Sprain of ligaments of lumbar spine, initial encounter

**CPT:** 99213–Expanded Office Visit

Respectfully submitted,

Alexander S. Janda, D.C.
Designated Rating Chiropractic Physician
State of Nevada, Division of Industrial Relations

This report was completed with voice recognition software.
Digitally signed by Dr. Janda

REF #20944856

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 31, 2023

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 000010177363000000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

This letter is in reference to your claim for Long Term Disability benefits.

While reviewing your claim, we have found that we need additional information. Please sign and date the enclosed authorization form and return it to us by 11/23/2023.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure: General Authorization

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #20944856

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

   Name of Insured: ______________________________
   (Last) (First) (Middle)

   Date of Birth: ____________________ Social Security Number: ____________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____________________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME**: ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

REF #20944856

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

03/15/2009 23:18 77575142‾‾ NCSO PAGE 01/02

751 6307

unum

Underwritten by:
Unum Life Insurance Company
2211 Congress Street, Portland,

**County of Nye**
Long Term Disability Insurance
Enrollment Form
**Policy #140751/Div #____**

**Please complete this form in its entirety. Blank fields will cause s ... lays in processing.**

**Employee Social Security Number** **Gender** M [M] F [ ] **Date** ... **Hours Worked Per Week** 40<

**Employee First Name** DAVID **M.I.** E **Last Name** BORUCHOWITZ

**Employee Street Address** **City** **State** **Zip Code**

**Original Date of Hire** 02/21/2006 **Annual Salary** 60,000 **Occupation** DETECTIVE

☐ Exempt ☒ Non-Exempt

☒ Date entered into an eligible class (*ex: part time to full time*) or
☐ Rehire Date or
☐ Date of promotion to an eligible class

02/21/2006 **(If unknown, consult with your Plan Administrator to complete.)**

| Rates* per $100 of Covered Salary | | | |
|---|---|---|---|
| **Age** | **Rate** | **Age** | **Rate** |
| < 25 | $0.11 | 50 – 54 | $0.99 |
| 25 - 29 | $0.16 | 55 – 59 | $1.23 |
| 30 - 34 | $0.25 | 60 – 64 | $1.25 |
| 35 - 39 | $0.37 | 65 – 69 | $1.64 |
| 40 - 44 | $0.50 | 70 + | $2.00 |
| 45 - 49 | $0.72 | | |

*LTD rates are based on five-year increments. Rates increase as you age.

To calculate the per-paycheck cost for this coverage, complete the calculations below.
**Note:** *If your annual salary exceeds* **$120,000** *use* **$120,000** *as your annual salary in the calculation.*

______ ÷ 100 = ______ X ______ = ______ ÷ 24 = ______
Annual Salary | Your Rate | Annual Cost | # Paychecks per Year | **Cost per Paycheck***

* Final cost may vary slightly due to rounding.

☒ **Yes,** I would like to participate. I authorize my employer to deduct from my salary or wages the necessary premium for this coverage. My signature verifies the accuracy of information contained on this form.

I understand the effective date of my coverage will be delayed if I am not in active employment because of an injury, sickness, temporary lay-off or leave of absence on the date this insurance would otherwise become effective. **I have also read and understand the information in the Plan Highlights, including all statements regarding exclusions and benefit amounts and offsets.**

☐ **No,** I do not wish to participate. I understand that evidence of insurability will be required, at my own expense, if I decide to elect this coverage in the future.

Employee Signature: [signature] Date: 03/16/2009

Return Forms To: ______ By: __/__/____

*51100 000045 00357*

*51100 000045 00668*

# COUNTY OF NYE

## *CLASS TITLE: OPERATIONS CAPTAIN*

**BASIC FUNCTION:**
Under direction of the Sheriff, plans, coordinates and directs law enforcement activities and operations; supervises law enforcement operations on an assigned shift and administers all Sheriff's Office policies and procedures; reviews performance of subordinates and performs other law enforcement work as required.

**REPRESENTATIVE DUTIES:** *(Performance of these functions is the reason the job exists. Assigned job tasks/duties are not limited to the representative duties).*

1. Directs operations and reviews requests for assistance, staffing and equipment; develops financial status and other reports and submits to management; determines the effectiveness of work units in meeting the goals and objectives of the departments and divisions.
2. Reviews requests for services and assigns to the appropriate division, section or unit ensuring proper staffing and resources are available; coordinates assignments based on changes in priorities, equipment and resources in relation to current assignments and activities, available personnel, and budgetary constraints.
3. Directs Lieutenants, Sergeants, Deputies and Dispatchers in law enforcement activities by planning, organizing and reviewing operations and paperwork generated. Provides management oversight and guidance to the Operations Division, Detention Division and others as assigned.
4. Performs spot checks and patrols designated areas monitoring and supervising subordinates to insure law enforcement services are provided.
5. Directs operations and takes command of personnel during demonstrations.
6. Develops and maintains cooperative relationships with State and federal law enforcement agencies, community organizations, the judicial system and other state agencies by responding to inquiries or requests for services and questions regarding policy and procedure; establishes agreements regarding joint operations, staffing levels, and investigative operations.
7. Assists in preparation of Sheriff's Office budget, monitors budget, and attends all budget hearings as requested by the Sheriff.
8. Prepares specifications for bids, prepares notifications for the securing of bids for items to be purchased by Sheriff's Office.
9. Oversees and maintains recordkeeping and reporting systems by developing and ensuring proper policy and procedures are utilized; tracks and maintains information; develops security policy and procedures and reviews requests for

information; authorizes the release and dissemination of material in accordance with legal requirements and division policy.

10. Reviews and approves reports before submission to the D.A. office and/or other agencies as assigned.
11. In the absence or incapacity of I.A. Investigators, performs I.A.'s as required and/or recommends appropriate disciplinary action when assigned.
12. Provides interpretation of department and division policies and procedures to the general public and news media, public officials, or on a statewide basis, to other agencies as directed; releases information to the local media concerning division operations, arrests, seizures and related incidents as appropriate.
13. Reviews applications for employment, assigns background investigations, interview applicants, conducts pre-testing of applicants, and provides recommendations to Sheriff.
14. Oversees, conducts, coordinates in-house audits, develops after action plans, identifies corrective actions, lessons learned, provides reports to management and implements approved actions and lessons learned; assists and coordinates out of house audit activities, develops corrective actions and coordinates with county, state, and federal entities to satisfy corrective actions and identifies and assists in the implementation of lessons learned and prepares the documents for the Sheriff's signature.
15. Conducts studies pertinent to assignments and reviews requests for services throughout the State; makes recommendations regarding new or expanded programs, future goals and objectives, staffing levels and equipment needs, and submits recommendations and proposals for review.
16. Reviews and analyzes statistical data and records regarding division activities; participates in the development of department and division goals and objectives, long-range plans and programs, budgets, department and division policy and procedure, and legislation and its implementation.
17. Trains, supervises and evaluates the performance of subordinate staff; participates in the applicant screening process; assess staff development and training needs and counsels staff in work-related activities, professional growth, and career development.
18. Receives and adjusts complaints from the public, in coordination with or in the absence of the Undersheriff, when needed, conducts investigations and/or recommends appropriate disciplinary action in situations where employees fail to meet standards or comply with agency policies and regulations;
19. Attends variety of meetings on behalf of Sheriff and provides updates as directed.
20. Performs peace officer and other related duties as assigned.

**EDUCATION AND EXPERIENCE:**
Any combination of training, education, and experience that would provide the required knowledge and abilities. A typical way to gain the required knowledge and ability is:

graduation from high school or a G.E.D. equivalency and/or work experience directly related to the duties and responsibilities of the class.

Five (5) years of increasingly responsible law enforcement experience in all major phases of police work including one year of administrative and supervisory experience at a level comparable to a Nye County Sheriff's Sergeant or Lieutenant position.

**LICENSES:**
Must possess a valid Nevada Class C driver's license. Must possess a valid Basic, Intermediate, and Supervisory (Management) P.O.S.T. Certificate.

**WORK DIRECTION, LEAD AND SUPERVISORY RESPONSIBILITIES:**
Sergeants, deputies, detention deputies, animal control officers, may occasionally encompass dispatchers and administrative staff.

**CONTACTS:**
Co-workers, other law enforcement agencies, general public, vendors, district attorney's office, judges, prisoners, news media, State and Federal officers and employees.

**PHYSICAL EFFORT:**
The physical and mental requirements described here are representative of those that must be met by an employee to successfully perform the essential functions of the job

Normal law enforcement patrol and administrative duties—lifting and subduing citizens.

In compliance with applicable disability laws, reasonable accommodations may be provided for qualified individuals with a disability who require and request such accommodations. Incumbents and individuals who have been offered employment are encouraged to discuss potential accommodations with the employer.

**WORKING CONDITIONS:**
Work is performed under the following conditions: Law enforcement environment—subject to injury due to law enforcement activities.

pyActHstSumDet

10/24/2023 9:55:21AM

# Activity History Summary/Detail Report

Nye County, Nevada

PP ID's: 1562,1561,1560,1559,1558,1557



| Emp # | Employee Name | Hour Type | Date | Src | Hours | Rate | Amount | Acct # / PA # |
|---|---|---|---|---|---|---|---|---|
| **Pay period ending: 05/14/2023 ID: 1557** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 05/01/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | plaj | 05/01/2023 | A | -30.00 | 0.0000 | 0.00 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/01/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/02/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/03/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/04/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/08/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/09/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | plu | 05/10/2023 | W | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | plu | 05/11/2023 | W | 10.00 | 65.5300 | 655.30 | |
| | **Pay period ending: 05/14/2023 ID: 1557 Totals** | | | | **50.00** | | **5,688.00** | |
| **Pay period ending: 05/28/2023 ID: 1558** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 05/15/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | plu | 05/15/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/16/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | plaj | 05/17/2023 | A | 30.00 | 0.0000 | 0.00 | |
| 000640 | BORUCHOWITZ, DAVID | plu | 05/17/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | plu | 05/18/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/22/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/23/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/24/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/25/2023 | A | 10.00 | 65.5300 | 655.30 | |
| | **Pay period ending: 05/28/2023 ID: 1558 Totals** | | | | **110.00** | | **5,688.00** | |
| **Pay period ending: 06/11/2023 ID: 1559** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | hday | 05/29/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 05/29/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/30/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 05/31/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/01/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/05/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/06/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/07/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/08/2023 | A | 10.00 | 65.5300 | 655.30 | |
| | **Pay period ending: 06/11/2023 ID: 1559 Totals** | | | | **80.00** | | **5,688.00** | |
| **Pay period ending: 06/25/2023 ID: 1560** | | | | | | | | |

**Activity History Summary/Detail Report**

**Nye County, Nevada**

**PP ID's: 1562,1561,1560,1559,1558,1557**

| Emp # | Employee Name | Hour Type | Date | Src | Hours | Rate | Amount | Acct # / PA # |
|---|---|---|---|---|---|---|---|---|
| **Pay period ending: 06/25/2023 ID: 1560 (Continued)** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 06/12/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/12/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/13/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/14/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/15/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/16/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | hday | 06/19/2023 | A | 10.00 | 65.5300 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/20/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/21/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/22/2023 | D | 8.00 | 65.5300 | 524.24 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/23/2023 | D | 6.00 | 65.5300 | 393.18 | |
| | **Pay period ending: 06/25/2023 ID: 1560 Totals** | | | | **80.00** | | **5,688.00** | |
| **Pay period ending: 07/09/2023 ID: 1561** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 06/26/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/26/2023 | W | 10.00 | 65.5301 | 655.31 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/27/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/28/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/29/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 06/30/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | hday | 07/04/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 07/05/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | reg | 07/06/2023 | W | 10.00 | 65.5301 | 655.30 | |
| | **Pay period ending: 07/09/2023 ID: 1561 Totals** | | | | **80.00** | | **5,688.01** | |
| **Pay period ending: 07/23/2023 ID: 1562** | | | | | | | | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/10/2023 | W | 10.00 | 65.5301 | 655.31 | |
| 000640 | BORUCHOWITZ, DAVID | lla3 | 07/10/2023 | Z | 0.00 | 0.0000 | 445.60 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/11/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/12/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/13/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/17/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/18/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/19/2023 | W | 10.00 | 65.5301 | 655.30 | |
| 000640 | BORUCHOWITZ, DAVID | alu | 07/20/2023 | W | 10.00 | 65.5301 | 655.30 | |
| | **Pay period ending: 07/23/2023 ID: 1562 Totals** | | | | **80.00** | | **5,688.01** | |

**Activity History Summary/Detail Report**

**Nye County, Nevada**

**PP ID's: 1562,1561,1560,1559,1558,1557**

| Hour Type | | Hours | Amount |
|---|---|---|---|
| **Employee Count:** 1 | | 480.00 | 34,128.02 |

**Activity Hour Type Recap**

| | | Hours | Amount |
|---|---|---|---|
| alu | ANNUAL LEAVE USED | 80.00 | 5,242.41 |
| hday | HOLIDAY | 30.00 | 1,965.90 |
| lla3 | NCLEA LONGEVITY After 12/1/98 | 0.00 | 2,673.60 |
| plaj | PERSONAL LEAVE ADJUSTMENT | 0.00 | 0.00 |
| plu | PERSONAL LEAVE USED | 50.00 | 3,276.50 |
| reg | REGULAR HOURS | 320.00 | 20,969.61 |
| | **Recap Grand Total:** | 480.00 | 34,128.02 |



Lincoln/Boruchowitz 0926

REF #20844956

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 23, 2023

DAVID E BORUCHOWITZ

Re: Policyholder: Nye County
Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear David:

We have completed our initial review of your claim for Long Term Disability and have determined additional information is needed prior to benefits being considered.

To determine disability, we must evaluate medical documentation to determine if your condition precludes you from performing the main duties of your occupation.

Medical documentation includes, but is not limited to, office and treatment records, testing results, therapy notes, consultation reports and operative reports. A note from your physician, without any supporting medical documentation as outlined above, may not be sufficient to consider your claim.

Please provide The Lincoln National Life Insurance Company with the following documentation within the next 30 days:

- **Attending Physician Statement**

In addition, we have been in contact with your Employer regarding additional information required from them to continue processing your claim.

Once all of the requested information has been received, we will continue our review of your claim.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #20844956

If you are applying for Social Security Disability or have been awarded, we encourage you to request a copy of your file directly from the Social Security Administration and submit the information directly to Lincoln. In addition, if you submit additional information to the SSA, please send a copy to Lincoln. If we receive this information, we will evaluate it as part of your claim.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions.

**Get to know Lincoln's Online Disability Claims Portal**
If you haven't already checked out our secure portal, you'll want to do so. It is a great resource for information about the status of your claim and is always available. Here you can access forms, check claim and payment status, report your return to work, and upload documents to support the processing of your claim. You can visit www.LincolnFinancial.com to register.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

Enclosure: APS LTD

Lincoln Financial Group®

LONG TERM DISABILITY CLAIM FORM PHYSICIAN'S STATEMENT
REF #208449456

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
LincolnFinancial.com

## 1. Patient Information

Full Name (First) (M.I.) (Last Name) Social Security Number

Height Weight Blood Pressure Employer Name

## 2. Diagnosis

Primary ICD diagnostic Code **(Required)**

Primary ICD diagnosis Description

Secondary ICD Diagnosis Code

Secondary ICD Diagnosis Description

**Pregnancy**

☐ Vaginal ☐ C-Section

/___ /______ First Treated

/___ /______ Estimated Delivery

/___ /______ Date of Delivery

Symptoms

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings)

## 3. Disability Circumstances - *Check if applicable*

☐ Illness ☐ Injury ☐ Work Related

Date of:

| /____ /______ | /____ /______ | /___ /______ |
|---|---|---|
| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
| /____ /______ | /____ /______ | /____ /______ |
| Initial Treatment | Most Recent Treatment | Next Treatment |

Dates hospital confined: /_____/___ to /___/___

If work related or injury, summarize circumstances

The Lincoln Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group

LONG TERM DISABILITY CLAIM FORM PHYSICIAN'S STATEMENT

REF #208449956

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
LincolnFinancial.com

## 4. Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| **Lifting/Carrying** | | | | | | **Reaching** | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ________ | Standing | _____ | Crouching | _______ | Overhead | _______ |
| 6-10 lbs. | ________ | Walking | _____ | Crawling | _______ | Desk Level | _______ |
| 11-25 lbs. | ________ | Sitting | _____ | Grasping | _______ | Below Waist | _______ |
| 26-50 lbs. | ________ | Balancing | _____ | Climbing | _______ | | |
| 51-100lbs | ________ | Stooping | _____ | Pushing | _______ | | |
| 100 + lbs | ________ | Kneeling | _____ | Pulling | _______ | | |
| | | Fingering | _____ | Bending | _______ | | |

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence_____ /______ /______

Dressing _______ /______ /______

Transferring _____ /______ /______

Bathing _______ /______ /______

Toileting _______ /______ /______

Eating _______ /______ /______

## 5. Treatment

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

Date patient experienced loss of Cognitive Functioning: __ /____/__

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

## 6. Prognosis

Describe the patients prognosis for recovery

/___/_____ to ______/____ /___

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

## 7. Physician's Information

Name

Phone Number

Fax Number

Street Address

City

State

Zip Code

**Signature**

__ /__ /__
**Date**

The Lincoln Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



Lincoln/Boruchowitz 0930

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Date: Mon Oct 23 14:16:29 CDT 2023
From: Savannah Eddy <Savannah.Eddy@lfg.com>
To: rgott@co.nye.nv.us
Message-ID: <666953001.78.1698088589502.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230082409 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge®

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

October 23, 2023

NYE COUNTY
ATTN Ryanne Gott
2101 E. Calvada Blvd.
Suite 150
Pahrump, NV 89048

Re: Policy Number: 00001017736300000
Claim Number: 1230082409
Claimant: David Boruchowitz

Dear :

We have completed our initial review of the claim for Long Term Disability filed by David Boruchowitz and have determined additional information is needed prior to benefits being considered.

At this time we need the following information from you:

- **Two complete months worth of paycheck stubs prior to day last worked**
- **Job Description**
- **LTD Enrollment form**

We have also requested information from your employee and their attending physician.

We request that this information be provided to our office no later than 12/07/2023. Once the requested information is received, the claim process will continue.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Savannah Eddy
800-423-2765 X 6932
Sr. Claims Examiner, LTD 2
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

CCMSI

05/11/2022

David Boruchowitz

Re: Claim Number: 22J11K236563
Date of Injury: 04/09/2022
Employer: NYE COUNTY / TOWN OF PAHRUMP
Insurer: Nye County / Town of Pahrump
Claims Administrator/Third-Party Administrator: CCMSI
Body Part(s)/Diagnosis: Lower Back Sprain

**NOTICE OF CLAIM ACCEPTANCE**
(Pursuant to NRS 616C.065)

Dear David Boruchowitz

The above referenced claim has been accepted on behalf of Nye County / Town of Pahrump. Please check the information contained in this notice. If you find any of the information to be incorrect, please notify the claims administrator who is handling this claim.

If you disagree with the above determination, you do have the right to appeal by requesting a hearing before a Hearing Officer by completing the enclosed Form D-12a and sending it to the State of Nevada, Department of Administration, Hearings Division. **Your appeal must be filed within seventy (70) days after the date on which the notice of this determination was mailed.**

| Department of Administration<br>Hearings Division<br>1050 E. William Street, Ste. 400<br>Carson City, NV 89701<br>(775) 687-8440 | OR | Department of Administration<br>Hearings Division<br>2200 S. Rancho Drive, Ste. 210<br>Las Vegas, NV 89102<br>(702) 486-2525 |
|---|---|---|

If you have any questions, please contact >

Sincerely,

Christine Guerrero
Med Only Claim Representative

Enclosure: D-53, D-12a >

cc:

***Please retain a copy for your records***

D-30 (rev. 10/18)

NOTICE TO ALL INJURED WORKERS
RECEIVING WORKERS' COMPENSATION BENEFITS

In conjunction with the "Notice of Claim Acceptance" letter, the following information is intended to help you with your workers' compensation claim:

1. Please notify this office if you have lost any time from work as a result of your occupational injury or illness. You may by eligible for temporary total disability (TTD) benefits. Any time lost from work cannot be compensated without a disability certificate from your treating physician. Pursuant to NRS 616C.475, a disability certificate must: (1) be issued by the treating physician; (2) must be for a specified period of time; (3) must describe any physical limitation or restrictions imposed by the doctor; and (4) must be signed by the treating physician.

   It is your responsibility, and no one else's, to provide this office with the certificate of disability. Without a current disability certificate, you will not be paid any TTD benefits. Therefore, please obtain a certificate of disability each time you follow up with your physician. Do not rely on the physician to provide one because they do not automatically send a certificate to this office after they evaluate you.

   In addition, you should be turning in a copy of the disability certificate to your employer. It is your responsibility to keep your employer informed of your work status especially if you are released to return to work at light duty. Your employer may be able to provide light duty for you. You cannot be paid TTD benefits if you are released to light duty but you have not given your employer an opportunity to accommodate the restrictions.

2. Please advise this office if you have ever had any prior medical treatment for the body parts covered under your claim. If so, please supply a list of all physicians, hospitals, physical therapy institutes, etc. that you have treated with previously, along with their complete addresses and phone numbers.

3. Under certain specified circumstances you may be eligible for reimbursement for travel to and from receiving medical care. The basic requirement is that you must travel 20 miles or more, on way, from your residence or employment, if during working hours, to the place of medical treatment. If you do not meet this requirement, but you travel 40 miles or more total in any one week for medical care, you may be eligible for mileage reimbursement. If you think you may qualify, please contact this office and we will send you the proper form for submitting you request for mileage reimbursement.

**BRIEF DESCRIPTION OF RIGHTS AND BENEFITS**
**(Pursuant to NRS 616C.050)**

**Notice of Injury or Occupational Disease (Incident Report Form C-1):** If an injury or occupational disease (OD) arises out of and in the course of employment, you must provide written notice to your employer as soon as practicable, but no later than 7 days after the accident or OD. Your employer shall maintain a sufficient supply of the required forms.

**Claim for Compensation (Form C-4):** If medical treatment is sought, the form C-4 is available at the place of initial treatment. A completed "Claim for Compensation" (Form C-4) must be filed within 90 days after an accident or OD. The treating physician or chiropractor must, within 3 working days after treatment, complete and mail to the employer, the employer's insurer and third-party administrator, the Claim for Compensation.

**Medical Treatment:** If you require medical treatment for your on-the-job injury or OD, you may be required to select a physician or chiropractor from a list provided by your workers' compensation insurer, if it has contracted with an Organization for Managed Care (MCO) or Preferred Provider Organization (PPO) or providers of health care. If your employer has not entered into a contract with an MCO or PPO, you may select a physician or chiropractor from the Panel of Physicians and Chiropractors. Any **medical costs** related to your industrial injury or OD will be paid by your insurer.

**Temporary Total Disability (TTD):** If your doctor has certified that you are unable to work for a period of at least 5 consecutive days, or 5 cumulative days in a 20-day period, or places restrictions on you that your employer does not accommodate, you may be entitled to TTD compensation.

**Temporary Partial Disability (TPD):** If the wage you receive upon reemployment is less than the compensation for TTD to which you are entitled, the insurer may be required to pay you TPD compensation to make up the difference. TPD can only be paid for a maximum of 24 months.

**Permanent Partial Disability (PPD):** When your medical condition is stable and there is an indication of a PPD as a result of your injury or OD, within 30 days, your insurer must arrange for an evaluation by a rating physician or chiropractor to determine the degree of your PPD. The amount of your PPD award depends on the date of injury, the results of the PPD evaluation, your age and wage.

**Permanent Total Disability (PTD):** If you are medically certified by a treating physician or chiropractor as permanently and totally disabled and have been granted a PTD status by your insurer, you are entitled to receive monthly benefits not to exceed 66 2/3% of your average monthly wage. The amount of your PTD payments is subject to reduction if you previously received a lump-sum PPD award.

**Vocational Rehabilitation Services:** You may be eligible for vocational rehabilitation services if you are unable to return to the job due to a permanent physical impairment or permanent restrictions as a result of your injury or occupational disease.

**Transportation and Per Diem Reimbursement:** You may be eligible for travel expenses and per diem associated with medical treatment.

**Reopening:** You may be able to reopen your claim if your condition worsens after claim closure.

**Appeal Process:** If you disagree with a written determination issued by the insurer or the insurer does not respond to your request, you may appeal to the **Department of Administration, Hearing Officer,** by following the instructions contained in your determination letter. You must appeal the determination within 70 days from the date of the determination letter at 1050 E. William Street, Suite 400, Carson City, Nevada 89701, or 2200 S. Rancho Drive, Suite 210, Las Vegas, Nevada 89102. If you disagree with the Hearing Officer decision, you may appeal to the **Department of Administration, Appeals Officer**. You must file your appeal within 30 days from the date of the Hearing Officer decision letter at 1050 E. William Street, Suite 450, Carson City, Nevada 89701, or 2200 S. Rancho Drive, Suite 220, Las Vegas, Nevada 89102. If you disagree with a decision of an Appeals Officer, you may file a **petition for judicial review with the District Court**. You must do so within 30 days of the Appeal Officer's decision. You may be represented by an attorney at your own expense or you may contact the NAIW for possible representation.

**Nevada Attorney for Injured Workers (NAIW):** If you disagree with a hearing officer decision, you may request that NAIW represent you without charge at an Appeals Officer Hearing. For information regarding denial of benefits, you may contact the NAIW at: 1000 E. William Street, Suite 208, Carson City, NV 89701, (775) 684-7555, or 2200 S. Rancho Drive, Suite 230, Las Vegas, NV 89102, (702) 486-2830

**To File a Complaint with the Division:** If you wish to file a complaint with the Administrator of the Division of Industrial Relations (DIR), please contact the Workers' Compensation Section, 400 West King Street, Suite 400, Carson City, Nevada 89703, telephone (775) 684-7270, or 3360 West Sahara Avenue, Suite 250, Las Vegas, Nevada 89102, telephone (702) 486-9080.

**For Assistance with Workers' Compensation Issues:** You may contact the State of Nevada Office for Consumer Health Assistance, 3320 West Sahara Avenue, Suite 100, Las Vegas, Nevada 89102, Toll Free 1-888-333-1597, Web site: http://dhhs.nv.gov/Programs/CHA E-mail: cha@govcha.nv.gov

D-2 (rev. 10/20)

State of Nevada
Department of Business & Industry
**Division of Industrial Relations**
*Workers' Compensation Section*

ALTERNATIVE CHOICE OF PHYSICIAN or CHIROPRACTOR
(NRS 616C.090)

A list of the Panel of Treating Physicians or Chiropractors, or those health care providers, with whom your insurer has contracted, can be obtained from your insurer or third-party administrator upon written request. Your insurer or third-party administrator has within **3** working days to provide you the list pursuant to NAC 616C.030.

If within the first 90 days after the date of injury, you are not satisfied with the first treating physician or chiropractor and

> Your insurer has entered into a contract with a managed care organization or with health care providers; you must select an alternative physician or chiropractor according to the terms of the contract. This selection may be made without the prior approval of the insurer. If after choosing your physician or chiropractor, you move to a county not serviced by the contracted managed care organization or health care providers and the insurer deems it impractical for you to continue treating with the physician or chiropractor, you must choose a treating physician or chiropractor who has agreed to the to the terms of the contract unless the insurer authorizes you to choose another physician or chiropractor;

or

> Your insurer has not entered into a contract with an organization for managed care, or with health care providers, you may select an alternative physician or chiropractor from the Panel of Treating Physicians and Chiropractors.

NOTICE: Any further changes in your treating physician or chiropractor must be in writing and approved by the insurer. If, at any time, you are dissatisfied with a physician or chiropractor selected by yourself, the insurer, managed care organization, or health care provider, a change may be made by submitting a written request to the insurer indicating the name of the alternate physician or chiropractor. The insurer shall approve or deny this request within ten (10) days after receipt of the written request or it shall be deemed approved. You will receive written notification if the insurer denies this request which will include the reason for the denial and appeal rights.

D-53 (Rev. 03/16)

NOTICE OF EXPLANATION OF CLOSURE UNDER $800

Pursuant to NRS 616C.235 (3), this is to notify you that your claim may close, with no reopening rights, if medical benefits paid on your claim remain under $800.00. Prior to the closure, a letter, with appeal rights will be sent to you.

**NRS 616C.235** Closure of claim by insurer: Procedure; notice; special procedure if medical benefits less than $800.00. [Effective July 1, 2017.]

2. If, during the first 12 months after a claim is opened, the medical benefits required to be paid for a claim are less than $800.00, the insurer may close the claim at any time after the insurer sends, by first-class mail addressed to the last known address of the claimant, written notice that includes a statement which prominently displays that:

(a) The claim is being closed pursuant to this section;

(b) The injured employee may appeal the closure of the claim pursuant to the provisions of NRS 616C.305 and 616C.315 to 616C.385, inclusive; and

(c) If the injured employee does not appeal the closure of the claim or appeals the closure of the claim but is not successful, the claim cannot be reopened.

3. In addition to the notice described in subsection 2, an insurer shall send to each claimant who
receives less than $800.00 in medical benefits within 6 months after the claim is opened a written notice that explains the circumstances under which a claim may be closed pursuant to subsection
2. The written notice provided pursuant to this subsection does not create any right to appeal the contents of that notice. The written notice must be:

(a) Sent by first-class mail addressed to the last known address of the claimant; and

(b) A document that is separate from any other document or form that is used by the insurer.

4. The closure of the claim pursuant to subsection 2 is not effective unless notice is given as required by subsections 2 and 3.

If you have any questions, please feel free to contact this office.

# REQUEST FOR HEARING - CONTESTED CLAIM

(Pursuant to NAC 616C.274)

REPLY TO: Department of Administration
Hearings Division
1050 E. William Street, Ste. 400
Carson City, NV 89701
(775) 687-8440

OR Department of Administration
Hearings Division
2200 S. Rancho Drive, Suite 210
Las Vegas, NV 89102
(702) 486-2525

| **Employee Information** | | **Employer Information** |
|---|---|---|
| Employee's Name and Address<br>David Boruchowitz | | Employer's Name and Address<br>NYE COUNTY / TOWN OF PAHRUMP<br>101 RADAR ROAD<br>COALDALE, NV 89049 |
| Employee's Telephone Number | Claim No. 22J11K236563<br>Date of Injury 04/09/2022 | Employer's Telephone Number<br>775-482-8191 |
| **Insurer Information** | | **Third-Party Administrator Information** |
| Insurer's Name and Address<br>Nye County / Town of Pahrump<br>101 Radar Road<br>Coaldale, NV, 89049 | | Third-Party Administrator's Name and Address<br>CCMSI<br>P.O. Box 35350<br>Las Vegas, NV 89133 |
| Insurer's Telephone Number<br>775-482-8191 | | Third-Party Administrator's Telephone Number<br>702-933-4800 |

Do Not Complete or Mail This Form Unless You Disagree With the Insurer's Determination.

☐ **PLEASE CHECK HERE IF YOUR REQUEST IS REGARDING A CLAIM FILED PURSUANT TO NRS 617.455 OR 617.457**

**YOU MUST INCLUDE A COPY OF THE DETERMINATION LETTER OR A HEARING WILL NOT BE SCHEDULED PURSUANT TO NRS 616C.315.**

**Briefly** explain the basis for this appeal:

______________________________________________

______________________________________________

______________________________________________

This request for hearing is filed by, or on behalf of: ☐ **Injured Employee** ☐ **Employer**

and is dated this _______________ day of __________________________, 20___________.

_____________________________ Signature of Injured Employee/Employer

_____________________________ Injured Employee's/Employer's Rep. (Advisor)

D-12a (Rev. 10/2018)

BORUCHOWITZ, David DOB: (43 yo M) Acc No. 10896 DOS: 09/26/2023

SU SPINE & SPORTS

**Boruchowitz, David**
43 Y old Male, DOB:
Account Number: 10896

Home:
Guarantor: Boruchowitz, David Insurance: CCMSI Payer
ID: PAPER
Referring: Peter Su, MD
Appointment Facility: Su Spine and Sports (SUNSET)

09/26/2023 Peter S Su, MD

**Current Medications**
Taking
- [illegible]
- [illegible]

Medication List reviewed and reconciled with the patient

**Past Medical History**
[illegible]

**Surgical History**
[illegible]

**Family History**
[illegible]

**Social History**
[illegible]

**Allergies**
[illegible]

**Hospitalization/Major Diagnostic Procedure**
[illegible]

**Review of Systems**
All Other Systems:
Review of Systems (ROS) All others negative except for those mentioned in HPI.
[illegible]
Comments: See HPI for details
[illegible]

**Reason for Appointment**
1. Low back pain

**History of Present Illness**
New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He saw ortho spine Dr. Cash, and was recommended facet joint injections.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting

RECEIVED
OCT 0 2 2023
CCMSI-CARSON CITY

Thirst Denies. Low Sex Drive Denies.
<u>Ophthalmologic:</u>
Blurry vision Denies. Change in vision Denies.
<u>ENT:</u>
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
<u>Respiratory:</u>
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.
<u>Cardiovascular:</u>
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
<u>Gastrointestinal:</u>
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
<u>Hematology:</u>
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
<u>Allergy / Immunology:</u>
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
<u>Genitourinary:</u>
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.
<u>Neurologic:</u>
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
<u>Psychiatric:</u>
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

minimal relief.

He has not gotten the diclofenac and baclofen yet, it was just approved and he has not picked it up yet.

Patient reports VAS 4-5/10 today.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No

OCT 02 2023
CARSON CITY

BORUCHOWITZ, David DOB: (43 yo M) Acc No. 10896 DOS: 09/26/2023

significant neuroforaminal narrowing. No significant spinal canal stenosis.

L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.

L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

.

**Vital Signs**

BP **127/83 mm Hg**, HR **63 /min**, Temp **97.2 F**, Wt **259.6 lbs**, Wt-kg 117.75 kg.

**Examination**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat.

.

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).

Sensory: intact BLE.

Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic.

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

Lungs: no cough or signs of respiratory distress.

Chest: normal chest wall expansion.

Abdomen: soft, nontender, nondistended.

Skin: normal.

Extremities: no edema.

Ears: normal appearance.

Nose: normal appearance, no external masses or lesions.

Oral cavity: mucosa moist.

**Assessments**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

**Treatment**

**1. Spondylosis without myelopathy or radiculopathy, lumbar region**

RECEIVED
OCT 0 2 2023

PROCEDURE: 64493 INJ PARAVERT F JNT L/S 1 LEV (Ordered for 09/26/2023)
PROCEDURE: 64494 INJ PARAVERT F JNT L/S 2 LEV (Ordered for 09/26/2023)

**2. Others**
Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0
Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Start diclofenac 75mg BID PRN inflammatory pain.
-Start baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, awaiting relief.
**-Recommend bilateral L4-5 and L5-S1 facet joint injection**, per recommendations from Dr. Andrew Cash.
The patient has moderate to severe pain, and has failed conservative care >6 weeks including physical therapy, home exercise program, medication management such as using NSAID's. The pain has been affecting patient's daily life. The risks and benefits of the interventional therapy were discussed at length with the patient including the risk of bleeding, infection, nerve damage and the potential for an increase in pain symptoms. Educational information was provided to the patient regarding the procedure and the procedure was further explained using anatomic models and diagrams. All of the patient's questions were answered and the consent form was reviewed in great detail. The patient understands that the explanation of the procedure is not exhaustive, but all questions and concerns have been fully addressed at this time.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

RECEIVED
OCT 0 2 2023
COMP - CARSON CITY

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 10896 **DOS:** 09/26/2023

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine.

**Visit Codes**
99215 Office Visit, Est Pt., Level 5.

**Follow Up**
3-4 Weeks



Electronically signed by PETER SU , MD on 09/26/2023 at 11:33 AM PDT

Sign off status: Completed

Su Spine and Sports (SUNSET)
9260 W SUNSET RD
STE 306
LAS VEGAS, NV 89148-4903
Tel: 702-779-3994
Fax: 888-464-0838



Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

RECEIVED
OCT 02 2023
CCMSI-CARSON CITY

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Desert Institute of Spine Care**

# Boruchowitz, David

43 Y old Male, DOB:
Account Number: 16766

Home:
Guarantor: Boruchowitz, David Insurance: CCMSI
PCP: CCMSI CCMSI Referring: CCMSI CCMSI
Appointment Facility: Desert Institute of Spine Care

09/18/2023 NP WC: Andrew M. Cash, MD

### Current Medications
Discontinued
- ALPRAZolam

### Past Medical History
Non-Contributory.

### Surgical History
Gallbladder 2009
Both shoulders 2010 / 2015

### Family History
Non-Contributory

### Social History
Tobacco Use:
Tobacco Use/Smoking
Smoking Status: *nonsmoker*
Drugs/Alcohol:
Do you drink alcohol?: No.

### Allergies
ALPRAZolam
Penicillin
Sunscreens

### Hospitalization/Major Diagnostic Procedure
No Hospitalization History.

### Review of Systems
Sexual Activity:
Sexual Activity Pain interferes with sex.
General/Constitutional:
Chills denies. Fever denies. Sweats denies. Weight loss denies.
Gastrointestinal:
Uncontrollable bowel movements denies .
Genitourinary:

### Reason for Appointment
1. Initial Consult - Lumbar

### History of Present Illness
Todays Visit:

The patient is a 43 year old male who was involved in a work related motor vehicle accident on 04/09/2022. Patient states he last control of th OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. The patient was a restrained driver. The patient was facing forward at the time of impact. The patient reports that the impact was sudden and expected; the patient prepared for impact. He hit his head but not sure on what. The patient did not black out. Immediately after the collision the patient felt shaken up. The patient began to feel pain immediately.

The worst back pain level is 10/10. The patient reports no radicular symptoms in the lower extremities in the form of numbness, tingling, pain, and weakness. The patient has had chiropractic and injection treatment.

Current Treatment:
Pain Management, Chiropractic.

Prior Injuries::
None.

### Vital Signs
Ht 5 ft 11 in, Wt **250 lbs**, BMI **34.86 Index**, RR **16 /min**, Temp **97.3 F**, Ht-cm **180.34 cm**, Wt-kg **113.4 kg**.

### Examination
General Examination:

GENERAL APPEARANCE: well nourished and hydrated,

EYES/ENT: Pupil: Bilateral equal and direct reaction to normal light, normal conjuctiva and lids.

ENT inspection shows no scars, lesions or foreign bodies. Lips, teeth, and gums appear normal.

NECK, THYROID: No masses, symmetrical, no enlargement of thyroid.

NEUROLOGIC: Cranial nerves:

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

Uncontrollable urination denies.
Neurologic:
Headache denies.
Psychiatric:
Lingering memories of the accident denies. Anxiety denies. Depressed mood denies. Difficulty sleeping **admits**.
The patient's handwritten intake forms and information has been reviewed, documented, verified, & reconciled, through oral confirmation, and the type written dictation incorporated all information, representing the complete and corroborated historical and current account.

II Optic: Bilateral visual acuity
III Oculomotor: Normal pupillary constriction.
IV Trochlear: Normal bilateral.
V Trigeminal: Normal bilateral.
VI Abducens: Normal bilateral.
VII Facial: Normal bilateral.
VIII Acoustic: Normal hearing bilateral.
NEUROPSYCHIATRIC: Appropriate judgment and insight, alert and oriented x3.
Associations- Intact.
Thought Processes/Cognitive Function- Appropriate fund of knowledge.

Imaging Studies:
Results: Lumbar disc protrusion(s), Lumbar annular tear(s).
Time was spent with the patient reviewing the chart in the office today, offering full explanations of the pathology therein, as well as different treatment options that could be provided for such pathological findings. As appropriate, the patient was shown illustrations and models for a better understanding of the condition as well as given literature. I reviewed with the patient the records and diagnostic/therapeutic protocol in detail and to their satisfaction.

Spine:

Lumbar:

There is painful extension.
There is painful flexion. There is bilateral paraspinal musculature pain and tenderness.
Muscle strength is 5/5 bilaterally.
Deep tendon reflexes are symmetrical.
Light touch sensation is intact.
The hip exam is unremarkable.
The sacroiliac joint exam tender with provocation compression, FABER,and fortin test is unremarkable.
Negative straight leg raise.

**Assessments**
1. Other intervertebral disc displacement, lumbar region - M51.26 (Primary)
2. Facet syndrome - M12.88

**Treatment**
**1. Facet syndrome**
Referral To:Pain Medicine
Reason:lumbar MBB

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Disability/Prognosis/Causation**

Medical Records:

Reviewed records from Dr Su, Dr Janda, Simmonmed.

DISABILITY:

Lumbar restrictions: No repetitive bending, twisting, stooping crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally.

CAUSATION:

In my opinion the patient's symptoms which we are evaluating are directly related to the above mentioned accident(s). This opinion is based on patient's history, physical exam, diagnostic studies, and medical records provided. I welcome the opportunity to review any and all medical records regarding past or present treatment of the patient which could possibly reinforce or otherwise affect the above opinions. .

Opioid Risk:

The risks of opioid medications were explained to the patient. The patient understands and agrees to use these medications only as prescribed. The patient agrees to obtain pain medications from this practice only. We have fully discussed the potential side effects of the medication with the patient. These include, but are not limited to, constipation, drowsiness, addiction, nausea, vomiting, impaired judgment and the risk of fatal overdose if not taken as prescribed. We have warned the patient that sharing medications is a felony. We have warned the patient against driving while taking sedating medications.

**Procedure Codes**

72110 X-RAY EXAM OF LOWER SPINE

**Follow Up**

4 Weeks

**Electronically signed by Marie Hilgar on 09/19/2023 at 12:15 PM PDT**

**Sign off status: Completed**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Desert Institute of Spine Care**
**9339 W SUNSET RD**
**STE 100**
**LAS VEGAS, NV 89148-4849**
**Tel: 702-630-3472**
**Fax: 702-946-5115**

**Progress Note: Andrew M. Cash, MD 09/18/2023**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

CCMSI

Date: 05/11/2022

To: David Boruchowitz

Re: Claim No: 22J11K236563
Date of Injury: 04/09/2022
Employer: NYE COUNTY / TOWN OF PAHRUMP
Insurer/TPA: NYE COUNTY / TOWN OF PAHRUMP

**NOTICE OF INTENTION TO CLOSE CLAIM**

(Pursuant to NRS 616C.235)

After a careful and thorough review of your workers' compensation claim, it has been determined that all benefits have been paid and your claim will be closed effective seventy (70) days from the date of this notice. Based on the available medical information, the claim will be closed without a Permanent Partial Disability (PPD) evaluation as there is no possibility of a permanent impairment of any kind.

Your file reflects that you are not presently undergoing any medical treatment; however, if you are scheduled for future medical appointments, please advise this office immediately.

Nevada Revised Statute (NRS) 616C.390 defines your right to reopen your claim. You must make a written request for reopening and your doctor must submit a report relating your problem to the original industrial injury. The report must state that your condition has worsened since the time of claim closure and that the condition requires additional medical care. Reopening is not effective prior to the date of your request for reopening unless good cause is shown. Upon such showing by your doctor, the cost of emergency treatment shall be allowed.

If you disagree with the above determination, you do have the right to appeal. If your appeal concerns "**accident benefits**" (medical treatment or supplies) and your insurer has contracted with an organization for managed care, complete the bottom portion of this notice and send it to your insurer no later than fourteen (14) days after the date of this notice.

If your appeal concerns "**compensation benefits**," or if no organization for managed care is involved in your claim, complete the bottom portion of this notice and send it to the State of Nevada, Department of Administration, Hearings Division. **Your appeal must be filed within seventy (70) days after the date on which the notice of the insurer's final determination was mailed.**

| | | |
|---|---|---|
| Department of Administration<br>Hearings Division<br>1050 E. William Street, Ste. 400<br>Carson City, NV 89701<br>(775) 687-8440 | OR | Department of Administration<br>Hearings Division<br>2200 S. Rancho Drive, Suite 210<br>Las Vegas, NV 89102<br>(702) 486-2525 |

Reason for appeal: ____________________________________________

____________________________________________

Signature Christine Guerrero
Med Only Claim Representative

Date

***Retain a copy of this notice for your records.***

Cc: File, Employer

Enclosure

D-31 (rev. 10/10)

**Cannon Cochran Management Services, Inc.**
P.O. Box 35350 • Las Vegas, NV 89133
866-446-1424 • 702-933-4800 • Fax: 702-933-4861 • www.ccmsi.com

***~ THE EFFECTS OF CLOSING YOUR CLAIM ~***

By closing your claim you will no longer be eligible for any type of benefits associated with this claim, including medical treatment, diagnostic testing or prescription medication. Any medical benefit you receive after the date of your claim closing will be your financial responsibility. If you disagree with the closure of your claim you may appeal the determination made by CCMSI **within seventy (70) days after the date on which the determination was mailed.** Failure to file an appeal within this time period may result in a dismissal of your appeal by the Department of Administration.

You do have the right to reopen your claim if your claim meets certain criteria. Please see attached the Form D-13 "**Injured Employee's Right To Reopen A Claim Which Has Been Closed"**.

If you have any questions regarding the closure of your claim please contact your adjuster.

# REQUEST FOR HEARING - CONTESTED CLAIM

(Pursuant to NAC 616C.274)

REPLY TO:

Department of Administration
Hearings Division
1050 E. William Street, Ste. 400
Carson City, NV 89701
(775) 687-8440

OR

Department of Administration
Hearings Division
2200 S. Rancho Drive, Suite 210
Las Vegas, NV 89102
(702) 486-2525

| Employee Information | | Employer Information |
|---|---|---|
| Employee's Name and Address<br>David Boruchowitz | | Employer's Name and Address<br>NYE COUNTY / TOWN OF PAHRUMP<br>101 RADAR ROAD<br>COALDALE, NV 89049 |
| Employee's Telephone Number | Claim No. 22J11K236563<br>Date of Injury 04/09/2022 | Employer's Telephone Number<br>775-482-8191 |
| **Insurer Information** | | **Third-Party Administrator Information** |
| Insurer's Name and Address<br>Nye County / Town of Pahrump<br>101 Radar Road<br>Coaldale, NV, 89049 | | Third-Party Administrator's Name and Address<br>CCMSI<br>P.O. Box 35350<br>Las Vegas, NV 89133 |
| Insurer's Telephone Number<br>775-482-8191 | | Third-Party Administrator's Telephone Number<br>702-933-4800 |

Do Not Complete or Mail This Form Unless You Disagree With the Insurer's Determination.

☐ **PLEASE CHECK HERE IF YOUR REQUEST IS REGARDING A CLAIM FILED PURSUANT TO NRS 617.455 OR 617.457**

**YOU MUST INCLUDE A COPY OF THE DETERMINATION LETTER OR A HEARING WILL NOT BE SCHEDULED PURSUANT TO NRS 616C.315.**

**Briefly** explain the basis for this appeal:

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

This request for hearing is filed by, or on behalf of: ☐ **Injured Employee** ☐ **Employer**

and is dated this _______________ day of __________________________, 20___________.

Signature of Injured Employee/Employer

Injured Employee's/Employer's Rep. (Advisor)

D-12a (Rev. 10/2018)

## INJURED EMPLOYEE'S RIGHT TO REOPEN A CLAIM WHICH HAS BEEN CLOSED

Nevada Revised Statutes 616C.390 defines your right to reopen your worker's compensation claim after it has been determined that all benefits have been paid and your claim has been closed.

An application to reopen a claim must be in writing and accompanied by a certificate from a physician or chiropractor showing a change in medical condition.

If you did not lose time from work as a result of your industrial injury or occupational disease and you did not receive a permanent partial disability award, you may not request reopening of your claim more than one (1) year after the date on which your claim was closed.

Except as otherwise provided in NRS 616C.390(4), if the request for reopening is denied, the injured employee shall not request reopening of the claim until at least one (1) year after the date on which the final determination of an insurer is issued.

Reopening of a claim is not effective, and thus no benefits or compensation is available, before the date on which an application for reopening is made unless good cause is shown (NRS 616C.390(8)). If your claim closes under NRS 616C.235(2), then you may not reopen your claim (NRS 616C.390(6)).

## PPD OFFSET

Nevada Revised Statues (NRS) 616C.405 prohibits an injured employee from receiving a permanent partial disability (PPD) benefit at the same time you are receiving temporary total disability (TTD), temporary partial disability (TPD), or permanent total disability (PTD).

Further, if you have received a PPD on a claim and you were paid the award in a lump sum, future TTD, TPD, or PTD you receive on the same claim must be reduced by a portion of the PPD lump sum; or, if you are receiving installment payments for PPD, those payments will be suspended while TTD, TPD, or PTD is being paid.

The rate at which the PPD offset is deducted is the same as the daily/monthly rate of the PPD award. Except for minimum lump sum awards, for each day/month you receive TTD, TPD, or PTD on the claim, the daily/monthly PPD rate is deducted based on the time period used to calculate the lump sum PPD award. (See NRS 616C.440 for specific information regarding offsets to PTD)

Your PPD lump sum was computed through the day before your 70th* birthday. In other words, the lump sum represents permanent partial disability payments due you from the effective date of your initial PPD payment until you turn 70* years old (unless otherwise entitled to the minimum lump sum). Although you received just one lump sum payment(s), this payment represents the present value of all your future PPD payments.

* PPD awards are calculated using the maximum age established by law which, depending on the date of the injury or occupational disease, may be <u>less</u> than 70 years.

NOTE: This form is to be used by the Claims Agent when sending out permanent partial disability awards or whenever applicable.

D-13 (rev. 7/08)

# PHYSICIAN'S AND CHIROPRACTOR'S PROGRESS REPORT CERTIFICATION OF DISABILITY

Claim Number:

Social Security Number:

Patient's Name: David Boruchowitz

Date of Injury: 4/9/22

Employer: NYE County

Name of MCO (If applicable):

Patient's Job Description/Occupation:

Previous Injuries/Diseases/Surgeries Contributing to the Condition:

Diagnosis: Lumbar Sprain

Related to the Industrial Injury? Explain:

Objective Medical Findings: Exam

☐ None - Discharged Stable ☑ Yes ☐ No Ratable ☐ Yes ☐ No

☐ Generally Improved ☐ Condition Worsened ☐ Condition Same

May Have Suffered a Permanent Disability ☐ Yes ☐ No

Treatment Plan: See below

☐ No Change in Therapy ☐ PT/OT Prescribed ☐ Medication May be Used While Working

☐ Case Management ☐ PT/OT Discontinued

Transfer care to chiropractor

☐ Consultation

☐ Further Diagnostic Studies:

☐ Prescription(s)

☑ Released to **FULL DUTY**/No Restrictions on (Date): 9/21/22

☐ Certified **TOTALLY TEMPORARILY DISABLED** (Indicate Dates) **From:** ______ **To:** ______

☐ Released to **RESTRICTED**/Modified Duty on (Date): **From:** ______ **To:** ______

**Restrictions Are:** ☐ Permanent ☐ Temporary

| | | | |
|---|---|---|---|
| ☐ No Sitting | ☐ No Standing | ☐ No Pulling | ☐ Other: ______ |
| ☐ No Bending at Waist | ☐ No Stooping | ☐ No Lifting | ______ |
| ☐ No Carrying | ☐ No Walking | ☐ Lifting Restricted to (lbs.): ______ | |
| ☐ No Pushing | ☐ No Climbing | ☐ No Reaching Above Shoulders | |

| Date of Next Visit: | Date of this Exam: | Physician/Chiropractor Name: | Physician/Chiropractor Signature: |
|---|---|---|---|
| N/A | 9/21/22 | A-Juzee NP | [signature] |

D-39 (Rev. 7/99

Certified TOTALLY TEMPORARILY DISABLED

Released to RESTRICTED/Modified Duty



**Ryanne Gott**

**From:** Christine Guerrero <cguerrero@ccmsi.com>
**Sent:** Wednesday, June 1, 2022 4:10 PM
**To:** Ryanne Gott
**Cc:** Elona Goldner
**Subject:** RE: Progress report

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello

I was able to speak with Mr. Boruchowitz regarding his claim.

He told me that the OHV vehicle was his personal vehicle. He said he was with his family when he was made aware of the missing person search. He said he went in his truck first, but when he realized he was not able to get to the area they needed to search, he then switched vehicles to his own personal OHV. He said that he was off duty and then went on duty to assist. He further explained that LV Metro refused to send resources, it was a windy night and they didn't want to send the helicopter. He said he has used his OHV in the past when needed. He said it's not uncommon for him to use his personal vehicle to assist when needed, but it's also not a common occurrence. He has used it several times while on the job. He stated that he had his daughter and a family friend in the OHV with him, but also stated that he left the rest of his family in the middle of the desert to go conduct the search. He said the search lasted about 7 – 71/2 hours and once it was over, he came back and got his family and went home. He was not able to confirm if there was something faulty with his OHV. He said he just knows that the steering seemed to go wrong and at one point he wasn't able to steer the way that he needed to which caused the incident.

Please let me know if you have any questions or need any additional information from me.

Thank you!

**Christine Guerrero**
Claim Representative I | CCMSI

Phone: 702-933-4839
Fax: 702-933-4861
www.ccmsi.com

CCMSI

**Great Place to Work®**
2021 • 2020 • 2019 • 2018

# Nye County Human Resources

Pahrump Office
Nye County Government Complex
2101 E. Calvada, Suite 150
Pahrump, NV 89048
Phone (775) 751-6301
Fax (775) 751-6309

Tonopah Office
Nye County Courthouse
William P. Beko Justice Facility
PO Box 8400
Tonopah, NV 89049
Phone (775) 482-7244
Fax (775) 751-6309

April 12, 2022

*David Boruchowitz*

**SUBJECT: LIGHT DUTY JOB OFFER**

Dear David,

I am submitting on behalf of Nye County, after consulting with Acting Captain Means, an offer of temporary light duty that falls within the limitations and restrictions established by your treating physician, resulting from your 4/9/2022 injury. The physician report, dated 4/9/2022, was received by the HR office; it indicates *Restricted/Modified Duty: No heavy lifting, squatting or running until cleared.*

Nye County is concerned about its employees' physical and financial well being and we are pleased to be able to modify your current position to accommodate your temporary physical restrictions while you are easing back to work. You will be assigned to your current position; your schedule will remain the same. This will begin on April 10, 2022 will continue until a progress report is received by HR from your treating physician indicating you are released to return to work full duty, or if changes in the limitations and restrictions have been made.

If you have any questions or concerns, please contact me directly.

Sincerely,

Elona Goldner, SHRM-CP
Director of Human Resources

I, David Boruchowitz, fully understand the temporary restrictions that have been reported by my Physician's Report and it is my responsibility to work within the limitations established by my treating physician. If there are any deviations from my modified light duty job that will conflict with my temporary restrictions, I will immediately report them to my current supervisor and/or the Nye County Human Resources.

David Boruchowitz

04/12/2022
Date

## Long-Term Disability Claim Employer's Statement

**To Be Completed By The Employer**

| This claim is for (Employee's Name and Address) | Social Security Number | Date of Birth |
|---|---|---|
| David E Boruchowitz | | |

**A. Information about the employer**

| Company's Name | Group Policy Number | Class Number |
|---|---|---|
| NYE COUNTY | nyecounty-bi-1565903 | 2 |
| Address (Street, City, State, Zip)<br>2101 E Calvada Blvd., Ste 150 Pahrump, NV 89048 | Telephone: (775) 751-6302<br>Fax: (775) 751-6309 | |
| Name and address of division where employee works (if different from above)<br>NYE COUNTY SHERIFF | Telephone: (775) 751-7000<br>Fax: | |

**B. Information about the employee**

| Date employee was hired (Month, Day, Year) | Date employee became insured under this plan? / under prior plan? | What was the employee's regularly scheduled work week? |
|---|---|---|
| 02/21/2006 | Date employee became insured under this plan? 07/01/2013<br>Date employee became insured under prior plan? 03/16/2009 | 40 hours per week 10 hours per day |

**C. Information needed for withholding and reporting taxes**

Does employee contribute post-tax dollars toward the premium? h Yes h No If yes, what percent is paid by the employee? 100 %

**If you leave this section blank, we will assume it is 100% employer contribution and calculate FICA taxes accordingly.**

**D. Information about the claim**

Were there any changes to the employee's job responsibilities due to the disabling condition before the employee became fully disabled?
☐ Yes ☒ No If yes, what were the changes and when were they made?

What was the employee's permanent job on his or her last day at work? Captain

How long had the employee been in this job? 4 years 2 months

Last day employee actually worked (Month, Day, Year) 07/20/2023

On that day, did the employee work a full day? ☒ Yes ☐ No If no, how many hours were worked?

Why did employee stop working? Admin Leave - Pending Investigation

Is the employee's condition work related? ☒ Yes ☐ No

Has a claim been filed with Workers' Compensation?
☒ Yes ☐ No If yes, send initial report of illness or injury and award notice.

Name, address and telephone number of your compensation carrier
CCMSI- PO Box 35350, Las Vegas, NV 89133 - Phone 725-242-8440 Fax 702-933-4861

Name, address and telephone number of your medical insurance carrier
Anthem Blue Cross Blue Shield- 1-877-811-3106

**E. Information about your pension plan** (do not complete for maternity claim)

Do you have a pension plan? ☒ Yes ☐ No

If yes, what type? ☐ Defined benefit ☐ Defined contribution ☐ 401(k) ☐ Profit sharing ☒ Other: (specify) Public Employers Retirement System- Medically Retiring

Is the employee eligible for your pension plan? ☒ Yes ☐ No If no, why?

If eligible, does the employee participate? ☐ Yes ☒ No If no, why? Employer 100% Paid

If the employee is participating, when is he or she eligible for benefits under the plan? (Month, Day, Year)
Employee will begin receiving benefits on Oct 13, 2023, that is his date of retirement.

**NOTE: If any portion of this pension benefit is attributable to the employee's contribution, please provide details including the percentage of his/her contribution to the total contribution. This should include a copy of the contract.**

**F. Information about your rehire or return-to-work policies**

Does your company have a rehire or return-to-work policy for disabled employees?
☒ Yes ☐ No Transitional Duty Policy

What is the name and title of the manager we should contact if we identify a rehabilitation or return-to-work option?
Kyanne Gott- HR Generalist II- 775-751-6303

**G. Information about the employee's salary**

The employee (Check all that apply)
☐ is paid hourly (what is the hourly rate?) $ 65 53 ☒ is salaried ☐ receives commissions ☐ receives bonuses

Will employee file for disability benefits provided by any employer/employee labor management, state disability or union welfare plan?
☐ Yes ■ No If yes, what is the weekly amount? $ - When do benefits begin? End?

Is this employee eligible for salary continuation? Medical Retirement PERS
☐ Yes ☐ No If yes, what is the weekly amount? $ When do benefits begin? 10/13/2023 End?

(Continued on next page)

**Reporting the employee's basic monthly earnings**

Find the definition of basic monthly earnings that matches your contract for this employee and follow the instructions given.

**Definitions of Basic Monthly Earnings**

a. salary only (no commissions, bonuses, etc.), complete question 1 below
b. previous year's W-2 form, complete question 5 below (attach W-2)
c. sole proprietor, complete question 8 below
d. previous year's K-1 form, complete question 6 below (attach K-1)

e. salary and commissions, complete questions 1 and 3 below
f. salary, commissions and bonuses, complete questions 1, 3 and 4 below
g. salary and deferred compensation, complete questions 1 and 2 below
h. salary, deferred compensation and commissions, complete questions 1, 2 and 3 below
i. salary, deferred compensation, commissions and bonuses, complete questions 1, 2, 3 and 4 below
j. salary and K-1 earnings, complete questions 1 and 6 below

k. W-2 with deferred compensation, complete questions 2 and 5 below
l. partnership agreement, complete question 7 below
m. teacher's contract, complete question 1 below
n. any other definition, complete question 9 below

1) On the last day employee worked, what was his or her basic monthly salary? (Divide annual salary by 12 or multiply weekly salary by 52 and divide by 12. Teachers divide annual salary by 12) — 1 $10,169.60

2) On the last day the employee worked, what was his or her monthly pre-tax contribution to your deferred compensation plan? — 2 $0.00

3) How much had the employee received in commissions in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ ______. Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly commissions. — 3 $0.00

4) How much had the employee received in bonuses in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ ______. Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly bonuses. — 4 $0.00

5) What were the employee's earnings as shown on the W-2 form of the year immediately preceding the disability? — 5 $143,853.72

6) What were the employee's earnings as shown on the K-1 form of the year immediately preceding the disability? — 6 ______

7) As of the last day the employee worked, what were the budgeted annual earnings as determined by the written partnership agreement in effect? (Do not include dividends, interest or return of capital) $ ______. — 7 ______

8) As of the last day the employee worked, what was the sole proprietor's annual net profit (1040 Schedule C gross income minus total deductions minus depreciation) averaged over the 3 years immediately preceding the disability or the period of sole proprietorship if less than 3 years? — 8 ______

9) For definitions other than those above, calculate the monthly earnings as they are defined in your contract. If earnings are based on salary as expressed on a particular document, send us a copy of the document. — 9 ______

**H. Required Attachments and Signature**

If the employee contributes to the premiums, attach a copy of the enrollment form.

If salary is based on a W-2, K-1, 1099, or a similar document, attach a copy of the document.

If you have medical information from the employee's file relating to this disability, please attach copies.

If a workers' compensation claim is filed, send initial report of injury or illness and award notice.

Name of person completing this form (If this claim is approved for disability benefits, the benefit check will be sent to the employee with a carbon copy to you.) Elena Goldner

X Elena Goldner (signature) — Human Resources Director — 10/11/2023

Signature — Title — Date

351 6307

unum

Underwritten by:
Unum Life Insurance Company of America
2211 Congress Street, Portland, ME 04122

**County of Nye**
Long Term Disability Insurance
Enrollment Form
**Policy #140751/Div #____**

**Please complete this form in its entirety. Blank fields will cause significant delays in processing.**

Employee Social Security Number: ____ ____ ____
Gender: M [M] F [ ]
Date of Birth (mm/dd/yyyy): ____
Hours Worked Per Week: 40<

Employee First Name: DAVID
M.I.: E
Last Name: BORUCHOWITZ

Employee Street Address / City / State / Zip Code

Original Date of Hire: 02 / 21 / 2006

Annual Salary: __ , 60 , 000
☐ Exempt ☑ Non-Exempt

Occupation: DETECTIVE

☑ Date entered into an eligible class (*ex: part time to full time*) or
☐ Rehire Date or
☐ Date of promotion to an eligible class

02 / 21 / 2006 (If unknown, consult with your Plan Administrator to complete.)

*51100 000045 00867*

| Rates* per $100 of Covered Salary | | | |
|---|---|---|---|
| **Age** | **Rate** | **Age** | **Rate** |
| < 25 | $0.11 | 50 – 54 | $0.99 |
| 25 - 29 | $0.16 | 55 – 59 | $1.23 |
| 30 - 34 | $0.25 | 60 – 64 | $1.25 |
| 35 - 39 | $0.37 | 65 – 69 | $1.64 |
| 40 - 44 | $0.50 | 70 + | $2.00 |
| 45 - 49 | $0.72 | | |

*LTD rates are based on five-year increments. Rates increase as you age.

To calculate the per-paycheck cost for this coverage, complete the calculations below.
**Note:** *If your annual salary exceeds* **$120,000** *use* **$120,000** *as your annual salary in the calculation.*

_____ ÷ 100 = _____ X _____ = _____ ÷ 24 = _____
Annual Salary — Your Rate — Annual Cost — # Paychecks per Year — **Cost per Paycheck***

* Final cost may vary slightly due to rounding.

☒ **Yes,** I would like to participate. I authorize my employer to deduct from my salary or wages the necessary premium for this coverage. My signature verifies the accuracy of information contained on this form.

I understand the effective date of my coverage will be delayed if I am not in active employment because of an injury, sickness, temporary lay-off or leave of absence on the date this insurance would otherwise become effective. **I have also read and understand the information in the Plan Highlights, including all statements regarding exclusions and benefit amounts and offsets.**

☐ **No,** I do not wish to participate. I understand that evidence of insurability will be required, at my own expense, if I decide to elect this coverage in the future.

Employee Signature: [signature] Date: 03/16/2009

Return Forms To: _____ By: __/__/____

*51100 000045 00868*

| TO AVOID PENALTY, THIS REPORT MUST BE COMPLETED AND MAILED TO THE INSURER WITHIN 6 WORKING DAYS OF RECEIPT OF THE C-4 FORM | Please Type or Print | EMPLOYER'S REPORT OF INDUSTRIAL INJURY OR OCCUPATIONAL DISEASE |
|---|---|---|

**EMPLOYER**

- Employer's Name: NYE COUNTY
- Nature of Business (mfg., etc.):
- FEIN: 88-6000111
- OSHA Log #:
- Office Mail Address: 2101 E. CALVADA BLVD, STE 100
- Location . . . if different from mailing address:
- Telephone: 775-751-6303
- City / State / Zip: PAHRUMP, NV 89048
- INSURER: NYE COUNTY
- THIRD-PARTY ADMINISTRATOR: CCMSI

**EMPLOYEE**

- First Name / M.I. / Last Name: DAVID E. BORUCHOWITZ
- Social Security:
- Birthdate:
- Age: 41
- Primary Language Spoken: ENGLISH
- Home Address (Number and Street):
- Sex: ☒ Male ☐ Female
- Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed
- City / State / Zip:
- Was the employee paid for the day of injury? (if applicable) ☒ Yes ☐ No
- How long has this person been employed by you in Nevada? 16.1 YEARS
- In which state was employee hired? NEVADA
- Employee's occupation (job title) when hired or disabled: CAPTAIN
- Department in which regularly employed: SHERIFF
- Telephone:
- Is the injured employee a corporate officer? ☐ Yes ☐ No . . . sole proprietor? ☐ Yes ☐ No . . . partner? ☐ Yes ☐ No
- Was employee in your employ when injured or disabled by occupational disease (O/D)? ☒ Yes ☐ No

**ACCIDENT OR DISEASE**

- Date of Injury (if applicable): 4/9/2022
- Time of Injury (Hours, Minute AM/PM) (if applicable): 10:45 PM
- Date employer notified of injury or O/D: 4/9/2022
- Supervisor to whom injury or O/D reported: SHARON WEHRLY
- Address or location of accident (Also provide city, county, state) (if applicable): SANDY VALLEY ROAD
- Accident on employer's premises? (if applicable) ☐ Yes ☒ No
- What was this employee doing when the accident occurred (loading truck, walking down stairs, etc.)? (if applicable): SEARCHING FOR A MISSING PERSON.
- How did this injury or occupational disease occur? Include time employee began work. Be specific and answer in detail. Use additional sheet if necessary: OFF ROAD VEHICLE THEY WERE IN LOST STREERING AND ROLLED 3 TIMES.

**INJURY OR DISEASE**

- Specify machine, tool, substance, or object most closely connected with the accident (if applicable):
- Witness: CALEB SPROUL
- Was there more than one person injured in the accident? (if applicable) ☐ Yes ☒ No
- Part of body injured or affected: SHOULDER AND BACK
- If fatal, give date of death:
- Witness:
- Nature of Injury or Occupational Disease (scratch, cut, bruise, strain, etc.): SHOULDER AND BACK SPRAIN
- Witness:
- Did employee return to next scheduled shift after accident? (if applicable) ☒ Yes ☐ No
- Will you have light duty work available if necessary? ☒ Yes ☐ No
- If validity of claim is doubted, state reason:
- Location of Initial Treatment: DESERT VIEW
- Treating physician/chiropractor name: JAMES CLARK, MD
- Emergency Room ☐ Yes ☒ No
- Hospitalized ☐ Yes ☒ No

**IMPORTANT**

- How many days per week does employee work? 5
- From 8:00 ☒ am ☐ pm To 5:00 ☐ am ☒ pm
- Last day wages were earned: 4/9/2022
- Scheduled days off: S ☒ M ☐ T ☐ W ☐ T ☐ F ☐ S ☒ Rotating ☐
- Are you paying injured or disabled employee's wages during disability? ☒ Yes ☐ No

**IMPORTANT LOST TIME INFO**

- Date employee was hired: 2/21/2006
- Last day of work after injury or disability: 4/9/2022
- Date of return to work: 4/10/2022
- Number of work days lost: NONE
- Was the employee hired to work 40 hours per week? ☒ Yes ☐ No
- If not, for how many hours a week was the employee hired?
- Did the employee receive unemployment compensation any time during the last 12 months? ☐ Yes ☒ No ☐ Do not know

For the purpose of calculation of the average monthly wage, indicate the employee's gross earnings by pay period for 12 weeks prior to the date of injury or disability. If the injured employee is expected to be off work 5 days or more, attach wage verification form (D-8). Gross earnings will include overtime, bonuses, and other remuneration, but will not include reimbursement for expenses. If the employee was employed by you for less than 12 weeks, provide gross earnings from the date of hire to the date of injury or disability.

- Pay period ends on: ☐ SUN ☐ TUE ☒ THUR ☐ SAT ☐ MON ☐ WED ☐ FRI
- Employee is paid: ☐ WEEKLY ☐ MONTHLY ☐ OTHER ☒ BI-WKLY ☐ SEMI-MONTHLY
- On the date of injury or disability the employee's wage was: $ 59.16 per ☒ Hr ☐ Day ☐ Wk ☐ Mo

*For assistance with Workers' Compensation Issues you may contact the State of Nevada Office of the Consumer Health Assistance* ***Toll Free:*** *1-888-333-1597* ***Web site:*** *http://dhhs.nv.gov/Programs/CHA* ***E-mail:*** *cha@govcha.nv.gov*

★ I affirm that the information provided above regarding the accident and injury or occupational disease is correct to the best of my knowledge. I further affirm the wage information provided is true and correct as taken from the payroll records of the employee in question. I also understand that providing false information is a violation of Nevada law.

- Employer's Signature and Title: X. Goff HR Generalist II
- Date: 4/13/2022

**Insurer Use Only**

- Claim is: ☐ Accepted ☐ Denied ☐ Deferred ☐ 3rd Party
- Deemed Wage:
- Account No.:
- Class Code:
- Claims Examiner's Signature:
- Date:
- Status Clerk:
- Date:

Form C-3 (rev.02/20) ORIGINAL – EMPLOYER PAGE 2 – INSURER/TPA PAGE 3 – EMPLOYEE

12-Oct-2023 15:33 FROM:

EMPLOYEE'S CLAIM FOR COMPENSATION/REPORT OF INITIAL TREATMENT
FORM C-4
PLEASE TYPE OR PRINT

**EMPLOYEE'S CLAIM – PROVIDE ALL INFORMATION REQUESTED**

Davis E. Boruchowitz
Age 41 Height 5'11 Weight 255

Ccmsi Ccmsi
Nye County Telephone 7757516302
2801 Walt Williams Drive
4/9/22 224 am 4/9/21 4/9/21 Sheriff Wehrly
Sandy Valley Road
Searching for a missing person
the vehicle we were in lost steering and rolled 3 times
4/9/22 Caleb Sprowle, Malcolm Bonnaire
Motor Vehicle Accident Head, Back, Eye, Abdomen

[illegible certification text]

4/9/22 DVH

**THIS REPORT MUST BE COMPLETED AND MAILED WITHIN 3 WORKING DAYS OF TREATMENT**

Place: ER
Name of Facility: DESERT VIEW HOSPITAL ALLIANCE LLC

Date: 4/10/22
Diagnosis and Description of Injury or Occupational Disease: Shoulder sprain, Back sprain
Hour: 9:42 3AM

Is there evidence that the injured employee was under the influence of alcohol and/or another controlled substance at the time of the accident? ☑ No ☐ Yes (If yes, please explain)

Treatment:

X-Ray Findings:

Have you advised the patient to remain off work five days or more?
☐ Yes Indicate dates: from ______ to ______
☑ No If no, is the injured employee capable of: ☐ full duty ☑ modified duty
If modified duty, specify any limitations/restrictions: No heavy lifting / straining / or carrying until cleared by PCP

From information given by the employee, together with medical evidence, can you directly connect this injury or occupational disease as job incurred? ☐ Yes ☐ No

Is additional medical care by a physician indicated? ☐ Yes ☐ No

Do you know of any previous injury or disease contributing to this condition or occupational disease? ☐ Yes ☑ No (Explain if yes)

Date: 4/10/22 Print Doctor's Name: James Clark MD
I certify that the employer's copy of this form was mailed to the employer on:

Address: 360 LOLA LANE
City: PAHRUMP State: NV Zip: 89048 Provider's Tax I.D. Number: 81-2660256 Telephone: 775-751-7500
Doctor's Signature: Degree: MD

INSURER'S USE ONLY

ORIGINAL – TREATING PHYSICIAN OR CHIROPRACTOR PAGE 2 – INSURER/TPA PAGE 3 – EMPLOYER PAGE 4 – EMPLOYEE Form C-4 (rev. 10/07)

(Eastern Daylight Time) * SVR:VA1PWFAX201/3 * DNIS:8778433950 * CSID: * ANI:7757516302 * DURATION (mm-ss):30-17

12-Oct-2023 15:34 FROM: p.6

# "NOTICE OF INJURY OR OCCUPATIONAL DISEASE"

(Incident Report)
Pursuant to NRS 616C.015

Name of Employer Nye County

| Name of Employee | Social Security Number | Telephone Number |
|---|---|---|
| David Boruchowitz | | |

| Date of Accident (if applicable) | Time of Accident (if applicable) | Place where accident occurred (if applicable) |
|---|---|---|
| 04/09/2022 | 2045 | Sandy Valley Road |

| What is the nature of the injury or occupational disease? | List any body parts involved. |
|---|---|
| Motor Vehicle Accident | Head/Back |

Briefly describe accident or circumstances of occupational disease:
(Note: If you are claiming an occupational disease, indicate the date on which employee first became aware of connection between condition and employment)
While searching for a missing person the OHV rolled 3 times.

Names of witnesses:

| | | | |
|---|---|---|---|
| Did the employee leave work because of the injury or occupational disease? ___ YES X NO | If yes, when (date and time)? | Has the employee returned to work? ___ YES X NO | If yes, when (date and time)? |
| Was first aid provided? X YES ___ NO | If yes, by whom? Clark County Fire | Name and address of treating physician, if applicable or known | |
| Did the accident happen in the normal course of work? (if applicable) ☒ YES ☐ NO | | | |
| Was anyone else involved? X YES X NO | Names of others involved: Cyrilian Madelyn Boruchowitz / Caleb Steel | | |

MY EMPLOYER/INSURER MAY HAVE MADE ARRANGEMENTS TO DIRECT ME TO A HEALTH CARE PROVIDER FOR MEDICAL TREATMENT OF MY INDUSTRIAL INJURY OR OCCUPATIONAL DISEASE. I HAVE BEEN NOTIFIED OF THESE ARRANGEMENTS.

Sheriff [signature] 4/10/22 — Supervisor's Signature, Date

[signature] 4/10/2022 — Signature of Injured or Disabled Employee, Date

TO FILE A CLAIM FOR COMPENSATION, SEE REVERSE SIDE, SECTION ENTITLED, CLAIM FOR COMPENSATION (FORM C-4).

*For assistance with Workers' Compensation Issues you may contact the State of Nevada for Consumer Health Assistance Toll Free: 1-888-333-1597 Web site: http://dhhs.nv.gov/Programs/CHA E-mail: cha@govcha.nv.gov*

Employer should sign, date and retain a copy.
*Original to Employer, Copy to Employee*

C-1 (Rev. 10/08)

... 10/12/2023 6:28:16 PM [Eastern Daylight Time] * SVR:VA1PWFAX201/3 * DNIS:8778433950 * CSID: * ANI:7757516302 * DURATION (mm-ss):30-17

# EMPLOYER'S WAGE VERIFICATION FORM
**(Pursuant to NRS 616C.045(2)(d))**

Please provide the following information for the employee named below by completing this form. The information is needed so that the amount of disability compensation to which your employee is entitled may be calculated. Prompt completion and return of this form will ensure the timely payment of any compensation due this injured worker. Please answer all questions and sign the form where indicated.

**EMPLOYER: PLEASE PROVIDE THE FOLLOWING INFORMATION ANSWERING ALL QUESTIONS**

Date: 9/25/2023 Injured Employee's Name (Last/First/M.I.): Boruchowitz, David Social Security #.

Claim No.: 22J11K236563 Date of Injury: 4/9/2022 Date of Hire: 2/21/2006

Was employee hired to work 40 hours per week: [X] Yes [ ] No If no, # of hours per week: ______ # of days per week: ______

On the date of injury, the employee's wage was: $ 59.16 per [X] Hour [ ] Day [ ] Week [ ] Month Date the wage became effective: 2/21/2022

Was vacation paid during the applicable twelve week period? No If so, during what pay period? ______

Was sick leave paid during the applicable twelve week period? No Was the injured employee paid for any holidays during the applicable twelve week period? Yes Did employee receive payment for overtime during the applicable twelve week period? No Did employee receive termination pay during the applicable twelve week period? No

Provide prior wage if current wage was in effect less than 12 weeks prior to date of injury: $ 57.43 per [X] Hour [ ] Day [ ] Week [ ] Month

During this 12-week period did employee change to a job with different (1) duties, (2) hours of employment, (3) rate of pay? [ ] Yes [X] No

If so, date: ______ Explain: ______

Does the employee receive commissions? [ ] Yes [X] No Period of commission earned ______ to ______.

Indicate the amount of commission received over the last 6 months, or since date of hire: $ ______

Does the employee receive bonuses/incentive pay? [ ] Yes [X] No Period of bonuses/incentive pay earned ______ to ______.

Indicate the amount of bonuses received over last 12 months, or since date of hire: $ ______

Are the commission and bonus amounts included in GROSS EARNINGS below? [ ] Yes [X] No

Does the employee declare tips for the purpose of worker's compensation? [ ] Yes [X] No **See payroll declaration below. Attach declaration forms.**

Does the employee receive meals or lodging (excluding reimbursement for travel per diem)? [ ] Yes [X] No **(Do not include in gross earnings)**

How many meals per day?______ Monetary value of meals $______per [ ] Day [ ] Week [ ] Month

Lodging $______per [ ] Day [ ] Week [ ] Month

**TWELVE WEEK VERIFICATION FROM PAYROLL RECORDS**. Report GROSS EARNINGS, include overtime payment and any other remuneration (except reimbursement for expenses). (See NAC 616C.423)

Give payroll information from 1/10/22 through 4/3/22. If employed less than twelve weeks, give gross earnings from date of hire to date of injury.

**If absent from work for the following reasons, please specify the date(s) absent and the number code for the reason of absence.**
1. Certified illness or disability; 2. Institutionalized in a hospital, or other institution; 3. Enrolled as full-time student, not employed on days of attendance; 4. In military service other than training duty conducted on weekends; 5. Absent because of officially sanctioned strike; 6. Absence because of leave approved pursuant to Family and Medical Leave Act.

| Payroll Period Beginning Ending | Gross Salary (Excluding Tips) | Declared Tips | Payroll Period Beginning Ending | Gross Salary (Excluding Tips) | Declared Tips |
|---|---|---|---|---|---|
| 1/10/2022 - 1/23/2022 | $4,939.24 | | | | |
| 1/24/2022 - 2/6/2022 | $4,939.24 | | | | |
| 2/7/2022 - 2/20/2022 | $4,962.21 | | | | |
| 2/21/2022 - 3/6/2022 | $5,111.42 | | | | |
| 3/7/2022 - 3/20/2022 | $5,111.42 | | | | |
| 3/21/2022 - 4/3/2022 | $5,111.42 | | | | |

| Dates of Absence Begin | End | Reason | Dates of Absence Begin | End | Reason | Dates of Absence Begin | End | Reason |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Pay period ends on (check one) [ ] Sunday [ ] Monday [ ] Tuesday [ ] Wednesday [ ] Thursday [ ] Friday [ ] Saturday
Employee is paid: [ ] Weekly [ ] Bi-Weekly [ ] Semi-Monthly [ ] Monthly [ ] Other
Employee scheduled day(s) off: [ ] Sunday [ ] Monday [ ] Tuesday [ ] Wednesday [ ] Thursday [ ] Friday [ ] Saturday [ ] Other
Explain "other":
Date the employee last worked AFTER injury occurred: 4/9/2022 Date returned to work: 4/9/2022

This information is true and correct as taken from the employee's payroll records.

Print Name: Ryanne M. Gott Signature: ______

Date: 9/25/2023 Employer: Nye County

Insurer: Nye County Third-Party Administrator: CCMSI D-8 (rev10/10)

**Date: 2023-Oct-12**

**Page: 1 of 33**

# *FAX*

**Nye County**

www.NyeCountyNV.gov

***FROM:*** Elona Goldner

775-751-6302

@ egoldner@nyecountynv.gov

***FOR:*** Lincoln Financial Group

8778433950

***Message:***

Attached is a Long-term Disability Claim (Employers Statement), for David Boruchowitz. Including his Worker Comp file. We will forward the Supervisor Statement as soon as it is complete. Please let me know if you have any questions. Elona Goldner, Nye County HR Director (775) 751-6302

## Long-Term Disability Claim Employer's Statement

**To Be Completed By The Employer**

| This claim is for (Employee's Name and Address) | Social Security Number | Date of Birth |
|---|---|---|
| David E Boruchowitz | | |

**A. Information about the employer**

| Company's Name | Group Policy Number | Class Number |
|---|---|---|
| NYE COUNTY | nyecounty-bi-1565903 | 2 |
| Address (Street, City, State, Zip)<br>2101 E Calvada Blvd., Ste 150 Pahrump, NV 89048 | Telephone: (775) 751-6302<br>Fax: (775) 751-6309 | |
| Name and address of division where employee works (if different from above)<br>NYE COUNTY SHERIFF | Telephone: (775) 751-7000<br>Fax: | |

**B. Information about the employee**

| Date employee was hired (Month, Day, Year) 02/21/2006 | Date employee became insured under this plan? 07/01/2013<br>Date employee became insured under prior plan? 03/16/2009 | What was the employee's regularly scheduled work week?<br>40 hours per week 10 hours per day |
|---|---|---|

**C. Information needed for withholding and reporting taxes**

Does employee contribute post-tax dollars toward the premium? h Yes h No If yes, what percent is paid by the employee? 100 %

**If you leave this section blank, we will assume it is 100% employer contribution and calculate FICA taxes accordingly.**

**D. Information about the claim**

Were there any changes to the employee's job responsibilities due to the disabling condition before the employee became fully disabled?
☐ Yes ☒ No If yes, what were the changes and when were they made?

| What was the employee's permanent job on his or her last day at work?<br>Captain | How long had the employee been in this job?<br>4 years 2 months |
|---|---|
| Last day employee actually worked (Month, Day, Year) 07/20/2023 | On that day, did the employee work a full day?<br>☒ Yes ☐ No If no, how many hours were worked? |
| Why did employee stop working?<br>Admin Leave - Pending Investigation | Is the employee's condition work related?<br>☒ Yes ☐ No |

Has a claim been filed with Workers' Compensation?
☒ Yes ☐ No If yes, send initial report of illness or injury and award notice.

Name, address and telephone number of your compensation carrier
CCMSI- PO Box 35350, Las Vegas, NV 89133 - Phone 725-242-8440 Fax 702-933-4861

Name, address and telephone number of your medical insurance carrier
Anthem Blue Cross Blue Shield- 1-877-811-3106

**E. Information about your pension plan** (do not complete for maternity claim)

| Do you have a pension plan?<br>☒ Yes ☐ No | If yes, what type? ☐ Defined benefit ☐ Defined contribution ☐ 401(k) ☐ Profit sharing ☒ Other: (specify) Public Employers Retirement System- Medically Retiring |
|---|---|
| Is the employee eligible for your pension plan?<br>☒ Yes ☐ No If no, why? | If eligible, does the employee participate?<br>☐ Yes ☒ No If no, why? Employer 100% Paid |

If the employee is participating, when is he or she eligible for benefits under the plan? (Month, Day, Year)
Employee will begin receiving benefits on Oct 13, 2023, that is his date of retirement.

**NOTE: If any portion of this pension benefit is attributable to the employee's contribution, please provide details including the percentage of his/her contribution to the total contribution. This should include a copy of the contract.**

**F. Information about your rehire or return-to-work policies**

Does your company have a rehire or return-to-work policy for disabled employees?
☒ Yes ☐ No Transitional Duty Policy

What is the name and title of the manager we should contact if we identify a rehabilitation or return-to-work option?
Ryanne Gott- HR Generalist II- 775-751-6305

**G. Information about the employee's salary**

The employee (Check all that apply)
☐ is paid hourly (what is the hourly rate?) $ 65 53 ☒ is salaried ☐ receives commissions ☐ receives bonuses

Will employee file for disability benefits provided by any employer/employee labor management, state disability or union welfare plan?
☐ Yes ■ No If yes, what is the weekly amount? $ - When do benefits begin? End?

Is this employee eligible for salary continuation? Medical Retirement PERS
☐ Yes ☐ No If yes, what is the weekly amount? $ When do benefits begin? 10/13/2023 End?

(Continued on next page)

**Reporting the employee's basic monthly earnings**

Find the definition of basic monthly earnings that matches your contract for this employee and follow the instructions given.

**Definitions of Basic Monthly Earnings**

a. salary only (no commissions, bonuses, etc.), complete question 1 below
b. previous year's W-2 form, complete question 5 below (attach W-2)
c. sole proprietor, complete question 8 below
d. previous year's K-1 form, complete question 6 below (attach K-1)

e. salary and commissions, complete questions 1 and 3 below
f. salary, commissions and bonuses, complete questions 1, 3 and 4 below
g. salary and deferred compensation, complete questions 1 and 2 below
h. salary, deferred compensation and commissions, complete questions 1, 2 and 3 below
i. salary, deferred compensation, commissions and bonuses, complete questions 1, 2, 3 and 4 below
j. salary and K-1 earnings, complete questions 1 and 6 below

k. W-2 with deferred compensation, complete questions 2 and 5 below
l. partnership agreement, complete question 7 below
m. teacher's contract, complete question 1 below
n. any other definition, complete question 9 below

1) On the last day employee worked, what was his or her basic monthly salary? (Divide annual salary by 12 or multiply weekly salary by 52 and divide by 12. Teachers divide annual salary by 12) — 1 $10,169.60

2) On the last day the employee worked, what was his or her monthly pre-tax contribution to your deferred compensation plan? — 2 $0.00

3) How much had the employee received in commissions in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ ________ Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly commissions. — 3 $0.00

4) How much had the employee received in bonuses in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ ________. Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly bonuses. — 4 $0.00

5) What were the employee's earnings as shown on the W-2 form of the year immediately preceding the disability? — 5 $143,853.72

6) What were the employee's earnings as shown on the K-1 form of the year immediately preceding the disability? — 6 ________

7) As of the last day the employee worked, what were the budgeted annual earnings as determined by the written partnership agreement in effect? (Do not include dividends, interest or return of capital) $ ________. — 7 ________

8) As of the last day the employee worked, what was the sole proprietor's annual net profit (1040 Schedule C gross income minus total deductions minus depreciation) averaged over the 3 years immediately preceding the disability or the period of sole proprietorship if less than 3 years? — 8 ________

9) For definitions other than those above, calculate the monthly earnings as they are defined in your contract. If earnings are based on salary as expressed on a particular document, send us a copy of the document. — 9 ________

**H. Required Attachments and Signature**

If the employee contributes to the premiums, attach a copy of the enrollment form.

If salary is based on a W-2, K-1, 1099, or a similar document, attach a copy of the document.

If you have medical information from the employee's file relating to this disability, please attach copies.

If a workers' compensation claim is filed, send initial report of injury or illness and award notice.

Name of person completing this form (If this claim is approved for disability benefits, the benefit check will be sent to the employee with a carbon copy to you.) Elena Goldner

X [signature] — Signature | Human Resources Director — Title | 10/11/2023 — Date

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**, PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

# GROUP LONG-TERM DISABILITY CLAIM
## (PLEASE see FRAUD NOTICES attached)

EMPLOYER
Nye County

GROUP POLICY NO.
NYECOUNTY-BL-1565903




**EMPLOYER** - form completion information

**NOTICE OF CLAIM - Instructions**

A. **Complete** the **employer's portion in full** and **return this portion** to address above or fax to the number above

**Include**
- Copy of enrollment card (if employee contributes to premium)
- Copy of approved medical evidence of insurability if required at time of enrollment
- If Workers' Compensation claim filed, include copy of First Report of Accident and the decision

B. **Give remaining part of form to claimant for completion**

BORUCHOWITZ, David DOB: (43 yo M) Acc No. 10896 DOS: 09/26/2023

SU SPINE & SPORTS

**Boruchowitz, David**
43 Y old Male, DOB:
Account Number: 10896
Home:
Guarantor: Boruchowitz, David Insurance: CCMSI Payer ID: PAPER
Referring: Peter Su, MD
Appointment Facility: Su Spine and Sports (SUNSET)

09/26/2023 Peter S Su, MD

**Current Medications**
[illegible]
Medication List reviewed and reconciled with the patient

**Past Medical History**
[illegible]

**Surgical History**
[illegible]

**Family History**
No Family History documented.

**Social History**
[illegible]

**Allergies**
ALPRAZolam

**Hospitalization/Major Diagnostic Procedure**
No Hospitalization History.

**Review of Systems**
[illegible]
Review of Systems (ROS) All others negative except for those mentioned in HPI.
[illegible]
Comments See HPI for details
[illegible]

**Reason for Appointment**
1. Low back pain

**History of Present Illness**
New/Follow-up Patient:
Problem 1
Employer: Nye County / Town of Pahrump

DOI: 4/9/22

Dear Claims Adjuster/Examiner:

This is the physiatry/pain management consultation of David Boruchowitz. This patient is being evaluated at the request of Dr. Alexander Janda.

The patient is being evaluated with respect to an alleged work-related injury sustained while working for Nye County / Town of Pahrump on 4/9/22.

The following is a report of my examination, findings, diagnosis, prognosis, and treatment recommendations with respect to this injury.

Chief Complaint: lower back pain

HPI:
43 y/o M returns for a follow up. He continues to report lower back pain which developed after a work-related injury on 4/9/22.

He saw ortho spine Dr. Cash, and was recommended facet joint injections.

He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, reporting

RECEIVED
OCT 0 2 2023
CCMSI-CARSON CITY

BORUCHOWITZ, David DOB: (43 yo M) Acc No. 10896 DOS: 09/26/2023

Thirst Denies. Low Sex Drive Denies.
Ophthalmologic:
Blurry vision Denies. Change in vision Denies.
ENT:
Decreased hearing Denies. Ear pain Denies. Nosebleed Denies. Ringing in the ears Denies. Sinus problems Denies. Sore throat Denies.
Respiratory:
Cough Denies. Hemoptysis Denies. Shortness of breath with exertion Denies. Wheezing Denies.
Cardiovascular:
Chest pain Denies. High blood pressure Denies. Irregular heartbeat Denies. Palpitations Denies. Swelling in hands / feet Denies.
Gastrointestinal:
Abdominal pain Denies. Blood in stool Denies. Constipation Denies. Diarrhea Denies. Heartburn Denies. Nausea Denies. Vomiting Denies. Hematemesis Denies. Hernia Denies.
Hematology:
Bleeding problems Denies. Easy bruising Denies. Prolonged bleeding Denies.
Allergy / Immunology:
Hives Denies. Unusual reaction to medication(s), food, animals or insects Denies.
Genitourinary:
Blood in the urine Denies. Difficulty urinating Denies. Painful urination Denies.
Neurologic:
Balance difficulty Denies. Dizziness Denies. Fainting Denies. Headache Denies. Seizures Denies. Tingling / numbness Denies.
Psychiatric:
Anxiety Denies. Depressed mood Denies. Suicidal thoughts Denies.

minimal relief.

He has not gotten the diclofenac and baclofen yet, it was just approved and he has not picked it up yet.

Patient reports VAS 4-5/10 today.

Patient reports that while at work on 4/9/2022, he was driving an off-highway vehicle took a corner and rolled down the hill multiple times until coming to a stop on its roof. He went to Desert View ER to be evaluated, had CT scan and was discharged the same day. Pain located at the lower back, primarily axial and does not radiate. Pain described as aching, cramping, shooting, spasming, stabbing, and throbbing. Pain is constant and worst with movement and range of motion and alleviated by rest. Denies numbness or tingling, denies any incontinence of bladder or bowel. Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Previous History of Injuries:
Denies any previous injuries to the same body part.

Occupational History:
Patient works as police officer for Nye County / Town of Pahrump.

Patient reports pain negatively affecting sleep, feeling comfortable, independence, ability to work, activities of daily living such as going to the store, doing chores, enjoying time with family and friends, exercise including walking, and participating in favorite hobbies.

Medical Treatment to Date:
Patient had chiropractic treatments with Dr. Janda x15 times and reports minimal improvement.

Patient has been taking ibuprofen which helps some but pain persists.

---
Diagnostic Testing:

MRI L-spine 12/13/2022 Simon Med:
1. Mild multilevel degenerative changes, worst at L5-S1, where there is minimal right and mild left neuroforaminal narrowing, mild lateral recess narrowing and suspected abutment of the bilateral descending S1 nerve roots. Please see above for additional details regarding the individual levels. 2. Levocurvature of the lumbar spine.
L1-L2: Minimal circumferential disc bulge. No significant neuroforaminal narrowing. No significant spinal canal stenosis.
L2-L3: Minimal bilobed disc bulge. Minimal facet arthropathy. No

RECEIVED OCT 02 2023 CCMSI CARSON CITY

significant neuroforaminal narrowing. No significant spinal canal stenosis.

L3-L4: Tiny circumferential disc bulge. Minimal facet arthropathy. No significant neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing.

L4-L5: Minimal circumferential disc bulge. Mild facet arthropathy. Mild bilateral neuroforaminal narrowing. No significant spinal canal stenosis. Possible minimal abutment of the exiting left L4 nerve root.

L5-S1: Circumferential disc bulge and annular fissure. Minimal facet arthropathy. Minimal right and mild left neuroforaminal narrowing. Effacement of the ventral thecal sac without significant spinal canal stenosis. Mild lateral recess narrowing. Suspected abutment of the bilateral descending S1 nerve roots within the lateral recesses.

.

**Vital Signs**

BP **127/83 mm Hg**, HR **63 /min**, Temp **97.2 F**, Wt **259.6 lbs**, Wt-kg 117.75 kg.

**Examination**

General Examination:

General appearance: well developed, well nourished.

Musculoskeletal: Low back: inspection WNL, ROM full but painful, TTP over bilateral lumbar paraspinals and facets particularly with L4-5 and L5-S1 segments bilaterally, facet loading positive bilaterally, SLR neg bilat.

.

Neurologic: MMT: 5/5 BLE (hip flexion, knee extension/flexion, dorsiflexion, plantarflexion, EHL extension).

Sensory: intact BLE.

Reflexes: WNL BLE..

Psych: alert, oriented, cooperative with exam.

Head: normocephalic, atraumatic.

Eyes: extraocular movement full and smooth.

Heart: regular rate and rhythm.

Lungs: no cough or signs of respiratory distress.

Chest: normal chest wall expansion.

Abdomen: soft, nontender, nondistended.

Skin: normal.

Extremities: no edema.

Ears: normal appearance.

Nose: normal appearance, no external masses or lesions.

Oral cavity: mucosa moist.

**Assessments**

1. Sprain of ligaments of lumbar spine, initial encounter - S33.5XXA (Primary)
2. Other intervertebral disc displacement, lumbar region - M51.26
3. Other intervertebral disc disorders, lumbosacral region - M51.87
4. Spondylosis without myelopathy or radiculopathy, lumbar region - M47.816

**Treatment**

**1. Spondylosis without myelopathy or radiculopathy, lumbar region**

RECEIVED
OCT 02 2023
CCMSI - CARSON CITY

PROCEDURE: 64493 INJ PARAVERT F JNT L/S 1 LEV (Ordered for 09/26/2023)
PROCEDURE: 64494 INJ PARAVERT F JNT L/S 2 LEV (Ordered for 09/26/2023)

**2. Others**
Start Diclofenac Sodium Tablet Delayed Release, 75 MG, 1 tablet as needed, Orally, Twice a day, 30 days, 60 Tablet, Refills 0
Start Baclofen Tablet, 10 MG, 1 tablet as needed, Orally, bedtime, 30 day(s), 30, Refills 0
Notes: Causation:
In reviewing the patient's history and medical records and examination today, it appears that the patient did sustain an injury to lumbar arising out of and caused by the industial exposure of 4/9/22.

Treatment recommendations were discussed and/or communicated with the patient's treating physician. On the basis of today's evaluation and in reviewing the patient's job responsibilities, my recommendations are as follows:

43 y/o M presents with low back pain.

History and physical, along with available imaging, suggest lumbar sprain, lumbar disc herniation, lumbar disc annular tear, and lumbar facet arthropathy.

-Continue home exercises and stretching.
-Start diclofenac 75mg BID PRN inflammatory pain.
-Start baclofen 10mg QHS PRN muscle spasms.
-He is s/p bilateral L4-5 and L5-S1 TFESI on 8/28/23, awaiting relief.
-**Recommend bilateral L4-5 and L5-S1 facet joint injection**, per recommendations from Dr. Andrew Cash.
The patient has moderate to severe pain, and has failed conservative care >6 weeks including physical therapy, home exercise program, medication management such as using NSAID's. The pain has been affecting patient's daily life. The risks and benefits of the interventional therapy were discussed at length with the patient including the risk of bleeding, infection, nerve damage and the potential for an increase in pain symptoms. Educational information was provided to the patient regarding the procedure and the procedure was further explained using anatomic models and diagrams. All of the patient's questions were answered and the consent form was reviewed in great detail. The patient understands that the explanation of the procedure is not exhaustive, but all questions and concerns have been fully addressed at this time.
-F/U 3-4 weeks.

WORK STATUS: (See PPR)

Thank you for allowing me to participate in the care of this patient and provided you with my opinion and recommendations for continued treatment. I have outlined my treatment plan above and would ask that you review.

RECEIVED
OCT 02 2023
CCWC-CARSON CITY

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 10896 **DOS:** 09/26/2023

Sincerely,

Peter Su, MD
Diplomate of ABPMR
Board Certified in Physical Medicine and Rehabilitation
Board Certified in Pain Medicine.

**Visit Codes**
99215 Office Visit, Est Pt., Level 5.

**Follow Up**
3-4 Weeks



Electronically signed by PETER SU , MD on 09/26/2023 at 11:33 AM PDT

Sign off status: Completed

Su Spine and Sports (SUNSET)
9260 W SUNSET RD
STE 306
LAS VEGAS, NV 89148-4903
Tel: 702-779-3994
Fax: 888-464-0838



Note generated by eClinicalWorks EMR PM Software (www.eClinicalWorks.com)

RECEIVED
OCT 02 2023
CCMSI CARSON CITY

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

DISC
Desert Institute of Spine Care

## Boruchowitz, David

43 Y old Male, DOB:
Account Number: 16766

Home:
Guarantor: Boruchowitz, David Insurance: CCMSI
PCP: CCMSI CCMSI Referring: CCMSI CCMSI
Appointment Facility: Desert Institute of Spine Care

09/18/2023

NP WC: Andrew M. Cash, MD

**Current Medications**
Discontinued
- ALPRAZolam

**Past Medical History**
Non-Contributory.

**Surgical History**
Gallbladder 2009
Both shoulders 2010 / 2015

**Family History**
Non-Contributory

**Social History**
Tobacco Use:
Tobacco Use/Smoking
Smoking Status: *nonsmoker*
Drugs/Alcohol:
Do you drink alcohol?: No.

**Allergies**
ALPRAZolam
Penicillin
Sunscreens

**Hospitalization/Major Diagnostic Procedure**
No Hospitalization History.

**Review of Systems**
Sexual Activity:
Sexual Activity Pain interferes with sex.
General/Constitutional:
Chills denies. Fever denies. Sweats denies. Weight loss denies.
Gastrointestinal:
Uncontrollable bowel movements denies .
Genitourinary:

**Reason for Appointment**
1. Initial Consult - Lumbar

**History of Present Illness**
Todays Visit:
The patient is a 43 year old male who was involved in a work related motor vehicle accident on 04/09/2022. Patient states he last control of th OHV as he rounded a curve on a hill, and the vehicle rolled numerous times down the mountain. The patient was a restrained driver. The patient was facing forward at the time of impact. The patient reports that the impact was sudden and expected; the patient prepared for impact. He hit his head but not sure on what. The patient did not black out. Immediately after the collision the patient felt shaken up. The patient began to feel pain immediately.
The worst back pain level is 10/10. The patient reports no radicular symptoms in the lower extremities in the form of numbness, tingling, pain, and weakness. The patient has had chiropractic and injection treatment.
Current Treatment:
Pain Management, Chiropractic.
Prior Injuries::
None.

**Vital Signs**
Ht 5 ft 11 in, Wt **250 lbs**, BMI **34.86 Index**, RR **16 /min**, Temp **97.3 F**, Ht-cm **180.34 cm**, Wt-kg **113.4 kg**.

**Examination**
General Examination:
GENERAL APPEARANCE: well nourished and hydrated,
EYES/ENT: Pupil: Bilateral equal and direct reaction to normal light, normal conjuctiva and lids.
ENT inspection shows no scars, lesions or foreign bodies. Lips, teeth, and gums appear normal.
NECK, THYROID: No masses, symmetrical, no enlargement of thyroid.
NEUROLOGIC: Cranial nerves:

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

Uncontrollable urination denies.
Neurologic:
Headache denies.
Psychiatric:
Lingering memories of the accident denies. Anxiety denies. Depressed mood denies. Difficulty sleeping **admits**.
The patient's handwritten intake forms and information has been reviewed, documented, verified, & reconciled, through oral confirmation, and the type written dictation incorporated all information, representing the complete and corroborated historical and current account.

II Optic: Bilateral visual acuity
III Oculomotor: Normal pupillary constriction.
IV Trochlear: Normal bilateral.
V Trigeminal: Normal bilateral.
VI Abducens: Normal bilateral.
VII Facial: Normal bilateral.
VIII Acoustic: Normal hearing bilateral.
NEUROPSYCHIATRIC: Appropriate judgment and insight, alert and oriented x3.
Associations- Intact.
Thought Processes/Cognitive Function- Appropriate fund of knowledge.

Imaging Studies:
Results: Lumbar disc protrusion(s), Lumbar annular tear(s).
Time was spent with the patient reviewing the chart in the office today, offering full explanations of the pathology therein, as well as different treatment options that could be provided for such pathological findings. As appropriate, the patient was shown illustrations and models for a better understanding of the condition as well as given literature. I reviewed with the patient the records and diagnostic/therapeutic protocol in detail and to their satisfaction.

Spine:

Lumbar:

There is painful extension.
There is painful flexion. There is bilateral paraspinal musculature pain and tenderness.
Muscle strength is 5/5 bilaterally.
Deep tendon reflexes are symmetrical.
Light touch sensation is intact.
The hip exam is unremarkable.
The sacroiliac joint exam tender with provocation compression, FABER,and fortin test is unremarkable.
Negative straight leg raise.

**Assessments**

1. Other intervertebral disc displacement, lumbar region - M51.26 (Primary)
2. Facet syndrome - M12.88

**Treatment**

**1. Facet syndrome**
Referral To:Pain Medicine
Reason:lumbar MBB

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

**Disability/Prognosis/Causation**

Medical Records:

Reviewed records from Dr Su, Dr Janda, Simmonmed.

DISABILITY:

Lumbar restrictions: No repetitive bending, twisting, stooping crawling, climbing, squatting, or lifting more than 10 pounds frequently or 20 pounds occasionally.

CAUSATION:

In my opinion the patient's symptoms which we are evaluating are directly related to the above mentioned accident(s). This opinion is based on patient's history, physical exam, diagnostic studies, and medical records provided. I welcome the opportunity to review any and all medical records regarding past or present treatment of the patient which could possibly reinforce or otherwise affect the above opinions..

Opioid Risk:

The risks of opioid medications were explained to the patient. The patient understands and agrees to use these medications only as prescribed. The patient agrees to obtain pain medications from this practice only. We have fully discussed the potential side effects of the medication with the patient. These include, but are not limited to, constipation, drowsiness, addiction, nausea, vomiting, impaired judgment and the risk of fatal overdose if not taken as prescribed. We have warned the patient that sharing medications is a felony. We have warned the patient against driving while taking sedating medications.

**Procedure Codes**

72110 X-RAY EXAM OF LOWER SPINE

**Follow Up**

4 Weeks

**Electronically signed by Marie Hilgar on 09/19/2023 at 12:15 PM PDT**

**Sign off status: Completed**

BORUCHOWITZ, David **DOB:** (43 yo M) **Acc No.** 16766 **DOS:** 09/18/2023

Desert Institute of Spine Care
9339 W SUNSET RD
STE 100
LAS VEGAS, NV 89148-4849
Tel: 702-630-3472
Fax: 702-946-5115

---

Progress Note: Andrew M. Cash, MD 09/18/2023

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

CCMSI

Date: 05/11/2022

To: David Boruchowitz

Re: Claim No: 22J11K236563
Date of Injury: 04/09/2022
Employer: NYE COUNTY / TOWN OF PAHRUMP
Insurer/TPA: NYE COUNTY / TOWN OF PAHRUMP

**NOTICE OF INTENTION TO CLOSE CLAIM**

(Pursuant to NRS 616C.235)

After a careful and thorough review of your workers' compensation claim, it has been determined that all benefits have been paid and your claim will be closed effective seventy (70) days from the date of this notice. Based on the available medical information, the claim will be closed without a Permanent Partial Disability (PPD) evaluation as there is no possibility of a permanent impairment of any kind.

Your file reflects that you are not presently undergoing any medical treatment; however, if you are scheduled for future medical appointments, please advise this office immediately.

Nevada Revised Statute (NRS) 616C.390 defines your right to reopen your claim. You must make a written request for reopening and your doctor must submit a report relating your problem to the original industrial injury. The report must state that your condition has worsened since the time of claim closure and that the condition requires additional medical care. Reopening is not effective prior to the date of your request for reopening unless good cause is shown. Upon such showing by your doctor, the cost of emergency treatment shall be allowed.

If you disagree with the above determination, you do have the right to appeal. If your appeal concerns "**accident benefits**" (medical treatment or supplies) and your insurer has contracted with an organization for managed care, complete the bottom portion of this notice and send it to your insurer no later than fourteen (14) days after the date of this notice.

If your appeal concerns "**compensation benefits**," or if no organization for managed care is involved in your claim, complete the bottom portion of this notice and send it to the State of Nevada, Department of Administration, Hearings Division. **Your appeal must be filed within seventy (70) days after the date on which the notice of the insurer's final determination was mailed.**

| | | |
|---|---|---|
| Department of Administration<br>Hearings Division<br>1050 E. William Street, Ste. 400<br>Carson City, NV 89701<br>(775) 687-8440 | OR | Department of Administration<br>Hearings Division<br>2200 S. Rancho Drive, Suite 210<br>Las Vegas, NV 89102<br>(702) 486-2525 |

Reason for appeal: ______________________________

______________________________

Signature Christine Guerrero
Med Only Claim Representative

Date

***Retain a copy of this notice for your records.***

Cc: File, Employer
Enclosure

D-31 (rev. 10/10)

***~ THE EFFECTS OF CLOSING YOUR CLAIM ~***

By closing your claim you will no longer be eligible for any type of benefits associated with this claim, including medical treatment, diagnostic testing or prescription medication. Any medical benefit you receive after the date of your claim closing will be your financial responsibility. If you disagree with the closure of your claim you may appeal the determination made by CCMSI **within seventy (70) days after the date on which the determination was mailed.** Failure to file an appeal within this time period may result in a dismissal of your appeal by the Department of Administration.

You do have the right to reopen your claim if your claim meets certain criteria. Please see attached the Form D-13 "**Injured Employee's Right To Reopen A Claim Which Has Been Closed"**.

If you have any questions regarding the closure of your claim please contact your adjuster.

# REQUEST FOR HEARING - CONTESTED CLAIM

(Pursuant to NAC 616C.274)

REPLY TO:

Department of Administration
Hearings Division
1050 E. William Street, Ste. 400
Carson City, NV 89701
(775) 687-8440

OR

Department of Administration
Hearings Division
2200 S. Rancho Drive, Suite 210
Las Vegas, NV 89102
(702) 486-2525

| Employee Information | | Employer Information |
|---|---|---|
| Employee's Name and Address<br>David Boruchowitz | | Employer's Name and Address<br>NYE COUNTY / TOWN OF PAHRUMP<br>101 RADAR ROAD<br>COALDALE, NV 89049 |
| Employee's Telephone Number | Claim No. 22J11K236563<br>Date of Injury 04/09/2022 | Employer's Telephone Number<br>775-482-8191 |
| **Insurer Information** | | **Third-Party Administrator Information** |
| Insurer's Name and Address<br>Nye County / Town of Pahrump<br>101 Radar Road<br>Coaldale, NV, 89049 | | Third-Party Administrator's Name and Address<br>CCMSI<br>P.O. Box 35350<br>Las Vegas, NV 89133 |
| Insurer's Telephone Number<br>775-482-8191 | | Third-Party Administrator's Telephone Number<br>702-933-4800 |

Do Not Complete or Mail This Form Unless You Disagree With the Insurer's Determination.

☐ **PLEASE CHECK HERE IF YOUR REQUEST IS REGARDING A CLAIM FILED PURSUANT TO NRS 617.455 OR 617.457**

**YOU MUST INCLUDE A COPY OF THE DETERMINATION LETTER OR A HEARING WILL NOT BE SCHEDULED PURSUANT TO NRS 616C.315.**

**Briefly** explain the basis for this appeal:

______________________________________________

______________________________________________

______________________________________________

This request for hearing is filed by, or on behalf of: ☐ **Injured Employee** ☐ **Employer**

and is dated this _______________ day of __________________________, 20___________.

Signature of Injured Employee/Employer

Injured Employee's/Employer's Rep. (Advisor)

D-12a (Rev. 10/2018)

## INJURED EMPLOYEE'S RIGHT TO REOPEN A CLAIM WHICH HAS BEEN CLOSED

Nevada Revised Statutes 616C.390 defines your right to reopen your worker's compensation claim after it has been determined that all benefits have been paid and your claim has been closed.

An application to reopen a claim must be in writing and accompanied by a certificate from a physician or chiropractor showing a change in medical condition.

If you did not lose time from work as a result of your industrial injury or occupational disease and you did not receive a permanent partial disability award, you may not request reopening of your claim more than one (1) year after the date on which your claim was closed.

Except as otherwise provided in NRS 616C.390(4), if the request for reopening is denied, the injured employee shall not request reopening of the claim until at least one (1) year after the date on which the final determination of an insurer is issued.

Reopening of a claim is not effective, and thus no benefits or compensation is available, before the date on which an application for reopening is made unless good cause is shown (NRS 616C.390(8)). If your claim closes under NRS 616C.235(2), then you may not reopen your claim (NRS 616C.390(6)).

## PPD OFFSET

Nevada Revised Statues (NRS) 616C.405 prohibits an injured employee from receiving a permanent partial disability (PPD) benefit at the same time you are receiving temporary total disability (TTD), temporary partial disability (TPD), or permanent total disability (PTD).

Further, if you have received a PPD on a claim and you were paid the award in a lump sum, future TTD, TPD, or PTD you receive on the same claim must be reduced by a portion of the PPD lump sum; or, if you are receiving installment payments for PPD, those payments will be suspended while TTD, TPD, or PTD is being paid.

The rate at which the PPD offset is deducted is the same as the daily/monthly rate of the PPD award. Except for minimum lump sum awards, for each day/month you receive TTD, TPD, or PTD on the claim, the daily/monthly PPD rate is deducted based on the time period used to calculate the lump sum PPD award. (See NRS 616C.440 for specific information regarding offsets to PTD)

Your PPD lump sum was computed through the day before your 70th* birthday. In other words, the lump sum represents permanent partial disability payments due you from the effective date of your initial PPD payment until you turn 70* years old (unless otherwise entitled to the minimum lump sum). Although you received just one lump sum payment(s), this payment represents the present value of all your future PPD payments.

* PPD awards are calculated using the maximum age established by law which, depending on the date of the injury or occupational disease, may be <u>less</u> than 70 years.

NOTE: This form is to be used by the Claims Agent when sending out permanent partial disability awards or whenever applicable.

D-13 (rev. 7/08)

**PHYSICIAN'S AND CHIROPRACTOR'S PROGRESS REPORT CERTIFICATION OF DISABILITY**

Claim Number:

Social Security Num

Patient's Name: David Boruchowitz

Date of Injury: 4/19/22

Employer: NYE County

Name of MCO (if applicable)

Patient's Job Description/Occupation:

Previous Injuries/Diseases/Surgeries Contributing to the Condition:

Diagnosis: Lumbar Sprain

Related to the Industrial Injury? Explain:

Objective Medical Findings: Exam

☐ None - Discharged | Stable ☑ Yes ☐ No | Ratable ☐ Yes ☐ No

☐ Generally Improved | ☐ Condition Worsened | ☐ Condition Same

May Have Suffered a Permanent Disability ☐ Yes ☐ No

Treatment Plan: See below

☐ No Change in Therapy | ☐ PT/OT Prescribed | ☐ Medication May be Used While Working

☐ Case Management | ☐ PT/OT Discontinued

Transfer care to chiropractor

☐ Consultation

☐ Further Diagnostic Studies:

☐ Prescription(s)

☒ Released to **FULL DUTY**/No Restrictions on (Date): 9/27/22

☐ Certified **TOTALLY TEMPORARILY DISABLED** (Indicate Dates) **From:** ______ **To:** ______

☐ Released to **RESTRICTED**/Modified Duty on (Date): **From:** ______ **To:** ______

**Restrictions Are:** ☐ Permanent ☐ Temporary

| | | | |
|---|---|---|---|
| ☐ No Sitting | ☐ No Standing | ☐ No Pulling | ☐ Other: ______ |
| ☐ No Bending at Waist | ☐ No Stooping | ☐ No Lifting | ______ |
| ☐ No Carrying | ☐ No Walking | ☐ Lifting Restricted to (lbs.): ______ | |
| ☐ No Pushing | ☐ No Climbing | ☐ No Reaching Above Shoulders | |

| Date of Next Visit: | Date of this Exam: | Physician/Chiropractor Name: | Physician/Chiropractor Signature: |
|---|---|---|---|
| N/A | 9/21/22 | A-Juzie NP | [signature] |

D-39 (Rev. 7/99



Released to FULL DUTY/No Restrictions on Time

Certified TOTALLY TEMPORARILY DISABLED

Released to RESTRICTED/Modified Duty

Restrictions Are: Permanent Temporary

No Bending at Waist

No Stooping

No Lifting

Lifting Restricted to (lbs.)



CCMSI

05/11/2022

David Boruchowitz

Re: Claim Number: 22J11K236563
Date of Injury: 04/09/2022
Employer: NYE COUNTY / TOWN OF PAHRUMP
Insurer: Nye County / Town of Pahrump
Claims Administrator/Third-Party Administrator: CCMSI
Body Part(s)/Diagnosis: Lower Back Sprain

**NOTICE OF CLAIM ACCEPTANCE**
(Pursuant to NRS 616C.065)

Dear David Boruchowitz

The above referenced claim has been accepted on behalf of Nye County / Town of Pahrump. Please check the information contained in this notice. If you find any of the information to be incorrect, please notify the claims administrator who is handling this claim.

If you disagree with the above determination, you do have the right to appeal by requesting a hearing before a Hearing Officer by completing the enclosed Form D-12a and sending it to the State of Nevada, Department of Administration, Hearings Division. **Your appeal must be filed within seventy (70) days after the date on which the notice of this determination was mailed.**

| | | |
|---|---|---|
| Department of Administration<br>Hearings Division<br>1050 E. William Street, Ste. 400<br>Carson City, NV 89701<br>(775) 687-8440 | OR | Department of Administration<br>Hearings Division<br>2200 S. Rancho Drive, Ste. 210<br>Las Vegas, NV 89102<br>(702) 486-2525 |

If you have any questions, please contact >

Sincerely,

Christine Guerrero
Med Only Claim Representative

Enclosure: D-53, D-12a >

cc:

***Please retain a copy for your records***

D-30 (rev. 10/18)

NOTICE TO ALL INJURED WORKERS
RECEIVING WORKERS' COMPENSATION BENEFITS

In conjunction with the "Notice of Claim Acceptance" letter, the following information is intended to help you with your workers' compensation claim:

1. Please notify this office if you have lost any time from work as a result of your occupational injury or illness. You may by eligible for temporary total disability (TTD) benefits. Any time lost from work cannot be compensated without a disability certificate from your treating physician. Pursuant to NRS 616C.475, a disability certificate must: (1) be issued by the treating physician; (2) must be for a specified period of time; (3) must describe any physical limitation or restrictions imposed by the doctor; and (4) must be signed by the treating physician.

   It is your responsibility, and no one else's, to provide this office with the certificate of disability. Without a current disability certificate, you will not be paid any TTD benefits. Therefore, please obtain a certificate of disability each time you follow up with your physician. Do not rely on the physician to provide one because they do not automatically send a certificate to this office after they evaluate you.

   In addition, you should be turning in a copy of the disability certificate to your employer. It is your responsibility to keep your employer informed of your work status especially if you are released to return to work at light duty. Your employer may be able to provide light duty for you. You cannot be paid TTD benefits if you are released to light duty but you have not given your employer an opportunity to accommodate the restrictions.

2. Please advise this office if you have ever had any prior medical treatment for the body parts covered under your claim. If so, please supply a list of all physicians, hospitals, physical therapy institutes, etc. that you have treated with previously, along with their complete addresses and phone numbers.

3. Under certain specified circumstances you may be eligible for reimbursement for travel to and from receiving medical care. The basic requirement is that you must travel 20 miles or more, on way, from your residence or employment, if during working hours, to the place of medical treatment. If you do not meet this requirement, but you travel 40 miles or more total in any one week for medical care, you may be eligible for mileage reimbursement. If you think you may qualify, please contact this office and we will send you the proper form for submitting you request for mileage reimbursement.

**BRIEF DESCRIPTION OF RIGHTS AND BENEFITS**
**(Pursuant to NRS 616C.050)**

**Notice of Injury or Occupational Disease (Incident Report Form C-1):** If an injury or occupational disease (OD) arises out of and in the course of employment, you must provide written notice to your employer as soon as practicable, but no later than 7 days after the accident or OD. Your employer shall maintain a sufficient supply of the required forms.

**Claim for Compensation (Form C-4):** If medical treatment is sought, the form C-4 is available at the place of initial treatment. A completed "Claim for Compensation" (Form C-4) must be filed within 90 days after an accident or OD. The treating physician or chiropractor must, within 3 working days after treatment, complete and mail to the employer, the employer's insurer and third-party administrator, the Claim for Compensation.

**Medical Treatment:** If you require medical treatment for your on-the-job injury or OD, you may be required to select a physician or chiropractor from a list provided by your workers' compensation insurer, if it has contracted with an Organization for Managed Care (MCO) or Preferred Provider Organization (PPO) or providers of health care. If your employer has not entered into a contract with an MCO or PPO, you may select a physician or chiropractor from the Panel of Physicians and Chiropractors. Any **medical costs** related to your industrial injury or OD will be paid by your insurer.

**Temporary Total Disability (TTD):** If your doctor has certified that you are unable to work for a period of at least 5 consecutive days, or 5 cumulative days in a 20-day period, or places restrictions on you that your employer does not accommodate, you may be entitled to TTD compensation.

**Temporary Partial Disability (TPD):** If the wage you receive upon reemployment is less than the compensation for TTD to which you are entitled, the insurer may be required to pay you TPD compensation to make up the difference. TPD can only be paid for a maximum of 24 months.

**Permanent Partial Disability (PPD):** When your medical condition is stable and there is an indication of a PPD as a result of your injury or OD, within 30 days, your insurer must arrange for an evaluation by a rating physician or chiropractor to determine the degree of your PPD. The amount of your PPD award depends on the date of injury, the results of the PPD evaluation, your age and wage.

**Permanent Total Disability (PTD):** If you are medically certified by a treating physician or chiropractor as permanently and totally disabled and have been granted a PTD status by your insurer, you are entitled to receive monthly benefits not to exceed 66 2/3% of your average monthly wage. The amount of your PTD payments is subject to reduction if you previously received a lump-sum PPD award.

**Vocational Rehabilitation Services:** You may be eligible for vocational rehabilitation services if you are unable to return to the job due to a permanent physical impairment or permanent restrictions as a result of your injury or occupational disease.

**Transportation and Per Diem Reimbursement:** You may be eligible for travel expenses and per diem associated with medical treatment.

**Reopening:** You may be able to reopen your claim if your condition worsens after claim closure.

**Appeal Process:** If you disagree with a written determination issued by the insurer or the insurer does not respond to your request, you may appeal to the **Department of Administration, Hearing Officer,** by following the instructions contained in your determination letter. You must appeal the determination within 70 days from the date of the determination letter at 1050 E. William Street, Suite 400, Carson City, Nevada 89701, or 2200 S. Rancho Drive, Suite 210, Las Vegas, Nevada 89102. If you disagree with the Hearing Officer decision, you may appeal to the **Department of Administration, Appeals Officer**. You must file your appeal within 30 days from the date of the Hearing Officer decision letter at 1050 E. William Street, Suite 450, Carson City, Nevada 89701, or 2200 S. Rancho Drive, Suite 220, Las Vegas, Nevada 89102. If you disagree with a decision of an Appeals Officer, you may file a **petition for judicial review with the District Court**. You must do so within 30 days of the Appeal Officer's decision. You may be represented by an attorney at your own expense or you may contact the NAIW for possible representation.

**Nevada Attorney for Injured Workers (NAIW):** If you disagree with a hearing officer decision, you may request that NAIW represent you without charge at an Appeals Officer Hearing. For information regarding denial of benefits, you may contact the NAIW at: 1000 E. William Street, Suite 208, Carson City, NV 89701, (775) 684-7555, or 2200 S. Rancho Drive, Suite 230, Las Vegas, NV 89102, (702) 486-2830

**To File a Complaint with the Division:** If you wish to file a complaint with the Administrator of the Division of Industrial Relations (DIR), please contact the Workers' Compensation Section, 400 West King Street, Suite 400, Carson City, Nevada 89703, telephone (775) 684-7270, or 3360 West Sahara Avenue, Suite 250, Las Vegas, Nevada 89102, telephone (702) 486-9080.

**For Assistance with Workers' Compensation Issues:** You may contact the State of Nevada Office for Consumer Health Assistance, 3320 West Sahara Avenue, Suite 100, Las Vegas, Nevada 89102, Toll Free 1-888-333-1597, Web site: http://dhhs.nv.gov/Programs/CHA E-mail: cha@govcha.nv.gov

D-2 (rev. 10/20)

**Ryanne Gott**

**From:** Christine Guerrero <cguerrero@ccmsi.com>
**Sent:** Wednesday, June 1, 2022 4:10 PM
**To:** Ryanne Gott
**Cc:** Elona Goldner
**Subject:** RE: Progress report

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello

I was able to speak with Mr. Boruchowitz regarding his claim.

He told me that the OHV vehicle was his personal vehicle. He said he was with his family when he was made aware of the missing person search. He said he went in his truck first, but when he realized he was not able to get to the area they needed to search, he then switched vehicles to his own personal OHV. He said that he was off duty and then went on duty to assist. He further explained that LV Metro refused to send resources, it was a windy night and they didn't want to send the helicopter. He said he has used his OHV in the past when needed. He said it's not uncommon for him to use his personal vehicle to assist when needed, but it's also not a common occurrence. He has used it several times while on the job. He stated that he had his daughter and a family friend in the OHV with him, but also stated that he left the rest of his family in the middle of the desert to go conduct the search. He said the search lasted about 7 – 71/2 hours and once it was over, he came back and got his family and went home. He was not able to confirm if there was something faulty with his OHV. He said he just knows that the steering seemed to go wrong and at one point he wasn't able to steer the way that he needed to which caused the incident.

Please let me know if you have any questions or need any additional information from me.

Thank you!

**Christine Guerrero**
Claim Representative I | CCMSI

Phone: 702-933-4839
Fax: 702-933-4861
www.ccmsi.com

CCMSI

**Great Place to Work®**
2021 • 2020 • 2019 • 2018

# Nye County Human Resources

Pahrump Office
Nye County Government Complex
2101 E. Calvada, Suite 150
Pahrump, NV 89048
Phone (775) 751-6301
Fax (775) 751-6309

Tonopah Office
Nye County Courthouse
William P. Beko Justice Facility
PO Box 3400
Tonopah, NV 89049
Phone (775) 482-7244
Fax (775) 751-6309

April 12, 2022

*David Boruchowitz*

**SUBJECT: LIGHT DUTY JOB OFFER**

Dear David,

I am submitting on behalf of Nye County, after consulting with Acting Captain Means, an offer of temporary light duty that falls within the limitations and restrictions established by your treating physician, resulting from your 4/9/2022 injury. The physician report, dated 4/9/2022, was received by the HR office; it indicates *Restricted/Modified Duty: No heavy lifting, squatting or running until cleared.*

Nye County is concerned about its employees' physical and financial well being and we are pleased to be able to modify your current position to accommodate your temporary physical restrictions while you are easing back to work. You will be assigned to your current position; your schedule will remain the same. This will begin on April 10, 2022 will continue until a progress report is received by HR from your treating physician indicating you are released to return to work full duty, or if changes in the limitations and restrictions have been made.

If you have any questions or concerns, please contact me directly.

Sincerely,

[signature]

Elona Goldner, SHRM-CP
Director of Human Resources

I, David Boruchowitz, fully understand the temporary restrictions that have been reported by my Physician's Report and it is my responsibility to work within the limitations established by my treating physician. If there are any deviations from my modified light duty job that will conflict with my temporary restrictions, I will immediately report them to my current supervisor and/or the Nye County Human Resources.

[signature]
David Boruchowitz

04/12/2022
Date

State of Nevada
Department of Business & Industry
**Division of Industrial Relations**
*Workers' Compensation Section*

ALTERNATIVE CHOICE OF PHYSICIAN or CHIROPRACTOR
(NRS 616C.090)

A list of the Panel of Treating Physicians or Chiropractors, or those health care providers, with whom your insurer has contracted, can be obtained from your insurer or third-party administrator upon written request. Your insurer or third-party administrator has within **3** working days to provide you the list pursuant to NAC 616C.030.

If within the first 90 days after the date of injury, you are not satisfied with the first treating physician or chiropractor and

> Your insurer has entered into a contract with a managed care organization or with health care providers; you must select an alternative physician or chiropractor according to the terms of the contract. This selection may be made without the prior approval of the insurer. If after choosing your physician or chiropractor, you move to a county not serviced by the contracted managed care organization or health care providers and the insurer deems it impractical for you to continue treating with the physician or chiropractor, you must choose a treating physician or chiropractor who has agreed to the to the terms of the contract unless the insurer authorizes you to choose another physician or chiropractor;

or

> Your insurer has not entered into a contract with an organization for managed care, or with health care providers, you may select an alternative physician or chiropractor from the Panel of Treating Physicians and Chiropractors.

NOTICE: Any further changes in your treating physician or chiropractor must be in writing and approved by the insurer. If, at any time, you are dissatisfied with a physician or chiropractor selected by yourself, the insurer, managed care organization, or health care provider, a change may be made by submitting a written request to the insurer indicating the name of the alternate physician or chiropractor. The insurer shall approve or deny this request within ten (10) days after receipt of the written request or it shall be deemed approved. You will receive written notification if the insurer denies this request which will include the reason for the denial and appeal rights.

D-53 (Rev. 03/16)

**NOTICE OF EXPLANATION OF CLOSURE UNDER $800**

Pursuant to NRS 616C.235 (3), this is to notify you that your claim may close, with no reopening rights, if medical benefits paid on your claim remain under $800.00. Prior to the closure, a letter, with appeal rights will be sent to you.

**NRS 616C.235** Closure of claim by insurer: Procedure; notice; special procedure if medical benefits less than $800.00. [Effective July 1, 2017.]

2. If, during the first 12 months after a claim is opened, the medical benefits required to be paid for a claim are less than $800.00, the insurer may close the claim at any time after the insurer sends, by first-class mail addressed to the last known address of the claimant, written notice that includes a statement which prominently displays that:

(a) The claim is being closed pursuant to this section;

(b) The injured employee may appeal the closure of the claim pursuant to the provisions of NRS 616C.305 and 616C.315 to 616C.385, inclusive; and

(c) If the injured employee does not appeal the closure of the claim or appeals the closure of the claim but is not successful, the claim cannot be reopened.

3. In addition to the notice described in subsection 2, an insurer shall send to each claimant who receives less than $800.00 in medical benefits within 6 months after the claim is opened a written notice that explains the circumstances under which a claim may be closed pursuant to subsection 2. The written notice provided pursuant to this subsection does not create any right to appeal the contents of that notice. The written notice must be:

(a) Sent by first-class mail addressed to the last known address of the claimant; and

(b) A document that is separate from any other document or form that is used by the insurer.

4. The closure of the claim pursuant to subsection 2 is not effective unless notice is given as required by subsections 2 and 3.

If you have any questions, please feel free to contact this office.

12-Oct-2023 15:30 FROM: p.5

03/15/2009 23:18 77575142 NCSD PAGE 01/02

351 6347

unum

Underwritten by:
Unum Life Insurance Company of America
2211 Congress Street, Portland, ME 04122

**County of Nye**
Long Term Disability Insurance
Enrollment Form
**Policy #140751/Div #_____**

**Please complete this form in its entirety. Blank fields will cause significant delays in processing.**

**Employee Social Security Number** ____ **Gender** M [M] F [ ] **Date of Birth (mm/dd/yyyy)** ____ **Hours Worked Per Week** 40<

**Employee First Name** DAVID **M.I.** E **Last Name** BORUCHOWITZ

**Employee Street Address** ____ **City** ____ **State** ____ **Zip Code** ____

**Original Date of Hire** 02/21/2006 **Annual Salary** _ , 60,000 **Occupation** DETECTIVE

☐ Exempt ☒ Non-Exempt

☒ **Date entered into an eligible class** *(ex: part time to full time)* **or**
☐ **Rehire Date or**
☐ **Date of promotion to an eligible class**

02/21/2006 **(If unknown, consult with your Plan Administrator to complete.)**

| Rates* per $100 of Covered Salary | | | |
|---|---|---|---|
| **Age** | **Rate** | **Age** | **Rate** |
| < 25 | $0.11 | 50 – 54 | $0.99 |
| 25 – 29 | $0.16 | 55 – 59 | $1.23 |
| 30 – 34 | $0.25 | 60 – 64 | $1.25 |
| 35 – 39 | $0.37 | 65 – 69 | $1.64 |
| 40 – 44 | $0.50 | 70 + | $2.00 |
| 45 – 49 | $0.72 | | |

*LTD rates are based on five-year increments. Rates increase as you age.

To calculate the per-paycheck cost for this coverage, complete the calculations below.
**Note:** *If your annual salary exceeds* **$120,000** *use* **$120,000** *as your annual salary in the calculation.*

____ ÷ 100 = ____ X ____ = ____ ÷ 24 = ____
Annual Salary — Your Rate — Annual Cost — # Paychecks per Year — **Cost per Paycheck***

* Final cost may vary slightly due to rounding.

☒ **Yes,** I would like to participate. I authorize my employer to deduct from my salary or wages the necessary premium for this coverage. My signature verifies the accuracy of information contained on this form.

I understand the effective date of my coverage will be delayed if I am not in active employment because of an injury, sickness, temporary lay-off or leave of absence on the date this insurance would otherwise become effective. **I have also read and understand the information in the Plan Highlights, including all statements regarding exclusions and benefit amounts and offsets.**

☐ **No,** I do not wish to participate. I understand that evidence of insurability will be required, at my own expense, if I decide to elect this coverage in the future.

Employee Signature: [signature] Date: 03/16/2009

Return Forms To: ____ By: __/__/____

*51100 000045 00868*

*51100 000045 00567*

TO AVOID PENALTY, THIS REPORT MUST BE COMPLETED AND MAILED TO THE INSURER WITHIN 6 WORKING DAYS OF RECEIPT OF THE C-4 FORM

Please Type or Print

# EMPLOYER'S REPORT OF INDUSTRIAL INJURY OR OCCUPATIONAL DISEASE

## EMPLOYER

- Employer's Name: NYE COUNTY
- Nature of Business (mfg., etc.):
- FEIN: 88-6000111
- OSHA Log #:
- Office Mail Address: 2101 E. CALVADA BLVD, STE 100
- Location (if different from mailing address):
- Telephone: 775-751-6303
- City / State / Zip: PAHRUMP, NV 89048
- INSURER: NYE COUNTY
- THIRD-PARTY ADMINISTRATOR: CCMSI

## EMPLOYEE

- First Name / M.I. / Last Name: DAVID E. BORUCHOWITZ
- Social Security:
- Birthdate:
- Age: 41
- Primary Language Spoken: ENGLISH
- Home Address (Number and Street):
- Sex: ☒ Male ☐ Female
- Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed
- City / State / Zip:
- Was the employee paid for the day of injury? (if applicable) ☒ Yes ☐ No
- How long has this person been employed by you in Nevada? 16.1 YEARS
- In which state was employee hired? NEVADA
- Employee's occupation (job title) when hired or disabled: CAPTAIN
- Department in which regularly employed: SHERIFF
- Telephone:
- Is the injured employee a corporate officer? ☐ Yes ☐ No … sole proprietor? ☐ Yes ☐ No … partner? ☐ Yes ☐ No
- Was employee in your employ when injured or disabled by occupational disease (O/D)? ☒ Yes ☐ No

## ACCIDENT OR DISEASE

- Date of Injury (if applicable): 4/9/2022
- Time of Injury (Hours, Minute AM/PM) (if applicable): 10:45 PM
- Date employer notified of injury or O/D: 4/9/2022
- Supervisor to whom injury or O/D reported: SHARON WEHRLY
- Address or location of accident (Also provide city, county, state) (if applicable): SANDY VALLEY ROAD
- Accident on employer's premises? (if applicable) ☐ Yes ☒ No
- What was the employee doing when the accident occurred (loading truck, walking down stairs, etc.)? (if applicable): SEARCHING FOR A MISSING PERSON.
- How did this injury or occupational disease occur? Include time employee began work. Be specific and answer in detail. Use additional sheet if necessary: OFF ROAD VEHICLE THEY WERE IN LOST STREERING AND ROLLED 3 TIMES.

## INJURY OR DISEASE

- Specify machine, tool, substance, or object most closely connected with the accident (if applicable):
- Witness: CALEB SPROUL
- Was there more than one person injured in this accident? (if applicable) ☐ Yes ☒ No
- Part of body injured or affected: SHOULDER AND BACK
- If fatal, give date of death:
- Witness:
- Nature of Injury or Occupational Disease (scratch, cut, bruise, strain, etc.): SHOULDER AND BACK SPRAIN
- Witness:
- Did employee return to next scheduled shift after accident? (if applicable) ☒ Yes ☐ No
- Will you have light duty work available if necessary? ☒ Yes ☐ No
- If validity of claim is doubted, state reason:
- Location of Initial Treatment: DESERT VIEW
- Treating physician/chiropractor name: JAMES CLARK, MD
- Emergency Room ☐ Yes ☒ No
- Hospitalized ☐ Yes ☒ No

**IMPORTANT**

- How many days per week does employee work? 5
- From 8:00 ☒ am ☐ pm To 5:00 ☐ am ☒ pm
- Last day wages were earned: 4/9/2022
- Scheduled days off: S ☒ M ☐ T ☐ W ☐ T ☐ F ☐ S ☒ Rotating ☐
- Are you paying injured or disabled employee's wages during disability? ☒ Yes ☐ No

## IMPORTANT LOST TIME INFO

- Date employee was hired: 2/21/2006
- Last day of work after injury or disability: 4/9/2022
- Date of return to work: 4/10/2022
- Number of work days lost: NONE
- Was the employee hired to work 40 hours per week? ☒ Yes ☐ No
- If not, for how many hours a week was the employee hired?
- Did the employee receive unemployment compensation any time during the last 12 months? ☐ Yes ☒ No ☐ Do not know

For the purpose of calculation of the average monthly wage, indicate the employee's gross earnings by pay period for 12 weeks prior to the date of injury or disability. If the injured employee is expected to be off work 5 days or more, attach wage verification form (D-8). Gross earnings will include overtime, bonuses, and other remuneration, but will not include reimbursement for expenses. If the employee was employed by you for less than 12 weeks, provide gross earnings from the date of hire to the date of injury or disability.

- Pay period ends on: ☐ SUN ☐ TUE ☒ THUR ☐ SAT ☐ MON ☐ WED ☐ FRI
- Employee is paid: ☐ WEEKLY ☐ MONTHLY ☐ OTHER ☒ BI-WKLY ☐ SEMI-MONTHLY
- On the date of injury or disability the employee's wage was: $ 59.16 per ☒ Hr ☐ Day ☐ Wk ☐ Mo

*For assistance with Workers' Compensation Issues you may contact the State of Nevada Office of the Consumer Health Assistance* ***Toll Free:*** *1-888-333-1597* ***Web site:*** *http://dhhs.nv.gov/Programs/CHA* ***E-mail:*** *cha@govcha.nv.gov*

★ I affirm that the information provided above regarding the accident and injury or occupational disease is correct to the best of my knowledge. I further affirm the wage information provided is true and correct as taken from the payroll records of the employee in question. I also understand that providing false information is a violation of Nevada law.

- Employer's Signature and Title: X Goll HR Generalist II
- Date: 4/13/2022

**Insurer Use Only**

- Claim is: ☐ Accepted ☐ Denied ☐ Deferred ☐ 3rd Party
- Deemed Wage:
- Account No.:
- Class Code:
- Claims Examiner's Signature:
- Date:
- Status Clerk:
- Date:

Form C-3 (rev.02/20) ORIGINAL – EMPLOYER PAGE 2 – INSURER/TPA PAGE 3 – EMPLOYEE

12-Oct-2023 15:33 FROM:

EMPLOYEE'S CLAIM FOR COMPENSATION/REPORT OF INITIAL TREATMENT
FORM C-4
PLEASE TYPE OR PRINT

**EMPLOYEE'S CLAIM – PROVIDE ALL INFORMATION REQUESTED**

[illegible]: Davis | M.I.: E | Last Name: Boruchow [illegible]

Height: 5'11 | Weight: 235 | Telephone:

[illegible] | City | State | Zip | [illegible]

INSURER: CCMSI | THIRD-PARTY ADMINISTRATOR: CCMSI | [illegible]

[illegible]: NYE County | Telephone:

[illegible]: 2101 Walt Williams Drive

[illegible]: 4/9/22 | [illegible]: 2245 hrs | [illegible]: 4/9/21 | [illegible]: 4/9/21 | [illegible]: Sheriff Wehrly

[illegible]: Sandy Valley Road

[illegible]: Searching for a missing person

[illegible]: the vehicle we were in lost steering and rolled 3 times

[illegible]: 4/9/22 | [illegible]: Caleb Sprowl, Madelyn Bower

[illegible]: Motor Vehicle Accident | [illegible]: Knee, Head, Back, Eye, Abdomen

I CERTIFY THAT THE ABOVE IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND THAT I HAVE PROVIDED THIS INFORMATION IN ORDER TO OBTAIN THE BENEFITS OF NEVADA'S INDUSTRIAL INSURANCE AND OCCUPATIONAL DISEASES ACTS (NRS 616A TO 616D, INCLUSIVE OR CHAPTER 617 OF NRS). I HEREBY AUTHORIZE ANY PHYSICIAN, CHIROPRACTOR, SURGEON, PRACTITIONER, OR OTHER PERSON, ANY HOSPITAL, INCLUDING VETERANS ADMINISTRATION OR GOVERNMENTAL HOSPITAL, ANY MEDICAL SERVICE ORGANIZATION, ANY INSURANCE COMPANY, OR OTHER INSTITUTION OR ORGANIZATION TO RELEASE TO EACH OTHER, ANY MEDICAL OR OTHER INFORMATION, INCLUDING BENEFITS PAID OR PAYABLE, PERTINENT TO THIS INJURY OR DISEASE, EXCEPT INFORMATION RELATIVE TO DIAGNOSIS, TREATMENT AND/OR COUNSELING FOR AIDS, PSYCHOLOGICAL CONDITIONS, ALCOHOL OR CONTROLLED SUBSTANCES, FOR WHICH I MUST GIVE SPECIFIC AUTHORIZATION. A PHOTOSTAT OF THIS AUTHORIZATION SHALL BE AS VALID AS THE ORIGINAL.

Date: 4/9/22 | Place: DVH | [illegible]:

**THIS REPORT MUST BE COMPLETED AND MAILED WITHIN 3 WORKING DAYS OF TREATMENT**

Place: ER | Name of Facility: DESERT VIEW HOSPITAL ALLIANCE LLC

Date: 4/10/22 | Hour: 2:02 AM

Diagnosis and Description of Injury or Occupational Disease: Shoulder sprain, Back sprain

Is there evidence that the injured employee was under the influence of alcohol and/or another controlled substance at the time of the accident? ☑ No ☐ Yes (If yes, please explain)

Treatment:

X-Ray Findings:

Have you advised the patient to remain off work five days or more?
☐ Yes Indicate dates: from ____________ to ____________
☑ No If no, is the injured employee capable of: ☐ full duty ☑ modified duty
If modified duty, specify any limitations/restrictions: No heavy lifting / squatting / or carrying until cleared by PCP

From information given by the employee, together with medical evidence, can you directly connect this injury or occupational disease as job incurred? ☐ Yes ☐ No

Is additional medical care by a physician indicated? ☐ Yes ☐ No

Do you know of any previous injury or disease contributing to this condition or occupational disease? ☐ Yes ☑ No (Explain if yes)

Date: 4/10/22 | [illegible]: James Clark MD | I certify that the employer's copy of this form was mailed to the employer on:

Address: 360 LOLA LANE | INSURER'S USE ONLY

City: PAHRUMP | State: NV | Zip: 89048 | Provider's Tax I.D. Number: 81-2660256 | Telephone: 775-751-7500

[illegible] | Degree: MD

ORIGINAL – TREATING PHYSICIAN OR CHIROPRACTOR PAGE 2 – INSURER/TPA PAGE 3 – EMPLOYER PAGE 4 – EMPLOYEE Form C-4 (rev. 10/07)

[illegible] [Eastern Daylight Time] * SVR:VA1PWFAX201/3 * DNIS:8778433950 * CSID: * ANI:7757516302 * DURATION (mm-ss):30-17

# "NOTICE OF INJURY OR OCCUPATIONAL DISEASE"

(Incident Report)
Pursuant to NRS 616C.015

Name of Employer Nye County

| Name of Employee | Social Security Number | Telephone Number |
|---|---|---|
| David Boruchowitz | | |

| Date of Accident (if applicable) | Time of Accident (if applicable) | Place where accident occurred (if applicable) |
|---|---|---|
| 04/09/2022 | 2045 | Sandy Valley Road |

| What is the nature of the injury or occupational disease? | List any body parts involved. |
|---|---|
| Motor Vehicle Accident | Head/Back |

Briefly describe accident or circumstances of occupational disease:
(Note: If you are claiming an occupational disease, indicate the date on which employee first became aware of connection between condition and employment)

While searching for a missing person the OHV rolled 3 times.

Names of witnesses:

| Did the employee leave work because of the injury or occupational disease? | If yes, when (date and time)? | Has the employee returned to work? | If yes, when (date and time)? |
|---|---|---|---|
| ___ YES  X NO | | ___ YES  X NO | |

| Was first aid provided? | If yes, by whom? | Name and address of treating physician, if applicable or known |
|---|---|---|
| X YES ___ NO | Clark County Fire | |
| Did the accident happen in the normal course of work? (if applicable) ☒ YES ☐ NO | | |

| Was anyone else involved? | Names of others involved |
|---|---|
| X YES ___ NO | Cyrilian Madelyn Boruchowitz / Caleb Spinal |

MY EMPLOYER/INSURER MAY HAVE MADE ARRANGEMENTS TO DIRECT ME TO A HEALTHCARE PROVIDER FOR MEDICAL TREATMENT OF MY INDUSTRIAL INJURY OR OCCUPATIONAL DISEASE. I HAVE BEEN NOTIFIED OF THESE ARRANGEMENTS.

Sheriff Wehrly e-per 4/10/22
Supervisor's Signature Date

[signature] 4/10/2022
Signature of Injured or Disabled Employee Date

TO FILE A CLAIM FOR COMPENSATION, SEE REVERSE SIDE, SECTION ENTITLED, CLAIM FOR COMPENSATION (FORM C-4).

***For assistance with Workers' Compensation Issues you may contact the State of Nevada for Consumer Health Assistance Toll Free: 1-888-333-1597 Web site: http://dhhs.nv.gov/Programs/CHA E-mail: cha@govcha.nv.gov***

Employer should sign, date and retain a copy.
*Original to Employer, Copy to Employee*

D-1 (Rev. 10/08)

# EMPLOYER'S WAGE VERIFICATION FORM

**(Pursuant to NRS 616C.045(2)(d))**

Please provide the following information for the employee named below by completing this form. The information is needed so that the amount of disability compensation to which your employee is entitled may be calculated. Prompt completion and return of this form will ensure the timely payment of any compensation due this injured worker. Please answer all questions and sign the form where indicated.

**EMPLOYER: PLEASE PROVIDE THE FOLLOWING INFORMATION ANSWERING ALL QUESTIONS**

Date: 9/25/2023 Injured Employee's Name (Last/First/M.I.): Boruchowitz, David Social Security # 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

Claim No.: 22J11K236563 Date of Injury: 4/9/2022 Date of Hire: 2/21/2006

Was employee hired to work 40 hours per week: [X] Yes [ ] No If no, # of hours per week: ______ # of days per week: ______

On the date of injury, the employee's wage was: $ 59.16 per [X] Hour [ ] Day [ ] Week [ ] Month Date the wage became effective: 2/21/2022

Was vacation paid during the applicable twelve week period? No If so, during what pay period? ______

Was sick leave paid during the applicable twelve week period? No Was the injured employee paid for any holidays during the applicable twelve week period? Yes Did employee receive payment for overtime during the applicable twelve week period? No Did employee receive termination pay during the applicable twelve week period? No

Provide prior wage if current wage was in effect less than 12 weeks prior to date of injury: $ 57.43 per [X] Hour [ ] Day [ ] Week [ ] Month

During this 12-week period did employee change to a job with different (1) duties, (2) hours of employment, (3) rate of pay? [ ] Yes [X] No

If so, date: ______ Explain: ______

Does the employee receive commissions? [ ] Yes [X] No Period of commission earned ______ to ______.

Indicate the amount of commission received over the last 6 months, or since date of hire: $ ______

Does the employee receive bonuses/incentive pay? [ ] Yes [X] No Period of bonuses/incentive pay earned ______ to ______.

Indicate the amount of bonuses received over last 12 months, or since date of hire: $ ______

Are the commission and bonus amounts included in GROSS EARNINGS below? [ ] Yes [X] No

Does the employee declare tips for the purpose of worker's compensation? [ ] Yes [X] No **See payroll declaration below. Attach declaration forms.**

Does the employee receive meals or lodging (excluding reimbursement for travel per diem)? [ ] Yes [X] No **(Do not include in gross earnings)**

How many meals per day?______ Monetary value of meals $______per [ ] Day [ ] Week [ ] Month

Lodging $______per [ ] Day [ ] Week [ ] Month

**TWELVE WEEK VERIFICATION FROM PAYROLL RECORDS**. Report GROSS EARNINGS, include overtime payment and any other remuneration (except reimbursement for expenses). (See NAC 616C.423)

Give payroll information from 1/10/22 through 4/3/22. If employed less than twelve weeks, give gross earnings from date of hire to date of injury.

**If absent from work for the following reasons, please specify the date(s) absent and the number code for the reason of absence.**

1. Certified illness or disability; 2. Institutionalized in a hospital, or other institution; 3. Enrolled as full-time student, not employed on days of attendance; 4. In military service other than training duty conducted on weekends; 5. Absent because of officially sanctioned strike; 6. Absence because of leave approved pursuant to Family and Medical Leave Act.

| Payroll Period Beginning Ending | Gross Salary (Excluding Tips) | Declared Tips | Payroll Period Beginning Ending | Gross Salary (Excluding Tips) | Declared Tips |
|---|---|---|---|---|---|
| 1/10/2022 - 1/23/2022 | $4,939.24 | | | | |
| 1/24/2022 - 2/6/2022 | $4,939.24 | | | | |
| 2/7/2022 - 2/20/2022 | $4,962.21 | | | | |
| 2/21/2022 - 3/6/2022 | $5,111.42 | | | | |
| 3/7/2022 - 3/20/2022 | $5,111.42 | | | | |
| 3/21/2022 - 4/3/2022 | $5,111.42 | | | | |

| Dates of Absence Begin | End | Reason | Dates of Absence Begin | End | Reason | Dates of Absence Begin | End | Reason |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Pay period ends on (check one) [ ] Sunday [ ] Monday [ ] Tuesday [ ] Wednesday [ ] Thursday [ ] Friday [ ] Saturday
Employee is paid: [ ] Weekly [ ] Bi-Weekly [ ] Semi-Monthly [ ] Monthly [ ] Other
Employee scheduled day(s) off: [ ] Sunday [ ] Monday [ ] Tuesday [ ] Wednesday [ ] Thursday [ ] Friday [ ] Saturday [ ] Other
Explain "other":
Date the employee last worked AFTER injury occurred: 4/9/2022 Date returned to work: 4/9/2022

This information is true and correct as taken from the employee's payroll records.

Print Name: Ryanne M. Gott Signature: ______

Date: 9/25/2023 Employer: Nye County

Insurer: Nye County Third-Party Administrator: CCMSI D-8 (rev10/10)

# REQUEST FOR HEARING - CONTESTED CLAIM

(Pursuant to NAC 616C.274)

REPLY TO:

Department of Administration
Hearings Division
1050 E. William Street, Ste. 400
Carson City, NV 89701
(775) 687-8440

OR

Department of Administration
Hearings Division
2200 S. Rancho Drive, Suite 210
Las Vegas, NV 89102
(702) 486-2525

| **Employee Information** | | **Employer Information** |
|---|---|---|
| Employee's Name and Address<br>David Boruchowitz | | Employer's Name and Address<br>NYE COUNTY / TOWN OF PAHRUMP<br>101 RADAR ROAD<br>COALDALE, NV 89049 |
| Employee's Telephone Number | Claim No. 22J11K236563<br>Date of Injury 04/09/2022 | Employer's Telephone Number<br>775-482-8191 |
| **Insurer Information** | | **Third-Party Administrator Information** |
| Insurer's Name and Address<br>Nye County / Town of Pahrump<br>101 Radar Road<br>Coaldale, NV, 89049 | | Third-Party Administrator's Name and Address<br>CCMSI<br>P.O. Box 35350<br>Las Vegas, NV 89133 |
| Insurer's Telephone Number<br>775-482-8191 | | Third-Party Administrator's Telephone Number<br>702-933-4800 |

Do Not Complete or Mail This Form Unless You Disagree With the Insurer's Determination.

☐ **PLEASE CHECK HERE IF YOUR REQUEST IS REGARDING A CLAIM FILED PURSUANT TO NRS 617.455 OR 617.457**

**YOU MUST INCLUDE A COPY OF THE DETERMINATION LETTER OR A HEARING WILL NOT BE SCHEDULED PURSUANT TO NRS 616C.315.**

**Briefly** explain the basis for this appeal:

______________________________________________

______________________________________________

______________________________________________

This request for hearing is filed by, or on behalf of: ☐ **Injured Employee** ☐ **Employer**

and is dated this ______________ day of ________________________, 20__________.

Signature of Injured Employee/Employer

Injured Employee's/Employer's Rep. (Advisor)

D-12a (Rev. 10/2018)

**ClaimsHOAdmin**

**From:** LFGAppeals
**Sent:** Monday, November 3, 2025 9:09 AM
**To:** awd-emailrip116
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** Tedford, Kelly <Kelly.Tedford@lfg.com>
**Sent:** Monday, November 3, 2025 8:08:39 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

Please add to AWD

**Kelly T**
Specialist, Appeals Claims
GP CLM Shared Services

**Lincoln Financial**
LincolnFinancial.com

800-423-2765 *2593 Office
402-361-1460 Fax

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Saturday, November 1, 2025 9:48 AM
**To:** Tedford, Kelly <Kelly.Tedford@lfg.com>; dboruchowitz@fltg.net
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

There is nothing further to respond to.

---

**From:** Kelly Tedford <Kelly.Tedford@lfg.com>
**Sent:** Monday, October 20, 2025 11:07 AM
**To:** dboruchowitz@fltg.net
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Kelly Tedford**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x66246
Fax: 402-361-1460
Email: Kelly.Tedford@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your

personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, October 20, 2025 9:20 AM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Please upload TSA (secure) |
| **Attachments:** | TSA Appeal Memo 1230082409.pdf |

---

**From:** South, Sarah <Sarah.South@lfg.com>
**Sent:** Monday, October 20, 2025 9:19:27 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Cc:** Tedford, Kelly <Kelly.Tedford@lfg.com>
**Subject:** Please upload TSA (secure)

Please upload TSA to Claim 1230082409.

**Sarah South**
Vocational Consultant

**Lincoln Financial**
*120 years of building tomorrows*
LincolnFinancial.com

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Monday, October 6, 2025 11:35 AM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: 1230082409 (secure) |

---

**From:** Tedford, Kelly <Kelly.Tedford@lfg.com>
**Sent:** Monday, October 6, 2025 10:35:02 AM (UTC-06:00) Central Time (US & Canada)
**To:** dboruchowitz@fltg.net <dboruchowitz@fltg.net>
**Subject:** 1230082409 (secure)

Good morning:

This is in reference to your LTD appeal.

We have begun the medical review process which takes 2-3 weeks, just so you are aware. We will reach out again once we have further updates and appreciate your patience.

Have a good rest of your day.

**Kelly T**
Specialist, Appeals Claims
GP CLM Shared Services

**Lincoln Financial**
LincolnFinancial.com

800-423-2765 *2593 Office
402-361-1460 Fax

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

**ClaimsHOAdmin**

**From:** LFGAppeals
**Sent:** Thursday, October 2, 2025 1:16 PM
**To:** awd-emailrip116
**Subject:** FW: Appeal of Disability Insurance Denial 1230082409
**Attachments:** final appeal response with letter doctor.pdf

**Importance:** High

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, October 2, 2025 12:14:58 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** Appeal of Disability Insurance Denial 1230082409

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

See attached response. Please acknowledge receipt.

Also sent via fax to ensure delivery.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Tuesday, July 15, 2025 10:52 AM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Claim number: 1230082409, Boruchowitz |
| **Attachments:** | Addendum.PDF |

---

From: filesupport <filesupport@lfg.com>
Sent: Tuesday, July 15, 2025 9:51:31 AM (UTC-06:00) Central Time (US & Canada)
To: LFGAppeals
Cc: Booth, Jeff
Subject: FW: Claim number: 1230082409, Boruchowitz

Business Area: GPRISKCLMS
Source Type as MEDRECSG
Source Identifier as MEDR – ADDENDUM REPORT

-----Original Message-----
From: emperion-no-reply@emperion.com <emperion-no-reply@emperion.com>
Sent: Tuesday, July 15, 2025 8:46 AM
To: filesupport <filesupport@lfg.com>
Subject: Claim number: 1230082409, Boruchowitz

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello,

Attached is the Addendum Peer and Invoice for the above referenced claim. If we can further assist you with this file, please don`t hesitate to give us a call.

Thank you for the referral,

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Tuesday, July 1, 2025 8:43 AM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE) |
| **Attachments:** | CCF_000017.pdf; additional notes appeal.pdf |

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Tuesday, July 1, 2025 7:42:04 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 4:10 PM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see attached additional notes and information and also see the most recent medical records, which is a copy of my most recent MRI of my back with the report dated 4/18/2025.

Thanks.

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Monday, June 30, 2025 1:05 PM
**To:** dboruchowitz@ottcmail.com
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

David,

I would recommend sending any updated medical records with your response.

Thank you,

**Jeff Booth**
Claim Resolution Specialist
GP CLM Shared Services
800-423-2765 Ext. 2665 Office
402-361-1460 Fax

**Lincoln Financial**
LincolnFinancial.com

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 10:56 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see additional notes and information for consideration in the appeal as requested.

If you need anything additional please let me know.

Thanks.

David

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Thursday, June 12, 2025 1:40 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group
LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Monday, June 30, 2025 5:11 PM
**To:** awd-emailrip116
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)
**Attachments:** CCF_000017.pdf; additional notes appeal.pdf

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 5:10:07 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see attached additional notes and information and also see the most recent medical records, which is a copy of my most recent MRI of my back with the report dated 4/18/2025.

Thanks.

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Monday, June 30, 2025 1:05 PM
**To:** dboruchowitz@ottcmail.com
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

David,

I would recommend sending any updated medical records with your response.

Thank you,

**Jeff Booth**
Claim Resolution Specialist
GP CLM Shared Services
800-423-2765 Ext. 2665 Office
402-361-1460 Fax

**Lincoln Financial**
LincolnFinancial.com

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are*

*hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 10:56 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see additional notes and information for consideration in the appeal as requested.

If you need anything additional please let me know.

Thanks.

David

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Thursday, June 12, 2025 1:40 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665

Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

This message was secured by Zix®.

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, June 30, 2025 4:05 PM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE) |

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Monday, June 30, 2025 4:04:44 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

David,

I would recommend sending any updated medical records with your response.

Thank you,

**Jeff Booth**
Claim Resolution Specialist
GP CLM Shared Services
800-423-2765 Ext. 2665 Office
402-361-1460 Fax

**Lincoln Financial**
LincolnFinancial.com

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 10:56 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see additional notes and information for consideration in the appeal as requested.

If you need anything additional please let me know.

Thanks.

David

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Thursday, June 12, 2025 1:40 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Monday, June 30, 2025 11:57 AM
**To:** awd-emailrip116
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)
**Attachments:** additional notes appeal.pdf

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Monday, June 30, 2025 11:56:19 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Please see additional notes and information for consideration in the appeal as requested.

If you need anything additional please let me know.

Thanks.

David

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Thursday, June 12, 2025 1:40 PM
**To:** dboruchowitz@ottcmail.com
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, June 12, 2025 1:37 PM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: TSA Upload Request (secure) |
| **Attachments:** | DN Appeal TSA Memorandum Boruchowitz-Nye County-Police Captain.pdf |

---

**From:** Hall, Nicole <Nicole.Hall@lfg.com>
**Sent:** Thursday, June 12, 2025 1:36:34 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>; Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** TSA Upload Request (secure)

Please upload this TSA report for the claim: 1230082409

Thank you!
Nicole

**Nicole Hall, MS, CRC**
Vocational Consultant II
Group Protection
Lincoln Financial Group

Phone: 531.375.4203
Fax: 603.422.7974

LincolnFinancial.com

**Follow us on:**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Monday, June 9, 2025 1:29 PM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: D BORUCHOWITZ 1230082409 |
| **Attachments:** | D BORUCHOWITZ 1230082409 PMR FINAL REPORT.pdf |

---

**From:** Morfeld, Joann <Joann.Morfeld@lfg.com>
**Sent:** Monday, June 9, 2025 12:28:28 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** D BORUCHOWITZ 1230082409

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Joann Morfeld**
File support, Administrative Services

**Lincoln Financial**
LincolnFinancial.com

800-423-2765 Office

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

**ClaimsHOAdmin**

**From:** LFGAppeals
**Sent:** Wednesday, June 4, 2025 9:21 AM
**To:** awd-emailrip116
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)
**Attachments:** LFG.PDF

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Wednesday, June 4, 2025 8:20:05 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Sunday, June 1, 2025 5:22 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning,

I received a voicemail asking if I was submitting updated medical records.
I don't know that they are necessary for my appeal since my appeal is not based on changed medical condition, however, since you asked attached is an updated MRI report showing degrading condition from 4/18/2025.

If you need anything further let me know.

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Tuesday, May 27, 2025 8:10 AM
**To:** dboruchowitz@ottcmail.com
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group®

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Sunday, April 20, 2025 1:10 PM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Please add to claim file |
| **Attachments:** | David Boruchowitz.pdf |

---

**From:** Bell, Candra <Candra.Bell@lfg.com>
**Sent:** Sunday, April 20, 2025 1:09:06 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Cc:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** Please add to claim file

Please add to:
**Claimant Name: David Boruchowitz**
**Claim Number: 1230082409**
Business Area GPDISCLMS
Source Type- VOCRHBG
Source Identifier- VOCR- TSA
Provider – TSA

**Candra Bell, MS, CRC, LPC**
Consultant, Voc-Rehab & Accom Svcs I
GP CLM LTD, Life Waiver, Clinical

**Lincoln Financial**
LincolnFinancial.com

770-763-5152 Office

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are separately responsible for their own financial and contractual obligations. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy.

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, April 14, 2025 3:57 PM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: D BORUCHOWITZ 1230082409 FINAL REPORT.pdf |
| **Attachments:** | D BORUCHOWITZ 1230082409 FINAL REPORT.pdf |

---

**From:** Nettell, Karryn <Karryn.Nettell@lfg.com>
**Sent:** Monday, April 14, 2025 3:55:00 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Cc:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** D BORUCHOWITZ 1230082409 FINAL REPORT.pdf

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, March 27, 2025 11:31 AM |
| **To:** | awd-emailrip116 |
| **Subject:** | FW: Insured's supplementary statement |
| **Attachments:** | CCF_000555.pdf |

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, March 27, 2025 11:30:25 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** RE: Insured's supplementary statement

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Attached is the physician statement from my appointment yesterday 3/26/2025. I have a follow up 4/15/2025 if anything additional is needed form him I can get it then.

Please let me know.

Thanks.

David

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, March 20, 2025 7:41 AM
**To:** 'Eddy, Savannah' <Savannah.Eddy@lfg.com>
**Cc:** 'disabilityclaims@lfg.com' <disabilityclaims@lfg.com>
**Subject:** Insured's supplementary statement

Good morning,

Attached is my insured's supplementary statement.

I saw the physician on the 18th. He ordered an Xray and MRI for updated imaging.
I did the Xray yesterday and am hoping to have an MRI done next week.

As soon as that's done, then I'll get you his paperwork.

Thanks.

David Boruchowitz

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Thursday, March 20, 2025 10:42 AM
**To:** entrprserip
**Subject:** FW: Insured's supplementary statement
**Attachments:** CCF_000035.pdf

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, March 20, 2025 10:40:59 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Cc:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** Insured's supplementary statement

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning,

Attached is my insured's supplementary statement.

I saw the physician on the 18th. He ordered an Xray and MRI for updated imaging.
I did the Xray yesterday and am hoping to have an MRI done next week.

As soon as that's done, then I'll get you his paperwork.

Thanks.

David Boruchowitz

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, October 15, 2024 2:43 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Vocational Documents |
| **Attachments:** | D. Boruchowitz-RTW Meeting Request, Email 10-15-24.pdf; D. Boruchowitz-RTW Referral, Meeting Coordination Request, 10-07-24.pdf; D. Boruchowitz-RTW Referral Update, Email 10-04-24.pdf |

---

**From:** McDonald, Cathy <Cathy.McDonald@lfg.com>
**Sent:** Tuesday, October 15, 2024 2:40:51 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** Vocational Documents

Please upload into the claim #1230082409. Thank you!

**Cathy McDonald, MA, CRC**
Vocational Rehabilitation Consultant II
Group Protection
**Lincoln Financial Group**

**402-361-7771 Office**
**402-361-1154 Fax**

CENTRAL TIME ZONE

LincolnFinancial.com

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, July 9, 2024 8:17 AM |
| **To:** | entrprserip |
| **Subject:** | FW: D BORUCHOWITZ 1230082409 |
| **Attachments:** | D BORUCHOWITZ 1230082409 FINAL REPORT.pdf |

---

**From:** Guerena, Steffanie
**Sent:** Tuesday, July 9, 2024 8:15:40 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Eddy, Savannah
**Subject:** D BORUCHOWITZ 1230082409

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Steffanie Guerena**
Lead Coordinator,
Administrative Services

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-8034 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, May 6, 2024 11:38 AM |
| **To:** | entrprserip |
| **Subject:** | FW: BORUCHOWITZ David 1230082409 |
| **Attachments:** | BORUCHOWITZ David MR 01-18.pdf |

---

**From:** Young, Amy D. (Medical Review)
**Sent:** Monday, May 6, 2024 11:37:00 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** BORUCHOWITZ David 1230082409

Please upload the attached records into AWD.
Thank you.
Amy.

**Amy D. Young**
Manager, File Support
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

800-423-2765 Office
402-361-7041 Mobile

LincolnFinancial.com

**Follow us on:**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, May 6, 2024 11:37 AM |
| **To:** | entrprserip |
| **Subject:** | FW: D BORUCHOWITZ 1230082409 |
| **Attachments:** | BORUCHOWITZ David MR 04-17.pdf |

---

**From:** Young, Amy D. (Medical Review)
**Sent:** Monday, May 6, 2024 11:36:26 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** D BORUCHOWITZ 1230082409

Please upload the attached records into AWD.
Thank you.
Amy.

**Amy D. Young**
Manager, File Support
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

800-423-2765 Office
402-361-7041 Mobile

LincolnFinancial.com

**Follow us on:**

## ClaimsHOAdmin

|  |  |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, May 6, 2024 10:18 AM |
| **To:** | entrprserip |
| **Subject:** | FW: David Boruchowitz Med Recs 1230082409.pdf |
| **Attachments:** | David Boruchowitz Med Recs 1230082409.pdf |

---

**From:** Young, Amy D. (Medical Review)
**Sent:** Monday, May 6, 2024 10:17:58 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** David Boruchowitz Med Recs 1230082409.pdf

Please upload the attached records into AWD.
Thank you.
Amy.

**Amy D. Young**
Manager, File Support
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

800-423-2765 Office
402-361-7041 Mobile

LincolnFinancial.com

**Follow us on:**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, April 25, 2024 12:58 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Doctor's Form |
| **Attachments:** | CCF04242024_0001.pdf |

**From:** Eddy, Savannah
**Sent:** Thursday, April 25, 2024 12:56:36 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Doctor's Form

1230082409

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Wednesday, April 24, 2024 8:59 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** Doctor's Form

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good evening,

Attached is the form from Dr. Weltha from today's visit.

If you need anything else let me know.

David

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, April 23, 2024 9:28 AM |
| **To:** | entrprserip |
| **Subject:** | FW: LTD CLAIM 1230082409 (secure) |
| **Attachments:** | SIGNED AUTHORIZATION FORM.pdf; CCF04202024_0002.pdf |

---

**From:** Eddy, Savannah
**Sent:** Tuesday, April 23, 2024 9:26:11 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: LTD CLAIM 1230082409 (secure)

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Saturday, April 20, 2024 9:20 AM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: LTD CLAIM 1230082409 (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Signed authorization form back.

Providers I have seen recently:
Dr. Josh Weltha @ Spring Mountain Medical
Optimal Therapy for FCE
Dr. Su at Su Spine & Sports

I'll get you that form from doctor on Wednesday after my appointment.

If you need anything else let me know.

Thanks.
David

---

**From:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Sent:** Friday, April 19, 2024 9:50 AM
**To:** dboruchowitz@ottcmail.com
**Subject:** LTD CLAIM 1230082409 (secure)

This message was sent securely using Zix®

I am not able to send a copy of the TMP that would list your providers.

You can just send me a list of your providers.

Thank you

**Savannah Eddy**
LTD Claims Examiner
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

800-423-2765 X 6932 Office
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Thursday, February 15, 2024 4:22 PM
**To:** entrprserip
**Subject:** FW: (secure) Claim Number 1230082409 David Boruchowitz Database Search Report
**Attachments:** BoruchowitzD.lin.2-14-24.pdf

---

**From:** reports@claimsbureau.com
**Sent:** Thursday, February 15, 2024 4:20:39 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** SIU; jgallant@claimsbureau.com
**Subject:** (secure) Claim Number 1230082409 David Boruchowitz Database Search Report

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good afternoon,

Attached is the above report. Have a great day!

CLAIMS BUREAU USA
p: 800.651.0460 f: 800.651.0496
www.claimsbureau.com e: Reports@claimsbureau.com

Click here to assign your next case:
https://cb.poloniouslive.com/claimsbureauusa/CreateCaseForCB.do

Private Detective license disclosure information:
claimsbureau.com/CB%20License%20List%206.22.15.pdf

This message contains confidential information and is intended only for the intended recipients. If you are not an intended recipient you should not disseminate, distribute or copy this e-mail. Please notify us immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore we do not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Friday, February 9, 2024 8:53 AM |
| **To:** | entrprserip |
| **Subject:** | FW: desktop 1230082409 David Boruchowitz (secure) OMH |

---

**From:** Dick, Stephen
**Sent:** Friday, February 9, 2024 8:53:12 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Assignment
**Cc:** Disability Claims
**Subject:** desktop 1230082409 David Boruchowitz (secure) OMH

Referred by: Savannah Rajca
Phone # and Ext: 800-423-2765 X 6932
Referral Date: 2/6/2024

Claim#: 1230082409
Claimant Name: David Boruchowitz
SSN#:
DOB:
Address:
Claimant Email:
Claimant Phone:

Customer Name: Nye County
Job Description: Police Captian
Date of Disability: 7/10/2023

Database selections (drop down list): Social Security # Searches - Provides persons current physical address, previous addresses, and gives warnings on invalid numbers.
Reason for referral: additional database selection items can be included here, along with other details to assist with search Please provide a full desk top search.
- SAAED9 - Feb 06, 2024 10:38:25 am

**Stephen Dick HCAFA DIA**
**SIU Investigator**
**Claims Shared Services**
Lincoln Financial Group
8801 Indian Hills Dr
Omaha NE 68114nnah
Phone: 402-361-7423
Email: Stephen.dick@LFG.com

**You're In Charge**SM

**Find us on facebook: www.facebook.com/LincolnFinancialGroup**

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life

Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

## ClaimsHOAdmin

**From:** Disability Claims
**Sent:** Wednesday, December 27, 2023 4:37 PM
**To:** entrprserip
**Subject:** FW: Please add to claim file ( secure)
**Attachments:** David Boruchowitz.pdf

---

**From:** Bell, Candra
**Sent:** Wednesday, December 27, 2023 4:36:07 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Eddy, Savannah
**Subject:** Please add to claim file ( secure)

Please add to:
David Boruchowitz
1230082409
Business Area GPDISCLMS
Source Type- VOCRHBG
Source Identifier- VOCR- OA
Provider – OA

**Candra Bell, MS, LPC, CRC**
Vocational Rehabilitation Consultant
Clinical Operations

**Lincoln Financial Group**
LincolnFinancial.com

(770)763-5152 Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Wednesday, December 20, 2023 2:51 PM
**To:** entrprserip
**Subject:** FW: LTD CLAIM 1230082409

---

**From:** Eddy, Savannah
**Sent:** Wednesday, December 20, 2023 2:50:45 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: LTD CLAIM 1230082409

---

**From:** Ryanne Gott <rgott@nyecountynv.gov>
**Sent:** Wednesday, December 20, 2023 1:49 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: LTD CLAIM 1230082409

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning, the retirement is through PERS (Public Employers Retirement System) and it is 100% employer paid.

*Thanks,*

*Ryanne M. Gott*
*HR Generalist II*

---

**From:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Sent:** Wednesday, December 20, 2023 10:12 AM
**To:** Ryanne Gott <rgott@nyecountynv.gov>
**Subject:** LTD CLAIM 1230082409

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

I am reaching out regarding the LTD claim for Mr. David Boruchowitz

Can you please verify the type of retirement and the employee and employer contributions percent.

Thank you

**Savannah Eddy**
LTD Claims Examiner
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

402-361-6932 Office
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Monday, December 18, 2023 9:35 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Claim #1230082409 (secure) |
| **Attachments:** | boruchowitz.pdf |

---

**From:** Eddy, Savannah
**Sent:** Monday, December 18, 2023 9:34:07 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim #1230082409 (secure)

And sorry for the confusion. It is employer paid but after we hung up I remembered the chunk that I had put unto it. Sorry to cause you extra work.

---

**From:** dboruchowitz <dboruchowitz@ottcmail.com>
**Sent:** Friday, December 15, 2023 3:33 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Claim #1230082409 (secure)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

PERS sent this to me just now at my request. Let me know if you need anything else.

Thank you so much.

Sent via the Samsung Galaxy S22 Ultra 5G, an AT&T 5G smartphone

This message was sent securely using Zix®

-------- Original message --------
From: "Eddy, Savannah" <Savannah.Eddy@lfg.com>
Date: 12/15/23 3:12 PM (GMT-06:00)
To: dboruchowitz@ottcmail.com
Subject: Claim #1230082409 (secure)

Hello,

I am looking for the retirement information

Thank you

**Savannah Eddy**
LTD Claims Examiner
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

402-361-6932 Office
877-843-3950 Fax

LincolnFinancial.com

**Follow us on:**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Wednesday, December 6, 2023 2:09 PM
**To:** entrprserip
**Subject:** FW: D BORUCHOWITZ 1230082409 FINAL REPORT.pdf
**Attachments:** D BORUCHOWITZ 1230082409 FINAL REPORT.pdf

---

**From:** Nettell, Karryn
**Sent:** Wednesday, December 6, 2023 2:07:36 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Eddy, Savannah
**Subject:** D BORUCHOWITZ 1230082409 FINAL REPORT.pdf

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Karryn Nettell**
File Support Coordinator
Group Protection

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-6757 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, November 14, 2023 12:52 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Claim #1230082409 Records |
| **Attachments:** | Su Spine and Sports.pdf; CCF_000090.pdf |

---

**From:** Eddy, Savannah
**Sent:** Tuesday, November 14, 2023 12:51:33 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim #1230082409 Records

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Tuesday, November 14, 2023 11:38 AM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Claim #1230082409 Records

Did you get the authorization?

Find attached the physician statement signed by the doctor.
Also find attached records from Dr. Su's office that I didn't send in the last e-mail. (I just got them).

If you need anything else let me know.

David

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Friday, November 10, 2023 6:21 AM
**To:** 'Eddy, Savannah' <Savannah.Eddy@lfg.com>
**Subject:** RE: Claim #1230082409 Records

Did now, sorry forgot that. Attached.

David

---

**From:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Sent:** Friday, November 10, 2023 5:14 AM
**To:** dboruchowitz@ottcmail.com
**Subject:** RE: Claim #1230082409 Records

Did you complete the authorization form?!

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, November 9, 2023 6:48 PM

**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** Claim #1230082409 Records

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good evening,

Following up to our call from earlier.

The people who have seen me in order seen:

1. Desert View Hospital, 360 S. Lola Lane, Pahrump Nevada – Emergency Room night of the accident. Some records included in attachments both loose and with Advanced Spine & Rehabilitation.
2. Intermountain Healthcare, 1397 S. Loop Road, Pahrump, Nevada – Urgent care that workers comp uses to get referrals processed. Did XRays (records are included with Dr. Janda's records).
3. Optimal Physical Therapy – 2250 E. Postal Drive, Pahrump, Nevada – Urgent care sent me to them, they referred me to Dr. Janda. (records attached)
4. Dr. Janda at Advanced Spine & Rehabilitation 715 Mall Ring Circle, Henderson Nevada (Records attached) He ultimately referred to pain management for shots at Su Spine & Sports.
5. Dr. Su at Su Spine & Sports 9260 W. Sunset Road Las Vegas, Nevada – He's been the one handling the shots.
6. Dr. Cash at Desert Institute of Spine Care9339 W. Sunset Rd #100, Las Vegas, Nevada – I've seen him once and he referred me to continue treatment with Dr. Su and see him again. (Progress note attached).
7. Dr. Josh Weltha at Spring Mountain Medical 1151 Nevada Highway 160, Pahrump, Nevada 89048 – Primary Care physician. He is providing general oversight over all my healthcare.

Attached are the following records:

- Advanced Spine & Rehabilitation.pdf (This is Dr. Janda's submission showing a disability from law enforcement and the attached medical records to that). This includes radiology reports from Desert View Hospital the night of the accident, imaging from June of 2022 at Desert Radiology, imaging that Dr. Janda had me do in December of 2022, as well as Dr. Janda's notes.
- Optimal Therapy.pdf (Physical Therapy treatment from the injury)
- Dr Cash Progress Note.pdf (this is the evaluation note from Dr. Cash at Desert Institute of Spine Care)
- DVH Records.pdf (These are the records from Desert View Hospital the night of the accident)
- CCMSI Letter Claim.pdf (The claim # regarding the injury)

Appointments pending:
Dr. Su Monday November 13th at 9 am.
Dr. Weltha Tuesday November 14th at 8:20 am
Dr. Cash Tuesday November 21st at 1000 am
Dr. Janda not scheduled – pending completion of treatment by Dr. Cash & Dr. Su.

I'll get Dr. Su to sign the paperwork on November 13th and get it scanned and over to you.

Let me know if you need anything else or have any questions.

Thanks for your help.

David

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary

information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Sunday, November 12, 2023 4:42 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Claim #1230082409 Records |
| **Attachments:** | auth to release.pdf |

---

**From:** Ye, Lisa
**Sent:** Sunday, November 12, 2023 4:41:47 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim #1230082409 Records

**From:** Eddy, Savannah
**Sent:** Friday, November 10, 2023 10:20:27 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim #1230082409 Records

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Friday, November 10, 2023 8:21 AM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Claim #1230082409 Records

Did now, sorry forgot that. Attached.

David

---

**From:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Sent:** Friday, November 10, 2023 5:14 AM
**To:** dboruchowitz@ottcmail.com
**Subject:** RE: Claim #1230082409 Records

Did you complete the authorization form?!

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, November 9, 2023 6:48 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** Claim #1230082409 Records

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good evening,

Following up to our call from earlier.

The people who have seen me in order seen:

1. Desert View Hospital, 360 S. Lola Lane, Pahrump Nevada – Emergency Room night of the accident. Some records included in attachments both loose and with Advanced Spine & Rehabilitation.
2. Intermountain Healthcare, 1397 S. Loop Road, Pahrump, Nevada – Urgent care that workers comp uses to get referrals processed. Did XRays (records are included with Dr. Janda's records).
3. Optimal Physical Therapy – 2250 E. Postal Drive, Pahrump, Nevada – Urgent care sent me to them, they referred me to Dr. Janda. (records attached)
4. Dr. Janda at Advanced Spine & Rehabilitation 715 Mall Ring Circle, Henderson Nevada (Records attached) He ultimately referred to pain management for shots at Su Spine & Sports.
5. Dr. Su at Su Spine & Sports 9260 W. Sunset Road Las Vegas, Nevada – He's been the one handling the shots.
6. Dr. Cash at Desert Institute of Spine Care9339 W. Sunset Rd #100, Las Vegas, Nevada – I've seen him once and he referred me to continue treatment with Dr. Su and see him again. (Progress note attached).
7. Dr. Josh Weltha at Spring Mountain Medical 1151 Nevada Highway 160, Pahrump, Nevada 89048 – Primary Care physician. He is providing general oversight over all my healthcare.

Attached are the following records:

- Advanced Spine & Rehabilitation.pdf (This is Dr. Janda's submission showing a disability from law enforcement and the attached medical records to that). This includes radiology reports from Desert View Hospital the night of the accident, imaging from June of 2022 at Desert Radiology, imaging that Dr. Janda had me do in December of 2022, as well as Dr. Janda's notes.
- Optimal Therapy.pdf (Physical Therapy treatment from the injury)
- Dr Cash Progress Note.pdf (this is the evaluation note from Dr. Cash at Desert Institute of Spine Care)
- DVH Records.pdf (These are the records from Desert View Hospital the night of the accident)
- CCMSI Letter Claim.pdf (The claim # regarding the injury)

Appointments pending:
Dr. Su Monday November 13th at 9 am.
Dr. Weltha Tuesday November 14th at 8:20 am
Dr. Cash Tuesday November 21st at 1000 am
Dr. Janda not scheduled – pending completion of treatment by Dr. Cash & Dr. Su.

I'll get Dr. Su to sign the paperwork on November 13th and get it scanned and over to you.

Let me know if you need anything else or have any questions.

Thanks for your help.

David

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Friday, November 10, 2023 8:15 AM
**To:** entrprserip
**Subject:** FW: Claim #1230082409 Records
**Attachments:** ADVANCED SPINE & REHABILITATION.PDF.pdf; OPTIMAL THERAPY.pdf; DR CASH PROGRESS NOTE.pdf; DVH RECORDS.pdf; CCMSI LETTER CLAIM.pdf

---

**From:** Eddy, Savannah
**Sent:** Friday, November 10, 2023 8:13:25 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Claim #1230082409 Records

---

**From:** dboruchowitz@ottcmail.com <dboruchowitz@ottcmail.com>
**Sent:** Thursday, November 9, 2023 6:48 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** Claim #1230082409 Records

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good evening,

Following up to our call from earlier.

The people who have seen me in order seen:

1. Desert View Hospital, 360 S. Lola Lane, Pahrump Nevada – Emergency Room night of the accident. Some records included in attachments both loose and with Advanced Spine & Rehabilitation.
2. Intermountain Healthcare, 1397 S. Loop Road, Pahrump, Nevada – Urgent care that workers comp uses to get referrals processed. Did XRays (records are included with Dr. Janda's records).
3. Optimal Physical Therapy – 2250 E. Postal Drive, Pahrump, Nevada – Urgent care sent me to them, they referred me to Dr. Janda. (records attached)
4. Dr. Janda at Advanced Spine & Rehabilitation 715 Mall Ring Circle, Henderson Nevada (Records attached) He ultimately referred to pain management for shots at Su Spine & Sports.
5. Dr. Su at Su Spine & Sports 9260 W. Sunset Road Las Vegas, Nevada – He's been the one handling the shots.
6. Dr. Cash at Desert Institute of Spine Care9339 W. Sunset Rd #100, Las Vegas, Nevada – I've seen him once and he referred me to continue treatment with Dr. Su and see him again. (Progress note attached).
7. Dr. Josh Weltha at Spring Mountain Medical 1151 Nevada Highway 160, Pahrump, Nevada 89048 – Primary Care physician. He is providing general oversight over all my healthcare.

Attached are the following records:

- Advanced Spine & Rehabilitation.pdf (This is Dr. Janda's submission showing a disability from law enforcement and the attached medical records to that). This includes radiology reports from Desert View Hospital the night of the accident, imaging from June of 2022 at Desert Radiology, imaging that Dr. Janda had me do in December of 2022, as well as Dr. Janda's notes.
- Optimal Therapy.pdf (Physical Therapy treatment from the injury)
- Dr Cash Progress Note.pdf (this is the evaluation note from Dr. Cash at Desert Institute of Spine Care)

- DVH Records.pdf (These are the records from Desert View Hospital the night of the accident)
- CCMSI Letter Claim.pdf (The claim # regarding the injury)

Appointments pending:
Dr. Su Monday November 13th at 9 am.
Dr. Weltha Tuesday November 14th at 8:20 am
Dr. Cash Tuesday November 21st at 1000 am
Dr. Janda not scheduled – pending completion of treatment by Dr. Cash & Dr. Su.

I'll get Dr. Su to sign the paperwork on November 13th and get it scanned and over to you.

Let me know if you need anything else or have any questions.

Thanks for your help.

David

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Tuesday, October 31, 2023 1:26 PM
**To:** entrprserip
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** Eddy, Savannah
**Sent:** Tuesday, October 31, 2023 1:26:16 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** Ryanne Gott <rgott@nyecountynv.gov>
**Sent:** Tuesday, October 31, 2023 12:23 PM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

Yes,

*Thanks,*

*Ryanne M. Gott*
*HR Generalist II*

---

**From:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Sent:** Tuesday, October 31, 2023 9:34 AM
**To:** Ryanne Gott <rgott@nyecountynv.gov>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

This message was sent securely using Zix®

Hello,

Do you have a contact phone number for Mr. Boruchowitz?

Thank you

---

**From:** Ryanne Gott <rgott@nyecountynv.gov>
**Sent:** Tuesday, October 24, 2023 11:59 AM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Savannah, please see attached. We do not have a Lincoln Enrollment form, he was automatically moved over to Lincoln with his prior Unum LTD enrollment. Also, I don't have actual paystubs, but I have attached his activity for 2 months prior to the last date worked, please let me know if that will work.

*Thanks,*

*Ryanne M. Gott*
*HR Generalist II*

---

**From:** Savannah Eddy <Savannah.Eddy@lfg.com>
**Sent:** Monday, October 23, 2023 12:16 PM
**To:** Ryanne Gott <rgott@nyecountynv.gov>
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Monday, October 30, 2023 11:08 AM
**To:** entrprserip
**Subject:** FW: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

---

**From:** dboruchowitz@ottcmail.com
**Sent:** Monday, October 30, 2023 11:06:14 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Claims
**Cc:** Disability Claims
**Subject:** RE: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

I have an appointment in 2 weeks, is that sufficient for getting the doctor's statement or do you need me to try to get an earlier appointment?

---

**From:** claims@lfg.com <claims@lfg.com>
**Sent:** Friday, October 13, 2023 2:58 PM
**To:** dboruchowitz@ottcmail.com
**Cc:** disabilityclaims@lfg.com
**Subject:** Re: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

This message was sent securely using Zix®

Hello David,

Thank you for your email. I have forwarded the attached claim information for David Boruchowitz to our Disability Department for processing. We will still require the Attending Physician's Statement, and Authorization form before we can begin the initial review. Once this information is received, please allow 5 to 7 business days for the initial review. In that time a determination will be made, or additional information will be requested.

Please let us know if we can be of further assistance.

Thank you,

**Michelle Adams**
**Customer Care**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

**Administration**
Fax: 877-573-6177
Email: clientservices@lfg.com

**Claims**
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 10/12/2023 4:45 PM, From: dboruchowitz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 CTI_CALL, dboruchowitz@ottcmail.com wrote:

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning,

I have attached the claim form to open the claim.

With it I have attached the doctor's certification that he had to submit to PERS for my disability retirement outlining my injury and disability as well as accompanying medical records.

In addition, I have attached the PERS letter of acceptance of my total and permanent disability.

Can you advise if this suffices or do I need to go back to the doctor and have him complete the Lincoln form specifically.

Please let me know.

Thanks.

David Boruchowitz

---

**From:** Claims <Claims@lfg.com>
**Sent:** Thursday, October 12, 2023 2:01 PM
**To:** dboruchowitz@fltg.net
**Subject:** POLICY NUMBER - 000010177364-00000

Per request document attached.

*Please be sure to include claim number in subject line for faster processing.*

You can send or upload documents via online portal, physical mail, email, or fax :

Lincoln Financial Group
PO Box 2609
Omaha, NE 68103-2609
Phone: 1-800-423-2765
Fax: 1-877-843-3950
Disabilityclaims@lfg.com

*You can check the status of your claim, review payment information if approved, report your return to work date, upload documents and more by visiting our website at* www.LincolnFinancial.com .

**Warm Regards,**

**Briana Williams**
Claims Care Associate
Claimant Excellence Care

**Lincoln Financial Group**
LincolnFinancial.com

1-800-423-2765 Phone
1-877-843-3950 Fax

8801 Indian Hills Drive
Omaha, NE 68114

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**®.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, October 24, 2023 1:00 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE) |
| **Attachments:** | pyacthstsumdet.pdf; Captain (Operations) 06012020 .pdf; Unum Enrollment .pdf |

---

**From:** Eddy, Savannah
**Sent:** Tuesday, October 24, 2023 1:00:15 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

---

**From:** Ryanne Gott <rgott@nyecountynv.gov>
**Sent:** Tuesday, October 24, 2023 11:59 AM
**To:** Eddy, Savannah <Savannah.Eddy@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230082409 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Savannah, please see attached. We do not have a Lincoln Enrollment form, he was automatically moved over to Lincoln with his prior Unum LTD enrollment. Also, I don't have actual paystubs, but I have attached his activity for 2 months prior to the last date worked, please let me know if that will work.

*Thanks,*

*Ryanne M. Gott*
*HR Generalist II*

---

**From:** Savannah Eddy <Savannah.Eddy@lfg.com>
**Sent:** Monday, October 23, 2023 12:16 PM
**To:** Ryanne Gott <rgott@nyecountynv.gov>
**Subject:** Lincoln Financial Group Information for Claim 1230082409 (SECURE)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230082409

Please review the attached letter and/or document(s) regarding the Claim #1230082409 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Savannah Eddy**
**Sr. Claims Examiner, LTD 2**
omaha, Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X 6932
Email: Savannah.Eddy@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge™

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Friday, October 13, 2023 5:58 PM
**To:** entrprserip
**Subject:** FW: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

---

**From:** Claims
**Sent:** Friday, October 13, 2023 5:57:35 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** dboruchowitz@ottcmail.com
**Cc:** Disability Claims
**Subject:** Re: POLICY NUMBER - 000010177364-00000 NYECOUNTY (secure) <oma_105831>

Hello David,

Thank you for your email. I have forwarded the attached claim information for David Boruchowitz to our Disability Department for processing. We will still require the Attending Physician's Statement, and Authorization form before we can begin the initial review. Once this information is received, please allow 5 to 7 business days for the initial review. In that time a determination will be made, or additional information will be requested.

Please let us know if we can be of further assistance.

Thank you,

**Michelle Adams**
**Customer Care**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

**Administration**
Fax: 877-573-6177
Email: clientservices@lfg.com

**Claims**
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance

Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

On 10/12/2023 4:45 PM, From: dboruchowitz@ottcmail.com, To: Claims@lfg.com; , Subject: RE: POLICY NUMBER - 000010177364-00000 CTI_CALL, dboruchowitz@ottcmail.com wrote:

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning,

I have attached the claim form to open the claim.

With it I have attached the doctor's certification that he had to submit to PERS for my disability retirement outlining my injury and disability as well as accompanying medical records.

In addition, I have attached the PERS letter of acceptance of my total and permanent disability.

Can you advise if this suffices or do I need to go back to the doctor and have him complete the Lincoln form specifically.

Please let me know.

Thanks.

David Boruchowitz

---

**From:** Claims <Claims@lfg.com>
**Sent:** Thursday, October 12, 2023 2:01 PM
**To:** dboruchowitz@fltg.net
**Subject:** POLICY NUMBER - 000010177364-00000

Per request document attached.

*Please be sure to include claim number in subject line for faster processing.*

You can send or upload documents via online portal, physical mail, email, or fax :

Lincoln Financial Group
PO Box 2609
Omaha, NE 68103-2609
Phone: 1-800-423-2765
Fax: 1-877-843-3950

Disabilityclaims@lfg.com

*You can check the status of your claim, review payment information if approved, report your return to work date, upload documents and more by visiting our website at* www.LincolnFinancial.com .

**Warm Regards,**

**Briana Williams**
Claims Care Associate
Claimant Excellence Care

**Lincoln Financial Group**
LincolnFinancial.com

1-800-423-2765 Phone
1-877-843-3950 Fax

8801 Indian Hills Drive
Omaha, NE 68114

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

# GR LIFE CLAIM PROFILE

**Date:** 5/6/2026 **LFG** **Claim #:** 1240001544

**Insurer:** The Lincoln National Life Insurance Company **Posted:** 1/7/2024 **Location:** HOME
**Policy:** 00001017736200000 - Nye County Human Resources **Status:** CLOSED **User ID:** DAXBE4
**Business:** TRUE LIFE
**Close Date:** 1/17/2024 **Close Reason:** Not TD Any Occ

## Claimant Information

**Name:** DAVID E BORUCHOWITZ **Phone:** **DOB:**
**SSN:** **Sex:** M **Hire:** 2/21/2006
**Address:** USA **Ins Eff:** 7/1/2013 **Class:** 16
**Occ:** POLICE CAPTAIN, PRECINCT **DOT** vernme 375167034 rnate titles: cap
**Salary:** $65.53 **Period:** Hourly Rate

## Claim Information

**Special Provisions:**
**Age:** 43
**DLW:** 7/7/2023 **DOD:** 7/7/2023 **S/A:** S **W/R:** N
**Type:** WAIVER **Nature:** ILLNESS
**Diagnosis Pri:** M54.6 Pain in thoracic spine
**Sec:**
**Recovery Date:** 6/21/2047

## Benefit Information

**Date Ben Begin:** 7/7/2023 **Months Paid:** 0 **Actual Age:** 43
**Modal:** $0.00 **Reins:** $0.00 **Reserve:** $0.00
**Waiver:** **Waiver Approved:** **Date Waiver Approved:**
**Face Bas:** $0.00 **Face Sup:** $0.00 **Face Vol:** $0.00
**Cur Bas:** $0.00 **Cur Sup:** $0.00 **Cur Vol:** $0.00

## Policy Information

| | Basic | Supplemental | Voluntary |
|---|---|---|---|
| Method: | | | |
| Min: | | | |
| Max: | | | |
| Add: | | | |
| Dis: | | | |

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| LI | PROCESSED | 7/7/2023 | 6/21/2047 | $50,000.00 | $0.00 |
| DLI | PROCESSED | 7/7/2023 | 6/21/2047 | $3,500.00 | $0.00 |

## Dependent Information

| Type | DOB | Name |
|---|---|---|

**GR LIFE CLAIM PROFILE**

**Date:** 5/6/2026 **LFG** **Claim #:** 1240001544

**Alert Information**

| Status | Level | Description | Posted | Resolved |
| --- | --- | --- | --- | --- |

**Action Plan**

## Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | DAVID BORUCHOWITZ | | | **Occupation:** | POLICE CAPTAIN, PRECINCT (government ser.) alternate titles: cap | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 1/7/2024 | **Months Dis:** | 33 |
| **Claim #:** | 1240001544 | **DOD:** | 7/7/2023 | **Ben:** | | **Months Pd:** | 0 |
| **Coverage:** | GR LIFE | **Status:** | CLOSED | **Close Date:** | 1/17/2024 | **Assignee:** | DAXBE4 |
| **Policy Holder:** | Nye County Human Resources | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Not TD Any Occ | | |

| **Posted Date** | **Category** | **Seq** | **Item** | **Status** | **User** |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 1/5/2024 | Claim Tasks | 1 | Validate Age Reductions | Completed | SYS |
| 1/7/2024 6:05:28 AM | Claim Tasks | 2 | Missing Info | Requested | DAXBE4 |

The follow ing fields contained no data w hen the claim form w as submitted: ACCOUNT_ID

Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:16 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/7/2024 6:05:28 AM | Claim Tasks | 3 | Verify BLOC / CLOC | Requested | DAXBE4 |

Verify Billing Location

Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:17 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/12/2024 | Telephone (OUT) | 1 | DAVID E. BORUCHOWITZ | Completed | DAXBE4 |

left detailed message reagarding WOP and decision w ith appeals and conversion rights - DAXBE4 - Jan 12, 2024 10:52:05 am

| | | | | | |
|---|---|---|---|---|---|
| 1/12/2024 | Claim Tasks | 2 | Missing Info | Completed | DAXBE4 |

The follow ing fields contained no data w hen the claim form w as submitted: ACCOUNT_ID

Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:16 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/12/2024 | Claim Tasks | 3 | Verify BLOC / CLOC | Completed | DAXBE4 |

Verify Billing Location

Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:17 pm

| | | | | | |
|---|---|---|---|---|---|
| 1/12/2024 10:52:54 AM | Summary/Assessment/Pa | 1 | BLI SAP - DAXBE4 - Jan 12, 2024 10:53:36 am | Requested | DAXBE4 |

Summary Notes
BLI SAP - DAXBE4 - Jan 12, 2024 10:53:36 am
Assessment Notes

Path Notes

SUMMARY:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity

ASSESSMENT:

ELIG:

GROUP NYECOUNTY, ALLOWS AUTO LETTERS, NON NATIONAL ACT, SELF BILLED

GROUP EFF WITH LFG 7-1-2013

Payroll (aw d 2023-10-24) no deductions noted

ER form (aw d 2023-10-16) noted LTD class 2, doh 2-21-2006, insured 7-1-2013, 40 hours per 10 hour days, DLW 7-20-2023 full day, hourly of 65.53, BME 10,169.60, W2 from year prior 143,853.72,

65.53*40*52=136,302.40

ER email (aw d 2023-10-24) We do not have a Lincoln Enrollment form, he w as automatically moved over to Lincoln w ith his prior Unum LTD enrollment. Also, I don't have actual paystubs, but I have attached his activity for 2 months

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

prior to the last date w orked, please let me know if that w ill w ork.

Per ardis: clmt is under class 16: BLI for 50K eff 7-1-2013, DLI for 3500.00 eff 7-1-2013, VLI for 100K eff 7-1-2013, VCLI: 10K and VSLI: 10K

BLI policy lang: class 16, min 20 hours per w eek, no WP, non contrib for BLI or DLI, flat 50K, TD prior to age 60, 6 mo elim, TDAO, terms per ssnra

MEDICAL:

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

## Chronological Activity List

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

UPDATED PATH:
Rec'ed OVN how ever w e still need AUTH and APS/ The Auth provided w as signed online. APS w ill provide DOD, DX and R&L.

Once APS is rec'ed w ill send to CR for initial support. - SAAED9 - Nov 16, 2023 02:58:13 pm

UPDATED ASSESSMENT:
09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

APS 11/14/2023 Joshua Weltha, Spring Mountain Medical noted DX: M54.50 Low Back Pain, First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023, Hospital confined: 04/09/2022-04/10/2022, Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times. R&L: Not able to RTW in law enforcement. Can frequently lift up to 10 pounds and occasionally lift up to 50 pounds pt is being seen by advanced spine and rehab, su spine and sports and desert institiute spine care.

LTD PEER REVIEW dated 12-5-2023 by Martin D. Hoffman, M.D.
Board Certified in Physical Medicine & Rehabilitation

The medical evidence supports impairments affecting usual life activities, including w ork-related activities. The support includes the claimant's report of ongoing low er back pain since a roll over OHV accident w hile on the job as a police officer on 04/09/2022; symptoms initially consistent w ith a lumbar strain/sprain injury; imaging show ing some lumbar disc disease w ith some foraminal narrow ing; examinations consistent w ith lumbar facet disease; and treatment including chiropractic, and recent (11/06/2023) lumbar facet injections w ith good transient relief, w ith plans for lumbar facet radiofrequency ablation as of the most recent documentation provided.

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:

o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.
I found no clinical evidence for medication or other treatment side effects, or other identifiable conditions that support additional impairment or additional restrictions or limitations beyond those outlined above.

LTD call dated 11-9-2023

**Chronological Activity List**

Has retirement- just got the check this w eek

Has not started to receive WC- the short answ er is he may not get it. One dr w rote that he w as "Retired released for full duty"

What is your occupation?
Now retired due to this disability

What is the disabling condition that took you out of w ork?
Was on duty got involved in a car accident and ended up w ith a back injury- has not had SX yet they are discussing this

TX: Doing injection- just got one on Tuesday.

Can you stand to prep/cook a meal? Yes, everything is timely but able to do light things
Can you push/pull to vacuum mop ot sw eep? Yes, does not do it but could do it
Can you drive? Yes, long durations become painful
EE show er independently? Yes
Yes can reach up and bend dow n

Typical day?
Does a lot of rotating positions, not able to sit or stand w ithout hurting. Will move around all day. Hangs around the house daily, has animals that he takes care of, does not do much yard w ork

Plan?
Has OV on 11/13 then 11/14 and 11/17
EE meets w ith 3 different drs

Original back dr- then sent to pain mgnt- then sent to a surgeon w ho sent him back to pain mgnt then has primary care

What w as your DLW: 10/12
Injury 04/2022
Starting 07/08 EE w as on paid leave- had no loss of income
His loss of income began 10/13

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity. w ill proceed w ith denial not TDAO.

HAVING VLI BUILT THEN WILL SEND LETTERS AND CLOSE CLAIM. - DAXBE4 - Jan 12, 2024 10:53:36 am

UPDATED ELIG:
VLI POLICY LANG: class 2, min 20 hours w eekly, 60 dayWP, option 1-5, EOI over 100K, EE only, TD prior to age 60, 180 day elim, TDAO, terms per ssnra
BLI: 50K eff 7-1-2013
VLI: 100K 7-1-2013
VCLI: 10K disallow ed
VSLI: 10K disallow ed

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity. w ill proceed w ith denial not TDAO. - DAXBE4 - Jan 12, 2024 10:59:39 am

| | | | | | |
|---|---|---|---|---|---|
| 1/12/2024 10:53:41 AM | Claim Tasks | 4 | Terminate Claim / Coverage | Requested | DAXBE4 |
| | SEND MAX TERM AGE LETTER - DAXBE4 - Jan 12, 2024 10:54:02 am | | | | |

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:18 pm | | | | |
| 1/12/2024 10:54:10 AM | Claim Tasks | 5 | Update Claim Information | Requested | DAXBE4 |
| | HAVING VLI BUILT THEN WILL CLOSE CLAIM AND SEND LETTERS. EE ADVISED - DAXBE4 - Jan 12, 2024 10:54:34 am<br>Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:20 pm | | | | |
| 1/12/2024 11:00:07 AM | Documents/Mail | 1 | Waiver Denial Not TD_Claimant | Work In Progress | DAXBE4 |
| | Waiver Denial Not TD_ClaimantAttachments:Translation services | | | | |
| 1/17/2024 | Claim Tasks | 6 | Prim Dx Change in Related Claim | Completed | DAXBE4 |
| | Primary Diagnosis w as changed in LIFE claim 1240003278 - DAXBE4 - Jan 17, 2024 02:24:28 pm | | | | |
| 1/17/2024 | Claim Tasks | 5 | Update Claim Information | Completed | DAXBE4 |
| | HAVING VLI BUILT THEN WILL CLOSE CLAIM AND SEND LETTERS. EE ADVISED - DAXBE4 - Jan 12, 2024 10:54:34 am<br>Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:20 pm | | | | |
| 1/17/2024 | Claim Tasks | 4 | Terminate Claim / Coverage | Completed | DAXBE4 |
| | SEND MAX TERM AGE LETTER - DAXBE4 - Jan 12, 2024 10:54:02 am<br>Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:49:18 pm | | | | |
| 1/17/2024 | Documents/Mail | 1 | Waiver Denial Not TD_Claimant | Completed | DAXBE4 |
| | Waiver Denial Not TD_ClaimantAttachments:Translation services | | | | |
| 1/17/2024 | Documents/Mail | 2 | Generic Denial Ltr Sent to Employer | Completed | DAXBE4 |
| | Generic Denial Ltr Sent to Employer | | | | |
| 1/17/2024 | Summary/Assessment/Pa1h | | BLI SAP - DAXBE4 - Jan 12, 2024 10:53:36 am | Completed | DAXBE4 |

Summary Notes
BLI SAP - DAXBE4 - Jan 12, 2024 10:53:36 am
Assessment Notes

Path Notes

SUMMARY:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity

ASSESSMENT:

ELIG:

GROUP NYECOUNTY, ALLOWS AUTO LETTERS, NON NATIONAL ACT, SELF BILLED

GROUP EFF WITH LFG 7-1-2013

Payroll (aw d 2023-10-24) no deductions noted

ER form (aw d 2023-10-16) noted LTD class 2, doh 2-21-2006, insured 7-1-2013, 40 hours per 10 hour days, DLW 7-20-2023 full day, hourly of 65.53, BME 10,169.60, W2 from year prior 143,853.72,

65.53*40*52=136,302.40

ER email (aw d 2023-10-24) We do not have a Lincoln Enrollment form, he w as automatically moved over to Lincoln w ith his prior Unum LTD enrollment. Also, I don't have actual paystubs, but I have attached his activity for 2 months prior to the last date w orked, please let me know if that w ill w ork.

Per ardis: clmt is under class 16: BLI for 50K eff 7-1-2013, DLI for 3500.00 eff 7-1-2013, VLI for 100K eff 7-1-2013, VCLI: 10K and VSLI: 10K

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

BLI policy lang: class 16, min 20 hours per w eek, no WP, non contrib for BLI or DLI, flat 50K, TD prior to age 60, 6 mo elim, TDAO, terms per ssnra

MEDICAL:

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive

bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

UPDATED PATH:
Rec'ed OVN how ever w e still need AUTH and APS/ The Auth provided w as signed online. APS w ill provide DOD, DX and R&L.

Once APS is rec'ed w ill send to CR for initial support. - SAAED9 - Nov 16, 2023 02:58:13 pm

UPDATED ASSESSMENT:
09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

APS 11/14/2023 Joshua Weltha, Spring Mountain Medical noted DX: M54.50 Low Back Pain, First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023, Hospital confined: 04/09/2022-04/10/2022, Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times. R&L: Not able to RTW in law enforcement. Can frequently lift up to 10 pounds and occasionally lift up to 50 pounds pt is being seen by advanced spine and rehab, su spine and sports and desert institiute spine care.

LTD PEER REVIEW dated 12-5-2023 by Martin D. Hoffman, M.D.
Board Certified in Physical Medicine & Rehabilitation

The medical evidence supports impairments affecting usual life activities, including w ork-related activities. The support includes the claimant's report of ongoing low er back pain since a roll over OHV accident w hile on the job as a police officer on 04/09/2022; symptoms initially consistent w ith a lumbar strain/sprain injury; imaging show ing some lumbar disc disease w ith some foraminal narrow ing; examinations consistent w ith lumbar facet disease; and treatment including chiropractic, and recent (11/06/2023) lumbar facet injections w ith good transient relief, w ith plans for lumbar facet radiofrequency ablation as of the most recent documentation provided.

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:

o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.
I found no clinical evidence for medication or other treatment side effects, or other identifiable conditions that support additional impairment or additional restrictions or limitations beyond those outlined above.

LTD call dated 11-9-2023

Has retirement- just got the check this w eek

Has not started to receive WC- the short answ er is he may not get it. One dr w rote that he w as "Retired released for full duty"

**Chronological Activity List**

What is your occupation?
Now retired due to this disability

What is the disabling condition that took you out of w ork?
Was on duty got involved in a car accident and ended up w ith a back injury- has not had SX yet they are discussing this

TX: Doing injection- just got one on Tuesday.

Can you stand to prep/cook a meal? Yes, everything is timely but able to do light things
Can you push/pull to vacuum mop ot sw eep? Yes, does not do it but could do it
Can you drive? Yes, long durations become painful
EE show er independently? Yes
Yes can reach up and bend dow n

Typical day?
Does a lot of rotating positions, not able to sit or stand w ithout hurting. Will move around all day. Hangs around the house daily, has animals that he takes care of, does not do much yard w ork

Plan?
Has OV on 11/13 then 11/14 and 11/17
EE meets w ith 3 different drs

Original back dr- then sent to pain mgnt- then sent to a surgeon w ho sent him back to pain mgnt then has primary care

What w as your DLW: 10/12
Injury 04/2022
Starting 07/08 EE w as on paid leave- had no loss of income
His loss of income began 10/13

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity. w ill proceed w ith denial not TDAO.

HAVING VLI BUILT THEN WILL SEND LETTERS AND CLOSE CLAIM. - DAXBE4 - Jan 12, 2024 10:53:36 am

UPDATED ELIG:
VLI POLICY LANG: class 2, min 20 hours w eekly, 60 dayWP, option 1-5, EOI over 100K, EE only, TD prior to age 60, 180 day elim, TDAO, terms per ssnra
BLI: 50K eff 7-1-2013
VLI: 100K 7-1-2013
VCLI: 10K disallow ed
VSLI: 10K disallow ed

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity. w ill proceed w ith denial not TDAO. - DAXBE4 - Jan 12, 2024 10:59:39 am

| | | | | |
|---|---|---|---|---|
| 1/17/2024 2:49:11 PM | Status | Not TD Any Occ | CLOSED | DAXBE4 |

AMENDMENT NO. 6

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010177362

ISSUED TO: Nye County

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated March 1, 2021.

The effective date of this amendment is March 1, 2021; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Accepted by the Group Policyholder this ________ day of _________________________ 20______

By ______________________________________ Title ____________________________________

Lincoln Financial Group®

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

Group Policyholder:

Nye County

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on August 1, 2013, and on the same day of each month after that. Policy anniversaries will be each July 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska. The issue date of this Policy is July 1, 2013.

SECRETARY

PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010177362
PROVIDING
LIFE INSURANCE
ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
DEPENDENT LIFE INSURANCE

**This Policy contains an Accelerated Death Benefit provision. Receipt of an Accelerated Death Benefit will reduce benefits specified in this Policy. Accelerated Death Benefits may be taxable. As with all tax matters, the Insured Person should consult a professional tax advisor before applying for this benefit. Please read the Limitations section of the Accelerated Death Benefit included in this Policy.**

**TABLE OF CONTENTS**

Schedule of Insurance.......... 3

Definitions.......... 39

General Provisions.......... 40

Provisions Applicable to Participating Employers.......... 41

Eligibility and Effective Dates for Personal Insurance.......... 42

Individual Terminations.......... 44

Continuation of Coverage.......... 45

Premiums and Premium Rates.......... 46

Grace Period.......... 47

Policy Termination.......... 47

Beneficiary.......... 48

Assignments.......... 49

Facility of Payment.......... 50

Death Benefit.......... 50

Settlement Options.......... 50

Extension of Death Benefit.......... 51

Accelerated Death Benefit.......... 53

Conversion Privilege.......... 55

Dependents Life Insurance.......... 56

Claims Procedures for Life or Accidental Death and Dismemberment Benefits.......... 58

Accidental Death and Dismemberment Insurance.......... 62

Safe Driver Benefit.......... 64

Notice.......... 65

Prior Insurance Credit Provision.......... 68

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASSES**

| | |
|---|---|
| Class 1 | All Full-Time NCMEA, NCLEMA and Non-Represented Management Employees not in Health Plan |
| Class 2 | Nye County Elected Officials and All Other Full-Time Non-Represented Employees not in Health Plan |
| Class 3 | All Full-Time NCEA Employees with 2 or more years of service not in Health Plan |
| Class 4 | All Full-Time NCEA Employees with less than 2 years of service not in Health Plan |
| Class 5 | All Full-Time NCLEA employees with 2 or more years of service not in Health Plan |
| Class 6 | All Full-Time Step 1 NCLEA Employees with less than 2 years of service not in Health Plan |
| Class 7 | All Full-Time Step 2 NCLEA Employees with less than 2 years of service not in Health Plan |
| Class 8 | All Full-Time Employees of Towns, Districts and Libraries not in Health Plan Excluding BGID, Tonopah, Amargosa & Pahrump |
| Class 9 | All Full-Time Employees of BGID, Tonopah & Amargosa Towns, Districts and Libraries not in Health Plan |
| Class 10 | All Full-Time Town of Pahrump Management Employees not in Health Plan |
| Class 11 | All Other Full-Time Town of Pahrump Employees not in Health Plan |
| Class 12 | All Full-Time NCMEA, NCLEMA and Non-Represented Management Employees enrolled in Employer Health Plan |
| Class 13 | Nye County Elected Officials and All Other Full-Time Non-Represented Employees enrolled in Employer Health Plan |
| Class 14 | All Full-Time NCEA Employees with 2 or more years of service enrolled in Employer Health Plan |
| Class 15 | All Full-Time NCEA Employees with less than 2 years of service enrolled in Employer Health Plan |
| Class 16 | All Full-Time NCLEA employees with 2 or more |

| | |
|---|---|
| | years of service enrolled in Employer Health Plan |
| Class 17 | All Full-Time Step 1 NCLEA Employees with less than 2 years of service enrolled in Employer Health Plan |
| Class 18 | All Full-Time Step 2 NCLEA Employees with less than 2 years of service enrolled in Employer Health Plan |
| Class 19 | All Full-Time Employees of Towns, Districts and Libraries enrolled in Employer Health Plan Excluding BGID, Tonopah, Amargosa & Pahrump |
| Class 20 | All Full-Time Employees of BGID, Tonopah & Amargosa Towns, Districts and Libraries enrolled in Employer Health Plan |
| Class 21 | All Full-Time Town of Pahrump Management Employees enrolled in Employer Health Plan |
| Class 22 | All Other Full-Time Town of Pahrump Employees enrolled in Employer Health Plan |

The amount of an Insured Person's insurance is determined from the following table. The initial amount of coverage is the amount which applies to an Insured Person's Class on the date his or her coverage takes effect. An Insured Person may become eligible for increases in the amount of insurance in accord with the table. Any such increase will take effect on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the date on which the Insured Person becomes eligible for the increase; if Actively at Work on that day;
(2) the day the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not the Insured Person is Actively at Work.

The amount of an Insured Person's Life Insurance shall be reduced by the amount of any Life Insurance in effect as a result of exercising the rights under the Conversion Privilege section of this Policy.

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE (CONTINUED)**

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

Under the Continuation of Coverage provision, the word "retire" or "retirement" means an Insured Person's attainment of the Social Security Normal Retirement Age. The use of the word "retire" or "retirement" elsewhere in this Policy means an Insured Person's retirement from employment with the Employer.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - All Full-Time NCMEA, NCLEMA and Non-Represented Management Employees not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $100,000 |
| AD&D Insurance Principal Sum | $100,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - Nye County Elected Officials and All Other Full-Time Non-Represented Employees not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person's term as an elected official ends.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 3 - All Full-Time NCEA Employees with 2 or more years of service not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $50,000 |
| AD&D Insurance Principal Sum | $50,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 4 - All Full-Time NCEA Employees with less than 2 years of service not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 5 - All Full-Time NCLEA employees with 2 or more years of service not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) Two years of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $50,000 |
| AD&D Insurance Principal Sum | $50,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 6 - All Full-Time Step 1 NCLEA Employees with less than 2 years of service not in Health Plan**

| | |
|---|---|
| MINIMUM HOURS: | 20 hours per week |
| WAITING PERIOD: | (For date insurance begins, refer to "Effective Date" section)<br>60 days of continuous Active Work |
| CONTRIBUTIONS: | Insured Persons are not required to make contributions for Personal Life & AD&D Insurance. |

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 7 - All Full-Time Step 2 NCLEA Employees with less than 2 years of service not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 30 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 8 - All Full-Time Employees of Towns, Districts and Libraries not in Health Plan Excluding BGID, Tonopah, Amargosa & Pahrump**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 9 - All Full-Time Employees of BGID, Tonopah & Amargosa Towns, Districts and Libraries not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to “Effective Date” section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 10 - All Full-Time Town of Pahrump Management Employees not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $100,000 |
| AD&D Insurance Principal Sum | $100,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 11 - All Other Full-Time Town of Pahrump Employees not in Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
None

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 12 - All Full-Time NCMEA, NCLEMA and Non-Represented Management Employees enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $100,000 |
| AD&D Insurance Principal Sum | $100,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 12**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
| --- | --- |
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 13 - Nye County Elected Officials and All Other Full-Time Non-Represented Employees enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to “Effective Date” section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person's term as an elected official ends.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 13**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee's term as an elected official ends.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 14 - All Full-Time NCEA Employees with 2 or more years of service enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $50,000 |
| AD&D Insurance Principal Sum | $50,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 14**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 15 - All Full-Time NCEA Employees with less than 2 years of service enrolled in Employer Health Plan**

| | |
|---|---|
| MINIMUM HOURS: | 20 hours per week |
| WAITING PERIOD: | (For date insurance begins, refer to "Effective Date" section)<br>60 days of continuous Active Work |
| CONTRIBUTIONS: | Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance. |

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 15**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 16 - All Full-Time NCLEA employees with 2 or more years of service enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
None

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $50,000 |
| AD&D Insurance Principal Sum | $50,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 16**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 17 - All Full-Time Step 1 NCLEA Employees with less than 2 years of service enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 17**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 18 - All Full-Time Step 2 NCLEA Employees with less than 2 years of service enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 30 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 18**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 19 - All Full-Time Employees of Towns, Districts and Libraries enrolled in Employer Health Plan Excluding BGID, Tonopah, Amargosa & Pahrump**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 19**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 20 - All Full-Time Employees of BGID, Tonopah & Amargosa Towns, Districts and Libraries enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 20**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 21 - All Full-Time Town of Pahrump Management Employees enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
60 days of continuous Active Work

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $100,000 |
| AD&D Insurance Principal Sum | $100,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 21**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 22 - All Other Full-Time Town of Pahrump Employees enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
None

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $25,000 |
| AD&D Insurance Principal Sum | $25,000 |

Personal Life and AD&D Insurance will terminate when the Insured Person retires.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 22**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when the Insured Employee retires.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:
(1) the GROUP POLICYHOLDER'S place of business; or
(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday which is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY OR DATE means at 12:01 A.M., Standard Time, at the GROUP POLICYHOLDER'S place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

FULL-TIME EMPLOYEE means an employee of the GROUP POLICYHOLDER:
(1) whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance.

GROUP POLICYHOLDER means the person, partnership, corporation, or trust as shown on the Title Page of this Policy.

INSURANCE MONTH means that period of time:
(1) beginning at 12:01 A.M. Standard Time, at the GROUP POLICYHOLDER'S place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

INSURED PERSON means a PERSON for whom the coverages provided by this Policy are in effect.

PERSON means an Elected Official or a FULL-TIME EMPLOYEE of the GROUP POLICYHOLDER:
(1) who is a member of an employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

PERSONAL INSURANCE means the insurance provided by this Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means this Group Insurance Policy issued by the Company to the Group Policyholder.

## GENERAL PROVISIONS

ENTIRE CONTRACT. The entire contract between the parties consists of:
(1) this Policy and the Group Policyholder's application (a copy is attached);
(2) the Participating Employer's participation agreement; and
(3) the Insured Persons' enrollment cards, if any.
All statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy; unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement is furnished to the Insured Person or Beneficiary.

Only an Officer of the Company may change this Policy or extend the time for payment of any premium. No change will be valid unless made in writing and signed by an Officer of the Company. Any change so made will be binding on all persons referred to in this Policy.

INCONTESTABILITY. Except for the non-payment of premiums, the Company may not contest the validity of this Policy as to any Insured Person after it has been in force for two years during his or her lifetime. This clause will not affect the Company's right to contest claims made for disability, accidental death, or accidental dismemberment benefits.

NONPARTICIPATION. This Policy will not be entitled to share in the surplus earnings of the Company.

BASIS OF RESERVE. The reserve for this Policy will not be less than the reserve computed using:
(1) the 1970 Intercompany Group Life Disability Valuation Table; and
(2) interest at not less than three percent per annum.

INFORMATION TO BE FURNISHED. The Group Policyholder and Participating Employers may be required to furnish any information needed to administer this Policy. Clerical error by the Group Policyholder or Participating Employer will not:
(1) affect the amount of insurance which otherwise would be in effect; or
(2) continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the twelve month period which precedes the date the Company receives proof such an adjustment should be made.

The Company may inspect any of the Group Policyholder's or Participating Employers' records which relate to this Policy.

MISSTATEMENT OF AGE. If an Insured Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit depends upon age; then the benefit will be that which would have been payable, based upon the person's correct age.

CERTIFICATES. The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between the Policy and the Certificate, the Policy will control.

CONFORMITY WITH STATE STATUTES. If any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

WORKER'S COMPENSATION. This Policy is not to be construed to provide benefits required by Worker's Compensation laws.

## PROVISIONS APPLICABLE TO PARTICIPATING EMPLOYERS

A Participating Employer has no rights under this Policy except as provided in this Section. The Participating Employer will be responsible for all premiums payable with respect to any of its Employees who are Insured Persons under this Policy.

PARTICIPATING EMPLOYER means an employer who has been approved by the Company for participation in the coverage provided by this Policy. The following are Participating Employers:

BGID - Beatty
Amargosa Town, Library & Museum
Tonopah Town & Library
Pahrump Town & Library
Smoky Valley Library
Nye County- Pahrump, Beatty, Gabbs, Amargosa Valley & Tonopah

EFFECTIVE DATE. As it applies to any Participating Employer, the Effective Date of this Policy will be the later of:
- (a) the date this Policy is issued;
- (b) the first day of the Insurance Month following the Company's approval of the employer's Participation Agreement; or
- (c) a date agreed upon by the Company, the Participating Employer, and the Group Policyholder.

TERMINATION: A Participating Employer's participation under this Policy ends on the earliest of the following dates:
- (a) the date the employer no longer meets the definition of a Participating Employer;
- (b) the date the Participating Employer has fewer than 10 Insured Persons;
- (c) the date the Participating Employer suspends active business operations, is placed in bankruptcy or receivership, dissolves, merges or relocates;
- (d) the date the Participating Employer, without good cause, fails to:
  - (a) promptly furnish the Company any information it may reasonably require; or
  - (b) perform its duties pertaining to this Policy in good faith;
- (e) the last day of the Insurance Month for which premium is paid;
- (f) the last day of the Insurance Month in which the Company receives the Participating Employer's written request to cease participation; or
- (g) the date the Company terminates the coverage under this Policy for all Participating Employers in this state.

On the day participation ends, Policy coverage will terminate for all the Participating Employer's employees and their Dependents. If an employer ceases to be a Participating Employer, it may not be a Participating Employer again; until the Company reapproves it as such.

**ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE**

ELIGIBILITY. A Person becomes eligible for the coverage provided by this Policy on the later of:
(1) the Policy's date of issue; or
(2) the date the Waiting Period is completed.

WAITING PERIOD. (See Schedule of Insurance).

EFFECTIVE DATE. Personal Insurance becomes effective on the latest of:
(1) (a) For Classes 1, 2, 3, 4, 6, 8, 9, 10, 12, 13, 14, 15, 17, 19, 20 and 21, the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
(b) For Classes 5, 7, 11, 18 and 22, the first day of the Insurance Month following the date the Person becomes eligible for the coverage; or
(c) For Class 16, the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for Personal Insurance; and signs:
(a) a payroll deduction order, if Insured Persons pay any part of the Policy premium; or
(b) an order to pay premiums from the Person's Section 125 Plan account, if Employer contributions are made through a Section 125 Plan; or
(4) the date the Company approves the Person's coverage, if evidence of insurability is required.

EVIDENCE OF INSURABILITY. Evidence of insurability satisfactory to the Company must be submitted when:
(1) a Person makes written application for Personal Insurance more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for Personal Insurance after he or she has requested:
(a) to cancel Personal Insurance;
(b) to stop payroll deductions for the coverage; or
(c) to stop premium payments from the Section 125 Plan account.

EXCEPTIONS. If an Insured Person's coverage terminates due to an approved leave of absence or military leave, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within six months after the leave begins;
(2) the Person applies or is enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

For Classes 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 19, 20, 21 and 22, If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within 12 months after the date the lay-off begins;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

For Classes 5, 7, 16 and 18, If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within 12 months after the date the lay-off begins;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date the Insured Person returns to Active Work.

**ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE (Continued)**

For Classes 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 19, 20, 21 and 22, If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:

(1) the Person is rehired within 12 months after employment terminated;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the date the Insured Person returns to Active Work.

For Classes 5, 7, 16 and 18, If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:

(1) the Person is rehired within 12 months after employment terminated;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date the Insured Person returns to Active Work.

**INDIVIDUAL TERMINATIONS**

An Insured Person's coverage will terminate on the earliest of:

(1) the date this Policy terminates;
(2) the last day of the Insurance Month in which the Insured Person requests termination;
(3) the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(4) the date the Insured Person ceases to be in a class of employees which is eligible for coverage under this Policy;
(5) with respect to any particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
(6) the date the Insured Person's employment with the Group Policyholder or Participating Employer terminates; or
(7) the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work results in termination of insurance; but coverage may be continued as follows:

(1) If the Insured Person is disabled due to illness or injury, then coverage may be continued until the earliest of:
    (a) 12 Insurance Months after the disability begins;
    (b) the date the Person is no longer disabled; or
    (c) for Life Insurance; the date the Insured Person qualifies for any Extension of Death Benefit under this Policy;

    provided premium payments are made on his or her behalf.
(2) If the Insured Person ceases work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued:
    (a) for three Insurance Months after the lay off or leave begins;
    (b) provided premium payments are made on his or her behalf.

**CONTINUATION OF COVERAGE**

This section applies to any Basic Personal Life Insurance and Accidental Death and Dismemberment Insurance provided by this Policy. Such insurance may be continued for up to 36 months, by paying the required premiums, when:

(1) an Insured Person's employment with the Employer ends for a reason other than sickness or injury or retirement; and
(2) the insurance has been in force for at least 12 months in a row just prior to the date employment ends.

Continuation of insurance under this provision will follow any state required continuation or other continuation allowed under the Ceasing Active Work section of this Policy.

To continue insurance, written application and the first premium payment must be made to the Company, within 31 days of the date insurance would otherwise end.

The Continuation of Coverage is not available when Policy coverage terminates solely because:

(1) an Insured Person's Employer ceases to be a Participating Employer; or
(2) this Policy terminates.

For life insurance that terminates under this Policy due to an Insured Person's termination of membership in an eligible class; see the Conversion Privilege section of this Policy.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. During the continuation period the amount of insurance may not be increased. Continued insurance will be subject to any reduction on account of age, as shown in the Schedule of Insurance.

The Insured Person may decrease the amount of continued insurance at any time, by completing a request form supplied by the Company. The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM. Timely payment of premium must be made directly to the Company, throughout the period of continued insurance. Premiums will be based on attained age as shown in the premium information provided with the application. A direct billing fee will be added to the premium based on the frequency chosen. The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company. Such request may be sent at any time while continued insurance is in force, except during a Grace Period.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:

(1) the date this Policy terminates;
(2) the last day of the Insurance Month in which termination is requested;
(3) the last day of the Insurance Month for which premium is paid;
(4) the date the Insured Person dies;
(5) the date insurance would otherwise end had the Insured Person remained an Active Employee;
(6) the date insurance under this provision has been continued for 36 months; or
(7) the date the Insured Person enters the armed forces of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

When continued insurance ends, the Insured Person may be entitled to purchase an individual life policy, in accord with the Conversion Privilege section of this Policy.

## PREMIUMS AND PREMIUM RATES

PAYMENT OF PREMIUMS. No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

PREMIUM RATE CHANGE. The Company may change any premium rate on any of the following dates:
(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, dissolves or merges, or is added to or removed from this Policy;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 60 days advance written notice of any increase in premium rates.

PREMIUM AMOUNT. The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.
(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

| | |
|---|---|
| Monthly Group Life Rate | $.19 per $1,000 of insurance |
| Monthly AD&D Rate | $.03 per $1,000 of insurance |
| Monthly Dependent Life Rate | $1.00 per Family Unit |

## GRACE PERIOD

A grace period of 60 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 60 days advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:

(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
  (a) promptly furnish any information the Company reasonably requires; or
  (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

**BENEFICIARY**

PAYMENTS TO BENEFICIARY. At an Insured Person's death, the amount of his or her Personal Life Insurance will be paid to the surviving Beneficiary. If the Insured Person has not named a Beneficiary, or if no named Beneficiary survives the Insured Person; then payment will be made to that Insured Person's:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of this Policy.

The amount payable to anyone shown above will be reduced by any amount paid in accord with the Facility of Payment section.

In determining who is to receive payment, the Company may rely upon an affidavit by a member of the class of relatives to receive payment. The Company will make payment based upon the affidavit it has; unless it receives notice of a valid claim by some other person, at its Group Insurance Service Office, before paying the proceeds. Such payment will release the Company from any further obligation for the Insured Person's life insurance benefit.

If an Insured Person's named Beneficiary dies:

(1) within 15 days of the Insured Person's death; and
(2) before the Company receives satisfactory proof of the Insured Person's death;

then payment will be made as if the Insured Person had survived that Beneficiary; unless other provisions have been made.

NAMING THE BENEFICIARY. An Insured Person's Beneficiary will be as shown on his or her enrollment card, unless changed. This Policy may replace a group policy providing similar coverages. In that event, the Beneficiary which the Insured Person named under the prior policy will be the Beneficiary under this Policy, until changed.

CHANGING THE BENEFICIARY. Only the Insured Person, or his or her assignee, may change the Beneficiary. A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office. The change will be effective as of the date it was signed; subject to any action the Company takes before receiving notice of the change.

When applying for a conversion policy under the Conversion Privilege Section, an Insured Person must name a Beneficiary. The Beneficiary named for the conversion policy may be someone other than the person named under this Policy. In that event, the application for the conversion policy will be treated as a written notice of change of Beneficiary.

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under this Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:

(1) it is made on a form furnished by the Company;
(2) the original is completed and filed with the Company at its Group Insurance Service Office; and
(3) it is approved by the Company.

The Company and the Group Policyholder do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. An Insured Person may make an irrevocable assignment of his or her Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing he or she has the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of the Insured Person's relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, an Insured Person's spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If an Insured Person makes an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. An Insured Person should consult with his or her own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, the Insured Person can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to the Insured Person in the absence of the assignment under this Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon an Insured Person's death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of this Policy.

## FACILITY OF PAYMENT

Policy benefits may become payable to an Insured Person's estate, to a minor, or to a person who the Company does not consider competent to give a valid release. In that event, the Company has the option to pay one or more of the following:

(1) a person who has assumed the care and support of the Insured Person or Beneficiary;
(2) a person who has incurred expense as a result of the Insured Person's last illness or death;
(3) the personal representative of the Insured Person's estate; or
(4) any person related by blood or marriage to the Insured Person.

No payment made under this section may exceed $500. Any payment made in good faith under this section will fully discharge the Company to the extent of the payment. Any remaining amount of benefit will be paid as shown in the Beneficiary section.

## DEATH BENEFIT

AMOUNT PAYABLE ON DEATH. Upon receipt of satisfactory proof of an Insured Person's death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of death. This amount is shown in the Schedule of Insurance. The benefit will be paid as shown in the Beneficiary, Facility of Payment, and Settlement Options sections.

## SETTLEMENT OPTIONS

INSTALLMENTS. All or part of the death benefit may be received in installments, by making written election to the Company.

ELECTION. While living, an Insured Person may direct the Company to pay the death benefit in installments. If no such direction is in effect at the time of the Insured Person's death, the Beneficiary may make such an election.

CONDITIONS. Any election, whether by an Insured Person or a Beneficiary, must comply with the Company's practices at the time it is made. The amount applied under a settlement option must be at least $2,000. It must be sufficient to provide a payment of at least $20 per month.

## EXTENSION OF DEATH BENEFIT

BENEFIT. Life insurance will be continued, **without payment of premiums**, for an Insured Person who:
(1) becomes Totally Disabled while insured under this policy and before reaching age 60;
(2) remains Totally Disabled for at least 6 months in a row; and
(3) submits satisfactory proof within the 7th through the 12th months of disability; or:
  (a) as soon as reasonably possible after that; but
  (b) not later than the 24th month of disability, unless he or she was legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until:
(1) the day the Insured Person is approved for this Extension of Death Benefit; or
(2) the day this Policy terminates (whichever occurs first).
Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for the Insured Person's life insurance, from the 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means an Insured Person:
(1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training, or experience; and
(2) is not engaging in any gainful employment or occupation.

AMOUNT CONTINUED. The life insurance continued by this section:
(1) will be the amount of Personal Life Insurance and any Dependent Life Insurance in effect on the day the Insured Person's Total Disability begins; and
(2) will be subject to the reductions and terminations in effect under this Policy on that day.
If the Insured Person receives an Accelerated Death Benefit, the amount will be reduced in accord with that provision. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. At any time during this continuation, the Company may require the Insured Person:
(1) to submit further proof of his or her continued Total Disability; and
(2) to be examined by a Physician of the Company's choice, as often as reasonably necessary.
After the first two years of Total Disability, the Company will not request proof or an exam more than once a year. Proof will be at the Insured Person's expense; unless the Company requests an exam by a Physician of its choice.

When an Insured Person dies after submitting proof, further proof must be submitted to the Company showing that he or she remained continuously and Totally Disabled until death. When an Insured Person dies within 12 months after Total Disability begins, but before submitting proof; then his or her death benefit will still be paid under the terms of this Policy. But the Company must first receive satisfactory proof of his or her continuous Total Disability, from the last day of Active Work until the date of death.

TERMINATION. Any life insurance extended under this section will terminate automatically on:
(1) the day the Insured Person ceases to be Totally Disabled;
(2) the day the Insured Person fails to take a required medical examination;
(3) the 60th day after the Company mails a request for additional proof, if it is not given;
(4) the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
(5) the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

RIGHTS AFTER TERMINATION. If Total Disability ends, and the Insured Person **does not return** to a class eligible for Policy coverage; then he or she may exercise the Conversion Privilege. If Total Disability ends, and the Insured Person **does return** to an eligible class; then his or her Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided below.

**EXTENSION OF DEATH BENEFIT**
**(Continued)**

CONVERSION POLICIES. If the Insured Person has exercised the Conversion Privilege, and the benefits payable under this Policy and the conversion policy combined would exceed:

(1) the Insured Person's original amount of Policy coverage prior to the conversion; or
(2) any greater amount for which he or she later becomes insured under this Policy;

then benefits will be payable under the terms of this Policy. But the conversion policy must first be surrendered to the Company; and no claim may be made under the conversion policy, except for refund of premium less any dividends and policy loans.

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of the Insured Person's Personal Life Insurance. It may be paid to the Insured Person, in a lump sum, once during the Insured Person's lifetime.

To qualify, a Terminal Insured Person must:

(1) have satisfied the Active Work requirement under this Policy;
(2) have been insured under this Policy for at least 12 months; and
(3) have at least $2,000 of Personal Life Insurance under this Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means the Insured Person has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, the Insured Person (or his or her legal representative) must send the Company:

(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4 and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO THE INSURED PERSON SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. The Insured Person may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:

(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:

A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

**ACCELERATED DEATH BENEFIT**
**(Continued)**

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless the Insured Person qualifies for waiver of premium under this Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under this Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. The Insured Person's Death Benefit will be paid in accord with the Beneficiary section of this Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to the Insured Person. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if the Insured Person has filed for bankruptcy;
(4) without the written consent of the beneficiary, if the Insured Person has named an irrevocable beneficiary;
(5) without the written consent of the assignee, if the Insured Person has assigned his or her rights under this Policy;
(6) if any part of the Life Insurance must be paid to the Insured Person's child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
(8) if a government agency requires the Insured Person or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(9) if an Accelerated Death Benefit has been previously paid for the Claimant under this Policy.

For Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22

## CONVERSION PRIVILEGE - CONVERSION BENEFITS

GENERAL BENEFIT. An individual life policy, known as a conversion policy, may be purchased from the Company without evidence of insurability if all or part of anyone's life insurance, provided by this Policy, terminates for any reason except:

(1) termination or amendment of the Policy; or
(2) the Insured Person's request for:
   (a) termination of insurance; or
   (b) cancellation of payroll deduction.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.
Any policy issued under the General Conversion Benefit will:

(1) be for an amount not to exceed the amount of the life insurance which was terminated;
(2) be on any form (except term) then issued by the Company at the age and amount for which application is made;
(3) be issued at the Insured Person's age at nearest birthday;
(4) be issued without disability or other supplemental benefits; and
(5) require premiums based on the class of risk to which the person then belongs.

CONVERSION BENEFIT-POLICY TERMINATION OR AMENDMENT. A conversion policy also may be purchased from the Company if:

(1) all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and
(2) that person has been covered continuously under this Policy for at least five years.

Any conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Benefit except its amount may not exceed the lesser of:

(1) $10,000; or
(2) the Amount of Life Insurance which terminates; less the amount of any group life insurance for which the Insured Person becomes eligible within 31 days after the termination.

## PROVISIONS APPLICABLE TO ALL CONVERSION POLICIES

EFFECTIVE DATES. The coverage provided by a conversion policy issued under this Section will be effective on the later of:

(1) its date of issue; or
(2) 31 days after the date on which the person's life insurance terminated.

DEATH DURING CONVERSION PERIOD. The Company will pay a death benefit under this Policy equal to the amount of the life insurance which could have been converted, if the person:

(1) was entitled to purchase a conversion policy; and
(2) dies within the 31 day conversion period.

This death benefit will be paid even if no one applied for the conversion policy. If the first premium was paid for the conversion policy, the amount of the premium will be refunded and the conversion policy will be void.

NOTICE OF CONVERSION PRIVILEGES-INSURED PERSONS. When an Insured Person's Personal Insurance terminates, written notice of the right to convert will be:

(1) given personally to the Insured Person;
(2) mailed by the Group Policyholder to the Insured Person at his last known address; or
(3) mailed by the Company to the Insured Person at his last known address as furnished by the Group Policyholder.

An additional period in which to convert will be granted if this written notice is not given to the Insured Person at least 15 days before the end of the 31 day conversion period. Any such extension of the conversion period will expire on the earliest of:

(1) 15 days after the Insured Person is given the written notice; or
(2) 60 days after the end of the 31 day conversion period even if the Insured Person is never given such notice.

No death benefit will be payable under this Policy after the 31 day conversion period has expired even though the right to convert may be extended.

**DEPENDENTS LIFE INSURANCE**

BENEFIT. Upon receipt of satisfactory proof of a Dependent's death while insured under this Policy, the Company will pay the amount of the Dependents Life Insurance in effect on the date of such death. This amount is shown in the Schedule of Insurance. The death benefit will be paid:

(1) to the Insured Person; or
(2) if the Insured Person fails to survive the Dependent, to the Insured Person's Beneficiary or according to the Facility of Payment Section.

DEPENDENT. A Dependent means a person who meets the definition of a dependent of the Insured Person under the provision of the U.S. Internal Revenue Code; and is an Insured Person's:

(1) spouse who is not legally separated from the Insured Person;
(2) unmarried child at least 14 days but less than 19 years of age;
(3) unmarried child less than 23 years of age, if attending an accredited educational institution for the minimum credit hours required to maintain full-time student status there; or
(4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 19 years of age.

A legally adopted child is considered the Insured Person's child from the date of placement in the Insured Person's home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.

In addition to naturally born and legally adopted children, the word "child" includes an Insured Person's stepchild or foster child; provided the child resides in the Insured Person's household and is dependent on the Insured Person for principal support.

The term Dependent does not include anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard.

ELIGIBILITY. An Insured Person becomes eligible for Dependents Life Insurance on the latest of:

(1) the date the Insured Person becomes eligible for Personal Insurance;
(2) the effective date of this Section; or
(3) the date the Insured Person first acquires a Dependent.

EFFECTIVE DATES. An Insured Person's Dependents Life Insurance will become effective on the latest of the following dates:

(1) the date the Insured Person becomes eligible for Dependents Life Insurance;
(2) the date the Insured Person makes written application for Dependents Life Insurance and signs a payroll deduction order; and
(3) the date the Company approves any required evidence of insurability on all the Insured Person's Dependents.

If an Insured Person acquires a new Dependent while insured for Dependents Life Insurance, insurance for that Dependent will take effect on the date the Dependent is acquired.

If a Dependent is confined in a hospital on the date his or her Dependents Life Insurance would otherwise take effect, then Dependents Life Insurance for that Dependent will not take effect until ten days after final discharge from the hospital.

EVIDENCE OF INSURABILITY. Each Insured Person's Dependent must submit evidence of insurability satisfactory to the Company if the Insured Person:

(1) makes application for Dependents Insurance more than 31 days after the date such Insured Person becomes eligible for Dependents Insurance;
(2) elects to be insured for Dependents Insurance after such Insured Person had requested:
  (a) termination of the Dependents Insurance; or
  (b) cancellation of the payroll deduction order; or
(3) makes application for Dependents Insurance after it has automatically terminated, due to failure to pay premium by the end of the grace period.

INDIVIDUAL TERMINATION OF DEPENDENT INSURANCE. An Insured Person's Dependents Insurance will cease for all of the Insured Person's Dependents on the earliest of:

(1) the date the Insured Person's Personal Insurance terminates;
(2) the date Dependent Insurance is discontinued under this Policy;
(3) the date the Insured Person ceases to be in a class of employees eligible for Dependent Insurance;
(4) the date the Insured Person requests that the Dependent Insurance be terminated; or
(5) the last day of the premium paying period for which the Insured Person has made any required contribution toward the cost of the Dependent Insurance.

Dependents Insurance on a particular Dependent will cease on the earliest of:

(1) the date he or she ceases to be a Dependent as defined in this Policy;
(2) the date he or she becomes covered under this Policy as an Insured Person; or
(3) the date he or she enters the armed forces of any state or country; except for duty of 30 days or less in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

MISSTATEMENT OF AGE. If the age of a Dependent has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit is dependent upon age, the benefit will be that which would have been payable based upon the Dependent's correct age.

ASSIGNMENT. Dependents Insurance may not be assigned.

INCONTESTABILITY. Except for non-payment of premiums, the Company may not contest the validity of this Policy as to any Dependent, after it has been in force for two years during the lifetime of that Dependent. This clause will not affect the Company's right to contest claims made for accidental death, or dismemberment benefits.

# CLAIMS PROCEDURES
# FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: This Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

## NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.***** The notice must be sent to the Company's Group Insurance Service Office. It should include:
(1) the Insured Person's name and address; and
(2) the number of this Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then the Insured Person or Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.***** Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have the Insured Person examined:
(1) by a Physician of the Company's choice;
(2) as often as reasonably required.
If the Insured Person fails to cooperate with an examiner or fails to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, the claim will be approved or denied within 30 days. Benefits will be paid immediately after the Company receives complete proof and approves the claim. If payment is delayed, interest will be paid as follows.

If Life Insurance Benefits are paid more than 30 days after the death; then interest will accrue:
(1) at the current rate on death proceeds on deposit with the Company;
(2) from the date of death until the date when the Life Insurance Benefits are paid.

If Accidental Death and Dismemberment Benefits are paid more than 30 days after claim approval; then interest will accrue:
(1) at a rate equal to the prime rate at the largest bank in Nevada, plus two percentage points;
(2) from the 30th day after claim approval, until the day such benefits are paid.

**CLAIMS PROCEDURES**
**(Continued)**

**TO WHOM PAYABLE**

**Death.** Any benefits payable for the Insured Person's death will be paid in accord with the Beneficiary, Facility of Payment, and Settlement Options sections of this Policy. If this Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
(1) the Insured Person, if he or she survives that Dependent; or
(2) the Insured Person's Beneficiary, or in accord with the Facility of Payment section; if the Insured Person does not survive that Dependent.

**Dismemberment.** If this Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than the Insured Person's death benefit, will be paid to the Insured Person.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
(1) 90 days after receiving the first proof of a death or dismemberment claim; or
(2) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy; and
(3) 30 days after receiving complete proof of either type of claim.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.
The notice will explain the special circumstances which require the delay, and when a decision can be expected.

In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**CLAIMS PROCEDURES**
**(Continued)**

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
(1) any further appeal procedures available under this Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the Insured Person a written delay notice, by the 30th day after receiving the request for review. The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:
(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from the Insured Person, or from his or her Beneficiary or estate.
Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that this Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:
(1) manage this Policy and administer claims under it; and
(2) interpret the provisions and resolve questions arising under this Policy.

The Company's authority includes (but is not limited to) the right to:
(1) establish and enforce procedures for administering this Policy and claims under it;
(2) determine Employees' eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and
(4) resolve all matters when a claim review is requested.

**CLAIMS PROCEDURES**
**(Continued)**

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to the Insured Person's or Beneficiary's rights to:

(1) request a state insurance department review; or
(2) bring legal action.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:
(1) an Insured Person sustains an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | ½ Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for the Insured Person's class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If an Insured Person sustains more than one loss resulting from the same accident, the benefit:
(1) will be the one largest amount listed;
(2) will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and
(3) will not exceed the Principal Sum for all that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for the Insured Person's loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to the Insured Person.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (CONTINUED)**

**DEFINITIONS.**

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:

(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint. (In South Carolina, "Loss of Hand" can also mean the loss of four whole fingers from one hand.)

(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

## SAFE DRIVER BENEFIT

BENEFIT. If an Insured Person dies as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

(1) an additional Seat Belt Benefit will be payable, if the Insured Person was wearing a properly fastened seat belt at the time of the accident; and
(2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000 per Insured Person. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

(1) the official accident report; or
(2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Group Policyholder.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

(1) seat belt or lap and shoulder restraint; or
(2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

(1) the Accidental Death and Dismemberment Benefits is not paid under this Policy for the Insured Person's death; or
(2) at the time of the accident, the Insured Person or any other person who was driving the auto in which the Insured Person was traveling:
    (a) was driving without a valid drivers' license;
    (b) was driving in excess of the legal speed limit; or
    (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

    The above limitations will apply, whether or not the driver is convicted.

# NEVADA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

## NEVADA GUARANTY ASSOCIATION SUMMARY DOCUMENT
**Effective January 1, 2020**

Residents of Nevada who purchase life insurance, annuities, health insurance or Health Maintenance Organization (HMO) insurance should know that the insurance companies licensed in this State to write these types of insurance are members of the Nevada Life and Health Insurance Guaranty Association (Association). The purpose of the Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations and becomes insolvent. If this should happen, the Association assesses its other member insurance companies for the money to pay the claims of the insured persons who live in this State and, in some cases, to keep coverage in force. This valuable extra protection provided by these insurers through the Association is not unlimited, however, as noted in the **bold** written information below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Nevada Life and Health Insurance Guaranty Association may not provide coverage for certain types of policies, however, if coverage is provided, it will be subject to substantial limitations and exclusions, and require continued residency in Nevada. A person should not rely on coverage by the Association when selecting an insurance company or when selecting an insurance policy.**

**Coverage is NOT provided for a policy or any portion of it that is not guaranteed by the Insurer or for which the policyholder has assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies are required by law to deliver this notice to you. <u>However, insurance companies and their agents are prohibited by law from using the existence of the Association for sales, solicitation or to induce the purchase of any kind of insurance policy.</u>**

**The State law that provides for this safety-net coverage is called the Nevada Life and Health Insurance Guaranty Association. Below is a brief summary of this law's coverages, exclusions and limits. The summary does not cover all provisions of the law, nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the Association. <u>Anyone may obtain additional information from the Association or file a complaint with the Nevada Commissioner of Insurance, at the applicable address listed below, to allege a violation of any provision of the Nevada Life and Health Insurance Guaranty Association.</u>**

**The Nevada Life and Health Insurance Guaranty Association**
**4600 Kietzke Lane, Suite 0-269**
**Reno, Nevada 89502**
**(Business and Mailing address)**

**Commissioner of Insurance, State of Nevada**
**Department of Business and Industry, Division of Insurance**
**1818 E. College Parkway, Suite 103**
**Carson City, Nevada 89706**

Generally, individuals will be protected by the Association if they live in this State and hold a life, health or HMO insurance contract or an annuity, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of the insured persons are protected as well if they live in another state.

**MAXIMUM BENEFIT LIMITS**
**(For any one policyholder per company no matter how many policies you have)**

**Life Insurance:** $300,000 or $100,000 for cash surrenders
**Annuities:** $250,000 or $250,000 for cash surrenders, including Structured settlement annuities.
**Disability Income Insurance:** $300,000 **Long Term Care:** $300,000
**Basic Hospital, Medical and Surgical Insurance or Major Medical Insurance and HMO's (Known as Health Benefit Plans as defined in NRS 687B.470):** For any one person: $100,000, excluding benefits for basic hospital, medical and surgical insurance or major medical insurance; or an aggregate of $500,000 in benefits, including benefit for basic hospital, medical or surgical insurance or major medical insurance.

With respect to one owner of several non-group policies of life insurance, whether the owner is a natural person or an organization and whether the persons insured are officers, managers, employees or other persons, the Association will not pay more than $5,000,000 in benefits, regardless of the number of policies and contracts held by the owner.

With respect to each participant in a governmental retirement plan covered by an unallocated annuity contract as described in NRS 686C, the maximum allowed is an aggregate of $250,000 regardless of the number of contracts issued by anyone member company.

**EXCLUSIONS FROM COVERAGE**

Not covered by the Nevada Guaranty Association:

- If they are eligible for protection under the law by another State Guaranty Association;
- The Insurer is not authorized to do business in the State of Nevada;
- if the policy was insured by a fraternal benefit society, a mandatory state pooling plan, or
- a mutual assessment company or similar plan which the policyholder is subject to future assessments, or by an insurance exchange.

The Association also does **NOT** provide coverage for:

- Any policy or portion of a policy which is not guaranteed by the member insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- Where interest rate yields exceed an average rate;
- Credits given in connection with the administration of a policy by a group contract holder;
- Any dividends;
- Employers' plans to the extent they are self-funded (not insured by an insurance company or administered by an insurance company);
- Unallocated annuity contracts (which gives rights to group contract holders and not to individuals) other than an annuity owned by a governmental retirement plan established under section 401, 403(b) or 457 of the Internal Revenue Code and the Nevada Revised Statute 686C.130; or
- Medicare or Medicare Advantage contracts.

**FOR MORE INFORMATION AND ANSWERS TO MOST ASKED QUESTIONS, PLEASE VISIT THE ASSOCIATION'S WEB SITE:**

www.nvlifega.org

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

Attached is your plan document/denial of coverage explanation/denial of claim explanation.

PROBLEMS WITH YOUR INSURANCE? - If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

The Lincoln National Life Insurance Company
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Telephone Number 1-800-423-2765

You can also contact the DIVISION OF INSURANCE, a state agency which enforces Nevada's insurance laws, and file a complaint. You can contact the DIVISION OF INSURANCE by writing to:

State of Nevada Division of Insurance
1818 E College Parkway, Suite 103
Carson City, NV 89706

or

Bradley Building
2501 E. Sahara Avenue, Suite 302
Las Vegas, NV 89104

or you can call (775) 687-0700 in Carson City, or (702) 486-4009 in Las Vegas.

**AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO: 000010177362**

**ISSUED TO: Nye County**

**The Policy is amended by the addition of the following provisions.**

## PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan"** means a prior carrier's group life insurance policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, this Policy will provide life coverage for a Person who:

(1) was insured under the prior plan on its termination date;
(2) was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) is not entitled to any extension of life insurance under the prior plan; and
(4) is not Totally Disabled (as defined in the Extension of Death Benefit section of this Policy) on the date this Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until the Person satisfies this Policy's Active Work rule, the amount of his or her group life insurance under this Policy will not exceed the amount for which the Person was insured under the prior plan on its termination date.

**This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. 000010177362 has been issued to

Nye County
(The Group Policyholder)

The issue date of the Policy is July 1, 2013.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 16

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

**The Policy contains an Accelerated Death Benefit provision. Receipt of an Accelerated Death Benefit will reduce benefits specified in the Policy. Accelerated Death Benefits may be taxable. As with all tax matters, the Insured Person should consult a professional tax advisor before applying for this benefit. Please read the Limitations section of the Accelerated Death Benefit included in the Policy.**

Ellen Cooper
PRESIDENT

**CERTIFICATE OF GROUP INSURANCE**

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

Class 16 All Full-Time NCLEA employees with 2 or more years of service enrolled in Employer Health Plan

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

Under the Continuation of Coverage provision, the word "retire" or "retirement" means your attainment of the Social Security Normal Retirement Age. The use of the word "retire" or "retirement" elsewhere in this Certificate means your retirement from employment with the Employer.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 16 - All Full-Time NCLEA employees with 2 or more years of service enrolled in Employer Health Plan**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Dates of Coverages" section)
None

## LIFE AND AD&D INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | $50,000 |
| AD&D Insurance Principal Sum | $50,000 |

Personal Life and AD&D Insurance will terminate when you retire.

**Nye County**
**000010177362**
**SCHEDULE OF INSURANCE**
**For**
**Class 16**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $3,500 |
| Dependent Child (age 14 days to 6 months) | $250 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $3,500 |

Spouse Life Insurance will terminate when you retire.

**TABLE OF CONTENTS**

Amount of Insurance....3

Definitions....3

Eligibility.... 4

Effective Dates of Coverages....4

Termination of Coverage....5

Continuation of Coverage....6

Death Benefit.... 7

Beneficiary....7

Assignments....8

Extension of Death Benefit....9

Accelerated Death Benefit.... 10

Conversion Privilege....12

Dependents Life Insurance.... 13

Accidental Death and Dismemberment Insurance....15

Safe Driver Benefit.... 17

Claims Procedures for Life or Accidental Death and Dismemberment Benefits.... 18

Prior Insurance Credit Provision....23

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

(1) the first day of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;
(2) the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or
(3) the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

(1) the EMPLOYER'S place of business; or
(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

(1) a Saturday, Sunday or holiday which is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1) whose employment with the EMPLOYER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1) that period of time beginning on the Issue Date of the Policy and extending for one month; and
(2) each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:

(1) the Policy's date of issue; or
(2) the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:

(1) the day you become eligible for the coverage;
(2) the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
(3) the day you make written application for coverage; and sign:
    (a) a payroll deduction order, if you pay any part of the premium; or
    (b) an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
(4) the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:

(1) you apply for coverage more than 31 days after you become eligible; or
(2) you make written application to re-enroll for coverage after you have requested:
    (a) to cancel your coverage;
    (b) to stop payroll deductions for the coverage; or
    (c) to stop premium payments from your Section 125 Plan account.

EXCEPTIONS. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:

(1) you return within six months after the leave begins;
(2) you apply or are enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

If your coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you return within 12 months after the date the lay-off begins;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date you return to Active Work.

If your coverage terminates because your employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you are rehired within 12 months after employment terminated;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date you return to Active Work.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:

(1) the day the Policy terminates;
(2) the last day of the Insurance Month in which you request termination;
(3) the last day of the period for which the premium for your insurance has been paid;
(4) the day you cease to be a member of an employee class shown in the Schedule of Insurance;
(5) with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
(6) the day your employment with the Employer terminates; or
(7) the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary lay off, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

## CONTINUATION OF COVERAGE

This section applies to any Basic Personal Life Insurance and Accidental Death and Dismemberment Insurance provided by the Policy. Such insurance may be continued for up to 36 months, by paying the required premiums, when:

(1) your employment with the Employer ends for a reason other than sickness or injury or retirement; and
(2) the insurance has been in force for at least 12 months in a row just prior to the date employment ends.

Continuation of insurance under this provision will follow any state required continuation or other continuation allowed under the Ceasing Active Work section of the Policy.

To continue insurance, written application and the first premium payment must be made to the Company, within 31 days of the date insurance would otherwise end.

The Continuation of Coverage is not available when Policy coverage terminates solely because:

(1) your Employer ceases to be a Participating Employer; or
(2) the Policy terminates.

For life insurance that terminates under the Policy due to your termination of membership in an eligible class; see the Conversion Privilege section of this Certificate.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. During the continuation period the amount of insurance may not be increased. Continued insurance will be subject to any reduction on account of age, as shown in the Schedule of Insurance.

You may decrease the amount of continued insurance at any time, by completing a request form supplied by the Company. The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM. Timely payment of premium must be made directly to the Company, throughout the period of continued insurance. Premiums will be based on attained age as shown in the premium information provided with the application. A direct billing fee will be added to the premium based on the frequency chosen. The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company. Such request may be sent at any time while continued insurance is in force, except during a Grace Period.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:

(1) the date the Policy terminates;
(2) the last day of the Insurance Month in which termination is requested;
(3) the last day of the Insurance Month for which premium is paid;
(4) the date you die;
(5) the date insurance would otherwise end had you remained an Active Employee;
(6) the date insurance under this provision has been continued for 36 months; or
(7) the date you enter the armed forces of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

When continued insurance ends, you may be entitled to purchase an individual life policy, in accord with the Conversion Privilege section of this Certificate.

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of the Policy.

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
(1) it is made on a form furnished by the Company;
(2) the original is completed and filed with the Company at its Group Insurance Service Office; and
(3) it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
(1) you become Totally Disabled while insured and before reaching age 60;
(2) you remain Totally Disabled for at least 6 months in a row; and
(3) you submit satisfactory proof within the 7th through 12th months of disability; or:
  (a) as soon as reasonably possible after that; but
  (b) not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier. Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means you:
(1) are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
(2) are not engaging in any gainful employment or occupation.

AMOUNT CONTINUED. The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. From time to time, you must submit proof that your Total Disability is continuing. Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice. If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death. If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy. But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION. Any life insurance continued under this section will terminate automatically on:
(1) the day you cease to be Totally Disabled;
(2) the day you fail to take a required medical examination;
(3) the 60th day after the Company mails a request for additional proof, if it is not given;
(4) the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
(5) the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege. If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1) have satisfied the Active Work requirement under the Policy;
(2) have been insured under the Policy for at least 12 months; and
(3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

**ACCELERATED DEATH BENEFIT**
**(Continued)**

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if you have filed for bankruptcy;
(4) without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
(5) without the written consent of the assignee, if you have assigned your rights under the Policy;
(6) if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
(8) if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(9) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
(1) termination or amendment of the Policy; or
(2) your request for:
(a) termination of insurance; or
(b) cancellation of your payroll deduction,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

The conversion policy will:
(1) be in an amount not to exceed the amount of life insurance which was terminated;
(2) be on any form (except term) then issued by the Company at the age and amount for which application is made;
(3) be issued at the person's age at nearest birthday;
(4) be issued without disability or other supplemental benefits; and
(5) require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
(1) all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
(2) the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
(1) $10,000; or
(2) the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
(1) its date of issue; or
(2) 31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
(1) 15 days after you are given the written notice; or
(2) 60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired even though the right to convert may be extended.

**DEPENDENTS LIFE INSURANCE**

DEATH BENEFIT. If your Dependent dies while insured under the Policy, the Company will pay the amount of Dependents Life Insurance in effect on the date of the death. This amount is shown in the Schedule of Insurance. The death benefit will be paid to you. If you are not living when your Dependent dies, the death benefit will be paid to your beneficiary or in accord with the Facility of Payment section of the Policy.

DEPENDENT. A Dependent means a person who meets the definition of your dependent under the provision of the U.S. Internal Revenue Code; and is your:

(1) spouse who is not legally separated from you;
(2) unmarried child at least 14 days but less than 19 years of age;
(3) unmarried child less than 23 years of age, if attending an accredited educational institution for the minimum credit hours required to maintain full-time student status there; or
(4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 19 years of age.

A legally adopted child is considered your child from the date of placement in your home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.

In addition to naturally born and legally adopted children, the word "child" includes your stepchild or foster child; provided the child resides in your household and is dependent on you for principal support.

The term Dependent does not include anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard.

ELIGIBILITY. You become eligible for Dependents Life Insurance on the later of:

(1) the date you become eligible for other coverages provided by the Policy;
(2) the effective date of this section; or
(3) the date you first acquire a Dependent.

EFFECTIVE DATE. Your Dependents Life Insurance will become effective on the later of:

(1) the date you become eligible for Dependents Life Insurance;
(2) the date you sign your payroll deduction order and apply for the coverage; or
(3) the date the Company approves any required evidence of insurability on all your Dependents.

If you acquire a new Dependent while insured for Dependents Life Insurance, his or her insurance will become effective on the date the Dependent is acquired.

If a Dependent is confined in a hospital on the date insurance would otherwise take effect, his or her insurance will become effective on the 10th day following final discharge from the hospital.

EVIDENCE OF INSURABILITY. Each of your Dependents must submit evidence of insurability to the Company, if you apply for Dependents Life Insurance:

(1) more than 31 days after the date you become eligible for Dependents Life Insurance;
(2) after requesting to terminate Dependents Life Insurance or cancelling the payroll deduction order; or
(3) after coverage has automatically terminated, due to failure to pay premium by the end of the grace period.

**DEPENDENTS LIFE INSURANCE**
**(Continued)**

INDIVIDUAL TERMINATION OF DEPENDENT INSURANCE. Your Dependents Life Insurance will cease for all your Dependents on the earliest of:

(1) the date your Personal Insurance terminates;
(2) the date Dependent Life Insurance is discontinued under the Policy;
(3) the date you cease to be in a class of employees eligible for Dependent Life Insurance;
(4) the date you request that the Dependent Life Insurance be terminated; or
(5) the last day of the period for which you have made any required contribution for the cost of the Dependents Life Insurance.

Dependents Life Insurance on a particular Dependent will cease on the earliest of:

(1) the date he or she ceases to be a Dependent as defined in the Policy;
(2) the date he or she becomes covered under the Policy as an Insured Person; or
(3) the date he or she enters the armed forces of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | ½ Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:

(1) will be the one largest amount listed;
(2) will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
(3) will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

**DEFINITIONS.**

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:

(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint. (In South Carolina, "Loss of Hand" can also mean the loss of four whole fingers from one hand.)

(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

(1) an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and
(2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

(1) the official accident report; or
(2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

(1) seat belt or lap and shoulder restraint; or
(2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

(1) the Accidental Death and Dismemberment Benefits is not paid under the Policy for your death; or
(2) at the time of the accident, you or any other person who was driving the auto in which you were traveling:
    (a) was driving without a valid drivers' license;
    (b) was driving in excess of the legal speed limit; or
    (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

    The above limitations will apply, whether or not the driver is convicted.

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.***** The notice must be sent to the Company's Group Insurance Service Office. It should include:
- (1) your name and address; and
- (2) the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.***** Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
- (1) A certified copy of the death certificate, for proof of death.
- (2) A copy of any police report, for proof of accidental death or dismemberment.
- (3) A signed authorization for the Company to obtain more information.
- (4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
- (1) as soon as reasonably possible; and
- (2) in no event more than one year after it was required.

These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:
- (1) by a Physician of the Company's choice;
- (2) as often as reasonably required.

If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, the claim will be approved or denied within 30 days. Benefits will be paid immediately after the Company receives complete proof and approves the claim. If payment is delayed, interest will be paid as follows.

If Life Insurance Benefits are paid more than 30 days after the death; then interest will accrue:
- (1) at the current rate on death proceeds on deposit with the Company;
- (2) from the date of death, until the date when the Life Insurance Benefits are paid.

If Accidental Death and Dismemberment Benefits are paid more than 30 days after claim approval; then interest will accrue:
- (1) at a rate equal to the prime rate at the largest bank in Nevada, plus two percentage points;
- (2) from the 30th day after claim approval, until the day such benefits are paid.

**CLAIMS PROCEDURES**
**(Continued)**

**TO WHOM PAYABLE**

**Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
(1) you, if you survive that Dependent; or
(2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
(1) 90 days after receiving the first proof of a death or dismemberment claim; or
(2) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; and
(3) 30 days after receiving complete proof of either type of claim.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**CLAIMS PROCEDURES**
**(Continued)**

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:
(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:
(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from you, or from your Beneficiary or estate.
Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:
(1) manage the Policy and administer claims under it; and
(2) interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:
(1) establish and enforce procedures for administering the Policy and claims under it;
(2) determine your eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and
(4) resolve all matters when a claim review is requested.

**CLAIMS PROCEDURES**
**(Continued)**

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

(1) request a state insurance department review; or
(2) bring legal action.

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

Attached is your plan document/denial of coverage explanation/denial of claim explanation.

PROBLEMS WITH YOUR INSURANCE? - If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

The Lincoln National Life Insurance Company
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Telephone Number 1-800-423-2765

You can also contact the DIVISION OF INSURANCE, a state agency which enforces Nevada's insurance laws, and file a complaint. You can contact the DIVISION OF INSURANCE by writing to:

State of Nevada Division of Insurance
1818 E College Parkway, Suite 103
Carson City, NV 89706

or

Bradley Building
2501 E. Sahara Avenue, Suite 302
Las Vegas, NV 89104

or you can call (775) 687-0700 in Carson City, or (702) 486-4009 in Las Vegas.

**AMENDMENT TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000010177362**

**ISSUED TO: Nye County**

**Your Certificate is amended by the addition of the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS**

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan"** means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:

(1) were insured under the prior plan on its termination date;
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) are not entitled to any extension of life insurance under the prior plan; and
(4) are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains unchanged.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Lincoln Financial

Lincoln Financial® Privacy Practices Notice

## What Does Lincoln Financial Do with Your Personal Information?

The Lincoln Financial companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information We May Collect and Use

We collect personal information about you:

- to help us identify you as a consumer, our customer, or our former customer;
- to process your requests and transactions;
- to offer investment, insurance, retirement, and other financial services to you;
- to pay your claim;
- to enhance our products and services;
- to tell you about our products or services we believe you may want and use; and
- as otherwise permitted by law.

The types of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name; address; Social Security number; your financial health; and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies:** If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer:** If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative to enroll you in the plan.

When you are no longer our customer, we continue to share your information as described in this notice.

## How We Share and Use Your Personal Information

We may share your personal information within our companies and with certain service providers. They may use this information:

- to process transactions you, your employer, or your group representative have requested;
- to provide customer service;
- to evaluate or enhance our products and services;
- to gain customer insight; to provide education and training to our workforce and customers; and/or
- to inform you of products or services we offer that you may find useful.

Our service providers may or may not be affiliated with us. Affiliates are companies related by common ownership or control. Nonaffiliates are companies not related by common ownership or control. They include:

- Financial service providers: third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with which we have joint marketing agreements. A joint marketing agreement is a formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include, but are not limited to, insurance providers and financial technology solutions.
- Non-financial companies and individuals: consultants; vendors; and companies that perform marketing services on our behalf.

Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products:

- We may share information about your application with credit bureaus.
- We may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers).
- We may provide information to regulatory authorities, law enforcement officials, and to other nonaffiliated or affiliated parties as permitted by law.
- In the event of a sale of all or part of our businesses, we may share customer information with the acquiror as part of the sale.
- **We do not sell or release your information to outside marketers who may want to offer you their own products and services unless we receive your express consent; nor do we release information we receive about you from a consumer reporting agency.**

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Lincoln chooses to share, and whether you can limit this sharing.

| Reasons we can share your personal information | Does Lincoln share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**—to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**—information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | No | We Don't Share |
| **For our affiliates to market to you** | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

Federal law gives you the right to limit only:

- sharing for our affiliates' everyday business purposes – information about your creditworthiness;
- sharing for our affiliates to market to you; and
- sharing for nonaffiliates to market to you.

State laws and individual companies may give you additional rights to limit sharing. California residents can review our California Privacy Notice located at https://www.lincolnfinancial.com/public/general/privacy/californiaprivacynotice.

## Security of Information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secure files, and buildings. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your Rights Regarding Your Personal Information

Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). We will send you notification within 30 business days if we need additional time to respond to your request. If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records because of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information, and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend, or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the recipients and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to exercise your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. **The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice.**

For general account service requests or inquiries unrelated to this Privacy Notice, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial companies:

First Penn-Pacific Life Insurance Company
Lincoln Retirement Services Company, LLC
Lincoln Life & Annuity Company of New York
Financial Investments Corporation (formerly
Lincoln Investment Advisors Corporation)

Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company, Inc.
Lincoln Variable Insurance Products Trust Lincoln
The Lincoln National Life Insurance Company
Lincoln Financial Insurance Agency Incorporated

REF #21882222

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

January 17, 2024

DAVID E BORUCHOWITZ

RE: Extension of Death Benefit
Policyholder: Nye County
Policy Number: 00001017736200000
Policy Number: 00040000100017020
Claim Number: 1240001544
Claim Number: 1240003278
Claimant: David Boruchowitz

Dear David:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

In order for you to qualify for continued coverage without the payment of premiums under the group life policy issued to Nye County by The Lincoln National Life Insurance Company, it must be established that you are Totally Disabled.

The Basic life insurance policy defines Totally Disabled as follows:

> An Insured person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

The Voluntary life insurance policy defines Totally Disabled as follows:

> For this benefit, Total Disability: means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

you are or become qualified by reason of education, training, or experience; and (2) must continue for at least 180 days.

The documentation on file shows you ceased active work on 7/9/2023 due to a diagnosis of Low back pain, Lumbar strain, Degeneration of lumbar intervertebral disc due to a moving vehicle accident. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined above, throughout your SIX-MONTH elimination period. Outlined below is the information reviewed which led to our determination.

On 8/9/2023 it was noted you were undergoing conservative treatment. On 9/18/2023 you were given restrictions of no repetitive bending, twisting, stooping, crawling, climbing, squatting or lifting more than 10 pounds frequently or 20 pounds occasionally. On 11/14/2023 Dr. Weltha noted you were unable to return to work in law enforcement with no change in your restrictions.

In an effort to obtain a better understanding of your medical condition and functional status, your claim went under a Peer Review on 12/5/2023 by Martin D. Hoffman, M.D. Board Certified in Physical Medicine & Rehabilitation. It was determined that the medical information on file would allow you the following functional capacity:

"The medical evidence supports impairments affecting usual life activities, including work-related activities. The support includes the claimant's report of ongoing lower back pain since a roll over OHV accident while on the job as a police officer on 04/09/2022; symptoms initially consistent with a lumbar strain/sprain injury; imaging showing some lumbar disc disease with some foraminal narrowing; examinations consistent with lumbar facet disease; and treatment including chiropractic, and recent (11/06/2023) lumbar facet injections with good transient relief, with plans for lumbar facet radiofrequency ablation as of the most recent documentation provided.

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:

• sitting frequently with intermittent brief change in position for comfort
• standing/walking occasionally
• lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
• fingering, handling, typing, and reaching at desk level and overhead unrestricted
• bending, stooping, crouching, kneeling, and reaching below waist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and with additional intervention. However, it seems unlikely that his capacity will expand beyond allowing for improvement in tolerance for sitting and standing/walking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records will document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls would be reasonable. I found no clinical evidence for medication or other treatment side effects, or other identifiable conditions that support additional impairment or additional restrictions or limitations beyond those outlined above."

While your impairment may prevent you from performing the essential duties of your own occupation as Operations Captain, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

Due to these reasons, we find that you are not Totally Disabled based on the policy provision. Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy.

A separate letter that does not include your confidential information has been mailed to Nye County advising of our decision.

Please contact your Group Administrator regarding any life coverages not listed above. Continuation options may be available to you.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact Nye County within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

REF #21882222

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

Please contact us at the number listed below or at Claims@LFG.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Dana Volenec
800-423-2765*7076
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

REF #21882222

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hólǫ́. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

Date: Wed Jan 17 14:51:43 CST 2024
From: Dana Volenec <Dana.Volenec@lfg.com>
To: rgott@co.nye.nv.us
Message-ID: <2034841674.68.1705524703347.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1240001544 (SECURE)

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1240001544

Please review the attached letter and/or document(s) regarding the Claim #1240001544 for David Boruchowitz. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Dana Volenec**
**Sr. Claims Examiner, Life Waiver 1**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765*7076
Fax: 402-361-0610
Email: Dana.Volenec@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

January 17, 2024

NYE COUNTY
ATTN Ryanne Gott
2101 E. Calvada Blvd.
Suite 150
Pahrump, NV 89048

Re: Policy Number: 00001017736200000
00040000100017020
Claim Number: 1240001544
1240003278
Claimant: David Boruchowitz

Dear Ryanne:

This letter is to inform you that the Extension of Death Benefit claim for David Boruchowitz has been denied.

A detailed letter has been sent to David advising of our decision and offering appeal rights. The letter also provides information regarding conversion. Due to protected health information, we are unable to provide you with a copy of the denial letter.

There may be two options available in order for David's life insurance coverage to remain in force. One option is to continue to pay premiums on their behalf. Another option is to exercise the right to convert the life insurance policy. David has been advised to contact Nye County within 15 days from the date of this letter regarding eligibility for the conversion privilege.

Please contact our office with any questions you may have at the number listed below or email us at Claims@LFG.com.

Sincerely,

Dana Volenec
800-423-2765*7076
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

# GR LIFE CLAIM PROFILE

**Date:** 5/6/2026 **LFG** **Claim #:** 1240003278

**Insurer:** The Lincoln National Life Insurance Company **Posted:** 1/12/2024 **Location:** HOME
**Policy:** 00040000100017020 - Nye County Human Resources **Status:** CLOSED **User ID:** DAXBE4
**Business:** VOL LIFE
**Close Date:** 1/17/2024 **Close Reason:** Not TD Any Occ

## Claimant Information

**Name:** DAVID E BORUCHOWITZ **Phone:** **DOB:**
**SSN:** **Sex:** M **Hire:** 2/21/2006
**Address:** **Ins Eff:** 7/1/2013 **Class:** 2
USA **Occ:** POLICE CAPTAIN, PRECINCT **DOT**/ernme375167034rnate titles: cap
**Salary:** $65.53 **Period:** Hourly Rate

## Claim Information

**Special Provisions:**
**Age:** 43
**DLW:** 7/7/2023 **DOD:** 7/7/2023 **S/A:** S **W/R:** N
**Type:** WAIVER **Nature:** ILLNESS
**Diagnosis Pri:** M54.6 Pain in thoracic spine
**Sec:**
**Recovery Date:** 6/21/2047

## Benefit Information

**Date Ben Begin:** 7/7/2023 **Months Paid:** 0 **Actual Age:** 43
**Modal:** $0.00 **Reins:** $0.00 **Reserve:** $0.00
**Waiver:** **Waiver Approved:** **Date Waiver Approved:**
**Face Bas:** $0.00 **Face Sup:** $0.00 **Face Vol:** $0.00
**Cur Bas:** $0.00 **Cur Sup:** $0.00 **Cur Vol:** $0.00

## Policy Information

| | Basic | Supplemental | Voluntary |
|---|---|---|---|
| Method: | | | |
| Min: | | | |
| Max: | | | |
| Add: | | | |
| Dis: | | | |

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| VCLI | DISALLOWED | 7/7/2023 | 6/21/2047 | $10,000.00 | |
| VSLI | DISALLOWED | 7/7/2023 | 6/21/2047 | $10,000.00 | |
| VLI | PROCESSED | 7/7/2023 | 6/21/2047 | $100,000.00 | $0.00 |

**GR LIFE CLAIM PROFILE**

**Date:** 5/6/2026 **LFG** **Claim #:** 1240003278

**Dependent Information**

| Type | DOB | Name |
|---|---|---|

**Alert Information**

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|

**Action Plan**

## Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | DAVID BORUCHOWITZ | | | **Occupation:** | POLICE CAPTAIN, PRECINCT (government ser.) alternate titles: cap | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 1/12/2024 | **Months Dis:** | 33 |
| **Claim #:** | 1240003278 | **DOD:** | 7/7/2023 | **Ben:** | | **Months Pd:** | 0 |
| **Coverage:** | GR LIFE | **Status:** | CLOSED | **Close Date:** | 1/17/2024 | **Assignee:** | DAXBE4 |
| **Policy Holder:** | Nye County Human Resources | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Not TD Any Occ | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 1/12/2024 | Documents/Mail | 1 | Email | Completed | JDSASGE |
| | 2024-01-12-11.59.38.347520O01 | | | | |
| 1/12/2024 | Documents/Mail | 2 | Eligibility Information | Completed | JDSASGE |
| | 2024-01-12-12.20.01.687480O01 | | | | |
| 1/12/2024 11:25:34 AM | Claim Tasks | 1 | Verify Occupation | Requested | DAXBE4 |
| | DOT/Occupation w as Unknow n<br><br>Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:48:00 pm | | | | |
| 1/17/2024 | Claim Tasks | 3 | Update Claim Information | Completed | DAXBE4 |
| 1/17/2024 | Claim Tasks | 1 | Verify Occupation | Completed | DAXBE4 |
| | DOT/Occupation w as Unknow n<br><br>Item Closed w ith Claim by System - DAXBE4 - Jan 17, 2024 02:48:00 pm | | | | |
| 1/17/2024 | Claim Tasks | 2 | Terminate Claim / Coverage | Completed | DAXBE4 |
| 1/17/2024 | Summary/Assessment/Path | | VLI SAP - DAXBE4 - Jan 17, 2024 02:36:50 pm | Completed | DAXBE4 |

Summary Notes
VLI SAP - DAXBE4 - Jan 17, 2024 02:36:50 pm
Assessment Notes

Path Notes

SUMMARY:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity

ASSESSMENT:

ELIG:

GROUP NYECOUNTY, ALLOWS AUTO LETTERS, NON NATIONAL ACT, SELF BILLED

GROUP EFF WITH LFG 7-1-2013

Payroll (aw d 2023-10-24) no deductions noted

ER form (aw d 2023-10-16) noted LTD class 2, doh 2-21-2006, insured 7-1-2013, 40 hours per 10 hour days, DLW 7-20-2023 full day, hourly of 65.53, BME 10,169.60, W2 from year prior 143,853.72,

65.53*40*52=136,302.40

ER email (aw d 2023-10-24) We do not have a Lincoln Enrollment form, he w as automatically moved over to Lincoln w ith his prior Unum LTD enrollment. Also, I don't have actual paystubs, but I have attached his activity for 2 months prior to the last date w orked, please let me know if that w ill w ork.

Per ardis: clmt is under class 16: BLI for 50K eff 7-1-2013, DLI for 3500.00 eff 7-1-2013, VLI for 100K eff 7-1-2013, VCLI: 10K and VSLI: 10K

BLI policy lang: class 16, min 20 hours per w eek, no WP, non contrib for BLI or DLI, flat 50K, TD prior to age 60, 6

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

mo elim, TDAO, terms per ssnra

MEDICAL:

09/18/2023
Seen for initial consult-lumbar

09/26/2023
Low back pain developed due to WC related injury on 04/09/2023. Has not gotten diclofenac and baclofen- has not picked it up yet. Recommend bilateral L4-5 and L5-s1 facet joint injections.

04/10/2022 CT Chest
No evidence of acute intrathoracic injury

04/10/2022 CT Abdomen/Pelvis
No acute inta-abdominal injury. Hepatic steatosis

04/10/2022 CT Cervical Spine
No acute abnormality of cervical spine

04/10/2022 CT Brain
No acute intracranial abnormality

04/18/2022 Ltr from WC

06/01/2022 XR Lumbar Spine
Multilevel degenerative disc disease

06/22/2022
Presents for eval of lumbar. Reports low back pain and occasional cervical pain follow ing a rollover accident at w ork 04/09/2022.

06/22/2022 PT Plan of care
Demonstrates impaired posture, decreased ROM, core stability and mild w eakness.

11/18/2022
Underw ent manual therapy

12/13/2022 MR Lumbar Spine
Mild multilevel degenerative changes w orst at L5-S1 w here there is minimal right and mild left neuroforaminal narrow ing mild lateral recess narrow ing and suspended abutment of the bilateral descending S1 nerve roots. Levocurvature of lumbar spine.

01/09/2023
Pain is more accurately described about the lumbar. Reports 3 episodes of sever pain. Woke up in panic after snorkeling.

01/17/2023
Back pain has been more pronounced. Tries to get up to gain relief rib cage pain persists

04/31/2023 -07/28/2023 Manual Therapy

08/09/2023
Has been undergoing conservative treatment underw ent pain mgnt consult recommended for epidural injections.

09/18/2023
Initial consult for lumbar. Painful extension, painful flexion, bilateral paraspinal musculature pain and tenderness. Deep tendon reflexes are symmetrical, light touch sensation is intact. Hip exam is unremarkable. No repetitive bending, tw isting, stooping, craw ling, climbing, squatting or lifting more than 10 lbs frequently or 20 lbs occasionally.

**Chronological Activity List**

UPDATED PATH:
Rec'ed OVN how ever w e still need AUTH and APS/ The Auth provided w as signed online. APS w ill provide DOD, DX and R&L.

Once APS is rec'ed w ill send to CR for initial support. - SAAED9 - Nov 16, 2023 02:58:13 pm

UPDATED ASSESSMENT:
09/05/2023 Peter Su MD
Seen for low back pain. Developed after WC related injury on 04/09/2022

09/26/2023 Peter Su MD
Saw ortho and recommended facet joint injections

11/06/2023 Op report
Lumbar facet arthropathy.

11/13/2023 Peter Su MD
S/P bilateral L4-5 and L5-S1 facet joint injection. Reporting 95% pain relief during initial testing phase

APS 11/14/2023 Joshua Weltha, Spring Mountain Medical noted DX: M54.50 Low Back Pain, First appeared: 04/09/2022, Advised to stop w ork: 07/10/2023, Hospital confined: 04/09/2022-04/10/2022, Injury: During a search and rescue operation EE rolled off highw ay vehicle numerous times. R&L: Not able to RTW in law enforcement. Can frequently lift up to 10 pounds and occasionally lift up to 50 pounds pt is being seen by advanced spine and rehab, su spine and sports and desert institiute spine care.

LTD PEER REVIEW dated 12-5-2023 by Martin D. Hoffman, M.D.
Board Certified in Physical Medicine & Rehabilitation

The medical evidence supports impairments affecting usual life activities, including w ork-related activities. The support includes the claimant's report of ongoing low er back pain since a roll over OHV accident w hile on the job as a police officer on 04/09/2022; symptoms initially consistent w ith a lumbar strain/sprain injury; imaging show ing some lumbar disc disease w ith some foraminal narrow ing; examinations consistent w ith lumbar facet disease; and treatment including chiropractic, and recent (11/06/2023) lumbar facet injections w ith good transient relief, w ith plans for lumbar facet radiofrequency ablation as of the most recent documentation provided.

As a result, reasonable R&Ls from 07/10/2023 to present and ongoing, based on review of medical records, are:

o sitting frequently w ith intermittent brief change in position for comfort
o standing/w alking occasionally
o lifting/carrying up to 20 pounds occasionally and 10 pounds frequently
o fingering, handling, typing and reaching at desk level and overhead unrestricted
o bending, stooping, crouching, kneeling and reaching below w aist occasionally

Given his good transient response to lumbar facet injections and plans for lumbar radiofrequency ablation, it is feasible that the claimant's symptoms and functional capacity might improve over time and w ith additional intervention. How ever, it seems unlikely that his capacity w ill expand beyond allow ing for improvement in tolerance for sitting and standing/w alking. And, in view of the nature, severity, and course of the medical condition, it is unlikely that additional medical records w ill document any significant improvement in functional capacity in less than 2-3 months. If pertinent to his claim, a review of updated medical records around that time to assess his current function and continued need for such extensive R&Ls w ould be reasonable.
I found no clinical evidence for medication or other treatment side effects, or other identifiable conditions that support additional impairment or additional restrictions or limitations beyond those outlined above.

LTD call dated 11-9-2023

Has retirement- just got the check this w eek

Has not started to receive WC- the short answ er is he may not get it. One dr w rote that he w as "Retired released for full duty"

What is your occupation?

**Chronological Activity List**

Now retired due to this disability

What is the disabling condition that took you out of w ork?
Was on duty got involved in a car accident and ended up w ith a back injury- has not had SX yet they are discussing this

TX: Doing injection- just got one on Tuesday.

Can you stand to prep/cook a meal? Yes, everything is timely but able to do light things
Can you push/pull to vacuum mop ot sw eep? Yes, does not do it but could do it
Can you drive? Yes, long durations become painful
EE show er independently? Yes
Yes can reach up and bend dow n

Typical day?
Does a lot of rotating positions, not able to sit or stand w ithout hurting. Will move around all day. Hangs around the house daily, has animals that he takes care of, does not do much yard w ork

Plan?
Has OV on 11/13 then 11/14 and 11/17
EE meets w ith 3 different drs

Original back dr- then sent to pain mgnt- then sent to a surgeon w ho sent him back to pain mgnt then has primary care

What w as your DLW: 10/12
Injury 04/2022
Starting 07/08 EE w as on paid leave- had no loss of income
His loss of income began 10/13

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity.
w ill proceed w ith denial not TDAO.

HAVING VLI BUILT THEN WILL SEND LETTERS AND CLOSE CLAIM. - DAXBE4 - Jan 12, 2024 10:53:36 am

UPDATED ELIG:
VLI POLICY LANG: class 2, min 20 hours w eekly, 60 dayWP, option 1-5, EOI over 100K, EE only, TD prior to age 60, 180 day elim, TDAO, terms per ssnra
BLI: 50K eff 7-1-2013
VLI: 100K 7-1-2013
VCLI: 10K disallow ed
VSLI: 10K disallow ed

PATH:
Clmt is a 43 y/o Male Operations Captain (light occ per OA) w ith DLW of 7/9/2023 (date of injury) dx w ith Low back pain (M54.5), Lumbar strain (S39.012), Degeneration of lumbar intervertebral disc (M51.36) due to MVA. ; comorbid dx are DM type II and obesity. Based on the MR and recent LTD peer, restrictions given are sedentary capacity.
w ill proceed w ith denial not TDAO. - DAXBE4 - Jan 17, 2024 02:36:50 pm

| | | | | |
|---|---|---|---|---|
| 1/17/2024 2:47:55 PM | Status | Not TD Any Occ | CLOSED | DAXBE4 |

**NEVADA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION**

# GUARANTY ASSOCIATION ACT SUMMARY DOCUMENT
**(Effective October 1, 2013)**

Residents of Nevada who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in the state to write these types of insurance are members of the Nevada Life and Health Insurance Guaranty Association (Association). The purpose of the Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insured becomes financially unable to meet its obligations. If this should happen, the Association assesses its other member insurance companies for the money to pay the claims of the insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Association is not unlimited, however, and, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Nevada Life and Health Insurance Guaranty Association may not provide coverage for a policy. If coverage is provided, it will be subject to substantial limitations and exclusions, and require continued residency in Nevada. A person should not rely on coverage by the Association when selecting an insurance company or when selecting an insurance policy.**

Coverage is NOT provided for a policy or any portion of it that is not guaranteed by the Insurer or for which the policyholder has assumed the risk, such as a variable contract sold by prospectus.

Insurance companies are required by law to deliver this notice to you. **However, insurance companies and their agents are prohibited by law from using the existence of the Association for sales, solicitation or to induce the purchase of any kind of insurance policy.**

The state law that provides for this safety-net coverage is called the Nevada Life and Health Insurance Guaranty Association. Below is a brief summary of this law's coverages, exclusions and limits. The summary does not cover all provisions of the law, nor does it in any way change anyone's rights or obligations under the act, or the rights or obligations of the Association. **Anyone may obtain additional information from the Association or file a complaint with the Commissioner of Insurance to allege a violation of any provision of the Nevada Life and Health Insurance Guaranty Association Act, at the applicable address listed below, to allege a violation of any provision of the Nevada Life and Health Guaranty Association Act:**

**The Nevada Life and Health Insurance Guaranty Association**
**P. O. Box 3302**
**Reno, Nevada 89505**

**Commissioner of Insurance, State of Nevada**
**Department of Business and Industry, Division of Insurance**
**1818 E. College Parkway, Suite 103**
**Carson City, Nevada 89706**

## COVERAGE

Generally, individuals will be protected by the Association if they live in this state and **hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract issued by a member insurer.** The beneficiaries, payees or assignees of the insured persons are protected as well, even if they live in another state.

**EXCLUSIONS FROM COVERAGE**

However, persons holding such policies are **NOT** protected by this Association if:

- They are eligible for protection under the law of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside the state);
- the insurer was not authorized to do business in this state;
- their policy was insured by a nonprofit hospital or medical service organization, a health maintenance organization (HMO), a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Association also does **NOT** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contract holder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- unallocated annuity contracts (which give rights to group contract holders, not individuals) other than an annuity owned by a governmental retirement plan established under section 401, 403(b) or 457 of the Internal Revenue Code 26 U.S.C. §§ 401, 403(b) and 457, respectively, or trustees of such a plan; or
- Medicare or Medicare Advantage contracts.

**LIMITS ON AMOUNT OF COVERAGE**

The act also limits the amount the Association is obligated to pay. The Association cannot pay more than what the insurance company would owe under a policy or contract.

With respect to life insurance policies on any one insured life, the Association will pay a maximum of $300,000, regardless of how many policies and contracts there are with the same company, and even if they provide different types of coverage. Within this overall $300,000 limit, the Association will not pay more than: $100,000 in cash surrender values, or $300,000 in life insurance death benefits. Again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverage.

With respect to annuities, the Association will not pay more than $250,000 in the present value of benefits, including net cash surrender and withdrawal.

With respect to health insurance for any one life, the Association will not pay more than: 1) $100,000 for coverage other than disability insurance, basic hospital, medical and surgical insurance or major medical insurance, including any net cash for surrender or withdrawal; 2) $300,000 for disability insurance or long term care insurance; or 3) $500,000 for basic hospital, medical and surgical insurance or major medical insurance.

With respect to each payee of a structured settlement annuity, or beneficiary or beneficiaries of the payee if deceased, the Association will not pay more than $250,000 in present values of benefits from the annuity in the aggregate, including any net cash for surrender or withdrawal.

With respect to each participant in a governmental retirement plan covered by an unallocated annuity contract as described in NRS 686C, the maximum coverage allowed is an aggregate of $250,000 in present-value annuity benefits, including the value of net cash for surrender and net cash for withdrawal, regardless of the number of contracts issued by any one member company.

With respect to any one life or person, in no event will the Association be obligated to cover more than: 1) an aggregate of $300,000 in benefits, excluding benefits for basic hospital, medical and surgical insurance or major medical insurance; or 2) an aggregate of $500,000 in benefits, including benefits for basic hospital, medical or surgical insurance or major medical insurance.

With respect to one owner of several non-group policies of life insurance, whether the owner is a natural person or an organization and whether the persons insured are officers, managers, employees or other persons, the Association will not pay more than $5,000,000 in benefits, regardless of the number of policies and contracts held by the owner.

**FOR MORE INFORMATION AND ANSWERS TO THE MOST FREQUENTLY ASKED QUESTIONS, PLEASE VISIT THE ASSOCIATION'S WEB SITE:**
www.nvlifega.org

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

[Attached is your plan document/denial of coverage explanation/denial of claim explanation].

PROBLEMS WITH YOUR INSURANCE? - If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

The Lincoln National Life Insurance Company
Group Insurance Service Office
8801 Indian Hills Drive
Omaha, Nebraska 68114-4066
Toll Free Telephone Number 1-800-423-2765

You can also contact the DIVISION OF INSURANCE, a state agency which enforces Nevada's insurance laws, and file a complaint. You can contact the DIVISION OF INSURANCE by writing to:

State of Nevada Division of Insurance
1818 E College Parkway, Suite 103
Carson City, NV 89706

or

Bradley Building
2501 E. Sahara Avenue, 3rd Floor
Las Vegas, NV 89104

or you can call (775) 687-4270 in Carson City, or (702) 486-4009 in Las Vegas.

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. GL 000400001000-17020 has been issued to

The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust

The issue date is July 1, 2013 for the Participating Employer.

Participating Employer: Nye County

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 2

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

**The Policy contains an Accelerated Death Benefit provision. Receipt of an Accelerated Death Benefit will reduce benefits specified in the Policy. Accelerated Death Benefits may be taxable. As with all tax matters, the Insured Person should consult a professional tax advisor before applying for this benefit. Please read the Limitations section of the Accelerated Death Benefit included in the Policy.**

Ellen Cooper
PRESIDENT

## CERTIFICATE OF GROUP LIFE INSURANCE

**Nye County**
**000400001000-17020**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

Class 2 All Other Full-Time Employees

The following chart applies to the Portability Privilege provision and to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

Under the Portability Privilege provision, the word "retire" or "retirement" means your attainment of the Social Security Normal Retirement Age. The use of the word "retire" or "retirement" elsewhere in this Certificate means your retirement from employment with the Employer.

**OPEN ENROLLMENT PERIOD** means a designated timeframe for eligible employees to elect coverage who did not enroll during their initial eligibility period or for employees with existing coverage under the Policy to elect additional benefit amounts. Evidence of insurability is not required during this period provided certain conditions are met as described in the Schedule of Insurance. Participation in an Open Enrollment Period does not change the Policy provisions related to Waiting Periods. Employees who have been previously declined for a benefit amount or increase are not eligible to participate in the Open Enrollment.

There will be an Open Enrollment Period beginning May 1st and ending June 30th for eligible Employees to enroll for or to increase their current benefit amounts.

Coverage elected during this period will be effective:

(1) July 1st following the enrollment period, if Actively at Work on that day; or
(2) The day the Insured Person resumes Active Work, if not Actively at Work on the day the elected coverage or increase would otherwise take effect.

**Nye County**
**000400001000-17020**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - All Other Full-Time Employees**

MINIMUM HOURS: 20 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Dates of Coverages" section)
60 days of continuous Active Work

## LIFE INSURANCE

| | Benefit Amount |
|---|---|
| Personal Life Insurance | |
| Option 1: | $20,000. |
| Option 2: | $50,000. |
| Option 3: | $100,000 or $50,000 if you initially become insured after age 70. |
| Option 4: | $150,000 or $50,000 if you initially become insured after age 70. |
| Option 5: | $200,000 or $50,000 if you initially become insured after age 70. |

Personal Life Insurance will be reduced as follows:
- At age 65, benefits will reduce by 35% of the original amount;
- At age 70, benefits will reduce an additional 15% of the original amount.

Benefits will terminate when you retire.

If you first enroll for Personal Life Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

Evidence of Insurability must be submitted to and approved by the Company when:
1. Personal Life Insurance amounts exceed the guarantee issue amount of $100,000 at initial enrollment;
2. any benefit option increase or new election requested during the specified open enrollment period which exceeds the amount of Personal Life Insurance by more than 1 benefit level(s);
3. an increased amount of Personal Life Insurance coverage is requested and any amount of coverage has been previously withdrawn or declined or is pending underwriting review; or
4. initial coverage is elected more than 31 days after first becoming eligible.

If any evidence of insurability is required, it will be provided at your own expense.

**Nye County**
**000400001000-17020**
**SCHEDULE OF INSURANCE**
**For**
**Class 2**
**LIFE INSURANCE**
**(Continued)**

## DEPENDENTS INSURANCE

| | Benefit Amount |
|---|---|
| Spouse Life Insurance | You may elect Life Insurance in any $5,000 increment; subject to a maximum of One times your elected Life Insurance Benefit (rounded to the next higher $5,000). Coverage is subject to a minimum of $5,000 and an overall maximum of $100,000. |
| Child Life Insurance | |
| Dependent Child (under 6 months) | $250 |
| Dependent Child (age 6 months to 26 years) | You may elect Life Insurance in any $1,000 increment; subject to a minimum of $1,000 and a maximum of $10,000. |

Spouse Life Insurance will be reduced as follows:
- by 35% of the original amount when you attain age 65.

Spouse Insurance will terminate when you attain age 70 or retire, whichever occurs first.

Evidence of Insurability must be submitted to and approved by the Company when:
1. Spouse Life Insurance amounts exceed the guarantee issue amount of $30,000 at initial enrollment;
2. any benefit option increase or new election requested during the specified open enrollment period which exceeds the amount of Spouse Life Insurance by more than 2 increment level(s);
3. an increased amount of Spouse Life Insurance coverage is requested and any amount of coverage has been previously withdrawn or declined or is pending underwriting review; or
4. initial coverage is elected more than 31 days after first becoming eligible.

If any evidence of insurability is required, it will be provided at your own expense.

You may elect Dependent Life Insurance (Spouse and/or Child), provided you are also insured in the Voluntary Life Insurance Program.

Participation in the Voluntary program is based on the Participating Employer's enrollment remaining above:
(1) the greater of 10 employees or 25% of those employees electing Voluntary Life Insurance; and
(2) the greater of 5 spouses or 10% of those employees electing Voluntary Spouse Life Insurance.

**TABLE OF CONTENTS**

Amount of Insurance....3

Definitions....3

Eligibility.... 4

Effective Dates of Coverages....4

Termination of Coverage.... 5

Portability Privilege.... 6

Death Benefit.... 7

Beneficiary....7

Extension of Death Benefit....7

Assignments....8

Conversion Privilege....9

Dependents Life Insurance.... 10

Accelerated Death Benefit.... 12

Prior Insurance Credit Provision....15

Amendment....16

Claims Procedures Amendment....17

Claims Procedures for Life or Accidental Death and Dismemberment Benefits.... 18

Certificate Amendment....26

Suicide Exclusion....27

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your classification on the day your coverage becomes effective. You may become eligible for increases in the amount of insurance in accordance with the Schedule of Insurance. Any such increase will be effective on:

(1) the first day of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;
(2) the day you resume Active Work, if not Actively at Work on the day the increase otherwise would have been effective; or
(3) the day determined by the Company after any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK OR ACTIVELY AT WORK means the full-time performance of all customary duties of an employee's occupation at the EMPLOYER'S place of business (or other business location to which the EMPLOYER requires the employee to travel.)

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place, when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1) whose employment with the EMPLOYER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1) that period of time beginning on the Issue Date of the Policy and extending for one month; and
(2) each subsequent month beginning on the same day after that.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

YOU or YOUR means a FULL-TIME EMPLOYEE who is covered by Personal Insurance, or whose Dependents are covered by Dependents Insurance under the Policy.

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:

(1) the Policy's date of issue; or
(2) the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the day you become eligible for the coverage;
(2) the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
(3) the day you make written application for coverage; and sign:
 (a) a payroll deduction order; or
 (b) an order to pay premiums from your Flexible Benefit Plan account, if Employer contributions are paid through a Flexible Benefit Plan; or
(4) the first day of the Insurance Month following the date the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:

(1) you apply for coverage in excess of the Guaranteed Acceptance Amount;
(2) you apply to enroll for or increase coverage more than 31 days after you become eligible;
(3) you make written application to re-enroll for coverage after you have requested:
 (a) to cancel your coverage;
 (b) to stop payroll deductions for the coverage; or
 (c) to stop premium payments from your Flexible Benefit Plan account; or
(4) you apply to reinstate coverage after it lapses, due to failure to pay premiums when due.

EXCEPTIONS. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:

(1) you return within six months after the leave begins;
(2) you apply or are enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

If your coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you return within 12 months after the date the lay-off begins;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date you return to Active Work.

If your coverage terminates because your employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you are rehired within 12 months after employment terminated;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the first day of the Insurance Month coinciding with or next following the date you return to Active Work.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:

(1) the day the Policy terminates or your Employer ceases to be a Participating Employer;
(2) the last day of the Insurance Month in which you request termination;
(3) the last day of the period for which the premium for your insurance has been paid;
(4) the day you cease to be a member of an employee class or die;
(5) with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
(6) the day your employment with the Employer terminates; or
(7) the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, you may continue coverage as follows:

(1) If you are disabled due to illness or injury, then coverage may be continued until the earliest of:
 (a) 12 Insurance Months after the disability begins;
 (b) the date you are no longer disabled; or
 (c) for Life insurance, the date you qualify for the Extension of Death Benefit under the Policy.

 The required premium payments must be received from the Employer throughout the period of continued insurance.
(2) If you go on an approved Family or Medical Leave and are **not** entitled to the more favorable continuation during disability, coverage may be continued until the earliest of:
 (a) the end of the leave period approved by the Employer;
 (b) the end of the leave period required by federal law, or any more favorable period required by a similar law;
 (c) the date you notify your Employer that you will not return; or
 (d) the date you begin employment with another employer.

 The required premium payments must be received from the Employer throughout the period of continued insurance.
(3) If you go on a military leave, coverage may be continued for the greater of:
 (a) the same period allowed for an approved Family or Medical Leave; or
 (b) any more favorable leave in which employees with similar seniority, status, and pay who are on furlough or leave of absence are granted by the Employer.

 The required premium payments must be received from the Employer throughout the period of continued insurance.
(4) If you cease work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a military leave), then coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer throughout the period of continued insurance.

**Conditions.** In administering the above continuations, the Employer must not act so act so as to discriminate unfairly among Insured Persons in similar situations. You will be required to pay the Employer the premium you would have been required to pay as an Active Employee throughout the period of continued coverage.

It may be possible to continue insurance for a longer period in accord with the Portability Privilege section of the Certificate. The Portability Privilege section of this Certificate is not applicable when Policy coverage terminates solely because your spouse or child ceases to be an eligible Dependent; your Employer ceases to be a Participating Employer; or the Policy terminates.

If all or part of anyone's life insurance under the Policy terminates due to:

(1) your Employer ceasing to be a Participating Employer;
(2) your termination of membership in an eligible class; or
(3) a dependent's ceasing to be an eligible family member as a result of your death or divorce, or a child's marriage or attainment of limiting age;

see the Conversion Privilege section of this Certificate.

**PORTABILITY PRIVILEGE**

This section applies to any Personal Life Insurance, Dependent Life Insurance, and Accidental Death and Dismemberment Insurance provided by the Policy. Such insurance may be continued, by paying the required premiums, when:

(1) your employment with the Employer ends for a reason other than Total Disability or retirement; and
(2) the insurance has been in force for at least 12 months in a row just prior to the date employment ends.

To continue insurance, written application and the first premium payment must be made to the Company, within 31 days of the date insurance would otherwise end.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. During the continuation period:

(1) the amount of insurance may not be increased; and
(2) additional dependents may not be enrolled for Dependent Life Insurance.

Continued insurance will be subject to any reduction on account of age, as shown in the Schedule of Insurance.

You may decrease the amount of continued insurance at any time, by completing a request form supplied by the Company. The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM. Timely payment of premium must be made directly to the Company, throughout the period of continued insurance. The required premium will equal:

(1) premium at the group rate which would apply if you remained actively employed with the Employer; plus
(2) a direct billing fee based on the premium frequency chosen.

The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company. Such request may be sent at any time while continued insurance is in force; but not during a Grace Period.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:

(1) the date insurance has been continued until you attain the Social Security Normal Retirement Age; or
(2) the date insurance would otherwise end if you remained an Active Employee; but continued coverage will not end when the Policy is discontinued by the Employer.

When continued insurance ends, you or your Dependent may be entitled to purchase an individual life policy, in accord with the Conversion Privilege section of this Certificate.

## DEATH BENEFIT
**For Employees Only**

The amount of your Personal Life Insurance which is in effect on the date of your death will be paid as a death benefit to your Beneficiary. If no named Beneficiary survives you, the death benefit will be paid to your estate or in accord with the terms of the Policy. Arrangements may be made to have this death benefit paid in installments.

EXCLUSION. Benefits will not be payable if your death:
(1) results from suicide while sane; and
(2) occurs within two years after your Personal Life Insurance takes effect.

However, suicide is no defense to payment of life insurance benefits under the Policy unless the Company can show that you intended suicide when applying for the insurance.

## BENEFICIARY

Your Beneficiary will be as shown on your enrollment card, unless changed. Only you or your assignee may change the Beneficiary. A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office. The change will be effective as of the date it was signed; subject to any action taken by the Company before it received notice of the change.

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED
**For Employees Only**

Any Personal Life Insurance on your life will be continued, without payment of premiums; if while you are insured:
(1) you become Totally Disabled before you reach age 60; and
(2) you submit proof of your disability which is received by the Company:
    (a) within 12 months after your Total Disability begins; or
    (b) as soon as reasonably possible after that.

Upon receipt of such proof, the Company will refund all premiums paid for your coverage from the date Total Disability began.

The life insurance continued will be subject to the reductions and terminations shown in the Policy.

DEFINITION OF TOTAL DISABILITY. For this benefit, Total Disability:
(1) means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
(2) must continue for at least 180 days.

From time to time, you must submit proof that your Total Disability is continuing.

Any life insurance which has been continued under this benefit will be terminated automatically on the day:
(1) you cease to be Totally Disabled;
(2) you fail to take a required medical examination;
(3) you fail to submit any required proofs; or
(4) you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance.

## ASSIGNMENTS

Personal Life Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:

(1) it is made on a form furnished by the Company;
(2) the original is completed and filed with the Company at its Group Insurance Service Office; and
(3) it is approved by the Company.

The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

## CONVERSION PRIVILEGE

GENERAL CONVERSION PRIVILEGE. If your insurance or insurance on a Dependent terminates due to:

(1) termination of your employment or membership in an eligible class; or
(2) a dependent's ceasing to be an eligible family member due to your death or divorce, or a child's marriage or attainment of the limiting age;

then an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

The conversion policy issued under this General Conversion Privilege will:

(1) be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
(2) be on any form (except term) then issued by the Company at the age and amount for which application is made;
(3) be issued at the person's age at nearest birthday;
(4) be issued without disability or other supplemental benefits; and
(5) require premiums based on the class of risk to which the person then belongs.

CONVERSION UPON POLICY TERMINATION OR AMENDMENT. A conversion policy also may be purchased if:

(1) all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
(2) the person applying for the conversion Policy has been covered continuously under the Policy for at least 5 years.

A conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Privilege; except its amount may not exceed the lesser of:

(1) $10,000; or
(2) the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:

(1) its date of issue; or
(2) 31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

NOTICE. When your insurance terminates, written notice of your right to convert will be given to you. If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:

(1) 15 days after you are given the written notice; or
(2) 60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired even though the right to convert may be extended.

**DEPENDENTS LIFE INSURANCE**

DEATH BENEFIT. If your Dependent spouse or child dies while insured under the Policy, the Company will pay the amount of Dependents Life Insurance in effect on the date of the death. This amount is shown in the Schedule of Insurance. The death benefit will be paid to you. If you are not living when your Dependent dies, the death benefit will be paid to your beneficiary or in accord with the Facility of Payment section of the Policy.

EXCLUSION. Benefits will not be payable if your Dependent's death:
(1) results from suicide, while sane; and
(2) occurs within two years after insurance for that Dependent takes effect.

However, suicide is no defense to payment of life insurance benefits under the Policy unless the Company can show that your Dependent intended suicide when applying for the insurance.

DEPENDENT. A Dependent means a person who meets the definition of a dependent of yours under the provision of the U.S. Internal Revenue Code; and is your:
(1) spouse who is not legally separated from you;
(2) unmarried child at least 14 days but less than 26 years of age;
(3) unmarried child less than 26 years of age and a full-time student at an accredited college or university; or
(4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 26 years of age.

A legally adopted child is considered your child from the date of placement in your home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption. In addition to naturally born and legally adopted children, the word "child" includes your stepchild or foster child; provided the child resides in your household and is dependent on you for principal support. If more than one of a child's parents are insured under the Policy, that child may be insured under only one Certificate.

The term Dependent does not include an Insured Person, or anyone serving in the armed forces of any state or country.

ELIGIBILITY. You become eligible for Dependents Life Insurance on the later of:
(1) the date you become eligible for other coverages provided by the Policy;
(2) the effective date of this section; or
(3) the date you first acquire a Dependent (as defined by the Policy).

EFFECTIVE DATE. Your Dependents Life Insurance will become effective on the later of:
(1) the date you become eligible for Dependents Life Insurance;
(2) the first day of the Insurance Month following the date you sign your payroll deduction order and apply for the coverage; or
(3) the first day of the Insurance Month following the date the Company approves any required evidence of insurability on all your Dependents.

If you acquire a new Dependent child while insured for Dependents Life Insurance, his or her insurance will become effective on the date the Dependent is acquired.

DELAYED EFFECTIVE DATE. If a Dependent is in a Period of Limited Activity on the day his or her Dependent Life Insurance would otherwise take effect; then insurance for that Dependent will not take effect until the day after:
(1) his or her final discharge from the health care facility; or
(2) resuming the normal activities of a healthy person of the same age and sex.

"Period of Limited Activity" means a period when a spouse or child is confined in a health care facility; or, whether confined or not, is unable to perform the regular and usual activities of a healthy person of the same age and sex.

**DEPENDENTS LIFE INSURANCE**
**(Continued)**

EVIDENCE OF INSURABILITY. Each of your Dependents must submit evidence of insurability satisfactory to the Company, if you:

(1) apply for Spouse Life Insurance in excess of the Guaranteed Acceptance Amount;
(2) apply to enroll for or increase Spouse Life Insurance more than 31 days after:
   (a) first becoming eligible for Dependent Life Insurance; or
   (b) first acquiring an eligible spouse;
(3) apply to enroll for or increase Children's Life Insurance more than 31 days after:
   (a) first becoming eligible for Dependent Life Insurance; or
   (b) first acquiring an eligible child;
(4) apply for Dependents Life Insurance after requesting:
   (a) to terminate the Dependents Insurance; or
   (b) to cancel premium payments by payroll deduction or through a Flexible Benefits Plan account; or
(5) apply to reinstate continued Dependents Life Insurance after it lapses due to failure to pay premium when due.

TERMINATION OF DEPENDENTS INSURANCE. Your Dependents Insurance for any spouse or child will cease on the earliest of:

(1) the date the Policy terminates or your Employer ceases to be a Participating Employer;
(2) the date Dependent Insurance is discontinued under the Policy;
(3) the last day of the Insurance Month in which termination is requested;
(4) the last day of the Insurance Month for which premium payment is made for such Dependents Insurance;
(5) the date you cease to be in a class of employees which is eligible for Dependents Insurance or die;
(6) the date your spouse or child ceases to be an eligible Dependent, as defined by this section;
(7) the date your employment with the Participating Employer ends; or
(8) the date you or your Dependent enters the armed services of any state or country; except for duty of 30 days or less in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Dependents Insurance for your Dependent children will also cease on:

(1) the date your Personal Life Insurance ceases, if the child is enrolled under an Employee and Children's Plan; or
(2) the date Spouse Insurance for your spouse ceases, if the child is enrolled under a Spouse and Children's Plan.

When Dependents Insurance ceases because your employment ends, it may be possible to continue coverage in accord with the Portability Privilege section of this Certificate. When Dependents Insurance ceases for any reason except nonpayment of premium, it may be possible to purchase an individual life policy in accord with the Conversion Privilege section of this Certificate.

MISSTATEMENT OF AGE. If the age of a Dependent has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit is dependent upon age, the benefit will be that which would have been payable based upon the Dependent's correct age.

ASSIGNMENT. Dependents Insurance may not be assigned.

INCONTESTABILITY. Except for nonpayment of premiums, the Company may not contest the validity of the Policy as to any Dependent, after it has been in force for two years during the lifetime of that Dependent. This clause will not affect the Company's right to contest claims made for accidental death or dismemberment benefits.

**CERTIFICATE AMENDMENT**

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO 000400001000-17020**

**ISSUED TO: Nye County**

**Your Certificate is amended by the addition of the following provision.**

**ACCELERATED DEATH BENEFIT**

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance or Spouse Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1) have satisfied the Active Work requirement under the Policy;
(2) have been insured under the Policy for at least 12 months; and
(3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

To qualify, your Terminal Dependent spouse must:
(1) have satisfied the Nonconfinement or Period of Limited Activity requirement under the Policy;
(2) have been insured under the Policy for at least 12 months; and
(3) have at least $2,000 of Spouse Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person or Terminal Dependent spouse for whom the Accelerated Death Benefit is requested.

"Terminal" means you or your Dependent spouse has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. Before paying an Accelerated Death Benefit for your Dependent spouse, the Company must also receive your written consent. (See Limitations 3, 4, 5, and 6.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

**CERTIFICATE AMENDMENT**
**(Continued)**

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:

A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or

B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus

(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus

(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. Your Dependent spouse's Death Benefit will be paid to you, or in accord with the Dependent Life Insurance section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

**CERTIFICATE AMENDMENT**
**(Continued)**

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if you have filed for bankruptcy;
(4) without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
(5) without your written consent, if the Claimant is your Terminal Dependent spouse;
(6) without the written consent of the assignee, if you have assigned your rights under the Policy;
(7) if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(8) if the Claimant is Terminal due to a suicide attempt, while sane; or due to an intentionally self-inflicted injury;
(9) if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(10) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

**This amendment takes effect on your effective date of coverage under the Policy. However, if you are not Actively at Work on that date, the change will not take effect until the date you resume Active Work. In all other respects, the Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

## CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000-17020**

**ISSUED TO: Nye County**

**Your Certificate is amended by the addition of the following provisions.**

### PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

**"Prior Plan"** means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:

(1) were insured under the prior plan on its termination date;
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) are not entitled to any extension of life insurance under the prior plan; and
(4) are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

[signature]
Officer of the Company

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000-17020**

**ISSUED TO: Nye County**

**FOR CERTIFICATES DELIVERED IN NEVADA**

**A. On the CONVERSION PRIVILEGE page, under the section entitled Conversion Benefit Upon Policy Termination or Amendment, the last sentence is amended to read as follows:**

Any conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Benefit; except its amount may not exceed the lesser of:

(1) $2,000; or

(2) the Amount of Life Insurance which terminates; less the amount of any group life insurance for which you become eligible within 31 days after insurance terminates.

**This amendment applies only to Certificates delivered to Participating Employers in the state of Nevada. This amendment takes effect on your effective date of coverage under the Policy. In all other respects, the Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

# CERTIFICATE AMENDMENT

## TO BE ATTACHED TO AND MADE A PART OF THE GROUP CERTIFICATE

**AMENDMENT OF CLAIMS PROCEDURES.** The attached Claims Procedures have been revised to comply with final regulations:

(1) which the U.S. Department of Labor's Pension and Welfare Benefits Administration (PWBA) issued on November 21, 2000; and

(2) which govern the claims and appeals process for employee benefit plans subject to ERISA (the Employee Retirement Income Security Act of 1974).

These revised Claims Procedures will replace those in the Certificate effective January 1, 2002. They will apply to all claims filed on or after that date.

**This amendment takes effect on January 1, 2002, or on the insured's effective date of coverage under the Policy; whichever is later. In all other respects, the Certificate remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

GL02-CP-AMEND

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.***** The notice must be sent to the Company's Group Insurance Service Office. It should include:

(1) your name and address; and
(2) the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.***** Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:

(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:

(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:

(1) by a Physician of the Company's choice;
(2) as often as reasonably required.

If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, the claim will be approved or denied within 30 days. Benefits will be paid immediately after the Company receives complete proof and approves the claim. If payment is delayed, interest will be paid as follows.

If Life Insurance Benefits are paid more than 30 days after the death; then interest will accrue:

(1) at the current rate on death proceeds on deposit with the Company;
(2) from the date of death, until the date when the Life Insurance Benefits are paid.

If Accidental Death and Dismemberment Benefits are paid more than 30 days after claim approval; then interest will accrue:

(1) at a rate equal to the prime rate at the largest bank in Nevada, plus two percentage points;
(2) from the 30th day after claim approval, until the day such benefits are paid.

**TO WHOM PAYABLE**

**Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
(1) you, if you survive that Dependent; or
(2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
(1) 90 days after receiving the first proof of a death or dismemberment claim; or
(2) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; and
(3) 30 days after receiving complete proof of either type of claim.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**CLAIMS PROCEDURES**
**(Continued)**

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**CLAIMS PROCEDURES**
**FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**CLAIMS PROCEDURES**
**FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

(1) manage the Policy and administer claims under it; and
(2) interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

(1) establish and enforce procedures for administering the Policy and claims under it;
(2) determine your eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and
(4) resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to you or your Beneficiary's rights to:

(1) request a state insurance department review; or
(2) bring legal action.

**CLAIMS PROCEDURES**
**FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO AND MADE A PART OF THE CERTIFICATE FOR GROUP POLICY NO.: 000400001000-17020**

**ISSUED TO: Nye County**

**The definition of DEPENDENT shown in the DEPENDENTS LIFE INSURANCE is amended to read:**

DEPENDENT. A Dependent means a person who is your:
(1) spouse, who is not legally separated from you;
(2) Domestic Partner where the domestic partnership has been registered in the state of Nevada;
(3) child less than 26 years of age; or
(4) child who is totally and permanently disabled and who became so disabled prior to reaching 26 years of age.

The word "child" includes:
(1) your natural child, legally adopted child, or stepchild;
(2) a child placed with you for the purpose of adoption, from the date of placement;
(3) a child of a domestic partner; and
(6) a foster child for whom you have assumed full parental responsibility and control.

The Definition of **"Domestic Partner"**, as used when the domestic partnership has not been registered in the state of Nevada, means your partner, of the same or the opposite sex, when all of the following conditions are met. You and your partner:
(1) are age 18 or older; mentally competent; not legally married to someone else; not related to the other by blood, to a degree that would bar legal marriage; and not a party to or registered as a partner of another domestic partnership;
(2) are in a committed, exclusive relationship with each other;
(3) are jointly responsible for each other's welfare and financial obligations; and
(4) have not been in another domestic partnership relationship within the prior 12 months.
Satisfactory proof that such domestic partnership exists shall be provided to the Company, upon request.

The term Dependent does not include:
(1) anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard; or
(2) anyone covered under this Policy as an Insured Person.
A person may be covered as either an Insured Person or a Dependent (but not both at the same time). If both parents are Insured Persons, their child may be covered as a Dependent of either parent (but not both at the same time).

**This amendment takes effect on July 1, 2014, or on the Insured Person's effective date of coverage under the Policy; whichever is later. In all other respects, the Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400001000**

**ISSUED TO: The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust**

**For Participating Employer: Nye County (17020)**

It is agreed that the above policy be amended as follows.

Any exclusion for suicide for a death benefit under life insurance coverage is amended to read as follows:

EXCLUSION. Benefits will not be payable if your death or the death of your Dependent:
(1) results from suicide while sane or insane; and
(2) occurs within one year after your Personal Life Insurance or insurance for that Dependent takes effect.

If benefits are not payable as a result of your or your Dependent's suicide, the Company will promptly refund any premium from your or your Dependent's Effective Date of coverage.

If there is an increase to your amount of Personal Life Insurance or your Dependent's amount of life insurance following the Effective Date of coverage, the one-year period will apply; but only for the increased Amount of Personal Life Insurance or the increased amount of Dependent's life insurance.

If you or your Dependent were covered under any prior group life insurance policy that the Policy replaced with 1 day of the prior plan's termination date, the continuous months of coverage under the prior plan just before it terminated will count toward the one-year period.

The effective date of this Certificate Amendment is **July 1, 2013 or your effective date of coverage under the Policy (whichever is later)**; but only with respect to losses incurred on or after that date. Nothing contained in this Certificate Amendment shall change any of the terms and conditions of the Policy, except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Lincoln Financial

Lincoln Financial® Privacy Practices Notice

## What Does Lincoln Financial Do with Your Personal Information?

The Lincoln Financial companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information We May Collect and Use

We collect personal information about you:

- to help us identify you as a consumer, our customer, or our former customer;
- to process your requests and transactions;
- to offer investment, insurance, retirement, and other financial services to you;
- to pay your claim;
- to enhance our products and services;
- to tell you about our products or services we believe you may want and use; and
- as otherwise permitted by law.

The types of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name; address; Social Security number; your financial health; and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies:** If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer:** If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative to enroll you in the plan.

When you are no longer our customer, we continue to share your information as described in this notice.

## How We Share and Use Your Personal Information

We may share your personal information within our companies and with certain service providers. They may use this information:

- to process transactions you, your employer, or your group representative have requested;
- to provide customer service;
- to evaluate or enhance our products and services;
- to gain customer insight; to provide education and training to our workforce and customers; and/or
- to inform you of products or services we offer that you may find useful.

Our service providers may or may not be affiliated with us. Affiliates are companies related by common ownership or control. Nonaffiliates are companies not related by common ownership or control. They include:

- Financial service providers: third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with which we have joint marketing agreements. A joint marketing agreement is a formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include, but are not limited to, insurance providers and financial technology solutions.
- Non-financial companies and individuals: consultants; vendors; and companies that perform marketing services on our behalf.

Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products:

- We may share information about your application with credit bureaus.
- We may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers).
- We may provide information to regulatory authorities, law enforcement officials, and to other nonaffiliated or affiliated parties as permitted by law.
- In the event of a sale of all or part of our businesses, we may share customer information with the acquiror as part of the sale.
- **We do not sell or release your information to outside marketers who may want to offer you their own products and services unless we receive your express consent; nor do we release information we receive about you from a consumer reporting agency.**

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Lincoln chooses to share, and whether you can limit this sharing.

| **Reasons we can share your personal information** | **Does Lincoln share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes**—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**—to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**—information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | No | We Don't Share |
| **For our affiliates to market to you** | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

Federal law gives you the right to limit only:

- sharing for our affiliates' everyday business purposes – information about your creditworthiness;
- sharing for our affiliates to market to you; and
- sharing for nonaffiliates to market to you.

State laws and individual companies may give you additional rights to limit sharing. California residents can review our California Privacy Notice located at https://www.lincolnfinancial.com/public/general/privacy/californiaprivacynotice.

## Security of Information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secure files, and buildings. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your Rights Regarding Your Personal Information

Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). We will send you notification within 30 business days if we need additional time to respond to your request. If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records because of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information, and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend, or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the recipients and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to exercise your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. **The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice.**

For general account service requests or inquiries unrelated to this Privacy Notice, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial companies:

First Penn-Pacific Life Insurance Company
Lincoln Retirement Services Company, LLC
Lincoln Life & Annuity Company of New York
Lincoln Financial Investments Corporation (formerly Lincoln Investment Advisors Corporation)
Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company, Inc.
Lincoln Variable Insurance Products Trust
The Lincoln National Life Insurance Company
Lincoln Financial Insurance Agency Incorporated


DOCSNET
Main Menu
Refresh
Close

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Friday, January 12, 2024 11:59 AM |
| **To:** | entrprserip |
| **Subject:** | FW: PLEASE BUILD VLI CLAIM |

---

**From:** Volenec, Dana
**Sent:** Friday, January 12, 2024 10:59:06 AM (UTC-06:00) Central Time (US & Canada)
**To:** Life Claims
**Subject:** PLEASE BUILD VLI CLAIM

000400001000-17020


DOCSNET
File Edit Entity Mgr. Claim Mgr. Case Mgr. Policy Mgr. Task Mgr. System Mgr. Claim Form Tools Shortcuts Window Help
Main Menu
Entity Mgr. >>
Claim Mgr. >>
Case Mgr. >>
Policy Mgr. >>
Task Mgr. >>
System Mgr. >>
Shortcuts
DAVID E. BORUCHOWITZ - GR LIFE Claim
Claim Benefit Text Alerts Cert Adjustments Tasks
Insurer The Lincoln National Life Insuranc Policy [1539326-] 000010177362000000- Nye County
Claim: 1240001544 Entered By: LTD On: 1/7/2024 5:00:34 AM
Rcvd: 1/7/2024 Proofs: Status: INITIAL Loc: HOME
Decision: Days: 5
PIN: 201977197
Name DAVID E BORUCHOWITZ Phone DOB
Addr Hire 2/21/2006 Eff 7/1/20
Occ POLICE CAPTAI DOT 375167
City USA Salary $65.53 2080
Spec Prov: Bas: $0.00 Sup: $0.00
Type: WAIVER Nature: ILLNESS Labor: 2 Age: 43
DLW: 7/7/2023 DOD 7/7/2023 S/A: S W/R
Pri M54.6 Pain in thoracic spine Start: 7/7/2023
Sec Max: 6/21/2047
Notes See Contract
View MDA
Ancillary Benefits & Offsets
Type Status Awarded Term Amount Mode Used
LI PROCESSED 7/7/2023 6/21/2047 $50,000.00
DLI PROCESSED 7/7/2023 6/21/2047 $3,500.00
Claims: 2

Dana Volenec
Technical Claims Support
Life Waiver Claims

Lincoln Financial Group
8801 Indian Hills Drive
Omaha, Nebraska 68114

(800)-423-2765 *7076 Toll Free

(800)-462-4660 Fax

**LincolnFinancial.com**

**Follow us on:**